J. RANDALL JONES, ESQ., SBN 1927
MICHAEL J. GAYAN, ESQ., SBN 11135
MONA KAVEH, ESQ., SBN 11825
KEMP, JONES & COULTHARD, LLP
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169

RICHARD L. STONE, ESQ. (*pro hac to be filed*)
AMY M. GALLEGOS, ESQ. (*pro hac to be filed*)
DAVID R. SINGER, ESQ. (*pro hac to be filed*)
JENNER & BLOCK LLP
633 West 5th Street, Suite 3600
Los Angeles, California 90071

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| LAS VEGAS SUN, INC., a Nevada corporation,<br><br>Plaintiff,<br><br>v.<br><br>SHELDON ADELSON, an individual and as the alter ego of News+Media Capital Group LLC and as the alter ego of Las Vegas Review Journal, Inc.; PATRICK DUMONT, an individual; NEWS+MEDIA CAPITAL GROUP LLC, a Delaware limited liability company; LAS VEGAS REVIEW-JOURNAL, INC., a Delaware corporation; and DOES, I-X, inclusive,<br><br>Defendants. | Case No.: 2:19-CV-01667-RFB-BNW<br><br>**DEFENDANTS SHELDON ADELSON AND PATRICK DUMONT'S MOTION TO DISMISS COMPLAINT (FRCP 12(B)(6)) AND JOINDER IN THE LAS VEGAS REVIEW-JOURNAL, INC.'S AND NEWS+MEDIA CAPITAL GROUP LLC'S MOTION TO DISMISS**<br><br>**[HEARING REQUESTED]** |

Defendants Sheldon Adelson and Patrick Dumont hereby move this Court for an order dismissing the Verified Complaint ("Complaint") filed by Plaintiff Las Vegas Sun, Inc. ("the Sun") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and applicable state and federal law. Messrs. Adelson and Dumont further join in the concurrently-filed motion to dismiss filed by Defendants Las Vegas Review-Journal, Inc. and News+Media Capital Group, LLC.

This Motion is based upon the following Memorandum of Points and Authorities, the papers and pleadings on file in this action, and any argument the Court may allow at the hearing on the Motion.

DATED October 30, 2019.

KEMP, JONES & COULTHARD, LLP

By: */s/ J. Randall Jones*
J. RANDALL JONES, ESQ., SBN 1927
MICHAEL J. GAYAN, ESQ., SBN 11135
MONA KAVEH, ESQ., SBN 11825
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169

RICHARD L. STONE, ESQ. (*pro hac to be filed*)
AMY M. GALLEGOS, ESQ. (*pro hac to be filed*)
DAVID R. SINGER, ESQ. (*pro hac to be filed*)
JENNER & BLOCK LLP
633 West 5th Street, Suite 3600
Los Angeles, California 90071

*Attorneys for Defendants*

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

The Sun has filled its Complaint with ad hominem attacks and gratuitous references to defendants' conservative views in the apparent hope this Court will rule on politics, not the merits. The Complaint is also epic in its hypocrisy. The Sun accuses Defendants of chilling speech, but seeks to silence Defendants with a court order divesting them of any involvement in the Review-Journal newspaper. The Sun and its publisher Brian Greenspun thereby seek to dictate who has control over the Review-Journal newspaper. So much for free speech.

Defendants Sheldon Adelson and Patrick Dumont join in the Las Vegas Review-Journal, Inc.'s and News+Media Capital Group LLC's (collectively referred to as "Review-Journal") concurrently-filed motion to dismiss, but bring this separate motion to dismiss to raise additional reasons why they have no place in this litigation as individual defendants.

In its Complaint, the Sun nowhere alleges Messrs. Adelson or Dumont did anything in their individual capacities to violate federal antitrust law. The Sun does not even allege that these individuals ever participated in the so-called "market" identified by the Sun – *i.e.*, the sale of local daily newspapers in Clark County. As a matter of law, they cannot be sued for monopolizing or attempting to monopolize a market in which they do not participate. Moreover, the Sun fails to articulate any plausible claim that Messrs. Adelson and Dumont conspired with anyone to monopolize any market. On top of that, the *Copperweld* Rule bars conspiracy claims—like those at issue here—that are against a company's owners, executives, parent companies, and subsidiaries because, under the law of conspiracy, they are not "independent centers of decisionmaking" and cannot conspire with each other.

The Sun's claim that Mr. Adelson is the "alter ego" of Defendant News+Media is nothing but a public relations stunt. The Complaint does not plead the necessary facts for treating a corporation and its owner as legally "inseparable," or any facts suggesting that the corporate form of News+Media is a mere "fiction," or that respecting its corporate status would perpetuate an injustice. The alter-ego claim is frivolous and should be dismissed.

Finally, the Sun's request for an order divesting Defendants from having any ownership or control over the Review-Journal newspaper is an assault on free speech and objectively meritless. The extraordinary remedy of divestiture is only available in cases involving corporate acquisitions that are being challenged as illegal. But the Complaint does not challenge the 4-year old acquisition of the Review-Journal at all.

For these reasons, and those set forth in the Review-Journal's motion to dismiss, every claim against Messrs. Adelson and Dumont should be dismissed with prejudice.

## II. RELEVANT BACKGROUND FACTS.

In the interest of efficiency, Messrs. Adelson and Dumont refer the Court to the general background facts set forth in the Review-Journal's concurrently-filed motion to dismiss. For purposes of this Motion, the additional relevant facts are straightforward:

The Complaint alleges that Brian Greenspun controls Las Vegas Sun, Inc. which publishes the Sun newspaper. Cplt. ¶ 2. Mr. Greenspun is both the editor and publisher of the Sun newspaper, and he unabashedly brags about his influence over the content in the Sun newspaper. Cplt. ¶¶ 2, 4.

The Sun's Complaint names Mr. Adelson as a defendant, and the Sun repeatedly attacks and disparages him. *See, e.g.*, Cplt. pp. 1-2. The Sun accuses Mr. Adelson of all sorts of unsubstantiated wrongdoing—completely unrelated to the claims alleged—and repeatedly alludes to his personal wealth, conservative views, and political donation history as if that will weigh against him in this proceeding. Cplt. pp. 1-2, ¶¶ 6, 10.

When the rhetoric and vitriol are peeled away, there is just a handful of relevant factual allegations concerning Mr. Adelson. The Complaint alleges Las Vegas Review-Journal, Inc. is a "wholly-owned subsidiary of News+Media Group LLC," Cplt. ¶ 5, and that Mr. Adelson, his family, and their trusts have some unspecified beneficial ownership interest in News+Media Capital Group LLC, Cplt. ¶ 9. Apparently in an attempt to make Mr. Adelson look more involved in the affairs of the Review-Journal newspaper, the Sun confusingly alleges that Mr. Adelson is also an "owner" of the Review-Journal, even though the Sun concedes that the Review-Journal is ***wholly-owned*** by a separate legal entity, News+Media Capital Group LLC. Cplt. ¶¶ 5-6. The

Complaint further speculates that Mr. Adelson "exercises significant influence over the [Review-Journal's] business policies and affairs, including its editorial content." Cplt. ¶ 9. After vilifying Mr. Adelson's political views, the Sun—under the guise of championing "free speech"—asks the Court for a draconian order that would "divest Adelson of any control over the Review-Journal." Cplt. pp. 1, 3.

Mr. Dumont also is named as a defendant but barely mentioned in the Complaint. The Sun identifies Mr. Dumont as "an officer and owner of News+Media" and "the son-in-law of Sheldon Adelson." Cplt. ¶ 11. The Sun alleges that Mr. Dumont "orchestrated" the purchase of the Review-Journal "under the direction of Adelson," but the Sun asserts no claim challenging the propriety of or based on the 2015 purchase of the Review-Journal newspaper. Cplt. ¶ 11.

The Complaint further alleges that in 2015, when News+Media was negotiating for the purchase of the Review-Journal newspaper, Messrs. Adelson and Dumont supposedly had discussions with the publisher of the Review-Journal newspaper about whether the 2005 joint operating arrangement between the Sun and Review-Journal newspapers ("2005 JOA") could be terminated, and what would happen to the Sun newspaper if the 2005 JOA became unprofitable. Cplt. ¶ 55. Finally, the Sun alleges that when the 2005 JOA did, in fact, start losing money, representatives of the Review-Journal newspaper conveyed a message from Mr. Dumont to the Sun's executives that "the JOA will never be worth more than it is now and Brian [Greenspun] should call Patrick [Dumont] to make a deal." Cplt. ¶ 65. The Complaint contains no allegations that Messrs. Adelson or Dumont, or any other defendant, are offering to buy defendant Las Vegas Sun, Inc. or its newspaper, or that the Sun is offering to sell its newspaper.

Based on these threadbare allegations, the Sun is now suing Messrs. Adelson and Dumont, in their ***individual*** capacities, for unlawful monopolization (Count 1), attempted monopolization (Count 2), conspiracy to monopolize (Count 3), violating Section 7 of the Clayton Act governing corporate mergers and acquisitions (Count 4), and unfair trade practices (Count 5). None of the counts states a valid claim against Mr. Adelson or Mr. Dumont, and each should be dismissed with prejudice.

## III. THE SUN FAILS TO STATE ANY ANTITRUST CLAIM AGAINST THE INDIVIDUAL DEFENDANTS.

The Sun—either sloppily, or brazenly—brings each of its antitrust claims against *all* "Defendants", including Messrs. Adelson and Dumont, even though the Complaint in no way explains how they could be liable in their individual capacities under the Sherman Act or Clayton Act. Cplt. ¶¶ 119-152.

The Sun's first and second counts allege monopolization and attempted monopolization. The elements of a monopolization claim under Section 2 of the Sherman Act are that defendant "(1) possessed monopoly power in the relevant market, (2) willfully acquired or maintained that power through exclusionary conduct, and (3) caused antitrust injury." *MetroNet Servs. Corp. v. Qwest Corp.*, 383 F.3d 1124, 1130 (9th Cir. 2004). "To demonstrate attempted monopolization a plaintiff must prove (1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993).

The Complaint fails to allege any of these necessary elements against Messrs. Adelson and Dumont. The Complaint claims the "relevant product market" is the "sale of local daily newspapers" in Clark County, Cplt. ¶¶ 37, 40, but never alleges—nor could it truthfully allege—that either Mr. Adelson or Mr. Dumont compete in that market, or that either had any intent to compete in that market as individuals (let alone, monopolize it). In fact, the Complaint is premised on allegations that "[t]he Review-Journal and the Sun together account for 100% of the circulation of local daily newspapers in Clark County," Cplt. ¶ 41, and that barriers to entry in the narrowly-defined relevant market are insurmountable, Cplt. ¶¶ 42-47. Therefore, based on the Sun's own pleadings (verified under oath), the only market participants are the Sun (which publishes the Sun newspaper), Cplt. ¶ 1, and the Review-Journal (which publishes the Review-Journal newspaper), Cplt. ¶ 5. Accordingly, neither Mr. Adelson nor Mr. Dumont—***as individuals***—could plausibly be present or future participants, let alone monopolists or threatened monopolists, in the "relevant market." At most, the complaint alleges that Mr. Adelson is the "alter-ego" of the Review-Journal and that Messrs. Adelson and Dumont "conspired" with the Review-Journal, but those separate

theories of liability fail for independent reasons discussed below. Because Messrs. Adelson and Dumont are not participants in the relevant market in their individual capacities, it necessarily follows that neither of them could have willfully acquired monopoly power, had a dangerous probability of acquiring monopoly power, or caused antitrust injury in any way. *Spectrum*, 506 U.S. at 456; *MetroNet*, 383 F.3d at 1130. The monopolization and attempted monopolization claims (first and second claims) against Messrs. Adelson and Dumont are baseless and should be dismissed.

The Complaint also alleges that Messrs. Adelson and Dumont violated Section 7 of the Clayton Act (Count 4). As explained in the Review-Journal's concurrently-filed motion to dismiss, this provision of the Clayton Act prohibits anti-competitive or monopolistic "***acquisition[s]***." 15 U.S.C. § 18 (emphasis added). But there is not a single allegation in the Complaint that either Mr. Adelson or Mr. Dumont acquired ***any*** company ***in their individual capacities*** such that the ***acquisition*** substantially "lessen[ed] competition" or "creat[ed] a monopoly" in the identified relevant market.[1] *Id.* (emphasis added). Therefore, the fourth claim also is without merit and should be dismissed.

## IV. THE *COPPERWELD* RULE BARS THE CONSPIRACY CLAIMS IN COUNT 3.

Under the Supreme Court's *Copperweld* Rule, the alleged conspiracy between the Review-Journal, its parent company (News+Media), an alleged owner of the parent company (Patrick Dumont), and an alleged indirect owner of the parent company (Sheldon Adelson) is not legally cognizable. *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 771 (1984). The Supreme Court in *Copperweld* held that because a parent company and its wholly owned subsidiary have "a complete unity of interest," they are incapable of conspiring under Section 1 of the Sherman Act. *Id.* The *Copperweld* rule applies to conspiracy to monopolize claims brought under Section 2. *See* 3B Areeda & Hovenkamp, *Antitrust Law* ¶ 809 n.2 (3d ed. 2008) (citing *Vollrath Co. v. Sammi Corp.*, 9 F.3d 1455 (9th Cir. 1993)). *Copperweld* bars conspiracy claims

[1] In the introduction of the Complaint, the Sun alleges that Mr. Adelson "purchased" the Review-Journal newspaper in 2015, but then explains that it was really defendant News+Media Capital Group, LLC which acquired the newspaper. Cplt. ¶ 7.

against "a company and its officers [and] employees . . . subsidiaries controlled by a common parent, firms owned by the same person, and a firm owned by a subset of the owners of another," as well as defendants in "principal-agent relationships." *Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133, 1147 (9th Cir. 2003) (citations omitted).

Here, the Sun's Complaint pleads itself directly into the *Copperweld* Rule. The Sun alleges that defendant News+Media owns defendant Review-Journal, Cplt. ¶¶ 5, 7; defendant Patrick Dumont is an officer and owner of defendant News+Media, Cplt. ¶ 11; and defendant Sheldon Adelson is a supposed "alter ego" and indirect owner of News+Media who purportedly "exercises significant influence over" the Review Journal, Cplt. ¶¶ 8, 9. There is no conspiracy because, as alleged by the Sun, these defendants are not "independent centers of decisionmaking" joining together. *Am. Needle, Inc. v. NFL*, 560 U.S. 183, 196 (2010) (conspiracy requires joining of "independent centers of decisionmaking") (quoting *Copperweld*, 467 U.S. at 769). Therefore, the Sun's third claim for conspiracy to monopolize fails as a matter of law.

## V. THE COMPLAINT FAILS TO ALLEGE FACTS SUPPORTING ANY DEFENDANT'S INVOLVEMENT IN AN ANTITRUST CONSPIRACY.

A claim for conspiracy to monopolize in violation of Sherman Act Section 2 requires "(1) the existence of a combination or conspiracy to monopolize; (2) an overt act in furtherance of the conspiracy; (3) the specific intent to monopolize; and (4) causal antitrust injury." *Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1158 (9th Cir. 2003). It is axiomatic that a plaintiff cannot meet its burden of pleading the existence of a conspiracy merely by offering "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("*Twombly*"). The complaint must plead enough factual matter that reveals a "plausible" conspiracy; it is not enough to merely allege the existence of a "conceivable" conspiracy. *Id.* at 570 ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their Complaint must be dismissed"). "Allegations of facts that could just as easily suggest rational, legal business behavior by the defendants as they could suggest an illegal conspiracy are insufficient to plead a violation of the antitrust laws." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1049 (9th Cir. 2008) (citing *Twombly*, 550 U.S. at

553-57 & n.5).

Here, the Complaint is devoid of a single factual allegation supporting any of these necessary elements. There is no reference to or description of any supposed conspiracy between or among any of the named defendants, and there is no alleged overt act in furtherance of the non-identified conspiracy. In fact, the only references to *any* conspiracy in the Complaint are the title of the cause of action, Cplt. ¶ 13, and the conclusory allegations that Defendants committed unspecified acts "[i]n furtherance of the conspiracy," Cplt. ¶ 141; that "Defendant' [sic] conspiracy" somehow harmed competition, Cplt. ¶ 142; and that Defendants are jointly and severally liable for all damages "caused by their conspiracy," Cplt. ¶ 144 . These naked assertions of a "conspiracy" fail to state a viable conspiracy claim. *Twombly*, 550 U.S. at 557. The Complaint also describes one or two discussions where Messrs. Adelson and Dumont allegedly asked the Review-Journal's publisher whether the Review-Journal could terminate the 2005 JOA, and alleges that Mr. Adelson "hypothesize[d]" about what would happen to the Sun if the 2005 JOA became unprofitable. Cplt. ¶ 55. None of these facts supports "the existence of a combination or conspiracy to monopolize" the market for the sale of local daily newspapers in Clark County. At most they show that the Review-Journal was considering its contractual legal rights under the 2005 JOA, which plainly suggests "rational, legal behavior" and fails to plead a violation of the antitrust laws. *Kendall*, 518 F.3d at 1049.

In addition to failing to allege even the basic contours of a conspiracy, the Complaint never explains how each defendant supposedly participated in the mystery conspiracy. At most, the Complaint lumps all of the Defendants together and makes blanket assertions of "Defendants'" so-called "predatory" conduct such as replacing the publisher of the Review-Journal newspaper, breaching the JOA 2005 JOA, and threatening to terminate the contract between the Sun and the Review-Journal. Cplt. 56. Where, as here, a complaint alleges Sherman Act claims against multiple defendants, the complaint cannot simply lump defendants together; it must allege facts supporting Sherman Act claims against ***each*** of the defendants. *Kendall*, 518 F.3d at 1048; *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1117 (N.D. Cal. 2008) ("[C]omplaint must allege that each individual defendant joined the conspiracy and played

some role in it . . . .[G]eneral allegations as to all defendants . . . [are] insufficient to put specific defendants on notice of the claims against them") (internal quotation marks omitted); *see also In re ATM Fee Antitrust Litig.*, 768 F. Supp. 2d 984, 1002 (N.D. Cal. 2009) (Breyer, J.) (rejecting plaintiffs' effort to "merely lump together" all of the defendants and dismissing the action as to the defendants not linked to the alleged conspiracy through factual allegations); *Brennan v. Concord EFS, Inc.*, 369 F. Supp. 2d 1127, 1136-37 (N.D. Cal. 2005) (if a plaintiff cannot "specifically connect[]" a particular defendant to the alleged conspiracy, that defendant must be dismissed from the case.). Because the Sun lumps all of the defendants together, and fails to articulate how each individual defendant joined the alleged conspiracy or played any role it, the Complaint fails to state a claim for conspiracy to monopolize and the third claim should be dismissed.

## VI. EVERY CLAIM AGAINST ADELSON FAILS BECAUSE THE COMPLAINT DOES NOT ALLEGE ANY BASIS FOR ALTER-EGO LIABILITY.

Alter ego is an "extreme remedy" and is "sparingly used." *Tatung Co., Ltd. v. Shu Tze Hsu*, 217 F. Supp. 3d 1138, 1175 (C.D. Cal. 2016). The Nevada Supreme Court has made clear that the "corporate cloak is not lightly thrown aside," and that it may be pierced only where "adherence to the fiction of a separate entity . . . [would] sanction a fraud or promote injustice." *Baer v. Walker*, 452 P.2d 916, 916 (Nev. 1969); *see also Truck Ins. Exch. v. Palmer J. Swanson, Inc.*, 189 P.3d 656, 660 (Nev. 2008) (same). To state a claim for alter ego liability, the Sun is required to allege that: (1) the corporation is influenced and governed by the person asserted to be its alter ego; (2) there is such unity of interest and ownership that one is inseparable from the other; and (3) the facts must be such that adherence to the fiction of separate entity would, under the circumstances, sanction a fraud or promote injustice. *Panliant Fin. Corp. v. ISEE3D, Inc.*, Case No. 2:12-cv-01376-RFB-CWH, 2016 WL 1706108, at *2 (D. Nev. Apr. 26, 2016) (Boulware, J.).[2]

The sum total of the Complaint's alter-ego allegations are that Sheldon Adelson is "the alter ego of News+Media [Capital Group LLC]" and the "Las Vegas Review-Journal, Inc.," Cplt.

[2] Courts in the Ninth Circuit apply the law of the forum state to determine whether a party is subject to alter ego liability. *SEC v. Hickey*, 322 F.3d 1123, 1128 (9th Cir. 2003).

¶ 8, and that he "exercises significant influence over the [Review-Journal's] business policies and affairs, including its editorial content," Cplt. ¶ 9. These barebones, conclusory assertions—offered without any supporting factual allegations—fall far short of what the Sun is required to plead for its alter ego allegation to survive.[3]

Specifically, the Sun must also allege facts showing such a degree of unity of interest between Mr. Adelson, on the one hand, and the Review-Journal and News+Media Capital Group, on the other, that Mr. Adelson is "***inseparable***" from these companies. *Panliant*, 2016 WL 1706108, at *2. To be inseparable under the alter-ego doctrine, courts look to whether there has been "commingling" of corporate funds and personal assets, "undercapitalization, unauthorized diversion of funds, treatment of corporate assets as the individual's own, and failure to observe corporate formalities." *Id.*; *see also Bonanza Hotel Gift Shop, Inc. v. Bonanza No. 2*, 596 P.2d 227, 229 (Nev. 1979). The Complaint provides no allegation that meets this high bar. Nor does the Sun allege —as it is required to do—facts to support that "adherence to the fiction of a separate entity would, under the circumstances, sanction a fraud or promote injustice." *Panliant*, 2016 WL 1706108, at *2. The Complaint does not reference any "injustice" or "fraud" that would befall the Sun—or anyone else—if the corporate veil of the Review-Journal is not pierced.

It is well-settled that "[c]onclusory allegations of 'alter ego' status are insufficient to state a claim." *Gowen v. Tiltware LLC*, Case No. 2:08-CV-01581-RCJ-RJJ, 2009 WL 1441653, at *5 (D. Nev. May 19, 2009), *aff'd*, 437 F. App'x 528 (9th Cir. 2011). "Rather, a plaintiff must allege specifically both of the elements of alter ego liability, as well as facts supporting each." *Id.* Because the Sun has not alleged—and cannot truthfully allege—facts necessary to plead Mr. Adelson's alter ego liability, every cause of action against Mr. Adelson should be dismissed. *See Ovation Toys Co., Ltd. v. Only Hearts Club*, 675 F. App'x 721, 724 (9th Cir. 2017) (affirming

[3] In the same paragraph, the Sun confusingly describes Mr. Adelson's ownership interest and leadership roles in running the Las Vegas Sands Corporation—which is *not* a defendant and does *not* own either the Review-Journal or News+Media Capital Group—and quotes a Sands Corporation Annual Report which provides that "Mr. Adelson exercises significant influence over the [Sands] business policies and affairs." Cplt. ¶ 8. These allegations are irrelevant here because they relate to Mr. Adelson's influence over a *different corporation* from those that are the subject of the Sun's alter ego allegations.

dismissal of alter ego claims where facts supporting the "unity of interest" prong were "stated in wholly conclusory terms with little or no supporting facts," and where plaintiff's Complaint "does not articulate any inequity that would result by refusing to apply alter ego liability.").

## VII. THE SUN'S DEMAND FOR DIVESTURE OF DEFENDANTS' INVOLVEMENT WITH THE REVIEW-JOURNAL NEWSPAPER MUST BE REJECTED.

A centerpiece of the Sun's "Verified Complaint for Divestiture, Injunction, and Damages" is its brazen request that the Court enjoin individuals like Mr. Adelson, Mr. Dumont and the Review-Journal's employees from having any influence over the newspaper. In the introduction to its Complaint, the Sun alleges that "because they have misused their fiduciary responsibilities to the specific detriment to the Sun, the Court must divest Adelson of any control over the Review-Journal." Cplt. p. 3. And the Sun's first, second, and third claims for relief under the Sherman Act seek an injunction "ordering the [Review-Journal] to divest itself of the newspaper, or in the alternative to divest itself of the newspaper's non-editorial business operations and to require the creation of an independent agency (or trustee) to conduct the non-editorial business of the joint operation." Cplt. ¶¶ 127, 137, 147. In other words, based on some unidentified breach of fiduciary duty (which is not asserted as a claim in the Complaint) and purported violations of the Sherman Act, the Sun seeks to dictate who can own or control the Review-Journal newspaper, and whether the Review-Journal may continue to print its own newspaper.

The Sun hitches its request for divestment relief to its Sherman Act Section 2 claims. *See* Cplt. ¶¶ 127, 137, 147. But the remedy of divestment is not available for alleged violations of Section 2 of the Sherman Act that do not involve an illegal ***acquisition***. All the "plain text of [15 U.S.C. § 26] authorizes" is divestment "to remedy § 7 [of the Clayton Act] violations." *California v. Am. Stores Co.*, 495 U.S. 271, 282 (1990). Under Section 7 of the Clayton Act, 15 U.S.C. § 18, it is unlawful for any person to "***acquire*** … the ***stock*** or other share capital … or any part of the ***assets*** of another person . . . where . . . the effect may be to substantially lessen competition or tend to create a monopoly . . . ." (emphasis added).

Given its extraordinary nature, divestiture is relegated to cases where it is necessary to prevent or correct an illegal merger or acquisition, and even then, the Supreme Court has cautioned,

it is not always proper to grant it at the behest of private plaintiffs. *Am. Stores Co*., 495 U.S. at 295-96 (resolving a circuit split about the availability of divestiture as a form of relief).

As discussed in the Review-Journal's motion to dismiss, the Sun's fourth claim for relief alleging a violation of the Clayton Act Section 7 is fatally flawed: there is no factual allegation that any defendant has acquired or is acquiring stock or assets in an unlawful or anticompetitive manner. The Review-Journal's owner acquired the newspaper in December 2015. The Sun does not assert that the 2015 acquisition was unlawful under Section 7. Instead, the most the Sun can muster is an allegation that in the course of negotiating the 2015 acquisition, the owners of the Review Journal's parent allegedly "explored," among other things, "acquir[ing] the Sun in order to dissolve the JOA." Cplt. ¶ 55. That acquisition did not occur, meaning there is no factual predicate to support a Clayton Act Section 7 claim.[4] That is fatal to the Sun's fourth claim. And without a sustainable Clayton Act Section 7 claim or otherwise unlawful acquisition, the plaintiffs' request for a court ordered divestiture of a lawfully acquired newspaper is an improper remedy in search of a non-existent claim. It should be dismissed. *See, e.g.*, *Cardenas v. Am. Airlines, Inc.*, Case No. 17cv2513-GPC(JLB), 2018 WL 1963787, at *3-6 (S.D. Cal. Apr. 26, 2018) (Curiel, J.) (granting motion to dismiss a damages claim under Rule 12(b)(6)) (citing *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974-75 (9th Cir. 2010)).

/ / /

/ / /

/ / /

/ / /

/ / /

[4] Moreover, if the Sun does not want to sell its newspaper, it can simply decide not to sell it. It does not need to file a lawsuit and obtain a court order preventing the sale.

**VIII. CONCLUSION.**[5]

For the reasons discussed above, the Complaint fails to state any cognizable claim against Messrs. Adelson and Dumont, and they should be dismissed from this case entirely.

DATED October 30, 2019.

KEMP, JONES & COULTHARD, LLP

By: */s/ J. Randall Jones*
J. RANDALL JONES, ESQ., SBN 1927
MICHAEL J. GAYAN, ESQ., SBN 11135
MONA KAVEH, ESQ., SBN 11825
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169

RICHARD L. STONE, ESQ. (*pro hac to be filed*)
AMY M. GALLEGOS, ESQ. (*pro hac to be filed*)
DAVID R. SINGER, ESQ. (*pro hac to be filed*)
JENNER & BLOCK LLP
633 West 5th Street, Suite 3600
Los Angeles, California 90071

*Attorneys for Defendants*

[5] As set forth above, Mr. Adelson and Mr. Dumont join in the Review-Journal's motion to dismiss, including the argument that the Sun's third claim for violations of the Nevada Trade Practices Act fails because it is predicated solely on the defective federal antitrust claims. *Furniture Royal, Inc. v. Schnadig Int'l Corp.*, Case No. 18-cv-318 JCM (CWH), 2018 WL 6574779, at *4 (D. Nev. Dec. 13, 2018) (citing *Boulware v. Nev. Dep't of Human Res.*, 960 F.2d 793, 800 (9th Cir. 1992)).

**PROOF OF SERVICE**

I hereby certify that on the 30th day of October, 2019, I served a true and correct copy of the foregoing **DEFENDANTS SHELDON ADELSON AND PATRICK DUMONT'S MOTION TO DISMISS COMPLAINT (FRCP 12(B)(6)) AND JOINDER IN THE LAS VEGAS REVIEW-JOURNAL, INC.'S AND NEWS+MEDIA CAPITAL GROUP LLC'S MOTION TO DISMISS** via the United States District Court's CM/ECF electronic filing system to all parties on the e-service list.

*/s/ Patty Pierson*
An employee of Kemp, Jones & Coulthard, LLP