J. RANDALL JONES, ESQ., SBN 1927
MICHAEL J. GAYAN, ESQ., SBN 11135
MONA KAVEH, ESQ., SBN 11825
KEMP, JONES & COULTHARD, LLP
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169

RICHARD L. STONE, ESQ. (*pro hac vice*)
DAVID R. SINGER, ESQ. (*pro hac vice*)
AMY M. GALLEGOS, ESQ. (*pro hac vice*)
JENNER & BLOCK LLP
633 West 5th Street, Suite 3600
Los Angeles, California 90071

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| LAS VEGAS SUN, INC., a Nevada corporation,<br><br>Plaintiff,<br><br>v.<br><br>SHELDON ADELSON, an individual and as the alter ego of News+Media Capital Group LLC and as the alter ego of Las Vegas Review Journal, Inc.; PATRICK DUMONT, an individual; NEWS+MEDIA CAPITAL GROUP LLC, a Delaware limited liability company; LAS VEGAS REVIEW-JOURNAL, INC., a Delaware corporation; and DOES, I-X, inclusive,<br><br>Defendants. | Case No.: 2:19-CV-01667-RFB-BNW<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO STAY DISCOVERY PENDING RESOLUTION OF DEFENDANTS' MOTIONS TO DISMISS**<br><br>**[ORAL ARGUMENT REQUESTED]** |

2962192.4

## I. INTRODUCTION

District courts have very broad discretion to stay discovery when a motion to dismiss is pending. While there is no bright line test, courts consider factors such as whether the pending motion may dispose of the entire case (obviating the need for discovery); whether discovery is needed to resolve the pending motion; the merits of the pending motion to dismiss; and the guiding principles of Rule 1, favoring the "just, speedy, and inexpensive determination of every action and proceeding." The Supreme Court has also cautioned that antitrust claims should be able to withstand a Rule 12 challenge *before* burdensome antitrust discovery commences.

Here, every relevant factor weighs in favor of staying discovery until the Court rules on the pending motions to dismiss: (1) the pending motions seek dismissal of *all claims*; (2) the issues presented are questions of law (e.g., statutory interpretation) that require no discovery; (3) Plaintiff's claims are objectively meritless because they are barred by a federal statute and have serious pleading defects, including the failure to allege standing; (4) even if the Court partially grants the pending motions, that will define the scope of discovery; (5) Plaintiff has not identified *any* prejudice it would suffer from a temporary stay – in fact, Plaintiff sought a partial stay of discovery in the related state court action just last month; and (6) Plaintiff concedes that discovery will be burdensome, including 40 depositions and 16 experts. Accordingly, the Court should exercise its broad discretion and temporarily stay discovery until Plaintiff's tenuous complaint is properly screened by the pending Rule 12 motions to dismiss.

## II. ARGUMENT

**A.     A Stay of Discovery is Needed Because this Is an Antitrust Case with Pending, Case-Dispositive Motions to Dismiss That May Obviate Discovery.**

There is no strict test for granting a motion to stay discovery, and district courts have broad discretion to stay discovery pending the resolution of a motion to dismiss. *Jarvis v. Regan*, 833 F.2d 149, 155 (9th Cir. 1987). Courts should consider whether: (1) the pending motion is potentially dispositive; (2) the pending motion can be decided without additional discovery; and (3) a "preliminary peek" at the merits of the potentially dispositive motion suggests dismissal is likely. *See Kor Media Group, LLC v. Green*, 294 F.R.D. 579, 581 (D. Nev. 2013). Contrary to

Plaintiff's argument, the Ninth Circuit has never held the Court must be "convinced" that the complaint will fail in order to enter a stay of discovery. ECF No. 50 at 5:10–13. Nor has the Ninth Circuit held a party seeking a *stay of discovery* bears a "heavy burden" or must make a "strong showing" to obtain a stay.[1] *Id.* at 5:7–9. In *Wood v. McEwen*, the Ninth Circuit held a district court "***may continue to stay discovery*** when it is convinced that the plaintiff will be unable to state a claim for relief." 644 F.2d 797, 801 (9th Cir. 1981) (citing *B.R.S. Land Investors v. United States*, 596 F.2d 353 (9th Cir. 1978) (emphasis added)). This holding creates an additional basis to stay discovery; it is not a requirement for staying discovery. Indeed, *Tradebay, LLC v. EBay, Inc.*, cited by Plaintiff, expressly clarified that "the court's 'preliminary peek' at the merits of the underlying motion ***is not intended to prejudge its outcome.*** Rather, this court's role is to evaluate the propriety of an order staying or limiting discovery with the goal of accomplishing the objectives of Rule 1." 278 F.R.D. 597, 603 (D. Nev. 2011) (emphasis added).

Importantly, the Supreme Court has further emphasized that dispositive motions in antitrust cases serve a gatekeeping function to avoid burdensome antitrust discovery. In *Twombly*, the Supreme Court explained that "proceeding to antitrust discovery can be expensive" and prescribed that "a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). The Ninth Circuit has further recognized the unique concerns raised by antitrust discovery. *See Kelsey K. v. NFL Enterprises*, 757 Fed. Appx. 524, 527 (9th Cir. 2018) (affirming district court's denial of discovery "'to avoid the potentially enormous expense of [antitrust] discovery'") (*citing Twombly*, 550 U.S. at 559)); *Costco Wholesale Corp. v. Hoen*, 538 F.3d 1128, 1137 (9th Cir. 2008) (acknowledging antitrust cases are "normally very expensive to

---

[1] The "heavy burden" language comes from a district court's misquotation of another district court case. *See Turner Broadcasting System, Inc. v. Tracinda Corp.*, 175 F.R.D. 554, 556 (D. Nev. 1997) (misquoting *Blankenship v. Hearst Corp.*). The *Blankenship* court never held that a party must make a "strong showing" or carry a "heavy burden" to obtain a stay of discovery. Rather, *Blankenship* involved review of an order *precluding* a deposition. The court held that "good cause and a strong showing is required before a party will be denied *entirely* the right to take a deposition." 519 F.2d 418, 429 (9th Cir. 1975) (emphasis added). Here, Defendants seek a stay of discovery, not the outright denial of discovery.

2

2962192.4

bring and maintain"); *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) (recognizing high cost of discovery in antitrust cases and holding Rule 12 is designed to "enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery"); *Ron Tonkin Gran Turismo, Inc. v. Fiat Distributors, Inc.*, 637 F.2d 1376, 1381 (9th Cir. 1981) (recognizing expensive and time consuming discovery and trial work in antitrust cases); *see also Modeling the Effect of One–Way Fee Shifting on Discovery Abuse in Private Antitrust Litigation*, 78 N.Y. & U. L.Rev. 1887, 1898–1899 (2003) (discussing unusually high cost of discovery in antitrust cases).

Plaintiff cites to the unpublished case of *In re Graphics Processing Units Antitrust Litig.*, 2007 WL 2127577 at *4 (N.D. Cal. July 24, 2007) for the unremarkable proposition that there is not an "automatic, blanket prohibition" on all discovery pending a motion to dismiss antitrust claims. ECF No. 50 at 18. But *In re Graphics* confirmed the more important point from *Twombly*: "***to allow antitrust discovery prior to sustaining a complaint would defeat one of the rationales of Twombly, at least when the discovery would be burdensome***." *Id.* (emphasis added). *In re Graphics* held that a stay of all discovery in an antitrust case pending resolution of motions to dismiss was ***appropriate*** to determine the viability of the complaint and "to evaluate how much, if any, discovery to allow." *Id.* at *5. "The immediate point is that adjudicating the motions to dismiss will shed light on the best course for discovery." *Id.*

Here, Plaintiff admits this case will involve burdensome antitrust discovery; in its recently filed discovery plan, Plaintiff estimates ***40 depositions*** and ***16 expert witnesses***, ECF No. 42 at 2:21–27. Therefore, the policy underlying *Twombly* applies, and the Court should wait and see whether the complaint survives the pending motions to dismiss or, at the very least, whether the scope of discovery is substantially narrowed.

**B.     The Court's Ruling on the Motions to Dismiss Will Define the Scope of Discovery.**

After receiving Defendants' motions to dismiss, Plaintiff did not take advantage of Rule 15(a)(1)(B) to amend its complaint. Instead, Plaintiff opposed the motions to dismiss and asked for leave to amend the complaint if the Court decides to grant the motions. ECF No. 36 at 18:18–19:6; ECF No. 40 at 23:4–14. If the Court allows Plaintiff to re-plead some or all of its claims,

3

this would materially impact the scope of discovery. Therefore, until the Court resolves the pending motions, Defendants should not be forced to endure burdensome antitrust discovery based on claims that Plaintiff may need to re-plead. *See B.R.S. Land Investors v. U.S.*, 596 F.2d 353, 356 (9th Cir. 1979) (holding district court did not abuse discretion by denying discovery after complaint dismissed with leave to amend).

Additionally, if the Court does not dismiss this entire action, Defendants will have the option to file counterclaims against Plaintiff. If that occurs, the parties will need to conduct discovery on the counterclaims. Commencing discovery on only Plaintiff's claims at this time could result in duplicative discovery, multiple depositions of the same individuals, and a completely separate discovery schedule for any potential counterclaims. Rather than racing into the discovery process based on Plaintiff's untested complaint, the Court should stay discovery until it knows which claims and potential counterclaims, if any, will require discovery.

**C.     A Temporary Stay Will Not Prejudice Plaintiff and Will Serve Rule 1's Purposes.**

Plaintiff's reliance on Rule 1 is misplaced because that rule strongly *favors* a stay of discovery. Rule 1 mandates the "just, speedy, and inexpensive determination" of all actions and, as such, it frequently forms the basis for staying discovery, particularly in complex cases, when motions to dismiss are pending. *See, e.g., Carly v. Gentry*, 2019 WL 5213845, at *2 (D. Nev. Oct. 16, 2019) (staying discovery to accomplish goals of Rule 1); *Weinstein v. Meritor, Inc.*, 2017 WL 1552322 at *2 (D. Nev. Apr. 27, 2017) (finding good cause to stay discovery pursuant to goals of Rule 1); *U.S. v. Shoshone Paiute Tribes*, 2012 WL 2327676 at *7 (D. Nev. June 19, 2012) (staying discovery based on pending motion to dismiss to "best accomplish the objectives of Rule 1").

Plaintiff incorrectly presumes that justice favors pressing forward with discovery, but that is obviously not the case. When a complaint fails to state a claim, justice requires its dismissal before discovery commences. *See Tradebay*, 278 F.R.D. at 601 (recognizing Rule 12(b)(6) designed to allow defendants to test sufficiency of complaint before having to participate in discovery). The pending motions to dismiss raise serious legal deficiencies with the complaint, and Defendants should not be forced to endure the onerous antitrust discovery that Plaintiffs have planned until the Court decides whether this action may proceed at all. ECF No. 42 at 2:15–27.

4

Moreover, Plaintiff's opposition confirms that a stay of discovery will not result in any prejudice. Plaintiff's only claim of prejudice is based on a news story from 10 months ago about Mr. Adelson's alleged health issues at that time. ECF No. 50 at 20-21, Ex. 4. Putting aside the rank speculation about Mr. Adelson's health, it is clear that Plaintiff's motivation for seeking early discovery is to harass Mr. Adelson. But, as discussed below, the claims against Mr. Adelson are the weakest of all, and discovery on those claims should not be allowed to proceed.

Finally, the procedural history shows that *Plaintiff* is the one seeking to avoid discovery. When the Review-Journal brought counterclaims against the Plaintiff in the parties' related state court action, Plaintiff filed this federal action and then sought a stay of the counterclaims (and related discovery) in state court. ECF No. 43 at 3:20–4:12; *see also* Exhibit B (Minutes) (staying counterclaims at Plaintiff's request). Plaintiff could have moved forward with full discovery in state court, but chose not to. Therefore, Plaintiff can hardly claim that a temporary stay of discovery in this action would somehow cause prejudice.

**D.  Defendants' Motion to Dismiss Is Case Dispositive.**

A discovery stay is further warranted because the pending motions may dispose of the entire case. As set forth in the Review-Journal's motion to dismiss and discussed below, the parties' joint operating arrangement ("2005 JOA") cannot be enforced because a federal statute – the Newspaper Preservation Act ("NPA") – specifically proscribes enforcing it. Realizing this fate, Plaintiff now argues its "antitrust claims do not hinge on the enforceability of the [2005] JOA" because "the Sun has not alleged a breach of contract claim in this action." ECF No. 50 at 7. Instead, Plaintiff argues its antitrust claims turn on "whether the RJ has engaged in predatory, exclusionary conduct to eliminate the Sun from the market." *Id.* at 7. But even a "preliminary peek" at the complaint confirms that every alleged predatory or exclusionary act consists of either alleged breaches of the 2005 JOA or steps taken by the Review-Journal to legally terminate it.

Plaintiff's complaint summarizes the alleged predatory scheme at Paragraphs 56, 69, 77, 87, 95, 101 and 108 as follows: (1) removing the Review-Journal's publisher which supposedly led to lower profit payments to Plaintiff *under the 2005 JOA*; (2) abuses of operations, advertising and accounting obligations *under the 2005 JOA*; (3) redesigning the front of the joint newspaper

5

2962192.4

product and Plaintiff's masthead *in breach of the 2005 JOA*; and (4) threatening to *terminate the 2005 JOA*. These alleged predatory acts serve as the backbone to each of Plaintiff's five causes of action. *See* ECF No. 1, ¶¶ 119-121 (First Claim); 128-130 (Second Claim); 138-140 (Third Claim); 148-149 (Fourth Claim); 153 (Fifth Claim). And the ultimate relief sought by Plaintiff's complaint is an order enjoining the termination of the 2005 JOA. *Id.* at ¶¶ 127, 137, 147. Therefore, if the Court finds that the 2005 JOA is unenforceable, this would necessarily dispose of all five claims in the complaint – i.e., the *entire case*.

Additionally, for the reasons set forth in the pending motions (and below), each of Plaintiff's antitrust claims independently fails as a matter of law, regardless of whether the 2005 JOA is enforceable. Therefore, a stay of discovery is warranted.

**E.     The Complaint Is Objectively Meritless.**

While it is not necessary to weigh the merits of the pending motions to dismiss at this stage, the complaint's outright lack of merit is a factor that strongly favors of a stay.

**1.     Federal Law Prohibits the Court from Enforcing the 2005 JOA.**

The NPA unambiguously states that: "It shall be unlawful for ***any person*** to enter into, perform, ***or enforce*** a joint operating arrangement, not already in effect [on July 24, 1970], except with the prior written consent of the Attorney General of the United States." 15 U.S.C. § 1803(b) (emphasis added). In its opposition to the Review-Journal's motion to dismiss, ***Plaintiff has already conceded that the U.S Attorney General did not approve the 2005 JOA***. ECF No. 40, 28:13-23 (confirming that the 2008 letter from the Department of Justice "was neither an approval nor a rejection" of the 2005 JOA"). Therefore, because the 2005 JOA was not approved in writing by the Attorney General, it cannot be enforced by this Court.

Under controlling Supreme Court precedent, there is no way around that conclusion. *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019) (where a statute's meaning is clear on its face, the court's statutory interpretation "must stop"). Plaintiff argues that applying the NPA as written would conflict with "decades of practitioners' and the drafting parties' interpretation and practice," and that "discovery into these issues is necessary before considering a dispositive motion." ECF No. 50 at 6. Whether these historical practices are true or not is

6

2962192.4

irrelevant. The "practice and understanding" of attorneys is not a factor in construing a statute. *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach,* 523 U.S. 26, 35 (1998) ("If we do our job of reading the statute whole, we have to give effect to this plain command . . . even if doing that will reverse the longstanding practice under the statute.") (internal cites and quotes omitted); *Metro. Stevedore Co. v. Rambo,* 515 U.S. 291, 300 (1995) ("Age is no antidote to clear inconsistency with a statute.") (internal cites and quotes omitted). Plaintiff also references 1970s-era Department of Justice regulations that misread the NPA's plain language. ECF No. 50 at 10. But regulations contrary to the plain language of a statute are also irrelevant to its interpretation. *Microsoft Corp. v. Comm'r*, 311 F. 3d 1178, 1189 (9th Cir. 2002) ("Because we conclude that the statute clearly expresses Congress's intent, we do not defer to the conflicting regulation") (citing *Dole v. United Steelworkers,* 494 U.S. 26, 42-43 (1989), and numerous other Supreme Court and Ninth Circuit cases).

Plaintiff's argument that approval was not required because the 2005 JOA is merely an "amendment" to the 1989 JOA fails for at least two reasons. **First**, the 2005 JOA is on its face a new JOA, not an amendment. An amendment is a "formal and usually minor revision or addition to a contract." Black's Law Dictionary (11th ed. 2019). However, when parties expressly terminate their existing contract and enter a new contract that materially changes their rights and obligations, that new contract is a novation—*i.e.*, a whole new agreement—not a mere amendment.[2] Here, the 2005 JOA cannot possibly be a mere revision or addition to the 1989 JOA because it ***expressly terminated*** the 1989 JOA as of September 30, 2005, ECF No. 20-1, Ex. A § 1.2, and ***released all claims and obligations*** arising from the 1989 JOA, Ex. A § 10.13. Not only that, but the 2005 JOA is a standalone contract with a complete set of contractual terms that created a ***materially different relationship*** between the Review-Journal and Plaintiff. It changed

---

[2] *See Williams v. Crusader Discount Corp.*, 334 P.2d 843, 845-46 (Nev. 1959) (The "substitution of a new obligation for an existing one effects a novation, which thereby discharges the parties from all of their obligations under the former agreement inasmuch as such obligations are extinguished by the novation"); *see also Cushman & Wakefield of Florida, Inc. v. Williams*, 551 So. 2d 1251, 1254 (Fla. Dist. Ct. App. 1989) (lease with terms that were "significantly different than the terms of the original lease" was a new agreement and not a mere amendment).

7

2962192.4

the publication and distribution of the Sun to an insert inside the Review-Journal. *Compare* 1989 JOA Art. 5, *with* ECF No. 20-1, Ex. A, § 5.1 & App'x. A. And it created a completely different financial structure reflecting the new arrangement. *Compare* 1989 JOA Arts. 2- 4, 6 and App'x A-D, *with* ECF No. 20-1, Ex. A, §§ 2, 6, & App'x D. Under Nevada law and the NPA's plain language, the 2005 JOA is a new JOA that required approval, not a mere amendment. *Williams*, 334 P.2d at 845-46.³

    ***Second***, even if the Court were to ignore the substance of the 2005 JOA and find that it was an amendment, Plaintiff's argument would still fail because the NPA does not exempt amendments from the approval requirement. To the contrary, Section 1803(b), which applies to JOAs that were not in existence prior to July 24, 1970, plainly encompasses all "joint operating arrangement[s]" and does not exempt amendments or in any way single them out for different treatment. 15 U.S.C. § 1803(b). Thus, to enforce the 2005 JOA, the Court would have to invent within Section 1803(b) an implied exception for JOAs labeled as amendments. This is not permitted. *Corona Coal Co. v. United States*, 263 U.S. 537, 540 (1924) (holding where "the words of the statute are plain, with nothing in the context to make their meaning doubtful; no room is left for construction, and we are *not at liberty to add an exception* in order to remove apparent hardship in particular cases") (emphasis added); *accord Keene Corp. v. United States*, 508 U.S. 200, 217-18 (1993) (noting longstanding canon of statutory construction that federal courts enjoy no "liberty to add an exception" to a clear statute (citing *Corona Coal Co.*, 263 U.S. at 540)).

    The *Mahaffey* case cited by Plaintiff does **not** hold that amendments are exempt from the NPA's approval requirement. In *Mahaffey*, the Sixth Circuit held that when parties amended a JOA to add one new term, their failure to obtain approval for the amendment did not strip the

---

³ It is irrelevant that the 2005 JOA is captioned "Amended and Restated Agreement." *Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1170 (9th Cir. 2013) (a contract's effect is based on its substance); *see also Whitehead v. Nev. Com'n on Judicial Discipline*, 873 P.2d 946, 961 (Nev. 1994) ("This court will recognize a document for what it is, rather than the name assigned to it."); *Cushman & Wakefield of Fla., Inc.*, 551 So. 2d at 1254 (rejecting argument that a new lease was a mere amendment simply because it "was styled as a 'First Amendment to Lease Agreement' and included some language contained in the original lease"); *accord* ECF No. 20-1, Ex. A, § 10.11 (stipulating that headings in 2005 JOA are for "convenience only" and "shall not be used to interpret or construe the meaning of any Articles or Sections").

8

2962192.4

*original* JOA of antitrust immunity. *Mahaffey v. Detroit Newspaper Agency*, 166 F.3d 1214 (Table), 1998 WL 739902, at *2 (6th Cir. 1998). The Court did not even address whether the amendment was enforceable. *Id*. The *Mahaffey* case is totally irrelevant here.

Finally, Plaintiff argues that even if the 2005 JOA were unapproved and unenforceable, the parties would revert back to the previously-terminated 1989 JOA "and the RJ would remain liable for its antitrust violations." ECF No. 50 at 11. This argument is not only legally wrong[4], it demonstrates why a stay of discovery is essential here. As discussed above, each of the alleged "predatory" acts upon which Plaintiff's antitrust claims are based arise from the enforcement of provisions in the 2005 JOA, which do not appear in the 1989 JOA. If the 1989 JOA were the operative agreement, Plaintiff would need to concoct a whole new theory of predatory conduct, requiring a whole new complaint.  Therefore, conducting premature discovery on the existing complaint would be a complete waste of time.

### 2. Plaintiff's Antitrust Claims Fail for Independent Reasons.

Plaintiff's antitrust claims also fail because Plaintiff has not alleged "antitrust injury" in the relevant market, which means Plaintiff does not have the requisite "antitrust standing" to bring this lawsuit. *See Eagle v. Star-Kist Foods, Inc.*, 812 F.2d 538, 539-41 (9th Cir. 1987). To have "antitrust standing," Plaintiff must allege harms that flow from injury to competition in the relevant market. *Id.*; *Somers v. Apple, Inc.*, 729 F.3d 953, 963-64 (9th Cir. 2013); *LiveUniverse, Inc. v. MySpace, Inc.*, 304 F. App'x 554, 557 (9th Cir. 2008). The relevant market defined by Plaintiff's complaint is the **"sale of local daily newspapers in Clark County**." ECF No. 1, ¶¶ 13, 37 (emphasis added). Plaintiff further alleges that "[t]he Review-Journal and the Sun together account for '100%' of this market." *Id.*, ¶ 41. The complaint concedes (as it must) that the Sun and the Review-Journal are *sold together* as a "**combined print media product**." ECF No. 1, ¶ 41 (emphasis added). By Plaintiff's own admission, consumers buy either the "single-media product," or they buy nothing at all. ECF No. 40, 9. The Sun is not separately available for sale.

---

[4] The general rule is that when parties enter a contract that violates the law, they are ***not*** returned to their previous positions when a court finds their contract unenforceable. *See George Foreman Assocs., Ltd. v. Foreman*, 389 F. Supp. 1308, 1315-16 (N.D. Cal. 1974).

9

2962192.4

ECF No. 1, ¶¶ 24, 27, 35, 41; ECF No. 40, 9. Therefore, based on Plaintiff's own allegations, the Review-Journal and the Sun, which are sold together as a "single media product," do **not** compete in the *sale* of local daily newspapers. Thus, a breach or termination of the 2005 JOA cannot harm competition, because competition does not exist in that market.

Plaintiff's complaint also fails to meet the Ninth Circuit's pleading requirement for alleging a facially plausible relevant market – a necessary predicate to any antitrust claim. *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120 (9th Cir. 2018). At the pleading stage, courts must apply their "judicial experience and common sense" to determine whether the market definition includes all economic substitutes for the product. *Id.* at 1120-1121; *see also Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1110 (7th Cir. 1984) (affirming Rule 12 dismissal and noting that district court need not "don blinders and … ignore commercial reality"). Plaintiff's complaint concedes that local news is delivered online (ECF No. 1, ¶ 38) but then implausibly alleges that the relevant market is strictly limited to the "sale of local daily newspapers" in Clark County with zero competition from internet or electronic delivery of news (or from local television and radio news). In the year 2019 (and, now, 2020), when most people access news electronically, it defies common sense – and is facially *implausible* – for Plaintiff to pretend that newspapers face no competition from online news sources. The cases cited by Plaintiff predate *Hicks*, are easily distinguishable, and are non-binding.[5]

Plaintiff's antitrust claims also fail because they violate the general rule that parties have no "duty to deal" with each other, and because they seek a radical expansion of antitrust law far beyond anything ever recognized by the Supreme Court. *See Verizon Commc'ns, Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 411 (2004). To be clear, the Review-Journal has

---

[5] *United States v. Tribune Publ'g Co.* was a TRO application, not a motion to dismiss. The issue was whether Google News, Apple News, and search engines—which do not "*generate* local content"—are substitutes for local news. No. CV 16-01822-AB (PJWX), 2016 WL 2989488, at *4 (C.D. Cal. Mar. 18, 2016). Here, Plaintiff concedes that websites generate local news. ECF No. 1, ¶ 38. Plaintiff also relies on *Community Publishers, Inc. v. DR Partners*, 139 F.3d 1180, 1184 (8th Cir. 1998), a three-page ruling that cursorily affirmed a narrow newspaper only market, but that case involved a factual record developed in the 1990s **before** the Internet as we know it even existed.

10

2962192.4

1  ***not*** terminated or threatened to terminate the 2005 JOA "unilaterally." Instead, the Review-
2  Journal merely sued Plaintiff in state court for breach of contract and to enforce the clause in the
3  2005 JOA—agreed to by the parties—that expressly permits termination for material breach. In
4  response to that lawsuit, Plaintiff is asking this Court to use federal antitrust law to enjoin the
5  Review-Journal from ***ever*** terminating the 2005 JOA, ***even if a court finds that Plaintiff***
6  ***materially breached*** the 2005 JOA, and ***even though the 2005 JOA allows for termination***. No
7  court has ever held that federal antitrust laws can usurp state contract law and impose such a
8  draconian duty to deal on a party to a contract that has been breached.

9        Plaintiff relies on *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, which the Supreme
10 Court has described as a "limited exception" that is "at or near the ***outer boundary*** of § 2 liability."
11 *Trinko*, 540 U.S. at 411. The unique facts in *Aspen Skiing* are not present here. In *Aspen Skiing*,
12 the defendant ski resort refused to continue a profitable joint lift ticket program with its rival. 372
13 U.S. 585, 603-11 (1985). *Aspen Skiing* did not involve or even mention any alleged breach of
14 contract, nor did it even remotely suggest barring a contracting party from suing in court for
15 breach of a contract that was expressly terminable for breach. Here, Plaintiff seeks to use federal
16 antitrust law to rewrite the parties' contract, dodge its contractual obligations, and ***force*** the
17 Review-Journal to perform for another 20 years, ***even if*** the state court finds Plaintiff in material
18 breach. *See* ECF No. 1, ¶ 108. Expanding *Aspen Skiing* to apply here would upend basic contract
19 law and create sweeping new antitrust law.

20       Finally, Plaintiff's Clayton Act Section 7 claim is equally meritless. Section 7 regulates
21 stock and asset acquisitions that harm competition. 15 U.S.C. § 18. Plaintiff concedes that none
22 of the Defendants is acquiring any entity's stock or assets, let alone in a manner that violates any
23 antitrust laws. *See* ECF No. 40 at 22. There is *not even a proposed merger or sale on the table*.
24 Therefore, there is not even a *threatened incipient* violation of the Clayton Act. *Id*. Moreover,
25 Plaintiff's arguments are entirely predicated on a hypothesized future transaction in which
26 *Plaintiff would be the seller*. *Id.* at 21-22. If Plaintiff chooses not to sell itself, none of the
27 anticompetitive effects it speculates about could ever even occur. Plaintiff cannot state a plausible
28 claim for relief based on its speculation, especially because the potential harm is a self-created

11

2962192.4

threat fully under Plaintiff's control. *See Datagate, Inc. v. Hewlett-Packard Co.*, 941 F.2d 864, 870 (9th Cir. 1991) (injunctive relief under Clayton Act requires "a 'cognizable danger' of injury not just a 'mere possibility'") (citation omitted).

### 3. The Alter-Ego Claims Against Mr. Adelson Are a Sham.

Rather than avoid the expense of burdensome discovery pending a ruling on the motions to dismiss, Plaintiff seeks to harass and annoy Defendants by threating an early deposition of Mr. Adelson despite what the Plaintiff claims is his "publicly known health crisis." ECF No. 50 at 20. This is especially troubling because Plaintiff's claims against Mr. Adelson – which are based on the theory that he is the "alter-ego" of the corporate defendants – are objectively baseless. Plaintiff does not even attempt to plead the necessary elements of an alter-ego claim.

To pierce the corporate veil, Plaintiff must plausibly allege a unity of interest between Mr. Adelson and the Review-Journal so great that one is inseparable from the other. *CORT Bus. Servs. Corp. v. Eleven23 Mktg., LLC*, No. 2:15-cv-02454-GMN-PAL, 2017 WL 701371, *3 (D. Nev. Feb. 22, 2017at *3). Plaintiff must also allege that the corporate form of the Review-Journal is a mere sham, façade, or legal fiction intended to shield Mr. Adelson from personal liability. *Id.*; *Gardner on Behalf of L.G. v. Eighth Jud. Dist. Ct.*, 405 P.3d 651, 656 (Nev. 2017); *North Arlington Med. Bldg., Inc. v. Sanchez Const. Co.*, 86 Nev. 515, 519 (1970). But Plaintiff fails to allege *any* of the recognized factors that would suggest the Review-Journal is a legal "fiction" (*e.g.*, undercapitalization, co-mingling of assets, failure to observe corporate formalities). ECF No. 36 at 8 (quoting *CORT*). Instead, Plaintiff bases its alter-ego claim entirely on accusations that Mr. Adelson owns and exercises control over the Review-Journal (ECF No. 36 at 8, n.6.) – a made-up standard for alter-ego liability that, if not rejected, would render nearly every corporate stakeholder with a hand in managing a corporation (including Sun owner Brian Greenspun) personally liable for the corporation's debts. This is obviously not the test for alter-ego liability, and Plaintiff does not come close to adequately pleading alter ego under the real standard.

### III. CONCLUSION

For the foregoing reasons, Defendants respectfully request an order staying discovery until the Court rules on the Motions to Dismiss.

DATED this 3rd day of January, 2020.

KEMP, JONES & COULTHARD, LLP

*/s/ Michael Gayan*
J. RANDALL JONES, ESQ., SBN 1927
MICHAEL J. GAYAN, ESQ., SBN 11135
MONA KAVEH, ESQ., SBN 11825
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169

RICHARD L. STONE, ESQ. (*pro hac vice*)
DAVID R. SINGER, ESQ. (*pro hac vice*)
AMY M. GALLEGOS, ESQ. (*pro hac vice*)
JENNER & BLOCK LLP
633 West 5th Street, Suite 3600
Los Angeles, California 90071

*Attorneys for Defendants*

## PROOF OF SERVICE

I hereby certify that on the 3rd day of January, 2020, I served a true and correct copy of the foregoing **REPLY IN SUPPORT OF DEFENDANTS' MOTION TO STAY DISCOVERY PENDING RESOLUTION OF DEFENDANTS' MOTIONS TO DISMISS** via the United States District Court's CM/ECF electronic filing system to all parties on the e-service list.

*/s/ Patty Pierson*
An employee of Kemp, Jones & Coulthard, LLP

2962192.4