E. LEIF REID, Nevada Bar No. 5750
KRISTEN L. MARTINI, Nevada Bar No. 11272
NICOLE SCOTT, Nevada Bar No. 13757
LEWIS ROCA ROTHGERBER CHRISTIE LLP
One East Liberty Street, Suite 300
Reno, NV 89501-2128
Tel: 775.823.2900
Fax: 775.823.2929
Email: lreid@lrrc.com
kmartini@lrrc.com
nscott@lrrc.com

JOSEPH M. ALIOTO, *PRO HAC VICE*
JAMIE L. MILLER, *PRO HAC VICE*
ALIOTO LAW FIRM
One Sansome Street, 35th Floor
San Francisco, CA 94104
Tel: 415.434.8900
Fax: 415.434.9200
Email: jmalioto@aliotolaw.com
jmiller@aliotolaw.com

JAMES J. PISANELLI, Nevada Bar No. 4027
TODD L. BICE, Nevada Bar No. 4534
JORDAN T. SMITH, Nevada Bar No. 12097
PISANELLI BICE PLLC
400 South 7th Street, Suite 300
Las Vegas, Nevada 89101
Telephone: 702.214.2100
Email: JJP@pisanellibice.com
TLB@pisanellibice.com
JTS@pisanellibice.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

LAS VEGAS SUN, INC., a Nevada corporation,

Plaintiff,

v.

SHELDON ADELSON, an individual and as the alter ego of News+Media Capital Group LLC and as the alter ego of Las Vegas Review Journal, Inc.; PATRICK DUMONT, an individual; NEWS+MEDIA CAPITAL GROUP LLC, a Delaware limited liability company; LAS VEGAS REVIEW-JOURNAL, INC., a Delaware corporation; and DOES, I-X, inclusive,

Defendants.

Case No. 2:19-CV-01667-GMN-BNW

**PLAINTIFF LAS VEGAS SUN, INC. AND NON-PARTY GREENSPUN MEDIA GROUP'S MOTION FOR PROTECTIVE ORDER AND MOTION TO QUASH ELIZABETH A. CAIN SUBPOENA**

Plaintiff Las Vegas Sun, Inc. ("Sun"), and non-party Greenspun Media Group ("GMG"), through counsel of Lewis Roca Rothgerber Christie LLP, Pisanelli Bice PLLC, and Alioto Law Firm, move for a protective order and an order quashing the RJ's[1] Subpoena Duces Tecum to Elizabeth A. Cain ("Cain Subpoena"). This Motion is made pursuant to Federal Rules of Civil Procedure 26 and 45, and is based on the following Memorandum of Points and Authorities, the attached Exhibits, and the pleadings and papers on file herein. The Sun has made a good-faith effort to meet and confer with the RJ before filing this Motion pursuant to LR 26-6(c), and its efforts were unavailing. *See* Ex. 1 ¶¶ 2-3 (Reid Decl.)

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

This case involves the RJ's predatory, anticompetitive, and monopolistic conduct in violation of the Sherman and Clayton Acts, and Nevada's Unfair Trade Practices Act. *See* ECF No. 1. Despite its refusal to file an Answer, the RJ has unleashed nearly 200 discovery requests upon the Sun under the thinly-veiled guise of exploring the viability of its yet-to-be-filed "counterclaim." It is clear from the RJ's discovery requests—duplicated in and highlighted by the Cain Subpoena—that the RJ's efforts are not directed to the relevant, proportional discovery of the claims and defenses asserted in this action. Rather, the RJ requests information not only already in its possession from the parties' prior arbitration, but information pertaining to already resolved claims. For the Sun's and GMG's financial documents encompassed in the RJ's expansive Requests in the Cain Subpoena (also sought through the RJ's Rule 34 requests to the Sun and third-party subpoena to GMG, it is clear that the RJ is intent on discovering—at the most granular level—the entire editorial and business operations of the Sun *and* its non-party parent company, GMG.

Ms. Elizabeth A. Cain is GMG's former consultant and C.P.A. who also served as an expert witness in an arbitration between the parties and is likely to serve as an expert witness in this action (on an issue distinct from her opinions rendered in the arbitration). Ex. 2 (Cain Subpoena). The Cain Subpoena demands production of information concerns already litigated issues and that, while

[1] Defendants are collectively referred to as the "RJ."

already in the RJ's possession, pertains to an issue already fully and completely resolved in the prior arbitration between the parties. The Cain Subpoena also requests Sun's and non-party GMG's financial records and other proprietary information that Ms. Cain obtained in the course of her service as an accountant and expert witness. The RJ's attempt to obtain the latter category of information was even rejected in the arbitration between the parties. Undeterred, through its Requests, the RJ is attempting to relitigate resolved issues and the relevance of the information, and obtain commercially sensitive and privileged information that it can use to further its monopolistic scheme to put the Sun out of business.

The Sun and GMG respectfully request an order quashing the Cain Subpoena or a protective order prohibiting discovery of information sought in the Cain Subpoena that is confidential, privileged, or not relevant or proportional to the needs of the case.

## II. PERTINENT FACTS

In order to apprehend how the information demanded in the Cain Subpoena bears on this action (it does not), the RJ's requests must be considered against the backdrop and context of: the parties' obligations and rights under their governing Amended and Restated [Joint Operating] Agreement ("JOA"), the parties' prior accounting disputes and arbitration in which the information sought was at issue, and Ms. Cain's involvement with the Sun during the parties' arbitration. This factual background, not previously explained to this Court since it is irrelevant to this lawsuit, demonstrates that the information the RJ now requests is an attempt by the RJ to relitigate already-resolved accounting disputes from the parties' prior arbitration.

### A. <u>The Parties Enter into the 1989 JOA and Amend It in 2005</u>

The Sun and the Review-Journal's prior owners, Donrey of Nevada, Inc., each had the firm belief that the continued publication of at least two newspapers of general circulation, editorially and reportorially separate and independent, was of paramount importance to the citizens of Las Vegas and its environs. *See* <u>Ex. 3</u> (1989 JOA). With the Sun facing financial struggles, in June 1989, the Sun and Donrey of Nevada, Inc., entered into a joint operating agreement, the 1989 JOA,

under the Newspaper Preservation Act of 1970, 15 U.S.C. §§ 1801-04. *See id.* at 3. The parties operated under the 1989 JOA for 15 years. *Compare* Ex. 3 *with* Ex. 4 (JOA, *infra*).

In 2005, the Review-Journal and the Sun executed the Amended and Restated [Joint Operating] Agreement (the "JOA"), in order to resolve disputes that had arisen between the parties, including an accounting dispute over the Review-Journal's underreporting of editorial costs. *See generally* Ex. 4. The Sun's compensation scheme was restructured to remove editorial costs from its payment calculation. In addition, the RJ is required to engage in commercially reasonable efforts to promote the Sun in equal prominence, and any independent promotion or promotion that does not feature the Sun in equal prominence RJ must be paid for separately by the RJ. *Id.* § 5.1.4.

The JOA also replaced the Sun's prior compensation scheme with "Annual Profits Payments" to the Sun. *Id.* at App'x D. After the first year, the amount of Annual Profits Payments was set to fluctuate in direct correlation with the amount of the joint EBITDA. *Id*. Higher operating expenses under the new compensation arrangement would therefore work to reduce the joint operation EBITDA and, consequently, lead to lower Annual Profits Payments to the Sun.

**B. The Sun's Obligations and Audit and Arbitration Rights Under the JOA**

Under the amended JOA, the RJ was in control of all aspects of non-editorial management of the parties' joint operation, and was in charge of calculating the Sun's Annual Profits Payments. *See generally* Ex. 4. The Sun's sole obligation under the JOA was to provide news and editorial content to the RJ in compliance with the technical procedures outlined in the JOA. *See id.* at Art. 4 & § 5.1. Nothing in the JOA directs how the Sun is to use its Annual Profits Payments, or otherwise directs the Sun's accounting procedures—the Sun's financial information and decisions have no bearing on the joint operation EBITDA. *See generally id.* Moreover, all news and editorial functions of the parties were to remain completely separate and independent of the other, including the parties' budgeting of their own respective news and editorial expenses. *See id.* at §§ 5.2 & 4.2.

Because of the RJ's control over the non-editorial aspects of JOA, the parties included an audit right exercisable only by the Sun. *See id.*, App'x D at 19-20. An audit was the Sun's sole mechanism by which it could ensure that the RJ was complying with the JOA and calculating the

joint operation EBITDA and the Sun's Annual Profits Payments properly. *See generally id*. The JOA's audit provision reads, in pertinent part:

> Sun shall have the right, exercisable not more than once every twelve months and only after providing written notification no less than thirty days prior thereto, to appoint a[ ] certified public accounting firm or law firm as Sun's representative to examine and audit the books and records of the Review-Journal and the other publications whose earnings are included in EBITDA for purposes of verifying the determinations of the changes to the Annual Profit Payments.

*Id*.

Ancillary to the Sun's audit right, the parties also provided for an alternative dispute resolution procedure, also exercisable only by the Sun. *Id*. The arbitration provision directs that if a dispute arises as to the amounts owed to the Sun, the parties shall resolve the dispute in AAA arbitration before a CPA arbitrator. *Id*.

### C. <u>The Sun Discovers the RJ's Violations of Section 4.2 of the JOA and Initiates Arbitration against the RJ's Predecessor</u>

In 2014, Brian Greenspun obtained sole ownership of the Sun. *See* https://lasvegassun.com/news/2014/jul/01/brian-greenspun-takes-control-las-vegas-sun-other-/ (last accessed June 24, 2020).[2] After Mr. Greenspun obtained ownership of the Sun, GMG retained Ms. Cain to examine GMG's operations, including its wholly-owned subsidiary, the Sun. Ex. 1 ¶ 7. Through Ms. Cain, the Sun discovered that the RJ had been charging its editorial costs against the joint operation EBITDA in violation of Section 4.2 and other provisions of the JOA. *Id.* It is undisputed that the Sun challenged the RJ's predecessor Stephens Media's charging of the Review-Journal's editorial cost to the joint operation EBITDA in 2014.

In March 2015, the Sun sued Stephens Media over interpretation of Section 4.2 of the JOA, the "editorial cost dispute." *See id.* ¶ 8. The case was compelled to arbitration after appeal to the

---

[2] This Court "may judicially notice a fact that is not subject to reasonable dispute because it . . . is generally known within the trial court's territorial jurisdiction . . . or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *Intri-Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007) ("[A] court may take judicial notice of matters of public record . . . .").

Nevada Supreme Court in May 2016. *Id*. Ms. Cain testified as a fact witness and expert witness in that arbitration in 2016. *Id.*

**D. Adelson Purchases the Review-Journal Amidst the Editorial Cost Dispute Litigation**

On December 10, 2015, while Stephens Media's request to compel arbitration was on appeal to the Nevada Supreme Court, Adelson secretly purchased the Review-Journal. *See* ECF No. 1 ¶¶ 7, 49-50. The Sun and Stephens settled the editorial cost lawsuit during arbitration in November 2016 by way of confidential agreement that released all claims against Stephens Media and GateHouse only and up to the date of News+Media's purchase. *See* Ex. 1 ¶ 8.

**E. The Sun Initiates a State Court Action and Subsequently Arbitrates the RJ's Accounting Violations in 2019**

Because the RJ continued to unlawfully charge its editorial costs against the joint operation EBITDA under Adelson's stewardship (despite the Stephens Media settlement), and the RJ's accounting violations exploded exponentially, the Sun initiated the state court action in April 2018, alleging accounting violations under the JOA. *See generally* ECF No. 1 at 26; Ex. 1 ¶ 9. The editorial cost dispute, and other disputes affecting the Sun's Annual Profits Payments, were again compelled to arbitration pursuant to the JOA. *See* Ex. 1 ¶ 9.

In the 2019 arbitration between the parties, the Sun retained Ms. Cain as a testifying expert to opine on the RJ's deviation from the prescribed methodology for calculating the joint operation EBITDA, including the RJ's improper deduction of its separate editorial and promotional costs. *Id.* ¶ 10. The RJ subpoenaed Ms. Cain in the arbitration ("2019 Subpoena"), demanding: (1) all documents concerning her expert opinions; (2) all communications between her and the Sun concerning her expert opinions; (3) all communications between her and the Sun concerning the EBITDA calculations under the JOA; and (4) all communications between her and News+Media Capital Group LLC and Las Vegas Review-Journal, Inc., concerning the EBITDA calculations under the JOA. *Id.* The RJ's basis for the information requested in the 2019 Subpoena was to address contract interpretation issues under the amended JOA, and also to show that the Sun had waived or was estopped from challenging the RJ's editorial costs charges to the joint operation

EBITDA (the 4.2 dispute), for Ms. Cain's discovery came after the RJ had been charging its editorial costs for years. *Id.* The arbitrator recognized that the 2019 Subpoena was overbroad and narrowed the requests. *Id.* Pursuant to the arbitrator's ruling, Ms. Cain produced a list of RJ documents she considered in her calculations, a retainer agreement, a stipulated confidentiality and protective order governing Ms. Cain's production of responsive documents, and spreadsheets of calculations of the joint operation EBITDA. *Id.*

Ms. Cain then appeared and testified during the arbitration, and was examined at length by the RJ as to: how she was involved in examining GMG and in doing so she examined the JOA with the Sun, when and how she discovered the RJ was charging its editorial costs to the joint operation, and her interpretation of the JOA. *Id.* ¶ 11. The RJ has the transcripts in which Ms. Cain testified under oath in its possession.

In the arbitration, the RJ also served a Request for Production of Documents that sought documents relating to: the allocation of expenses for news and editorial work, content, and employees; payments to the Sun, how the Sun used the payments it received, and the Sun's expenses and revenues. *Id.* ¶ 12. The arbitrator denied each of those requests. *Id.*

In the final arbitration award, the arbitrator found in favor of the Sun, ruling that the RJ could not charge its separate advertising costs to the joint operation EBITDA and that the Sun was entitled to an audit. *Id.* ¶ 13. The arbitrator rejected the RJ's arguments related to the Sun's discovery of the RJ's editorial cost charges in 2014. *Id.* The district court confirmed the arbitration award. *Id.*

**F. <u>This Action and the RJ's Issuance of the Cain Subpoena</u>**

Apparently displeased with the result of the arbitration, the RJ attempted to terminate the JOA. *See* ECF No. 1. The Sun filed this action, alleging that the RJ has engaged in predatory, anticompetitive, and monopolistic conduct in violation of the Sherman and Clayton Acts, and Nevada's Unfair Trade Practices Act. *See id.* The RJ has not yet filed an Answer, but it has served nearly 200 discovery requests upon the Sun (among other third-party subpoenas).

The RJ served the Cain Subpoena on Ms. Cain on June 10, 2020. *See* Ex. 2. The Cain Subpoena contains 10 requests relating to all of Ms. Cain's communications and the work she performed as an accountant and as an expert witness for the Sun and GMG. *Id.* The RJ's requests are not limited in time or scope. *See id.* Specifically, the RJ makes the following requests, among others not challenged here:

> **REQUEST FOR PRODUCTION NO. 1:**
> Produce all DOCUMENTS containing or evidencing YOUR advice or analysis concerning the Joint Operating Arrangement between the SUN and the REVIEW-JOURNAL, including any reports, which YOU prepared prior to being retained as an expert witness in the ARBITRATION.
>
> **REQUEST FOR PRODUCTION NO. 2:**
> Produce all DOCUMENTS containing or evidencing YOUR advice or analysis concerning the Joint Operating Arrangement between the SUN and the REVIEW-JOURNAL, including any reports, which YOU prepared after being retained as an expert witness in the ARBITRATION.
> . . . .
>
> **REQUEST FOR PRODUCTION NO. 5:**
> Produce all DOCUMENTS containing or evidencing YOUR communications with the SUN or GREENSPUN MEDIA GROUP concerning the Joint Operating Arrangement between the SUN and the REVIEW-JOURNAL.
> . . . .
>
> **REQUEST FOR PRODUCTION NO. 7:**
> Produce all DOCUMENTS concerning YOUR interpretation of any provision of the Joint Operating Arrangement between the SUN and the REVIEW-JOURNAL.
>
> **REQUEST FOR PRODUCTION NO. 8:**
> Produce all DOCUMENTS concerning any agreements (*e.g.*, engagement letters/agreements, confidentiality agreements), including drafts of any such agreements, between YOU and the SUN or GREENSPUN MEDIA GROUP.
>
> **REQUEST FOR PRODUCTION NO. 9:**
> Produce all DOCUMENTS concerning or evidencing any internal or external communications regarding disputes between the SUN or GREENSPUN MEDIA GROUP on the one hand, and the REVIEW-JOURNAL and its current or former owners on the other hand.
>
> **REQUEST FOR PRODUCTION NO. 10:**
> Produce all DOCUMENTS concerning or evidencing any internal or external communications regarding (1) the litigation captioned *Las Vegas Sun, Inc. v. Adelson, et al.*, No. 2:19-cv-01667-GMN-BNW, pending in the United States

> District Court for the District of Nevada; (2) the litigation captioned *Las Vegas Sun, Inc. v. News+Media Capital Group LLC, et al.*, No. A-18-772591-B, pending in the Eighth Judicial District Court for the State of Nevada; and (3) the arbitration captioned *Las Vegas Sun, Inc. v. News+Media Capital Group LLC, et al.*, AAA Case No. 01-18-0000-7567.

*Id*.

The parties have been meeting and conferring weekly, if not two times each week, on their victory discovery disputes. Ex. 1 ¶ 2-3. On Monday, June 22, 2020, while the parties were on a meet and confer, the Sun requested that the parties meet and confer on the Cain Subpoena, since the 14-day deadline to file a motion was Wednesday, June 24, 2020. *Id.* ¶ 3. The RJ stated that it was not prepared to discuss the Cain Subpoena and asked that the Sun and GMG send a letter identifying their objections. *Id.* The Sun was agreeable to the request, and sent its letter on Tuesday morning, June 23, 2020, asking for available times to conduct the meet and confer that day. *Id.* The RJ did not respond. *Id.* On Wednesday morning, June 24, 2020, the Sun sent a follow-up email inquiring about a meet and confer time the same day. *Id.* The RJ, again, did not respond to the Sun's email and has not responded as of the filing of this Motion. *Id.* The Sun has made a good faith effort to meet and confer with the RJ before filing this Motion. *Id.*

## III. STANDARD OF REVIEW

"[B]road discretion is vested in the trial court to permit or deny discovery." *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002); *see also Crawford-El v. Britton*, 523 U.S. 574, 598 (1998). Discovery is limited to nonprivileged matters that are "relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefits." Fed. R. Civ. P. 26(b)(1). Courts must limit discovery where it is outside the scope of Rule 26(b)(1) or unreasonably cumulative or duplicative. Fed. R. Civ. P. 26(b)(2)(c).

"The scope of discovery under a subpoena issued pursuant to Rule 45 is the same as the scope of discovery allowed under Rule 26(b)(1)—material that is relevant to a claim or defense of

any party." *Playstudios, Inc. v. Centerboard Advisors, Inc.*, No. 2:18-CV-01423-JCM-NJK, 2019 WL 8128168, at *2 (D. Nev. July 18, 2019); *see also Painters Joint Committee v. Employee Painters Trust Health & Welfare Fund*, Case No. 2:10-cv-1385-JCM-PAL, 2011 WL 4573349, at *5 (D. Nev. Sept. 29, 2011) ("It is well established that the scope of discovery under a subpoena issued pursuant to Rule 45 is the same as the scope of discovery allowed under Rule 26(b)(1)."). Accordingly, quashing a subpoena or entering a protective order against the production of documents is appropriate where the documents are not relevant or unreasonably cumulative or duplicative. *Acosta v. Wellfleet Commc'ns, LLC*, No. 2:16-CV-02353-GMN-GWF, 2017 WL 5180425, at *6 (D. Nev. Nov. 8, 2017). In addition, Rule 45 requires courts to quash or modify a subpoena that requires disclosure of privileged or other protected matter, and it permits courts to quash a subpoena that requires disclosure of a trade secret or other confidential commercial information. Fed. R. Civ. P. 45(d)(3).

## IV. A PROTECTIVE ORDER AND/OR AN ORDER QUASHING THE CAIN SUBPOENA IS NECESSARY

### A. The Sun and GMG Have Standing to Challenge the Cain Subpoena

A party to an action may challenge a third-party subpoena where "the party claims a personal right or privilege with respect to the documents requested in the subpoena." *G.K. Las Vegas Ltd. Partnership v. Simon Property Group, Inc*., Case No. 2:04-cv-1199-DAE-GWF, 2007 WL 119148 at* 4 (D. Nev. Jan. 9, 2007). Accordingly, a party can "move for a protective order in regard to a subpoena issued to a non-party if it believes its own interest is jeopardized by discovery sought from a third party and has standing under Rule 26(c) to seek a protective order regarding subpoenas issued to non-parties which seek irrelevant information." *Id.*; *see also* Fed. R. Civ. P. 26(c)(1); *First Am. Title Ins. Co. v. Commerce Assocs., LLC*, 2017 WL 53704, at *1 (D. Nev. Jan. 3, 2017). Likewise, a party has standing to quash or modify the subpoena where the subpoena may violate or undermine a personal right or privilege of the objecting party." *Copper Sands Home Owners Ass'n, Inc. v. Copper Sands Realty, LLC*, 2:10-CV-00510-GMN-LR, 2011 WL 112146, at *2 (D. Nev. Jan. 13, 2011).

The Sun and GMG may challenge the Cain Subpoena because they have and are asserting their personal right or privilege with respect to the documents requested in the Cain Subpoena. Much of the information requested in the Cain Subpoena belongs to the Sun and GMG, and it is still within the Sun's and/or GMG's control. Further, the information is commercially sensitive, and disclosure would undermine the Sun and GMG's interests. *See, e.g.*, *id.* (granting parties' request for protective order and to quash a third-party subpoena, reasoning that the parties' financial affairs were "private and thus deserving of protection" and that the subpoena sought "a vast amount of information" unrelated to the claims at issue). Because the Sun's and GMG's interests would be jeopardized by the disclosure of information that the RJ seeks, they have standing to seek a protective order and an order quashing the Cain Subpoena.

**B. <u>The Information the Subpoena Seeks Information Outside the Scope of Discoverable Information under Federal Rule of Civil Procedure 26(b)(1)</u>**

An order prohibiting discovery is appropriate here because the information the RJ requests in the Cain Subpoena is not relevant to this dispute or proportional to the needs of the case, and is also duplicative. The only claims at issue in this dispute are the Sun's antitrust and unfair competition claims arising out of the RJ's predatory, anticompetitive, and monopolistic conduct. *See* ECF No. 1. The information sought (without any time limitation) is not relevant to those claims or any defense to those claims. Given the lack of probative value, and the RJ's current possession of some of the information sought, it should not be allowed.

Courts must limit discovery where it is not relevant or proportional in light of the importance of the discovery in resolving the issues in dispute. Fed. R. Civ. P. 26(b)(2)(c)(ii). Indeed, the purpose of the 2015 amendments to Rule 26 was to encourage judges to exercise their discretion "to limit and tailor discovery to avoid abuse and overuse" by emphasizing "the need to impose reasonable limits on discovery through increased reliance on the common-sense concept of proportionality." *Acosta v. Wellfleet Communications, LLC*, 2:16-CV-02353-GMN-GWF, 2017 WL 5180425, at *4 (D. Nev. Nov. 8, 2017) (internal quotations omitted).

A court should quash a subpoena or enter a protective order precluding discovery where the subpoena seeks information that is not relevant or proportional to the needs of the case. *See, e.g.*, *Copper Sands Home Owners Ass'n, Inc.*, 2011 WL 112146, at *2 (granting parties' request for protective order and to quash third party subpoena where the subpoena sought "a vast amount of information" unrelated to the claims at issue); *Desert Valley Painting & Drywall v. United States*, 829 F. Supp. 2d 931, 939-40 (D. Nev. 2011) (granting motion for protective order where discovery of employees' "internal analysis, impressions or conclusions" were not relevant). Even where the party seeking protection does not have a legally protected privacy interest, the court may prohibit discovery if the records are not relevant or are only relevant as to a specific time period. *Acosta*, 2017 WL 5180425, at *6; *Desert Valley Painting & Drywall*, 829 F. Supp. 2d at 939-40.

As further explained below, the RJ's Request Nos. 1, 2, 5, 7, 8, and 9 seek information from Ms. Cain that is not relevant or proportional to the needs of the case. As applied to the Sun's information, the RJ's wide-ranging requests seeking information concerning the Sun's finances and Ms. Cain's analysis of the JOA is not relevant in this dispute, having already been resolved in the arbitration between the parties, and where the claims at issue in this case involve the RJ's anticompetitive conduct. The RJ cannot relitigate whether its accounting violations were sanctioned by the JOA, or the lapse of time before Ms. Cain discovered the RJ's illegal charges in 2014. Further, even pretending that a financial analysis of the monies due to the Sun under the JOA could somehow be deemed relevant in this case, that information is already in the possession of the RJ from the prior arbitration. As for the financials of GMG or the Sun, the arbitrator also correctly decided that the RJ is not entitled to this discovery, because the RJ is the partner under the JOA who manages the joint operation and its finances—not the Sun. The same analysis applies here and now.

More specifically, Request Nos. 1 and 2, pertaining only to the Sun, seek all documents "containing or evidencing [Ms. Cain's] advice or analysis concerning the Joint Operating Arrangement between the SUN and the REVIEW-JOURNAL, including any reports" that she prepared before or after being retained as an expert witness in the arbitration. Ex. 2 at 3. Those

Requests are not probative of the only claims pending in this lawsuit—the Sun's antitrust and unfair competition claims, each of which arises out of the RJ's predatory, anticompetitive, and monopolistic conduct in an attempt to eliminate the Sun. The JOA's relevance due to the RJ seeking to terminate it and eliminate the Sun by virtue of its dominant position under the JOA does not extend to Ms. Cain's "advice or analysis" of the JOA. That advise or analysis is limited to the RJ's improper deductions from the parties' joint operation EBITDA and failure to pay amounts due to the Sun—which have already been litigated by these parties and resolved in arbitration, and confirmed by the state court. The RJ cannot relitigate the now-resolved accounting disputes in this, or any, forum. Moreover, Ms. Cain has already produced her expert report from the arbitration, her calculations of EBITDA under the JOA, and the documents she considered in support of her calculations. Therefore, the RJ's Request Nos. 1 and 2 seeking duplicative information already in its possession from the unrelated and already-concluded arbitration should be rejected.

Concerning Request No. 5 of the Cain Subpoena, applying to both the Sun and GMG, it seeks production of "all DOCUMENTS containing or evidencing [Ms. Cain's] communications with the SUN or GREENSPUN MEDIA GROUP concerning the Joint Operating Arrangement between the SUN and the REVIEW-JOURNAL." Ex. 2 at 3. Like Request Nos. 1 and 2, Request 5 seeks the same kind of irrelevant information because Ms. Cain's communications with the Sun and GMG concerning the JOA were, again, limited to the Sun's and GMG's finances and the calculation of amounts due to the Sun under the JOA. This request seeks information that is outside the scope of discoverable information. The RJ's Request No. 7 seeking "documents concerning [her] interpretation of any provision of the Joint Operating Agreement" should be rejected for the same reason. *Id*.

Finally, Request Nos. 8 and 9 seek production of "all DOCUMENTS concerning any agreements (*e.g.*, engagement letters/agreements, confidentiality agreements), including drafts of any such agreements, between [Ms. Cain] and the SUN or GREENSPUN MEDIA GROUP," and "all DOCUMENTS concerning or evidencing any internal or external communications regarding disputes between the SUN or GREENSPUN MEDIA GROUP on the one hand, and the REVIEW-

JOURNAL and its current or former owners on the other hand," respectively. *Id.* at 4. Documents concerning Ms. Cain's retention as an accountant and expert witness are not probative of the RJ's conduct or its antitrust liability, so they are not relevant to the claims or defenses at issue here, and the Request is not proportional to the needs of the case. The RJ already has possession of Ms. Cain's prior engagements and confidentiality agreements with the Sun, and communications with the RJ through its 2019 Subpoena and in document disclosures in the arbitration.

Because Request Nos. 1, 2, 5, 7, 8 and 9 seek information that is not relevant or proportional to the needs of the case, the Court should quash these Requests or enter a protective order forbidding the discovery.

### C. <u>The Subpoena Seeks Information that is Privileged, Confidential, and Commercially Sensitive</u>

A subpoena must be quashed or modified where it requires disclosure of privileged or other protected matter, and a subpoena may be quashed where it requires disclosure of a trade secret or other confidential commercial information. Fed. R. Civ. P. 45(d)(3). Where an objecting party meets that initial burden of showing the information is a trade secret or confidential commercial information, "'the burden shifts to the requesting party to show a substantial need for the testimony or material that cannot be otherwise met without the undue hardship.'" *See Walker v. Intelli-Heart Services, Inc.*, 3:18-CV-00132-MMD-CBC, 2019 WL 1028001, at *5 (D. Nev. Mar. 4, 2019) (quoting *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 686 (N.D. Cal. 2006)); *see also Hartley Pen Co. v. U.S. Dist. Court*, 287 F.2d 324, 331 (9th Cir. 1961) (reasoning that the party seeking to invade a person's privacy bears the burden of establishing adequate reasons to justify production). Establishing a substantial need requires a showing that "the requested discovery is relevant and essential to a judicial determination of [the party's] case." *Id.*; *see also* Fed. Prac. & Proc. Civ. § 2043 (3d ed.) ("If the party seeking discovery fails to show that the trade secret or other confidential information it is seeking is necessary and relevant, discovery will be denied."). The substantial-need inquiry is "particularly important" where discovery of confidential commercial information is sought from a non-party. *Walker*, 2019 WL 1028001, at *5.

The Rules of Civil Procedure recognize the confidentiality interest in communications with an expert witness. Draft expert reports and communications between a party's attorney and an expert witness are work-product privileged except to the extent they relate to the expert's compensation for her study or testimony, identify facts or data that the attorney provided and the expert considered in forming her opinion, or identify assumptions that the attorney provided and the expert relied on in forming her opinions. Fed. R. Civ. P. 26(b)(4). Nevada provides the same protection. *See* Nev. R. Civ. P. 26(b)(4).

Likewise, special protection is afforded to communications with accountants. While no accountant-client privilege exists in federal common law, *Couch v. United States*, 409 U.S. 322, 335-36 (1973), Nevada law recognizes the accountant-client privilege, as codified in NRS 49.185.[3] The fact that all communications with Ms. Cain during her consultation for GMG and the Sun from 2014 to 2016 occurred in Nevada demonstrates the privacy interest that the Sun and GMG had in their communications with Ms. Cain. They shared commercially sensitive information with her understanding that it would not be discoverable in subsequent litigation. As to Ms. Cain's examination of the Sun under the JOA, any accounting dispute that she discovered in her investigation was subject to AAA arbitration, governed by Nevada law. Under the facts of this case, the accountant-client privilege should be recognized here. Even if this Court does not treat the communications with Ms. Cain as protected by the accountant-client privilege, the communications should still be treated as private and commercially sensitive. *See, e.g.*, *Copper Sands Home Owners Ass'n, Inc. v. Copper Sands Realty, LLC*, 2:10-CV-00510-GMN-LR, 2011 WL 112146, at *2 (D.

---

[3] NRS 49.185 provides that:

> A client has a privilege to refuse to disclose, and to prevent any other person from disclosing, confidential communications:
>
> 1. Between the client or the client's representative and the client's accountant or the representative of the client's accountant.
>
> 2. Between the client's accountant and the accountant's representative.
>
> 3. Made for the purpose of facilitating the rendition of professional accounting services to the client, by the client or the client's accountant to an accountant representing another in a matter of common interest.

Nev. Jan. 13, 2011) (granting parties' request for protective order and to quash third party subpoena, reasoning that the parties' financial affairs were "private and thus deserving of protection" and that the subpoena sought "a vast amount of information" unrelated to the claims at issue); *In re Subpoena of DJO, LLC*, 295 F.R.D. 494, 500 (S.D. Cal. 2014) (quashing part of subpoena that sought disclosure of business projections where the party seeking discovery failed to demonstrate a substantial need for the information).

Request Nos. 1, 2, 5, 7, 9, and 10 of the Cain Subpoena should be quashed, or a protective order prohibiting discovery should be entered, because those Requests seek confidential, commercially sensitive, and privileged information, including data regarding the sales, pricing, advertising contracts, customers, and revenues for competing, non-JOA publications. Given that the RJ cannot demonstrate a substantial need for the information, the RJ cannot overcome the Sun's and GMG's confidentiality interest in the information.

To elaborate, Request Nos. 1, 2, and 7 seek Ms. Cain's advice, analysis, or interpretation concerning the JOA. These requests demand confidential and commercially sensitive information and communications between the Sun and GMG, on one hand, and their accountant and expert witness, on the other hand. Besides the information the RJ obtained during the arbitration and its full examination of Ms. Cain, the only advice or analysis that Ms. Cain provided was within the scope of her retention as an accountant and expert witness. She has already disclosed her opinions in the expert report and other documents she produced in the arbitration between the parties. To the extent there were communications between Ms. Cain and the Sun's attorneys, or there are drafts of her report, those documents are work-product protected pursuant to Rule 26(b)(4). Further, given that these Requests seek information that is not relevant, the RJ cannot demonstrate that it has a substantial need for this information.

Request Nos. 5, 9, and 10 seek communications between Ms. Cain and any other person concerning: the JOA; disputes between the Sun or GMG, on one hand, and the RJ or its owners, on the other hand; and this litigation, the state-court litigation, and the AAA arbitration. The communications sought are precisely the type of information protected by Rule 26(b)(4). And to

the extent there were communications with the Sun's or GMG's lawyers about the disputes or the litigation with the RJ, they are protected as work product. Ms. Cain's communications with the Sun or GMG in her capacity as their accountant were confidential, and the Sun and GMG relied on the privacy of those communications. Further, to the extent the communications involved projections including sales, pricing, costs and revenues, or other business and financial information, including involving competing non-JOA entities, those communications are confidential commercial information. *Sci. Games Corp. v. AGS LLC*, 2:17-CV-00343-JAD-NJK, 2018 WL 2292811, at *4 (D. Nev. May 18, 2018) (reasoning that "confidential projections about product development, including sales, costs[,] and royalties" appear to be well within the scope of trade secrets or confidential commercial information). To the extent Ms. Cain had any communications that were not protected, they have already been disclosed to the RJ in the arbitration proceedings.

## V. CONCLUSION

For the foregoing reasons, the Sun and GMG seek an order quashing the Cain Subpoena or a protective order precluding discovery of information that is confidential, privileged, or not relevant or proportional to the needs of the case.

DATED this 24th day of June, 2020.

LEWIS ROCA ROTHGERBER CHRISTIE LLP

By: */s/ E. Leif Reid*

E. Leif Reid, Bar No. 5750
Kristen L. Martini, Bar No. 11272
Nicole Scott, Bar No. 13757
One East Liberty Street, Suite 300
Reno, Nevada 89501

PISANELLI BICE PLLC
James J. Pisanelli, Bar No. 4027
Todd L. Bice, Bar No. 4534
Jordan T. Smith, Bar No. 12097
400 South 7th Street, Suite 300
Las Vegas, Nevada

ALIOTO LAW FIRM
Joseph M. Alioto, *Pro Hac Vice*
Jamie L. Miller, *Pro Hac Vice*

One Sansome Street, 35th Floor
San Francisco, California 94104

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

Pursuant to Federal Rule of Civil Procedure 5(b), I certify that I am an employee of Lewis Roca Rothgerber Christie LLP, and that on the 24th day of June, 2020, I caused the foregoing **PLAINTIFF LAS VEGAS SUN, INC. AND NON-PARTY GREENSPUN MEDIA GROUP'S MOTION FOR PROTECTIVE ORDER AND MOTION TO QUASH ELIZABETH A. CAIN SUBPOENA** to be served by electronically filing the foregoing with the CM/ECF electronic filing system, which will send notice of electronic filing to:

J. Randall Jones, Esq.
Michael J. Gayan, Esq.
Mona Kaveh, Esq.
KEMP, JONES, & COULTHARD
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169

Richard L. Stone, Esq.
Amy M. Gallegos, Esq.
David R. Singer, Esq.
JENNER & BLOCK LLP
633 West 5th Street, Suite 3600
Los Angeles, California 90071

*/s/ Jessie M. Helm*
Employee of Lewis Roca Rothgerber Christie LLP

**EXHIBIT LIST**

| Ex. No. | Description | No. of Pages |
|---|---|---|
| 1 | Declaration of E. Leif Reid | 7 |
| 2 | Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action, Elizabeth A. Cain (July 9, 2020) | 7 |
| 3 | Joint Operating Agreement (1989 JOA) | 44 |
| 4 | Amended and Restated [Joint Operating] Agreement (JOA) | 25 |