E. LEIF REID, Nevada Bar No. 5750
KRISTEN L. MARTINI, Nevada Bar No. 11272
NICOLE SCOTT, Nevada Bar No. 13757
LEWIS ROCA ROTHGERBER CHRISTIE LLP
One East Liberty Street, Suite 300
Reno, NV 89501-2128
Tel:    775.823.2900
Fax:    775.823.2929
Email: lreid@lrrc.com
            kmartini@lrrc.com
            nscott@lrrc.com

JOSEPH M. ALIOTO, *PRO HAC VICE*
JAMIE L. MILLER, *PRO HAC VICE*
ALIOTO LAW FIRM
One Sansome Street, 35th Floor
San Francisco, CA 94104
Tel: 415.434.8900
Fax: 415.434.9200
Email: jmalioto@aliotolaw.com
            jmiller@aliotolaw.com

JAMES J. PISANELLI, Nevada Bar No. 4027
TODD L. BICE, Nevada Bar No. 4534
JORDAN T. SMITH, Nevada Bar No. 12097
PISANELLI BICE PLLC
400 South 7th Street, Suite 300
Las Vegas, Nevada 89101
Telephone: 702.214.2100
Email: JJP@pisanellibice.com
            TLB@pisanellibice.com
            JTS@pisanellibice.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| LAS VEGAS SUN, INC., a Nevada corporation,<br><br>            Plaintiff,<br><br>v.<br><br>SHELDON ADELSON, an individual and as the alter ego of News+Media Capital Group LLC and as the alter ego of Las Vegas Review Journal, Inc.; PATRICK DUMONT, an individual; NEWS+MEDIA CAPITAL GROUP LLC, a Delaware limited liability company; LAS VEGAS REVIEW-JOURNAL, INC., a Delaware corporation; and DOES, I-X, inclusive,<br><br>            Defendants. | Case No. 2:19-CV-01667-GMN-BNW<br><br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL LAS VEGAS SUN, INC. TO RESPOND TO DEFENDANTS' FIRST SET OF REQUESTS FOR PRODUCTION (ECF NO. 77)** |

111649345.1

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.     INTRODUCTION

3         The RJ[1] is using the discovery process in this case to overreach into the Sun's business

4 operations to pilfer every minute detail of its financial, and editorial and reportorial operations. The

5 RJ is doing so not in defense of this antitrust action, but rather in furtherance of the RJ's

6 monopolistic scheme to shutter the Sun. The RJ's 166 Requests for Production of Documents and

7 arguments as to why it needs the disputed information reveal the RJ's motives. Preliminarily, the

8 RJ's requests are written in such a way that their defects are glaring from even the most basic

9 reading. The RJ's requests are so overbroad that fully responding to them would not only be

10 impossible, and in some cases cumulative and duplicative, but also unduly burdensome and

11 expensive, taking into account any benefit that might be achieved, the needs of the case, and the

12 significance of the issues. Indeed, the discovery in this antitrust action will necessarily be time

13 consuming and expensive; however, the RJ cannot use the discovery process as a sword, unduly

14 burdening the Sun to obtain information that is outside the scope of allowable discovery under Rule

15 26, particularly where the RJ seeks solely to perpetuate its predatory conduct already at issue in

16 this case. Here, the attempted monopolist has purposefully and specifically designed requests to get

17 even more information about not just its competitor in the JOA, but nonparty affiliates whose

18 businesses compete with the RJ's other businesses, all of which are outside the JOA. Considering

19 the RJ's anticompetitive activity to date, the RJ's continued exploitation necessarily carries a hefty

20 risk, one that is far too dangerous to sanction in this process. The RJ's discovery violates the proper

21 scope and limits of discovery under the Rules and must be denied.

22         In its Motion to Compel Las Vegas Sun, Inc. to Respond to Defendants' First Set of

23 Requests for Production ("Motion," ECF No. 77), the RJ distorts the relevancy lens this Court

24 considers during discovery disputes. One pleading is on file in this case, and it belongs to the Sun.

25 The RJ's skewed adaptation of the Sun's complaint cannot reframe the genuine issues in the case.

26

27 ───────────────
[1] Defendants are collectively referred to herein as the "RJ."

28                                          - 1 -

Because discovery can only be permitted where relevant to the actual claims, the RJ's far-reaching, unspecific, and unrelated requests do not warrant granting the Motion.

As discussed more specifically herein, the RJ asks this Court to compel the Sun to respond to five overreaching groups of requests. First, under the guise of testing the relevant market in this antitrust action, the RJ demands the Sun respond to overbroad and vague discovery requests about "competition" leaving the Sun to guess what possible documents, from what possible geographic location, and what possible products or services could be responsive. Second, the RJ indistinctly asserts the Sun's damages are common losses or were caused by the Sun itself through mismanagement, and thus complete discovery on every aspect of not only the Sun's finances, but its non-party parent and affiliate entities must be had. The RJ's miscomprehension of the types of damages actually asserted by the Sun do not merit this invasive and inappropriate discovery. Crucially, and undisputedly, the Sun's sole revenue source is its Annual Profits Payments and the RJ has not paid the Sun for years.

Third, the RJ complains that it should be allowed to pursue every possible legal theory in support of its state court counterclaim under the pretext that it is merely testing the merits of the Sun's sham litigation assertions. The standard for determining whether the RJ's post-arbitration-loss assertion of a counterclaim is a sham is whether the RJ's contract-based claims are "*objectively baseless*." Determining whether the RJ's counterclaim is objectively baseless does not require any discovery: The RJ's counterclaim is governed by the JOA itself, and its merit can be determined as a matter of law. Thus, due to the nature of the RJ's counterclaims, the RJ's numerous vague and overbroad requests using its sham counterclaims as an excuse to dredge around into the Sun's and non-parties' financial and editorial affairs are neither relevant, nor proportional to the needs of the case.

Fourth, the RJ demands that the Sun either breach its confidentiality obligations, or, track down the Review-Journal's[2] own predecessors to obtain waivers—for the second time—to release the confidential settlement agreement and related documents from a previous litigation. Not only

---

[2] As used herein, the "Review-Journal" refers to the Las Vegas Review Journal newspaper.

do these actions far exceed the scope of the Sun's discovery obligations, but the RJ's request is duplicative and astonishingly unnecessary because the RJ already has these documents from the first time it requested a waiver just last year.

Finally, the RJ includes a catchall argument demanding the Sun produce all documents from non-parties Greenspun Media Group and lasvegassun.com. The RJ suggests the Sun is avoiding its discovery obligations by objecting to the requests. Not only are these entities not parties to the case, they are not parties to the JOA. The RJ's myriad requests are not relevant to the Sun's claims.

Analyzing the Sun's actual complaint shapes the discovery issues in this case, and the RJ's requests far exceed the scope of discovery. As such, the RJ's Motion is without merit and should be denied.

## II.   PERTINENT FACTUAL BACKGROUND[3]

The RJ misstates the facts,[4] and the Sun corrects the following inaccurate statements:

Multiple tribunals have found that the RJ has improperly withheld the Sun's Annual Profits Payments. Yet, the RJ asserts that the Sun has been "complaining about the Sun's compensation under the 2005 JOA and suing the Review-Journal for more money, for nearly 15 years without regard to who owned the Review-Journal." ECF No. 77 at 4. The RJ seeks to diminish the Sun's legitimate concerns and characterize the Sun as litigious—irrespective of the Review-Journal's owner—to place itself in the same category as its predecessors. Yet, the RJ omits several significant and undisputed facts. The Sun has been paid millions of dollars by the Review-Journal to resolve prior accounting disputes—not because the Sun's fears were unfounded, but because the Review-Journal had improperly calculated the JOA accounting to the Sun's detriment since the inception of the JOA. *E.g.*, ECF No. 1 ¶ 60. But even the RJ's predecessors' accounting violations were

---

[3] The Sun incorporates by reference the statement of facts from its Motion to Compel Production of Documents. ECF No. 76.

[4] The RJ asserts the "2005 JOA terminated and replaced an earlier JOA that was entered in 1989." ECF No. 77 at 4 n.4. This Court was left "unconvinced" by the RJ's argument of the same in its motion to dismiss—"the Court believes that the 2005 JOA constitutes an amendment under the NPA rather than an agreement 'not already in effect.'" ECF No. 61 at 11-12.

- 3 -

child's play compared to the RJ's violations and harm to the Sun under Adelson's ownership. Lest the RJ forget, the RJ's predecessors paid the Sun for their accounting violations.

The Sun's point is that Adelson exponentially increased the RJ's improper practices—even after an arbitrator found the RJ improperly charged its own editorial and independent promotional costs to the joint operation, and thus improperly slashed the Sun's compensation, the only source of funding for the Sun's newsroom. *See id.* ¶¶ 70-785; *see also* ECF No. 39 at 40-41. The state court confirmed the arbitration award in its entirety, including requiring the RJ to correct its accounting going forward and to submit to an audit to identify the other wrongdoings. *See* Ex. 1; Ex. 2. These accounting corrections will result in tens of millions of dollars to the Sun, in historical adjustments and righting the accounting going forward for the remaining term of the JOA, *i.e.*, until 2040. *Id.*

Only *after* the RJ had lost in arbitration, and after the RJ was ordered to pay millions to the Sun for some of its wrongdoings, and after the RJ was ordered to submit to an audit that will reveal millions more are owed, did the RJ then seek leave to amend its answer and assert counterclaims against the Sun threatening to terminate the JOA. *See, e.g.,* ECF No. 39 at 41; *see also* ECF No. 39-1 (hereinafter "Counterclaim")*.* In other words, it was only after the RJ lost in arbitration and was now prohibited from starving the Sun through accounting violations that the RJ filed its state court counterclaims, looking for any and every basis to terminate the JOA despite that its asserted bases are not termination events under the JOA. The RJ's inference that it has always maintained counterclaims against the Sun in the state court action, *see* ECF No. 77 at 4, is false. The RJ's counterclaims were brought in retaliation for the unfavorable arbitration ruling almost two years after the Sun commenced the lawsuit to compel the RJ's participation in the JOA-required audit and arbitration process. The RJ's threats of termination, coupled with the RJ's other misconduct described in the Verified Complaint, forced the Sun to file this case in this Court because of the antitrust implications. *See* ECF No. 1.

When the Sun filed a motion to dismiss the RJ's state court counterclaims, the state district court instead stayed the state court action, and held the RJ's claims in abeyance until after this Court

- 4 -

1    adjudicates the Sun's federal antitrust claims set forth in the Verified Complaint. *See* ECF No. 39

2    at 32, 32 n.15.

3    **III.    STANDARD GOVERNING MOTIONS TO COMPEL DISCOVERY**

4          Federal Rule of Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding

5    any nonprivileged matter that is relevant to any party's claim or defense and proportional to the

6    needs of the case . . . ." Generally, the party opposing discovery has the burden of showing that

7    discovery is irrelevant or objectionable. *V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 306, 309 (D. Nev.

8    2019), *aff'd sub nom. V5 Techs., LLC v. Switch, LTD.*, No. 2:17-CV-2349-KJD-NJK, 2020 WL

9    1042515 (D. Nev. Mar. 3, 2020). "Where a discovery request appears overbroad on its face,

10   however, the party seeking discovery has the initial burden of showing its relevance." *Casun Invest,*

11   *A.G. v. Ponder*, No. 2:16-cv-2925-JCM-GWF, 2019 WL 2358390, at * 5 (D. Nev. June 4, 2019).

12         Relevance alone is not enough to warrant compelling a response, discovery must be

13   proportional to the needs of the case. *See id.* "Proportionality is a 'common-sense concept' that

14   should be applied to establish reasonable limits on discovery." *Id.* The "proportionality" changes

15   to the Amendments were made to reduce the costs of discovery, and parties and the court must now

16   consider the proportionality factors when serving and responding to discovery. Adv. Comm. Notes

17   to 2015 Amendments to Fed. R. Civ. P. 26. Thus, a court "must limit the frequency or extent

18   of discovery otherwise allowed" if "the discovery sought is unreasonably cumulative or

19   duplicative, or can be obtained from some other source that is more convenient, less burdensome,

20   or less expensive . . . or [ ] the proposed discovery is outside the scope permitted by Rule 26(b)(1)."

21   Fed. R. Civ. P. 26(b)(2)(C).

22   **IV.    AN ORDER COMPELLING PRODUCTION ON THE RJ'S REQUESTS IS NOT**
23          **WARRANTED**

24         Not only are the RJ's requests written in a way that renders then impermissibly overbroad

25   and unduly burdensome on their face, but throughout its Motion, the RJ distorts the allegations in

26   the Sun's antitrust complaint to argue that its requests seek relevant information. *See generally* ECF

27   No. 77. The Sun's complaint, the only pleading at issue, is a stark contrast to the RJ's Requests.

28                                            - 5 -

Examining the claims actually at issue in this case demonstrates the overbreadth, irrelevance, and duplicative nature of the Requests, and shows that the Requests are not proportional to the needs of the case. The same is true for the RJ's requests for documents from non-party entities: that information is equally irrelevant and not proportional to the needs of the case. No order compelling production is warranted.

> **A.    The Sun should Not be Compelled to Respond to the RJ's Overbroad Requests for Documents Showing "Competition" as Written (Request Nos. 9-11)**

The RJ asks this Court to compel the Sun to produce <u>all</u> documents related to "competition" without any limitation to a geographical market or any particular product market. ECF No. 77 at 6-8. The RJ argues that the requests are merely "regarding the relevant market," as the Sun has alleged an "implausible relevant market." *Id.* at 6. The Sun does not dispute that part of proving its antitrust claims includes establishing a relevant market and defendants typically challenge a plaintiff's definition of it. But the RJ's requests as written are so overbroad and undefined, expansive, and vague, that the Sun's burden and expense of searching such general terms and reviewing over 100,000 documents are simply not proportional to the case. The RJ's requests demanding that the Sun produce documents that would prove that other "competition" exists is asking the Sun to prove a negative, for no such competition exists. And without the RJ providing any specificity or tailoring the Request in a fashion that would produce documents that are on topic leaves the Request impermissibly broad. The RJ must do better.

In this action, the Sun must establish that the RJ has market power in a "relevant market," which includes a relevant product market and a relevant geographic market. *See Newcal Industries, Inc. v. Ikon Office Solutions,* 513 F.3d 1038, 1044–45 & n. 3 & n. 4 (9th Cir. 2008). The relevant product market establishes the boundaries within which competition meaningfully exists. Those "commodities reasonably interchangeable by consumers for the same purposes" constitute a product market for antitrust purposes. *United States v. E.I. du Pont de Nemours & Co*., 351 U.S. 377, 395 (1956); *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962). A relevant geographic market is an "area in which the seller operates, and to which the

- 6 -

purchaser can practicably turn for supplies." *United States v. Phila. Nat'l Bank*, 374 U.S. 321, 359 (1963). The Sun alleged the relevant product market as the market for the sale of daily local newspapers, and the relevant geographic market is Clark County, Nevada. ECF No. 1 ¶¶ 36-40. The RJ contends that "newspapers, television, radio, and online news" must be considered economic substitutes and broad discovery is warranted to "settle the dispute[d]" relevant market definition. *See* ECF No. 77 at 6-7. In its opposition to the RJ's motion to dismiss, however, the Sun cited to multiple courts that have recognized the same or similar relevant market in the newspaper industry that the Sun alleges here, while the RJ failed to cite to a single case analyzing the newspaper industry in support of its argument. *See* ECF No. 39 at 4-6; *see also* ECF No. 61 at 14 ("The Court is not convinced that [the Sun's] proffered market is facially unsustainable," or the Sun's market is "unnatural" or "artificial").

The RJ asserts the Sun's objections are "boilerplate" and the Sun is avoiding discovery because it disputes the relevant market, ECF No. 77 at 6-8, however, the RJ knows this is wrong. The Sun objected to the RJ's Requests because they are overbroad as written and the Sun should not be required to comb through 100,000 irrelevant and off-topic documents because of false hits in the term "competition," since the RJ refuses to narrow the request. For example, the RJ's Requests Nos. 9-10 ask for all documents that "discuss, describe, or refer to competition between the Sun" and any other product or service. *See, e.g.*, 78-4 at 6 (Request No. 10 asking for: "**All** documents that discuss, describe, or refer to competition between the Las Vegas Sun Newspaper and **any** person, product, or service.") (emphasis added). These Requests have no limitation as to product or service type, and no limitation regarding geography.

Such general discovery requests should not be permitted. When, as here, a party seeks discovery that plainly exceeds the relevant market at issue, it is appropriate to deny a motion to compel and limit discovery. *See Rebel Oil Co v. Atlantic Richfield Co.,* 133 F.R.D. 41, 45 (D. Nev. 1999) (granting motion for protective order and barring discovery outside of plaintiff's alleged Las Vegas, Nevada, relevant geographic market); *U.S. v. Capitol Service, Inc.,* 89 F.R.D. 578, 582 (E.D. Wis. 1981) ("[T]he actions of the distributors in other markets are not relevant . . . . The

- 7 -

1    conspiracy alleged in this action is one involving only the Milwaukee market and, therefore, what

2    the distributors do or did elsewhere is of no consequence"). The RJ's lack of any geographic

3    limitation alone renders the Requests overbroad.

4         Nevertheless, the RJ makes a general statement that "courts order broad enough discovery

5    to enable themselves to settle the dispute [of the relevant market scope]," ECF No. 77 at 9, but the

6    RJ's sole cited case for this proposition, which provides almost no analysis, does not contain

7    requests written anywhere nearly as broadly as the RJ's requests here. For example, in *Riedel*

8    *International, Inc. v. St. Helens Investments, Inc.*, the plaintiff alleged a "relevant market area for

9    the production of fly ash i[n] the States of Oregon and Washington," while one of the defendants

10   thought the geographic area was bigger than those two states and the product market included all

11   binding agents for concrete, not just fly ash. 633 F. Supp. 117, 119 (D. Or. 1985). The court granted

12   the defendant's motion to compel specific requests that asked *specifically* for costs or prices of

13   cement or transportation of fly ash or cement purchased from other sources other than defendants.

14   *Id.* The defendant did not ask for "all' documents regarding "competition" in any location.

15        Unlike *Reidel*, where the defendant narrowly tailored the requests, the RJ's Requests here

16   are so overbroad that it would be unbelievably burdensome for the Sun to surmise what type of

17   competition and what locale the RJ means. The Sun told the RJ that a combination of searches

18   based on the terms of the Request (such as "Sun," "newspaper," "paper" and "compete" or

19   "competition") yielded over 37,000 hits, and later informed the RJ that search of the word

20   "competition" or "compet!" combined with "Sun" yielded over 100,000 hits. ECF No. 78-5 at 12;

21   ECF No. 79-3 at 2. This is hardly surprising. The Sun is a newspaper that reports on all sorts of

22   news stories that affect the citizens of southern Nevada, which undoubtedly involves stories of

23   athletic, educational, commercial, and other types of competition. When the Sun asked the RJ if it

24   could make its requests more narrowly tailored, the RJ declined saying the requests were already

25   "very narrow." ECF No. 79-3 at 2.

26        Critically, the RJ's insinuation that the Sun's initial search is valid because it yields "too

27   many potentially responsive documents" intentionally mischaracterizes the Sun's position. ECF

28                                              - 8 -

No. 77 at 8. Just because a search (like the ones described above) results in a "hit" does not make a document "potentially responsive." The Sun should not be forced to spend thousands of hours in legal fees reviewing documents on such a search from an overly broad request. As written, the RJ's motion to compel responses to Request No. 9-10 should be denied.

Relatedly, the RJ's Request No. 11 should be denied because it asks for documents related to the competition of lasvegassun.com specifically. *See* ECF No. 78-4 at 7. Lasvegassun.com is a separate entity that is not a party to the JOA and not a party to the Sun's antitrust complaint. *See* ECF No. 39-5; ECF No. 1. Thus, any documents related to lasvegsasun.com's "competition" are not relevant to the instant case, and disproportional to the needs of the case. *See also* §§ IV(C) & (E) *infra* (further discussing relevance, proportionality, and confidentially concerns regarding the RJ's Requests of documents from non-parties Greenspun Media Group and lasvegassun.com).

### B.     The Requested Sun's Financial Documents are Not Relevant

The RJ's requests for invasive, internal financial documents of the Sun, and non-parties lasvegassun.com and Greenspun Media Group, are not relevant and wholly disproportional to the needs of the case. The RJ attempts to reframe the Sun's antitrust damages as generic "losses," and argues that it is therefore entitled to all financial documents of the Sun and the non-parties. *See* ECF No. 77 at 8-9. The RJ asks for over seven years of all monthly, quarterly, and annual financial statements, all sources of revenue, funding, and operating costs for the Sun and for non-party lasvegassun.com, as well as extensive financial requests about non-party Greenspun Media Group, its *separate* publications, and its ownership interests. ECF No. 78-5 at 84-91, 95-105. The RJ's shotgun discovery approach is improper—the Sun's antitrust damages are much more focused and these Requests should be denied as exceeding the scope of discoverable information under Rule 26.

/ / /

/ / /

/ / /

1.   *The Sun's Financial Documents are Not at Issue (Request Nos. 84-89, 92-101, 162)* [5]

The RJ argues it should have access to all of the Sun's financial documents, including its sources of funding, so it can "liberally test the Sun's contentions in discovery" and find out what is causing the "Sun's economic distress." ECF No. 77 at 9-10. The RJ argues that if the Sun is not actually financially threatened or its difficulties are from other factors such as mismanagement, the Sun's claim fails. *Id.* at 9. The RJ neglects to mention it includes non-parties Greenspun Media Corporation and lasvegassun.com in most of these Requests (*e.g.*, Request Nos. 88-89, 92-93, 95-98, & 101), and for the reasons described in Sections IV(C) and (E) *infra*, these Requests are neither relevant nor proportional. But even more germane, the RJ mischaracterizes the Sun's damages, ignoring the claims in the Sun's complaint of the RJ's harm to its brand and business. The RJ also omits the fact that the only source of revenue to fund the Sun's newsroom comes from the JOA, and the RJ's anticompetitive conduct since its purchase of the Review-Journal, including plummeting the JOA's EBITDA calculation negative and therefore the Sun's Annual Profit Payments to zero since 2016. *See* ECF No. at 6-7, 9-10. The RJ should not be allowed to fabricate issues in order to further its effort to force the Sun out of the JOA—the RJ's attempt to discover these aspects of the Sun's financial status—and the non-parties' financial operations—has nothing to do with discovering alternate causes of the Sun's financial distress. The RJ is trying to ascertain the inner-workings of the Sun to discover how hard it has to push before the Sun folds.

"Discovery regarding a party's financial condition may be obtained if it is relevant to the claims or defenses in the case." *Fosbre v. Las Vegas Sands Corp.*, No. 2:10-cv-00765-APG-GWF, 2016 WL 54202, at *4 (D. Nev. Jan. 5, 2016). If the requests are "based on speculative assertions" or "of only marginal relevance," discovery need not be permitted. *Id.*

---

[5] The RJ moves to compel production of Requests Nos. 99-100 and 162. *See* ECF No. 77 at 8. But after the meet and confer, the Sun notified the RJ it would supplement its responses to indicate that there are no documents responsive to Request Nos. 99-100, and it would be producing documents responsive to Request No. 162. *See* ECF No. 79-3 at 3. Thus, it is unclear what the RJ asks this Court to do for these Requests.

Here, there are no defenses asserted by the RJ at issue, just the Sun's claims. In its Verified Complaint, the Sun stated it has been damaged in two ways. First, the Sun has been harmed "as a result of the fraudulent and deficient profits payments to the Sun by [the RJ]." *E.g.*, ECF No. 1 ¶ 126. Second, the Sun has been harmed by "the diminished value to the Sun's brand and business." *Id.*

First, regarding the JOA profit payments, the RJ exclusively controls, administers, and processes the JOA Annual Profit Payments to the Sun as well as all financial data required for any JOA calculation. Compared to traditional antitrust litigation, the circumstances here are exceptionally unique. The RJ not only has the records of *all* of the Annual Profits Payments (which have been nothing for the past three years), it is the RJ that unilaterally calculates and determines the same. This is unlike the case cited by the RJ discussing possible alternative factors of a plaintiff's claim of lost profits. *See* ECF No. 77 at 7 (citing *Pac. Exp., Inc. v. United Airlines, Inc.*, 959 F.2d 814, 818 (9th Cir. 1992) for the proposition that there the plaintiff's losses were from increased competition, not from defendant's behavior). Unlike other antitrust litigation involving unrelated competitors, the parties here are in a JOA and the Sun's only source of revenue derives from the JOA Annual Profit Payments. Diving into the Sun's financials will not reveal an "alternative" factor for the Sun's losses—the RJ <u>controls</u> the JOA accounting and the Sun's financials are <u>not</u> an input into any JOA calculation. Because the JOA cedes control of all advertising and circulation functions for the joint newspaper product to the RJ (advertising and circulation revenue being the two sources of revenue a newspaper receives), the JOA profit payments are the Sun's sole mechanism to fund its newsroom. *See* ECF No. 39-5 at 25-26. The RJ's requests are analogous to a general partner who is in control of the management of the partnership and once sued for violations or mismanagement of the partnership by the limited partners, requests all of the limited partners' individual financials in discovery. This is not how discovery works under Rule 26.

Moreover, the RJ's Requests are nonsensical. For instance, in Request No. 92, the RJ requests "[a]ll documents that discuss, refer, or relate to the use by Greenspun Media Group of

- 11 -

profit payments paid under the 2005 JOA to fund the operations of the Las Vegas Sun Website."
ECF No. 78-5 at 93. The RJ is well aware of how absurd this request is because it is the RJ, itself,
who has recorded negative EBITDAs every year since fiscal year-ending March 31, 2017, and has
paid **zero** dollars to the Sun for the last three years. *See* ECF No. 1 ¶¶ 70-74. Irrespective of the
fact that both Greenspun Media Group and lasvegassun.com are not parties to the suit, and neither
are parties to the JOA, the RJ's request asks the Sun to show where its zero profits payments have
been spent. This Request, and the like (*e.g.*, Request No. 93), are senseless.[6]

In sum, compelling the Sun to produce financial documents showing, for example, its
"operating costs" is pointless when it is the *absence* of compensation (from the RJ's control of the
JOA accounting) that has caused the harm. Any claim by the RJ that an examination "may reveal
alternate causes for any economic woes" is absurd under these circumstances and the parties'
relationship under the JOA. ECF No. 77 at 10. The RJ—in complete control of all non-editorial
functions of the JOA—has manipulated the JOA accounting to ensure the Sun gets nothing—yet
the RJ demands to discover how the Sun has spent the zero dollars. Again, the RJ's requests demand
that the Sun prove a negative, simply because that negative fits within the RJ's contrived argument
to explore every crevice of the Sun's operations. The Sun's asserted claims that the RJ has cheated
it by reducing payments to zero dollars do not grant the RJ a right to fish through the Sun's finances.
*See* ECF No. 1 ¶ 67.

Regarding the Sun's second area of damages, those damages relate to the Sun's brand and
business. The value of the Sun's brand and business stems from, among other things, its editorial
and news-gathering efforts, and its efforts to boost its bargaining position when the JOA is up for
re-negotiation or separation in 20 years. *E.g.*, *United States v. Daily Gazette Co.*, 567 F. Supp. 2d
859, 870 (S.D.W. Va. 2008).

---

[6] Most of the RJ's Requests ask for documents going back six years before the filing of the Sun's
complaint, that is, since September 24, 2013. *See* ECF No. 78-4 at 3. The RJ, however, did not
acquire ownership of the Review-Journal until December 10, 2015, and thus the Sun has also
objected to this overbroad scope. *See* ECF No. 1 ¶ 7.

111649345.1

Here, the value of the Sun's brand and business is indisputably connected to the JOA. About five years ago, the RJ's predecessor bought the profitable Review-Journal, 8 other daily newspapers in multiple states, 65 weekly and niche publications (with assets having a combined average daily circulation of approximately 221,000 and 244,000 on Sunday) for $102.5 million, and just 9 months later sold the Review-Journal *alone* to the Defendants for $140 million.[7] But since the purchase, the RJ has plunged its operations and financials into a calculated disaster that has caused harm to the Sun's brand and business. The RJ's purposeful omission of the Sun in equal prominence in all promotional materials, despite the mandates of the JOA, has caused harm to the Sun's brand and business. *See* ECF No. 1 ¶¶ 47-51, 97-110. The RJ's deliberate and improper charging of its editorial costs to the JOA accounting and withholding of profit payments to the Sun has caused harm to the Sun's brand and business. *Id.* ¶¶ 86-96. The RJ's unilateral changing of the format of the front page and covering the Sun's noticeable mention has caused harm to the Sun's brand and business. *Id.* ¶¶ 111-14. It is these circumstances that frame the damages the Sun has faced—not what the RJ proffers.

Certainly, the harm to the value of the Sun's brand and business will be disputed by the parties and will be subject to expert testimony. The Sun has indicated that it would produce these expert materials consistent with the discovery plan and scheduling order. *E.g.*, ECF No. 79-1 at 46-47 (responding to Request No. 162 regarding damages to the Sun). But the determination of the harm does not stem from the RJ's framing of the Sun's damages, and no examination of the Sun's internal accounting is warranted. It has nothing to do with the Sun's operating costs or the salaries of its employees, not those of Greenspun Media Group or lasvegassun.com employees.

The discovery here should be relevant to the claims in this case. Consequently, the Court should not order production of the Sun's internal financial records and sources of funding (Request

---

[7] *See* James DeHaven, Jim Myers, & Ben Botkin, *Sheldon Adelson's Newspaper Buy has Nevadans Talking, and some Fretting*, Las Vegas Rev. J. (Dec. 17, 2015), *available at* https://www.reviewjournal.com/local/local-las-vegas/sheldon-adelsons-newspaper-buy-has-nevadans-talking-and-some-fretting/; Business Wire, *New Media Completes Acquisition of Stephens Media, LLC* (March 18, 2015), *available at* https://www.businesswire.com/news/home/20150318006221/en/New-Media-Completes-Acquisition-Stephens-Media-LLC.

- 13 -

1  Nos. 84-87, 94), lasvegassun.com's financial records or sources of funding (Request Nos. 88-89,

2  95), Greenspun Media Group's financial records (Request Nos. 92-93), or documents related to

3  Greenspun Media Group's ownership interests in the Sun (Request Nos. 96-98), as these items are

4  not relevant to the Sun's claims.

2.  *The Sun Properly Offered to Produce Sufficient Documents regarding*
   *Layoffs, but the RJ Refused (Request Nos. 62-65)*

7       The RJ demands that the Sun produce documents "sufficient to identify" all of the Sun's

8  staff (and the night staff), including their names, positions, and their salaries, before and after the

9  layoffs as described in the Sun's complaint. *See* ECF No. 78-5 at 58-63. Given the third-party

10  privacy concerns and the confidential and proprietary information at issue, the Sun offered to

11  produce documents that redacted the employees' names, but maintained the job title, compensation,

12  and applicable termination dates. *See* ECF No. 79-3 at 2. Notably, the RJ previously litigated that

13  the Sun, its competitor, could not see any of the RJ's employee lists or salaries, and thus the format

14  the Sun proposed was similar to the RJ's previous productions of employee information, given both

15  the sensitive and proprietary information and the constrictions of the JOA.[8] The RJ refused the

16  Sun's offer. *See* ECF No. 79-3 at 2. The Sun nevertheless stated it would provide the list in this

17  format once a protective order is in place, with Attorneys' Eyes Only designation. *Id.*

18       The information the RJ claims it needs "to test the veracity of the Sun's allegations, and

19  probe the Sun's attempt to attribute these layoffs to [the RJ]," would be available to the RJ in the

20  Sun's proposed form. ECF No. 77 at 11. Indeed, the number of employees before and after the

21  layoffs is all that is needed. The RJ cannot legitimately argue that the employees' *identities* are

22  needed, especially given the RJ's history of poaching the Sun's staff. *See* ECF No. 76 at 16-18. The

23  Sun's proposed format satisfies the RJ's Requests without treading on privacy concerns.

---

[8] The JOA allows only the Sun to audit the books and records of the RJ. *Compare* ECF No. 39-10 at 41-84 *with id.* at 86-110. And even then, the confidentiality constraints prevent disclosure of "any specific individual salary information" or "individual employees." *See id.* at 108. And thus, even with a stipulated protective order in place with available "Attorneys' Eyes Only" language, the RJ redacted its individual employee names in its arbitration production, because of the extreme proprietary issues at stake.

- 14 -

C.    **The RJ's Amendment of its Answer in State Court to Assert "New" Contract-Based Counterclaims Following its Arbitration Loss Is Sham Litigation that can be Decided as a Matter of Law (Request Nos. 81-83, 102-04, 108-09, 111-29, 130-32, 136-56)**

The scorch-the-earth discovery the RJ asks this Court to compel, all in the name of discovering the merits of "sham litigation," is a red herring. The RJ has not filed any answer or counterclaim in *this* case—the discovery it seeks is to hopefully uncover support for its baseless Counterclaim in state court. Here, discovery is not needed on the RJ's Counterclaim, because whether the Counterclaim is sham litigation is decided as a matter of law. None of the RJ's Counterclaims are valid grounds to terminate the JOA. First, the RJ's Counterclaim in state court fails—the RJ essentially asks the court to be the "super-editor-in-chief" judging the quality of its competitor newspaper in its quest to judicially establish the Sun's editorial content falls short of some undefined bar. Courts are prohibited from these types of First Amendment adjudications. Second, the RJ's Counterclaim seeks termination under the JOA, but the JOA only permits termination on three bases, none of which are present here. What is more, the RJ's Counterclaim undeniably triggers antitrust implications, mandating federal court jurisdiction—thus, the RJ's filing its Counterclaim in state court further renders its Counterclaim objectively baseless. Even if there was marginal merit to the RJ's Counterclaims, the RJ's sweeping discovery requests are in staggering disproportion to the needs of this case.

1.    *The Sham Litigation[9] can be Decided as a Matter of Law*

The RJ's Counterclaim fails as a matter of law. In its Counterclaim, the RJ alleges four "causes of action" all based on the JOA—first, a breach of contract including that the Sun has

---

[9] Generally, the *Noerr-Pennington* doctrine provides immunity from the act of petitioning the government for redress. *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 643-44 (9th Cir. 2009). Under the "sham" litigation exception to the *Noerr-Pennington* doctrine, immunity is not extended to those "who resort to sham or unfounded litigation solely for anti-competitive purposes." *Ca. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972). Litigation that is "simply an effort to interfere directly with a competitor . . . is not entitled to first amendment protection, because it is not an exercise of first amendment rights." *Clipper Express v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1256 (9th Cir. 1982) (emphasis added).

- 15 -

undermined the quality of the Sun newspaper "for the purpose of diverting readers" to lasvegassun.com, the Sun has not preserved "high standards of newspaper quality," and the Sun has "improperly diverted sales and profits from the JOA and the Review-Journal to the Sun's other businesses"; second, a breach of implied covenant of good faith and fair dealing based upon the same; third—declaratory relief seeking termination for material breach based on the Sun's purported "lack of high standards of newspaper quality" and the "Sun's breaches are incurable" mandating a judicial declaration terminating the JOA; and fourth, declaratory relief seeking termination for frustration of purpose because the JOA did not foresee "smartphones and mobile devices" and the purpose of the NPA is frustrated. ECF No. 78-3 at 38-41. Critically, the RJ's Counterclaim glaringly describes part of the second basis for termination for default, which requires a written notice of breach and a 60-day opportunity to cure. *See* ECF 78-3 at 40; *see also* ECF No. 39-5 at 8 (§ 9.1.2). The RJ admits it never provided any such notice to the Sun, avoiding its contractual requirements by unilaterally pronouncing the "Sun's breaches are incurable." ECF 78-3 at 40.

Regarding sham litigation, the suit must first "be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993). Second, "the court should focus on whether the baseless lawsuit conceals an attempt to interfere directly with the business relationships of a competitor, through the use of the government *process* —as opposed to the *outcome* of that process—as an anticompetitive weapon." *Id.* at 60-61 (citations and quotations omitted). "Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation." *Id.* at 60. While the question of whether litigation is a sham could be a fact question for the jury, where there is no question about the facts of the underlying litigation, courts may decide the issue as a matter of law. *Id*. at 63. Thus, the threshold issue is whether the RJ's Counterclaim, asserted after its loss in arbitration, is objectively baseless. This analysis is based upon a matter of law, not of fact, and thus, the RJ's scorch-the-earth discovery requests attempting to uncover purported support for its baseless Counterclaim is not relevant to the Sun's claims, and

1    not proportional to the case. The RJ should not be allowed to use the discovery process to

2    investigate every aspect of the Sun's business operations, including its strict autonomous editorial

3    and reportorial functions and decision-making processes, under the RJ's false claims that it must

4    prove the factual merits of its sham litigation.

5         The Sun first alleges that the RJ's Counterclaim, which contends the JOA should be

6    terminated because the Sun breached the JOA by "fail[ing] to meet the JOA's required high

7    standards of newspaper quality," is "bogus" and "objectively baseless" and "unreasonable." ECF

8    No. 1 ¶ 108. Whether the RJ's Counterclaim is sham litigation can be decided as a matter of law.

9    Besides the JOA providing the Sun has *exclusive* control over its editorial content, the RJ cannot

10   invoke its First Amendment right to petition for the purpose of exploiting the judicial process to

11   infringe on the First Amendment rights of the Sun—indeed, courts are prohibited from granting the

12   type of relief the RJ's Counterclaim requests. Courts, as state actors, are not permitted to adjudicate

13   the "editorial control and judgment" of the press. *See e.g.*, *Miami Herald Pub. Co. v. Tornillo,* 418

14   U.S. 241, 258 (1974); *see also* ECF No. 39 at 18-20 (citing additional cases). Yet, this is exactly

15   what the RJ has asked in its Counterclaim.

16        To be precise, the RJ's Counterclaim wants a court to adjudicate the Sun materially

17   breached the JOA, by analyzing the "*quality* of the Sun's content." ECF No. 77 at 13 (emphasis

18   added). Besides this examination by a court being wholly improper, it is laced with unfortunate

19   irony—the RJ has manipulated the JOA accounting to ensure that, for over three years, the Sun's

20   compensation has been *nothing* (zero dollars), while simultaneously criticizing the Sun's quality in

21   the same time period. What is more, the RJ has no authority to critique the Sun's editorial content;

22   Section 5.2 of the JOA plainly provides "[the] Sun shall have *exclusive and complete control,*

23   *authority and direction* over the news and editorial content, features and services to be furnished

24   by [the] Sun to [the] Review-Journal to be included in its newspaper . . . ." ECF No. 39-5 at 6

25   (emphasis added). The RJ's Counterclaim is simply impermissible and baseless, and the RJ's

26   motion to compel the RJ's numerous, broad Requests should be denied.

27

28                                        - 17 -

Second, the RJ's Counterclaim seeks an order from the Court terminating the JOA based on the judicial declaration of the Sun's alleged lack of quality or frustration of purpose, which would end printing and circulation of the Sun in the Las Vegas community entirely. *See* ECF No. 78-3 at 39-42. But this too, is baseless as a matter of law. Unlike the 1989 JOA, the JOA provides only three allowable terminable events, none applicable here. *See* ECF No. 39-5 at 8. Indeed, "[s]ubject to the termination provisions set forth in Article 9, the Restated Agreement *shall* continue for an initial period at the close of business on the 31st day of December of the fiftieth (50th) year from July 1, 1990." ECF No. 39-5 at 3 (emphasis added). The RJ has petitioned a court for something it knows is not allowed under the law or the contract.

Last, the RJ's abnormal forum selection of *state* court further reveals the RJ's Counterclaim is objectively baseless. Terminations of JOAs undeniably involve antitrust implications. *E.g.*, *U.S. v. Daily Gazette Co.*, 567 F. Supp. 2d 859 (S. D. W. Va. 2008) (where DOJ filed suit against a newspaper in a JOA alleging violations of federal antitrust laws after the paper gained control of the other newspaper's assets and therefore could terminate the publication at any time). The state district court here recognized as much during the hearing on the Sun's motion to dismiss or alternatively stay the proceedings of the state court action pending the resolution of the instant case. *See* ECF No. 39 at 32.

In sum, the RJ's assertion the "Sun put the merits of the counterclaims at issue" neglects that whether the RJ's Counterclaim is objectively baseless can be decided as a matter of law. The RJ's across-the-board discovery is not warranted.[10]

/ / /

/ / /

/ / /

---

[10] As written, most of the purported Counterclaim Requests are also vague and overbroad, and the Sun objected on this basis as well. For example, Request No. 137 asks for "all documents that discuss, refer, or relate to the quality" of the Sun newspaper. ECF No. 79-1 at 14-15. An initial search of the terms "quality" and "Sun" produced over 130,000 hits; these numbers are not surprising considering the Sun is a newspaper investigating and publishing articles about all sorts of topics.

2.    *The RJ's Discovery Requests are Irrelevant, Impermissibly Overbroad and Disproportional, Seeking Burdensome Discovery of a Competitor Non-Party*

Within these across-the-board Requests, the RJ is also seeking documents regarding a competitor to the RJ's digital operations. *See* ECF No. 78-4 at 18, 20-24, 27-29 (Request Nos. 83, 102-04, 108-09, 111-29, 146-56). Such widespread, intrusive discovery into the RJ's direct competitor is neither relevant nor proportional.

Besides granting the Sun *exclusive* control over its editorial content (a requirement of the Newspaper Preservation Act), the JOA also acknowledges the Newspapers' websites are *separate*. Section 10.6 of the JOA provides, in part, the "Sun shall have the right to republish, license or otherwise use its editorial content *in any form or media*." ECF No. 39-5 at 10 (emphasis added). Lasvegassun.com is simply *outside* the JOA, and outside the scope of any possible "breach" of the JOA. The RJ's delving into the editorial decisions and conduct of its competitor is improper and unwarranted. *See, e.g.*, ECF No. 78-5 at 81-82 (Sun's objection Request No. 83); *see also* ECF No. 39-5 at 10 (Section 10.6 of the JOA providing, in part, "Sun shall have the right to republish, license, or otherwise use its editorial content in any form or media"); *id.* at 11 (Section 10.12 of the JOA, entitled "Ancillary Publications" providing in part, that "[n]othing in this Restated Agreement shall preclude either party from engaging in any lawful business outside of this Restated Agreement"). Because the JOA purposefully excludes lasvegassun.com, the RJ's Requests are a fishing expedition, and are neither relevant nor proportional to the needs of the case.[11]

D.    **Despite the RJ Admitting that It Possesses the Settlement Agreement at Issue, the RJ Nevertheless Demands the Sun Breach the Confidentiality Agreement with Third Parties and Demands the Sun Obtain Waivers from the RJ's Predecessors (Request Nos. 163-64)**

The RJ's first laments about the Sun's prior settlement with the RJ's predecessors, suggesting the Sun has a pattern of litigating and maybe, just maybe, the Sun's complaints in the

---

[11] It must be reiterated that the RJ has access to all of the Sun's articles published in the newspaper, and other articles are available on the lasvegassun.com. Rule 26(b)(2)(C) requires the Court to limit discovery from a party where the discovery sought . . . can be obtained from some source that is more convenient, less burdensome, or less expensive . . . ." In this case, it is more convenient, less burdensome and less expensive for the RJ to find what it is looking for, then for the Sun to guess.

- 19 -

1    instant case were waived. ECF No. 77 at 16-17. The RJ again omits the Sun's complaints about the

2    RJ and its predecessors' improper accounting were well-founded; multiple tribunals have now

3    agreed with the Sun's position. But yet, the RJ still wants to undo the past and it therefore seeks the

4    "negotiations and settlements" of the disputes with the RJ's predecessors, to hypothetically see if

5    the "Sun has released or otherwise waived any of the claims that it is seeking to press here." *Id.* at

6    16. The RJ cites to no potential claim. *See generally id.* at 16-17. The RJ also neglects to mention

7    it (1) already has the confidential settlement document at issue, as well as any communications or

8    documents from that case to evaluate its hypothetical presumptions here; and (2) its former counsel

9    represented <u>all</u> of the Review-Journal's owners.

10        To be clear, the RJ's former counsel represented the RJ's predecessors in the previous

11   lawsuit and settlement, and up until February 10, 2020, this same counsel was still counsel of record

12   for the RJ in the current state court action. Ex. 3. To recall, the Sun filed its complaint in this Court

13   on September 24, 2019. *See* ECF No. 1. Accordingly, the RJ has had almost half of a year to discuss

14   these issues with **<u>its counsel</u>** and consider its hypothetical theories.

15        The RJ instead contends that it is the Sun's obligation to produce all of the related

16   documents. ECF No. 77 at 16-17. During the meet and confer, the Sun pointed out what the RJ

17   already knows. The settlement agreement with the RJ's predecessor was confidential, and just like

18   during the recent arbitration, a waiver from all of the RJ's predecessors is necessary before any

19   release is possible. Despite the RJ's claim as such, *see* ECF No. 77 at 17, it is not the Sun's

20   obligation to obtain waivers from the RJ's predecessors, especially when the RJ already has the

21   documents. *See, e.g.*, *Moreno v. Autozone, Inc.,* No. C-05-4432 CRB (EMC), 2008 WL 906510, at

22   *1 (N.D. Cal. Apr. 1, 2008) ("Given that [the party's] former counsel appears to be in possession

23   of the documents at issue because it was representing [the party], [the party] should have the legal

24   right to obtain the documents from former counsel on demand."); *see also Convertino v. U.S. Dep't.*

25   *of Justice,* 565 F. Supp. 2d 10, 14 (D.D.C. 2008) (finding that responsive documents in the

26   possession of an attorney representing the responding party on another legal matter were within the

27   party's control as that term is understood in discovery).

28                                      - 20 -

To the extent the RJ feigns ignorance of the previous lawsuit, the disputes at issue, or the terms of the settlement, this is just wrong. *See generally* ECF No. 77 at 16-17. The RJ was aware of the ongoing dispute at the time of the Review-Journal's purchase. *See* ECF No. 1 ¶¶ 7, 60-61. In fact, the RJ made similar arguments in the state court action, that the RJ's mere "continuation" of its predecessors' accounting practices somehow was part of the previous settlement, which the state district court rejected. *See* Ex. 4 at pp. 7-8; Ex. 5. In fact, after the briefings and hearing on the motion to dismiss, the state court *directed* the RJ to make these waiver/release claims to the arbitrator. *See id.*; *see also* Ex. 6 at pp. 15-22, 44-51 (where after arguing the Sun released or waived claims through the settlement with the previous owners, the court found the arbitrator must decide the issue). While the RJ forewent filing its motion to dismiss on this basis in the arbitration, it raised waiver and other equitable defenses, which the arbitrator rejected and the state district court confirmed. *See* Ex. 2.

The RJ already has the settlement documents, and requiring the Sun to obtain waivers from the RJ's own predecessors and reproduce these documents for the RJ is unnecessary, duplicative, and burdensome. *See* Fed. R. Civ. P. 26(b)(2)(C) ("[T]he court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive."). As such, the Sun should not be compelled to produce these documents.

### E.   Non-Parties Greenspun Media Group and lasvegassun.com are Outside the Scope of Discovery

The RJ's blanket demand that this Court should order the Sun to produce documents from nonparties Greenspun Media Group and lasvegassun.com overlooks that the Requests are not relevant to any claim (or nonexistent defenses or counterclaims) in this litigation.[12] The RJ portrays

---

[12] The RJ also sent a subpoena to non-party Greenspun Media Group containing 158 overly broad requests copied nearly verbatim from the RJ's first set of requests for production to the Sun.

- 21 -

111649345.1

the Sun's sole objection as deflection, that documents are not in the Sun's possession. *See* ECF No. 77 at 17-18. This is not accurate: the problem is much more fundamental. The RJ requests production of *irrelevant* documents that also contain confidential and/or proprietary commercial information of nonparties, which are not proportional to the needs of the case.

Of the 79 Requests the RJ has moved this Court to compel, 46 of these ask for documents from Greenspun Media Group and/or lasvegassun.com. *See generally* ECF No. 77. Neither Greenspun Media Group nor lasvegassun.com are parties to the JOA, and the operations of both are *outside* the JOA. To be sure, the scope of applicable discovery is shaped by the parties' pleadings, including the allegations that a party has "put in controversy." *In re MGM Mirage Sec. Litig.*, No. 2:09-CV-1558-GMN, 2014 WL 6675732, at *3 (D. Nev. Nov. 25, 2014). But the only pleading here is the Sun's complaint.

The RJ's probing into outside entities' documents that are unrelated to the pleadings should be prohibited. As described in Section IV(C) *supra*, any Requests demanding documents from Greenspun Media Group or lasvegassun.com relating to the RJ's Counterclaim, whether it be Greenspun Media Group or lasvegassun.com's financials, the "quality" of lasvegassun.com website or any related editorial considerations are not relevant. The JOA expressly provides that any news and editorial decisions made by the Sun are matters beyond the scope of the JOA. *See, e.g.*, ECF No. 1 ¶ 64. Section 5.2 of the JOA plainly and unambiguously provides that "[p]reservation of the news and editorial *independence and autonomy* of both the Review-Journal and the Sun is of the essence of this Restated Agreement." ECF No. 39-5 at 6 (emphasis added). The JOA further acknowledges both parties participate in other businesses outside of the JOA. *See id.* at 11 (§ 10.12).

Furthermore, these non-parties' financial and operational information contains confidential commercial information, which is also not relevant and not proportional to the needs of the case. *See, e.g.*, *Cain v. Price*, 415 P.3d 25, 30 (Nev. 2018) ("[D]ue to privacy concerns and the potential for abuse and harassment, a defendant's personal financial information cannot be had for the mere asking.") (internal quotation marks omitted); *cf. Scientific Games Corp. v. AGS LLC*, No. 2:17-cv-00343-JAD-NJK, 2018 WL 2292811, at *3 (D. Nev. May 18, 2018) ("The determination of

- 22 -

111649345.1

1  substantial need is particularly important in the context of enforcing a subpoena when discovery of

2  trade secret or confidential commercial information is sought from non-parties."); *Gradillas Court*

3  *Reporters, Inc. v. Cherry Bekaert, LLP*, 2018 WL 2197544, at *6 (N.D. Cal. May 14, 2018) (noting

4  that another case "den[ied] request for production after finding that the records were not essential

5  to proof of damages as claimed by the plaintiff, and that the harm of disclosure to the third-party is

6  greater than the value to the plaintiff") (internal quotation marks omitted). Thus, an order producing

7  documents from Greenspun Media Group and lasvegassun.com is not warranted.

8  **V.  CONCLUSION**

9       In light of the foregoing reasons, the Sun respectfully requests that this Court deny the RJ's

10  Motion.

11       DATED this 6th day of July, 2020.

12                        LEWIS ROCA ROTHGERBER CHRISTIE LLP

13

14                 By: */s/ E. Leif Reid*

15                    E. Leif Reid, Bar No. 5750
                  Kristen L. Martini, Bar No. 11272

16                    Nicole Scott, Bar No. 13757
                  One East Liberty Street, Suite 300

17                    Reno, NV 89501-2128

18                    PISANELLI BICE PLLC
                  James J. Pisanelli, Bar No. 4027

19                    Todd L. Bice, Bar No. 4534
                  Jordan T. Smith, Bar No. 12097

20                    400 South 7th Street, Suite 300
                  Las Vegas, Nevada 89101

21

22                    ALIOTO LAW FIRM
                  Joseph M. Alioto, Pro Hac Vice

23                    Jamie L. Miller, Pro Hac Vice
                  One Sansome Street, 35th Floor

24                    San Francisco, CA 94104

25                    *Attorneys for Plaintiff*

26

27

28                      - 23 -

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(b), I certify that I am an employee of Lewis Roca Rothgerber Christie LLP, and that on the 6th day of July, 2020, I caused the foregoing **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL LAS VEGAS SUN, INC. TO RESPOND TO DEFENDANTS' FIRST SET OF REQUESTS FOR PRODUCTION (ECF NO. 77)** to be served by electronically filing the foregoing with the CM/ECF electronic filing system, which will send notice of electronic filing to:

> J. Randall Jones, Esq.
> Michael J. Gayan, Esq.
> Mona Kaveh, Esq.
> KEMP JONES, LLP
> 3800 Howard Hughes Parkway, 17th Floor
> Las Vegas, Nevada 89169
>
> Richard L. Stone, Esq.
> Amy M. Gallegos, Esq.
> David R. Singer, Esq.
> JENNER & BLOCK LLP
> 633 West 5th Street, Suite 3600
> Los Angeles, California 90071

*/s/ Autumn D. McDannald*
Employee of Lewis Roca Rothgerber Christie LLP

- 24 -

111649345.1

## INDEX OF EXHIBITS

| Exhibit No. | Description | No. of Pages |
|:---:|:---|:---:|
| 1 | Declaration of E. Leif Reid in Support of Plaintiff's Opposition to Defendants' Motion to Compel Las Vegas Sun, Inc. to Respond to Defendants' First Set of Requests for Production (ECF No. 77) | 2 |
| 2 | Notice of Entry of Findings of Facts, Conclusions of Law, and Order Affirming Arbitration Award, *Las Vegas Sun, Inc. v. News+Media Capital Group LLC*, No. A-18-772591-B (Clark County Dist. Ct., Nev. Jan. 28, 2020) | 11 |
| 3 | Notice of Entry of Stipulation and Order to Withdraw as Co-Counsel of Record, *Las Vegas Sun, Inc. v. News+Media Capital Group LLC*, No. A-18-772591-B (Clark County Dist. Ct., Nev. Feb. 10, 2020) | 5 |
| 4 | Defendants' Motion to Dismiss, *Las Vegas Sun, Inc. v. News+Media Capital Group LLC*, No. A-18-772591-B (Clark County Dist. Ct., Nev. May 7, 2018) | 99 |
| 5 | Order Granting Plaintiff's Motion to Compel Arbitration and Denying Defendants' Motion to Dismiss, *Las Vegas Sun, Inc. v. News+Media Capital Group LLC*, No. A-18-772591-B (Clark County Dist. Ct., Nev. Nov. 21, 2018) | 2 |
| 6 | Excerpts of Hearing Transcript, *Las Vegas Sun, Inc. v. News+Media Capital Group LLC*, No. A-18-772591-B (Clark County Dist. Ct., Nev. Oct. 24, 2018) | 18 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- 25 -

111649345.1