J. Randall Jones, Esq., SBN 1927
r.jones@kempjones.com
Michael J. Gayan, Esq., SBN 11135
m.gayan@kempjones.com
Mona Kaveh, Esq., SBN 11825
m.kaveh@kempjones.com
KEMP JONES LLP
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169
Telephone: (702) 385-6000

Richard L. Stone, Esq. (*pro hac vice*)
rstone@jenner.com
David R. Singer, Esq. (*pro hac vice*)
dsinger@jenner.com
Amy M. Gallegos, Esq. (*pro hac vice*)
agallegos@jenner.com
JENNER & BLOCK LLP
633 West 5th Street, Suite 3600
Los Angeles, California 90071
Telephone: (213) 239-5100

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| LAS VEGAS SUN, INC., | Case No.: 2:19-cv-01667-GMN-BNW |
| Plaintiff, | |
| v. | **DEFENDANTS NEWS+MEDIA CAPITAL GROUP LLC'S AND LAS VEGAS REVIEW-JOURNAL, INC.'S MOTION FOR PROTECTIVE ORDER REGARDING ARMANINO LLP AND BDO USA, LLP SUBPOENAS** |
| SHELDON ADELSON, et al., | |
| Defendants. | |
| | Hearing Date: October 6, 2020 |
| | Hearing Time: 9:00 a.m. |

/ / /

/ / /

/ / /

1    **I.**     **Introduction.**

2           At the outset of discovery, before the Court made any rulings on the appropriate scope of

3    discovery, the Sun issued broad document subpoenas to the Review-Journal's former and current

4    outside accounting firms, Armanino and BDO, covering a five-year period. The parties promptly

5    met and conferred and agreed that Defendants' counsel could obtain and review the documents

6    before Armanino and BDO provided any documents to the Sun. Due to the broad scope of the

7    subpoenas, Armanino and BDO needed significant time to gather the documents and provide

8    them to Defendants for review. Defendants obtained and reviewed an initial set of BDO

9    documents comprising more than 11,000 pages, and BDO recently produced these documents to

10   the Sun. After significant challenges, Defendants recently obtained reasonable access to almost

11   18,500 pages of Armanino documents. Defendants also recently received an additional 749 pages

12   of documents from BDO and notice that Armanino plans to send Defendants in excess of 11,000

13   pages of email correspondence.

14          The Sun claims that it needs to see *all* of the accounting records from the Review-Journal's

15   accountants to determine whether or not the Review-Journal has complied with the accounting

16   provisions of the parties' 2005 JOA.  But this federal lawsuit is not a breach of contract or

17   accounting case. It is an antitrust case in which the Sun claims that Defendants have monopolized

18   the market for the sale of newspapers. The Sun alleges that the Review-Journal's breaches of

19   contractual accounting provisions (which have already been arbitrated and appealed to the Nevada

20   Supreme Court) were part of a broader conspiracy to willfully monopolize the market for the sale

21   of newspapers in Clark County.

22          On September 4, in connection with another discovery dispute (the Sun's motion seeking

23   to limit Defendants' subpoena to Ms. Cain), the Court made a significant relevancy ruling that

24   should be applied consistently here.  Specifically, the Court ruled that "**the breach [of the JOA]**

25   **itself is not relevant**" to this case. ECF No. 131 at 6:11 (emphasis added). Instead, the Court

26   clarified that evidence concerning the Review-Journal's accounting under the JOA is only

27   relevant to the extent it pertains to whether the Review-Journal's alleged accounting breaches

28

1

were "abusive and had the intent of putting the Sun out of business." ECF No. 131 at 6:17–18.[1] The Court's ruling adopted the Sun's argument that any disputes regarding the Sun's profit payments are subject to mandatory arbitration and should not be relitigated in this action.[2] ECF No. 98 at 3:24–26 (n.2), 5:7, 5:22–28 (n.4). The Sun must now accept the Court's ruling, based on the Sun's own argument, which means it cannot use this case to conduct discovery for purposes of relitigating *any* alleged JOA breaches involving accounting issues (*i.e.*, how the Review-Journal calculated EBITDA for purposes of computing the Sun's profit payment). ECF No. 126 at 5:7–9. The only JOA accounting issue relevant in this case is whether Defendants breached the JOA with the intent to drive the Sun out of business. ECF No. 131 at 6:18–22; *see also* ECF No. 1 at ¶ 56 (listing categories of allegedly anticompetitive conduct). Therefore, consistent with the Court's prior ruling, discovery should not involve the substance of any potential JOA accounting claims referenced in the Complaint—and it certainly should not involve a sweeping demand for every single financial record and accounting document from the past five years in the possession of the Review-Journal's outside accountants.[3]

Having now reviewed the Armanino documents (which were not readily available for review until recently), it is clear the documents include tens of thousands of pages of highly sensitive financial, operational, and other business materials **with absolutely no relevance to this case based on the Court's rulings.** Armanino has years of tax-related materials, granular company-wide financial and audit materials involving the Review-Journal's JOA and non-JOA operations, and records regarding employees, payroll, vendors, and prior and current litigation. These financial and employment documents have nothing to do with Defendants' alleged intent

---

[1] The Court then ruled that Ms. Cain's records are still relevant because her "interpretation of the JOA would form the basis upon which the Sun would be able to mount how it is that the RJ abused their control and power under it and may shed light on why it is believed that the RJ acted with nefarious intent." ECF No. 131 at 6:25–7:4.

[2] As the Court noted, the parties recently arbitrated their JOA accounting dispute, which is pending before the Nevada Supreme Court. *See, e.g.*, ECF No. 126 at 5:7–9.

[3] Even if the substance of those alleged breaches is somehow relevant despite the Court's clear ruling, they are limited to editorial costs and promotional activities—the only two JOA accounting breaches that are actually pled in the Complaint. ECF No. 1 at ¶¶ 70–85.

to drive the Sun out of business. Instead, the Sun would only use these detailed financial documents to audit whether or not the Review-Journal supposedly breached the accounting terms of the JOA—issues the Court ruled are irrelevant (and which the Sun has steadfastly maintained are subject to mandatory arbitration). Because subpoenas are constrained by the same limits as other forms of discovery, the Sun must not be allowed to obtain any of the irrelevant Armanino records.

Additionally, on July 27, just days after this Court ruled that appraisals and valuations of the Review-Journal's assets were only relevant to the extent they involve barriers to entry in the relevant antitrust market (*i.e.*, the sale of newspapers in Clark County), the Sun ignored the Court's ruling and—without notice to Defendants—specifically asked BDO to provide its work papers related to the Review-Journal's intangible assets and goodwill. **Exhibit A** (Gayan Dec.) at ¶ 4, **Exhibit B** (7/27 Email). The Sun cannot be allowed to circumvent the Court's rulings on the proper scope of discovery through backdoor subpoenas to BDO or any other non-party.[4]

Defendants News+Media and the Review-Journal (collectively, "RJ") respectfully request an order (1) limiting the Armanino subpoena to relevant documents, i.e., those evidencing an intent to put the Sun out of business by breaching the JOA; (2) limiting the 749 pages of BDO documents (not yet produced) in that same way; and (3) specifically barring the Sun from using the BDO subpoena (or the Armanino subpoena) to obtain documents the Court has already deemed irrelevant and non-discoverable (*e.g.*, RFP No. 84 seeking valuations of Review-Journal assets other than alleged barriers to entry).

/ / /

/ / /

---

[4] *See Heard v. Costco Wholesale Corp.*, 2020 WL 515841, at *3 (D. Nev. Jan. 31, 2020) (noting "that third party discovery is not to be used as a means to circumvent Rule 33 or 34, but rather, to the extent that Defendants have found Plaintiff's written discovery responses deficient, they should meet and confer and seek to compel that information in accordance with Rule 37").

## II.   Background.

### A.   The Sun's JOA Accounting Allegations, the Parties' Agreement to Arbitrate JOA Accounting Disputes, and the Court's Relevancy Rulings.

#### 1.   The Complaint Alleges the Review-Journal Engaged in JOA Accounting Practices—Limited to Editorial and Promotional Costs—that are Intended to Drive the Sun Out of Business.

In its Complaint, the Sun alleges that Defendants have intentionally engaged in an anticompetitive scheme to force the Sun out of business so that the Review-Journal can monopolize the market for sale of newspapers in Clark County. A portion of the alleged scheme includes the Review-Journal's accounting practices, which the Sun alleges have depressed its JOA profit payments. More specifically, the Sun accuses the Review-Journal of wrongfully deducting all of its editorial and promotional expenses when calculating EBITDA. ECF No. 1 at ¶¶ 70–74 (editorial costs), 75–85 (promotional costs).

With respect to the dispute about editorial costs, the Sun claims the Review-Journal should not deduct any editorial costs when calculating EBITDA because the JOA requires each paper to bear its own editorial costs. *Id.* at ¶ 72. Regarding the disputes about promotional costs, the Sun contends the JOA precludes the Review-Journal from deducting any costs for promotion that do not also mention the Sun.[5] *Id.* at ¶¶ 75, 83. Subsumed within its allegations about the promotional costs is a claim that the Review-Journal has violated the JOA by including costs to promote www.ReviewJournal.com when it computes EBITDA.

#### 2.   The Parties Were Compelled to, and Recently Did, Arbitrate the Sun's Claims About the Editorial and Promotional Costs.

Under the 2005 JOA, the Sun and the Review-Journal agreed to arbitrate—after the Sun completes an audit—any disputes about the amounts owed to the Sun. ECF No. 20-1 at Appendix D. In April 2018, the Sun asserted claims against the RJ in Nevada state court over the same editorial and promotional costs issues referenced in the Complaint. At the Sun's request, the state

---

[5] The Sun's contentions on both issues are absurd, violate the plain meaning of the JOA, and are being contested via an appeal pending before the Nevada Supreme Court.

court compelled all of the Sun's JOA-accounting claims to arbitration. The parties arbitrated those issues, and both parties appealed the result to the Nevada Supreme Court. Those appeals remain pending.

The Sun has taken the position that the parties cannot relitigate the editorial and promotional costs issues in this federal lawsuit,[6] and the JOA's mandatory arbitration provision precludes the Sun from raising any other accounting or audit issues for the first time in this forum. ECF No. 20-1 at 27 ("If as a result of such an audit, there is a dispute between the Sun and the Review-Journal as to amounts owed to Sun and they are not able to resolve their dispute within 30 days, they shall select a certified public accountant to arbitrate the dispute."). Similarly, the Sun cannot use discovery in this action to conduct its JOA-related audit of the Review-Journal because the parties contractually agreed to the audit process, which is backed by a mandatory arbitration provision.

### 3. The Court's Pertinent Rulings on Relevance and the Scope of Discovery.

On July 20, 2020, the Court held its first Case Management Conference ("CMC") to consider and resolve pending discovery motions. During that initial hearing, the Court resolved the Sun's motion to compel Defendants to respond to, among other requests, the Sun's RFP No. 84 for all appraisals of the Review-Journal and its assets. The Court made the following relevance rulings:

- The Court sustained in part Defendants' relevance objection and held that "**[o]nly appraisals of assets constituting barriers to entry into a local daily newspaper market are relevant.**" ECF No. 102 at 64:21–24 (emphasis added).

- "**The appraisal of the *RJ* itself is not relevant. What the *RJ* may be worth does not inform how this would be a barrier to entry**." *Id.* at 65:5–7 (emphasis added).

---

[6] *See, e.g.*, ECF No. 98 at 3:24–26 (n.2), 5:7, 5:22–28 (n.4) (arguing that "[a]llowing the RJ to use this Court to reopen and relitigate issues that are already resolved in state court will create problems of finality and comity between the two forums.")

The Court agreed that the Sun failed to explain "a need for the appraised value of any aspect of the Review-Journal's business other than potential barriers to entry into the alleged market." ECF No. 84 at 20:8–10.

Then on July 28, 2020, the Court heard and ruled on Defendants' motion to compel the Sun to respond to dozens of requests to produce documents. ECF No. 77. The Court's rulings included numerous comments regarding relevance and the boundaries of discovery based on the Sun's Complaint. Those rulings included the following:

- This action involves only the printed joint newspaper, *see, e.g.,* ECF No. 111 at 68:10–13, 70:18–21 (ruling the "only competition that is relevant here is that of the Sun newspaper vis-à-vis other products" and not competition between the Sun more generally and other products); and

- The Sun's digital operations are not relevant to the claims or defenses in this action. *See, e.g., id.* at 69:10–20.

On August 25, 2020, the Court held its second CMC and heard the Sun's and GMG's motions regarding Defendants' subpoena to Elizabeth Cain (the Sun's consultant). The Sun has repeatedly argued that this action cannot be used to relitigate the JOA accounting issues addressed during the arbitration. ECF No. 98 at 3:24–26 (n.2), 5:7, 5:22–28 (n.4) (arguing that "[a]llowing the RJ to use this Court to reopen and relitigate issues that are already resolved in state court will create problems of finality and comity between the two forums."). The Court agreed with the Sun on this point and stated it would not permit the parties to relitigate the JOA accounting disputes that were arbitrated last year. ECF No. 126 at 5:7–11. This would necessarily mean the Review-Journal's detailed financial records used in calculating EBITDA and/or the Sun's JOA profit payments are completely irrelevant in this antitrust action.

On September 4, 2020, the Court ruled, among other things, as follows:

- "**_[T]he breach [of the JOA] itself is not relevant_**" to this case due to the Sun's allegation that the breach "was not simply a matter where the parties interpreted the contract differently" but that the RJ's conduct "was abusive and had the intent of putting the Sun out of business. It is this intent with which the RJ acted as it relates to

6

the breach that makes the issue relevant. Stated differently, if the breach at issue did not involve the nefarious motives that the Sun imputes to the RJ, then the breach would not form a part of the instant claim." ECF No. 131 at 6:11, 14–22.[7]

- Nonetheless, Ms. Cain's records are still relevant because her "interpretation of the JOA would form the basis upon which the Sun would be able to mount how it is that the RJ abused their control and power under it, and may shed light on the reasons why it is believed that the RJ acted with nefarious intent." *Id.* at 6:25–7:4.

**B.     The Sun's Overbroad Subpoenas to Armanino and BDO, and the Parties' Subsequent Efforts Related to the Subpoenas.**

       ***1.     The Sun Broadly Subpoenas Documents from the Accounting Firms Armanino LLP and BDO USA LLP.***

On June 5, 2020, the Sun served Defendants with notice of its intent to serve document subpoenas on the accounting firms of Armanino LLP and BDO USA, LLP. **Exhibit A** at ¶ 5, **Exhibit C** (Subpoenas). The subpoenas sought several broad categories of documents, including:

- Audits of Defendant Las Vegas Review-Journal, Inc., including the Review-Journal newspapers, the Review-Journal's website (reviewjournal.com), and the JOA, for the fiscal years starting on April 1, 2014, to the present, *id.* at Request No. 6;

- Audits of Defendants News+Media Capital Group LLC, Sheldon Adelson, and Patrick Dumont covering the same time period (April 1, 2014, to the present), *id.* at Request Nos. 3–5;

- Audits of non-party Orchid Flower LLC covering the same time period (April 1, 2014, to the present), *id.* at Request No. 2; and

- All of Armanino's and BDO's internal and external documents, work papers, files, and communications regarding any of the requested audits. *Id.* at Request Nos. 7–13.

---

[7] The Sun's claim for unlawful monopolization under Section 2 of the Sherman Act requires it to demonstrate that defendants "(1) possessed monopoly power in the relevant market, (2) willfully acquired or maintained that power through exclusionary conduct, and (3) caused antitrust injury." *MetroNet Servs. Corp. v. Qwest Corp.*, 383 F.3d 1124, 1130 (9th Cir. 2004).

Of note, News+Media acquired the Review-Journal on December 10, 2015, more than 20 months *after* the beginning of the time period covered by the Sun's subpoenas. ECF No. 1 at ¶ 7.

### 2. *Defendants' Efforts to Evaluate the Subpoenas and Meet and Confer with the Sun.*

Upon receiving notice of the subpoenas, Defendants made inquiries with Armanino, BDO, and others about the general scope of materials in Armanino's and BDO's possession. Defendants' counsel learned from Armanino, BDO, and others that Armanino and BDO did not conduct any audits for Defendants Sheldon Adelson or Patrick Dumont or non-party Orchid Flower LLC. **Exhibit A** at ¶ 7.

Before seeing any of the documents in Armanino's or BDO's possession, Defendants met and conferred with the Sun regarding procedures to allow Defendants to review the documents before a production occurred. Consistent with the parties' agreement on Defendants' subpoena to the Sun's accounting firm, RSM USA LLP, the parties agreed that Defendants would have the ability to review the subpoenaed documents before Armanino or BDO produced any documents to the Sun. *Id.* at ¶ 8.

### 3. *BDO Timely Objects to the Sun's Subpoena.*

On June 19, 2020, BDO served a written objection to the Sun's subpoena. **Exhibit A** at ¶ 6, **Exhibit D** (Objection). The Sun has not moved to compel the production of any documents subpoenaed from BDO.

### 4. *Defendants' Efforts to Obtain and Review the Armanino and BDO Documents.*

After the Sun agreed to allow Defendants to review the documents before production, Defendants promptly began working with Armanino and BDO to obtain access to the subpoenaed documents. On July 14, 2020, BDO's counsel provided Defendants with nearly 11,000 pages of documents. On or about August 24, 2020, BDO produced these documents to the Sun. The Sun has yet to provide copies of these documents to Defendants. **Exhibit A** at ¶¶ 9–10.

On July 27, 2020, the Sun contacted BDO without Defendants' knowledge and requested the work papers for (a) property, plant, and equipment; (b) intangible assets; (c) goodwill; (d)

revenue recognition for barter transactions; (e) a litigation note regarding the Sun's current lawsuit; and (f) the JOA. **Exhibit B**. On or about August 19, 2020, in response to the Sun's request, BDO provided Defendants with an additional 749 pages of documents and a copy of the Sun's email. **Exhibit A** at ¶ 12. The 749 pages of BDO documents have not yet been produced to the Sun. *Id.*

Due to Armanino's use of proprietary software for its accounting records and difficulties in accessing the documents, Defendants did not obtain reasonable access to the Armanino documents until August 26, 2020. The Armanino documents include more than 1,100 files that comprise nearly 18,500 pages of PDF documents plus other native files (*e.g.*, Excel). *Id.* at ¶ 13. On September 2, 2020, Armanino's counsel notified Defendants' counsel that Armanino had gathered thousands of responsive emails, which amount to more than 11,000 pages (not including attachments). Defendants' counsel has not yet received the Armanino emails. *Id.*

> **5.** **Based on This Court's Rulings, Most, if Not All, of the Highly Sensitive Documents in Armanino's Possession Have No Relevance to the Sun's Antitrust Claims.**

Armanino has thousands of highly sensitive financial documents that, according to this Court, have nothing to do with the Sun's antitrust claims, because this Court has ruled the Sun's claims do not involve relitigating the already-arbitrated JOA accounting issues pled in the Complaint. The categories of therefore irrelevant Armanino documents include:

- Review-Journal detailed financial documents for fiscal years 2016–2019, which include the print newspaper and JOA operations and all of the Review-Journal's non-JOA/digital operations;

- Company-wide audit documentation and memoranda for the Review-Journal for 2016–2019;

- Tax-related documentation for 2016–2019;

- Employee information, including salary details;

- Detailed work papers related to Armanino's audit work for the Review-Journal for 2016–2019;

- Armanino evaluations and memorandums related to the Review-Journal, dated in 2020;

- Ordinary, granular accounting documents that have nothing to do with the JOA or the Sun's JOA-related allegations;

- Documents related to intangibles and goodwill;

- Discussion and summaries of legal matters unrelated to this action;

- Summaries of legal fees dated through 2020, including summaries pertaining to defense counsel in this matter; and

- Correspondence with the Review-Journal and News+Media representatives related to Armanino's company-wide audit work.

**Exhibit G** (Kaveh Dec.) at ¶ 4. The Armanino documents include extraordinarily detailed private financial records, such as specifics of revenues and expenses and information about the Review-Journal's operations—both print and digital—which have nothing to do with the disputed JOA provisions or the RJ's alleged intent to drive the Sun out of business by supposedly breaching those discrete JOA accounting provisions. *Id.*

### 6. *The Sun Attempts to Use the BDO Subpoena to Circumvent the Court's Relevancy Rulings.*

The BDO documents are broken into two groups: (1) the initial batch of 11,000 pages, and (2) the second batch of 749 pages responsive to the Sun's July 27 request for irrelevant materials. **Exhibit A** at ¶ 10–12. The Sun received the first group of documents from BDO on or about August 24, 2020, but has not yet produced them to Defendants. *Id.* at ¶ 10.

After the first Case Management Conference, the Sun attempted to use the BDO subpoena to circumvent the Court's relevancy ruling on RFP No. 84. Within days of the Court's July 20 ruling that Defendants did not need to produce documents regarding valuations of the Review-Journal's intangible assets and goodwill—or anything else unrelated to barriers to entry—because they are not relevant, the Sun contacted BDO's counsel and specifically requested all available documentation on these non-discoverable subjects. **Exhibit B**. This improper request by the Sun caused BDO to gather and send Defendants the additional 749 pages of documents for review.

The second group of BDO documents, which contains approximately 749 pages gathered in response to the Sun's July 27 request, includes the following categories of documents:

- Memos created by BDO related to the Review-Journal's balance sheet and revenue;
- Documents related to the Review-Journal's expenses;
- Documents related to the Review-Journal's vendors;
- Accounts payable information;
- Employee information;
- Depreciation analysis and expense reports;
- Information related to goodwill and future amortization expenses;
- Identification of intangible assets;
- An appraisal report for the Review-Journal (dated 12/10/15);
- Internal control summaries and documents prepared by BDO in support of conclusions;
- Management forecasts;
- Stock Purchase Agreement between DB Acquisition, Inc., DB Nevada Holdings, Inc., and News+Media; and
- Documents related to Stephens Media's tangible assets and audit support cost sheets.

**Exhibit G** at ¶ 5.

### C.   The Sun Refused to Limit the Armanino and BDO Subpoenas in Accordance with the Court's Relevancy Rulings.

On September 11, 2020, the parties met and conferred about various discovery issues, including the RJ's request to limit the Armanino and BDO subpoenas consistent with the Court's relevancy rulings. Specifically, the RJ conveyed its position that, following its review of the accountants' documents, and based on the Court's September 4 ruling, the only relevant Armanino documents are those, if any, that evidence an intent by Defendants to breach the JOA accounting provisions on editorial and promotional costs for the purpose of driving the Sun out of business. The RJ also explained that the Sun cannot use the BDO subpoena to circumvent the

1  Court's ruling on RFP No. 84 and obtain documents related to appraisals of any Review-Journal

2  assets not related to alleged barriers to entry. **Exhibit A** at ¶ 14.

3         The Sun refused to discuss these issues and asked Defendants to provide a letter with more

4  details, which Defendants did that same day. **Exhibit A** at ¶ 15, **Exhibit E** (9/11 Letter).

5  Defendants offered to continue meeting and conferring on this issue as long as the Sun agreed to

6  suspend any obligation for Armanino or BDO to produce documents. The Sun responded by

7  stating that further meet-and-confer efforts would not be useful. **Exhibit A** at ¶ 16, **Exhibit F**

8  (9/14 Letter). The Sun's refusal to narrow the subpoenas consistent with the Court's rulings

9  necessitated this Motion.

10  **III.    Standard of Review.**

11         "[B]road discretion is vested in the trial court to permit or deny discovery." *Hallett v.*

12  *Morgan*, 296 F.3d 732, 751 (9th Cir. 2002); *see also Crawford-El v. Britton*, 523 U.S. 574, 598

13  (1998). Discovery is limited to nonprivileged matters that are "relevant to any party's claim or

14  defense and proportional to the needs of the case, considering the importance of the issues at stake

15  in the action, the amount in controversy, the parties' relative access to relevant information, the

16  parties' resources, the importance of the discovery in resolving the issues, and whether the burden

17  or expense of the proposed discovery outweighs its likely benefits." FED. R. CIV. P. 26(b)(1).

18  Courts must limit discovery where it is outside the scope of Rule 26(b)(1). FED. R. CIV. P.

19  26(b)(2)(c).

20         "The scope of discovery under a subpoena issued pursuant to Rule 45 is the same as the

21  scope of discovery allowed under Rule 26(b)(1)—material that is relevant to a claim or defense

22  of any party." *Playstudios, Inc. v. Centerboard Advisors, Inc.*, 2019 WL 8128168, at *2 (D. Nev.

23  July 18, 2019); *see also Painters Joint Committee v. Employee Painters Trust Health & Welfare*

24  *Fund*, 2011 WL 4573349, at *5 (D. Nev. Sept. 29, 2011) ("It is well established that the scope of

25  discovery under a subpoena issued pursuant to Rule 45 is the same as the scope of discovery

26  allowed under Rule 26(b)(1)."). Accordingly, entering a protective order against the production

27  of subpoenaed documents is appropriate where the documents are not relevant. *Acosta v. Wellfleet*

28  *Commc'ns, LLC*, No. 2:16-CV-02353-GMN-GWF, 2017 WL 5180425, at *6 (D. Nev. Nov. 8,

2017). In addition, Rule 45 requires courts to modify a subpoena that requires disclosure of privileged or other protected matter, and it permits courts to modify a subpoena that requires disclosure of a trade secret or other confidential commercial information. FED. R. CIV. P. 45(d)(3).

Rule 26(b)(1) limits the scope of discovery to matters connected to the parties' claims and defenses. Here, with respect to the RJ's financial records, the Court has already ruled that the underlying JOA accounting breaches alleged by the Sun are irrelevant. Only Defendants' purported intent to breach the JOA provisions related to editorial and promotional costs are relevant to the Sun's antitrust claims. *See supra*, Section II.A. The Sun's claims implicate no other aspect of the RJ's finances, especially for any operations outside the JOA (*e.g.*, digital/website). For that reason, Rule 26(b)(1) bars the Sun from engaging in a broad inspection of the RJ's granular financial records and internal operations. Simply put, the Sun has no right to access virtually every financial aspect of the RJ's business.

**IV.     The Court Should Enter a Protective Order and Limit the Armanino and BDO Subpoenas to Relevant Materials Within the Scope of Discovery in this Case.**

**A.     Defendants Have Standing to Challenge the Subpoenas.**

Upon a showing of good cause, a party may obtain a protective order to limit the scope of discovery. *See* FED. R. CIV. P. 26(c)(1). In addition, a party to an action may challenge a third-party subpoena where "the party claims a personal right or privilege with respect to the documents requested in the subpoena." *G.K. Las Vegas Ltd. Partnership v. Simon Property Group, Inc.*, 2007 WL 119148 at* 4 (D. Nev. Jan. 9, 2007). Accordingly, a party can "move for a protective order in regard to a subpoena issued to a non-party if it believes its own interest is jeopardized by discovery sought from a third party and has standing under Rule 26(c) to seek a protective order regarding subpoenas issued to non-parties which seek irrelevant information." *Id.*; *see also* FED. R. CIV. P. 26(c)(1); *First Am. Title Ins. Co. v. Commerce Assocs., LLC*, 2017 WL 53704, at *1 (D. Nev. Jan. 3, 2017).

The RJ may challenge the Armanino and BDO subpoenas because they each possess a personal right with respect to the broad scope of subpoenaed documents.[8] These accounting firms have thousands of the Review-Journal's and News+Media's private financial documents along with work papers and correspondence discussing the details of those private financial documents. The private, highly sensitive financial documents include but are not limited to years of the RJ's internal financial records, tax-related materials, company-wide audit records, employee and payroll information, details regarding the Review-Journal's goodwill and intangible assets, and vendor records. The vast majority of these documents are irrelevant and outside the scope of discovery in this case because they do not relate to the Sun's financial-related claims, which are limited to the Review-Journal's treatment of editorial and promotional costs when calculating EBITDA. *See supra*, Section II.A. Many of these irrelevant documents, which include records related to the Review-Journal's digital operations, contain commercially sensitive information that should never be made available to the Sun or its owner.

**B.     The Subpoenas Seek Information Far Beyond the Scope of Discovery Under FRCP 26(b)(1) and this Court's Rulings.**

Courts must limit discovery where it is not relevant to the parties' claims or defenses or proportional in light of the importance of the discovery in resolving the issues in dispute. *See* FED. R. CIV. P. 26(b)(2)(c)(iii). Indeed, the purpose of the 2015 amendments to Rule 26 was to encourage judges to exercise their discretion "to limit and tailor discovery to avoid abuse and overuse" by emphasizing "the need to impose reasonable limits on discovery through increased reliance on the common-sense concept of proportionality." *Acosta v. Wellfleet Communications, LLC*, 2017 WL 5180425, at *4 (D. Nev. Nov. 8, 2017) (internal quotations omitted).

A court should quash a subpoena or enter a protective order precluding discovery where the subpoena seeks information that is not relevant to the parties' claims or defenses. *See, e.g., Copper Sands Home Owners Ass'n, Inc.*, 2011 WL 112146, at *2 (granting parties' request for

---

[8] On September 4, 2020, the Court held that the Sun and GMG had standing to challenge Defendants' subpoena to Ms. Cain for these same reasons.

protective order and to quash third party subpoena where the subpoena sought "a vast amount of information" unrelated to the claims at issue); *Desert Valley Painting & Drywall v. United States*, 829 F. Supp. 2d 931, 939-40 (D. Nev. 2011) (granting motion for protective order where discovery of employees' "internal analysis, impressions or conclusions" was not relevant). Even where the party seeking protection does not have a legally protected privacy interest, the court may prohibit discovery if the records are not relevant or are only relevant as to a specific time period. *Acosta*, 2017 WL 5180425, at *6; *Desert Valley Painting & Drywall*, 829 F. Supp. 2d at 939–40.

### 1. Most, and Possibly All, of the RJ's Financial, Operational, and Employment Documents in Armanino's Possession are Irrelevant to Defendants' Alleged Intent to Drive the Sun Out of Business.

The Court ruled on September 4 that Defendants' alleged breaches of the JOA accounting provisions, standing alone, are not relevant to the Sun's antitrust claims. By virtue of that ruling, the only information relevant to the Sun's claims is whether Defendants had an intent to breach those JOA provisions for the purpose of driving the Sun out of business. *See supra*, Section II.A. Based on that ruling, and as urged by the Sun,[9] the Court ruled that the parties cannot use this action to relitigate the already-arbitrated disputes about editorial and promotional costs referenced in the Sun's Complaint. That being the case, the RJ's detailed financial, operations, and employment records in Armanino's possession and Armanino's analysis of those private, highly sensitive records are not relevant to this case. The only reason the Sun would need any of those records would be to audit the Review-Journal's accounting practices related to the Sun's JOA profit payments—issues the parties agreed to, and did, arbitrate. *See supra*, Section II.A.

Further, Armanino has a significant amount of highly sensitive records that are entirely unrelated to the JOA accounting issues raised in the Sun's Complaint. The records include thousands of documents with information related to the Review-Journal's digital operations, which are outside the JOA, tax details, company-wide audits, payroll and employment, unrelated

---

[9] ECF No. 98 at 3:24–26 (n.2), 5:7, 5:22–28 (n.4) (arguing parties cannot use this case to relitigate any issues from the 2019 arbitration).

litigation, and other matters wholly irrelevant to the joint print newspaper and/or the parties' disputes about editorial and promotional costs. The Sun should never obtain these irrelevant documents, regardless of the protective order that is in place.

Because the Sun cannot bear its initial burden to show the relevance of the broad Armanino subpoena, the Court should limit the Armanino subpoena consistent with its recent ruling and require Armanino to produce documents that evidence an intent by Defendants to purposefully breach the JOA accounting provisions to drive the Sun out of business.

### 2. The Court Should Not Allow the Sun to Obtain Irrelevant Valuation Documents from BDO.

The Court already determined that valuations of Review-Journal assets are only relevant for the limited purpose of determining barriers to entry into the alleged market. ECF No. 102 at 64:21–24. The Sun did not object to that ruling. Instead, the Sun contacted BDO just a week after the Court's ruling and specifically requested valuation materials related to the Review-Journal's intangible assets and goodwill—documents the Court ruled were irrelevant and disallowed pursuant to RFP No. 84. The Court's order could not have been any clearer. The Sun may not use a subpoena issued pursuant to Rule 45 to circumvent the Court's order and obtain these irrelevant, undiscoverable documents. The Sun knows of this limitation[10] and, frankly, should be sanctioned for attempting to violate the Court's order and then forcing the RJ to bring this motion to simply enforce what the Court has already ruled.

## V.    Conclusion.

For the foregoing reasons, the RJ respectfully requests an order that (1) limits the overbroad Armanino subpoena to documents that may reflect an intent by the Review-Journal to breach the JOA in order to drive the Sun out of business; (2) limits the 749 pages of additional BDO documents (not yet produced) in that same way; and (3) specifically bars the Sun from using the BDO subpoena (or the Armanino subpoena) to circumvent the Court's July 20 order on RFP

---

[10] See ECF No. 80 at 9:26–10:9 (arguing Rule 45 limited by Rule 26(b)(1) in effort to limit Defendants' subpoena to Ms. Cain).

No. 84 that disallowed valuations of any Review-Journal assets that are unrelated to alleged barriers to entry.

Dated: September 15, 2020

KEMP JONES LLP

*/s/ Michael Gayan*

J. RANDALL JONES, ESQ., SBN 1927
MICHAEL J. GAYAN, ESQ., SBN 11135
MONA KAVEH, ESQ., SBN 11825
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169

RICHARD L. STONE, ESQ. (*pro hac vice*)
DAVID R. SINGER, ESQ. (*pro hac vice*)
AMY M. GALLEGOS, ESQ. (*pro hac vice*)
JENNER & BLOCK LLP
633 West 5th Street, Suite 3600
Los Angeles, California 90071

*Attorneys for Defendants*

## PROOF OF SERVICE

I hereby certify that on the 15th day of September, 2020, I served a true and correct copy of the foregoing **DEFENDANTS NEWS+MEDIA CAPITAL GROUP LLC'S AND LAS VEGAS REVIEW-JOURNAL, INC.'S MOTION FOR PROTECTIVE ORDER REGARDING ARMANINO LLP AND BDO USA, LLP SUBPOENAS** via the United States District Court's CM/ECF electronic filing system to all parties on the e-service list.

E. Leif Reid, Bar No. 5750
Kristen L. Martini, Bar No. 11272
Nicole Scott, Bar No. 13757
LEWIS ROCA ROTHGERBER CHRISTIE LLP
One East Liberty Street, Suite 300
Reno, Nevada 89501

Joseph M. Alioto, *Pro Hac Vice*
Jamie L. Miller, *Pro Hac Vice*
ALIOTO LAW FIRM
One Sansome Street, 35th Floor
San Francisco, California 94104

James J. Pisanelli, Bar No. 4027
Todd L. Bice, Bar No. 4534
Jordan T. Smith, Bar No. 12097
PISANELLI BICE PLLC
400 South 7th Street, Suite 300
Las Vegas, Nevada 89101

*Attorneys for Plaintiff*

/s/ Ali Augustine
An employee of Kemp Jones LLP

18

## INDEX OF EXHIBITS

| Exhibit | Description |
|---------|-------------|
| A | Declaration of Michael J. Gayan in Support of Defendants News+Media Capital Group LLC's and Las Vegas Review-Journal, Inc.'s Motion For Protective Order Regarding Armanino LLP and BDO USA, LLP Subpoenas |
| B | Email from the Sun's Counsel to BDO USA, LLP's Counsel, dated July 27, 2020 |
| C | Sun's Notice of Subpoenas Duces Tecum for Armanino LLP and BDO USA, LLP, dated June 5, 2020 |
| D | BDO USA, LLP's Written Objections to the Sun's Subpoena to Produce Documents, dated June 19, 2020 |
| E | Letter from Michael Gayan to the Sun's Counsel, dated September 11, 2020 |
| F | Letter from Nicole Scott to Defendants' Counsel, dated September 14, 2020 |
| G | Declaration of Mona Kaveh in Support of Defendants News+Media Capital Group LLC's and Las Vegas Review-Journal, Inc.'s Motion For Protective Order Regarding Armanino LLP and BDO USA, LLP Subpoenas |