1  J. RANDALL JONES, ESQ., SBN 1927
   r.jones@kempjones.com
2  MICHAEL J. GAYAN, ESQ., SBN 11135
   m.gayan@kempjones.com
3  MONA KAVEH, ESQ., SBN 11825
   m.kaveh@kempjones.com
4  KEMP JONES LLP
   3800 Howard Hughes Parkway, 17th Floor
5  Las Vegas, Nevada  89169
   Telephone: (702) 385-6000
6
   RICHARD L. STONE, ESQ. (*pro hac vice*)
7  rstone@jenner.com
   DAVID R. SINGER, ESQ. (*pro hac vice*)
8  dsinger@jenner.com
   AMY M. GALLEGOS, ESQ. (*pro hac vice*)
9  agallegos@jenner.com
   JENNER & BLOCK LLP
10 633 West 5th Street, Suite 3600
   Los Angeles, California  90071
11 Telephone:    +1 213 239 5100
   Facsimile:    +1 213 239 5199
12
   *Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| LAS VEGAS SUN, INC., | Case No. 2:19-cv-01667-GMN-BNW |
| Plaintiff, | **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO RECONSIDER PREVIOUS DISCOVERY RULINGS** |
| v. | |
| SHELDON ADELSON, et al., | |
| Defendants. | |

## I.  Introduction

The Sun has not articulated a single valid basis for the Court to reconsider the prior discovery rulings referenced in its motion. Nearly six months ago, in July of this year, the Sun moved to compel Defendants to produce (i) all documents that concern or relate to the Review-Journal's investigation of the Las Vegas Convention and Visitors Authority; and (ii) all documents that discuss or mention the Sun's editorial viewpoint.[1] The Sun contended that these documents were necessary to show that the RJ was Mr. Adelson's alter ego and that he directs the newspaper's editorial decisionmaking. The Court accepted the Sun's argument that Mr. Adelson's level of control over the newspaper was relevant to the Sun's alter ego claim, and granted the motion in part. The Court limited the production to documents reflecting an express directive by Mr. Adelson, a category that included documents from Mr. Adelson himself and any communications between third parties that reflected such an express directive. The Court reasoned, correctly, that communications between third parties that did *not* reflect Mr. Adelson's directives were not probative of whether Mr. Adelson was controlling the newspaper. The Court adopted the same rationale in its recent November 13, 2020, ruling in which it compelled Defendants to produce various categories of documents relating to stories that ran in the Review-Journal, but again limited the production to documents reflecting an express directive from Mr. Adelson.

Strangely, even though the Sun essentially won those motions and persuaded the Court to produce precisely the documents it claimed to need—i.e., documents showing whether Mr. Adelson was issuing express directives to Review-Journal employees about certain topics—the Sun is now asking the Court to reconsider these rulings and order Defendants to produce third party communications regarding various news stories and related topics regardless of whether they reflect an express directive from Mr. Adelson or not.

The Sun's argument is difficult to follow. The Sun devotes most of its motion to accusing Defendants of withholding Mr. Adelson's 2016 employment agreement and three random emails that the Sun wrongly claims are smoking guns that prove that the RJ is Mr. Adelson's alter ego.

---

[1] These were the Sun's Request Nos. 47 and 48, respectively.

1

1   The Sun somehow reasons from there that these documents are new evidence that would change
2   the Court's prior ruling and entitle the Sun to third-party communications that do not contain or
3   reflect directives from Mr. Adelson (or even mention him at all). But the employment agreement
4   just shows that Mr. Adelson is formally a co-publisher of the Review-Journal newspaper, which
5   should surprise nobody since the Adelson family has a controlling interest in News+Media Capital
6   Group LLC, which owns the paper. And Mr. Adelson is not even on the three emails the Sun cites;
7   moreover, nothing in those emails remotely suggests that Mr. Dumont is a "tool of communication
8   to conceal Mr. Adelson" as the Sun insultingly puts it. Sun's Mtn. to Reconsider, ECF No. 242, at
9   9.

10        Perhaps more importantly, nothing in the employment agreement or emails changes the
11   logic of the Court's prior ruling. Although unclear, the Sun seems to be claiming that these
12   documents show Mr. Adelson was controlling the Review-Journal to such an extent that any
13   actions or communications of others relating the newspaper's editorial coverage could be assumed
14   to have been ordered by him. But this is just a misrepresentation about the content of the
15   documents, none of which come close to establishing this. The employment agreement does not
16   say that Mr. Adelson exercises complete control over the Review-Journal. Two of the emails are
17   about ███████████████████; neither contains directions from Mr. Adelson or
18   suggests that he ordered anyone to do anything. *Id.* at 33–39 (Exs. 3–4). The third email is about
19   ████████████████████████████████████████████
20   ████████████████. *Id.* at 40–41 (Ex. 5).

21        Desperate to draw attention away from the holes in its argument (and its meritless lawsuit
22   more generally), the Sun accuses Defendants of misconduct, this time contending that Defendants
23   misrepresented facts to the Court. This argument does not survive even minimal scrutiny. The big
24   alleged misstatement on which the Sun hangs its hat is merely a mistaken comment Defendants'
25   counsel made when commenting on Mr. Adelson's employment status in another case, in another
26   court, over a year ago and shortly after that counsel was brought in to the matter. The Court here
27   obviously could not have, in ruling on the Sun's motions to compel, relied on a statement made to
28

a different court with a different judge in a different case. The Sun also claims that Defendants told the Court that Mr. Adelson was simply the Review-Journal's "mere, distant owner" but it cites nothing in the record to support its contention and in fact Defendants never said this. *Id.* at 5.

Finally, the Sun suggests that Defendants should have produced the employment agreement and emails earlier. The employment agreement—which is not responsive to any of the Sun's 340-plus document requests—was produced on October 14, and the emails were produced on October 20. They were produced in the normal course and Defendants were under no obligation to produce them earlier. Moreover, speaking of timeliness, the Sun's delay in bringing this motion thoroughly undercuts all of its arguments. The ruling on Requests 47 and 48 that the Sun wants the Court to reconsider was issued on July 20. The documents the Sun claims are supposedly "shocking" and "damning" were produced in mid-October. Yet the Sun waited until the last week of November (the night before Thanksgiving, to be exact) to file this motion. If the Sun really believed these documents were so important, it would have sought reconsideration immediately instead of waiting over a month and then filing its motion without warning (let alone the mandatory meet and confer) the night before a holiday.[2] The Sun knows these documents are inconsequential and reconsideration is unwarranted. This motion is just another attempt by the Sun to run up costs relitigating issues that have already been decided (twice). It should be denied.

## II. The Sun Failed To Establish A Basis Under Rule 60(b) For The Court To Reconsider Its Prior Discovery Orders.

The Sun requests reconsideration of the Court's prior discovery orders under subsections (b)(3) and (b)(6) of Rule 60, which allow the Court to relieve a party from "a final judgment, order, or proceeding" because of, respectively, "misrepresentation, or misconduct by an opposing party" or "any other reason that justifies relief." Fed. R. Civ. P. (60)(b). As the Sun's own authority acknowledges, "motions for reconsideration are disfavored. A movant must not repeat arguments already presented unless (and only to the extent) necessary to explain controlling, intervening law

---

[2] The Sun's motion is subject to the requirements of L.R. 26-6. The Sun ignored its obligation to meet and confer before filing a motion (again) and blindsided Defendants with this meritless motion.

3

or to argue new facts. A movant who repeats arguments will be subject to appropriate sanctions." *Morrison v. Quest Diagnostics Inc.*, 2020 WL 4207020, at *1 (D. Nev. July 22, 2020).

With respect to Rule 60(b)(3) specifically, "the moving party must prove by clear and convincing evidence that the [order] was obtained through fraud, misrepresentation, or other misconduct and the conduct complained of prevented the losing party from fully and fairly presenting the defense." *De Saracho v. Custom Food Mach., Inc.*, 206 F.3d 874, 880 (9th Cir. 2000). As to Rule 60(b)(6), the Ninth Circuit instructs that it is to be "used sparingly as an equitable remedy to prevent manifest injustice and . . . only where extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous [order]." *Latshaw v. Trainer Wortham & Co.*, 452 F.3d 1097, 1103 (9th Cir. 2006).

The Sun fails to make the requisite showing under Rule 60(b). As detailed below, the Sun does not and cannot point to a single misrepresentation by Defendants to this Court, let alone one that affected the Court's pertinent discovery rulings. Equally important, the Sun has not drawn any coherent connection between the four documents it cites as "new evidence" and the orders it asks the Court to revisit. Lastly, the Sun's accusation that Defendants engaged in discovery misconduct by supposedly withholding the four documents is meritless.

**A.     The Court Should Reject the Sun's Baseless Contention That Defendants Misrepresented Facts in Prior Discovery Hearings.**

Contrary to the Sun's assertions, Defendants have not made any misrepresentations to this Court about Mr. Adelson's involvement in the Review-Journal newspaper. The Sun accuses Defendants of "portray[ing] Mr. Adelson as a mere, distant owner"; making "several [mis]representations about Mr. Adelson's role in the company"; and arguing that "the Sun could not link Mr. Adelson, a 'mere owner' of the Review-Journal, to the day-to-day business of the newspapers." Sun's Mtn. to Reconsider, ECF. No. 242, at 5–6. But the Sun conspicuously cites nothing in the record to support such accusations, nor can it because Defendants never said these things.

4

Instead, the Sun cites to an inadvertent misstatement made over a year ago by Mr. Jones in another court proceeding—i.e., the since-stayed state court litigation. *Id.* at 4. The statement was made shortly after Mr. Jones appeared in that case. More importantly, that statement was not made to this Court and could not have impacted this Court's prior discovery rulings, and thus cannot be a basis to overturn this Court's prior, correct, discovery orders.[3]

The Sun points to two other statements to support its misrepresentation claim: (1) in his motion to dismiss, Mr. Adelson argued that he does not compete in the relevant market in his individual capacity (*id.* at 4–5); and (2) in opposition to the Sun's motion to compel its first set of document requests, Defendants argued that the Sun had no factual basis for its suspicion that Mr. Adelson ordered the Review-Journal's investigation into the Las Vegas Convention and Visitors Authority ("LVCVA") (*id.* at 5). These were truthful statements. Moreover, neither of them say that Mr. Adelson was a distant owner or that there was no link between him and the day-to-day business of the newspapers.

Put simply, Defendants have never represented to this Court that Mr. Adelson is not employed by the Review-Journal or that Mr. Adelson "is simply a distant owner of the Review-Journal without day-to-day input, control, or influence on the business newspaper." *Id.* at 2. Rather, Defendants' position in opposition to the Sun's various motions to compel has been that *even if* Mr. Adelson was an involved in the Review-Journal's editorial decisionmaking, such is not probative of the Sun's alter ego or antitrust claims. *See* Defs' Opp. to Sun's Mtn. to Compel (Set 1), ECF 84, at 7 ("The only theory proffered [by the Sun] was that, if documents show that Mr. Adelson directed the Review-Journal to investigate the LVCVA, it may support the Sun's alter ego allegations against Mr. Adelson. Even if this unsubstantiated allegation were true, that fact would have little or no relevance to proving the alter ego allegations."); Defs' Opp. to Sun's Mtn. to Compel (Set 2), ECF No. 121, at 10 ("The Sun's contention that it would signal some anticompetitive purpose if the Review-Journal's owners were involved in the newspaper's editorial

---

[3] The comment at issue was made in an unrelated context—in response to the Sun's insistence that counsel search the ESI of Mr. Adelson (who was not a named defendant in the state court case) for materials concerning the Sun Box redesign. *See* **Exhibit A** (Declaration of Michael J. Gayan), at ¶ 4; **Exhibit B** (11/12/19 Hearing Transcript Excerpts), at 22–44.

5

decisions is equally baseless. Antitrust law does not regulate a business owner's level of involvement in his business."); Defs' Opp. to Sun's Renewed Mtn. to Compel (Set 2), ECF No. 145, at 24, 32 (similar).

### B. The Sun Does Not Establish A Connection Between The Four Documents And The Discovery Rulings It Asks The Court To Revisit.

The Sun's motion also fails because the Sun at no point establishes a coherent connection between the documents it cites as "new evidence" and its request that the Court alter its prior discovery orders.[4] In an attempt to cobble together such a connection, the Sun resorts to mischaracterizing the Court's July 20 and November 13 discovery rulings and the reasons underlying them. Specifically, the Sun's motion reads as though, on July 20, the Court declined to order the production of *any* documents in response to Request Nos. 47 and 48 because the Sun could not link Mr. Adelson to the day-to-day business of the Review-Journal. Sun's Mtn. to Reconsider, ECF No. 242, at 5–9. That is not what happened.

Request No. 47 sought all documents "that concern or relate to [the Review-Journal's] investigation of the Las Vegas Convention and Visitors Authority." Sun's Mtn. to Compel (Set 1), ECF No. 76, at 9. Request No. 48 sought all documents "that discuss or mention the Sun's editorial viewpoint." *Id*. The Court agreed with the Sun that Request Nos. 47 and 48 were probative of alter ego insofar as they sought communications that may show Mr. Adelson exerting "influence and control" over the Review-Journal's news reporting. The Court thus ordered Defendants to produce any communications containing an express directive from Mr. Adelson to the Review-Journal on the subject topics—the LVCVA and the Sun's editorial viewpoint. *See* Court's July 20 Order, ECF No. 102, at 13–17, 51–54.

---

[4] Rather than specifically identify the Court's prior discovery orders that supposedly require correcting, the Sun vaguely asks the Court "to reconsider its position with regards to any of the Sun's document requests that relate to [1] Mr. Adelson's role at the Review-Journal, [2] the Sun's alter-ego theory of liability, and [3] any other relevant discovery orders." ECF No. 242, at 9. Other than the Court's July 20 and November 13 discovery orders, however, there are no other rulings that are arguably implicated by the Sun's contentions in this motion.

6

However, the Court declined to order Defendants to produce documents or communications of *other people* that did not contain express directives from Mr. Adelson—the only alleged "alter ego" defendant in the Sun's complaint. *Id.* The Court reasoned that, absent proof that Mr. Adelson directed those *other people* to investigate or report on the topics at issue, their communications were not probative of the Sun's alter ego claim against Mr. Adelson. *Id.* Thus, this discovery limitation—the one the Sun contends requires correcting—was based not, as the Sun suggests, on whether Mr. Adelson was involved in the Review-Journal's day-to-day business, but on whether Mr. Adelson instructed other people to investigate or report on the specific topics identified in the requests. *Id.* In other words, the Court limited discovery in this manner because the Sun could not show that Mr. Adelson, in fact, directed others to carry out his editorial wishes with respect to the topics identified in Requests 47 and 48—*i.e.*, LVCVA and the Sun's editorial viewpoint—and Mr. Adelson was the only individual against whom the Sun pleaded an alter ego theory of liability. *Id.*

The Sun similarly mischaracterizes the Court's November 13 ruling on Request Nos. 107-22, 128-32, 174-88, 203-06, which simply extended the Court's July 20 discovery limitations to all requests similarly seeking communications by *others* beyond Mr. Adelson regarding the Review-Journal's news reporting. *See* Court's Nov. 13 Order, ECF No. 222, at 16–18. In so ordering, the Court rejected the Sun's attempt to discover such communications as probative of antitrust intent and anticompetitive conduct. *See id.* The Court likewise declined the Sun's attempt to broaden the scope of discovery as to alter ego based on a one-off-citation to *Klein v. Freedom Strategic Partners, LLC*, 595 F. Supp. 2d 1152, 1158 (D. Nev. 2009) for the proposition that an alter ego defendant can control a shell corporation indirectly. *See id.*, at 17–18. Again, the relevant issue—or the "missing link" as the Sun calls it—was not whether Mr. Adelson was involved in the Review-Journal's day-to-day business, but whether Mr. Adelson exerted any influence and control over the actions of the individuals whose communications were sought. *Id.* The Court again limited the production to documents showing an express directive by Mr. Adelson, because those

were the only documents probative of the Sun's alter ego claim—which, again, is pleaded only against Mr. Adelson. *Id.*

In addition to mischaracterizing the Court's rulings, the Sun also mischaracterizes the four documents it claims constitute "shocking" new evidence that justifies reconsideration of those rulings. The four documents cited by the Sun as supposedly proving that Mr. Adelson used others as "tools" to carry out his wishes with respect to the Review-Journal do nothing of the sort.

The first document, Mr. Adelson's employment agreement, reflects that Mr. Adelson serves as co-publisher of the Las Vegas Review-Journal—a formality given that the Adelson family has a controlling interest in News+Media Capital Group LLC, which owns the paper. *See* Adelson Employment Agreement, ECF No. 171–2. It spells out Mr. Adelson's role as follows: "to confer with and provide editorial advice and assistance, as appropriate, to the President and Publisher and other editorial employees and contributors to the Las Vegas Review-Journal (the 'Newspaper') concerning the direction of the Newspaper, topics for day-to-day or investigative or other coverage by the Newspaper and, from time to time, published or unpublished information obtained or prepared in gathering, receiving or processing information for communication by the Newspaper to the public, including the sources for and reliability of the information." *Id.*

The Sun's motion draws no connection between Mr. Adelson's employment agreement and the discovery rulings it asks the Court to revisit. All the Sun says is that Mr. Adelson's co-publisher title was "the missing link between Mr. Adelson and the day-to-day newspaper operations." Sun's Mtn. to Reconsider, ECF No. 242. at 6–7. But again, the Court's prior discovery orders *accepted the Sun's premise* that Mr. Adelson might be involved in newspaper operations, which is why the Court ordered Defendants to produce communications showing express directives from Mr. Adelson. Mr. Adelson's employment agreement notably does not say that Mr. Adelson controls all aspects of the paper and uses others as tools to carry out his wishes. It simply provides that Mr. Adelson had the authority to weigh in on the Review-Journal's editorial direction. The only other connection the Sun tries to make is that the employment agreement

8

1  purportedly shows that Mr. Adelson "obviously placed Mr. O'Connor . . . in the role as President."
2  *Id.* at 9. The Sun's speculation in this regard has no connection to the Court's discovery rulings.
3        The other three documents the Sun points to are 2015 emails to Patrick Dumont from
4  Russell Pergament or Michael Schroeder—each of which the Sun contends shows that Mr.
5  Dumont functions as a go-between for Mr. Adelson and others. *Id.* at 8–9. Again, the Sun is
6  mischaracterizing these documents.
7        The first email, a January 11, 2015 email from Mr. Pergament to Mr. Dumont, recaps
8  
9  . *Id.* at 33–36 (Ex. 3). The language
10  on which the Sun seizes is
11  
12  
13  *Id.* Nothing Mr. Pergament writes shows Mr. Adelson directing Mr. Dumont to
14  do any particular act. Nothing indicates that he is supplying the information to Mr. Dumont to pass
15  along to Mr. Adelson. Mr. Adelson is not a recipient of the email and is not mentioned in it.
16  Nothing about the email at all supports the Sun's claim that Mr. Dumont was merely a "tool" for
17  Mr. Adelson to communicate his views about the newspaper (which News+Media did not even
18  own at the time this email was sent). And this email exchange occurred nearly one year before the
19  Adelson family acquired a controlling interest in the Review-Journal, which means it has nothing
20  to do with how Mr. Adelson interacts with the *Review-Journal*.
21        The second email, an October 30, 2015 email from Mr. Pergament to Mr. Dumont, provides
22  . *Id.* at 37–39 (Ex. 4). The portion the Sun emphasizes is
23  
24  
25  *Id.* Notably, Mr. Pergament does not ask Mr. Dumont to report his thoughts to Mr. Adelson,
26  or to report Mr. Adelson's thoughts back. In fact, Mr. Pergament states that
27  *Id.* Thus, this document does
28  

9

1  not, as the Sun wrongly contends, show that Mr. Dumont was a go-between Mr. Adelson and
2  others or that Mr. Adelson directs Mr. Dumont's conduct. To the contrary, it shows that Mr.
3  Dumont was *not* a go-between—████████████████████████████████████████
4  ████████████████████████████████.[5]

5      The third email, an October 23, 2015 email from Mr. Schroeder to Mr. Dumont, concerns
6  ████████████████████████████. *Id.* at 40–41 (Ex. 5). The passage the Sun highlights is ██
7  ████████████████████████████████████████████████████████████████
8  ████████████████████████████████. *Id.* From that statement, the Sun makes the
9  illogical leap that, therefore, Mr. Dumont is serving as a surreptitious go-between Mr. Adelson
10 and Mr. Schroeder. But that is rank speculation unsupported by anything in the email.

11     In sum, the Sun's argument that these four documents justify reconsideration and a reversal
12 of the Court's prior rulings only works if one mischaracterizes the documents and the prior rulings.

13     **C.     Defendants Did Not Withhold Any Documents.**

14     Finally, the Sun's argument that reconsideration is warranted because Defendants
15 supposedly withheld, hid, and calculatedly delayed production of the four documents is just as
16 baseless as its other arguments.

17     The Sun contends that Defendants should have produced Mr. Adelson's employment
18 agreement months before they did, and asserts that the production was timed to deprive the Court
19 of information crucial to its discovery rulings. But the agreement was plainly not responsive to the
20 document requests the Sun lists in its motion. By way of example, Request No. 43 asks for "all
21 documents and communications in Your possession that concern or relate to the concealment of
22 the ownership of the Review-Journal." *Id.* at 11. Mr. Adelson's 2016 co-publisher employment

---

[5] Another portion of the email reports on ████████████████████████████████, on which Mr. Pergament notes they ████████████████████████████████████ ████████████████████ Sun's Mtn. to Reconsider, ECF No. 242, at 37–39 (Ex. 4). This note, to which the Sun does not allude in its motion, likewise does not affect the Court's prior discovery rulings. Put simply, the passage does not evince Mr. Adelson directing Mr. Dumont's conduct. At most, it indicates that ████████████████████████ ████████████████████████, which is of no consequence to the issue here. Again, this email predates the purchase and has nothing to do with Mr. Adelson's interactions with the newspaper.

agreement does not come within that request (and post-dates the Adelson family's public announcement of their acquisition of the Review-Journal newspaper). The agreement does not come close to falling within any of the other requests cited by the Sun either.[6] Moreover, as explained above, Mr. Adelson's employment agreement was irrelevant to the issues presented by the Sun's motions to compel. The Court's reasoning correctly hinged on whether Mr. Adelson (the only alter ego defendant in this case) controlled editorial decision-making, and the discovery the Court granted allowed the Sun to explore that issue. Mr. Adelson's employment agreement would not have provided a basis for the Court to rule differently. Finally, even if the agreement had been responsive to any requests, Defendants produced the agreement on the Court-set deadline for producing certain documents regarding Mr. Adelson that were responsive to the second set: October 14. *See* Court's Oct. 9 Order, ECF No. 168, at 68–70.

With respect to the three emails, the Sun likewise provides no evidence to support its accusation that Defendants deliberately withheld the emails until October 20 so as to mislead the Court as it was considering the Sun's motions to compel. To begin, the Court's July 20 ruling—the one the Sun claims requires correcting—was issued well in advance of any deadline to produce responsive documents in this case, so it necessarily would have been decided without these or any other documents. Next, as explained above, the emails do not support the Sun's arguments and therefore would have done nothing to change the Court's rulings. Moreover, Defendants have worked diligently and in good-faith to search for and produce documents to the Sun's over 300 requests on very short timelines, and these emails were produced in due course in accordance with that process. In any event, if these emails were nearly as important as the Sun claims, then the Sun

---

[6] Request No. 309 asks for "all records that describe the nature of Sheldon Adelson's ownership interest in the Las Vegas Review-Journal, Inc." Request No. 334 calls for "Documents, including Communications, that concern or relate to any guidelines, directives, policies, or Practice, whether formal or informal, that concern or relate to the editorial coverage of the Review-Journal's ownership." Request No. 335 asks for "Documents, including Communications, that concern or relate to any guidelines, directives, policies, or Practice, whether formal or informal, that concern or relate to the editorial coverage of Sheldon Adelson, the Adelson Family, or any business owned by the Adelson family." Request No. 342 calls for "an employee census (i.e., roster of employees) of the Review-Journal including employee's title, employee's department, employee's rate of pay, and indication of employee's full-time or part-time status, for each year from January 1, 2015, through present." Sun's Mtn. to Reconsider, ECF No. 242, at 11.

would have filed this motion in October instead of waiting over a month. After all, the ruling the Sun wants reconsidered (with respect to Requests 47 and 48) was issued on July 20. Accordingly, the Sun failed to establish a basis for the Court to reconsider its prior discovery orders under Rule 60(b).

### III. The Court Should Reject the Sun's Request for Sanctions.

The Sun's request for monetary sanctions in the form of attorneys' fees and costs is completely unwarranted because, as explained above, Defendants did not do anything wrong.

The case on which the Sun relies in support of its sanctions request involves a wholly different, non-analogous set of facts and is therefore inapplicable. *See USACM Liquidating Trust v. Monaco*, 2010 WL 11579643 at *6-7 (D. Nev. Jan. 27, 2010). The *USACM* Court imposed monetary sanctions in the form of fees and costs the plaintiff incurred in attempting to obtain certain documents after finding as fact that the defendant, for over a year, withheld the specifically-requested documents and expressly misrepresented to the plaintiffs and the court—including in a written brief opposing a motion to compel—that he did not have possession, custody, or control of the documents. *Id.* at *5–7. The defendants' lies and concealment led the plaintiffs on a deposition goose chase after the supposed custodians of the requested documents, each of whom denied having the documents. *Id.* at *5–6. The defendant finally let up at his deposition, where he admitted, under oath, that he had possession, custody, and control of the documents all along and had lied to the plaintiffs and the court when saying otherwise. *Id.* at *6. On these facts, the Court deemed it proper to impose sanctions under Rule 37(c)(1), concluding that "the Monacos willfully, and in bad faith, withheld relevant documents from the Trust in violation of Rules 26(a) and (e)," which govern the duties to make mandatory disclosures and to supplement discovery responses, respectively. *Id.*

Nothing even remotely resembling the *USACM* situation occurred here. As discussed above, Defendants have not made the misrepresentations the Sun accuses—let alone misrepresentations about their possession, control, or custody of specific documents like the

misrepresentations at issue in *USACM*. Likewise, there is no evidence that Defendants delayed the production of any documents or misled the Sun or the Court in any way.

The Sun's other authority in support of its request for sanctions is likewise inapplicable. For starters, the Sun cites Rule 37(a)(5)(A) as authorizing sanctions in the form of attorneys' fees, subject to certain exceptions. However, that provision does not concern sanctions at all. Rather, it authorizes the Court to award attorney's fees to a party that successfully moves to compel. But the Sun is not requesting attorney's fees in connection with a motion to compel.[7]

Next, the Sun cites a Ninth Circuit case, *Yeti by Molly Ltd. v. Deckers Outdoor Co.*, 259 F.3d 1101, 1107 (9th Cir. 2001), for the proposition that the party opposing sanctions must show their conduct was substantially justified or harmless. However, *Yeti* says as much in connection with a request for sanctions under Rule 37(c)(1), which governs a failure to disclose the information mandated by Rule 26(a) or (e). *See id.* at 1107. Yet nowhere does the Sun assert that Defendants' conduct ran afoul of its mandatory disclosure obligations under Rule 26(a) or (e).

Last, the Sun analyzes the propriety of sanctions here under the Ninth Circuit's five-factor test for deciding whether to impose *terminating* sanctions. Sun's Mtn. to Reconsider, ECF No. 242, at 15 (citing *Wendt v. Host Int'l, Inc.,* 125 F.3d 806, 814 (9th Cir. 1997)). But the Sun is not asking for such sanctions here. In any event, even if this were the correct standard, which it is not, the factors militate in favor of not imposing sanctions *at all*. First, Defendants' actions in connection with the four documents do not contravene "the public's interest in expeditious resolution of litigation." *Wendt,* 125 F.3d at 814. The Sun received these documents well within the discovery period, and the case remains on the trial and discovery schedule initially set by the Court. And, contrary to the Sun's contention, none of the four documents requires that the Court revisit its prior discovery orders. Second, the four documents do not affect "the Court's need to manage its dockets." *Id.* Third, there is no cognizable "risk of prejudice" to the Sun from Defendants' proper conduct. *Id.*; *see also Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990)

---

[7] Moreover, even with respect to the Sun's prior motions to compel, the Court did not outright grant relief but instead agreed in part with the Sun and agreeing in part with Defendants. That outcome renders Rule 37(a)(5)(A) inapplicable. Instead, Rule 37(a)(5)(C), which applies to motions that are granted in part and denied in part, would govern.

(explaining that the "risk of prejudice" inquiry focuses on whether the party's conduct "threaten[s] to interfere with the rightful decision of the case" and noting that "[d]elay alone, without a focus on its effects, will not justify dismissal or default"). Fourth, the four documents do not, as the Sun speculates, indicate the existence of other responsive documents, such that there is a risk that case will not be resolved "on [its] merits." *Wendt,* 125 F.3d at 814. Defendants have already represented to the Sun and this Court that they have searched for and produced Mr. Adelson's responsive documents. *See* Defs' Opp. to Mtn. to Compel (ESI and ACP Information), ECF No. 143, at 2, 9. Fifth, when a party is seeking monetary sanctions, the appropriate, "less drastic sanction" is no sanction at all. *Wendt,* 125 F.3d at 814.

In short, the Sun has cited no law justifying sanctions on the facts present here.

## IV. Conclusion.

For the above reasons, the Court should deny the Sun's request that this Court reconsider its July 20 and November 13 discovery rulings, as well as its request for sanctions.

Dated: December 9, 2020

KEMP JONES, LLP

*/s/ Michael Gayan*
J. RANDALL JONES, ESQ., SBN 1927
MICHAEL J. GAYAN, ESQ., SBN 11135
MONA KAVEH, ESQ., SBN 11825
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169

RICHARD L. STONE, ESQ. (*pro hac vice*)
DAVID R. SINGER, ESQ. (*pro hac vice*)
AMY M. GALLEGOS, ESQ. (*pro hac vice*)
JENNER & BLOCK LLP
633 West 5th Street, Suite 3600
Los Angeles, California 90071

*Attorneys for Defendants*

## PROOF OF SERVICE

I hereby certify that on the 9th day of December, 2020, I served a true and correct copy of the foregoing **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO RECONSIDER PREVIOUS DISCOVERY RULINGS** via the United States District Court's CM/ECF electronic filing system to all parties on the e-service list.

E. Leif Reid, Bar No. 5750
Marla Hudgens, Bar No. 11098
Kristen L. Martini, Bar No. 11272
Nicole Scott, Bar No. 13757
LEWIS ROCA ROTHGERBER CHRISTIE LLP
One East Liberty Street, Suite 300
Reno, Nevada 89501

Joseph M. Alioto, *Pro Hac Vice*
Jamie L. Miller, *Pro Hac Vice*
ALIOTO LAW FIRM
One Sansome Street, 35th Floor
San Francisco, California 94104

James J. Pisanelli, Bar No. 4027
Todd L. Bice, Bar No. 4534
Jordan T. Smith, Bar No. 12097
PISANELLI BICE PLLC
400 South 7th Street, Suite 300
Las Vegas, Nevada 89101

*Attorneys for Plaintiff*

　　　　　　　　　　　　　　　　　　/s/ Mona Kaveh
　　　　　　　　　　　　　　　　　　An employee of Kemp Jones LLP

## INDEX OF EXHIBITS

| Exhibit | Description |
|---------|-------------|
| A | Declaration of Michael J. Gayan in Support of Defendants' Opposition to Plaintiff's Motion to Reconsider Previous Discovery Rulings |
| B | Transcript Excerpts from the November 12, 2019, Hearing Before the Honorable Timothy C. Williams, in the Matter, *Las Vegas Sun, Inc. v. News+Media Capital Group, LLC*, Eighth Judicial District Court, Case No. A-18-772591-B |