| | |
|---|---|
| E. Leif Reid, Nevada Bar No. 5750<br>Kristen L. Martini, Nevada Bar No. 11272<br>Marla J. Hudgens, Nevada Bar No. 11098<br>Nicole Scott, Nevada Bar No. 13757<br>LEWIS ROCA ROTHGERBER CHRISTIE LLP<br>One East Liberty Street, Suite 300<br>Reno, NV 89501-2128<br>Tel:   775.823.2900<br>Fax:  775.823.2929<br>Email: lreid@lrrc.com<br>          kmartini@lrrc.com<br>          mhudgens@lrrc.com<br>          nscott@lrrc.com | Joseph M. Alioto, *PRO HAC VICE*<br>Jamie L. Miller, *PRO HAC VICE*<br>ALIOTO LAW FIRM<br>One Sansome Street, 35th Floor<br>San Francisco, CA 94104<br>Tel: 415.434.8900<br>Fax: 415.434.9200<br>Email: jmalioto@aliotolaw.com<br>          jmiller@aliotolaw.com |

James J. Pisanelli, Nevada Bar No. 4027
Todd L. Bice, Nevada Bar No. 4534
Jordan T. Smith, Nevada Bar No. 12097
PISANELLI BICE PLLC
400 South 7th Street, Suite 300
Las Vegas, Nevada 89101
Telephone: 702.214.2100
Email: JJP@pisanellibice.com
          TLB@pisanellibice.com
          JTS@pisanellibice.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| LAS VEGAS SUN, INC., a Nevada corporation,<br><br>                    Plaintiff,<br><br>v.<br><br>SHELDON ADELSON, an individual and as the alter ego of News+Media Capital Group LLC and as the alter ego of Las Vegas Review Journal, Inc.; PATRICK DUMONT, an individual; NEWS+MEDIA CAPITAL GROUP LLC, a Delaware limited liability company; LAS VEGAS REVIEW-JOURNAL, INC., a Delaware corporation; and DOES, I-X, inclusive,<br><br>                    Defendants. | Case No. 2:19-CV-01667-GMN-BNW<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO RECONSIDER PREVIOUS DISCOVERY RULINGS BASED ON NEW EVIDENCE (ECF NO. 241)** |

113016191.6

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The RJ feigns ignorance related to the meaning or impact of the Adelson Employment Agreement. And, it ignores that this Court relied on its misrepresentations or purposeful omissions when this Court crafted its questions and discovery orders. Its opposition is unpersuasive.

The RJ pretends it has been truthful to the Court throughout this litigation with respect to Mr. Adelson's role in the company. According to its opposition, the RJ has always made Mr. Adelson's indirect control over the management of the Review-Journal known to the Court; the RJ has always represented to this Court that Mr. Adelson (a casino magnate) is involved in the day-to-day business of the newspaper, and; the RJ has never led this Court to believe that Mr. Adelson was a hands-off investor-owner.

The opposite is true. The RJ has always put incredible distance between the Review-Journal and Mr. Adelson, and this Court specifically ruled that the Sun had not established Mr. Adelson's indirect control over the Review-Journal. More than once, this Court struggled to find the connection between Mr. Adelson and the day-to-day working of the newspaper and the likelihood of "indirect directives" from Mr. Adelson. The Court limited the Sun's discovery requests as a result of the Sun's purported inability to show Mr. Adelson's indirect control over the newspaper.

Arguing the Sun has suffered no prejudice, the RJ ignores this Court's own statements made during discovery hearings. It claims that since the Sun "essentially won [certain discovery] motions," the Sun should not complain. ECF No. 256 at 2. The problem is that this Court <u>limited</u> discovery requests based on the RJ's misrepresentations, omissions and delayed productions. Since then, the RJ has doubled-down on those rulings in connection with other discovery requests.

But the Adelson Employment Agreement (along with other delayed documents) establishes the specific connection sought by the Court. It shows Mr. Adelson appointed himself co-publisher of the newspaper, which expressly enabled him to control nearly all business and editorial functions at the RJ. It also shows Mr. Adelson made an executive of his "family office"—Interface Operations dba Adfam ("Adfam")—the <u>President</u> of the Review-Journal. In fact, Mr. Adelson's "family

- 1 -

113016191.6

office" plays an extremely heavy hand in the management of the Review-Journal. It is clearly Mr. Adelson's most active and powerful arm: an Adfam executive holds every corporate position with the Review-Journal, including as its President (Stephen O'Connor); the Review-Journal's publishers communicate with Adfam regarding the Review-Journals' front page redesign; Adfam's lawyer (Steven Garfinkel) is apparently the Review-Journal's lawyer;[1] Adfam employees and lawyers receive financial information about the Review-Journal from the Review-Journal's CFO; Adfam hires consultants to work on behalf of the Review Journal; and Patrick Dumont (Mr. Adelson's son-in-law) and Dr. Adelson (Mr. Adelson's wife) use Adfam e-mail addresses to communicate to and on behalf of the Review-Journal. In short, the newspaper is directed entirely by Mr. Adelson, including indirectly through Adfam and through his proxies (Dumont and others) and employees of other Adelson-related entities like the Sands Corporation. All of these various people report to Adelson in their various roles in different Adelson companies, and certainly would have no dealings with the RJ without his direction.

The RJ attempts to distance itself from this Court's rulings by ignoring this Court's limitations on discovery and focusing only on counsel's prior statements, calling them accidental or due to counsel's role with a newly engaged client or made in a separate lawsuit. The RJ misses the point. The Sun is obviously not asking this Court to reconsider another court's rulings. Rather, the Sun has provided a complete factual background to demonstrate that the RJ has made representations about Mr. Adelson for years that permeated the multiple litigations between the parties, which then bled into <u>this case,</u> and have shaped both the way this Court considered discovery disputes and the way the Sun has conducted discovery. History cannot be ignored. Had the RJ been upfront early on <u>in this case</u>, this Motion would not be necessary. Had the RJ not delayed production for months, the Sun could have made these arguments much earlier instead of briefing its alter ego claims several times without the critical information that the RJ held behind its back.

---

[1] Mr. Adelson also uses lawyers from his other business enterprises, including the Sands Corporation.

- 2 -

113016191.6

The RJ also argues that the Sun's timing in filing its Motion is problematic. *See* ECF No. 256 at 4. For the RJ to contest the Sun's promptness on *anything*, considering the RJ's own pace at conducting discovery, is astounding. The RJ seems to believe that because the ruling on Request Nos. 47 and 48 was issued on July 20, the second that the Sun received its very un-prompt production of documents on October 14 and 20, it should have been prepared to file the Motion.

Pursuant to Rule 60, motions for reconsideration must be brought in a "reasonable time." FED. R. CIV. P. 60(c)(1). When this Court indicated that the Sun could seek a reevaluation of its orders on November 13, the date this Court applied its rulings on Request Nos. 47 and 48 to other discovery requests, no timeframe was imposed. The Sun filed its Motion seven days later. Bluntly stated, there is no reasonable argument, especially accounting for the other discovery and motion practice occurring in this case, that the Motion was anything but timely.[2]

## II.   THE SUN HAS MET THE STANDARD FOR RECONSIDERATION

### A.   This Court Limited the Sun's Discovery on the Grounds that the Sun had not Sufficiently Shown Mr. Adelson's Indirect Control over the Review-Journal

The RJ argues that the Sun does not have a legal basis for reconsideration and that the Sun has mischaracterized the Court's orders. ECF No. 256 at 4-7. That is not true. Both this Court's prior rulings and Rule 60(b)(3) and (6) allow the Sun to seek reconsideration, including for "any [ ] reason that justifies relief." FED. R. CIV. P. 60(b)(6). And, the RJ's accusation that the Sun has misrepresented the Court's rulings is undermined by the fact that the Sun explicitly quoted the rulings.

On November 13, 2020, the Court limited the Sun's discovery requests, ruling that "[t]o the extent indirect directives should form a part of the alter ego claim, the Sun has not sufficiently analyzed that argument."[3] ECF No. 222 at 18:12-18, 18:25-19:6, 19:13-19, 20:1-7, 20:12-18, 20:25-21:6, 21:23-22:4. It then specifically remarked that if the Sun presented additional

---

[2] The RJ implies that the parties were bound to meet and confer under LR 26-2 prior to the Sun filing its Motion. LR 26-6 imposes a meet and confer requirement on "discovery motions." This is not a discovery motion, and therefore the requirement does not apply.

[3] The rulings related to Request Nos. 108-110, 114-116, 119-121, 175-177, 180-182, 185-187, and 129-131.

information for the Court to consider that very limitation, "you can always seek the Court[ ] – to reevaluate its position. ECF No. 222 at 22.

On July 20, 2020, this Court ruled in connection with Requests 47 and 48:

> Unless you can make the link that that e-mail is linked to Mr. Adelson's request or directive, how do you get to alter ego liability?

ECF No. 102 at 17: 18-23 (emphasis added). And:

> To the extent that, through interrogatories or other discovery tools, you find that Mr. Adelson did, in fact, verbally command others to do something else, then I think that there would be -- the relevance would be more clear to me. At this point in time, I'm just not sure that -- I think that it's a little attenuated because we just don't have any information to suggest that Mr. Adelson has, in fact, given these directives.

ECF No. 102 at 15-16. The rulings are both based on the same premise: the Sun could not, at that time, establish a link for its alter ego claim that Mr. Adelson indirectly controls the Review-Journal using proxies. It could not make that link because the RJ would only produce the documents that make that connection crystal clear months later, in October.

The Sun does not need to characterize the Court's order because the Court's own words make its limitations clear. Had the RJ disclosed these promptly after the July 20 hearing instead of in October, the RJ would not have been able to successfully argue that dozens of other requests should be limited in the same way. *See, e.g.,* ECF No. 136 (Request Nos. 108-110, 114-116, 119-121, 129-131, 175-177, 180-182, and 185-187). What the RJ did instead was (a) obtain a limitation on the Sun's discovery, (b) hold back documents undermining the limitation for months after they were due, (c) exploit the limitation in arguments related to dozens of other requests, and (d) only after obtaining a limitation, produce the documents that now undercut the justification for the limitations.

In that regard, the Sun's Motion is simple: this Court substantially limited the Sun's discovery based on the RJ's omission of key documents and facts fundamental to the Sun's claims. Now that those documents and facts have been disclosed nearly a year after the case was filed, the connection can be made easily through both the Adelson Employment Agreement and other

- 4 -

113016191.6

documents and facts now known to the Sun for which the Adelson Employment Agreement provides context, and which the RJ withheld and leveraged in limiting discovery available to the Sun.

### B. The Discovery Limitations Should be Lifted Based on the Adelson Employment Agreement

This Court limited the Sun's discovery in connection with Requests 47-48, 108-110, 114-116, 119-121, 129-131, 175-177, 180-182, and 185-187 because the Court believed Mr. Adelson's control over the Review-Journal was "attenuated" and because the Court believed the Sun did not sufficiently establish Mr. Adelson's "indirect" control for purposes of its alter ego claims. *See* ECF No. 102 at 15-16 and ECF No. 222 at 18, 22. The RJ suggests that the Adelson Employment Agreement and other evidence submitted by the Sun do not help to establish that connection. The RJ is wrong.

The Adelson Employment Agreement demonstrates that Mr. Adelson is not merely an owner; he is an employee of the Review-Journal <u>and</u> he selected Stephen O'Connor, one of his cronies and employees at Adfam[4] to be the President of the Review-Journal. According to the Nevada Secretary of State, O'Connor is also the Secretary, Treasurer, and Director of the Review-Journal.[5] This is meaningful in context—the connection between the Review-Journal and Adfam cannot be understated.

Adfam "is the private <u>family office</u> of Dr. Miriam and Sheldon G. Adelson and their family." ECF No. 197 at 9 (emphasis added). Mr. Adelson uses Adfam—his family office—to rule over the Review Journal:

- **An Adfam employee holds every corporate office at the Review-Journal (President, Secretary, Treasurer, and Director)**. Steven O'Connor is Chief Financial Officer of Adfam. He also now apparently holds every corporate role at the Review-Journal according to the Nevada Secretary of State. *See* ECF No. 171-2.

---

[4] O'Connor has held roles at Adfam including Chief Financial Officer and former manager. *See, e.g., Adelson v. Hananel*, 641 F. Supp. 2d 65, 69 (D. Mass. 2009), *aff'd*, 652 F.3d 75 (1st Cir. 2011).
[5] https://esos.nv.gov/EntitySearch/BusinessInformation

113016191.6

1  • **Adfam's CFO signed the employment agreement between the Review-Journal and Mr. Adelson.** *See id.*

  • **Adfam's lawyers purportedly advise the Review Journal**. Steven Garfinkel (Adfam's General Counsel) declared that "[a]fter the Adelsons acquired the *Review-Journal* in December 2015, at the direction of the Adelson family, I provided legal advice and counsel to the *Review-Journal* and its parent company, News+Media Capital Group LLC." ECF No. 197-1 at 4, ¶ 9. He also declared that he "advised Mr. Moon [the Review-Journal's publisher] and the *Review Journal* regarding the company's rights and obligations under the 2005 Joint Operating Arrangement with the *Las Vegas Sun*," *id.* at 5 ¶ 10 (emphasis added), and "review[ed] and provide[d] legal analysis on the *Las Vegas Sun's* request to audit the *Review-Journal's* books and records, which culminated in an arbitration between the *Sun* and the *Review Journal* in 2019." *Id*. at 5 ¶ 11 (emphasis added).[6]

  • **Adfam contracted with various individuals to work on behalf of the Review-Journal**. ECF No. 175-10 at 4 ("Mr. Pergament contracted with Interface Operations LLC dba Adfam ('Adfam'). As we've said before, Adfam is the family office of the Adelsons and assists the Adelsons with their investments and business interests. This includes the Adelsons' interest in the Review-Journal and its parent (News+Media), as well as the due diligence for the Adelsons' acquisition of the Review-Journal. Messrs. Nizen and Schroeder also contracted with Adfam and worked with Mr. Pergament during the due diligence process."); *see also* ECF No. 197 at 13.

  • **Adfam assisted with due diligence in 2015 for the purchase of the newspaper, and remains involved in the Review-Journal's business, including in the redesign of the**

---

[6] Similarly, Craig Moon (former publisher of the Review-Journal) admitted in his signed declaration that "During my tenure with the *Review-Journal*, the newspaper also sought and received legal advice from Steven Garfinkel, the General Counsel of AdFam (which I understand is the name of the "family office" of Sheldon Adelson's family) as well as the personal attorney for the Adelson family." ECF No. 197-4 at 3 ¶ 5. Keith Moyer admitted: "The *Review-Journal* has also sought and received legal advice from Steven Garfinkel, the General Counsel of Adfam (the "family office" of Sheldon Adelson's family)." ECF No. 197-3 at 3 ¶ 5; *see* also ECF No. 143 at 21, 143-2 at 6-7, 175-4 at 13, and 175-5 at 7.

113016191.6

1  **newspaper in 2017, and in discussions about JOA payments to the Sun**. *See* **Ex. 1** (the
2  Review-Journal's publisher working with Adfam's Garfinkel).
3  - **The Review-Journal sends sensitive financial documents of the Review-Journal to
4  various people associated with Adfam at their @adfam.com e-mail addresses**,
5  including: Patrick Dumont, Sivan Ochshorn-Dumont, David Leake, Todd Nelson, and
6  Dave Bloom. **Exs. 2** and **3**.[7]

From this evidence it is clear that Mr. Adelson not only controls the Review-Journal directly, as a Co-Publisher of the Review-Journal, he also does so indirectly through Adfam, his own family office. Other than securing Mr. Adelson's complete control and influence, there is no other reason to send Review-Journal financial information to various Adfam employees; there is no other reason to have Adfam lawyers purportedly representing the Review-Journal, including in the time periods leading up to the arbitration that, in part, gave rise to this antitrust complaint, and; there is no other reason that virtually every major player in this lawsuit is connected to Adfam in some way (either directly, like Mr. Adelson, Dumont and Dr. Adelson) or indirectly (Vega, Moon, Schroeder, Pergament, and others).

The Sun is not arguing that Mr. Adelson cannot have as many related corporate entities as he wishes. But, by involving various entities in the matters of the Review-Journal, Mr. Adelson opens the door to significant inquiry into the extent and scope of his involvement (and their involvement), not just personally, but through these other entities that he controls.

Thus, the RJ's argument that the Adelson Employment Agreement does not make a link between the Sun's discovery and Mr. Adelson's indirect control over the business of the Review-Journal is simply wrong. The agreement is not a mere "formality" as the RJ dismisses. ECF No. 256 at 9. And if it was, it formally gives Mr. Adelson the right to direct and control the editorial work of the newspaper. ECF No. 171-2.

Even still, the RJ has never been forthcoming with respect to Mr. Adelson's role in

---

[7] These documents were disclosed to the Sun on December 4, 2020, days after the filing of this Motion.

- 7 -

113016191.6

connection with the Review-Journal. It somehow seeks to walk a transparent tightrope, suggesting that Mr. Adelson is directly involved in the direction of the newspaper, but does not simultaneously exert indirect control over the direction of the newspaper. Exhibits 3, 4, and 5 reflect that exact indirect control. *See* ECF Nos. 242-3, 242-4, and 242-5. And, the email the RJ complains about because it specifically omits Adelson (ECF No. 241-5) shows how each of Adelson's pawns ultimately sought to assist him in his goals, in part by making it appear he was not involved even when he is. The emails demonstrate that decisions are being made, with Mr. Adelson's interests as the guiding principles, without actually involving Mr. Adelson. If maintaining such an influence, without having to physically lift a finger or say a word, does not constitute indirect control, it is unclear what does.

Also importantly, Mr. Adelson's role has been entirely concealed from the public. His name appears nowhere on the newspaper's masthead (or elsewhere), disclosing his role as co-publisher. But as the RJ's prejudicially-delayed production shows, Mr. Adelson indirectly <u>and</u> directly controls the Review-Journal using all tools at his disposal, including a private family office apparently devoted, at least in part, to running a media operation, and employees at the Sands Corp., a publicly traded company not in the newspaper business.

### C. The RJ's Misconduct Will Substantially Prejudice the Sun if Not Addressed by the Court, as Permitted by Rule 60(b)(6)

Although the RJ contends the Sun has suffered no prejudice, this is incorrect. As articulated in the moving papers filed by October 14 (the date on which the Adelson Employment Agreement was finally produced), the Sun had briefed Mr. Adelson's influence over the Review-Journal business at least three times. Had the Sun actually known Mr. Adelson's true role in the company, the link would have been easily made. Indeed, the Adelson Employment Agreement lays out Mr. Adelson's job description, which includes the duty to, among other things, confer with the Publisher and the President (Mr. Adelson's crony and employee of Adfam) of the Review-Journal about the Review-Journal's editorial voice and editorial employees. ECF No. 171-2.

If the RJ did not obtain at least a partial "win" with respect to the Sun's Request Nos. 47

- 8 -

113016191.6

and 48, then why would the RJ double down on the Court's rulings in regards to those Requests, contending that the limitation applies to dozens of other requests? In a way, the RJ acknowledges that it has chipped away at the Sun's alter ego claims <u>before it disclosed materially relevant documents</u>. Now that the documents have been produced on such a delayed basis, this Court should reconsider its ruling.

### III. THE RJ SHOULD FACE FINANCIAL SANCTIONS FOR ITS MISCONDUCT

Sanctions are warranted in this instance. To begin, the facts in *USCAM Liquidating Trust v. Monaco*, 2:09-cv-01947-RCJ-PAL, 2010 WL 11579643 at *6-7 (D. Nev. Jan. 27, 2010) are far more analogous to the issues in this case than the RJ would have this Court believe. In both cases: (1) the defendants have engaged in delay tactics and relied on the substantial number of documents in order to justify delayed document productions; (2) the parties met and conferred on the document requests for which the responsive document was withheld, and when that was unsuccessful, engaged in motion to compel briefing; and (3) the defendants made misrepresentations to the court and requesting party. *See USCAM*, 2010 WL 11579643, at *5-6. The consequence of the *USCAM* defendants' misconduct, and the appropriate remedy for the RJ's actions here, was monetary sanctions in the amount of attorneys' fees and costs that the plaintiffs expended in order to obtain the documents to which it was entitled from the outset. *Id.* at *6-7. Such an outcome was justified because the defendants had "willfully, and in bad faith, withheld relevant documents from [the plaintiff] in violation of Rules 26(a) and (e). These failures were not substantially justified or harmless." *Id.* at *6. The same logic applies to the RJ's misconduct.

First, as in *USCAM*, the RJ's production of documents in response to the Sun's requests has been anything but prompt. To be extra clear, the RJ has known for over a year the allegations in the Sun's complaint, including those relating to alter ego. For the RJ to withhold the Adelson Employment Agreement for over a year is indisputably untimely.

Second, the RJ and the Sun also have had multiple meet and confers with respect to the Sun's sets of document requests, and yet have been required to brief several motions to compel because of the inability to reach an agreement. In addition to expressing its concerns during these

conferences and corresponding briefs, the Sun has briefed Mr. Adelson's role with the Review-Journal and the incomplete, unclear picture being painted by the RJ in response to such inquiries.

Third, as set out in the Sun's Motion, the RJ has made misrepresentations upon which this Court and the Sun have relied. The RJ argues that *USCAM* is highly distinguishable because in that instance, the plaintiff knew of the specific document it was seeking, which is not the case here. The Sun did not know the Adelson Employment Agreement existed because the RJ repeatedly represented that Mr. Adelson was distant from the Review-Journal, and therefore the Sun had no way of reasonably expecting such a contract (or explicit relationship) existed. From that perspective, the plaintiff in *USCAM* was in a better position than the Sun: the *USCAM* plaintiff knew of the existence of the document and could therefore develop its litigation strategy accordingly and needed to find a way to obtain the document it knew about, whereas the Sun has had to shift its strategy and theories because of the Adelson Employment Agreement and its implications.

The RJ next challenges the Sun's reliance on Federal Rule of Civil Procedure 37 as providing it with the authority to pursue sanctions. It argues Rule 37 does not concern sanctions and applies only to attorneys' fees in connection with a motion to compel. *See* ECF No. 256 at 14. Rule 37 is titled "Failure to Make Disclosures or to Cooperate in Discovery; Sanctions." The Sun could not better describe what the RJ has done. Similarly, Rule 37(c), titled "Failure to Disclose, to Supplement an Earlier Response, or Admit," reads:

> (1) *Failure to Disclose or Supplement*. If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>
> (B) may inform the jury of the party's failure; and

113016191.6

(C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)—(vi).

Glaringly missing from this language, despite the RJ's argument, is the condition that such remedy be applied only in response to a motion to compel. On the other hand, the Rule explicitly provides that the payment of attorney's fees may replace the sanction of excluding the particular information withheld, or that the court "may impose other appropriate sanctions." *Id.* The logical inference is that an order requiring payment of "reasonable expenses, including attorney's fees" does in fact constitute a sanction, as the Sun has requested. The Sun's request, therefore, for its attorneys' fees and costs incurred in relation to this Motion (and Reply), as well as a portion of its fees and costs related to other Motions to Compel, is proper.[8]

The RJ then challenges the Sun's reliance upon *Yeti by Molly Ltd. v. Deckers Outdoor Co.*, 259 F.3d 1101, 1107 (9th Cir. 2011) because it applies where a party fails to provide the information mandated by Rule 26(a) or (e). Federal Rule of Civil Procedure 26(e) is titled "Supplementing Disclosures and Responses" and states, in pertinent part, that "[a] party. . . who has responded to an interrogatory, request for production, or request for admission – must supplement or correct its disclosure or response: (A) in a timely manner . . . ; or (B) as ordered by the Court." Once again, the Rule could not more perfectly fit the RJ's misconduct. Consequently, the RJ is required, as set forth by *Yeti*, to show that its failure was "substantially harmless or justified." *See* ECF No. 241 at 15-16 (citing *Yeti*, 259 F.3d at 1107). The RJ did not even attempt to do so. *See generally*, Opposition at 14.

Lastly, the RJ argues that the Sun's reference to the *Wendt* factors is inapposite. *See* ECF No. 241 at 16-17; ECF No. 256 at 14 (citing *Wendt v. Host Int'l Inc.*, 125 F.3d 806, 814 (9th Cir. 1997)). The *Wendt* factors are considered by courts in determining whether Rule 37(c)'s exclusion sanction is appropriate, or if one of the other sanctions set forth by Rule 37 (such as attorneys' fees and reasonable expenses) are more suitable. *See, e.g.*, *Barrera v. Cardenas Markets, Inc.*, No. 2:16-

---

[8] If this Court disagrees and believes that the Sun should have pursued sanctions under a separate motion for sanctions, pursuant to Federal Rule of Civil Procedure 11(c), the Sun requests leave to file such a motion.

- 11 -

cv-1321-RFB-GWF, 2017 WL 663054, at *5 (D. Nev. Feb. 17, 2017) (noting that "*Wendt* did not state that this test applied only with respect to the imposition of dispositive sanctions, [but that] the case on which it relied, *Wanderer v. Johnston*, clearly involved a dispositive sanction."); *Nevada v. United States Dept. of the Treasury – Internal Rev. Serv.*, No. 2:16-cv-00665-APG-GWF, 2017 WL 277399, at *4 (D. Nev. Jan. 18, 2017) ("*Wendt*, however, did not state that these factors should only be considered if the preclusion order would result in dismissal."). The Sun is aware of no case indicating that the *Wendt* factors cannot be helpful to the Court in determining whether a particular sanction, other than exclusion, is appropriate. Rather, the *Wendt* factors outline several considerations that may guide the Court in its determination, regardless of whether they are mandatorily applied, or simply provide the Court with a helpful structure in making its determination. And, as explained in its Motion, all factors favor the Sun's request.

The RJ has engaged in grave discovery misconduct that has been detrimental to the Sun. The RJ should not be permitted to get away with this, and the appropriate remedy is an award of the Sun's attorneys' fees and costs incurred in the instant Motion, Reply, and related oral argument (if necessary), as well as a portion of fees and costs it incurred in several of its Motions to Compel that are impacted by this Motion.

## IV. CONCLUSION

For the foregoing reasons, this Court should reconsider its previous rulings on several of the Sun's Motions to Compel as the rulings relate to Mr. Adelson and the Sun's alter-ego theory of liability. This Court should similarly impose sanctions on the RJ in the amount equal to the Sun's reasonable attorneys' fees and costs related to its Motion (ECF No. 241) and this Reply, as well as a portion of its attorneys' fees and costs related to previous motions to compel.

DATED this 16th day of December, 2020.

LEWIS ROCA ROTHGERBER CHRISTIE LLP

By: */s/ E. Leif Reid*
E. Leif Reid, Bar No. 5750
Kristen L. Martini, Bar No. 11272

- 12 -

113016191.6

Marla J. Hudgens, Bar No. 11098
Nicole Scott, Bar No. 13757
One East Liberty Street, Suite 300
Reno, NV 89501-2128

PISANELLI BICE PLLC
James J. Pisanelli, Bar No. 4027
Todd L. Bice, Bar No. 4534
Jordan T. Smith, Bar No. 12097
400 South 7th Street, Suite 300
Las Vegas, Nevada 89101

ALIOTO LAW FIRM
Joseph M. Alioto, *Pro Hac Vice*
Jamie L. Miller, *Pro Hac Vice*
One Sansome Street, 35th Floor
San Francisco, CA 94104

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

Pursuant to Federal Rule of Civil Procedure 5(b), I certify that I am an employee of Lewis Roca Rothgerber Christie LLP, and that on the 16th day of December, 2020, I caused the foregoing **PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO RECONSIDER PREVIOUS DISCOVERY RULINGS BASED ON NEW EVIDENCE (ECF NO. 241)** to be served by electronically filing the foregoing with the CM/ECF electronic filing system, which will send notice of electronic filing to the following:

> J. Randall Jones, Esq.
> Michael J. Gayan, Esq.
> Mona Kaveh, Esq.
> KEMP JONES, LLP
> 3800 Howard Hughes Parkway, 17th Floor
> Las Vegas, Nevada 89169
>
> Richard L. Stone, Esq.
> Amy M. Gallegos, Esq.
> David R. Singer, Esq.
> JENNER & BLOCK LLP
> 633 West 5th Street, Suite 3600
> Los Angeles, California 90071

/s/ Autumn D. McDannald
Employee of Lewis Roca Rothgerber Christie LLP

- 14 -

113016191.6

**INDEX OF EXHIBITS**

| Exhibit No. | Description | No. of Pages |
|---|---|---|
| 1 | April 18, 2017, e-mail from Craig Moon to Steve Garfinkel, Bates labeled DEFS0002449 (FILED UNDER SEAL) | 1 |
| 2 | March 19, 2018, e-mail from Steve O'Connor to Patrick Dumont and Sivan Ochshorn-Dumont, Bates labeled DEFS0091967 (FILED UNDER SEAL) | 2 |
| 3 | December 20, 2019, e-mail from Stephen Hall to Steve O'Connor, Dave Bloom, David Leake, Todd Nelson, Keith Moyer and Peggy McGuire, Bates labeled DEFS0092925 (FILED UNDER SEAL) | 1 |

113016191.6