1   J. RANDALL JONES, ESQ., SBN 1927
    r.jones@kempjones.com
2   MICHAEL J. GAYAN, ESQ., SBN 11135
    m.gayan@kempjones.com
3   MONA KAVEH, ESQ., SBN 11825
    m.kaveh@kempjones.com
4   KEMP JONES LLP
    3800 Howard Hughes Parkway, 17th Floor
5   Las Vegas, Nevada  89169
    Telephone:      +1 702 385 6000
6
    RICHARD L. STONE, ESQ. (*pro hac vice*)
7   rstone@jenner.com
    DAVID R. SINGER, ESQ. (*pro hac vice*)
8   dsinger@jenner.com
    AMY M. GALLEGOS, ESQ. (*pro hac vice*)
9   agallegos@jenner.com
    JENNER & BLOCK LLP
10  633 West 5th Street, Suite 3600
    Los Angeles, California  90071
11  Telephone:      +1 213 239 5100
    Facsimile:      +1 213 239 5199
12
    *Attorneys for Defendants/Counterclaimant*
13
                    **UNITED STATES DISTRICT COURT**
14
                        **DISTRICT OF NEVADA**
15

16
17  LAS VEGAS SUN, INC., a Nevada            Case No. 2:19-cv-01667-GMN-VCF
    corporation,
18                                           **DEFENDANTS' MOTION FOR**
                                Plaintiff,   **SANCTIONS DUE TO THE SUN'S NON-**
19                                           **COMPLIANT DAMAGES DISCLOSURE**
           v.                                **IN VIOLATION OF THE COURT'S**
20                                           **ORDER [ECF NO. 275]**
    SHELDON ADELSON, an individual and as
21  the alter ego of News+Media Capital Group
    LLC and as the alter ego of Las Vegas Review
22  Journal, Inc.; PATRICK DUMONT, an
    individual; NEWS+MEDIA CAPITAL
23  GROUP LLC, a Delaware limited liability
    company; LAS VEGAS REVIEW-JOURNAL,
24  INC., a Delaware corporation; and DOES, I-X,
    inclusive,
25
                                Defendants.
26

27

28

LAS VEGAS REVIEW-JOURNAL, INC., a
Delaware corporation,

                           Counterclaimant,

     v.

LAS VEGAS SUN, INC., a Nevada
corporation; BRIAN GREENSPUN, an
individual and as the alter ego of Las Vegas
Sun, Inc.; GREENSPUN MEDIA GROUP,
LLC, a Nevada limited liability company, as
the alter ego of Las Vegas Sun, Inc.,

                           Counterclaim-
                           Defendants.

# I.   **Introduction**

This case was filed over 17 months ago, and the Sun still has not provided a damages disclosure that complies with the federal rules, even though so much time has passed and even though the Court ordered the Sun in December 2020 to comply with the rules. Rule 26(a)(1)(A)(iii) required the Sun to provide a proper damages disclosure within 14 days of the Rule 26(f) conference, making the deadline December 24, 2019. But the Sun refused to do so then, and has failed to do so time and time again since then. As a result of the Sun's refusals, after over a year of litigation, on December 17, 2020, the Court was forced to order the Sun to comply with Rule 26(a)(1)(A)(iii).

In its order, the Court expressly ruled that the disclosure must "specifically identify each category of damages the Sun currently seeks in this case, including its theory and computation of damages."[1] The Court further ordered the Sun to "produce all documents bearing on the nature and extent of those alleged damages."[2] Despite the Court's order, the Sun's supplemental disclosure contained no meaningful information about its claimed damages and, if anything, made the Sun's damage claims even more of a mystery than they were before.

Flouting Judge Weksler's order and the federal rules, the Sun's supplemental disclosure simply summarized the factual allegations from the Sun's complaint and stated that the Sun would seek damages arising from those allegations. Although the Sun conclusorily described its damages as "lost profits," "harm to the Las Vegas Sun brand," and "future damages for harm [to] the Sun's brand and goodwill," it did not explain the theory by which the conduct alleged supposedly caused those damages or provide any information on how it would compute them. Nor did the Sun provide any factual information about its alleged losses—not even its own financial information reflecting the purported value of the Sun or its brand, or financial information reflecting its supposed losses. Nor did the Sun produce "all documents bearing on the nature and extent" of its damages.

The Sun's damage theories are not obvious. The Sun's damages disclosure claims that the Sun lost profits and value because Defendants allegedly failed to promote the Sun, covered its logo

---

[1] ECF No. 275, at 16:16–19.
[2] *Id*. at 16:13–16.

with advertising stickers, redesigned the Review-Journal's front page and removed the Sun insert from the electronic replica edition. This theory makes no sense because, as explained below, the Sun newspaper is distributed only as an *insert inside of the Review-Journal newspaper*. The printed Sun newspaper cannot be purchased separately from the Review-Journal. It does not have its own customers, subscribers or advertisers. It shares the Review-Journal's readership and receives an annual profit payment from the Review-Journal (if the Review-Journal makes a profit) based on the Review-Journal's EBITDA. To Defendants' knowledge, the Sun newspaper has no other profits of its own. There is thus no readily apparent reason why allegedly failing to promote the Sun or reducing the Sun's visibility (even assuming those allegations are true) would have a negative impact on the Sun's profits or its value. If the Sun wants to argue that Defendants' failure to promote the Sun, for example, caused the Sun to lose "profits" or value then it needs to explain how it allegedly lost profits and what those profits supposedly should have been, and how this impacted its value, so that Defendants can conduct discovery into these issues and prepare its experts to address them.

There is no excuse for the Sun's blatant disregard of the Court's order. Information about the Sun's damages is critically important, and the prejudice to Defendants grows every day that it is withheld. By way of example, the Sun claims that it is seeking damages for Las Vegas Sun, Inc.'s diminution in value, loss of goodwill and damage to its "brand." Even though the Sun's brand includes both the *Sun* newspaper and the Sun's website, www.LasVegasSun.com, the Sun's damage disclosure says nothing about how the Sun plans to determine the value of the print newspaper only to the company or to the brand, or how its value and/or brand was supposedly diminished. Worse, the Sun successfully blocked discovery into the operation and finances of the Sun's website, and now it seems that discovery on this topic may have been critical. At this point, the Sun's strategy seems obvious: it is holding its cards close to its chest in the hope of ambushing Defendants later. In addition to violating Judge Weksler's order, these tactics defeat the purpose of Rule 26, which is to "eliminate surprise and trial by ambush."[3]

---

[3] *Silvagni v. Wal-Mart Stores, Inc.*, 320 F.R.D. 237, 240 (D. Nev. 2017) (citing *Ollier v. Sweetwater Union High School Dist.*, 768 F.3d 843, 862–63 (9th Cir. 2014)).

At the December 17 hearing, Judge Weksler warned the Sun that there would be consequences if it failed to provide a compliant disclosure after having been ordered to do so: "[i]f the Sun continues to hold its cards close to its chest in violation of the rules, the Sun will do so at its own peril." ECF No. 275, at 17:21–23. Sanctions are warranted here. The Sun should not be permitted to flout the Court's orders with impunity, and Defendants should not have been required to bring a motion to compel mandatory disclosures in the first place, much less this *second* motion after the Court *already ordered* production of the long-overdue disclosures.

Stringing out the disclosure process and refusing to provide basic information in its possession until the eve of the expert disclosure deadline is textbook gamesmanship aimed at undermining the Court's schedule and preventing Defendants from fairly and adequately defending against the Sun's damages claims. Pursuant to Rule 37, the Court should preclude the Sun from making any damage claims that rely on losses, computations, damages theories or documents that were not disclosed in its Twelfth Supplemental disclosure, and it should likewise preclude the Sun's experts from relying on any claimed losses, theories or documents not already disclosed. In the alternative, the Court should order the Sun to produce a compliant disclosure within seven days. Irrespective of the relief given, the Court should also award Defendants' attorneys' fees in connection with this motion.

## II.   Factual Background

### A.   The Sun's Claims against Defendants.

This lawsuit is the most recent chapter in a years-long litigation campaign plaintiff Las Vegas Sun, Inc., the owner of the *Sun* newspaper, has been waging against the Review-Journal. The Sun and the Review-Journal are parties to a joint operating arrangement entered in 2005 (the "2005 JOA").[4] The 2005 JOA is not legally enforceable, which is one reason the Sun's lawsuit is baseless. However, according to the terms of the 2005 JOA, among other things, the *Sun* ceased to exist as a standalone paper and instead was distributed only as an insert inside the *Review-Journal*. ECF No. 1, ¶ 24 (the Sun's complaint). Because the Sun no longer had its own subscribers

---

[4] The 2005 JOA replaced another JOA the parties had entered in 1989. ECF No. 1, ¶¶ 18–23.

or advertisers to generate revenue, the JOA provided for the Sun to receive an annual payment from the Review-Journal, the amount of which would be determined by a formula based on the Review-Journal's EBITDA. *See id*., ¶ 30.

Even though the JOA was profitable for the Sun for a long time, the Sun's owner, Brian Greenspun, has never been satisfied with the arrangement and has been suing the Review-Journal for years, through a succession of different Review-Journal owners. In addition to the instant federal antitrust lawsuit, the Sun currently also has a state-court case pending against the Review-Journal alleging breach of contract for the Review-Journal's redesign of its front page, use of common advertising stickers and spadea folds and a temporary omission of the Sun insert from the electronic replica version of the Review-Journal newspaper—the same alleged conduct the Sun now claims in this case should support an antitrust lawsuit. There is also a Nevada Supreme Court appeal pending between the parties that relates to an arbitration award in favor of the Sun for its claim that the Review-Journal improperly "charged" certain expenses "to the JOA"[5]—the very same alleged "accounting abuses" the Sun repackaged as purported antitrust claims here.

The Sun's complaint in this case takes its prior, and pending, claims against the Review-Journal and recasts them as antitrust violations. Specifically, the Sun alleges that Defendants are monopolizing the market for the sale of daily print newspapers in Clark County, supposedly by virtue of an "anticompetitive scheme" that involves improperly charging certain expenses to the JOA, redesigning the *Review-Journal*'s front page in a way that insufficiently promotes the *Sun* insert, selling advertising products that obscure the Sun's logo, removing the Sun from the E-Replica edition of the *Review-Journal* and other so-called "abuses." *See* ECF No. 1, ¶¶ 56–100 (the Sun's complaint). Notably, despite the fact that this is ostensibly an antitrust case accusing Defendants of stifling competition in the market for the sale of newspapers in Clark County, the Sun concedes that the *Review-Journal* and *Sun* do not compete for sales, since the two newspapers

---

[5] Notwithstanding the Sun's characterization, there is no separate "JOA" entity to which expenses can be or have been charged. When the Sun refers to costs being "charged" to the joint operation, it means those costs were deducted as expenses when EBITDA was calculated for the purpose of determining the Sun's annual profits payment, the amount of which is tied to the Review-Journal's EBITDA.

are only sold as a package. *Id*. ¶¶ 24, 41. The Sun also concedes that there is no economic competition in the alleged relevant market at all, because the combined *Review-Journal/Sun* is the only print daily newspaper sold in Clark County. *Id*. ¶¶ 36–41.

**B.      The Sun Refuses to Disclose its Damages and Obstructs Discovery of Evidence Directly Bearing on its Alleged Damages.**

The Sun's gamesmanship with respect to its damages began on December 24, 2019, when the Sun served what it claimed were its initial disclosures. Although Rule 26(a)(1)(A)(iii) requires a plaintiff to disclose a computation of each category of damages claimed and to make available all documents bearing on the nature and extent of its injuries, the Sun did neither. Instead, it just recited the relief sought in its complaint and stated that no further information would be provided until expert discovery. Defendants met and conferred with the Sun multiple times over the ensuing months, but the Sun flatly refused to provide any additional information about its purported damages.[6] *See* ECF No. 180–1, ¶¶ 4–16 (detailing the Sun's refusals to provide damages information). Indeed, despite more than six months of meeting and conferring on the issue, the supplemental damage disclosure the Sun finally provided deficiently stated only that the Sun was seeking all damages that flowed from the claims alleged in its complaint: "The Sun is . . . entitled to recover its actual damages that flow, directly or indirectly, from the effect of Defendants' antitrust violations and anticompetitive conduct, and treble damages, attorney fees, costs, and interest, as a result of Defendants' violations."[7] ECF No. 180–7, at 9:24–27 (Sixth Supplemental Disclosure).

At the same time, the Sun was stonewalling Defendants' efforts to use discovery to obtain basic facts about the Sun's damages, such as the relevant fact witnesses or time period for which damages would be sought. On May 22, 2020, Defendants served an interrogatory on the Sun asking it to identify all persons with knowledge of the damages it claims to have suffered as a result of

---

[6] The Sun supplemented its initial disclosures several times after that, but never added any additional information about its damages.

[7] To this, the Sun added a myriad of *excuses* for *failing* to disclose its damage theory or computation—i.e., it claimed that the documents it needed were in Defendants' possession. *See* ECF No. 180–7 (Sixth Supplemental Disclosures). But it provided no additional information about its theory of damages or how it intended to calculate them. *See id.*

5

the conduct alleged in the complaint. *See* ECF No. 112–2, at 7:8–11. After a laundry list of objections, the Sun identified no witnesses except for its former business consultant Elizabeth Cain and refused to provide any further information until expert disclosures. *See* ECF No. 112-3 at 14:5–26. The Sun also refused to produce damage-related documents. In May 2020, Defendants served a request for all documents evidencing the Sun's alleged damages. ECF No. 79-1, at 46–47. The Sun refused, claiming it was not obligated to produce the documents until the expert disclosure deadline. *Id*. In the same set of requests, Defendants requested the Sun's financial records. ECF No. 78–5, at 84–86. The Sun refused this request as well, claiming that its finances were irrelevant to the case. *Id*.

Defendants moved to compel on their document requests. *See* ECF Nos. 77, 86, 94. But the Court denied most of Defendants' requests for financial records. Significantly, the Court specifically prohibited discovery into Las Vegas Sun, Inc.'s value as a going concern because it concluded that only the Sun newspaper's losses were relevant. The Court also barred Defendants from obtaining discovery about the Sun's website, which is also owned by plaintiff Las Vegas Sun, Inc. and shares the "Las Vegas Sun" brand, goodwill and trademark with the printed Sun newspaper. *See, e.g*., ECF No. 111 at 70:16-23 (7/28/20 Hearing Tr.). As a result, Defendants have received no financial information about Las Vegas Sun, Inc. other than a few records relating only to the finances of the newspaper portion of the Sun's business.

### C.    Judge Weksler Orders the Sun to Serve a Proper Damages Disclosure.

By October 2020—over a year into the case and ten months past the deadline for the Sun to make its mandatory damage disclosure—Defendants still had no meaningful information about the categories, theories or amounts of damages being claimed by the Sun. Meet and confers were unsuccessful because the Sun would not budge. Discovery was unsuccessful because without a disclosure articulating its damage theories, the Sun was able to persuade the Court that most of its financial information was irrelevant and out of bounds. Defendants thus had no choice but to move to compel the Sun to make a rule-compliant damage disclosure. *See* ECF Nos. 180, 199, 224.

In its opposition to Defendants' motion to compel, the Sun revealed that it would be seeking certain categories of damages such as its litigation costs in the state court lawsuit, harm to the Sun's brand and the diminution in value of Las Vegas Sun, Inc. *See* ECF Nos. 199 at 3–4. These categories of damage were clearly known to the Sun from the outset, though the Sun kept them from Defendants and the Court. Moreover, evidence relating to those alleged damages—such as statements showing the amount of litigation costs paid by the Sun and the Sun's financial records—was obviously in the Sun's possession all along and did not require expert analysis or further discovery from Defendants, as the Sun had falsely claimed. Moreover, the timing of these disclosures confirms that the Sun misled Judge Weksler into blocking discovery relevant to the valuation of Las Vegas Sun, Inc., as well as discovery relevant to the Sun's brand damage claim. *See* ECF No. 224–2.

After being apprised of the Sun's refusal to abide by the disclosure rules, on December 17, 2020, Judge Weksler granted Defendants' motion. First, she explained the requirements of Rule 26(a)(1)(A)(iii): parties must provide a computation of each category of damages claimed by the disclosing party, and to make available the documents or other evidentiary material on which each computation is based, including "materials bearing on the nature and extent of the alleged injury suffered." ECF No. 275, at 11:7–14. She then observed that the Sun's damages disclosure did none of the above, stating: "*Essentially, the Sun's damages computation as it stands now merely informs the RJ that the Sun seeks the universe of actual damages that flow from defendants' alleged conduct. This is inadequate and inhibits the RJ's ability to produce responding evidence and tailor its discovery requests.*" *Id.* at 13:9–13 (emphasis added). Judge Weksler further chastised the Sun for not disclosing that it was seeking attorneys' fees for defending against the Review-Journal's state court counterclaim as it was in "possession of evidence and information supporting at least this category of damages . . . since the parties' Rule 26(f) conference merely one year ago." *Id.* at 14:6–10.

Judge Weksler gave the Sun explicit instructions for what its court-ordered supplemental disclosure must contain. She ordered the Sun to "*specifically identify each category of damages*

the Sun currently seeks in this case, including its *theory* and *computation* of damages." ECF No. 275, at 16:17-19 (emphasis added). She also ordered the Sun to "produce *all documents bearing on the nature and extent of [its] alleged damages*." *Id.*, at 16:13-16 (emphasis added). Judge Weksler recognized that calculation methods to be created and applied by experts did not need to be disclosed until expert disclosures. *Id.* at 16:19-23. However, she emphasized that when the Sun supplemented its responses to comply with the order, it must "provide the best information then available to it concerning its claim, however limited and potentially changing it may be. . . . [T]he Court does not expect the Sun to pull theories and numbers out of thin air, but *the Sun must exhaust all the information available to it to supplement its damages disclosure in accord[ance] with the rules*." *Id.* at 17:6–13 (emphasis added).

Judge Weksler emphasized that there would be consequences for any further attempts to skirt the requirements of Rule 26, warning the Sun that "*[i]f the Sun continues to hold its cards close to its chest in violation of the rules, the Sun will do so at its own peril.*" ECF No. 275, at 17:21–23 (emphasis added).

### D. The Sun Disobeys the Court's Order and Serves Another Facially Inadequate Damages Disclosure.

The Sun's court-ordered supplemental disclosure was due on December 31, 2020, 14 days from the Court's order. On that date, the Sun served its Ninth Supplemental Disclosure. The disclosure stated that the Sun was seeking "lost profits" due to certain "accounting abuses". **Exhibit B**, at 10. The disclosure also stated that the Sun was seeking "lost profits" from what it labeled "operational abuses." *Id.* The description of "operational abuses" in the disclosure was just a brief summary of the allegations in the complaint. *Id.* The Sun did not explain *how* the alleged actions supposedly caused it to incur lost profits, nor did it explain how its alleged lost profits would be measured or calculated. *See id.* In other words, after Judge Weksler told the Sun it was inappropriate for the Sun to simply say that it was seeking damages flowing from Defendants' alleged conduct, the Sun did the same thing again—only this time, it listed out the alleged conduct

1  and then said it was seeking damages, which it labeled as "lost profits," from that conduct.[8] In

2  other words, the Sun's substance-free revision added no additional information.

3          In fact, the Sun's new disclosure just sowed more confusion. As described in its

4  supplemental disclosure, the Sun's "lost profits" claim is nonsensical. Since the Sun gets free

5  distribution with the Review-Journal, there is no logical reason fewer promotions or less front-

6  page visibility, for example, would impact the Sun's profits. And since the Sun does not sell ads,

7  there is no ad revenue that could be adversely impacted by Defendants' alleged "abuses" either.

8  The Sun' disclosure of "lost profits" damages, instead of providing new information, just raised

9  more questions without providing any answers.

10          In addition to "lost profits," the Ninth Supplemental Disclosure also stated, conclusorily,

11  that the Sun was seeking damages for the "the diminution in value to the joint operation and the

12  Sun," "harm to the Las Vegas Sun brand," and "future damages for harm that Defendants have

13  inflicted on the Sun's brand and goodwill." *Id.* at 11. The Sun did not say anything else about these

14  categories other than listing them. It did not explain how any alleged conduct by Defendants

15  supposedly devalued the Sun or harmed its brand and goodwill. Moreover, the Sun has both a

16  newspaper and a website and, although it has admitted it is not seeking damages for harms to the

17  website, it provided no hint of how it intended to separate and value the newspaper and

18  newspaper's brand from the website and website's brand. *See id.*

19          The Ninth Supplemental Disclosure did provide one number. It stated that the Sun incurred

20  $487,447.00 in attorneys' fees for defending against the Review-Journal's state-court

21  counterclaim. *Id.* The invoices the Sun provided to support its attorneys' fees claim, however,

22  revealed ███████████████████████████████████████████[9], not Las

23  Vegas Sun, Inc., the plaintiff in this case. *See* **Exhibit G**. The Sun produced no proof that it paid

24

25  [8] The Sun also added, as a catchall, that it had "lost profits" due to "other harmful operational
26  decisions that diminished the profitability of the joint operation and rendered the combined
    Newspapers significantly weaker." **Exhibit B**, at 10. But it did not even say what these decisions
27  were or how they supposedly impacted the Sun's profits. *See id.*
    [9] ████████████████████████████████████████████████████
28  ████████████.

9

these particular invoices and, to date, has refused Defendants' requests for such documents. *See* **Exhibit F**.

As if this inadequate disclosure were not bad enough, the Sun further muddied the water with subsequent disclosures. The Sun's Tenth Supplemental Disclosure, filed on January 14, 2021, still alleged attorneys' fees as damages but *deleted* the $487,447.00 number. *See* **Exhibit C**, at 11–12. So now Defendants have no idea what amount is being claimed or why the previously disclosed amount was withdrawn. Moreover, the Tenth Supplemental Disclosure stated for the first time that the Sun alleges Defendants' wrongly charged $64 million "to the joint operation," but the disclosure did not say how the Sun purportedly came up with that number or how the Sun intended to calculate damages using that number. *See id.* at 11.[10] To be clear, $64 million is not even the amount of damages the Sun is claiming. It is, if Defendants understand correctly, the amount the Sun claims was improperly deducted from the Review-Journal's EBITDA. Under the 2005 JOA, the Sun is only entitled to a percentage of each year's EBITDA, if it is positive. The Sun's disclosure does not reveal what years the $64 million covers, or how much was allegedly improperly charged "to the JOA" per year. Thus, there is no way to know how the allegedly wrongful charges impacted the Sun's yearly payments, if they did at all.

In addition to serving disclosures that omitted the information Judge Weksler expressly ordered the Sun to provide, and that obscured instead of clarified the Sun's damage theories and computations, the Sun also failed to identify the documents bearing on the nature and amount of its damages. And because the Sun failed to adequately disclose its damages categories and computation, Defendants have no way of assessing whether the scant documents the Sun has produced since Judge Weksler's order reflect the universe of the Sun's supposed damages.[11]

---

[10] The Sun has since served two supplemental disclosures, neither of which materially alters the Sun's damages disclosure. *See* **Exhibits D and E**. The latest disclosure adds a distinct claim for attorney fees incurred as a result of Defendants' counterclaim in this action (as opposed to attorneys' fees in defending against Defendants' state-court counterclaims). *See* **Exhibit E**, at 16.

[11] ███████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████

10

**III.     The Sun Is Flouting Judge Weksler's Order.**

The Sun disobeyed Judge Weksler's order by serving a damage disclosure that failed to articulate a damages theory for each category and contained no damages computations, and by failing to produce documents relating to its damages.

<u>First</u>, the Sun's discussion of "lost profits arising from operational abuses" fails to comply with Judge Weksler's order or Rule 26(a)(1)(A)(iii). The Sun merely recites the "operational abuses" alleged in its complaint, which supposedly include failing to promote the *Sun*, redesigning the newspaper's front page, obstructing the Sun's front-page presence, removing the *Sun* from the E-Replica and replacing Jason Taylor as publisher—and states that these actions supposedly caused it to lose profits. However, the Sun at no point explains how these alleged "abuses" resulted in lost profits to the Sun. Likewise, the Sun provides no damages estimate or explanation of how it plans to calculate its alleged "lost profits." And because the Sun has not disclosed how each of the alleged "abuses" caused it to lose profits or the amount of profits it supposedly lost, Defendants have no way of knowing what other documents, if any, the Sun plans to rely on to establish these purported "lost profits" damages, or even whether all of the relevant documents have been produced.

The law is clear that a plaintiff cannot satisfy its disclosure obligations simply by doing what the Sun has done here, namely reciting the allegations in the complaint and stating that it intends to seek damages arising from the conduct alleged. *See, e.g., Johnstech Int'l Corp. v. JF Microtechnology SDN BHD*, 2016 WL 4182402, at *1 (N.D. Cal. Aug. 8, 2016) (party's "computations of special damages," which "consisted of nothing more than cursory and unadorned statements like 'all monies lost as a result of business lost by [party] as the result of the false letter' and 'all profits earned as a result of the unlawful diversion of business,'" did not comply with Rule 26); *Ketab Corp. v. Mesriani Law Grp.*, 2016 WL 5921767, at *2 (C.D. Cal. Mar. 18, 2016) (plaintiff's disclosure was insufficient where it simply stated that it was seeking lost profits caused by the defendant's alleged misconduct, without identifying any lost profits or explaining how they would be computed); *see also Song v. Drenberg*, 2019 WL 1949785, at *2 (N.D. Cal. May 2, 2019)

("At a minimum, plaintiffs must describe on a claim-by-claim basis the nature of the damages claimed (e.g. actual damages), and how such damages may be calculated (e.g. estimated value of specific lost business opportunities)").

Moreover, a damages disclosure is supposed to identify the documents supporting the damages claimed—the disclosing party cannot simply say that they can be found within a voluminous production. Yet the Sun here did not identify any documents evidencing its supposed lost profits. *See Brandywine Commc'ns Techs., LLC v. Cisco Sys., Inc.*, 2012 WL 5504036, at *2 (N.D. Cal. Nov. 13, 2012) ("Although the rule does not say so expressly, it is a reasonable view of [Rule 26(a)(1)(A)(iii)] that the computation must call out the particular materials relied on and identify them in some plausible way so as to clarify the basis for the disclosed computations."); *Ketab*, 2016 WL 5921767, at *2 (concluding plaintiff's disclosure was deficient, in part, because plaintiff "does not identify the underlying documents to support any losses claimed").

The absence of any explanation (or supporting documents) is especially problematic here because, as noted, the causal link between the conduct alleged in the complaint and the Sun's purported lost profits is not obvious. Even if one were to assume that under normal circumstances, it would make sense that if a newspaper is not promoted and experiences less visibility, its profits would decrease because it would be less able to sell newspapers, subscriptions or advertising, the assumption would not apply here, because *the Sun does not sell newspapers, subscriptions or advertisements*. The Review-Journal handles sales, subscriptions and advertisements on behalf of the one joint-media product. Thus, the theory on which the Sun's alleged "diminished visibility" supposedly led to lost profits is a mystery. Leaving Defendants to guess what, exactly, the Sun is claiming by way of lost profits violates the core principle underlying initial disclosures: "eliminat[ing] surprise and trial by ambush." *Silvagni v. Wal-Mart Stores, Inc.*, 320 F.R.D. 237, 240 (D. Nev. 2017). It also violates Judge Weksler's express directive ordering the Sun to "specifically identify each category of damages [it] currently seeks in this case, including its *theory* and *computation* of damages." *See* ECF No. 275, at 16:16–19 (emphasis added).

<u>Second</u>, the Sun's disclosure of damages due to "diminution in value to the joint operation and the Sun" only further adds to the confusion and violates Judge Weksler's order. Here, the Sun does nothing more than identify "diminution in value" to the supposed "joint operation" and the Sun as a damages category; it does not describe the extent or nature of damages and it provides no hint of a damages theory or damages computation whatsoever. Notably, the Las Vegas Sun, Inc.'s value comprises both the printed *Sun* newspaper and the *Sun* website. The Sun insists the website is not at issue in this action. Thus, presumably, the Sun intends to parse out the value of the *Sun* newspaper and seek damages for the diminution in its value only—but it provides no hint of how it intends to do that. Confusing things even further is the fact that the "joint operation" that the Sun claims lost value includes the *Review-Journal* as well as the *Sun*—but surely the Sun is not seeking damages for losses incurred by the Review-Journal. Once again, the Sun's supplemental disclosure only further muddles the issues, violating Judge Weksler's express directives to provide immediate clarity. This, again, defeats the very purpose of mandatory damages disclosures: to enable Defendants to understand "the contours of [their] potential exposure" and make "informed decisions as to settlement and discovery." *Frontline Med. Assocs., Inc. v. Coventry Health Care*, 263 F.R.D. 567, 569 (C.D. Cal. 2009).

<u>Third</u>, the Sun identifies "harm to the Las Vegas Sun brand" as a damages category, but it, again, provides no damages theory or computation and does not identify the documents that support this damages claim—both of which, again, violate Rule 26 and Judge Weksler's order. *See* ECF No. 275 at 16:13–19; *Frontline*, 263 F.R.D. at 569; *Brandywine*, 2012 WL 5504036, at *2. Here, again, the Sun's disclosures leave Defendants completely in the dark about the nature and extent of claimed damages to the "Las Vegas Sun brand." Moreover, the printed *Sun* and the *Sun* website share the same brand, name, logo and trademark, yet the Sun has not explained how (or if) it intends to separate out and value the print portion of the brand from the website portion of the brand and, as noted above, discovery about the Sun's website has been foreclosed. *See* ECF No. 224–2.

Fourth, the Sun discloses "future damages for harm that Defendants have inflicted on the Sun's brand and goodwill" as a category of damages, but, as with the past "harm to the Las Vegas brand" damages category, the Sun violated Judge Weksler's order by failing to identify its damage theory, provide a damages computation or identify documents that support this claim. *See Frontline*, 263 F.R.D. at 569; *Brandywine*, 2012 WL 5504036, at *2. And as with the Sun's claims for "diminution of value" and past harm to the "Las Vegas Sun brand," the Sun's disclosure here provides no meaningful information and simply confounds the nature and extent of the damages sought.

Fifth, even where the Sun identifies actual numbers, its disclosures still fall woefully short of compliance with Judge Weksler's order and Rule 26(a)(1)(A)(iii). Specifically, with respect to "lost profits" resulting from "accounting abuses affecting the joint operation," while the Sun states a number—$64 million in "improper editorial and promotional expenses charged to the joint operations"—the Sun fails to explain how that figure factors into its lost profits claim, to disclose how the Sun arrived at the number or to identify supporting documents.[12] The Sun has not set forth the computation that led to the $64 million number, nor has it set forth the computation it would use to show its damages from the allegedly improper charges. *See Thomas v. AmeriCredit Fin. Corp.*, 2008 WL 162528, at *1 (N.D. Cal. Jan. 17, 2008) (identification of "a lump sum statement of the damages allegedly sustained" without "an explanation of what injuries were sustained and how the plaintiff arrived at each damages calculation" does not comply with Rule 26). Instead, the Sun leaves it to Defendants to divine how it came up with the $64 million number, and what fraction of that number is the alleged damages claim, violating Rule 26 and Judge Weksler's express order that computations must be disclosed and facts in the Sun's possession must be disclosed. *See* ECF No. 275, at 17:10–13 ("[T]he Court does not expect the Sun to pull theories

---

[12] The scant "damages documents" the Sun *has* produced since Judge Weksler's order do nothing to elucidate the amount, extent or computation of lost profit damages. *See, e.g., Allstate Ins. Co. v. Nassiri*, 2010 WL 5248111, at *4 (D. Nev. Dec. 16, 2010) ("A plaintiff cannot . . . simply produce documents relating to its alleged damages without explanation"); *Frontline*, 263 F.R.D. at 569 ("[B]y its very terms Rule 26(a) requires more than providing—without any explanation— undifferentiated financial statements; it requires a 'computation,' supported by documents").

14

and numbers out of thin air, but the Sun must exhaust all the information available to it to supplement its damages disclosure in accord[ance] with the rules").

There is an additional problem with the Sun's failure to explain the basis for its conclusion that there were $64 million in allegedly improper charges. As noted above, the Sun's lost profit damages based on "accounting abuses" are identical to the damages the Sun sought in the parties' 2019 arbitration. Without an explanation or computation that would allow Defendants to ascertain what the charges at issue were or when they occurred, it is impossible to know whether the Sun is seeking duplicative damages or damages that were sought but not awarded in the arbitration (and thus are barred by res judicata).

Finally, although the Sun's Ninth Supplemental Disclosure identified a sum associated with its attorneys' fees claim ($487,447.00), and even though Judge Weksler *expressly required* the Sun to provide the amount of attorneys' fees it was claiming, the Sun submitted another disclosure two weeks later that *deleted* the amount, without explanation. Moreover, the invoices the Sun produced show ███████████████████████████████ ████████ and the Sun has ignored Defendants' requests that it identify the amount actually paid by Las Vegas Sun, Inc., the plaintiff in this case. *See* **Exhibits F and G**. The Sun's deletion of the amount of its attorneys' fee damages and production of invoices ████████████████ ██ confounds what should be an otherwise straightforward damages category. *See Carrington Mortg. Servs., LLC v. Ticor Title of Nevada, Inc.*, 2020 WL 3958251, at *2 (D. Nev. July 8, 2020) (noting that "[w]hile [Rule 26] provides flexibility as appropriate based on the circumstances of a particular case, litigants should not confuse it as an invitation to engage in gamesmanship with respect to their initial disclosure obligations").

Judge Weksler found the Sun's prior failure to disclose a figure, as well as the supporting documents, for its alleged litigation costs particularly troubling, explaining: "The Sun, as conceded during the hearing, is in possession of evidence and information supporting at least this category of damages, and this has been the case since the parties' . . . Rule 26(f) conference merely one year ago. Rule 26(a) required the Sun to disclose this category of damages in its disclosures and to

produce evidentiary material supporting these damages. When the Sun did not do so, it violated Rule 26 and inhibited the discovery process." ECF No. 275 at 14:6–14. The fact that the Sun still failed to properly disclose these costs, even after being ordered to do so, is egregious.

The Court should reject any suggestion by the Sun that it is not required to provide any additional information until it makes its expert disclosures. That the Sun may not be able to provide for some categories of damages a "precise method of calculation" without expert analysis does not relieve it from having to *now* explain its theory of damages, identify its losses, disclose any computations it has already performed and identify and produce any relevant documents. *See Frontline*, 263 F.R.D. at 570 ("Future expert analysis does not relieve plaintiff of its obligation to investigate and provide information reasonably available to it as to [the] component[s] of its lost profits computation"); *Song*, 2019 WL 1949785, at *2 (rejecting plaintiff's claim that it need not provide any damages information because it could not presently provide "specific dollar-figure calculation of damages,"' noting that Rule 26 requires "a party to disclose its present assessment of the amount of damages in light of the information currently available to that party"). The Sun is plainly withholding information it currently knows, such as the amount of attorneys' fees it paid, the amount of profits it lost, the value of Las Vegas Sun, Inc., the value of the Sun brand and documents supporting its damage claims. As Judge Weksler aptly put it: "the Sun must exhaust all the information available to it to supplement its damages disclosure in accord[ance] with the rules [despite] the fact that discovery has not yet closed, expert disclosure deadlines have not yet lapsed, and there are discovery motions that have not yet been resolved." *See* ECF No. 275 at 17:11–16. Despite 17 months of litigation and an express court order, the Sun is still refusing to disclose information and documents it obviously has. This is sanctionable conduct.

The Court should also reject any claim by the Sun that it cannot provide any additional information because its damages depend on materials in Defendants' possession and/or only recently produced. The vast majority of the Sun's damages categories and computations do not depend on Defendants' documents at all. Indeed, the Sun's claims for lost profits, diminution of value to the Sun, harm to the Las Vegas Sun brand, future harm to the Las Vegas Sun's brand and

goodwill and attorneys' fees damages depend entirely on information uniquely in the Sun's possession. The Sun alone knows the value of its brand and goodwill and the extent to which it has dropped over the last five years, and it knows its sources of profits and the amounts it expended defending against Defendants' state court counterclaims. The Sun was obligated by the Court to provide this information. *See* ECF No. 275, at 17:11–16; *see also Carrington*, 2020 WL 3958251, at *3–4 (noting that when a plaintiff "possesses the information necessary to provide a dollar amount for its damages computation," it must do so, and observing that "[Rule 26] does not enable a plaintiff to hide the ball on the pertinent information it already has with respect to its damages claim").

## IV.   The Court Should Preclude the Sun's Damage Claims for Its Failure to Comply with Rule 26(a) and Judge Weksler's Order.

The Sun's repeated failure to disclose its damages—in the face of a mandatory federal rule and an explicit Court order requiring it to do so—should have consequences for the Sun. Otherwise, Defendants will be the only party to pay the price for the Sun's discovery misconduct. An order precluding the Sun from asserting any damage theory not properly disclosed is appropriate <u>both</u> as a sanction for the improper disclosure <u>and</u> as a sanction for violating the Court's order.

"Rule 37(c)(1) gives teeth to [the Rule 26(a)] requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008). Under Rule 37, exclusion sanctions are "self-executing" and "automatic." *Yeti by Molly. Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (quoting Fed. R. Civ. P. 37 advisory committee's note (1993)). To that end, a finding of willfulness or bad faith is not required to impose exclusion sanctions. *Hoffman*, 541 F.3d at 1180. A preclusion sanction is also appropriate under Rule 37(b)(2), as penalty for the Sun's failure to comply with a court order. [13] *See Varney v. California Highway Patrol*, 2013 WL 2299544, at *2 (N.D. Cal. May 24, 2013).

---

[13] As with Rule 37(c)(1), so long as "the sanction ordered is less than and/or is not tantamount to dismissal, the disobeying party's noncompliance need not be proven to be willful or in bad faith." *Sas v. Sawabeh Info. Servs.*, 2015 WL 12711646, at *7 (C.D. Cal. Feb. 6, 2015).

The lone "exceptions" to the automatic exclusion sanction provided for under Rule 37(c) are "if the parties' failure to disclose the required information is [1] substantially justified or [2] harmless." *Yeti by Molly*, 259 F.3d at 1106. The party facing exclusion sanctions bears the burden of demonstrating a substantial justification or harmlessness under Rule 37. *Nitta v. United States*, 2019 WL 8272658, at *2 (D. Nev. June 28, 2019) (citing *Yeti by Molly*, 259 F.3d at 1106–07). The Sun cannot make such a showing here.

First, the Sun's deliberate flouting of Judge Weksler's order and the requirements of Rule 26 is unjustified. As explained above, the Sun has failed, yet again, to provide basic information and documents ***in the Sun's possession*** relating to its damage theories and calculations. After over a year of obfuscation, multiple meet-and-confers and a court order, it is difficult to fathom what possible justification the Sun could put forth for continuing to withhold information about its damage theories. At this point, the only possible reason the Sun could be withholding this critical information is that it believes there will be no consequences and that it will be allowed to ambush Defendants at trial.

Second, the Sun's misconduct has not been harmless. In evaluating harmlessness, courts consider "(1) the prejudice to [Defendants], (2) the ability to cure the prejudice, (3) the likelihood of disruption at trial, and (4) bad faith or willfulness." *Nitta*, 2019 WL 8272658, at *2. The Sun's failure to comply with Rule 26 has severely prejudiced Defendants by impeding and delaying their ability to fairly defend against this action. To begin, the Sun's gamesmanship has hindered Defendants' ability to understand the extent and nature of the damages claimed—defeating the very purpose Rule 26(a) is supposed to serve. *See, e.g., Silvagni*, 320 F.R.D. at 240 ("The purposes of the initial disclosure requirements are important and clear. Parties should be put on notice of the factual and legal contentions of the opposing party, and the initial disclosure requirements eliminate surprise and trial by ambush."). The Sun's misconduct has also prejudiced Defendants' ability to conduct appropriate fact discovery, misleading Judge Weksler about the relevance of discovery about the Sun's website, for example, that may ultimately prove necessary to rebut the Sun's calculation and apportionment of damages to the Sun's value, brand and goodwill—which,

again, comprises the printed *Sun* and the *Sun* website. *See, e.g., Mass Probiotics, Inc. v. Aseptic Tech., LLC*, 2017 WL 10621233, at *5 (C.D. Cal. Dec. 21, 2017) (noting that "initial disclosures are designed to help the opposing party plan the type of evidence it should seek to obtain during discovery" and concluding plaintiff's belated damages disclosure was not harmless "[b]ecause Defendant has been deprived of the opportunity to conduct discovery to investigate and evaluate Plaintiff's new computation of damages").

The prejudice to Defendants cannot be cured. The Sun's misconduct has left Defendants with less than three months to take damages discovery, which might seem like a long time until one considers that (i) the Sun has still not meaningfully disclosed its damages; (ii) motion practice would likely be required to compel the Sun to respond to any further damage-related requests; and (iii) Defendants' experts would have to review and analyze any additional documents or information provided. *See, e.g., Nitta*, 2019 WL 8272658, at *3–4 (precluding a damages category disclosed on plaintiff's expert disclosure deadline because "[p]laintiff's actions left defendant with only a month or so to pursue discovery on this previously unidentified claim and to disclose its own rebuttal experts to damages not previously contemplated").

The Court should reject any suggestion by the Sun that the prejudice could be cured by extending the case management deadlines. "Disruption to the schedule of the court and other parties is not harmless. Courts set schedules to permit the court and the parties to deal with cases in a thorough and orderly manner, and they must be allowed to enforce them, unless there are good reasons not to." *Baltodano v. Wal-Mart Stores, Inc.*, 2011 WL 3859724, at *4 (D. Nev. Aug. 31, 2011); *Hoffman*, 541 F.3d at 1180 ("Later disclosure of damages would have most likely required the court to create a new briefing schedule and perhaps re-open discovery, rather than simply set a trial date. Such modifications to the court's and the parties' schedules supports a finding that the failure to disclose was not harmless."); *Spin Master, Ltd. v. Zobmondo Entm't, LLC*, 2011 WL 13127349, at *10 (C.D. Cal. Sept. 15, 2011) (similar). Moreover, the Sun <u>wants</u> the deadlines continued. On January 8, 2021, the Sun filed a motion asking the Court to continue all discovery and case deadlines by six months. After over a year of refusing to provide damages discovery

while promising all would be revealed its expert disclosures, the Sun is now trying to postpone providing those very expert disclosures. Continuing deadlines would just reward the Sun for its misconduct and further prejudices Defendants.

Lastly, it almost goes without saying, for the reasons discussed above, that the Sun's blatant disregard for Judge Weksler's order and repeated failures to disclose a Rule 26 damages computation evinces bad faith and willfulness. *See, e.g., Nitta*, 2019 WL 8272658, at *4 (noting that plaintiff's failure to disclose a damages claim for over a year that was likely decided on months prior to retaining an expert evinced willfulness). For these reasons, the Court should issue an order precluding the Sun from relying on any losses, computations, damage theories or documents not disclosed in its most recent disclosure (i.e., the Twelfth Supplemental Disclosure).

## V.   At Minimum, the Court Should Order a Complete Damage Disclosure and Impose Monetary Sanctions against the Sun.

If the Court elects not to issue a preclusion sanction then it should, at minimum, order the Sun to provide a compliant disclosure within 7 days of its order. The Court should specify that the disclosure must include: (1) a description of how each category of damages flows from the conduct alleged in the complaint; (2) identification of the amount of any losses claimed; (3) an explanation of how each category of damages will be computed; (4) all documents bearing on the nature and extent of its damages; and (5) identification by Bates number of each document relating to each category of damages. This will ensure that there is no repeat of what the Sun did after Judge Weksler's order and ensure that if the Sun later attempts to ambush Defendants with undisclosed theories or documents, it will be easy to identify the theories and/or documents to exclude.

Additionally, because Defendants should not have had to file multiple motions in order to obtain the damage disclosure the Sun was required under Rule 26 to provide, the Court should, irrespective of whether it orders preclusion, impose monetary sanctions in the amount of attorneys' fees and expenses incurred in securing the Sun's compliance with the Rules and Judge Weksler's order. Rule 37(b)(2) authorizes sanctions "based on a party's failure to comply with a court order." *Varney*, 2013 WL 2299544, at *2. It dictates that, in addition to any other appropriate sanction, "unless the failure [to comply] was substantially justified or other circumstances make an award

of expenses unjust, the Court *must* order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure." *Id.* (citing Fed. R. Civ. P. 37(b)(2)(C)). Rule 37(c)(1) authorizes the same, stating that "in addition to or instead of [exclusion] sanction[s], the court may order payment of reasonable expenses, including attorney's fees caused by the failure." *Jackson v. United Artists Theatre Circuit, Inc.*, 278 F.R.D. 586, 594 (D. Nev. 2011). Here, again, the burden of showing substantial justification or special circumstances is on the Sun. *See id.* (under Rule 37(c)); *Hyde & Drath v. Baker*, 24 F.3d 1162, 1171 (9th Cir. 1994) (under Rule 37(b)).

Sanctions are amply warranted here. As detailed above, the Sun's failure to comply with Rule 26(a) and Judge Weksler's express orders—to "specifically identify each category of damages [it] currently seeks in this case, including its theory and computation of damages," "using information now available," and to "provide [Defendants with] the best information then available to it concerning [those] claims"—is without justification, let alone a substantial one. *See* ECF No. 275, at 16:13–19, 17:6–8. Judge Weksler was clear that the Sun was required to: (1) "disclos[e] and produce all documents bearing on the nature and extent of [its] damages" and (2) "specifically identify each category of damages . . . including its theory and computation of damages," "using the information now available to it"—which it did not do. *Id.*, at 16:15–19; *see also Frontline*, 263 F.R.D. at 569; *Carrington*, 2020 WL 3958251, at *2; *Brandywine*, 2012 WL 5504036, at *2.

Moreover, the circumstances surrounding the Sun's failures showcase why monetary sanctions are especially just here. The Sun's defiance of Judge Weksler's order was not because of some extenuating circumstance that rendered the Sun unable to fully comply or provided some legitimate basis to withhold the information reasonable available to it. Rather, the Sun's non-compliant disclosure is the latest feature in the Sun's now 14-month-long campaign to withhold damages information *already* available to it. *See e360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 643 (7th Cir. 2011) (when considering discovery sanctions "we weigh not only the straw that finally broke the camel's back, but all the straws that the recalcitrant party piled on over the course of the lawsuit").

21

Courts have imposed monetary sanctions in similar circumstances. *See, e.g., JTS, LLC v. Nokian Tyres PLC*, 2017 WL 68615, at *1–2 (D. Alaska Jan. 6, 2017) (awarding defendant its reasonable expenses because plaintiff's non-compliance defied an explicit Court order to serve "a proper computation of its damages, including any supporting documentation" and plaintiff's justifications—that its prior damages disclosure sufficed and plaintiff's counsel was unavailable due to a family emergency—were unavailing); *Kramer v. Am. Bank & Tr. Co.*, 2016 WL 1238172, at *3 (N.D. Ill. Mar. 30, 2016) (imposing monetary sanctions for failure to comply with a court order requiring a rule-compliant damages disclosure because plaintiffs' disobedience of the court order was unjustified, plaintiffs had still not identified the documents supporting the damages claimed, and plaintiffs' non-compliance took up considerable "time, money, and resources" from defendants, who had to seek court order to compel plaintiffs to provide and supplement their damages disclosures); *Marine Depot, Int'l, Inc. v. James River Grp., Inc.*, 2020 WL 7864100, at *3 (S.D. Fla. Dec. 30, 2020) (similar).[14]

## VI.   Conclusion.

To ameliorate the prejudice imposed on Defendants by the Sun's blatant disregard for its mandatory damages disclosure obligations under Rule 26(a)(1)(A)(iii) and Judge Weksler's order expressly requiring disclosure of all damages information and documents reasonably available to it, Defendants respectfully request an order precluding the Sun from relying on any losses, computations, damage theories or documents not disclosed in its most recent disclosure (i.e., the Twelfth Supplemental Disclosure). In the alternative, the Court should order the Sun to produce a

---

[14] *See also Varney*, 2013 WL 2299544, at *4 (imposing monetary sanctions jointly and severally on plaintiff and its counsel under Rule 37(b)(2) for failure to comply with an order directing plaintiff to produce medical records because "counsel has been woefully dilatory in his responsibilities as an officer of the court; his client has also failed to comply with his obligations as a party to this lawsuit"); *Jackson*, 278 F.R.D. at 595 (imposing monetary sanctions, in lieu of exclusion, under Rule 37(c) for "failure to provide a computation of damages prior to the close of discovery" in the amount of defendant's "reasonable attorney's fees and costs in pursuing the motion for sanctions relating to Plaintiffs' failure to comply with Rule 26(a)(1)(A)(iii)"); *CCR/AG Showcase Phase I Owner, L.L.C. v. United Artists Theatre Circuit, Inc.*, 2010 WL 1947016, at *11 (D. Nev. May 13, 2010) (similar).

compliant disclosure within seven days. Irrespective of the relief elected, the Court should award Defendants' attorneys' fees in connection with this motion.

Dated:   February 11, 2020                    KEMP JONES LLP

By:   */s/ Michael Gayan*

J. RANDALL JONES, ESQ., SBN 1927
MICHAEL J. GAYAN, ESQ., SBN 11135
MONA KAVEH, ESQ., SBN 11825
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada  89169

RICHARD L. STONE, ESQ. (*pro hac vice*)
DAVID R. SINGER, ESQ. (*pro hac vice*)
AMY M. GALLEGOS, ESQ. (*pro hac vice*)
JENNER & BLOCK LLP
633 West 5th Street, Suite 3600
Los Angeles, California  90071

*Attorneys for Defendants/Counterclaimant*

1

## **PROOF OF SERVICE**

2      I hereby certify that on the 11th day of February, 2021, I served a true and correct copy of

3 the foregoing **DEFENDANTS' MOTION FOR SANCTIONS DUE TO THE SUN'S NON-**

4 **COMPLIANT DAMAGES DISCLOSURE IN VIOLATION OF THE COURT'S ORDER**

5 **(ECF NO. 275)** via the United States District Court's CM/ECF electronic filing system to all

6 parties on the e-service list.

7
        E. Leif Reid, Bar No. 5750
8        Marla Hudgens, Bar No. 11098
        Kristen L. Martini, Bar No. 11272
9        Nicole Scott, Bar No. 13757
        LEWIS ROCA ROTHGERBER CHRISTIE LLP
10       One East Liberty Street, Suite 300
        Reno, Nevada 89501
11
12       Joseph M. Alioto, *Pro Hac Vice*
        ALIOTO LAW FIRM
13       One Sansome Street, 35th Floor
        San Francisco, California 94104
14
15       James J. Pisanelli, Bar No. 4027
        Todd L. Bice, Bar No. 4534
16       Jordan T. Smith, Bar No. 12097
        PISANELLI BICE PLLC
17       400 South 7th Street, Suite 300
        Las Vegas, Nevada 89101
18
19       *Attorneys for Plaintiff/Counterclaim Defendants*

20

21                              /s/ Mona Kaveh
                            An employee of Kemp Jones LLP
22

23

24

25

26

27

28

24

## INDEX OF EXHIBITS

| Exhibit | Description |
|---------|-------------|
| A | Declaration of Michael J. Gayan in support of Defendants' Motion for Sanctions due to the Sun's Non-Compliant Damages Disclosure in Violation of the Court's Order |
| B | Plaintiff's Ninth Supplement to Initial Disclosures Pursuant to FRCP 26(e), dated December 31, 2020 |
| C | Plaintiff's Tenth Supplement to Initial Disclosures Pursuant to FRCP 26(e), dated January 14, 202 |
| D | Plaintiff's Eleventh Supplement to Initial Disclosures Pursuant to FRCP 26(e), dated January 20, 2021. |
| E | Plaintiff's Twelfth Supplement to Initial Disclosures Pursuant to FRCP 26(e), dated January 26, 2021 |
| F | Cover Pages of Six Legal Invoices Plaintiff's Produced on December 31, 2020 in Support of its Damages Claims for Attorneys' Fees [FILED UNDER SEAL] |
| G | Letter Exchange regarding Documents Produced by Plaintiff in Support of its Damages Disclosure [FILED UNDER SEAL] |