J. RANDALL JONES, ESQ., SBN 1927
r.jones@kempjones.com
MICHAEL J. GAYAN, ESQ., SBN 11135
m.gayan@kempjones.com
MONA KAVEH, ESQ., SBN 11825
m.kaveh@kempjones.com
KEMP JONES LLP
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169
Telephone: (702) 385-6000

RICHARD L. STONE, ESQ. (*pro hac vice*)
rstone@jenner.com
DAVID R. SINGER, ESQ. (*pro hac vice*)
dsinger@jenner.com
AMY M. GALLEGOS, ESQ. (*pro hac vice*)
agallegos@jenner.com
JENNER & BLOCK LLP
633 West 5th Street, Suite 3600
Los Angeles, California 90071
Telephone: (213) 239-5100

*Attorneys for Defendants/Counterclaimant*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| LAS VEGAS SUN, INC., a Nevada corporation,<br><br>        Plaintiff,<br><br>v.<br><br>SHELDON ADELSON, an individual and as the alter ego of News+Media Capital Group LLC and as the alter ego of Las Vegas Review-Journal, Inc.; PATRICK DUMONT, an individual; NEWS+MEDIA CAPITAL GROUP LLC, a Delaware limited liability company; LAS VEGAS REVIEW-JOURNAL, INC., a Delaware corporation; and DOES, I-X, inclusive,<br><br>        Defendants. | Case No.: 2:19-cv-1667-GMN-VCF<br><br>**DEFENDANTS' LIMITED OPPOSITION TO PLAINTIFF'S MOTION FOR SUBSTITUION** |

1  LAS VEGAS REVIEW-JOURNAL, INC.,
2  a Delaware corporation,

3              Counterclaimant,

   v.
4
   LAS VEGAS SUN, INC., a Nevada
5  corporation; BRIAN GREENSPUN, an
   individual and as the alter ego of Las
6  Vegas Sun, Inc.; GREENSPUN MEDIA
   GROUP, LLC, a Nevada limited liability
7  company, as the alter ego of Las Vegas
   Sun, Inc.,
8
               Counterclaim Defendants.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **I.    <u>Introduction</u>**

2          Defendants do not dispute the general survivability of the Sun's Sherman Act claims

3    against Defendant Adelson or the substitution of Dr. Miriam Adelson, as Special Administrator

4    of the Estate of Sheldon G. Adelson. However, Defendants oppose the Motion with respect to the

5    survivability of the statutory trebling of damages and fee-shifting because those damages are

6    penal rather than remedial. The Ninth Circuit has never addressed the survivability of the antitrust

7    penalties under Rule 25(a) with respect to a deceased defendant. The well-settled federal common

8    law extinguishes, regardless of the claim type, any penal or punitive damages when a defendant

9    passes away. The *Hicks* case cited in the Motion involved the general survivability of Sherman

10   Act claims with respect to a deceased *plaintiff* but did not address the survivability of the *punitive*

11   portion of antitrust damages (*i.e.*, two thirds of trebled damages and fee-shifting) as to a deceased

12   *defendant*, which raises materially different legal and policy issues. Thus, *Hicks* does not control

13   the outcome of the Sun's Rule 25(a) request.

14         Under federal common law, damages intended to punish the defendant rather than

15   compensate the plaintiff do not survive the defendant's passing. The Ninth Circuit has held that

16   the enhanced damages available under the Sherman Act are to penalize the defendant rather than

17   to compensate the plaintiff for its actual losses. *See, e.g.*, *Kline v. Coldwell, Banker & Co.*, 508

18   F.2d 226, 235 (9th Cir. 1974) ("The trebling of damages in [Sherman Act] cases is a statutory

19   punitive measure."). Given this legal foundation, there is no question the Ninth Circuit would

20   follow its prior decisions and reach the conclusion reached by other courts: only the plaintiff's

21   actual damages survive as against a deceased defendant's estate. The enhanced antitrust damages,

22   including two thirds of trebled damages and fee-shifting, do not survive.

23         The Sun's lone state law claim requires the same result under Nevada law. Nevada's

24   survival statute, NRS 41.100, is consistent with federal common law in that it extinguishes all

25   claims for punitive and exemplary damages upon a defendant's death. Application of the Nevada

26   Supreme Court's test for determining whether statutory damages are remedial or penal, while less

27   used than its federal counterpart, ends at the same conclusion. The NUTPA's enhanced damages,

28

1

1  trebling of actual damages and fee-shifting, exist to penalize the defendant and, thus, do not

2  survive the defendant's death.

3  **II.**   **Legal Standard**

4    **A.   Courts May Not Order Substitution for Extinguished Claims or Damages.**

5    Under Rule 25(a), the court may order substitution of the proper party "[i]f the party dies

6  and the claim is not extinguished[.]" FED. R. CIV. P. 25(a). Federal law governs the survivability

7  of federal law claims, and state law controls the survivability of state law claims. *See Official*

8  *Comm. of Unsecured Creditors of Exeter Holdings, Ltd. v. Haltman*, 2017 WL 9485707, at *3

9  (E.D.N.Y. Aug. 3, 2017). Under federal law, the court looks to whether a "specific federal

10  statutory directive" exists and, if no such mandate is evident, "the question of survival of a claim

11  is determined under federal common law." *Id.*; *see also Heikkila v. Barber*, 308 F.2d 558, 561

12  (9th Cir. 1962). Under state law, "the claim would survive the litigant's death if the applicable

13  state law creates a right of survival." *Haltman*, 2017 WL 9485707, at *3.

14

15    **B.   Under Federal Law, Only Remedial Damages Survive Against a Deceased Defendant.**

16    When the relevant law or statute lacks a survivability provision, "[a] claim survives the

17  death of a party where ***the relief sought*** is remedial and not penal in nature." *F.T.C. v. AMG*

18  *Servs., Inc.*, 2014 WL 2742872, at *2 (D. Nev. June 17, 2014) (citing *United States v. NEC*

19  *Corp.,* 11 F.3d 136, 137 (11th Cir. 1993)) (emphasis added). The Supreme Court long ago held

20  that statutory damages that do not compensate a plaintiff for her actual damages are penal and

21  abate by the defendant's death. *See Ex parte Schreiber*, 110 U.S. 76, 79 (1884) (holding statutory

22  damages for copyright infringement under Rev. Stat. § 4965 do not survive defendant's death).[1]

23  Courts have followed this directive by deciding the survivability question based on the specific

24  damages sought for each claim, which resulted in allowing compensatory damages to survive and

25  disallowing damages with a punitive function. *See, e.g.*, *Wheeler v. City of Santa Clara*, 894 F.3d

26

27  _____

28  [1] *See Bolles v. Outing Co.*, 77 F. 966, 966–67 (2d Cir. 1897) (quoting Rev. Stat. § 4965 in place at the time, which provides penal damages untethered to copyright holder's actual damages).

2

1046, 1056–57 (9th Cir. 2018) (differentiating survival analysis by damage type); *Johnson v. Wall*, 2021 WL 615306, at \*3–5 (W.D. Wa. Feb. 17, 2021) (same); *E.E.O.C. v. Timeless Invs., Inc.*, 734 F. Supp. 2d 1035, 1057 (E.D. Cal. 2010) (same); *Maakestead v. Mayo Clinic Arizona*, 2006 WL 2307417, at \*2 (D. Ariz. Aug. 9, 2006) (same); *Hanson v. Atlantic Research Corp.*, 2003 WL 430484, \*4 (E.D. Ark. Feb. 14, 2003); *Estwick v. U.S. Air Shuttle*, 950 F.Supp. 493, 498 (E.D.N.Y. 1996) (same); *Caraballo v. South Stevedoring, Inc.*, 932 F.Supp. 1462, 1466 (S.D. Fla. 1996) (same).

The Ninth Circuit has recognized that trying to determine whether a specific legal claim "is penal or remedial seems bound to result in the conclusion that . . . it is both." *Riggs v. Government Employees Financial Corp.*, 623 F.2d 68, 71 (9th Cir. 1980) (quoting *Epstein v. Shindler*, 200 F.Supp. 836, 837 (S.D.N.Y. 1961)). "The labels 'penal' and 'penalty' are often used in reference to civil actions in which neither the liability nor remedy imposed is strictly penal." *Bracken*, 219 F.R.D. at 483 (citing *Huntington v. Attrill,* 146 U.S. 657, 667 (1892); *Riggs*, 623 F.2d at 71; *United States v. Edwards,* 667 F.Supp. 1204, 1212 (W.D. Tenn. 1987)).[2] However, because the Ninth Circuit has already held that the enhanced antitrust damages are penal and intended to punish the defendant, this Court need not decide whether treble damages and fee-shifting are remedial or penal. *See infra*, Section III.A.2.

"The general rule is that actions for penalties do not survive the death of the defendant because a deceased defendant is beyond punishment. On the other hand, actions to recompense or compensate a plaintiff do survive the death of the defendant because his estate should compensate for the injury caused by the defendant." *Haynes v. R.H. Dyck, Inc.*, 2007 WL 3010574, at \*3 (E.D. Cal. Oct. 15, 2007) (citing *Bracken v. Harris & Zide, L.L.P.*, 219 F.R.D. 481, 483 (N.D. Cal. 2004) and *Derdiarian v. Futterman Corp.,* 223 F.Supp. 265, 296 (S.D.N.Y. 1963)).

---

[2] Due to this ambiguity, courts in the Ninth Circuit apply a three-factored test to help determine whether claims are remedial or punitive. *See Bracken*, 219 F.R.D. at 483–84; *see also Jim 72 Properties, LLC v. Montgomery Clearners*, 151 F.Supp.3d 1092, 1098 (C.D. Cal. 2015); *Berndt v. California Dep't of Corr.*, 2010 WL 5088220, at \*1 (N.D. Cal. Dec. 8, 2010).

1  **C.  Under Nevada Law, Only Remedial Damages Survive Against a Deceased Defendant.**

2

3     Nevada's statutory mandate regarding survivability distinguishes between a deceased

4  plaintiff and a deceased defendant. When a *plaintiff* passes away, all claims and damages,

5  "including any penalties or punitive and exemplary damages[,]" survive her passing. *See* NEV.

6  REV. STAT. §§ 41.100(1), 41.100(3) (providing for survivability of punitive and exemplary

7  damages for deceased plaintiff). However, when a *defendant* passes away, the courts may not

8  award "damages awardable under NRS 42.005 or 42.010 or other damages imposed primarily for

9  the sake of example or to punish the defendant." *Id.* at § 41.100(2).

10  **III.   Argument**

11     **A.   Ninth Circuit Law Provides that the Enhanced Antitrust Damages Exist to Punish and Deter Unlawful Conduct and, Thus, Do Not Survive as Against**

12          **Defendant Adelson's Estate.**

13     Defendants recognize that Ninth Circuit law provides for the general survivability of a

14  Sherman Act claim for actual damages. However, the Ninth Circuit has never addressed the

15  survivability of the statutorily enhanced antitrust damages (*i.e.*, trebled damages and fee-shifting)

16  available under the Sherman Act. In other words, the Ninth Circuit has never specifically held

17  that a Sherman Act plaintiff may recover more than its actual damages from a deceased

18  defendant's estate. The *Hicks* court certainly did not address that issue. Importantly, after *Hicks*,

19  the Ninth Circuit held that (1) antitrust damages are not purely remedial, *see U.S. v. Mackby*, 261

20  F.3d 821, 831 (9th Cir. 2001) (quoting *Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630,

21  639 (1981)); and (2) the enhanced antitrust damages exist to penalize the defendant rather than

22  compensate the plaintiff. *See, e.g.*, *Kline v. Coldwell, Banker & Co.*, 508 F.2d 226, 235 (9th Cir.

23  1974), *cert. denied*, 421 U. S. 963 (1975). Thus, federal common law prohibits the survival of the

24  punitive portions of the Sherman Act damages as against Defendant Adelson's estate.

25          ***1.   Hicks is Not Squarely on Point and Does Not Control the Outcome.***

26     The *Hicks* court held that a Sherman Act claim survives "the death of the injured party"

27  because the claim as a whole "is not an action to recover a penalty." *Hicks v. Bekins Moving &*

28  *Storage Co.*, 87 F.2d 583, 585 (9th Cir. 1937) (citing *Chattanooga Foundry & Pipe Works v.*

4

*Atlanta*, 203 U.S. 390, 397 (1906) (declining to apply penalty-related statute of limitation to Sherman Act claim)). In its brief analysis, the *Hicks* court did not consider or decide whether the statutorily enhanced antitrust damages are remedial or punitive or if those damage enhancements survive against a deceased defendant's estate.

Here, Defendants challenge the survivability of the punitive portions of the Sherman Act damages, specifically anything other than the Sun's actual damages, if any. In other words, Defendants contest the ability to treble any actual Sherman Act damages or permit fee-shifting as against Defendant Adelson's estate because those damages do not survive his passing.

### 2. Since Hicks, the Ninth Circuit has Held the Enhanced Sherman Act Damages are Punitive, Not Compensatory.

"The trebling of damages in [Sherman and Clayton Act] cases is a statutory punitive measure." *Kline v. Coldwell, Banker & Co.*, 508 F.2d 226, 235 (9th Cir. 1974), *cert. denied*, 421 U. S. 963 (1975). "The very idea of treble damages [for antitrust violations] reveals an intent to punish past, and to deter future, unlawful conduct, not to ameliorate the liability of wrongdoers." *Mackby*, 261 F.3d at 831 (quoting *Texas Indus., Inc.*, 451 U.S. at 639). The *Kline* court reiterated Judge Learned Hand's statement that, under the Sherman Act, "***two thirds of the recovery is not remedial and inevitably presupposes a punitive purpose.***" *Id.* (quoting *Lyons v. Westinghouse Electric Corp.*, 222 F.2d 184, 189 (2d Cir.), *cert. denied*, 350 U.S. 825 (1955)) (emphasis added); *see also Hoskins Coal & Dock Corp. v. Truax Traer Coal Co.*, 191 F.2d 912, 914 (7th Cir. 1951) (recognizing object of antitrust treble damages and fee-shifting "clearly to inflict punishment").[3] In *Lyons*, Judge Hand further explained that treble damages under the Sherman Act operate "like a qui tam action, except that the plaintiff keeps all the penalty, instead of sharing it with the sovereign." *Lyons*, 222 F.2d at 189. Decades after *Kline*, the Ninth Circuit reiterated Judge Hand's reasoning that "treble damages pursuant to antitrust statutes are not purely remedial." *U.S. v.*

---

[3] *See also Acme Precision Prods., Inc. v. American Alloys Corp.*, 347 F.Supp. 376, 380 (W.D. Mo. 1972), *rev'd on other grounds*, 484 F.2d 1237 (8th Cir. 1973) ("[t]rebling of damages against a violator of the antitrust laws is a punitive measure").

5

*Mackby*, 261 F.3d 821, 831 (9th Cir. 2001) (citing *Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 639 (1981)).

Based on the Ninth Circuit's clear reasoning and holdings that treble damages under the Sherman Act are one third remedial and two thirds punitive, only the compensatory portion of the Sun's Sherman Act claims survive as against Defendant Adelson's estate.

### 3. Courts Outside the Ninth Circuit Have Held the Enhanced, Punitive Antitrust Damages Do Not Survive Against a Deceased Defendant's Estate.

Nearly 100 years ago, the Second Circuit, after determining that Sherman Act claims are at least partially remedial and survive against a deceased defendant's estate, recognized "that the **measure of damages** against the personal representative of a deceased tort-feasor is not always the same as the amount which might have been recovered against the decedent." *Sullivan v. Associated Billposters & Distributors of United States & Canada*, 6 F.2d 1000, 1012 (2d Cir. 1925) (discussing "general rule" against non-survivability of punitive or exemplary damages and collecting cases) (emphasis added).[4]

Several other jurisdictions have adopted the *Sullivan* court's reasoning and held that antitrust treble damages and fee-shifting are penal and, therefore, do not survive against a deceased defendant's estate. Shortly after *Sullivan* was decided, one court analyzed the Sherman Act's legislative history and reached the same conclusion: that treble damages and fee-shifting were "purely penal and punitive" and, thus, did not survive against a deceased defendant's estate. *Haskell v. Perkins,* 28 F.2d 222, 223 (D.N.J. 1928). The *Haskell* court recounted the comments made by Senator Hoar, the Sherman Act's co-author,[5] about including "a section establishing a penalty, threefold damages. . . . which is purely penal and punitive." *Id.* The *Haskell* court recounted Senator Hoar's explanation that the fee-shifting provision was also purely penal and punitive. *Id.* Based on this clear legislative intent, after quoting the *Sullivan* decision, the *Haskell* court held that "[t]reble damages and attorney's fees, recoverable by injured party under Anti-

---

[4] The Sun cited *Sullivan* as support for the Motion. *See* ECF No. 380 at 3:5–9.

[5] *See* https://www.senate.gov/senators/FeaturedBios/Featured_Bio_Hoar.htm (last visited Apr. 16, 2021).

Trust Act, are imposed as punishment, and *do not survive death of wrongdoer*." *Id.* at 224 (emphasis added). Thus, the Sherman Act plaintiff's recovery against the deceased defendant's estate was "limited to the damages awarded him by the jury[.]" *Id.*

Similarly, the Fifth Circuit cited *Sullivan* when it held that a Sherman Act plaintiff may only recover its actual damages from a deceased defendant's estate. *See Rogers v. Douglas Tobacco Bd. of Trade,* 244 F.2d 471 (5th Cir. 1957). The Rogers court noted that "[c]ombinations in restraint of trade or tending to create or maintain a monopoly gave rise to causes of action at common law" and "public injury alone justifies the [statutory] threefold increase in damages." *Id.* at 483. The *Rogers* court then reasoned and held:

> The policy of the federal statute, we think, *requires the survival of the cause of action* **to the extent that actual damages may be recovered**. Trebling of the damages seems to us to be in the nature of a penalty for the public wrong, and ***we do not think that the personal representatives would be liable for more than actual damages.***

*Id.* (citing *Sullivan*, 6 F.2d at 1012) (emphasis added).[6]

More recently, a district court within the Southern District of New York reached the same conclusion and limited Sherman Act damages as against a deceased defendant's estate. *See Vandervelde v. Put & Call Brokers & Dealers Ass'n,* 344 F.Supp. 118, 156–57 (S.D.N.Y. 1972). The Sun curiously cites the *Vandervelde* court's earlier decision to permit substitution of the estate as support for the Motion. *See* ECF No. 380 at 3:13–15 (citing *Vandervelde* court's 1967 substitution decision). But the Sun fails to disclose the *Vandervelde* court's subsequent limitation of antitrust damages against the estate to "single damages" because treble damages are penal and do not survive the defendant's death. *Vandervelde*, 344 F.Supp. at 156–57 (citing, among others, *Rogers*, 244 F.2d at 483, and *Sullivan*, 6 F.2d at 1012).[7]

/ / /

/ / /

---

[6] Of note, the Sun cited *Rogers* as support for the Motion. *See* ECF No. 380 at 3:9–11.

[7] *See also Bowles v. Farmers National Bank of Lebanon, Ky.*, 147 F.2d 425 (6th Cir. 1945) (dismissing entire action under Emergency Price Control Act of 1942 after defendant passed away because statutory treble damages were penal and did not survive against the estate).

### 4.     The Sun's Cited Authorities Do Not Support the Survival of Enhanced Antitrust Damages as Against Defendant Adelson's Estate.

Other than the cases referenced above, the Sun cites additional cases that lend no support to the notion that the enhanced antitrust damages survive against Defendant Adelson's estate. *See* ECF No. 380 at 3:11–17. The *Banana Distributors* court held that its survivability ruling was "not intended to pass upon any other question as to ***the applicable rule of damages*** which will govern in the event that the liability of Werner's estate is affirmatively determined." 27 F.R.D. 403, 415 (S.D.N.Y. 1961) (citing *Rogers*, 244 F.2d at 483, and *Sullivan*, 6 F.2d at 1012) (emphasis added). Similarly, the *Lorain Journal* court declined to rule on "the degree of liability of the executors for damages, ***whether it be actual or treble***," and deferred that issue to the trial judge. 185 F.Supp. 808, 808 (N.D. Ohio 1957) (emphasis added).

### 5.     The Three-Factored Survivability Test Reaches the Same Result—the Punitive Portions of Sherman Act Damages Do Not Survive.

Contrary to the Sun's contention, the *Rivera* court did not adopt the *Huntington* test to determine claim survivability under federal common law. *See* ECF No. 380 at 4:4–9. Like the distinguishable *Chattanooga Foundry* case cited in the *Hicks* decision, the *Rivera* court used the *Huntington* test for determining the appropriate federal statute of limitation. *See Rivera v. Anaya*, 726 F.2d 564, 567–68 (9th Cir. 1984). The *Huntington* court addressed whether a statute was criminal or civil for purposes of comity and enforceability of a foreign judgment. *See* 146 U.S. 657, 673–74 (describing considerations for whether "statute of one state . . . is a penal law, in the international sense, so that it cannot be enforced in the courts of another state"). Neither *Rivera* nor *Huntington* involved the survivability of claims under Rule 25(a).

When determining the survivability of federal claims, specifically whether the claim is remedial or punitive, courts in the Ninth Circuit have applied the following three-factored test:

> (1) whether the purpose of the statute was to redress individual wrongs or more general wrongs to the public; (2) whether recovery under the statute runs to the harmed individual or to the public; and (3) whether the recovery authorized by the statute is wholly disproportionate to the harm suffered.

*Bracken*, 219 F.R.D. at 483–84; *Berndt*, 2010 WL 5088220, at *1 (N.D. Cal. Dec. 8, 2010) (citing *Murphy v. Household Finance Corp.,* 560 F.2d 206, 209 (6th Cir. 1977);[8] *Kilgo v. Bowman Transportation, Inc.,* 789 F.2d 859, 876 (11th Cir. 1986)). Although courts must consider all three factors, "the legislative intent behind the law is the dominant factor." *Jim 72 Properties, LLC*, 151 F.Supp.3d at 1098 (citing *Reiserer v. United States*, 479 F.3d 1160, 1165 (9th Cir. 2007)).

Here, the first and most important factor—whether the purpose of the statute protects private or public interests—shows the trebled damages (*i.e.*, the additional two thirds) serve a public and punitive function. "[T]he antitrust laws, including the Sherman Act, 'were enacted for the protection of *competition,* not *competitors*.'" *F.T.C. v. Qualcomm Inc.*, 969 F.3d 974, 993 (9t Cir. 2020) (quoting *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 488, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977)) (emphasis in original). To be unlawful, "a monopolist's act must have an anticompetitive effect—that is, it must harm the competitive *process* and thereby harm consumers." *Id.* at 990 (quoting *United States v. Microsoft Corp.*, 253 F.3d 34, 58 (D.C. Cir. 2001)) (emphasis in original). "In contrast, harm to one or more *competitors* will not suffice." *Id.* (quoting *Microsoft*, 253 F.3d at 58)) (emphasis in original). Thus, the Sherman Act's clear purpose is to protect the public, not individual competitors, through protecting the competitive process.

The second factor, whether the recovery runs to the plaintiff or the public, weighs in favor of finding a punitive purpose for the enhanced antitrust damages. As Judge Hand explained, the Sherman Act's treble damages operate "like a qui tam action, except that the plaintiff keeps all the penalty, instead of sharing it with the sovereign." *Lyons*, 222 F.2d at 189. Although the plaintiff retains the penalty portion of the enhanced antitrust damages, the law makes it clear that those enhanced damages penalize the defendant and benefit the public.

---

[8] The *Murphy* court recognized the "peculiar" context of the *Huntington* court's comments about identifying penal laws and, after analyzing "interpretations and applications of *Huntington* in later cases," created the three-factored test. *Murphy*, 560 F.2d at 209 (citing *Huntington*, 146 U.S. at 666–69; *Bowles v. Farmers Nat. Bank of Lebanon, Ky.*, 147 F.2d 425, 428 (6th Cir. 1977); *Porter v. Household Finance Corp. of Columbus*, 385 F.Supp. 336, 340–42 (S.D. Ohio 1974)). Although the analysis derives from *Huntington*, courts have crafted and used a less peculiar framework in determining whether a claim for damages is remedial or penal.

1      Finally, it should be beyond dispute that the penalties available to a successful Sherman

2  Act plaintiff—trebling of damages and fee-shifting—are disproportionate to the actual damages.

3      Application of the three-factored *Murphy* test unsurprisingly supports the Ninth Circuit's

4  conclusion that the enhanced antitrust damages (*i.e.*, two thirds of treble damages and fee-shifting)

5  exist to penalize and punish the defendant. Therefore, under controlling Ninth Circuit precedent,

6  this Court should not allow these punitive portions of the statutory antitrust damages to survive

7  Defendant Adelson's death as against his estate.

8
       **B.      Under Nevada Law, the NUTPA's Enhanced Damages are Penal and Do Not**
9              **Survive.**

10     The Nevada Unfair Trade Practices Act ("NUTPA") allows an injured party to recover

11  trebled damages and reasonable attorney fees and costs for intentional acts that restrain trade. *See*

12  Nᴇᴠ. Rᴇᴠ. Sᴛᴀᴛ. § 598A.210(2). The Nevada Supreme Court has stated that, in general, "it is

13  important to realize that treble damages have a compensatory side, serving remedial purposes in

14  addition to punitive objectives." *Webb v. Shull*, 128 Nev. 85, 90, 270 P.3d 1266, 1269 (2012)

15  (quoting *Cook County v. United States ex rel. Chandler,* 538 U.S. 119, 130 (2003)). The Nevada

16  Supreme Court has also recognized that "[t]reble damages . . . contain both punitive and remedial

17  elements. Despite the hybrid nature of treble damages, at least one-third of treble damages is

18  remedial; the jury finds those damages necessary to compensate the victim for his loss." *Id.*

19  (quoting Robert S. Murphy, *Arizona RICO, Treble Damages, and Punitive Damages: Which One*

20  *Does Not Belong?,* 22 Ariz. St. L.J. 299, 302 (1990)).

21     Under Nevada law, courts must look to the language of the statute to determine whether

22  treble damages are punitive or remedial. *See id.* The Nevada Supreme Court held that a statutory

23  scheme lacking any direct or indirect reference to a penalty or intentional conduct involved treble

24  damages that were remedial rather than penal. *See id.* at 91–92, 270 P.3d at 1270–71 (interpreting

25  NRS 113.150(4)). Thus, statutory damages are penal rather than remedial when the statutory

26  scheme contains direct references to penalties and/or intentional conduct.

27     Here, the Sun's NUTPA claim relates to monopolization and attempted monopolization

28  because those are the only federal claims the Sun has left. *See* ECF No. 380 at 1:24–27; ECF No.

1 at ¶¶ 153–57 (relying on federal antitrust claims); *see also* NEV. REV. STAT. §§ 598A.060(1)(e). The Sun's monopolization claim requires proof of the "***willful*** acquisition or maintenance" of monopoly power. *See F.T.C. v. Qualcomm Inc*., 969 F.3d 974, 990 (9th Cir. 2020) (emphasis added). The Sun's attempted monopolization claim requires proof of a "***specific intent*** to control prices or destroy competition," not just an intent to harm a competitor. *McGlinchy v. Shell Chem. Co.,* 845 F.2d 802, 811 (9th Cir. 1988) (emphasis added); *see D & R Distrib. Co. v. Chambers Corp.*, 608 F. Supp. 1290, 1299 (E.D. Cal. 1984) ("A specific intent to destroy competition or build monopoly is essential to liability.") (citing *Knutson v. Daily Review, Inc.,* 548 F.2d 795, 813 (9th Cir. 1976)); *see also Ocean State Physicians Health Plan v. Blue Cross & Blue Shield of R.I.*, 883 F.2d 1101, 1113 (1st Cir. 1989) (holding an intent "to crush a competitor, standing alone, is insufficient to make out a violation of the antitrust laws"). Further, the NUTPA statutory scheme is replete with references to penalties, including civil and criminal penalties. *See, e.g.*, NEV. REV. STAT. §§ 598A.070, 598A.090, 598A.170, 598A.180.

Under *Webb*, the specific intent required to prove the Sun's NUTPA claim and the statute's repeated references to penalties make it clear that the purpose of the enhanced damages is to penalize a defendant's intentional misconduct. Therefore, pursuant to NRS 41.100(2), the Sun's NUTPA claim and actual damages, if any, are remedial and survive Mr. Adelson's passing but the enhanced damages (*i.e.*, trebled damages and fee-shifting) do not survive and may not be maintained against his estate.

/ / /

/ / /

/ / /

/ / /

/ / /

11

IV.     **<u>Conclusion</u>**

The Sun's Motion for Substitution should be denied in part as to the statutory trebling of damages and fee-shifting because those claimed damages are punitive in nature and, thus, do not survive Defendant Adelson's passing. The Sun may not recover more than its actual damages, if any, from Defendant Adelson's estate.

Dated: April 19, 2021

KEMP JONES, LLP

*/s/ Michael Gayan*

J. RANDALL JONES, ESQ., SBN 1927
MICHAEL J. GAYAN, ESQ., SBN 11135
MONA KAVEH, ESQ., SBN 11825
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169

RICHARD L. STONE, ESQ. (*pro hac vice*)
DAVID R. SINGER, ESQ. (*pro hac vice*)
AMY M. GALLEGOS, ESQ. (*pro hac vice*)
JENNER & BLOCK LLP
633 West 5th Street, Suite 3600
Los Angeles, California 90071

*Attorneys for Defendants/Counterclaimant*

1

## PROOF OF SERVICE

2      I hereby certify that on the 19th day of April, 2021, I served a true and correct copy of the

3  foregoing **DEFENDANTS' LIMITED OPPOSITION TO PLAINTIFF'S MOTION FOR**

4  **SUBSTITUION** via the United States District Court's CM/ECF electronic filing system to all

5  parties on the e-service list.

6      E. Leif Reid, Bar No. 5750
       Marla Hudgens, Bar No. 11098
7      Kristen L. Martini, Bar No. 11272
       Nicole Scott, Bar No. 13757
8      LEWIS ROCA ROTHGERBER CHRISTIE LLP
       One East Liberty Street, Suite 300
9      Reno, Nevada 89501

10

11     Joseph M. Alioto, *Pro Hac Vice*
       ALIOTO LAW FIRM
12     One Sansome Street, 35th Floor
       San Francisco, California 94104

13

14     James J. Pisanelli, Bar No. 4027
       Todd L. Bice, Bar No. 4534
15     Jordan T. Smith, Bar No. 12097
       PISANELLI BICE PLLC
16     400 South 7th Street, Suite 300
       Las Vegas, Nevada 89101

17

18     *Attorneys for Plaintiff/Counterclaim Defendants*

19

20                                    */s/ Ali Augustine*
                                      An employee of Kemp Jones, LLP

21

22

23

24

25

26

27

28

13