E. LEIF REID, Nevada Bar No. 5750
KRISTEN L. MARTINI, Nevada Bar No. 11272
MARLA J. HUDGENS, Nevada Bar No. 11098
NICOLE SCOTT, Nevada Bar No. 13757
LEWIS ROCA ROTHGERBER CHRISTIE LLP
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169
Tel: 702.949.8200
Fax: 702.949.8398
One East Liberty Street, Suite 300
Reno, Nevada 89501
Tel: 775.823.2900
Fax: 775.823.2929
Email: lreid@lewisroca.com
kmartini@lewisroca.com
mhudgens@lewisroca.com
nscott@lewisroca.com

JOSEPH M. ALIOTO, *PRO HAC VICE*
ALIOTO LAW FIRM
One Sansome Street, 35th Floor
San Francisco, California 94104
Tel: 415.434.8900
Fax: 415.434.9200
Email: jmalioto@aliotolaw.com

JAMES J. PISANELLI, Nevada Bar No. 4027
TODD L. BICE, Nevada Bar No. 4534
JORDAN T. SMITH, Nevada Bar No. 12097
PISANELLI BICE PLLC
400 South 7th Street, Suite 300
Las Vegas, Nevada 89101
Telephone: 702.214.2100
Email: JJP@pisanellibice.com
TLB@pisanellibice.com
JTS@pisanellibice.com

*Attorneys for Plaintiff/Counterdefendants*

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

LAS VEGAS SUN, INC., a Nevada corporation,

Plaintiff,

v.

SHELDON ADELSON, an individual, and as the alter ego of News+Media Capital Group LLC, Las Vegas Review-Journal, Inc., and Interface Operations LLC dba Adfam; PATRICK DUMONT, an individual, and as alter ego of Las Vegas Review-Journal, Inc., News+Media Capital Group, LLC, and Interface Operations LLC dba Adfam; NEWS+MEDIA CAPITAL GROUP LLC, a Delaware limited liability company; LAS VEGAS REVIEW-JOURNAL, INC., a Delaware corporation; INTERFACE OPERATIONS LLC DBA ADFAM, a Delaware limited liability company

Case No. 2:19-cv-01667-ART-VCF

**COUNTERDEFENDANT GREENSPUN MEDIA GROUP, LLC'S RESPONSE TO DEFENDANTS' AND COUNTERCLAIMANT'S OBJECTION TO SPECIAL MASTER'S ORDER RE COUNTERDEFENDANT GREENSPUN MEDIA GROUP'S MOTION FOR PROTECTIVE ORDER REGARDING DEFENDANTS' FRCP 30(B)(6) DEPOSITION (ECF NO. 693) [ECF NO. 713]**

and as alter ego of Las Vegas Review-Journal, Inc., and News+Media Capital Group, LLC; and DOES, I-X, inclusive,

Defendants.

LAS VEGAS REVIEW-JOURNAL, INC., a Delaware corporation,

Counterclaimant,

v.

LAS VEGAS SUN, INC. a Nevada corporation; BRIAN GREENSPUN, an individual and as the alter ego of Las Vegas Sun, Inc.; GREENSPUN MEDIA GROUP, LLC, a Nevada limited liability company, as the alter ego of Las Vegas Sun, Inc.,

Counterclaim Defendants.

## I. INTRODUCTION

The RJ's Objection is the latest of its litany of demands to delve into irrelevant subject matters that, as the Special Master put it, "have been vetted repeatedly throughout these proceedings and are exhausted."[1] After the RJ served GMG with a list of 40 topics for a Rule 30(b)(6) deposition ("Topics"), GMG made significant compromises and agreed to provide a witness to testify, in whole or in part, for 31 of the Topics. GMG moved for a protective order as to 11 Topics, some only in part, because the RJ sought information that had already been deemed nondiscoverable by the Special Master, this Court, or both, or otherwise sought irrelevant information that was disproportional to this case. The Special Master correctly granted GMG's motion for a protective order in its entirety, forbidding discovery into 9 of the Topics and adopting GMG's proposed limitations for the remaining 2 Topics. The RJ's meritless Objection now follows.

For Topics 4 and 33, the RJ demands testimony about the Greenspun Family Global Agreement ("Family Agreement"), which memorialized the redistribution of the Greenspun family's assets in 2014 among the family members, and resulted in Mr. Greenspun's primary ownership of the Sun and GMG. Both this Court and the Special Master have held the Family Agreement is irrelevant **four** different times, including after the Special Master's *in camera* review of the unredacted Family Agreement. In the Special Master's words, "[t]he fact that the RJ now seeks such information from a different source does not call for a different result."[2]

Along the same vein, in Topics 28 through 31, the RJ seeks testimony about GMG's *non-Sun* publications' operations, which have been properly deemed irrelevant now **twice**. The RJ is not entitled to testimony about GMG's non-Sun operations because these operations are not relevant to the Sun's relevant market definition, being local daily print newspapers in Clark County, or the barriers to entry in that market. GMG's non-Sun publications are not newspapers and do not compete with the Newspapers. The Special Master agreed back in November 2021 and the RJ never objected to his Order.[3] But when GMG moved for its protective order, the RJ insisted that the Sun was mischaracterizing the Court's November 2021 ruling, and that it did not apply. The Special

---

1 ECF No. 713 at 2.
2 ECF No. 565 at 4.
3 ECF No. 505.

Master disagreed, holding that his own order was on-point, and determining that the issue had been exhausted—GMG's non-Sun publications are irrelevant.

For Topic 24, the RJ parroted its argument that the Sun has mischaracterized the Court's past orders (to which the RJ never objected), and continued to seek testimony about the lasvegassun.com brand. The RJ contends that the Sun's requested damages for harm to its brand must include lasvegassun.com. The Sun, however, has made crystal clear that it does not and has never sought damages for harm to lasvegassun.com. Since the Sun does not seek damages for harm to lasvegassun.com, the Special Master has issued two separate and well-founded orders concluding that this information is irrelevant to the claims and defenses in this action.

Finally, through Topics 21 and 25, the RJ seeks testimony about the Sun's shareholder distributions from decades ago (well before the RJ's current ownership), the disposition of settlement proceeds obtained from Stephens Media in 2016, and the disposition of the 2019 judgment against the Review-Journal and Defendant News+Media. The RJ argued that all of the foregoing was relevant to the RJ's claim that Brian Greenspun and GMG are the alter egos of Sun. The Special Master rightfully disagreed. Specifically, for Topic 21, the $25 million shareholder distribution is irrelevant because it was made long before Brian Greenspun or GMG came to be, respectively, the primary owner and parent company of the Sun. For Topic 25, the Sun's only source of income is the Annual Profit Payments from the Review-Journal; therefore, the only undercapitalization relevant to the RJ's alter ego inquiry is the undercapitalization caused by the RJ itself. Also for Topic 25, both the Special Master and this Court have repeatedly and properly held the Sun's disputes with prior owners of the Review-Journal, including settlement proceeds, are irrelevant.

The RJ does not provide any new arguments or other credible reasons why this Court should reverse relevancy determinations that, in some cases, have been made four times. It cannot keep requesting the same information and hope for a different result. The RJ's Objection should be overruled.[4]

[4] The Special Master also precluded the RJ from obtaining testimony about GMG's capitalization (Topic 8) and found that GMG's proposal to provide limited testimony concerning the allocation

## II. PROCEDURAL HISTORY

Given the breadth and diversity of the RJ's Rule 30(b)(6) Topics to GMG, the factual background for each Topic is discussed below in relation to the individual Topics. A brief summary of the procedural background follows.

### A. The RJ's Overbroad and Irrelevant Rule 30(b)(6) Topics Force GMG to Seek a Protective Order

On March 31, 2022, the RJ served 40 Topics, including 6 sub-parts, for the Rule 30(b)(6) deposition of GMG. ECF No. 693-2. The RJ sought testimony on exceedingly extensive subjects, ranging from GMG's organizational and leadership structure and chain of command, to GMG's prior ownership and legal disputes, to GMG's and the Sun's financials and accounting, to GMG's operational, editorial, governance, control, and oversight over all GMG publications, valuations of the Sun and/or the Review-Journal, and so on. *See generally id.* GMG objected to several of the RJ's Topics, stressing that the burden imposed by the broad swath of Topics was untenable, and specifically objected to a volume of Topics that were vague, overbroad, prematurely sought expert testimony, irrelevant, foreclosed upon by this Court's prior rulings, and/or sought testimony from the wrong deponent. ECF Nos. 693-3, 693-4 at 1-3. After extensive meet-and-confer efforts, the parties were able to resolve the majority of the objectionable Topics; however, at the conclusion of the parties' efforts, 11 Topics remained in dispute: Topics 4, 8, 13, 21, 24-25, 28-29, 30-31, 33. *See* ECF Nos. 693-4, 693-5, 693-6, 693-7, 693-8, 693-9, 693-10 & 693-11.

On May 27, 2022, GMG moved for a protective order seeking to limit or altogether preclude 11 of the 40 Topics for GMG's Rule 30(b)(6) deposition. *See* ECF No. 693. The Sun explained that eight of the Topics (Topics 4 and 24, the second subject in Topic 25, and Topics 30, 31, 33, 28, and 29) concerned subject matters that this Court already held to be irrelevant or disproportional to the needs of the case. *Id.* GMG also explained that the remainder of the Topics (8, 13, 21, and the first subject in 25) also sought irrelevant and disproportional information. *Id.* In opposition to the Sun's motion, the RJ repeatedly argued that the Sun "mischaracterized" the Special Master's prior orders

---

of revenue for the printed Sun was appropriate (Topic 13). ECF No. 713 at 2-3. The RJ does not contest this part of the Special Master's order. *See* ECF No. 716.

and made cursory relevance arguments. *See* ECF No. 704.

**B. The Special Master Issues the GMG Protective Order**

On July 6, 2022, the parties appeared before the Special Master for a hearing on GMG's motion for a protective order. **Ex. 2**. At the outset of the hearing, the Special Master recognized that eight of the RJ's Topics were the subject of prior orders and there was no need to "reargue those [Topics], because we've already heard argument on them." *Id.* at 7:5-12. The RJ argued with this instruction and asserted that the Topics were "completely unrelated to the Court's prior orders." *Id.* at 10:9-17. The Special Master allowed the RJ to rehash all of its prior arguments during the hearing. *See generally id.* After again hearing all the exact same arguments the RJ has made time and time again, the Special Master issued a protective order ("Protective Order"), granting GMG's motion in its entirety. *See* ECF No. 713.

The Special Master agreed with the Sun that eight of the RJ's Topics were already the subject of prior Court orders, and so he held:

> Eight of those topics, or a portion thereof, (Topics 4, 24, the second subject of Topic 25, and Topics 28, 29, 30, 31, and 33), have been the subjects of prior Orders deeming them to be non-discoverable as irrelevant and disproportionate to this case, and/or facially overbroad and unduly burdensome. Those Orders were entered by a Judge of this Court, or by the undersigned Special Master and affirmed by a Judge.

*Id.* at 2.

As for the remaining Topics, the Special Master appropriately found that the capitalization of GMG (Topic 8), the disposition of the Sun's judgment payment from the Review-Journal (the first subject of Topic 25), and the Sun's shareholder distributions (Topic 21) were all <u>irrelevant</u>. *Id.* at 3. The Special Master also limited Topic 13 to the Sun's proposed compromise to produce a witness to testify as to "how it allocates revenue generated by the printed Sun for the timeframe of January 1, 2014, until present." ECF No. 713 at 3. The RJ then filed its baseless Objection, objecting as to Topics 4, 21, 24, 25, 28, 29, 30, and 31, but not 8 and 13. *See* ECF No. 713.

/ /

/ /

## III. APPLICABLE STANDARDS

Contrary to the RJ's assertions, courts may enter protective orders to limit Rule 30(b)(6) depositions where a party seeks irrelevant or overbroad information or imposes an undue burden on the deponent party. *See, e.g.*, *Matthys v. Barrick Gold of N. Am., Inc.*, 2021 WL 3604834, at *2 (D. Nev. Aug. 13, 2021) (holding that "the deposition notice appears to have been drafted to cover nearly every conceivable facet of this litigation. This is improper, overly burdensome, and clearly disproportional to the needs of the case"); *Bank of Am., N.A. v. SFR Invs. Pool 1 LLC*, 2016 WL 2843802, at *4 (D. Nev. May 12, 2016) (issuing an order "preclud[ing] the Rule 30(b)(6) notice as drafted because it is not reasonably tailored to the needs of the case and is unnecessarily duplicative"); *see also Wieland v. Bd. of Regents of Nevada Sys. of Higher Educ.*, 2021 WL 4443683, at *3 (D. Nev. Sept. 28, 2021) (affirming order limiting Rule 30(b)(6) topics because "despite [the] topics' relevance, if they are too numerous or broad, they may be 'unworkable'").

Rule 30(b)(6) "does not extend to burdening the responding party with production and preparation of a witness on every facet of the litigation." *Wieland*, 2021 WL 4443683, at *2 (quotation and citation omitted); *see also DarbeeVision, Inc. v. C&A Mktg., Inc.*, 2019 WL 2902697, at *8 (C.D. Cal. Jan. 28, 2019) ("[I]t is simply impractical to expect Rule 30(b)(6) witnesses to know the intimate details of everything.") (quotation and citation omitted). "While a corporation must make a good faith effort to prepare a Rule 30(b)(6) witness to 'fully and unevasively answer questions about the designated subject matter . . . that task becomes less realistic and increasingly impossible as the number and breadth of noticed subject areas expand." *Pongsai v. Am. Express Co*., 2020 WL 5356711, at *2 (C.D. Cal. June 29, 2020) (quoting *Apple, Inc. v. Samsung Elec. Co., Ltd.*, 2012 WL 1511901, at *2 (N.D. Cal. Jan. 27, 2012)). Accordingly, "[c]ourts have not hesitated to issue protective orders when corporations are asked to respond to overly broad or unfocused Rule 30(b)(6) deposition notices." *Wieland*, 2021 WL 4443683, at *2 (quotation marks and citation omitted).

The pleadings guide the relevant subject matters for discovery. *See Davidson v. Apple, Inc.*, 2018 WL 6169349, at *6 (N.D. Cal. Nov. 26, 2018) (denying discovery because it "[was] not directly related to the claims and defenses actually in dispute," rendering the requested documents

too attenuated to be relevant under Rule 26); *Hayes v. Superior Court of California*, 2010 WL 11549744, at *2 (C.D. Cal. Nov. 3, 2010) (denying access to discovery where plaintiffs' relevancy arguments were "grossly attenuated"); *Hajek v. Kumho Tire Co. Inc.*, 2010 WL 503044, at *5 (D. Neb. Feb. 8, 2010) (finding that requests were overbroad when they were not tethered to the plaintiff's actual claims and explaining, "[t]he fact that a plaintiff's complaint alleges an expansive theory of liability does not necessarily justify expansive discovery. <u>Discovery must be relevant to the plaintiff's actual claims or defenses</u>") (emphasis added).

## IV.   THE RJ CANNOT ESTABLISH THAT IT SEEKS RELEVANT OR PROPORTIONAL TESTIMONY

The RJ's demands for irrelevant information fall into four categories: (a) the Family Agreement, which memorialized the redistribution of the Greenspun family's assets in 2014 and has been held irrelevant <u>four</u> times (Topics 4 and 33); (b) the operations of GMG's non-Sun publications, which have been deemed irrelevant <u>twice</u> (Topics 28-31); (c) damages to the lasvegassun.com's brand that the Court has found irrelevant <u>twice</u> (Topic 24); and (d) the Sun's shareholder distributions from decades ago, the disposition of settlement proceeds obtained from Stephens Media, which has been deemed irrelevant <u>twice</u>, and the disposition of the 2019 judgment against the Review-Journal (Topics 21 and 25). The RJ should not be permitted to circumvent this Court's prior rulings, the majority of which the RJ did not object to, and force GMG to prepare a witness to testify about extensive subjects already appropriately deemed irrelevant or disproportional to this case, and rightly so. The Special Master's Protective Order was correct and should be enforced. The RJ's Objection should be overruled.

### A.   <u>The Greenspun Family Global Agreement Has Been Deemed Irrelevant *Four* Times (Topics 4 & 33) and Rightly So</u>

The RJ demands that GMG prepare a witness to testify about the Family Agreement for Topic 4, which seeks testimony about the "negotiation and terms of the Greenspun Family Global Agreement," and for Topic 33, which seeks testimony about "any sale of the printed Sun individually or together with other assets." ECF No. 693-2 at 7. But the Special Master and

Magistrate correctly and repeatedly held that the Family Agreement is irrelevant.[5] *See* ECF No. 479; ECF No. 565; ECF No. 619; ECF No. 713. Even though the Court has now issued four orders finding the Family Agreement irrelevant after the Special Master's *in camera* review of the unredacted Family Agreement, the RJ will not take "no" for an answer. The RJ's Objection, like its preceding objection on the exact same issue, should be overruled because the Family Agreement is not relevant.

The RJ first sought this information in a third-party subpoena to The Greenspun Corporation ("TGC"). ECF No. 479. The Sun and TGC moved for a protective order ("TGC Order"), which Special Master Pro granted after an *in camera* review of the unredacted Family Agreement. *See* ECF No. 479 at 3 (emphasis added). He held that "resolution of the internal disputes between members of the Greenspun family reflected in the Greenspun Family Global Agreement of June 30, 2014, are not relevant to the instant litigation." *Id.* (emphasis added).

Even though the RJ never objected to the TGC Order, the RJ served a Rule 30(b)(6) subpoena to the Sun, seeking identical testimony regarding "disputes with the prior owners of the Review-Journal" and "[t]he sale or possible sale of the Sun," and eventually clarified that the testimony sought pertained to the Family Agreement and related negotiations. ECF No. 521-8 at 12-13. The RJ did not dispute that the TGC Order was on point; rather, without legal basis, the RJ insisted the TGC Order applied only to nonparty TGC, even though the protective order was issued on the Sun's motion. *Id.* at 6; *see also* ECF No. 521-10 at 19:10-20; ECF No. 479. The Sun was forced to move for protection on the duplicative Rule 30(b)(6) topic once again. ECF No. 520.

On January 21, 2022, Special Master Pro issued yet another protective order ("Sun Protective Order"), recognizing that he already found the RJ's requested discovery "irrelevant to the issues raised by the pleadings in this case." ECF No. 565 at 2 (emphasis added). He correctly explained that "[t]he fact that the RJ now seeks such information from a different source does not call for a different result." *Id.* (emphasis added). The RJ objected to the Sun Protective Order, raising the same arguments it made before the Special Master. *See* ECF No. 570.

---

[5] Additional background information on the Greenspun Family Global Agreement can be found at ECF No. 640 at 6.

Then, Magistrate Ferenbach overruled the RJ's objection to the Sun's Protective Order in its entirety, and agreed with Special Master Pro, also finding that the Family Agreement and related negotiations were irrelevant. ECF No. 619 at 4-5. Magistrate Ferenbach further determined that "[e]ven if these topics were relevant, inquiry to these areas would not be proportional under Rule 26." *Id.* While the RJ has objected to Magistrate Ferenbach's ruling (ECF No. 627), the objection has not been ruled upon and the RJ did not seek a ruling on shortened time. The Order still stands.[6]

The RJ did not move for reconsideration; rather, the RJ demanded that GMG prepare a witness to testify about the Family Agreement. *See* ECF No. 693-2. This, too, forced wasteful motion practice. At the outset of the hearing before the Special Master, he made it clear that he had reviewed all the briefs and that Topics 4 and 33 (among others) were already addressed in other orders. **Ex. 2** at 7:5-12. He instructed the parties that they do not need to "reargue those, because we've already heard argument on them." *Id.* The RJ contested this instruction and asserted that the Topics were "completely unrelated to the Court's prior orders." *Id.* at 10:9-17. The Special Master then allowed the RJ to repeat its worn-out arguments during the hearing. *See generally* **Ex. 2**. After once again considering the same exact issues, the Special Master issued his order finding that Topics 4 and 33 were "irrelevant and disproportionate to this case and/or facially overbroad and unduly burdensome." ECF No. 713 at 2. The Special Master also found that the Topics were "vetted repeatedly" and had been "exhausted." *Id.*

In spite of four clear Court orders, the RJ insists that it is entitled to obtain testimony about the Family Agreement because "documents relating to potential or actual sales of the Sun could be probative of its value at specific points in time," the Sun's Rule 30(b)(6) witness testified that the Review-Journal's own offers to buy the Sun could be used to measure the Sun's value, and a redacted version of the Family Agreement was produced in this action. ECF No. 716 at 7-10. The

---

6 If the RJ wanted to once again seek testimony related to the Family Agreement, the RJ was required to first seek this Court's reconsideration of its prior discovery rulings. *See* Local Rule 59-1. Had the RJ done so, it would have had to carry a heavy burden of convincing the Court to overturn its prior rulings before serving Topics 4 and 33 on GMG. *Id.* ("Motions for reconsideration are disfavored . . . . <u>A movant who repeats arguments will be subject to appropriate sanctions</u>." (emphasis added)); *see also United States v. Han*, 2021 WL 5605175, at *1 (D. Nev. Nov. 30, 2021) ("A motion for reconsideration should not be granted, <u>absent highly unusual circumstances</u>." (emphasis added) (internal quotation marks omitted)).

RJ's attempt to distinguish its fifth attempt to obtain the same irrelevant information from its prior attempts is, like its prior attempts, unconvincing.

First, the Family Agreement cannot be used to value the Sun as the Sun has explained numerous times, and as the Special Master made clear after reviewing the Family Agreement for himself, *in camera*. The RJ cannot extrapolate the value of the Sun (or any of the other entities affected by the Family Agreement) because that transaction involved 28 separate companies, *none* of which were separately valued in the transaction. ECF No. 462-2 ¶¶ 5-7. The redistribution of the Greenspun family assets can be best described as a complicated exchange of interests between family members, not an exchange or sale of assets between disinterested third-party buyers. *Id.* ¶ 6. The Family Agreement was not an arms-length transaction, let alone a formal transaction involving expert valuations for each asset. *Id*. ¶¶ 5-7. Subjective factors that no one except the Greenspun siblings can extrapolate formed at least part of the valuation process (*e.g*., Mr. Greenspun's long-term work and management of the Sun). *Id*. The Family Agreement simply cannot evince the Sun's value, and the Court has agreed numerous times after reviewing the document itself. *See* ECF No. 479; ECF No. 565; ECF No. 619.

Second, the Sun's testimony and supplemental damages disclosure that the Stephens Media 2013 LOI could be used to value the Sun does nothing to change that the Family Agreement is irrelevant. For the Sun's 30(b)(6) deposition testimony cited by the RJ, Mr. Cauthorn testified that he individually conducted a back-of-the-napkin estimate of the Sun's value six years ago. ECF No. 663 at 15-16. Mr. Cauthorn gave unequivocal testimony at his deposition that his back-of-the-napkin estimate is not the Sun's actual damages computation; instead, the Sun's experts who are currently in the process of ascertaining and compiling this information will make those determinations. *Id.* at 14-15; ECF No. 663-2 at 161:2-19. More importantly, at no point during Mr. Cauthorn's deposition did he even mention the Family Agreement as a basis for his estimate; instead, Mr. Cauthorn testified his estimate was based in part on Stephens Media's LOI. *See generally* ECF No. 665-2 at 169:20-170:17. Mr. Cauthorn's testimony, therefore, does not impact this Court's rulings precluding the discovery sought in Topics 4 and 33.

The RJ's reference to the Sun's damages disclosure is equally inconsequential. As the RJ

correctly pointed out, the Sun supplemented its damages computation for the diminution in value to the joint operation referencing "the 2013 Stephens Media [the RJ's predecessor] LOI in the amount of $67,500,000." ECF No. 703-2 at 5. The 2013 Stephens Media LOI is not the same as the Family Agreement despite the RJ's efforts to conflate the two. Once again, the Family Agreement concerned a resolution between the Greenspun family regarding dozens of companies and assets that, in part, resulted in Mr. Greenspun's primary ownership and control of GMG and the Sun. ECF No. 693 at 11. On the other hand, the LOI concerns a proposed offer from Stephens Media—then, owners of the Review-Journal—to essentially purchase the Sun for approximately $67.5 million. ECF No. 703 at 2. One was a personal family transaction that involved individual subjectivity and immeasurable factors while the other was an objective third-party offer to purchase the Sun. The Court should once again reject the RJ's flawed relevance argument.

Third, that the Sun disclosed a redacted copy of the Family Agreement does not provide an independent basis to find that the agreement is relevant to the claims and defenses in this action. In this highly contentious action, the parties have often agreed to disclose documents that they contest are irrelevant, but have chosen to disclose purely to avoid motion practice. And that is understood by both parties when making the disclosure as a compromise. A document is not magically transformed from irrelevant to relevant merely because it is produced to move the litigation along.

This Court should issue yet another order precluding the RJ from obtaining testimony about the private family negotiations of the Greenspun family, memorialized in the Family Agreement.

**B. GMG's Non-Sun Publications are Irrelevant to the Relevant Market Definition and Barriers to Entry—the Special Master Has Rightly Agreed Multiple Times (Topics 28-31)**

By way of Topics 28 through 31, the RJ seeks sensitive and irrelevant information about GMG's *non-Sun* publications' operations, including their advertising sales, circulation, readership, targeted audiences, and printing operations. ECF No. 693-2 at 8. The Special Master has held that GMG's *non-Sun* operations are not relevant to the claims and defenses in this action, twice. *See* ECF No. 505; ECF No. 713. In its Objection, the RJ largely repeats, rehashes, and reargues the exact same points it raised before the Special Master, including that the Sun has mischaracterized

the Special Master's order. *See* ECF No. 703; ECF No. 716. The Special Master already disagreed with the RJ, and held that his order did apply. *See* ECF No. 716 at 2. Topics 28, 29, 30, and 31 are irrelevant.

**1. GMG's Advertising Operations are Irrelevant (Topic 30)**

The RJ targets GMG's advertising sales operations in Topic 30, seeking testimony about "GMG's efforts to market advertising space in its publications." ECF No. 693-2 at 7. Special Master Pro has precluded the RJ from obtaining testimony about GMG's non-Sun publications on multiple occasions because GMG's non-Sun publications are irrelevant; they are not products in the relevant market. *See* ECF No. 505 at 5-6; ECF No. 713 at 2. Disregarding these two Court orders, the RJ asserts that GMG's current advertising sales operations are relevant to disprove the Sun's relevant market definition. ECF No. 716 at 17.

The RJ fundamentally misunderstands the law. GMG's non-Sun publications are not competitors in the relevant market. ECF No. 621 ¶ 20. One of the elements in an antitrust action is monopoly power, which requires a plaintiff to allege a defined relevant market; the barriers to entry correspond to the relevant market. *In re German Auto. Manufacturers Antitrust Litig.*, 2020 WL 1542373, at *7 (N.D. Cal. Mar. 31, 2020) ("Once a relevant market has been pled, market power can be demonstrated by evidence that the defendant owns a dominant share of the relevant market and that there are significant barriers to entry."), *aff'd*, 2021 WL 4958987 (9th Cir. Oct. 26, 2021); *Garnica v. HomeTeam Pest Def., Inc.*, 230 F. Supp. 3d 1155, 1157 (N.D. Cal. 2017) (explaining that to establish the element of monopoly power in an antitrust action, plaintiffs "must: (1) define the relevant product market and geographic markets; (2) show that [defendant] owns a dominant share in the relevant markets; and (3) show that there are significant barriers to entry in the markets such that existing competitors lack the capacity to increase their output in the short run" (internal quotation marks and citation omitted)).

Topic 30 does not seek relevant information pertaining to the Sun's alleged barriers to entry into the relevant market. The relevant market alleged in this case is the local, daily print newspaper market in Clark County, Nevada. ECF No. 621 ¶¶ 43-54. And within that relevant market are only two competitors—the Sun and the Review-Journal. *Id*. In short, nowhere in the Sun's Amended

Complaint does it allege that GMG's non-Sun publications are competitors in the relevant market, or even that the relevant market at issue in this case is the advertising market of the Newspapers. *See generally id*. The consumers are the newspaper readers. The Sun does not advertise. And, nor could GMG's non-Sun publications be competitors in the relevant market for local, daily print newspapers. *See id.* ¶ 1. (The RJ adopted the Sun's market definition in its Counterclaims as well. ECF No. 296 ¶ 107). Because the barriers to entry are necessarily tied to the defined relevant market, GMG's marketing and advertising efforts for its non-Sun publications are not relevant to the Sun's alleged barriers to entry into the local daily newspaper market at issue in this case where the advertising side of the newspaper market alleged is irrelevant.

Furthermore, it is well-settled that the relevant product market requires a factual inquiry into the "commercial realities" faced by consumers. *High Tech. Careers v. San Jose Mercury News*, 996 F.2d 987, 990 (9th Cir. 1993). It does not include any type of product that might compete with the product in a theoretical sense: "the market must encompass the product at issue as well as all economic substitutes for the product." *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1045 (9th Cir. 2008). What constitutes an "economic substitute" is "determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it." *Id.* A relevant market is drawn "narrowly to exclude any other product to which, within reasonable variations in price, only a limited number of buyers will turn." *Times-Picayune Publ'g Co. v. United States*, 345 U.S. 594, 612 n.31 (1953); *see also Brown Shoe Co. v. U.S.*, 370 U.S. 294, 325 (1962).

Courts have made clear that only suitable substitutes comprise the relevant market, and from a newspaper reader/consumer's point of view, advertising is not and cannot be a suitable substitute for a newspaper and its editorial and reportorial content. The markets in which newspapers sell advertising to advertisers and newspapers supply editorial and reportorial content to readers are two distinct markets. For this reason, the RJ cannot demand discovery into every facet of GMG's operations, including sensitive and proprietary information, simply because it wants to test the Sun's defined market and the barriers to that market. This is because the relevant barriers must be

tied to the narrowly defined market in the Sun's pleading, which clearly does not extend to GMG's advertising operations.

Special Master Pro has agreed, twice. He denied the RJ's demand for intrusive discovery regarding GMG's non-Sun publications, including their advertising operations and financials, when the RJ moved to compel GMG's response to Requests for Production. ECF No. 505 at 5-6. In connection with that motion, the RJ sought all documents that relate to competition between: (1) any GMG print publication and the Review-Journal newspaper and website; (2) any GMG digital publication and the Review-Journal newspaper and website; (3) the Sun newspaper and LasVegasSun.com and "any other media product or service"; and (4) the Review-Journal and Sun newspapers and "any other media product or services." ECF No. 505 at 5; ECF No. 467. Exactly like it does now, the RJ previously tried to justify its discovery into all of GMG's <u>non-Sun</u> publications "to establish the appropriate relevant market" because "the appropriate relevant market should include other media products and services that compete with print newspaper, such as websites, mobile news applications, TV news, radio stations, and satellite radio." ECF No. 505 at 5. The RJ also sought "[d]ocuments relating to competition for advertisers" and "advertisement sales" for GMG's non-Sun publications, arguing that such expansive discovery was "relevant to determine the validity of the Sun's purported market." *Id.*

The Special Master correctly rejected all of the RJ's arguments and agreed with the Sun that it had "properly limited its production to documents or communications relating to competition <u>between the Sun and RJ</u> for readership of print newspapers," and thus, held that the RJ "failed to show justification for the expanded scope of discovery sought." *Id.* at 6 (emphasis added). The RJ never objected to this Order. Although the RJ tantrums, arguing that this order does not apply to Topic 30, the Special Master disagreed. *See* ECF No. 713. He analyzed his own order (ECF No. 505), and determined that Topic 30 was already deemed non-discoverable, irrelevant, and disproportional. *Id.* at 2. The RJ does not offer any credible reason why this Court should stray from Special Master Pro's relevancy orders.

/ /

/ /

**2.   GMG's Non-Sun Print Operations are Not Relevant to Any Claims or Defenses in this Action (Topic 31)**

Topic 31 similarly seeks information about GMG's non-Sun publications, demanding testimony about "[t]he operations of GMG's print publications, other than the printed Sun, since January 1, 2014, including the circulation, readership, targeted audiences, ad sales of those publications, and their competitors, including but not limited to the daily print Review-Journal/Sun." ECF No. 693-2 at 8. Like Topic 30, the RJ argues that Topic 31 is relevant to "disprove the Sun's relevant market definition" by showing these are substitutes in the market. ECF No. 716 at 20.

Once again, Special Master Pro issued an on-point order prohibiting the RJ from obtaining discovery about GMG's non-Sun publications and operations; the RJ did not object to that Order. *See* ECF No. 505 (*see* § III(B)(1) for a more detailed discussion of the Court's order). He held the relevant competition was "competition between the Sun and RJ for readership of print newspapers." *Id.* at 6. Before the Special Master, the RJ asserted (like it does now) that the Sun "mischaracterize[d]" the Special Masters prior order. ECF No. 703 at 14; ECF No. 716 at 20. Special Master Pro once again rejected this argument and held that his older order (ECF No. 505) applied, and that the "operations of GMG's print publications, other than the printed Sun" are irrelevant. ECF No. 713 at 2.

Both these relevancy orders were correct because, as explained above, within the relevant market are only two competitors—the Sun and the Review-Journal. ECF No. 621 ¶¶ 43-54. The Sun has never alleged that GMG's non-Sun publications are competitors in the relevant market (which the RJ adopted in its Counterclaims). *See generally id.*; ECF No. 296 ¶ 107. Because the barriers to entry are necessarily tied to the defined relevant market, GMG's operations for its non-Sun publications are not relevant to the Sun's alleged barriers to entry into the relevant market.

Notably, the RJ's assertion that Mr. Greenspun, Mr. Cauthorn, and Mr. Taylor have all acknowledged the Las Vegas Weekly as a competitor to the print Sun is not supported by the record. *See* ECF No. 716 at 19. First, the RJ references Exhibit J of its opposition to GMG's motion for a protective order. *See id.* (citing to ECF No. 03-1 ¶¶ 12–13 & ECF No. 704 at Ex. J, Ex. K at 213:1–

6). Exhibit J contains private text messages between Mr. Greenspun and Mr. Cauthorn but the RJ fails to pinpoint where they expressly "acknowledged that Las Vegas Weekly is a competitor of the printed Review-Journal/Sun." *See* ECF No. 704 at Ex. J. The RJ's citation to testimony from Mr. Taylor (former publisher of the Review-Journal) is similarly unpersuasive given Mr. Taylor is neither a representative of GMG nor the Sun. Moreover, a business owner's or manager's general belief about its competitors is a different consideration than what is an actual competitor from an economic perspective under antitrust law, which necessitates expert opinion.

For the same reasons set forth in Topic 30, the RJ's efforts to exceed the scope of discovery in this regard should be rejected, yet again.

**3. GMG's Printing of Non-Sun Publications is Similarly Non-Discoverable (Topics 28 & 29)**

For Topics 28 and 29, the RJ demands testimony concerning GMG's "arrangements for printing its publications from January 1, 2014, other than the printed Sun," claiming the requested testimony is relevant to barriers to entry into the relevant market. ECF No. 693-2 at 8; 716 at 18-19. Like many of the Topics the RJ rehashes in the Objection, this Topic was also the subject of a prior order, which the Special Master re-enforced in the GMG Protective Order. ECF No. 713 at 2. The Special Master has twice prohibited the RJ from obtaining discovery concerning GMG's non-Sun publications as they are not products within the defined relevant market. *See* ECF No. 505; ECF No. 713. Because the barriers to entry are necessarily tied to the defined relevant market, GMG's printing and distributing operations for its non-Sun publications are not relevant to the Sun's alleged barriers to entry into the local, daily print newspaper market.

Copying its previous, tired accusations that GMG has mischaracterized the Special Master's prior rulings, the RJ's repeated accusation is disproved by the Special Master's order agreeing that discovery regarding competition is limited to "the Sun and RJ for readership of print newspapers" (ECF No. 505 at 6), and his most recent order finding that these Topics were already "vetted repeatedly" and have been "exhausted." ECF No. 713 at 2.

/ /

Topics 28, 29, 30, and 31 all seek irrelevant information. The RJ should continue to be prohibited from seeking discovery about GMG's non-Sun operations.

### C. The LasVegasSun.com Brand is Irrelevant Because the Sun Does Not Seek Damages for Harm to It (Topic 24)

Through Topic 24, the RJ seeks testimony about "[t]he extent to which GMG separates or distinguishes the brand of the printed Sun versus the brand for LasVegasSun.com." ECF No. 693-2 at 7. The RJ argues that GMG's efforts to distinguish the brand of the printed Sun newspaper from that of LasVegasSun.com are relevant to the Sun's damages theory and therefore information related to the lasvegassun.com brand is discoverable. ECF No. 716 at 11. The Special Master has now properly rejected this argument twice.

The first time the Special Master rejected the RJ's argument that it was entitled to documents concerning the lasvegassun.com brand, he denied the RJ's motion to compel and refused to expand the scope of requests related to GMG's "competition or rivalry" to include the lasvegassun.com. *See* ECF No. 505 at 5-6. Although the RJ attempts to avoid this never-objected-to-Order as relating solely to financials, the RJ does not refute the underlying basis for Special Master Pro's Order, being that because the Sun only seeks damages for the print newspaper, the lasvegassun.com brand is irrelevant. Before the Special Master, the RJ applied a narrow reading of the Special Master's own order and argued that he had not foreclosed discovery about the lasvegassun.com brand. *See* **Ex. 2** at 33:9-36:5. The Special Master rejected the RJ's narrow interpretation of his prior order, issued the GMG Protective Order, and held that Topic 24 was already "deem[ed] . . . to be non-discoverable as irrelevant and disproportionate to this case, and/or facially overbroad and unduly burdensome." *See* ECF No. 713 at 2.

Both of these orders were correct because the Sun does not seek damages for the harm to lasvegassun.com and, in any event, damages are the subject of expert testimony. *E.g.*, ECF No. 693-4 at 3. The JOA requires the RJ to promote the Sun newspaper, not lasvegassun.com. ECF No. 621 ¶¶ 34-36. It is the printed Sun that has been harmed by the RJ's anticompetitive scheme to conceal the Sun's noticeable mention, fail to promote the Sun in equal prominence, and exclude the Sun from the e-replica. *See id.* Because the Sun has and continues to assert that it will only seek

damages for the printed Sun, not lasvegassun.com, any discovery related to the lasvegassun.com website's brand is irrelevant. This Special Master has already considered the RJ's arguments and rejected them twice; now, this Court should do so for the third time.

Also important, even if discovery about lasvegassun.com was relevant to the printed Sun's damages, it falls within the purview of expert testimony. "Brand," which the RJ does not define, is a nuanced term that is ambiguous absent expert testimony. Indeed, the RJ has been on notice from the Sun's supplemental disclosures that the Sun intends to rely upon expert testimony for the Sun's print newspaper brand, including the resulting damages caused by the RJ. *See, e.g.,* ECF No. 637-4. Both Magistrate Weksler and Magistrate Ferenbach held that the RJ may not prematurely seek or demand discovery regarding the Sun's damages that are subject to expert testimony. *See* ECF No. 275 at 16:19-17:13 (Magistrate Weksler stating that "[a]s the RJ recognizes . . . , to the extent the Sun intends to use expert testimony to create and apply the calculation method, the Sun may provide those details with its expert disclosures, and "the Court does not expect the Sun to pull theories and numbers out of thin air"); ECF No. 368 at 20 (Magistrate Ferenbach holding that "the Court is convinced that the Sun has supplemented (and will continue to supplement) its production as the Sun discovers new information from the defendants regarding damages per Judge Weksler's order and Rule 26."). The RJ is free to depose the Sun's experts following the expert disclosure deadline. Until then, the RJ's current attempts to seek testimony regarding the print Sun's brand from GMG is premature and improper.

**D. <u>The Decades-Old Shareholder Distribution and Disposition of Settlement and Judgment Proceeds Are *Not* Relevant to the RJ's Alter Ego Claims (Topics 21 & 25)</u>**

For Topics 21 and 25, the RJ seeks testimony about a decades-old shareholder distribution and about the disposition of settlement and judgment proceeds that the Sun has obtained from the current and past owners of the Review-Journal. ECF No. 693-2 at 7. The RJ argues that these Topics are relevant to its claims that GMG and Brian Greenspun are the alter ego of the Sun. ECF No. 716 at 14, 21. The Special Master properly disagreed. ECF No. 713 at 3. For Topic 21, Special Master Pro held that "shareholder distributions are not relevant to any claims or defenses asserted in this

case." ECF No. 713 at 3. And, he determined that "Topic 25 also seeks discovery irrelevant to the issues in this case." *Id.* Notably, the subject matter of the first part of Topic 25 related to a dispute with the prior owner of the Review-Journal, Stephens Media, has been ruled irrelevant two other times, including by Magistrate Ferenbach. *See* ECF No. 565 at 2; ECF No. 619 at 4. While it should not be necessary, this Court should once again foreclose the RJ from obtaining irrelevant information.

**1. Decades-Old Shareholder Distributions Are Irrelevant (Topic 21)**

In Topic 21, the RJ seeks testimony for "[a]ny shareholder distributions the Sun has made." ECF No. 693-2 at 7. The Sun has been publishing since 1950. ECF No. 621 ¶ 2. While no shareholder distributions are relevant—as the Special Master has agreed—the Sun nevertheless proposed a compromise to prepare a witness to testify about "shareholder distributions" from January 1, 2014, to the present. ECF No. 713 at 3-4. The Special Master found not only that "the Sun's shareholder distributions are not relevant to any claims or defenses asserted in this case," but also that the Sun's proposed compromise was more than adequate. *Id.* (emphasis added). Despite the Special Master's relevance findings, the RJ insists that it is entitled to depose GMG about a $25 million distribution from decades ago as relevant to the RJ's alter ego claim.

According to the RJ, "[i]f the Sun's owners took more than $25 million out of the Sun and left it undercapitalized, that would be directly relevant to the Review-Journal's alter ego claims." ECF No. 716 at 21. But the RJ's alter ego claims are against GMG and Brian Greenspun. *See* ECF No. 296 ¶¶ 17-24. GMG did not become the parent company of the Sun and Mr. Greenspun did not become the primary owner of the Sun until June 30, 2014. *See* ECF No. 462-2 ¶ 6. In other words, the Sun has already agreed to prepare a witness to testify about shareholder distributions during the entire time period GMG has been the parent company of the Sun and Mr. Greenspun has primarily owed the Sun (even though such shareholder distributions are irrelevant). By refusing to accept the Sun's compromise, the RJ has confirmed what the Sun suspected: that the RJ seeks this information solely to burden GMG and require it to prepare a witness to testify as to irrelevant subject matters.

/ /

**2. The RJ Cannot Establish the Relevance of the Disposition of the Sun's Settlement Proceeds from Stephens Media or Judgment Obtained in the 2019 Arbitration Against the RJ (Topic 25)**

The RJ combined two distinct issues in Topic 25: (1) the settlement proceeds received from a 2016 arbitration against the prior owners of the Review-Journal, Stephens Media;[7] and (2) the disposition of the $2.1 million judgment the Sun obtained against the current owners of the Review-Journal. ECF No. 693-2 at 7. The first part of Topic 25, concerning disputes with prior owners of the Review-Journal has been ruled irrelevant four times—three by the Special Master and once by this Court. *See* ECF No. 479 at 3 (Special Master Pro finding the 2013 Stephens Action in particular irrelevant); ECF No. 565 at 2 (Special Master Pro finding all disputes with the prior owners of the Review-Journal irrelevant); ECF No. 713 at 2 (Special Master Pro finding the disposition of settlement proceeds irrelevant); ECF No. 619 at 4 (Magistrate Ferenbach finding the "Sun's accounting disputes with the prior owners of the Review-Journal . . . are not relevant to any claim or defense."). The second part of Topic 25 was similarly ruled irrelevant by the Special Master. *See* ECF No. 713 at 3 ("Topic 25 also seeks discovery irrelevant to the issues in this case.").

Even in the face of these four Court orders, the RJ contends that both parts of this Topic are relevant to "the Review-Journal's claims that Brian Greenspun and GMG are the alter egos of the Sun," and that the first part of Topic 25 was not the subject of prior Court orders at all. ECF No.

---

[7] Topic 25 expressly references the 2013 Stephens Action, not the 2016 arbitration. *Id.* The 2013 action arose because, from 2005 to 2014, various trusts of members of the Greenspun family owned GMG, the Sun, and TGC. ECF No. 450-2 ¶¶ 2, 4. In 2013, the majority of the Sun's directors (all except Mr. Greenspun) voted to accept a deal with Stephens, the then-owner of the Review-Journal, regarding termination of the JOA, among other things. *Id.* Mr. Greenspun therefore filed the Stephens Action to halt the transaction, which TGC was overseeing. ECF Nos. 450-2; 450-3; *Greenspun v. Stephens Media LLC*, No. 2:13-cv-01494-JCM-PAL (D. Nev. Aug. 20, 2013). Only after the parties met and conferred and after the Sun filed its motion for a protective order, the RJ suddenly (and suspiciously) contended it identified the wrong case in Topic 25 inadvertently. *See* ECF No. 703 at 11-12; *see also* ECF No. 716 at 6 n.3. This is hardly believable given the parties' extensive meet and confer efforts. ECF No. 693-3 (GMG discussing Topic 25); ECF No. 693-5 (the RJ discussing Topic 25); ECF No. 693-7 at 5-6 (parties discussing Topic 25 during the meet and confer). Regardless, the Sun addresses Topic 25 as if the RJ had in fact identified the Sun's 2016 arbitration with Stephens Media. *See Las Vegas Sun, Inc. v. DR Partners d/b/a Stephens Media Group*, AAA Case No. 01-16-0001-9187.

716 at 14. The Special Master once again appropriately disregarded these arguments and so too should this Court. ECF No. 713 at 4.

How the Sun or GMG decided to use settlement or judgment proceeds has no bearing on the claimed damages in this case caused by the RJ's anticompetitive and predatory conduct. Notably, the RJ—as the dominant JOA partner—has the sole authority to oversee all accounting, management, and operational control of the joint operation, except for the operation of the Sun's news and editorial department. ECF No. 621 ¶ 33. While the JOA places accounting and fiduciary obligations on the RJ, there is no reciprocal obligation to the Sun. In other words, the Sun can choose how to spend the profit payments it receives from the RJ. *Id.* ¶¶ 35-37. As such, the Sun's disposition of the arbitration settlement and state-court judgment is irrelevant to, for example, the RJ's unilateral decision to manipulate the joint operation's accounting to reduce the Sun's profit payments to zero or exclude the Sun from the joint operation's promotional activities, and the resulting damages.

The RJ's argument that the information will show that Mr. Greenspun or GMG "pocketed" the funds in support of the RJ's alter ego claim is not credible. ECF No. 716 at 15. For purposes of an alter ego claim, the RJ misconstrues the factor of undercapitalization, the relevant inquiry of which is whether "a corporation is so undercapitalized that it is unable to meet debts that may reasonably be expected to arise in the normal course of business." *Laborers Clean-Up Contract Admin. Tr. Fund v. Uriarte Clean-Up Serv., Inc.*, 736 F.2d 516, 525 (9th Cir. 1984). As discussed immediately above, the RJ is tasked with sole authority to oversee and control the joint operation's accounting under the JOA, including assessing the profit payments to the Sun. The RJ is well aware that the Sun's Annual Profits Payments are the <u>sole</u> revenue source for the Sun's newsroom. Accordingly, any undercapitalization of the Sun is a result of the RJ's anticompetitive scheme, including the RJ's improper accounting practices, and not from GMG's disposition of a settlement or judgment award. Accordingly, this subject matter is not relevant to any claim or defense asserted in this case.

Finally, the RJ again urges the Court to disregard its prior orders and find that disputes with the previous of the Review-Journal, namely the 2016 arbitration, are relevant. ECF No. 716 at 14-

15. But the RJ does not provide any reason why this Court should do so. The Sun Protective Order and this Court's order overruling the RJ's prior objection are on-point. *See* ECF No. 565 at 2; ECF No. 619 at 4. The Special Master agreed:

> Defendants argue persistently that it should be allowed to explore each of those eight topics without limitation. I find otherwise. The issues related to these eight topics [including Topic 25] have been vetted repeatedly throughout these proceedings and are exhausted.

ECF No. 613 at 3. Despite what the RJ may think, it is certainly not in a better position than the Special Master to apply the Special Master's order. The Sun respectfully requests that this Court overrule the RJ's Objection and enforce the Special Master's and Magistrate's prior orders once again.

**V. CONCLUSION**

For the foregoing reasons, this Court should overrule the RJ's Objection to Special Master Pro's Order re Counterdefendant Greenspun Media Group's Motion for Protective Order (ECF No. 713) [ECF No. 716].

DATED this 29th day of July, 2022.

LEWIS ROCA ROTHGERBER CHRISTIE LLP

By: */s/ Kristen L. Martini*
E. Leif Reid, Bar No. 5750
Kristen L. Martini, Bar No. 11272
Marla J. Hudgens, Bar No. 11098
Nicole Scott, Bar No. 13757
One East Liberty Street, Suite 300
Reno, Nevada 89501-2128

PISANELLI BICE PLLC
James J. Pisanelli, Bar No. 4027
Todd L. Bice, Bar No. 4534
Jordan T. Smith, Bar No. 12097
400 South 7th Street, Suite 300
Las Vegas, Nevada 89101

ALIOTO LAW FIRM
Joseph M. Alioto, *Pro Hac Vice*
One Sansome Street, 35th Floor
San Francisco, California 94104

*Attorneys for Plaintiff/Counterdefendants*

**CERTIFICATE OF SERVICE**

Pursuant to Federal Rule of Civil Procedure 5(b), I certify that I am an employee of Lewis Roca Rothgerber Christie LLP, and that on the 29th day of July, 2022, I caused the foregoing **COUNTERDEFENDANT GREENSPUN MEDIA GROUP, LLC'S RESPONSE TO DEFENDANTS' AND COUNTERCLAIMANT'S OBJECTION TO SPECIAL MASTER'S ORDER RE COUNTERDEFENDANT GREENSPUN MEDIA GROUP'S MOTION FOR PROTECTIVE ORDER REGARDING DEFENDANTS' FRCP 30(B)(6) DEPOSITION (ECF NO. 693) [ECF NO. 713]** to be served by electronically filing the foregoing with the CM/ECF electronic filing system, which will send notice of electronic filing to:

J. Randall Jones, Esq.
Michael J. Gayan, Esq.
Mona Kaveh, Esq.
KEMP JONES, LLP
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169

Amy M. Gallegos, Esq.
David R. Singer, Esq.
Andrew G. Sullivan, Esq.
JENNER & BLOCK LLP
633 West 5th Street, Suite 3600
Los Angeles, California 90071

Richard L. Stone, Esq.
850 Devon Avenue
Los Angeles, California 90024

Hon. Philip M. Pro (Ret.)
Special Master
philipmpro@gmail.com
sparreno@jamsadr.com

*/s/ Autumn McDannald*
Employee of Lewis Roca Rothgerber Christie LLP

**INDEX OF EXHIBITS**

| Exhibit No. | Description | No. of Pages |
| --- | --- | --- |
| 1 | Declaration of Kristen L. Martini in Support of Counterdefendant Greenspun Media Group, LLC's Response to Defendants' and Counterclaimant's Objection to Special Master's Order re Counterdefendant Greenspun Media Group's Motion for Protective Order Regarding Defendants' FRCP 30(b)(6) Deposition (ECF No. 693) [ECF No. 713] | 1 |
| 2 | Excerpt from the July 6, 2022, Hearing Transcript | 67 |