UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| LAS VEGAS SUN, INC.,<br>　　　　　　　　Plaintiff,<br>v.<br>SHELDON ADELSON, et al.,<br>　　　　　　　　Defendants. | Case No. 2:19-cv-01667-ART-VCF |
| LAS VEGAS REVIEW-JOURNAL, INC., a Delaware corporation,<br>　　　　　　　　Counterclaimant,<br>v.<br>LAS VEGAS SUN, INC., a Nevada corporation; BRIAN GREENSPUN, an individual and as the alter ego of Las Vegas Sun, Inc.; GREENSPUN MEDIA GROUP, LLC, a Nevada limited liability company, as the alter ego of Las Vegas Sun, Inc.,<br>　　　　　　　　Counterclaim-Defendants. | ORDER REGARDING PARTIES' OBJECTIONS (ECF NOS. 592, 627, 628, 629, 630) TO MAGISTRATE JUDGE FERENBACH'S ORDERS (ECF NOS. 572, 619). |

Pending before the Court are objections (ECF Nos. 592, 627, 628, 629, 630) by Defendants and Counter-Claimant News+Media Capital Group, LLC and Las Vegas Review Journal, Inc. (collectively the "RJ"), and Plaintiff and Counter-Defendant Las Vegas Sun (the "Sun") to Magistrate Judge Ferenbach's orders overruling the parties' objections to orders by Special Master Pro. (ECF Nos. 572, 619). Regarding documents related to Elizabeth Cain, this Court overrules the RJ's objections to ECF No. 572. (ECF No. 592). Regarding the four 30(b)(6)

1

deposition topics, this Court overrules the RJ's objection. (ECF Nos. 627, 628). Regarding Interrogatories 14 and 15, the Court grants the Sun's objection to ECF No. 619 (ECF Nos. 629, 630), overrules the relevant portion of Magistrate Judge Ferenbach's order (ECF No. 619 at 5), and orders the RJ to respond to Interrogatory Nos. 14 and 15 as written. Other topics in ECF No. 619 were either not objected to or have already been resolved. (ECF No. 647.) Because the Court read and considered the proposed replies filed by the Sun (ECF No. 649) and the RJ (ECF No. 652), the Court grants these motions for leave to file a reply.

**I. BACKGROUND**

In this antitrust action the Sun claims that the RJ's failure to honor a 2005 Joint Operating Agreement ("2005 JOA") between the parties has resulted in the RJ monopolizing the local newspaper market. In its Complaint, the Sun claims that the RJ is liable for: (1) monopolization, in violation of § 2 of the Sherman Act 15 U.S.C. § 2; (2) attempted monopolization, in violation of § 2 of the Sherman Act; (3) conspiracy to monopolize, in violation of § 2 of the Sherman Act; (4) violation of § 7 of the Clayton Act. 15 U.S.C. § 18; and (5) violation of Nevada's Unfair Trade Practices Act. NRS 598 (ECF No. 1). The Sun filed the Amended Complaint on March 24, 2022, alleging additional facts and adding a sixth claim for violation of § 1 of the Sherman Act. (ECF No. 621).

Central to the antitrust claims are the RJ's alleged violations of the 2005 JOA. According to the Sun, since 1989, the RJ has published and distributed both papers under a 50-year Joint Operating Agreement authorized by the Newspaper Preservation Act (the "NPA"). The NPA provides a limited antitrust exemption for newspapers to combine production, marketing, distribution, and sales, so long as their editorial and reportorial functions are maintained separate and independent. (*Id.* at 3). Under the terms of the 1989 Joint Operating Agreement ("1989 JOA"), the Sun and RJ produced and distributed separate daily newspapers using a single platform (the RJ's plant and equipment). In 2005, the

1989 JOA was amended. Under the 2005 JOA, the parties combined the two newspapers into a single-media product that separately branded the RJ and the Sun and included the Sun as a separate newspaper located inside the RJ. (ECF No. 621 at 12).

The 2005 JOA details how the RJ is required to market and promote the Sun, charge expenses attributable to the Sun, and share profits. The RJ agreed to continue to print the Sun and oversee all accounting, management, and operational control, except for the operation of the Sun's news and editorial department. (*Id.*). Regarding promotion, the RJ was required to (1) follow formatting specifications for the Sun's pages; (2) publish a box above the Review-Journal's own banner on its front page with the Sun's logo, lead story headline, and its location (*Id.*); (3) market and promote the Sun (using commercially reasonable efforts to maximize the circulation of both newspapers), including equal mention of the Sun in the RJ's promotional activities to ensure the Sun's brand remains as robust as the RJ's (*Id.* at 13); (4) use commercially reasonable efforts to promote the Sun in equal prominence to the RJ; and (5) publish the Sun paper as part of RJ's electronic replica edition. (*Id*). The 2005 JOA provides that the Sun shall receive annual profits payment monthly and includes audit and arbitration rights exercisable only by the Sun. (*Id.* at 14).

The Sun alleges operational and accounting violations of the 2005 JOA going back to 2015, after the RJ was acquired by Defendants. The allegations include failing to comply with marketing and promotion requirements, threatening to terminate the 2005 JOA, and impermissibly charging promotional activity for the RJ against the joint operation. The Sun alleges that its profit payments have dwindled since 2015, attributing the decline to the RJ's alleged manipulation of the earnings before interest, taxes, depreciation, and amortization (EBITDA) by charging the RJ's individual editorial and promotional costs against the joint operation. (ECF No. 621 at 24).

At issue here are three areas of discovery: documents relating to Elizabeth Cain, four 30(b)(6) topics, and Interrogatories 14 and 15. The Court addresses each objection in turn.

**II. LEGAL STANDARD**

In reviewing a magistrate judge's non-dispositive pretrial order, the magistrate judge's factual determinations are reviewed for clear error. *See* 28 U.S.C. § 636(b)(1)(A); *see also* Fed. R. Civ. P. 72(a); LR IB 3-1(a) ("A district judge may reconsider any pretrial matter referred to a magistrate judge in a civil or criminal case pursuant to LR IB 1-3, where it has been shown that the magistrate judge's ruling is clearly erroneous or contrary to law."). A magistrate judge's decision is clearly erroneous or contrary to law "when he makes an error of law, when he rests [a] decision on clearly erroneous findings of fact, or when [the Court is] left with a definite and firm conviction that he committed a clear error of judgment." *United States v. Ressam*, 679 F.3d 1069, 1086 (9th Cir. 2012) (quotation omitted).

Relevance and proportionality define the scope of discovery under Rule 26. "[B]road discretion is vested in the trial court to permit or deny discovery." *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002). To be permissible, discovery must be "relevant to any party's claim or defense." *In re Bard IVC Filters Prods. Liab. Litig.*, 317 F.R.D. 562, 563-64 (D. Ariz. 2016). Rule 26(b)(1) outlines the factors that a court must consider when determining whether relevant discovery is proportional to the needs of the case: (1) "the importance of the issues at stake in the action," (2) "the amount in controversy," (3) "the parties' relative access to relevant information," (4) "the parties' resources," (5) "the importance of the discovery in resolving the issues," and (6) "whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* The "benefit" of discovery is reflected in the importance of the issues (1) and the discovery (5); the "burden or expense" takes into account the amount in controversy (2), parties' resources (4),

and their relative access to the information (3). The final factor balances these competing considerations by considering whether the burden imposed by discovery "outweighs its likely benefit." The burden to demonstrate the disputed discovery is irrelevant or disproportionate is borne by the party opposing discovery and may be satisfied by detailing the reasons why each request is irrelevant. *V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 306, 310 (D. Nev. 2019) (citations omitted).

### III.   ANALYSIS

#### A. Cain Documents

The RJ subpoenaed documents related to Elizabeth Cain and objects to the Sun's claims of privilege regarding 300 documents. (ECF No. 592 at 11-12). Cain is an accountant who was hired by the Sun's parent company, Greenspun Media Group ("GMG") in 2014 and allegedly discovered that the RJ had violated the parties' 2005 JOA by charging its editorial costs against the joint operation EBITDA. While Cain testified as an expert in two arbitrations between the RJ and the Sun in 2016 and 2019, she has not been designated as an expert in this case. (ECF No. 771 at 2).

Special Master Pro and Magistrate Judge Ferenbach properly concluded that the Sun's claims of privilege regarding its accountant, Elizabeth Cain, are appropriate and have not been waived.

Because Rule 26(b) treats expert materials differently from other trial preparation materials, the fact that Cain has not been identified as an expert in this case is critically important to evaluating the privileges asserted by the Sun. *Republic of Ecuador v. Mackay,* 742 F.3d 860, 866 (9th Cir. 2014). In *Mackay,* a party claimed that their experts' materials were protected from discovery under the broad protection generally afforded to trial preparation materials under Rule 26(b)(3). Fed. R. Civ. P. 26(b)(3)(A) ("[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or

for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).") The court explained in *Mackay* that expert materials are governed by Rule 26(b)(4), not Rule 26(b)(3). *Mackay*, 742 F.3d at 866 (citing Fed. R. Civ. P. 26(b)(4) which protects experts' draft reports and communications with attorneys).

Though *Mackay* is instructive, it is also distinguishable because Cain has not been identified as an expert in this case. *Mackay* involved a long-running legal dispute involving witnesses who were identified as experts in the proceeding at issue. *Id.* Those experts were entitled to expert material protections under Rule 26(b)(4), but not the broader protections afforded trial preparation materials under Rule 26(b)(3). *Mackay*, 742 F.3d at 871. In contrast to the experts in *Mackay*, Cain has not been disclosed as an expert in this action and her status as an expert in the 2016 and 2019 arbitrations is not at issue.

Because the RJ has not shown that Magistrate Judge Ferenbach's ruling that the contested documents were protected by Rule 26(b)(3) was clearly erroneous or contrary to law, this Court overrules RJ's objection as to protection under Rule 26(b)(3). If Cain is considered a consulting expert in this action, her preparation materials are protected under Rule 26(b)(4)(D). *Mackay*, 742 F.3d at 866 (facts known to or opinions held by an expert retained in anticipation of litigation but who is not expected to testify at trial are "ordinarily exempt from discovery").

The RJ argues that Cain's expert testimony in two prior arbitrations waived any privilege. (ECF No. 592 at 16:7-10). Unlike in the cases cited by the RJ, there is no basis to conclude that the Sun or Ms. Cain already voluntarily disclosed the information or documents at issue related to a legal claim or defense. *See, e.g., Aspex Eyewear, Inc. v. E'Lite Optik, Inc.*, 276 F. Supp. 2d 1094, 1095 (D. Nev. 2003) (defendants waived work product protection by presenting an opinion of counsel as a defense). Because the RJ has not proffered evidence of waiver, there is no basis to conclude that Magistrate Judge Ferenbach's ruling on the issue

was clearly erroneous or contrary to law.

**B. Deposition Topics**

The RJ seeks to overturn Special Master Pro and Magistrate Judge Ferenbach's limitation or prohibition on deposition testimony as to four deposition topics: 4(a), 9, 22, and 34. This Court concludes that the orders by Special Master Pro and Magistrate Judge Ferenbach properly denied and temporally limited discovery into 30(b)(6) deposition topics 4(a), 9, 22, and 34.

**1. Topics 4(a), 9, and 34**

Three topics encompass interactions between the Sun and the RJ's prior owners: Topic 4(a) (regarding the RJ's alleged breaches of the 2005 JOA), Topic 9 (regarding the Sun's disputes with the RJ's prior owners), and Topic 34 (regarding the Sun's audits of the RJ under the 2005 JOA). The RJ maintains that inquiring about audits, alleged JOA-related breaches, and other disputes involving prior owners would undercut the Sun's argument that the RJ "'began' an anticompetitive plot against the Sun" because the RJ's current owners merely continued the prior owners' accounting practices and therefore lack malevolent intent. (ECF No. 627 at 2, 14, 17-18). Specifically, the RJ contests the temporal limitations (ECF No. 627 at 14-19) imposed by Special Master Pro that restricted Topic 4(a) testimony to disputes between the Sun and the RJ's current owners, and disallowed Topic 34 testimony on audits that took place before the current owners took control of the RJ. (ECF No. 565 at 3-5). The Court agrees with the conclusion reached by Magistrate Judge Weksler, Magistrate Judge Ferenbach, and Special Master Pro, namely that discovery into audits, disputes, and alleged breaches of the 2005 JOA predating the current owners' control of the RJ would not tend to prove or disprove the RJ's *current owners'* intent in allegedly continuing existing accounting practices.

The RJ additionally argues that is entitled to discovery on these three topics because they fall within the ambit of its counterclaims. (ECF No. 627 at 15, 18).

As cited by the RJ, the relevant portion of its counterclaims alleges that "LV Sun's sham [C]omplaint never mentioned that every prior owner since the inception of the 2005 JOA accounted to LV Sun the exact same way." (ECF No. 296 ¶103(c)). The Sun was not required to plead such facts in anticipation of the RJ's defenses or counterclaims and the RJ is not entitled to discovery based on this alleged omission. *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *see also Crow v. Safeco Ins. Co. of Ill.*, 2012 WL 5430413, at *4 (D. Mont. Nov. 7, 2012) ("Plaintiffs are not required to anticipate and plead around affirmative defenses or counterclaims" (citing *Gomez*, 446 U.S. at 640)). On Topics 4(a) and 9, the RJ already deposed the Sun's Chief Operating Officer, Mr. Cauthorn, who explained his email to Craig Moon and Frank Vega in which he characterized the accounting issues as "inherited" from prior owners, (ECF No. 640-5 at 121:25-122:15), so further deposing Mr. Cauthorn about that email would be unreasonably cumulative. *See* Fed. R. Civ. P. 26(b)(C). Additionally, the Sun prepared its 30(b)(6) witness to testify about Taylor's termination by the RJ. (ECF No. 640 at 20:18-22). This allowed the RJ to "investigate and rebut the Sun's claim that Mr. Taylor discovered dishonest accounting methods and was fired for raising the issue." (ECF No. 627 at 15).

Discovery into topics 4(a), 9 and 34 would be disproportional. As Special Master Pro noted, the required preparation for the Sun's 30(b)(6) deponent given the number and breadth of topics in this case was "daunting." (ECF No. 588-2 at 78:7-10). Requiring additional preparation for all prior disputes and audits between the Sun and the RJ would be disproportional and unduly burdensome given the minimal benefit expected here, especially considering that the RJ is seeking additional discovery into disputes where it was a party.

**2. Topic 22**

Topic 22 seeks testimony regarding "[t]he sale or possible sale of the Sun (or any ownership interest in the Sun) to any person, or any offers to buy the Sun

1  (or any ownership interest in the Sun)." (ECF No. 627 at 3 n.8). The RJ claims
2  that Magistrate Judge Ferenbach and Special Master Pro's orders impermissibly
3  allow the Sun to skew the damages calculation in this suit as the Greenspun
4  family redistribution of its properties in 2014 "bear[s] directly on the value of the
5  Las Vegas Sun in 2014." (ECF No. 627 at 19:25-26). The RJ's arguments are
6  unavailing.

7  Discovery into the Greenspun Family Global Agreement ("GFGA") would not
8  provide any information on the valuation of the Sun unless discovery was
9  permitted as to all of the properties involved because none of the Greenspun
10 family properties were independently valued during the 2014 negotiations. (ECF
11 No. 640 at 4). This discovery would be both irrelevant—most of the Greenspun
12 family entities are not implicated in this suit—and disproportional as it would
13 involve preparing a 30(b)(6) witness to discuss all family members' subjective
14 preferences as to each of the companies involved in the GFGA, whatever prior
15 valuations may have existed for each of the companies, all of the transfers
16 involved in the agreement, and the details of the negotiations.

17 After the parties' briefing regarding ECF No. 619 concluded, Special Master
18 Pro ordered that the Sun "shall be precluded from eliciting or relying upon the
19 testimony of Robert Cauthorn. . . regarding his estimate of damages suffered by
20 the Sun in this case." (ECF No. 718 at 4). No party to this action objected to this
21 order. This moots the RJ's arguments that Mr. Cauthorn's testimony regarding
22 his damages calculation puts the 2014 GFGA at issue. (ECF No. 627 at 21:14-
23 15, 18-24).

24 For all these reasons, the RJ has not shown that Magistrate Judge
25 Ferenbach's rulings as to Topics 4(a), 9, 22, and 34 are clearly erroneous or
26 contrary to law. Therefore, this Court overrules the RJ's objection as to these
27 topics. (ECF Nos. 627, 628).

28

**C. Interrogatories**

Interrogatories 14 and 15 concern the Sun's allegations that the RJ failed to promote the Sun as required by the 2005 JOA and improperly charged the RJ's individual promotions expenses to the joint operation. Interrogatory 14 asks the RJ to: "Identify each and every one of the promotions of the Review-Journal that *did not include mention* of the Sun in equal prominence, and the value of each and every one of those promotions charged to the Joint Operation (including the dollar, barter, or trade value amount), for each year from December 10, 2015, to present." (ECF No. 501-2 at 9) (emphasis added). Interrogatory No. 15 seeks a list of promotions during the same time that *do mention* the Sun, and the respective value of those charges. (*Id.*) Together, these interrogatories are designed to identify when the RJ promoted (Interrogatory 15) and failed to promote (Interrogatory 14) the Sun, whether any failures to promote to the Sun violated the 2005 JOA, and related accounting issues. This discovery is relevant to the Sun's alleged antitrust injury based on diminished profit payments and harm to the Sun's brand, including consumer harm from diminished exposure to editorial and reportorial diversity due to the Sun's alleged exclusion from the RJ's promotional activities. While the Sun has the total expense line item of the RJ's promotional expenses charged to the joint operation, it does not know how many promotions were run in total, which were charged to the joint operation, the type of each promotion, which promotions included the Sun in equal mention, and the value for each promotion.

At issue here is the "proposed stipulation" ordered by Special Master Pro. (ECF No. 580). After the RJ objected to the interrogatories, the parties met and conferred but were unable to resolve the issue. In lieu of responding to the interrogatories, the RJ proposed the following conditions:

10

1. There will be an initial presumption that all promotional expenses charged to the JOA from December 10, 2015, to the present do not mention the Sun;

2. The RJ will assume the burden of rebutting that presumption by providing a verified interrogatory response (and producing the supporting documentation) showing that a particular promotional expense was tied to a promotion that either (a) mentioned the Sun as required by the JOA, or (b) is not the type of promotional expense that is required to mention the Sun under the JOA; and

3. The Sun reserves the right to challenge any evidence proffered by the RJ to rebut that presumption.

(ECF No. 500-16 at 2).

Special Master Pro adopted the "proposed stipulation" over the Sun's objection and Magistrate Judge Ferenbach overruled the Sun's objection, which it now renews. Special Master Pro explained that the "stipulation" "affords a fair balance and reasonable resolution of what the record shows would otherwise be an unreasonable and disproportional burden on the RJ to search for 'all' information which might be responsive." (ECF No. 580 at 2). Magistrate Judge Ferenbach called the stipulation "a commonsense appropriate limitation on discovery" adding that a "complete accounting of all expenses" is not "proportional." (ECF No. 619 at 5). The Sun objected to the Magistrate Judge's Order. (ECF No. 629). The RJ responded. (ECF No. 642). The Sun moved for leave to file a reply. (ECF No. 649).

The Sun objects that the burden-shifting framework, to which it did not agree, allows the RJ to withhold relevant and proportional discovery that it is entitled to under Rule 26, lacks legal support because it not a discovery standard (as it was imported from another legal context), and will prejudice the Sun's presentation of its claims at trial. (ECF No. 591 at 8-11).

11

**1. The requested discovery is relevant and proportional.**

Applying the factors in Rule 26 (b)(1), the benefit of the requested discovery to the Sun appears to outweigh the burden of disclosure on the RJ. As Rule 26(b)(1) provides, the "benefit" of discovery considers the importance of the issues (factor 1) and the discovery (factor 5), while the "burden or expense" takes into account the amount in controversy (factor 2), the parties' resources (factor 4), and their relative access to the information (factor 3).

Here the benefit of discovery to the Sun is high. The Sun alleges that the RJ has attempted to create an illegal local news monopoly, which is a matter of public interest (factor 1). Interrogatories 14 and 15 are essential to the Sun's theory of liability and damages (factor 5), which depend on whether the RJ failed to comply with the 2005 JOA specifications for promoting the Sun, any resulting harm to the Sun's brand due to failure promote, and whether promotional expenses were appropriately charged against the joint operation. Neither the RJ, nor Special Master Pro nor Magistrate Judge Ferenbach have questioned the relevance and importance of this information.

The factors pertaining to burden and expense of discovery also favor the Sun particularly because the RJ has exclusive access to the information (factor 3). The RJ alone is tasked with promoting the Sun, charging expenses against the joint operation, and paying profits. The Sun's ability to discover this information is limited to its audit rights under the 2005 JOA and its right to discovery under the federal rules. Additionally, the amount in controversy is high (factor 2), in the tens of millions, and the parties, particularly the RJ, are heavily resourced (factor 4).

On balance the final factor (factor 6) also favors the Sun because the benefit of discovery to it outweighs the burden or expense on the RJ. The RJ argues that responding to these two interrogatories would require the RJ to perform more than 2,000 individual multi-step investigations for documents and information.

A key RJ employee would need to spend hundreds of hours she cannot spare on this manual, non-delegable task. Nearly 75% of these manual investigations (i.e., 1,500) involve expenses of $1,000 or less, with more than half of those expenses involving less than $100 and more than 400 expenses involving less than $50 (as little as $1). And because of the contractual formula governing the Sun's profit payment, at most 10% of each expense may translate to potential damages in the case, which means each of the 1,500-plus transactions involving $100 or less in dispute may translate to potential damages of less than $10. Accepting at face value the proposition that a single employee is situated to perform the labor required to answer the interrogatories at issue, even in combination with the other burdens described by RJ, the Court simply cannot conclude that the burden outweighs the benefits.

### 2. The burden-shifting framework lacks legal support and is prejudicial to the Sun.

Because Rule 26(1) proportionality analysis controls, the burden-shifting framework, which is imported from another legal context, has no role to play and would unfairly prejudice the Sun. The Sun's discovery requests were designed to identify when the RJ promoted (Interrogatory 15) and failed to promote (Interrogatory 14) the Sun, whether the RJ violated the 2005 JOA, and related accounting issues. The burden-shifting framework assumes that the RJ failed to promote the Sun (Step 1), then requires the RJ to rebut the presumption by showing it promoted the Sun as required or that no promotion was required (Step 2). The Sun can then challenge any evidence brought by the RJ (Step 3). While discovery is designed to allow the Sun to access information exclusively within the RJ's control, the burden-shifting framework instead reinforces the RJ's control over information essential to the Sun's claims.

The burden-shifting framework is prejudicial to the Sun because it skews discovery to the Sun's disadvantage—highlighting the RJ's compliance with 2005

JOA and minimizing or masking any violations. This will prejudice the Sun at trial when it bears the burden of proving that the RJ's repeat violations of the 2005 JOA amounted to violations of anti-trust laws. By presuming violations (Step 1), the burden-shifting framework deprives the Sun of the hard evidence to prove them, and then requires the RJ to disclose documents that prove compliance (Step 2). The RJ argues that this framework places "the Sun in a better position" because the Sun can assume violations "without having to present any evidence at trial." (ECF No. 642 at 21). The problem is that the Sun will not have in hand the evidence it needs to prove a violation and without such proof cannot prove to the jury the kind and number of violations, if any, and their significance in terms of establishing liability and damages. Though the RJ's proposal may have superficially appeared to be represent a reasonable approach to managing voluminous disclosures, the implication of the burden shifting framework means the jury will be exposed to evidence about the RJ's compliance with its promotional obligations, but not its alleged lack of compliance. The framework prejudices the Sun's ability to prove essential elements related to this aspect of the RJ's anticompetitive conduct and impermissibly dictates the way it can prove its case.

A proper consideration of the proportionality factors under Rule 26(b)(1) weigh heavily in favor of the RJ's disclosure of information fully responsive to Interrogatories 14-15. The RJ should be compelled to respond to Interrogatories 14-15 as posed.

**IV. CONCLUSION**

IT IS THEREFORE ORDERED THAT the RJ's objection (ECF No. 592) to Magistrate Judge Ferenbach's Order (ECF No. 572) is OVERRULED.

It IS FURTHER ORDERED THAT the RJ's objection (ECF Nos. 627 & 628) to Magistrate Judge Ferenbach's Order (ECF No. 619) is OVERRULED.

IT IS FURTHER ORDERED THAT the Sun's objection (ECF No. 629 & 630) to Magistrate Judge Ferenbach's Order (ECF No. 619) is GRANTED.

IT IS FURTHER ORDERED THAT the Magistrate Judge's Order (ECF No. 619) is rejected IN PART to the extent that it adopts a burden shifting stipulation in lieu of requiring Defendants to respond Interrogatories 14-15 but is otherwise accepted.

IT IS FURTHER ORDERED THAT the RJ must respond to Interrogatory Nos. 14 and 15 as written.

IT IS FURTHER ORDERED THAT the Sun's motion for leave to file a reply (ECF No. 649) is GRANTED.

IT IS FURTHER ORDERED THAT the RJ's motion for leave to file a reply (ECF No. 652) is GRANTED.

DATED THIS 16th Day of November 2022.

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE