UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\*\*\*

| | |
|---|---|
| LAS VEGAS SUN, INC., a Nevada corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SHELDON ADELSON, an individual and as the alter ego of News+Media Capital Group LLC and as the alter ego of Las Vegas Review Journal, Inc.; PATRICK DUMONT, an individual; NEWS+MEDIA CAPITAL GROUP LLC, a Delaware limited liability company; LAS VEGAS REVIEW-JOURNAL, INC., a Delaware corporation; and DOES, I-X, inclusive,<br><br>Defendants. | 2:19-cv-01667-GMN-VCF<br><br>**ORDER RE PLAINTIFF'S MOTION TO COMPEL DEFENDANTS TO SUPPLEMENT PRODUCTION (DOC. 745) AND FOR SANCTIONS (DOC. 766)** |
| LAS VEGAS REVIEW-JOURNAL, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>LAS VEGAS SUN, INC., a Nevada corporation; BRIAN GREENSPUN, an individual and as the alter ego of Las Vegas Sun, Inc.; GREENSPUN MEDIA GROUP, LLC, a Nevada limited liability company, as the alter ego of Las Vegas Sun, Inc.,<br><br>Defendants. | |

Before the Court for consideration is Plaintiff, Las Vegas Sun, Inc.'s (the "Sun") Motion to Compel Defendants (collectively the "RJ") to Supplement Their Production (Doc. 745) filed September 29, 2022. Subsumed within Plaintiffs Reply brief (Doc. 764) filed October 20, 2022, is a Request for Sanctions

1

pursuant to Rule 37(c)(1) which has been docketed separately (Doc. 766). Both Motions are fully briefed and are filed in Redacted form, with Unredacted copies filed under seal and docketed separately together with Stipulations of the Parties and Orders allowing that those filings to be made under seal. (See Docs. 744, 749, 754, 758, 763, 768,784, and 787).

## I.     THE MOTION TO COMPEL

The Sun's Motion to Compel seeks to require the RJ to supplement its production of documents in two areas. First, the Sun seeks the production of documents supporting its 2022 calculation of the Sun's annual JOA payments from the RJ under the Joint Operating Agreement ("JOA") referred to as the 2022 JOA EBITDA calculation. Second, the Sun seeks the supplemental production of "bundled advertisement spreadsheets" reflecting the allocation of bundled print and digital advertising sales by the RJ.

### A.  The JOA EBITDA Calculation

Under the JOA, the RJ is responsible for performing a calculation of the annual EBITDA for the joint print operations of the Sun and RJ for the preceding JOA fiscal year. The RJ typically provides the calculation to the Sun by the end of April of each year. If the joint print operation generates a profit, in accord with the profit-sharing terms of the JOA, the RJ shares a portion of that profit with the Sun.

In 2019, the Sun and RJ arbitrated a dispute over the methodology employed by the RJ, and its predecessors, to calculate the JOA EBITDA during the period December 2015 through March 2018. On July 2, 2019, the Arbitrator concluded that the historical methodology for calculating the JOA EBITDA should be modified to exclude certain promotion and editorial expenses. The Nevada Supreme Court confirmed the Arbitration Award on September 16, 2021.

In compliance with the confirmed Arbitration Award, the RJ updated its calculation method for determining the JOA payments due for the period December 2015 through fiscal year 2020, and made the required JOA payments due to the Sun. The RJ states in its Opposition to the Sun's Motion to Compel

(Doc. 756) that in the process of making this recalculation, it "consulted with outside counsel to take a fresh look at other components of the calculation, aiming to proactively address any other potential accounting issues that have come to light as part of this multi-year litigation." This review resulted in additional adjustments to the 2022 JOA EBITDA calculation methodology employed by the RJ to calculate the 2022 JOA payments due to the Sun for fiscal year 2021.

On April 30, 2022, the RJ advised the Sun that the newly modified JOA payment calculation employed by the RJ resulted in a net zero payment to the Sun for fiscal year 2021. The details of the RJ's modified JOA payment calculation method is now the focus of first portion of the Sun's current Motion to Compel.

The Sun contends it is entitled to know exactly how the RJ has changed the JOA EBITDA calculation in the middle of this litigation. Therefore, the Sun asks that the RJ be required to produce documents supporting its 2022 JOA EBITDA calculation because they are "relevant to the Sun's claims that the RJ has improperly charged expenses to and diverted revenue from the JOA EBITDA and to the RJ's counterclaims that the Sun's antitrust action is a sham precisely because the RJ's calculation is the 'same exact' as its predecessors."

The RJ responds that the modified 2022 JOA EBITDA calculation was prepared by its Chief Financial Officer, Stephen Hall, using an Excel file containing ten worksheets, including separate worksheets for the joint operation's profit and loss statement, a reconciliation between the profit and loss and JOA calculation, and other supporting material. Notwithstanding objections that the fact discovery cutoff expired five months ago, and that the documents now requested by the Sun are outside the scope of prior discovery requests, the RJ states that it has produced nine of the ten worksheets including one titled "2022 Reconciliation," which fully explains the modified methodology employed by the RJ to calculate the 2022 JOA EBITDA. The RJ further represents that it also has produced its CFO Stephen Hall for

deposition pursuant to Rule 30(b)(6), and has produced the Expert Report of the RJ's designated Expert Witness, Mr. Nolte, who was also given access to the same Excel worksheets now produced for the Sun.

The RJ represents it has only withheld from the Sun, and from its own expert, one worksheet prepared by Hall in consultation with outside legal counsel, on the ground it is entitled to protection as attorney client privileged or as work product material. However, when asked to describe the size and scope of the withheld worksheet at the hearing conducted on November 10, 2022, RJ's Counsel was unable to recall the details of the worksheet or its "current status."

It its Reply brief (Doc. 764), the Sun argues that the spreadsheet withheld by the RJ cannot be a privileged or protected document because, like the other nine produced spreadsheets, it concerns "accounting issues," not legal issues and is undisputedly discoverable. The Sun contends that the RJ should be "ordered to produce the entire 2022 JOA EBITDA calculation workbook with all 10 original spreadsheets, unaltered, and sanctioned for withholding it under false pretenses." The Sun further submits that, "At the very least, the Court should conduct an *in camera* review of the entire, unaltered workbook to evaluate the RJ's privilege and work product claims."

Whether the RJ's mid-litigation modifications to the methodology for making the 2022 JOA EBITDA calculation was warranted is a question to be resolved at the trial of this case. However, given the RJ's decision to alter the JOA EBITDA calculation methodology in the midst of this litigation, the Sun is entitled to understand and test the RJ's revised methodology for calculating the annual JOA EBITDA.

The record before the Court shows that, although expert discovery on the matter is continuing, the Sun has now obtained from the RJ the discovery to which it is entitled relating to the RJ's modification of the calculation of the 2022 JOA EBITDA with the possible exception of the withheld tenth Excel worksheet prepared by Hall. Attorney client privilege and work product objections are not taken lightly

by the Court. However, the record is not sufficient to determine whether the RJ's attorney client privilege and work product objections to production of the tenth Hall worksheet should be sustained. Therefore, to enable the Court to assess the remaining objections to production, I find it appropriate to Order that the RJ be required to file with the Court, under seal and *ex parte*, a copy of CFO Hall's withheld "tenth" worksheet for the 2022 JOA EBITDA calculation for the Court's *in camera* review.

IT IS THEREFORE ORDERED that on or before December 8, 2022, the RJ shall file a copy of CFO Stephen Hall's unaltered "tenth worksheet" prepared for the calculation of the 2022 JOA EBITDA which has been withheld by the RJ on grounds of attorney client privilege or work product protection. This filing shall be marked as a document filed "ex *parte* and under seal" with the Clerk of Court "for the Court's *in camera* review". This *in camera* submission shall be accompanied by a sealed Declaration of Counsel supporting the privilege or work product claims asserted. A separate copy of the *in camera* submission and Declaration shall be submitted under seal to the undersigned Special Master for *in camera* review.

IT IS FURTHER ORDERED that consideration of the Sun's Motion for Sanctions (Doc. 766) is stayed pending completion of the *in camera* review of documents Ordered herein.

**B.  The RJ's Allocation of Advertising Revenue to the JOA EBITDA**

The second portion of Plaintiff's Motion to Compel is grounded in the Sun's allegation that the RJ has directly impacted the Sun's Annual JOA profit payments by diverting advertising revenue from the JOA EBITDA print operations to the RJ's digital operations in which the Sun has no JOA financial interest. Specifically, the Sun claims the RJ sells "bundled" seasonal advertising packages that include both print and digital advertisements for a single lump sum and that the RJ diverts a disproportionate portion of the revenue derived from these advertising sales to its digital operations in which the Sun has no profit share.

The Sun contends that by its Requests for Production of Documents (RFP's), 370, 483, and 484,[1] it has sought production of documentation reflecting the RJ's allocation percentages of bundled ad sales revenue split between print revenue and digital revenue during the period at issue in this litigation. The RJ has previously responded in part to these RFP's as follows:

> The Las Vegas Review-Journal **does not allocate bundled ad sales revenue by percentage**. Advertisements for the print Newspapers are priced, discounted, and/or sold separate and apart from advertisements for the Las Vegas Review-Journal's digital operations. The Las Vegas Review-Journal follows this practice even when it sells print and digital advertisements to the same advertiser. (Emphasis added).

The Sun's request that the RJ supplement its document production in this area is predicated upon the August 24, 2022, Rule 30(b)(6) deposition testimony of RJ's Senior Vice President of Sales, Donald Chase Rankin, that for every bundled advertisement, the RJ's advertising and accounting department would create a pricing spreadsheet that broke down the allocation between print and digital, and the rate for each. Rankin estimated that the allocation to digital was between 20 and 30 percent but testified he could not be certain without reviewing the spreadsheets for a precise percentage. The Sun argues the RJ should be compelled to supplement its document production by providing the spreadsheets referred to by Rankin from 2015 to present.

The RJ responds that the Sun's conclusory allegations of misallocation of advertising revenue are baseless, and that the RJ does not allocate any revenue from print ad sales to its digital operations and that nothing in the testimony of Donald Chase Rankin indicates that they have. The RJ argues that RFP 370, seeking "reports and summaries," was served two years ago and has been the subject of extensive

---

[1] RFP 370 was served on December 1, 2020, and RFP's 483 and 484 were served on April 9, 2021.

negotiations by the Parties narrowing its scope. Further, the RJ contends that RFP's 483 and 484 target documents showing "allocation percentages" for advertising revenue, yet the record and Rankin's testimony shows that the RJ "does not allocate advertising revenue by percentage (or otherwise)."

The RJ contends that the testimony of its Rule 30(b)(6) witness Donald Rankin shows that the seasonal promotional advertising packages in question consisted of separately priced print and digital components; that the two were billed separately; that under the RJ's accounting practices the revenue from the print and digital components were booked separately under the RJ's JOA and non-JOA operations; and that when a discount was offered to an advertiser on such a package, the discount was applied equally to the print and digital components.

The RJ also argues that the Sun has known of the advertising revenue spreadsheets it now seeks since 2018, and that one of those promotional ad package pricing spreadsheets was produced in the 2019 Arbitration, yet the Sun has not previously requested that the RJ provide documents reflecting the different components of the seasonal promotional advertising packages it now seeks by this Motion.

Finally, the RJ argues that the Court should deny the Sun's Motion pursuant to Rule 26(b)(1)'s proportionality analysis because locating the pricing spreadsheets and/or compiling the data points showing the pricing of each component for promotional ad packages for the seven year period requested would be an extremely burdensome undertaking requiring the RJ to expend 80 to 120 hours of research time.

I find that the Sun has failed to show that the RJ should be compelled to engage in a new round of document production that the Sun could have requested or sought to compel well within the previously extended, and now expired period for fact discovery in this case.

On August 12, 2021, shortly after my appointment as Special Master for discovery in this case, I commented on the apparent difficulty of the Parties in adhering to the document production standards of

Rule 34 and prior Orders of the Court pertaining to the production of documents. In the Order RE: Protocol for Resolving Discovery Disputes and Deposition Scheduling entered October 4, 2021 (Doc. 484), I found that the approximately 800 Requests for Production of documents were excessive and, in some cases, still unresolved. I therefore placed strict limits on the Parties ability to propound additional Rule 34 Requests for Production of documents except upon stipulation of the Parties, or upon leave of the Court for good cause shown.

I find the Sun has failed to make a plausible showing of misallocation of print and digital advertising revenue or good cause for failing to pursue the issue within the confines of the now expired fact discovery period. To require the RJ to embark on the requested search for seven years of advertising revenue records would, under the circumstances presented, be unreasonably burdensome.

IT IS THEREFORE ORDERED that the Sun's Motion to Compel a supplemental production of "bundled advertisement revenue spreadsheets" reflecting the allocation of bundled print and digital advertising sales by the RJ is Denied.

Dated this 28th day of November 2022.

_____
Hon. Philip M. Pro (Ret.)
SPECIAL MASTER