UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| LAS VEGAS SUN, INC., | Case No. 2:19-cv-01667-ART-MDC |
| Plaintiff, | ORDER |
| v. | |
| SHELDON ADELSON, *et al.*, | |
| Defendants. | |

| |
|---|
| LAS VEGAS REVIEW-JOURNAL, INC., |
| Counter Claimant, |
| v. |
| LAS VEGAS SUN, INC., *et al.*, |
| Counter Defendants. |

Plaintiff Las Vegas Sun, Inc. brings this action against Defendants Sheldon Adelson, Patrick Dumont, News+Media Capital Group LLC, and Las Vegas Review-Journal, Inc (collectively, "the RJ"). The RJ brings counterclaims against Las Vegas Sun, Inc.; Brian Greenspun; and Greenspun Media Group, LLC (collectively, "the Sun"). At its core, this is an antitrust action between media companies.

Before the Court are two objections (ECF Nos. 752, 819) by the RJ to orders by Magistrate Judge Cam Ferenbach. One order (ECF No. 742) upholds a special master decision (ECF No. 713) to impose protective orders barring discovery of certain evidence. The other order (ECF No. 818) upholds a special master decision (ECF No. 805) to allow the Sun to rely on "the Stephens Letter of Intent" in its calculation of damages. The RJ has filed a motion for leave to file a reply in support of its objection to the former order, which is also before the Court. (ECF No. 772.) Finally, before the Court is a motion to exclude the testimony of the RJ's expert witness, Kenneth Paulson. (ECF No. 898.) For the reasons identified

below, the Court grants the RJ's motion to file reply, overrules its objections to both orders by Judge Ferenbach, and grants in part and denies in part the Sun's motion to exclude the testimony of Kenneth Paulson.

## I.      BACKGROUND

Parties are daily print newspapers in Clark County, and related entities. They bring antitrust and breach of contract claims against one another.

This ruling assumes familiarity with the facts, as described in the Court's prior orders. Each order, objection, and motion relevant to this order is discussed in greater detail below.

## II.     DISCUSSION

### A. The RJ's Objections

The RJ objects to two orders by Magistrate Judge Ferenbach: a protective order barring discovery of certain evidence and an order allowing the Sun to rely on a particular piece of evidence, the "Stephens Letter of Intent" (LoI) in calculating its damages in this action.

A district judge reviews a magistrate judge's decisions on non-dispositive issues under a "clearly erroneous or contrary to law" standard. *Bhan v. NME Hospitals, Inc.*, 929 F.2d 2404, 1414 (9th Cir. 1991); 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); LR IB 3-1(a). Rulings made on discovery, including sanctions, are generally non-dispositive and subject to this standard. *See Bhan*, 929 F.2d at 1414 (citations omitted). The "clearly erroneous" standard is deferential, requiring a "definite and firm conviction that a mistake has been committed." *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (citation omitted). In contrast, the "contrary to law standard permits independent review of purely legal determinations by the magistrate judge." *Green v. Baca*, 219 F.R.D. 485, 489 (C.D. Cal. 2003).

The Court finds that Judge Ferenbach's challenged orders (ECF Nos. 742, 818) were neither clearly erroneous nor contrary to law.

## 1. THE PROTECTIVE ORDER

The RJ objects to protective orders barring it from seeking discovery on four categories of evidence: (1) "the Greenspun Family Agreement" (Topics 4 and 33); (2) the operations of Greenspun Media Group's non-Sun publications (Topics 28-31); (3) damages to the LasVegasSun.com brand (Topic 24); and (4) the Sun's shareholder distributions, the disposition of settlement proceeds obtained from Stephens Media, and the disposition of the 2019 judgment against the RJ (Topics 21 and 25).

Judge Ferenbach upheld these orders, which were originally issued by Special Master Pro, because he found that each category of evidence was irrelevant, that discovery would be disproportionate to the needs of the case, or both. *See* Fed. R. Civ. P. 26(b)(1). The Court has reviewed the evidence before it and considered the RJ's proposed reply (ECF No. 772-1.) The Court concludes that Judge Ferenbach did not clearly err in reaching any challenged decision. It therefore grants the RJ's motion to submit a reply (ECF No. 772) and overrules its objection to Judge Ferenbach's order (ECF No. 752).

Parties are entitled to obtain discovery under Federal Rule of Civil Procedure 26(b) "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Federal Rule of Civil Procedure 26(c) allows the Court to issue a protective order if the party seeking the order establishes "good cause" and the protective order is required "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "The party

1   seeking protection bears the burden of showing specific prejudice or harm will
2   result if no protective order is granted." *Phillips v. Gen. Motors Corp.*, 307 F.3d
3   1206, 1210–11 (9th Cir. 2002).

4      The Court reviews Judge Ferenbach's decision on each category of
5   discovery below.

6   ### a. The Greenspun Family Agreement (Topics 4 and 33)

7      Judge Ferenbach's protective order on Topics 4 and 33 prohibits discovery
8   on prior efforts to sell the Sun (Topic 33) and the Greenspun Family Global
9   Agreement (GFGA) (Topic 4), which was an agreement between Greenspun family
10  members to transfer ownership interests in the Sun and several other companies.
11  He found that these topics were irrelevant and otherwise disproportionate to the
12  needs of the case based on "considerations of time, costs and proportionality."
13  (ECF No. 742 at 4.) The RJ objects that Topics 4 and 33 are relevant to calculating
14  the Sun's damages and argues that discovery would not be disproportionate
15  because it would be limited to four hours on a relatively simple issue. (ECF No.
16  752 at 14-17.)

17     Judge Ferenbach did not clearly err in upholding the protective order on
18  these topics. Judge Ferenbach and Special Master Pro both determined that the
19  GFGA was irrelevant after an *in camera* review of its terms. (*See id.*) Those terms
20  apparently contemplate the sale of 28 companies, none of which are separately
21  valued. (*See* ECF Nos. 479, 565, 619, 742.) It seems unlikely that discovery on
22  this issue could yield useful information on the value of the Sun.

23     While the Court has permitted testimony on the Stephens LoI, *see infra*,
24  the relevance of that document has no bearing on the relevance of the GFGA,
25  which is a separate document dealing with a separate issue.

26     Given the above considerations, and the considerations of time, cost, and
27  proportionality, it was not clear error to determine that discovery on these issues
28  was either irrelevant or disproportional.

The Court overrules the RJ's objection to this portion of Judge Ferenbach's order.

### b.  The GMG's Non-Sun Publications (Topics 28-31)

Judge Ferenbach's protective order on Topics 28-31 prohibits discovery into the advertising sales, circulation, readership, targeted audiences, and printing operations of the Greenspun Media Group ("GMG")'s non-Sun publications. (*See* ECF No. 752 at 5.) Judge Ferenbach found that these topics were "non-discoverable, irrelevant, and disproportional." (ECF No. 742 at 5.) He reached his irrelevance conclusion, in part, by identifying the relevant market and concluding that GMG's non-Sun publications were not competitors in that market.

The RJ objects that the definition of the relevant market is a contested issue, and Judge Ferenbach does have the power to define the market at this stage in the litigation. It further argues that information about GMG's non-Sun printing, distributing, and advertising processes is relevant not only to the scope of the market but also to the existence of barriers to entry in that market. (ECF No. 752 at 8-13.) Finally, it argues that discovery would not be disproportionate because the topics at issue are highly relevant to the dispute, and they are not complex.

The scope of the relevant market "is a question of fact for the jury." *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1002 (9th Cir. 2008). The Court cannot definitively identify the relevant market at this stage in the litigation. But parties to antitrust litigation do not have unrestrained power to discover any potentially market-related fact. *See, e.g., Mfg. Research Corp. v. Greenlee Tool Co.*, 693 F.2d 1037, 1042-43 (11th Cir. 1982) (affirming denial of discovery of defendant's conduit bender sales where the relevant product market was cable bender market); *Neumann v. Vidal*, 1981 U.S. Dist. LEXIS 17689 (D.D.C. 1981) (limiting discovery to wall building on U.S. highways and road

projects after the court preliminarily determined that was the relevant market). Discovery may be limited by the scope of the market, as defined in the complaint. *See Bal Seal Engineering, Inc. v. Nelson Products, Inc.*, Case No. 8:13-cv-01880-JLS-KESx, 2017 WL 10311212, at *2 (C.D. Cal. 2017) ("How the relevant market is defined determines the scope of the discovery . . . .").

The Sun's complaint proposes a relevant market, and the RJ does not propose an alternative. (*See* ECF No. 296 at 48 ¶ 106.) In fact, the RJ adopts the Sun's market definition for its own antitrust claims against the Sun. (*Id.* at ¶ 107.) With regard to challenging the Sun's market, the RJ merely lists products that might also compete with the Sun/RJ paper. (*Id.* at ¶ 106 (suggesting that the relevant market could include "internet news websites, mobile news apps, local TV news, cable TV news, radio stations, and satellite radio").)

The RJ cannot discover information on all potential products merely by disagreeing with the Sun's definition of the relevant market. Rather, its discovery is limited by the market pled by the Sun. *See Bal Seal Engineering*, 2017 WL 10311212, at *2. Judge Ferenbach did not clearly err in determining that discovery into the wide range of other publications owned by the GMG was irrelevant to weighing the legitimacy of the Sun's alleged market.

Further, because the existence of barriers to entry is defined by the scope of the relevant market, *see, e.g., Rebel Oil Co., Inc. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1439 (9th Cir. 1995) (holding that the existence of barriers to entry *into the relevant market* is relevant to a court's market power analysis in an antitrust proceeding), Judge Ferenbach did not clearly err in finding that discovery on Topics 28-30 was irrelevant in light of the pled market. (*See* ECF No. 752 at 8-13 (arguing that Topics 28-30 are relevant because they could demonstrate low barriers to entry in the relevant market).)

Relevance aside, Judge Ferenbach did not clearly err in concluding that discovery related to GMG's non-Sun publications would be disproportional to the

needs of the case. Imposing extensive discovery on the operations of publications that are not involved in this litigation, including discovery into sales, circulation, readership, target audiences, and printing operations, would be unduly burdensome and disproportionate.

The Court overrules the RJ's objection on this issue.

### c. Damages to the LasVegasSun.com Brand (Topic 24)

The RJ also challenges the protective order barring discovery on damages to the LasVegasSun.com brand and "[t]he extent to which GMG separates or distinguishes the brand of the printed *Sun* versus the brand for LasVegasSun.com" (Topic 24). Judge Ferenbach upheld the protective order because he found damages to the website's brand to be irrelevant, since the Sun only seeks damages to the printed *Sun*. The RJ objects that expanded discovery is appropriate because the print *Sun* and LasVegasSun.com are the same brand, with the same registered trademark, writers, and advertising staff.

Judge Ferenbach did not clearly err in finding evidence on the LasVegasSun.com brand irrelevant. The Sun does not seek damages from harm to its digital operations, and the Sun/RJ Joint Operating Arrangement ("JOA") does not impose any obligations on the RJ related to Sun website. (*See* ECF No. 837-6.)  It is not clear error to conclude that the Sun and the  LasVegasSun.com are separate brands and that discovery on the  LasVegasSun.com is irrelevant in light of these facts.

The RJ's objections on this issue are overruled.

### d. The Distributions (Topics 21 and 25)

Finally, the RJ objects to Judge Ferenbach's orders prohibiting discovery on Topics 21 and 25, which concern the distribution of a $25 million payout to Sun shareholders (Topic 21) and the distribution of proceeds from the Stephens Media settlement and the 2019 arbitration judgment against the RJ (Topic 25). Judge Ferenbach found that these topics were neither relevant nor proportional

because they occurred decades ago, before Brian Greenspun and GMG took control of the Sun.

As for Topic 21, the RJ objects that there is no proof that the shareholder distributions occurred decades ago, and the RJ should not be forced to rely on the Sun's unsupported contentions about the date of the distributions. The RJ further objects that all distributions are relevant to show alter-ego liability of GMG and Brian Greenspun, since their use of money intended for the Sun would demonstrate their alter ego status. Finally, the RJ objects that the above-mentioned judgment distributions are relevant to show damages because, if the money from the 2019 arbitration did not go to the Sun, that would undermine the Sun's claim that it had been pushed to the brink of collapse by the RJ's actions.

Judge Ferenbach did not clearly err in concluding that both topics were irrelevant and disproportionate. As for the shareholder distributions (Topic 21), GMG gave sworn testimony that there have been no shareholder distributions since GMG became parent company of the Sun. (ECF No. 761-3 at 5:2-5; *see also* ECF No. 462-2 at ¶ 6 (indicating that GMG and Greenspun took ownership of the Sun at the same time).) Since the distribution occurred before Greenspun and GMG took ownership, it cannot be relevant to the RJ's alter-ego claims.

As for the other distributions (Topic 25), it was not clear error to determine that the distribution of the Stephens Media settlement and the 2019 judgment was irrelevant to this case. Nor was it clear error to determine that discovery related to both topics would be disproportionate to the needs of the case. Further, granting an additional four hours to depose the Sun's 30(b)(6) witness, who has already been deposed for seven hours, would be unduly burdensome. *See* Fed. R. Civ. P. 30(d) (limiting depositions to "1 day of 7 hours" in most cases).

The RJ's objections on this issue are overruled.

### 2. THE STEPHENS LETTER OF INTENT

### a. Background

Around the time the 2005 JOA was formed, the RJ entered into a separate Mark and Domain Name License Agreement with the Sun, the Greenspun Media Group ("GMG"), and Vegas.com LLC, in which the RJ allowed Vegas.com and GMG to use the URL lasvegas.com in exchange for a one-time fee and escalating monthly payments until 2040. (ECF No. 450-3 ¶ 54.) At that time, the Sun, GMG, and Vegas.com were each owned by members of the Greenspun family. (*See* ECF Nos. 819, 820 at 3-4.)

In or around June 2013, Stephens proposed an agreement with the Greenspun siblings which would terminate the 2005 JOA, assign lasvegas.com license rights to the Sun, grant Stephens rights to the Sun's website, LasVegasSun.com, and require Stephens to pay the Greenspun siblings $70,000 each. (ECF No. 450-3 ¶ 63). This agreement was formalized in a Letter of Intent between Stephens, the Sun, and TGC (as manager of GMG). This is the Letter of Intent at issue in Defendants' Objection. Stephens and the Greenspun family never went through with the agreement, for reasons irrelevant to this order.

In 2020, while discovery in this case was underway, Magistrate Judge Brenda Weksler ordered the Sun to "identify each category of damages [it] currently seeks in this case, including its theory and computation of damages" by December 31, 2020. (ECF No. 275 at 16 ("the Weksler Order").) The Weksler Order noted that the Sun was only required to comply as best it could, given the information currently available to it and stated that, if the sun intended to use expert testimony to create and apply a calculation method, it was free to disclose that calculation method alongside its expert disclosures (i.e., at a later date). *Id.* The Sun's subsequent disclosure did not explicitly mention the LoI, but it did note that it was seeking damages based on a theory of "diminution of value." (ECF No. 348-2 at 11.)

Later, on June 7, 2022, which was the last day of discovery, the Sun

disclosed that one of its experts, Dr. Russell L. Lamb, would rely on the Stephens LoI in his damages calculation. (ECF Nos. 776-2, 778-2.) Specifically, Dr. Lamb would use the Stephens LoI to infer the Sun's value in June 2013 and, by comparing that inference to the Sun's current valuation, to conclude that the RJ has been syphoning profits from the Sun.

The RJ then moved to preclude reliance on the Stephens LoI based on the Sun's alleged failure to disclose its intention to rely on the Stephens LoI in violation of both Fed. R. Civ. P. 26 and the Weksler Order. The RJ argued that preclusion was appropriate under Fed. R. Civ. P. 37 and the doctrine of judicial estoppel.

Special Master Pro found that the RJ was not entitled to Rule 37 sanctions or estoppel. (ECF No. 805.) The RJ then appealed to Magistrate Judge Ferenbach, who agreed with Special Master Pro, after reviewing the issue *de novo*. (ECF No. 818.)

The RJ now appeals to this Court, raising the same arguments it raised in its original motion and in its objection to Special Master Pro's decision on that motion.

### b. Rule 26 and the Weksler Order

The RJ argues that Dr. Russell's testimony violates both Fed. R. Civ. P. 26(a)(1) and the Weksler Order, (ECF No. 275) and asks this Court to respond by (1) issuing sanctions under Fed. R. Civ. P. 37 that bar admission of relevant parts of Dr. Russell's Report or (2) ordering estoppel, similarly barring relevant sections of the Report. The Court concludes that the Sun did not violate Rule 26 or the Weksler order, and Judge Ferenbach did not clearly err in deciding that the RJ was not entitled to Rule 37 sanctions or estoppel.

Rule 26 requires parties to disclose, "based on the information reasonably available to [them]," Fed. R. Civ. P. 26(a)(1)(E), "a computation of each category of damages" they will seek, *Hamilton v. Wal-Mart Stores, Inc.*, 29 F.4th 575, 590

(9th Cir. 2022) (citing Fed. R. Civ. P. 26(a)(1)(A)). The Weksler Order, similarly, required the Sun, by December 31, 2020, to "identify each category of damages [it] currently seeks in this case, including its theory and computation of damages." (ECF No. 275 at 16.) The Weksler Order noted that the Sun was only required to comply as best it could, given the information currently available to it and stated that, if the sun intended to use expert testimony to create and apply a calculation method, it was free to disclose that calculation method alongside its expert disclosures (i.e., at a later date). *Id.*

Judge Ferenbach made two determinations that suggest that the Sun did not violate Rule 26 or the Weksler Order. Specifically, Judge Ferenbach found that (1) "the Sun has consistently maintained throughout these proceedings that the Stephens LOI is relevant to the issue of the value of the Sun and hence its damages"; (2) the Sun timely disclosed that it was seeking damages for diminution in value and that the Stephens LOI was a part of its diminution theory.

These determinations by Judge Ferenbach were not clearly erroneous. The Sun disclosed that it was seeking damages based on a theory of diminution of value in December 2020. (ECF No. 348-2 at 11.) It further disclosed that the LoI was relevant to that theory on several occasions. (*E.g.,* ECF No. 449 at 26 (explaining that the LoI was relevant to the Sun's valuation and the RJ had access to the LoI); ECF No. 462 at 6 (explaining the same, in greater detail); ECF No. 793-2 at 85:16-86:4 ("there's one major point, [to] which . . . [the LoI] is relevant . . . it would be for value").) The RJ has even acknowledged the LoI's relevance in other briefings. (ECF No. 704 at 7 ("[T]he Sun wants to rely on two prior contemplated sales of the Sun to support its damages—a 2017 offer from Defendants . . . [including] a 2013 offer from Stephens Media.").) Contrary to the RJ's arguments, the Sun never argued that the LoI was irrelevant to its calculation of damages, and no judge ever held it to be irrelevant for those

1    purposes.

2          Because the Sun repeatedly notified the RJ of the LoI's relevance to its

3    damages calculations, it was not clear error to conclude that the Sun had not

4    violated Rule 26, or if it had, that any violation was substantially justified or

5    harmless. Because the Sun notified Defendants of its "diminution of value" theory

6    of damages before the Weksler Order deadline, and because that Order (1)

7    required only disclosure of damages *theories*, (ECF No. 275 at 16), and (2) allowed

8    for the disclosure of expert calculation methods at a later date, *id.*, it was not

9    clear error to conclude that the Sun did not violate the Weksler Order.

10         If Judge Ferenebach did not clearly err in reaching the above conclusions,

11   he could not have erred in refusing to impose Rule 37 sanctions. A motion for

12   exclusionary sanctions under Rule 37 generally cannot be approved without a

13   showing that the non-moving party has violated its disclosure obligations under

14   Rule 26 or a court order. *See* Fed. R. Civ. P. 37 ("*If a party fails to make a*

15   *disclosure required by Rule 26(a),* any other party may move . . . for appropriate

16   sanctions.") (emphasis added); *Wyle v. R.J. Reynolds Industries, Inc.*, 709 F.2d

17   585, 589 (9th Cir. 1983) ("[Rule 37] authorizes the district court . . . to impose a

18   wide range of sanctions when a party fails to comply with the rules of discovery

19   or with court orders enforcing those rules.") (citations omitted). If the Sun did not

20   violate Rule 26 or the Weksler Order, or if any violation was minor, it was not

21   clear error to deny sanctions under Rule 37.

22         Nor did Judge Ferenbach err in refusing to estop the Sun's expert from

23   relying on the Stephens LoI. "Judicial estoppel generally [acts to prevent] a party

24   from prevailing in one phase of a case on an argument and then relying on a

25   contradictory argument to prevail in another phase." *Milton H. Greene Archives,*

26   *Inc. v. Marilyn Monroe LLC*, 692 F.3d 983, 993 (9th Cir. 2012). As noted above,

27   the Sun never argued that the LoI was irrelevant for damages purposes. Both

28   Judge Ferenbach and Judge Pro agree on this point. (ECF No. 805 at 5 (the record

"strongly supports" the argument that "[t]he Sun . . . has consistently maintained . . . that the Stephens LoI is relevant to the issue of the value of the Sun and hence its damages"); ECF No. 818 at 3 ("The Sun consistently maintained throughout these proceedings that the Stephens LoI is relevant to the issue of the value of the Sun and hence its damages.").) If the Sun never claimed that the LoI was irrelevant, then estopping it from arguing that the LoI is relevant would be inappropriate.

For the above reasons, the RJ's objections to Judge Ferenbach's order on the Stephens LoI is overruled.

**B. Testimony of Kenneth Paulson**

The Sun seeks an order barring the expert testimony of Kenneth Paulson. Mr. Paulson intends to testify on behalf of the RJ in support of its claims that the Sun breached the cooperation and quality provisions of the 2005 JOA. The Sun argues that Mr. Paulson's testimony is inadmissible because it is unreliable under *Daubert v. Merrill Dow Pharms Inc.* and invades the role of the jury by offering improper legal opinion. 509 U.S. 579 (1993). The RJ seeks an order excluding any aspect of Mr. Paulson's testimony that relates to: (1) any of his studies, including any comparison or count of the number of local news articles on LasVegasSun.com; (2) interpretation of contractual provisions of the Amended JOA; (3) whether the Sun breached any provision of the Amended JOA; and (4) the Sun's intent.

The Court agrees that some of Mr. Paulson's proposed testimony is improper. It therefore bars any aspect of Mr. Paulson's testimony that (1) interprets contractual provisions of the JOA; (2) provides a conclusion about whether the Sun breached the JOA; or (3) interprets the Sun's intent. It disagrees about the reliability of Mr. Paulson's testimony under *Daubert*, so it denies the Sun's motion as to that issue.

**1. Reliability and *Daubert***

1   The admissibility of expert testimony is governed by Federal Rule of

2   Evidence 702, which provides:

3   A witness who is qualified as an expert by knowledge, skill,
    experience, training, or education may testify in the form of an

4   opinion or otherwise if: (a) the expert's scientific, technical, or other
    specialized knowledge will help the trier of fact to understand the

5   evidence or to determine a fact in issue; (b) the testimony is based
    on sufficient facts or data; (c) the testimony is the product of reliable

6   principles and methods; and (d) the expert has reliably applied the
    principles and methods to the facts of the case.

7

8   Fed. R. Evid. 702. The party offering expert testimony bears the burden of proving

9   the testimony complies with Rule 702. *Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d

10  594, 598 (9th Cir. 1996).

11  *Daubert v. Merrill Dow Pharms Inc.* gives the standard for determining

12  whether testimony is the product of reliable principles and methods under Fed.

13  R. Evid. 702(c). 509 U.S. at 593-95. Under that standard, courts may consider

14  the following factors, if applicable: "(1) whether the theory or technique employed

15  by the expert is generally accepted in the scientific community; (2) whether it's

16  been subjected to peer review and publication; (3) whether it can be and has been

17  tested; and (4) whether the known or potential rate of error is acceptable."

18  *Hardeman v. Monsanto Co.*, 997 F.3d 941, 960 (9th Cir. 2021) (internal quotation

19  marks omitted) (citing *Daubert*, 509 U.S. at 593-95). "This inquiry is flexible and

20  should be applied with a liberal thrust favoring admission." *Hardeman*, 997 F.3d

21  at 960 (internal quotation marks and citations omitted).

22  The Sun argues that Mr. Paulson's studies are not reliable because: (1) they

23  are based on insufficient factual evidence; (2) they unreasonably conflate the

24  printed *Sun* and LasVegasSun.com newsrooms; (3) they are based on an

25  unreliable and nonreplicable method; (4) they are not based on techniques which

26  are generally accepted in the scientific community; and (5) they cannot be used

27  to demonstrate reduction of output in the market to support the RJ's antitrust

28  claims. The Court addresses each of these issues below.

1

### a. Sufficiency of Facts

2   The Sun first argues that Mr. Paulson's testimony is based on insufficient

3   facts because he failed to consider certain information in rendering his opinion.

4   The information Mr. Paulson allegedly failed to consider includes the deposition

5   testimony of certain witnesses, letters of support for the *Sun*, reader surveys and

6   opinions on the *Sun*, and alternative explanations for the *Sun*'s alleged poor

7   quality.

8   Expert testimony must be based on "sufficient facts or data" to be

9   admissible. Fed. R. Evid. 702(b). In some cases, failure to consider crucial

10   information may render an analysis "so incomplete as to be inadmissible as

11   irrelevant." *Hemmings v. Tidyman's, Inc.*, 285 F.3d 1174, 1188 (9th Cir. 2002)

12   (quoting *Bazemore v. Friday*, 478 U.S. 385, 400 n.10 (1986)). But more typically,

13   "failure to include variables will affect the analysis' probativeness, not its

14   admissibility." *Hemmings*, 285 F.3d at 1188; *see also In re EPD Investment Co.,*

15   *LLC*, 587 B.R. 711, 720 (C.D. Cal. 2018) (holding an expert witness's failure to

16   consider a bankrupt entity's tax returns and reliance on unaudited financial

17   information did not render the report inadmissible).

18   Mr. Paulson's testimony is based on a review of hundreds of editions of the

19   printed *Sun* and representative samples from other peer newspapers. He performs

20   largely quantitative analyses on factors including stories' timeliness, proximity of

21   focus, source (in-house or Associated Press copy), and age. (ECF No. 863-1 at

22   15.) And he applies these standards in the context of norms of the U.S.

23   metropolitan daily news industry.

24   The Sun's arguments effectively constitute a challenge to Mr. Paulson's

25   methodology. The Sun would rather Mr. Paulson consider more-qualitative

26   factors like the printed *Sun*'s writing quality, its ethical standards, and its

27   reputation. (ECF No. 898 at 19-20.) But "[d]isputes as to . . . faults in [an expert's]

28   use of a particular methodology . . . go to the weight, not the admissibility, of . .

. testimony." *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1231 (9th Cir. 1988). In any case, the Sun points to no source indicating that any of its proposed alternatives are necessary to the validity of Paulson's report. If the Sun wishes to undermine the credibility of Mr. Paulson's testimony or cast doubt on the reliability of his methods, it may do so at trial, before a jury. *See Hemmings*, 285 F.3d 1174 ("Vigorous cross-examination of a study's inadequacies allows the jury to appropriately weight the alleged defects and reduces the possibility of prejudice.").

### b. Conflation of Sun and LasVegasSun.com Newsrooms

The Sun next argues that Mr. Paulson's opinions are not "the product of reliable principles and methods" and not "properly applied to the facts of the case," because Mr. Paulson fails to consider crucial differences between the print Sun and  LasVegasSun.com. Fed. R. Evid. 702(c)-(d).

Mr. Paulson compares stories from the Sun's website and its printed paper and finds that only 23.9 percent of the staff-written stories on the website appear in the paper. To Paulson, this suggests that the Sun is keeping its best articles out of its paper, (ECF No. 863-1 at 21-22), but the Sun complains that Mr. Paulson fails to consider that  LasVegasSun.com sources its stories from the staffs of many different GMG publications. According to the Sun, Mr. Paulson's numbers are artificially inflated because many of the stories that he thinks should be in the Sun paper have no connection to the Sun at all.

The Sun's arguments are insufficient for two reasons. First, the Sun is again complaining about methodology. Mr. Paulson's research is a viable way to quantify the source of the printed *Sun*'s news stories, which is helpful to the trier of fact in determining whether the Sun's printed quality has fallen below the standards set in the 2005 JOA. The Sun's critiques of Mr. Paulson's methodology are best saved for trial. *See Kennedy*, 161 F.3d at 1231 (holding that faults in methodology typically go to evidence's weight, not its admissibility).

1    Second, Mr. Paulson has good reasons to conflate the Sun's staff writers

2    with the writers of other GMG publications. GMG considers writers from all its

3    publications to be part of "a single newsroom, generating content for all [its]

4    properties." (ECF No. 863-1 at 13-14.) The Sun also shares staff with many of

5    GMG's other publications, including its managing editor, chief operating officer,

6    and several of its content contributors. (ECF No. 939 at 17-18.) The print Sun

7    has also published articles originally written for other GMG publications, (*Id.* at

8    19; ECF No. 939-14 at 3:5-4:2), and GMG pays all its publications' writers from

9    the same bank account (ECF No. 939-13 at 3:12-24).

10                    **c. Possibility of Replication**

11        *Daubert* requires that an expert's methodology be "testable." *Daubert*, 509

12   U.S. at 593. A crucial factor in a study's testability is whether it can be replicated.

13   *See, e.g. City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1047 (9th Cir. 2014).

14   That is, a study's methods are not "reliable" if a different researcher, imitating

15   the processes described in the study, could reach a substantially different result.

16   *Id.* ("Under *Daubert's* testability factor, the primary requirement is that [s]omeone

17   else using the same data and methods . . . be able to replicate the result[s].").

18        The Sun argues that Mr. Paulson's study is not replicable because Mr.

19   Paulson does not provide a copy of one of the data sets on which he relies: his

20   sample of the Sun's online publications. The Sun argues that it cannot replicate

21   Mr. Paulson's results if it does not know which stories he analyzed to reach those

22   results.

23        Mr. Paulson's research is replicable. He describes his method for collecting

24   stories from the  LasVegasSun.com and the printed *Sun* on pages 21-22 of his

25   report. (ECF No. 863-1 at 22-23.) The method is relatively simple, employing a

26   random number generator across "constructed weeks" of Sun stories to better

27   capture the non-normal distribution of stories in a given week. (*Id.*) It is true that

28   Mr. Paulson does not preserve the actual data set from which he draws his

                                    17

1   conclusions, but he provides enough information for any other researcher to
2   create a statistically similar data set using the archived stories on the Sun's
3   website. *See, e.g., April 3, 2019*, Las Vegas Sun,
4   https://lasvegassun.com/news/2019/apr/03/ (last visited, March 30, 2024).

5   The Sun can apply the same data collection tools to the same pool of data,
6   develop a comparable data set, and apply identical analyses. Mr. Paulson's
7   research is replicable. *See also U.S. v. Romano*, 794 F.3d 317, 333 (2d Cir. 2015)
8   (holding that an expert's testimony was replicable even when the description of
9   some of his methodology was "less-than-clear," and it was based in part on his
10  non-replicable experience as a coin collector).

### d. Generally Accepted Methods of Measuring Quality

12  The Sun next argues that Mr. Paulson's testimony is inadmissible because
13  it attempts to measure an entirely subjective characteristic, quality, and applies
14  no generally accepted methods for measuring that characteristic.

15  *Daubert* requires experts to apply methods that are "generally accepted in
16  the scientific community." *Daubert*, 509 U.S. at 593.

17  Mr. Paulson employs two metrics, which he argues are strong objective
18  indicators of newspaper quality: proximity and timeliness. (*See* ECF No. 863-1 at
19  15.) He cites several studies that corroborate the importance of these metrics in
20  measuring newspaper quality. (*Id.* at 14-19.)

21  The Sun's complaints that Mr. Paulson failed to use *different* metrics are
22  insufficient to bar his testimony on these grounds.

### e. Relevance to the RJ's Section 2 Claims

24  The parties also disagree about whether Mr. Paulson's testimony can be
25  used to demonstrate a reduction in output in the relevant market under the RJ's
26  Sherman § 2 claims. The Court dismisses those claims in its order on the Sun's
27  motion for summary judgment (ECF No. 836), so this issue is moot.

### 2. Legal Conclusions and Testimony on Intent

The Sun next argues that the Court should bar any aspect of Mr. Paulson's testimony that interprets provisions of the 2005 JOA, makes a conclusion about whether the Sun breached the 2005 JOA, or opines on the Sun's intent to degrade the quality of the printed *Sun*. The Court agrees that Mr. Paulson may not testify on any of the above subjects.

Expert testimony "cannot be used to provide legal meaning or interpret [contracts] as written." *McHugh v. United Service Auto. Ass'n*, 164 F.3d 451, 454 (9th Cir. 1999). Likewise, "an expert cannot testify to a matter of law amounting to a legal conclusion." *U.S. v. Tamman*, 782 F.3d 543, 552 (9th Cir. 2015). But experts can testify to the existence of an industry standard and opine on whether a party has met that standard. *Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (holding admissible an expert's testimony that defendants deviated from industry standards, even though that conclusion supported a finding of bad faith, which was an issue reserved for the finder of fact).

In its Order on the Sun's motion for summary judgment, the Court determined that the quality provision in § 5.2 of the 2005 JOA is ambiguous. At trial, Mr. Paulson may not testify on the meaning of any provision of the 2005 JOA. He may testify on the editorial quality standards in the U.S. metropolitan daily news industry. The Court interprets the challenged portions of Mr. Paulson's report as speaking only to that issue. (*See, e.g.,* ECF No. 863-1 at 24 ("[o]ne widely embraced measure of a newspaper's quality is how much of its content is generated by its own staff and what percentage is simply bought from other services.").) Mr. Paulson also may testify as to his findings about the Sun's quality using his objective indicators of newspaper quality. *See Hangarter*, 373 F.3d at 1016. He may not testify on whether the Sun breached any provision of the 2005 JOA. His opinion that the Sun is "in clear violation of the 2005 agreement . . . ." is therefore inadmissible. (ECF No. 863-1 at 14.)

Finally, the Sun is correct that Mr. Paulson occasionally impermissibly opines on the Sun's state of mind. "[E]xpert testimony is inadmissible when it addresses lay matters which a jury is capable of understanding and deciding without the expert's help." *Aya Healthcare Services, Inc. v. AMN Healthcare, Inc.*, 613 F. Supp. 3d 1308, 1322 (S.D. Cal. 2020), *aff'd*, 9 F.4th 1102 (9th Cir. 2021) (citing *Andrews v. Metro N. Commuter R.R. Co.*, 882 F.2d 705, 708 (2d Cir. 1989); *see also* Fed. R. Evid. 702(a). Juries are capable of determining an actor's state of mind, and courts "routinely exclude . . . expert testimony as to intent, motive, or state of mind." *Siring v. Oregon State Bd. of Higher Educ. Ex rel. E. Oregon Univ.*, 927 F. Supp. 2d 1069, 1077 (D. Or. 2013) (collecting cases).

The Court has identified several impermissible conclusions related to the Sun's intent. (ECF No. 863-1 at 21 ("79 percent of the content created by the *Sun* staff was *intentionally* excluded from the Sun print paper") (emphasis added), 22 ("[t]he Sun's refusal to publish [local news stories] is inexplicable and *intentional*" (emphasis added), 28 ("[the Sun's failure to publish recent news] isn't journalistic negligence. It's . . . an *intentional* delaying of the news") (emphasis added), 60 ("the *Sun* has *intentionally* withheld local news, abandoned principles of timeliness, shifted its focus away from Las Vegas, [etc.]) (emphasis added); ECF No. 863-2 at 2 ("[the Sun] *intentionally* withholds most of this content from the print Sun") (emphasis added), 41 ("the Sun's historical practice of delaying publication of news appears to be part of an *intentional* strategy to shortchange readers") (emphasis added). Any testimony by Mr. Paulson suggesting the Sun's intent, motive, or state of mind is inadmissible.

## III.  CONCLUSION

It is therefore ordered that Defendants' Objection (ECF Nos. 751, 752) to Judge Ferenbach's protective orders (ECF No. 742) is overruled.

It is further ordered that the RJ's motion to file a reply to the above mentioned objection (ECF No. 772) is granted.

It is further ordered that Defendants' Objection (ECF Nos. 819/820) to Judge Ferenbach's order barring reliance on the Stephens LoI (ECF No. 818) is overruled.

It is further ordered that the Sun's motion to exclude the testimony of Kenneth Paulson (ECF Nos. 897/898) is granted in part and denied in part, as detailed above.

Dated this 31st day of March 2024.

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE