E. LEIF REID, Nevada Bar No. 5750
KRISTEN L. MARTINI, Nevada Bar No. 11272
NICOLE SCOTT, Nevada Bar No. 13757
CLARK HILL PLC
1700 S. Pavillion Center Dr., Suite 500
Las Vegas, Nevada 89135
Tel: 702.862.8300
Fax: 702.778.9709
Email: lreid@clarkhill.com
        kmartini@clarkhill.com
        nscott@clarkhill.com

JAMES J. PISANELLI, Nevada Bar No. 4027
TODD L. BICE, Nevada Bar No. 4534
PISANELLI BICE PLLC
400 South 7th Street, Suite 300
Las Vegas, Nevada 89101
Tel: 702.214.2100
Fax: 702.214.2101
Email: JJP@pisanellibice.com
        TLB@pisanellibice.com

JORDAN T. SMITH, Nevada Bar No. 12097
BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106
Tel: 702.464.7022
Fax: 702.382.8135
Email: jsmith@bhfs.com

JOSEPH M. ALIOTO, PRO HAC VICE
ALIOTO LAW FIRM
One Sansome Street, 35th Floor
San Francisco, California 94104
Tel: 415.434.8900
Fax: 415.434.9200
Email: jmalioto@aliotolaw.com

*Attorneys for Plaintiff/Counterdefendants*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| LAS VEGAS SUN, INC., a Nevada corporation,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>SHELDON ADELSON (Estate Of), an individual, and as the alter ego of News+Media Capital Group LLC, Las Vegas Review-Journal, Inc., and Interface Operations LLC dba Adfam; PATRICK DUMONT, an individual, and as alter ego of Las Vegas Review-Journal, Inc., News+Media Capital Group, LLC, and Interface Operations LLC dba Adfam; NEWS+MEDIA CAPITAL GROUP LLC,, a Delaware limited liability company; LAS VEGAS REVIEW-JOURNAL, INC., a Delaware corporation; INTERFACE OPERATIONS LLC dba ADFAM, a Delaware limited liability company and as the alter ego of Las Vegas Review-Journal, Inc., and | Case No.: 2:19-CV-01667-ART-MDC<br><br><br>**INDEX OF EXHIBITS TO EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION (VOLUME 4)** |

1

News+Media Capital Gorup, LLC; and DOES,
I-X, inclusive,

Defendants.

LAS VEGAS REVIEW-JOURNAL, a
Delaware corporation,

Counterclaimant,

v.

LAS VEGAS SUN, INC., a Nevada
corporation; BRIAN GREENSPUN, an
individual and as alter ego of Las Vegas Sun,
Inc.; GREENSPUN MEDIA GROUP, LLC, a
Nevada limited liability company, as the alter
ego of Las Vegas Sun, Inc.,

Counterclaim Defendants.

## APPENDIX INDEX

| Exhibit No. | Description | Vol. | Page Nos. |
|---|---|---|---|
| 1 | Sept. 19, 2022, Expert Report Excerpts of Las Vegas Sun, Inc.'s Expert Dr. Michael Katz (**FILED UNDER SEAL**) | 1 | SA1-SA246 |
| 2 | Sept. 19, 2022, Expert Report Excerpts of Las Vegas Sun, Inc.'s Expert Dr. Robert Picard (**FILED UNDER SEAL**) | 2 | SA247-SA291 |
| 3 | June 17, 1989, Joint Operating Agreement (the "1989 JOA") (SUN_00001996-2039) | 2 | SA292-SA336 |
| 4 | Report of the Assistant Attorney General in Charge of the Antitrust Division, Public File No. 44-03-13, In the Matter of: Application by the Las Vegas Sun, Inc. and Donrey of Nevada, Inc. for Approval of a Joint Newspaper Operating Arrangement Pursuant to the Newspaper Preservation Act, 15. U.S.C. §§ 1801-1804 (SUN_00024386-453) | 2 | SA337 – SA405 |
| 5 | June 1, 1990, Opinion of The Attorney General, Public File No. 44-03-13, In the Matter of: Application by the Las Vegas Sun, Inc. and Donrey of Nevada, Inc. for Approval of a Joint Newspaper Operating Arrangement Pursuant to the Newspaper Preservation Act, 15. U.S.C. §§ 1801-1804 (SUN_00024373-85) | 2 | SA406 – SA420 |
| 6 | Declaration of Brian Greenspun in Support of Plaintiff/Counterdefendants' Emergency Motion for Temporary Restraining Order and Preliminary Injunction | 2 | SA421 – SA428 |

| | | | |
|---|---|---|---|
| 7 | Hearing Transcript Excerpts of Mark Hinueber, *Las Vegas Sun, Inc. v. Stephens Media LLC*, AAA Case No. 01-16-0001-9187 (Oct. 6, 2016) (Vol. 4) (SUN_00023106-08, 273-74, 278, 280, 282-86, 383) (**FILED UNDER SEAL**) | 2 | SA429 – SA442 |
| 8 | Sept. 8, 2016, Declaration of Mark Hinueber in Support of Stephens Media LLC's Opposition to Las Vegas Sun's Motion for Summary Judgment, AAA Case No. 01-16-0001-9187 (SUN-00064364-67) (**FILED UNDER SEAL**) | 2 | SA443 – SA447 |
| 9 | June 10, 2005, Amended and Restated Agreement (the "2005 JOA") (SUN_00002045-69) | 2 | SA448 – SA473 |
| 10 | Hearing Transcript Excerpts of Jackson Farrow, *Las Vegas Sun, Inc. v. Stephens Media LLC*, AAA Case No. 01-16-0001-9187 (Oct. 5, 2016) (Vol. 3) (SUN_00021972-74, 76-83, 159) (**FILED UNDER SEAL**) | 2 | SA474 - SA486 |
| 11 | Hearing Transcript Excerpts of Brian Greenspun, *Las Vegas Sun, Inc. v. Stephens Media LLC*, AAA Case No. 01-16-0001-9187 (Oct. 3, 2016) (Vol. 1) (SUN_00019641-43, 70, 96-97, 99, 703, 842) (**FILED UNDER SEAL**) | 2 | SA487 – SA496 |
| 12 | Sept. 19, 2022, Expert Report Excerpts of Las Vegas Sun, Inc.'s Expert Lawrence Aldrich (**FILED UNDER SEAL**) | 3 | SA497 – SA537 |
| 13 | June 16, 2005, email from G. Lang to J. Farrow et al., re DR Partners' submission of 2005 JOA to DOJ "pursuant to the Newspaper Preservation Act, 15 USC § 1801 et seq. and 28 CFR § 48.16 (SUN_00005886-89) (**FILED UNDER SEAL**) | 3 | SA538 – SA542 |
| 14 | Sept. 19, 2022, Expert Report Excerpts of Las Vegas Sun, Inc.'s Expert Dr. Russell Lamb (**FILED UNDER SEAL**) | 3 | SA543 - 548 |
| 15 | Deposition Transcript Excerpts of Las Vegas Sun, Inc.'s Expert L. Aldrich, *Las Vegas Sun, Inc. v. Adelson*, No. 2:18-cv-0166-ART-VCF (D. Nev. March 15, 2023) | 3 | SA549 – SA575 |
| 16 | Sept. 23, 2005, email from C. Cliff to D. Jordan, et al., re Amendment of the Las Vegas JOA – Joint Defense Agreement (SUN_00001673-84) (**FILED UNDER SEAL**) | 3 | SA576 – SA587 |
| 17 | Aug. 5, 2005, facsimile from B. Matelson to G. Lang re Las Vegas JOA, CID No. 23751 (SUN_00012237-47) (**FILED UNDER SEAL**) | 3 | SA586- SA599 |
| 18 | Oct. 12, 2005, letter from A. Marx to B. Matelson, re responses to CID No. 23751 (SUN_00001806-14) (**FILED UNDER SEAL**) | 3 | SA600 – SA609 |
| 19 | Feb. 13, 2006, facsimile from B. Matelson to A. Marx, re Civil Investigative Demand Nos. 24097 & 24098 (SUN_00012233-36) (**FILED UNDER SEAL**) | 3 | SA610 – SA614 |

| | 20 | Deposition Transcript Excerpts of Las Vegas Sun, Inc.'s 30(b)(6) Corporate Representative Robert Cauthorn, *Las Vegas Sun, Inc. v. Adelson*, No. 2:18-cv-0166-ART-VCF (D. Nev. Feb. 16, 2022) **(REDACTED)** | 3 | SA615 – SA636 |
|---|---|---|---|---|
| | 21 | Aug. 16, 2005, letter from B. Matelson to G. Lang re 8/16/05 DOJ faxed letter to G. Lang re Civil Investigative Demand No. 23751 (SUN_00012248-50) **(FILED UNDER SEAL)** | 3 | SA637 – SA640 |
| | 22 | Aug. 25, 2005, letter from G. Lang to B. Matelson re Las Vegas JOA (SUN_00001965-68) **(FILED UNDER SEAL)** | 3 | SA641 – SA645 |
| | 23 | Apr. 9, 2008, letter from B. Matelson to G. Lang, et al., re Las Vegas Joint Operating Agreement ("No Action Letter") (DEFS0000418) | 3 | SA646 – SA647 |
| | 24 | Deposition Transcript Excerpts of Las Vegas Review-Journal 30(b)(6) Corporate Representative Glenn Cook, *Las Vegas Sun, Inc. v. Adelson*, No. 2:19-cv-0166-ART-VCF (D. Nev. Aug. 19, 2022) **(REDACTED)** | 3 | SA648 – SA669 |
| | 25 | Deposition Transcript Excerpts of Brian Greenspun, *Las Vegas Sun, Inc. v. Adelson*, No. 2:19-cv-0166-ART-VCF (D. Nev. Mar. 23, 2022) | 3 | SA670 – SA689 |
| | 26 | Final Award of Arbitrator, *Las Vegas Sun, Inc. v. News+Media Capital Group, LLC*, AAA Case No. 01-18-0000-7568 (July 2, 2019) (SUN_00013635-46) **(FILED UNDER SEAL)** | 3 | SA690 – SA702 |
| | 27 | Aug. 29, 2019, letter from K. Moyer to B. Greenspun re: Notice of Default (SUN_00053251-53) | 3 | SA703 - SA706 |
| | 28 | Sept. 27-Oct. 4, 2019, email between counsel re Preliminary Injunction Motion | 3 | SA707 -SA718 |
| | 29 | Jan. 11, 2015, email from R. Pergament to P. Dumont et al., re Preliminary Observations (DEFS0028645-47) **(FILED UNDER SEAL)** | 3 | SA719 – SA722 |
| | 30 | Deposition Transcript Excerpts of Jason Taylor, *Las Vegas Sun, Inc. v. News+Media Capital Group, LLC*, AAA Case No. 01-18-0000-7568 (Mar. 21, 2019) **(FILED UNDER SEAL)** | 4 | SA723 – SA765 |
| | 31 | Deposition Transcript Excerpts of Jason Taylor, *Las Vegas Sun, Inc. v. Adelson*, No. 2:19-cv-0166-ART-VCF (D. Nev. May 12, 2022) | 4 | SA766 – SA790 |
| | 32 | April 3, 2017, email from J. Wilson to N. Cusick re Monday Meeting Notes (DEFS0016006-07) **(FILED UNDER SEAL)** | 4 | SA791 – SA793 |
| | 33 | Deposition Transcript Excerpts of Craig Moon, *Las Vegas Sun, Inc. v. Adelson*, No. 2:19-cv-0166-ART-VCF (D. Nev. Mar. 3, 2022) | 4 | SA794 – SA804 |
| | 34 | Jan. 18, 2023, Rebuttal Expert Report Excerpts of Las Vegas Sun, Inc.'s Expert Barbara Gottlieb **(FILED UNDER SEAL)** | 4 | SA805 – SA813 |

| 35 | Las Vegas Review Journal Payment Calculation JOA Fiscal Year Ending March 2018 (**FILED UNDER SEAL**) | 4 | SA814 – SA816 |
|---|---|---|---|
| 36 | Mar. 3, 2017, email from P. McGuire to C. Moon re Revised Summary of JOA Pmt. Calc (DEFS0165095-97) (**FILED UNDER SEAL**) | 4 | SA817 – SA820 |
| 37 | Stephens Media Group's Las Vegas Review Journal Fiscal Year End March 31, 2006, Financials (Exhibit 7 to Deposition of Robert Cauthorn, *Las Vegas Sun, Inc. v. News+Media Capital Group, LLC*, AAA Case No. 01-18-0000-7568 (Mar. 27, 2019)) (**FILED UNDER SEAL**) | 4 | SA821 – SA824 |
| 38 | Deposition Transcript Excerpts of Las Vegas Review-Journal 30(b)(6) Corporate Representative Stephen Hall, *Las Vegas Sun, Inc. v. Adelson*, No. 2:19-cv-0166-ART-VCF (D. Nev. May 12, 2022) (**REDACTED**) | 4 | SA825 – SA846 |
| 39 | Sept. 19, 2022, Expert Report Excerpts of Las Vegas Sun, Inc.'s Expert Barbara Gottlieb (**FILED UNDER SEAL**) | 4 | SA847 – SA859 |
| 40 | Feb. 12, 2016, email from P. Sack to S. Garfinkel re Las Vegas (DEFS0093000-24) (**FILED UNDER SEAL**) | 4 | SA860 – SA887 |
| 41 | Feb. 9, 2015, VRC Valuation of Certain Intangible Assets of Las Vegas Review Journal as of Dec. 10, 2015 (DEFS0092587-621) (**FILED UNDER SEAL**) | 4 | SA888 – SA923 |
| 42 | March 3, 2017, Email from C. Moon to F. Vega re an update and two quick questions (DEFS0013609-10) (**FILED UNDER SEAL**) | 4 | SA924 – SA926 |
| 43 | Las Vegas Review-Journal, Inc. Financial Statements December 31, 2019, and 2018 (DEFS0083496-515) (**FILED UNDER SEAL**) | 4 | SA927 – SA947 |
| 44 | Las Vegas Review Journal Payment Calculation JOA Fiscal Year Ending March 2020 (SUN_00008774) (**FILED UNDER SEAL**) | 5 | SA948 – SA950 |
| 45 | Apr. 30, 2022, email from S. Hall to R. Cauthorn re JOA Calculation – JOA Year Ended March 2022 (SUN_00084445-47) (**FILED UNDER SEAL**) | 5 | SA951 – SA954 |
| 46 | Sept. 19, 2022, Expert Report Excerpts of Las Vegas Sun, Inc.'s Expert Dr. Gregory Gundlach (**FILED UNDER SEAL**) | 5 | SA955 – SA1005 |
| 47 | Sept. 19, 2022, Expert Report Excerpts of Las Vegas Sun, Inc.'s Expert J. David Kordalski (**FILED UNDER SEAL**) | 5 | SA1006 – SA1020 |
| 48 | Apr. 4, 2023, Supplemental Expert Report Excerpts of Las Vegas Sun, Inc.'s Expert Dr. Gregory Gundlach (**FILED UNDER SEAL**) | 5 | SA1021 – SA1025 |
| 49 | Sept. 19, 2016, email from J. Wilson to E. Cassidy re: RJ with Sun? (DEFS01454464-67) (**FILED UNDER SEAL**) | 5 | SA1026 – SA1030 |
| 50 | Apr. 2, 2017, email from C. Moon to R. Cauthorn Re: Concerns about your new design (DEFS0002488-89) (**FILED UNDER SEAL**) | 5 | SA1031 – SA1033 |

| | | | |
|---|---|---|---|
| 51 | Apr. 17, 2019, email from K. Espejo to K. Moyer re: The Sun in eEdition (DEFS0166089-94) **(FILED UNDER SEAL)** | 5 | SA1034 – SA1040 |
| 52 | RESERVING FOR RJ'S ANSWERS TO ROG 13 MARCH 2022 | 5 | SA1041 – SA1052 |
| 53 | Deposition Transcript Excerpts of Las Vegas Review-Journal 30(b)(6) Corporate Representative Chris Blaser, *Las Vegas Sun, Inc. v. Adelson*, No. 2:19-cv-0166-ART-VCF (D. Nev. Aug. 11, 2022) **(REDACTED)** | 5 | SA1053 – SA1069 |
| 54 | Chris Jones & J.M. Kalil's article, Las Vegas Sun to rise with morning RJ, published in the Las Vegas Review Journal on June 15, 2005 (SUN_0000627-32) | 5 | SA1070 – SA1076 |
| 55 | Steve Kanigher's article, *Sun deal with R-J "a tremendous opportunity" Newspaper to return to morning delivery*, published in the Las Vegas Sun on June 15, 2005 (DEFS0190559-61) | 5 | SA1077 – SA1080 |
| 56 | Deposition Transcript Excerpts Ray Brewer, *Las Vegas Sun, Inc. v. Adelson*, No. 2:19-cv-0166-ART-VCF (D. Nev. June 24, 2022 | 5 | SA1081 – SA1091 |
| 57 | Las Vegas Review Journal Newsroom Guide (DEFS0185654-69) ((**FILED UNDER SEAL**) | 5 | SA1092 – S1108A |
| 58 | June 4, 2016, Front Page of Newspapers (SUN_00009885) | 5 | SA1109 – SA1110 |
| 59 | Jan. 11, 2018, Front Page of Las Vegas Sun (DEFS0001703) | 5 | SA1111 – SA1112 |
| 60 | Feb. 13, 2018, Front Page of Las Vegas Sun (DEFS0001697) | 5 | SA1113 – SA1114 |
| 61 | Feb. 12, 2018, Email from R. Brewer to R. Cauthorn re: Two quick questions from LV Sun print (SUN_00055720) **(FILED UNDER SEAL)** | 5 | SA1115 – SA1116 |
| 62 | Jan. 18, 2023, Rebuttal Expert Report Excerpts of Las Vegas Sun, Inc.'s Expert Dr. Michael Katz **(FILED UNDER SEAL)** | 6 | SA1117 – SA1229 |
| 63 | Deposition Transcript Excerpts Patrick Dumont, *Las Vegas Sun, Inc. v. Adelson*, No. 2:19-cv-0166-ART-VCF (D. Nev. Oct. 28, 2021) **(FILED UNDER SEAL)** | 6 | SA1230 – SA1246 |
| 64 | Deposition Transcript Excerpts Keith Moyer, *Las Vegas Sun, Inc. v. Adelson*, No. 2:19-cv-0166-ART-VCF (D. Nev. Apr. 5, 2022 | 6 | SA1247 – SA1264 |
| 65 | Aug. 30, 2019, letter from T. Burkholder to B. Greenspun re Message via the Las Vegas Sun (SUN_00000293) **(REDACTED)** | 6 | SA1265 – SA1266 |
| 66 | Sept. 6, 2019, email originally from A. Marshall to Las Vegas Sun Letters, re Please work with the RJ to maintain the JOA (SUN_00024479) **(REDACTED)** | 6 | SA1267 – SA1268 |
| 67 | Jan. 15, 2019, email from K. Woods to B. Greenspun re Message via the Las Vegas Sun (SUN_00000315) **(REDACTED)** | 6 | SA1269 – SA1270 |
| 68 | Aug. 27, 2017, email from M. Spigelman to B. Greenspun re Message via the Las Vegas Sun (SUN_00000376-77) **(REDACTED)** | 6 | SA1271 – SA1273 |

| 69 | Aug. 30, 2019, email from W. Wreatha to Las Vegas Sun Letters, re Printing & distribution arrangement with LV Review-Journal (SUN_0000300) (**REDACTED**) | 6 | SA1274 – SA1275 |
| 70 | Sept. 6, 2019, email from C. Sappraicone to Las Vegas Review Journal Letters re Not printing The Las Vegas Sun? (SUN_0000298) (**REDACTED**) | 6 | SA1276 – SA1277 |
| 71 | Sept. 5, 2019, email from P. Ryan to B. Greenspun re Keep the Sun (SUN_0000303-04) (**REDACTED**) | 6 | SA1278 – SA1280 |
| 72 | June 13, 2016, email from J. Perdigao to F. Vega et al., re JOA Info (DEFS0146935) (**FILED UNDER SEAL**) | 6 | SA1281 – SA1282 |

Date this 23rd of February 2026.

By: */s/ Nicole Scott*
E. Leif Reid, Nevada Bar No. 5750
Kristen L. Martini, Nevada Bar No. 11272
Nicole Scott, Nevada Bar No. 13757
1700 S. Pavillion Center Drive, Suite 500
Las Vegas, Nevada 89169

PISANELLI BICE PLLC
James J. Pisanelli, Nevada Bar No. 4027
Todd L. Bice, Nevada Bar No. 4534
400 South 7th Street, Suite 300
Las Vegas, Nevada 89135

BROWNSTEIN HYATT FARBER
SHRECK, LLP
Jordan T. Smith, Nevada Bar No. 12097
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106

ALIOTO LAW FIRM
Joseph M. Alioto, Pro Hac Vice
One Sansome Street, 35th Floor
San Francisco, California  94104

*Attorneys for Plaintiff/Counterdefendants*

<u>**CERTIFICATE OF SERVICE**</u>

I certify that I am an employee of CLARK HILL PLC, and I caused a true and correct copy of the foregoing **INDEX OF EXHIBITS TO EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION (VOLUME 4)** to be served by electronically filing the foregoing with the CM/ECF electronic filing system which will send notice of electronic filing to:

J. Randall Jones, Esq.
Michael J Gayan, Esq.
Mona Kaveh, Esq.
KEMP JONES, LLP
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, NV 89169

Amy M. Gallegos, Esq.
David R. Singer, Esq.
Andrew G. Sullivan, Esq.
Alison I Stein, Esq.
JENNER & BLOCK LLP
515 South Flower Street, Suite 3300
Los Angeles, CA 90071

Richard L. Stone, Esq.
850 Deveon Avenue
Los Angeles, CA 90024

DATED: February 23, 2026.

/s/  Jill Nelson
An Employee of Clark Hill PLC

# EXHIBIT 30

Deposition Transcript Excerpts of Jason Taylor, *Las Vegas Sun, Inc. v. News+Media Capital Group, LLC*, AAA Case No. 01-18-0000-7568 (Mar. 21, 2019) (**FILED UNDER SEAL**)

# EXHIBIT 30

# EXHIBIT 31

Deposition Transcript Excerpts of Jason Taylor, *Las Vegas Sun, Inc. v. Adelson*,

No. 2:19-cv-0166-ART-VCF (D. Nev. May 12, 2022)

# EXHIBIT 31

1                    UNITED STATES DISTRICT COURT

2                        DISTRICT OF NEVADA

3                        *  *  *  *  *  *

4    LAS VEGAS SUN, INC., A NEVADA
     CORPORATION,
5
          Plaintiff,
6
                                        Case No.
7                                       2:19-CV-01667-GMN-VCF

8         vs.

9    SHELDON ADELSON, an
     individual and as the alter
10   ego of News+Media Capital
     Group, LLC and as the alter
11   ego of Las Vegas
     Review-Journal, Inc.; PATRICK
12   DUMONT, an individual;
     NEWS+MEDIA CAPITAL GROUP,
13   LLC, a Delaware limited
     liability company; LAS VEGAS
14   REVIEW-JOURNAL, INC. a
     Delaware corporation; and
15   DOES I-X, inclusive,

16
          Defendants.
17   _____

18       VIDEOTAPED DEPOSITION OF JASON TAYLOR VOLUME II

19                    Taken on May 12, 2022

20                      At 8:49 a.m.

21        At 3993 Howard Hughes Parkway #600

22                    Las Vegas, Nevada

23

24   Reported by: Kimberly A. Farkas, RPR, CCR #741

25   LIT Job No. 870182 | NV Firm No. 026F

JASON TAYLOR, VOLUME II - 05/12/2022

Page 2

```
 1              Deposition of JASON TAYLOR VOLUME II, taken

 2   at 3993 Howard Hughes Parkway, Las Vegas, Nevada, on

 3   Thursday, May 12, 2022, at 8:49 a.m., before Kimberly

 4   A. Farkas, Certified Court Reporter in and for the

 5   State of Nevada.

 6

 7   APPEARANCES

 8

 9   For the Plainiff/Counterclaimant Defendants:

10

11          E. LEIF REID, ESQ.
            KRISTEN L. MARTINI, ESQ.
12          NICOLE SCOTT, ESQ.
            Lewis Roca Rothgerber Christie LLP
13          One East Liberty Street, Suite 300
            Reno, Nevada 89501
14          lreid@lrrc.com

15

16

17   For the Defendants/Counterclaimants:

18

19          DAVID R. SINGER, ESQ.
            Jenner & Block, LLP
20          515 South Flower Street, Suite 3300
            Los Angeles, California 90071
21          213-239-5100
            dsinger@jenner.com
22

23

24   -and-

25
```

SA768

Page 3

```
 1   APPEARANCES (Continued)

 2

 3          MICHAEL J. GAYAN, ESQ.
            Kemp Jones LLP
 4          3800 Howard Hughes Parkway, 17th Floor
            Las Vegas, Nevada 89169
 5          (702) 385-6000
            m.gayan@kempjones.com
 6

 7

 8

 9   Also present:   Terrell Holloway, Videographer

10

11   Present via Zoom videoconference:

12                   James Pisanelli, Esq.

13                   Bob Cauthorn

14                   Arenson Greenspun

15                   Benjamin Lipman

16                   Keith Moyer

17                   Mona Kaveh, Esq.

18

19

20

21

22

23

24

25
```

SA769

1              DEPOSITION OF JASON P. TAYLOR VOLUME II

2                         May 12, 2022

3                  Kimberly A. Farkas, CCR No. 741

4                         * * * * *

5

6                           INDEX

7                                              Page

8    JASON P. TAYLOR

9    Examination by Mr. Reid                    7

10   Examination by Mr. Singer                  221

11   Examination by Mr. Reid                    287

12   Examination by Mr. Singer                  291

13                        * * * * *

14

15                         EXHIBITS

16   No.            Description              Page

17   Exhibit 1      Tab 25 – TAYLOR001826       9

18   Exhibit 2      (UNIDENTIFIED)              17

19   Exhibit 3      Email – Tab 117             33

20   Exhibit 4      Tab 14                      39

21   Exhibit 5      Tab 20                      73

22   Exhibit 6      Tab 58 – Article            109

23   Exhibit 7      Tab 23                      116

24   Exhibit 8      Tab 6A – Earnings Call      150
                    Transcript

25

JASON TAYLOR, VOLUME II - 05/12/2022

Page 5

```
 1                          EXHIBITS

 2
       No.              Description                Page
 3

 4     Exhibit 9        Tab 6b - First Quarter     156
                        Financials
 5
       Exhibit 10       March 21, 2019 Deposition  188
 6                      Transcript

 7     Exhibit 11       Tab 32 - Email             194

 8     Exhibit 12       Tab 70                     214

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

SA771

Page 6
```
 1                    LAS VEGAS, NEVADA

 2                   Thursday, May 12, 2022

 3                        8:49 a.m.

 4           DEPOSITION OF JASON TAYLOR VOLUME II

 5                       * * * * * *

 6           THE VIDEOGRAPHER:  This is the beginning of

 7   media no. 1 in the deposition of Jason Taylor in the

 8   matter of Las Vegas Sun, Inc., versus Adelson, Sheldon

 9   held at Lewis Roca Rothgerber Christie, LLP on

10   May 12th, 2022, at 8:49 a.m.  The court reporter is

11   Kim Farkas.  I am Terrell Holloway, the videographer,

12   an employee of Litigation Services.  This deposition is

13   being videotaped at all times unless specified to go

14   off the video record.

15           Would all present please identify themselves,

16   beginning with the witness.

17           MR. REID:  You were just asked to identify

18   yourself, Mr. Taylor.

19           THE WITNESS:  Jason Taylor.  Sorry.

20           MR. AUSTIN:  And represented by Chris Austin

21   also representing the company, Gannett Corporation.

22           MR. REID:  I'm Leif Reid.  I represent the

23   Sun and Brian Greenspun.  And I'm here with my partners

24   Kristen Martini and Nicole Scott.  On Zoom, I believe,

25   my co-counsel Jim Pisanelli is on the line.  And we
```

SA772

Page 7

```
 1    have representatives of the Sun, Brian Greenspun and

 2    Bob Cauthorn, are attending via Zoom.

 3              MR. SINGER:  David Singer here on behalf of

 4    defendants.  And also joining us on Zoom are

 5    Ben Lipman, the general counsel of the

 6    Las Vegas Review Journal, and Mr. Keith Moyer,

 7    publisher of the Review-Journal.  And I believe

 8    Ms. Mona Kaveh, my co-counsel from Kemp Jones, is on

 9    Zoom as well.

10              MR. GAYAN:  And Michael Gayan from Kemp Jones

11    on behalf of the defendants.

12              THE VIDEOGRAPHER:  Will the court reporter

13    please swear in the witness.

14              MR. REID:  He's been sworn.  He's been sworn.

15                        EXAMINATION

16    BY MR. REID:

17         Q.   You understand, Mr. Taylor, that you took an

18    oath on Tuesday and you're still bound by that oath.

19         A.   Yes.

20         Q.   And same ground rules as when Mr. Singer was

21    asking you questions.  If you can provide, to the best

22    of your ability, an audible response.  And we'll

23    endeavor not to interrupt each other.  And do you have

24    any questions or any reason you can't proceed?

25         A.   No.
```

Page 14

1    BY MR. REID:

2         Q.   And if you had plans to do that, you weren't

3    able to follow through with those plans because you

4    were let go in February of 2016; right?

5              MR. SINGER:  Objection.  Form.

6              THE WITNESS:  Yes.

7    BY MR. REID:

8         Q.   Or January?

9         A.   Whatever the record shows.  I don't remember

10   the date.

11        Q.   It was early in the year.

12             Did you evaluate the budget that you stepped

13   into when you started at the Review-Journal?

14        A.   I'm sure I did.

15        Q.   And what did you see that you needed to

16   change?

17        A.   I saw that we had to be more aggressive on

18   our revenue opportunities.  I saw we needed additional

19   expense savings to hit our targets.  Those would be the

20   too overarching.

21        Q.   Did you believe that you would make the

22   Review-Journal more profitable than it had been under

23   its prior ownership?

24        A.   Absolutely.

25        Q.   And why?

JASON TAYLOR, VOLUME II - 05/12/2022

Page 15

1      A.   I think, you know, I had a long career of

2  revenue growth and distinction in the industry for

3  doing just that.  I had a better track record for

4  circulation performance.  GateHouse had a proven model.

5  We had bought other papers and had significantly

6  increased their performance that were of similar size,

7  for example, the Columbus Dispatch.

8           You know, in earlier testimony, you know, I

9  alluded to the formulas that we used, and they were

10  proven track record.  When you're owned by a company

11  like New Media Investment Group, you know, there was a

12  lot of pressure on us to deliver performance based on

13  we were heavily acquiring at the time.  So we had a

14  formula.  We knew what worked to improve the bottom

15  line of a newspaper.

16      **Q.   So I maybe didn't -- I want to clarify.  When**

17  **you came in in July of 2015, was it that GateHouse plan**

18  **that you just referred to that was in place or was it**

19  **the Stephens' budget that was in place?**

20           MR. SINGER:  Objection.  Form.

21           THE WITNESS:  Sorry.

22           When I came in, it would have been the

23  Stephens' budget, but then we would have had a

24  pro forma that we wanted to accomplish on top of it.

25

Page 16

1   BY MR. REID:

2       Q.    Okay.  And then I'm going to show you in a

3   second.  You spent quite a bit of time Tuesday

4   afternoon going through your 2016 financial plan --

5       A.    Yes.

6       Q.    -- for the Review-Journal.  Was that your

7   implementation of the GateHouse model on the

8   Review-Journal?

9            MR. SINGER:  Objection.  Form.

10           THE WITNESS:  It was the GateHouse model and

11  the /Jason Taylor model, as I was bringing new

12  initiatives into GateHouse as well.  You know, I was

13  coming in as a president of the entire western division

14  of the company so part of my job was to change the way

15  GateHouse even did business.

16  BY MR. REID:

17      Q.    Okay.  Can you explain the GateHouse model?

18  I'm not asking you -- that's a question that could take

19  hours, but, if you could, you know, with, you know, the

20  amount of revenue you deem sufficient, describe the

21  GateHouse model.

22           MR. SINGER:  Objection.  Form.

23           THE WITNESS:  So I think, you know, if you

24  looked at our track record at the time, we were the

25  largest acquirer of newspapers in the country.  And so

SA776

JASON TAYLOR, VOLUME II - 05/12/2022

Page 17

1   what we would do is we would acquire newspapers.  We

2   would use our synergies that we had in place as a large

3   corporation to, you know, take some of the things that

4   don't necessarily need to be done in a community and

5   can be centralized, like their design center, things

6   like that, accounting, so take some of those

7   redundancies out by centralizing those.

8            We would have I always called it a toolbox,

9   which is a national toolbox of selling opportunities.

10  And we would put those into a community.  And then the

11  local publisher, which I had, obviously, dual role, we

12  would pick and choose out of the toolbox what we

13  thought entrepreneurially made more sense for success

14  in that market.  So whether it be live events,

15  promotions, digital marketing services, all of the --

16  many of the things we've already discussed in

17  testimony, those would be rolled out into the local

18  plan to drive revenue and then the savings

19  opportunities that come from synergies, et cetera.

20           MR. REID:  Okay.  So I'm going to mark --

21  have marked as Exhibit 2 -- when I hand you this, just

22  draw a little 2 so we'll know what it is when we go

23  back and look at it.

24           (Exhibit 2 was marked.)

25

Page 62

1           MR. SINGER:  Objection.  Form.

2           THE WITNESS:  Under -- understaffed if your

3    goal is create a profit.  I mean overstaffed if your

4    goal is to create a profit.

5    BY MR. REID:

6       **Q.   And is it -- is staffing at that level**

7    **consistent with the practices of other metropolitan**

8    **daily newspapers?**

9           MR. SINGER:  Objection.  Form.

10          THE WITNESS:  I do not know of one paper in

11   the country that that would be close to normal.

12   BY MR. REID:

13      **Q.   You testified that Mr. Adelson asked you on**

14   **multiple occasions what would happen to the Sun if**

15   **there were no profits under the JOA.**

16          **Do you recall him asking you that?**

17          MR. SINGER:  Objection.  Form.

18          THE WITNESS:  I do, vaguely, at this point.

19   It's been a long time, but, yes, I do recall that.

20   BY MR. REID:

21      **Q.   Okay.  Why was he asking you that?**

22          MR. SINGER:  Objection.  Form.

23          THE WITNESS:  I can't -- I don't know.

24   BY MR. REID:

25      **Q.   You testified that you met with him between**

Page 63

1   12 and 20 times face to face during the time that you

2   were the publisher?

3          MR. SINGER:  Objection.  Form.

4          THE WITNESS:  If I testified that back when

5   it was more timely, I'm sure it was correct.  It was a

6   lot.

7   BY MR. REID:

8      Q.  Did it seem like you were -- you described it

9   as being, you felt like it was almost every day you met

10  with Mr. Adelson.

11         MR. SINGER:  Objection.  Form.

12         THE WITNESS:  Either face to face or on the

13  phone, at least, yeah.

14  BY MR. REID:

15     Q.  Okay.  And did Mr. Adelson hypothesize with

16  you about what the impact would be on the Sun if there

17  were no JOA payments?

18     A.  Yes.

19     Q.  Could you describe that, please.

20     A.  You know, from my recollection, it was

21  something to the effect of, if there were no JOA

22  payments, what would -- you know, what would happen.  I

23  was, like, well, you know, he would -- Brian or

24  Greenspun Media or whatever would still have to pay to

25  produce the paper, you know, so he would, you know,

JASON TAYLOR, VOLUME II - 05/12/2022

Page 64

1   spend a lot of money to do that.

2        Q.   Do you believe that Mr. Adelson had the

3   intention to make it more difficult for Mr. Greenspun

4   to operate the Sun?

5             MR. SINGER:  Objection.  Form.

6             THE WITNESS:  I mean, my opinion on that

7   is -- I mean, I can't assume that I know his true

8   thoughts on that, but my opinion was that, yes, he did

9   want to make it more difficult.

10  BY MR. REID:

11       Q.   Why was that your -- why is that your

12  opinion?

13            MR. SINGER:  Objection.  Form.

14            THE WITNESS:  You know, obviously,

15  Mr. Adelson was a very successful man.  I have a lot of

16  respect for that.  He -- but, you know, he was a shrewd

17  businessman, which is part of why he was so successful.

18  And as much as I admire that, there's also the reality

19  of some of his expressions, which I've testified to

20  before, you know, related to this lawsuit, other

21  lawsuits that I somehow would get pulled into, he would

22  say often, you know, they will run out of money before

23  I do, and chuckle, and we'd all kind of chuckle.  You'd

24  just, kind of, you know, move on.

25

SA780

Page 176

1    hairstyle, you know, just something to get you to click

2    on it to drive a hit, traffic, online.  Just something

3    that doesn't really have a lot of news content value,

4    but they know people are going to look.

5        **Q.   Okay.  So if you're getting a complaint about**

6    **click bait, it refers to something that's being**

7    **published on your website, not in the newspaper?**

8            MR. SINGER:  Objection.  Form.

9            THE WITNESS:  That is correct.

10   BY MR. REID:

11       **Q.   Are there written standards in the industry**

12   **governing quality for metropolitan newspapers?**

13           MR. SINGER:  Objection.  Form.

14           THE WITNESS:  Quality in what aspect?  I

15   mean, there are printing -- there are written

16   guidelines on printing quality and minimum

17   expectations; right.  And there are organizations that

18   recognize it as printed.  What I mean, the reproduction

19   of the paper, the quality of the photographs, things

20   like that.  You know, I mean, there's different

21   associations and things that have their own barometers

22   as to what is quality.  So it would be kind of based on

23   the vertical.

24   BY MR. REID:

25       **Q.   So I know you're -- I think you've testified**

Page 177

1    **you don't review the pleadings in this case, but I'll**

2    **represent to you that the Review-Journal has requested**

3    **that the JOA be terminated because it contends that the**

4    **Sun does not meet the standard of quality for**

5    **metropolitan daily newspapers.**

6            MR. SINGER:  Objection.  Form.  Leif, that's

7    not true.  That's not what's in the agreement; okay.

8    You can show it to him.  But just because there's an

9    order limiting my objections doesn't mean that you can

10   misstate what's in documents.

11           MR. REID:  I'm not misstating anything.  And

12   your statement is improper.  And you have an

13   opportunity to cross-examine the witness so don't do it

14   again.

15           THE WITNESS:  What was the question?

16           Could the reporter, would you be kind enough

17   to read it back to Mr. Taylor so I don't have to --

18           THE REPORTER:  I lost the end of it, Mr.

19   Reid.

20           MR. REID:  Okay.  So read the start of it.

21           (Record read as requested.)

22           MR. REID:  I'm going to restate the question.

23   BY MR. REID:

24       **Q.   The Review-Journal wants to terminate the JOA**

25   **because it contends that the Sun does not meet the**

1    standard of quality for metropolitan daily newspapers.

2              Do you share that opinion?

3              MR. SINGER:  Objection.  Form.

4              THE WITNESS:  I guess my question would be if

5    that's true, where is that standard of quality coming

6    from?  There's no one -- there's no entity that I know

7    of that has an established standard of quality.  I

8    mean, trust me, I've seen some papers that I would

9    think probably shouldn't be printed.  They've gotten so

10   bad and so weak.  But I'm also going to be totally

11   honest with you, too, and say I have never once read

12   the printed Review-Journal or Las Vegas Sun since I

13   left.  I've read articles online, but I've never once

14   read the printed issue.

15   BY MR. REID:

16        Q.   Okay.  But you're president of a division of

17   a publicly-traded company that operates hundreds of

18   metropolitan daily newspapers in the United States?

19        A.   Correct.

20        Q.   And you -- your testimony -- you're not

21   familiar with any industry standard for newspaper

22   quality?

23              MR. SINGER:  Objection.  Form.

24              THE WITNESS:  Absolutely not.  I mean, there

25   are publications out there, as I just testified, that

Page 179

1  are bad, you know, just not good.  But there's never

2  been a standard of what is acceptable.  I mean, even in

3  the big cities like New York City, you could argue that

4  page 6 or daily news, I mean, you know, they're all so

5  different.  So you can't say that there's not a

6  standard of quality for a metropolitan paper.  That

7  doesn't make sense to me.

8          There are markets in the United States that

9  have daily LGBTQ newspapers.  How do you ever say that

10  there's not a standard of quality.  There's markets

11  that have Chinese versions of daily newspapers.  I

12  mean, it's just -- there's so many variants, I just

13  don't see how you could judge what is metropolitan

14  quality or not.

15  BY MR. REID:

16      **Q.   Is there an industry standard for journalism**

17  **ethics?**

18      A.   Absolutely.

19      **Q.   How is that measured or how is that standard**

20  **set?**

21      A.   I think that standard is set through the

22  various J schools around the country, journalism

23  schools, you know, their teachings.  And the larger

24  public companies like us who have forward, transparent,

25  ethics guidelines that we publish and put out there.

Page 188

1    testimony was marked when Mr. Singer was asking

2    questions on Tuesday.  We're going to mark that again.

3                 MR. SINGER:  I'm sorry, what is this?  Is

4    this his deposition from 2019?

5                 MR. REID:  This is his deposition, March 21,

6    2019.

7                 MR. AUSTIN:  So this would be No. 10?

8                 THE WITNESS:  Do I get one?

9                 MR. REID:  Yeah.

10                THE WITNESS:  Thank you.

11                (Exhibit 10 was marked.)

12   BY MR. REID:

13       Q.   If you could go to page 82.

14                MR. AUSTIN:  Look at the individual pages.

15   You've got four pages per.

16                THE WITNESS:  Sorry.  Page 82 I was looking

17   at had a bunch of --

18                MR. AUSTIN:  Bates 15800.

19                THE WITNESS:  Okay.

20   BY MR. REID:

21       Q.   So I'm going to ask you to read starting at

22   page 82, line 15.  You see a question there.  "Do you

23   remember having any conversation with Mr. Greenspun or

24   anyone else from the Sun where you indicated that the

25   Sun's annual profit payments were expected to go up

SA785

JASON TAYLOR, VOLUME II - 05/12/2022

Page 189

1  because of this trend, this upward trend, in the

2  projected revenue."

3      A.   Yes.

4      Q.   Okay.  And you responded "yes" on line 20.

5  You see that?

6      A.   Yes.

7      Q.   And do you recall when you communicated that?

8           MR. SINGER:  Objection.  From.

9           THE WITNESS:  I almost feel like it was

10  almost every time we were meeting around that time

11  period.  I just felt pretty confident with the

12  direction we were headed and seeing the lift of things

13  like Thanksgiving.  You know, I felt like consistently

14  we were going to be moving in the right direction,

15  which would increase his percentage of the payout.

16  BY MR. REID:

17      Q.   So that was in every quarterly meeting during

18  your tenure?

19           MR. SINGER:  Objection.  Form.

20           THE WITNESS:  Not just -- we were meeting

21  more than quarterly around that time just because we

22  were, again, trying to get to know each other, trying

23  to build a rapport.  So, to me, there was nothing to

24  gain by both the Sun or Review-Journal fighting each

25  other.

SA786

JASON TAYLOR, VOLUME II - 05/12/2022

```
 1   speaking.
 2                   CONTINUED EXAMINATION
 3   BY MR. SINGER:
 4       Q.  Hi again, Mr. Taylor.  Was it a mutual
 5   decision between GateHouse and Adelsons to end the
 6   management agreement between GateHouse and the
 7   Review-Journal?
 8       A.  Yes.
 9            MR. REID:  Hold on.  Objection.  Form.  I
10   anticipate having some objections so if you could give
11   me the opportunity, I'd appreciate it.
12   BY MR. SINGER:
13       Q.  So was it a mutual decision between GateHouse
14   and the Adelsons for you to stop being publisher of the
15   Review-Journal?
16            MR. REID:  Objection.  Form.
17            THE WITNESS:  Yes.
18   BY MR. SINGER:
19       Q.  Is it accurate to say that you were removed
20   as publisher of the Review-Journal?
21       A.  Yes.
22       Q.  I wanted to take a look at what had been
23   marked as Exhibit 8.
24       A.  Earnings?
25       Q.  Yeah.  I guess, just to clarify something.
```

SA787

JASON TAYLOR, VOLUME II - 05/12/2022

Page 222

1    Is it -- you said it was accurate to say that you were

2    removed as the publisher of the Review-Journal; right?

3        A.    Right.

4        Q.    Who removed you?

5        A.    The management agreement between the two

6    parties once it was terminated and, simultaneously, I

7    would no longer be publisher.

8        Q.    Is it accurate to say that the Adelson family

9    removed you as publisher of the Review-Journal?

10            MR. REID:  Objection.  Form.

11            THE WITNESS:  I don't know.  That would be a

12    word play to me.  The Adelsons never employed me.

13    BY MR. SINGER:

14        Q.    All right.  Looking at Exhibit 8.  This was

15    the earnings result from the most recent -- this is the

16    earnings call transcript of the most recent earnings

17    report from Gannett.

18            Do you have that in front of you?

19        A.    I do.

20        Q.    If you'd look at the page ending 630, I think

21    that's the third page in.

22        A.    Yes.

23        Q.    It says, "Looking at our print business."

24            Do you see that about halfway down?

25        A.    Yes.

SA788

JASON TAYLOR, VOLUME II - 05/12/2022

Page 291

1  like, what would happen.  As I said before,

2  hypothetically, what happens if they don't get a check

3  from us, you know, that kind of stuff.

4  BY MR. REID:

5      **Q.   And I want to understand if there's a**

6  **difference in your mind between the statement**

7  **"squeezing the Sun" and "harming the Sun."**

8          **Does that mean something different, those**

9  **two?**

10         MR. SINGER:  Objection.

11         THE WITNESS:  Sorry.  Not necessarily.

12 BY MR. REID:

13     **Q.   Okay.  Do you believe that Sheldon Adelson**

14 **wanted to harm the Sun economically?**

15         MR. SINGER:  Objection.  Form.

16         THE WITNESS:  I believe he did not want the

17 Sun to exist.  And I believe that that was one possible

18 solution to eliminate the Sun that he saw as possible.

19         MR. REID:  Okay.  Thanks.  I appreciate your

20 time.  And that was my last question.

21         MR. SINGER:  Just one last question.

22

23                 CONTINUED EXAMINATION

24 BY MR. SINGER:

25     **Q.   Between your deposition on Tuesday and today,**

SA789

JASON TAYLOR, VOLUME II - 05/12/2022

Page 294

1                   CERTIFICATE OF REPORTER

2    STATE OF NEVADA  )
                      )    ss:
3    COUNTY OF CLARK  )

4        I, Kimberly A. Farkas, a Certified Court Reporter

5    licensed by the State of Nevada, do hereby certify:

6    That I reported the deposition of JASON P. TAYLOR

7    VOLUME II, May 12, 2022, at 8:49 a.m.

8        That prior to being deposed, the witness was

9    duly sworn by me to testify to the truth.  That I

10   thereafter transcribed my said stenographic notes into

11   written form, and that the typewritten transcript is a

12   complete, true and accurate transcription of my said

13   stenographic notes; that review of the transcript was

14   not requested.

15       I further certify that I am not a relative,

16   employee or independent contractor of counsel or of any

17   of the parties involved in the proceeding; nor a person

18   financially interested in the proceeding.

19       IN WITNESS WHEREOF, I have set my hand in my

20   office in the County of Clark, State of Nevada, this

21   20th day of May, 2022.

22                   _____

23                   Kimberly A. Farkas, CCR NO. 741

24

25

SA790

# EXHIBIT 32

April 3, 2017, email from J. Wilson to N. Cusick re Monday Meeting Notes
(DEFS0016006-07) (**FILED UNDER SEAL**)

EXHIBIT 32

# EXHIBIT 33

Deposition Transcript Excerpts of Craig Moon, *Las Vegas Sun, Inc. v. Adelson*, No. 2:19-cv-0166-ART-VCF (D. Nev. Mar. 3, 2022)

# EXHIBIT 33

SA794

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

LAS VEGAS SUN, INC., a          )
Nevada corporation,             )
                                )
     Plaintiff,                 )
                                )
v.                              )  Case No.
                                )  2:19-CV-01667-GMN-VCF
SHELDON ADELSON, an             )
individual and as the           )
alter ego of News+Media         )
Capital Group LLC and as        )
the alter ego of Las Vegas      )
Review-Journal, Inc.;           )
PATRICK DUMONT, and             )
individual; NEWS+MEDIA          )
CAPITAL GROUP LLC, a            )
Delaware limited liability      )
company; LAS VEGAS              )
REVIEW-JOURNAL, INC.,           )
Delaware corporation; and       )
DOES I-X, inclusive,            )
                                )
     Defendants.                )
_____ )
                                )
*Las Vegas Review-Journal*,     )
INC., a Delaware                )
corporation,                    )
                                )
     Counterclaimant,           )
                                )
v.                              )
                                )
*Las Vegas Sun*, INC., a        )
Nevada corporation; BRIAN       )
GREENSPUN, an individual        )
and as the alter ego of         )
*Las Vegas Sun*, Inc.;          )
GREENSPUN MEDIA GROUP,          )
LLC, a Nevada limited           )
liability company, as the       )
alter ego of *Las Vegas         )
Sun*, Inc.,                     )
                                )
     Counterclaim               )
     Defendants.                )

SA795

1           VIDEOTAPED DEPOSITION OF CRAIG MOON

2                March 3, 2022

3

4

5              Deposition of CRAIG MOON,

6  taken at the offices of Waller Lansden Dortch &

7  Davis, 511 Union Street, Suite 2700, Nashville,

8  Tennessee, at 9:00 a.m. (CST) on the above date

9  before Stephanie A. Branim, LCR, CRI, CPE,

10  Tennessee Licensed Court Reporter, pursuant to

11  the Federal Rules of Civil Procedure.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              A P P E A R A N C E S

 2   On Behalf of the Plaintiff/Counterdefendants:

 3        Mr. E. Leif Reid
          Ms. Nicole Scott
 4        Ms. Kristen L. Martini (Via Zoom)
          Ms. Marla J. Hudgens (Via Zoom)
 5        Attorneys at Law
          Lewis Roca Rothgerber Christie LLP
 6        One East Liberty Street
          Suite 300
 7        Reno, NV 89501
          775-823-2900
 8        lreid@lewisroca.com

 9        Mr. Jordan T. Smith (Via Zoom)
          Attorney at Law
10        Pisanelli Bice PLLC
          400 South 7th Street
11        Suite 300
          Las Vegas, NV 89101
12        702-214-2100
          jts@pisanellibice.com
13

14   On Behalf of Craig Moon:

15        Mr. Robb Harvey
          Attorney at Law
16        Waller Lansden Dortch and Davis, LLP
          511 Union Street
17        Suite 2700
          Nashville, TN 37219
18        615-850-8859
          robb.harvey@wallerlaw.com
19

20   On Behalf of the Defendants/Counterclaimant:

21        Mr. David R. Singer (Via Zoom)
          Attorney at Law
22        Jenner & Block LLP
          633 West 5th Street
23        Suite 3600
          Los Angeles, CA 90071
24        213-239-2206
          dsinger@jenner.com
25
```

```
 1          Mr. Michael J. Gayan (Via Zoom)
            Attorney at Law
 2          Kemp Jones, LLP
            3800 Howard Hughes Parkway
 3          17th Floor
            Las Vegas, NV 89169
 4          702-385-6000
            m.gayan@kempjones.com
 5

 6     Also Present:

 7          Ben Lipman, Esquire (Via Zoom)

 8          Arenson Greenspun (Via Zoom)

 9          Bob Cauthorn (Via Zoom)

10          Rudy Davis, Videographer

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1           Bob Cauthorn.

2                   MR. HARVEY:  David?

3                   MR. SINGER:  Hi, this is David

4           Singer on behalf of the defendants.

5           Also on the line is the general

6           counsel of the *Las Vegas*

7           *Review-Journal*, Ben Lipman.

8                   MR. GAYAN:  Good morning.

9           Michael Gayan, Kemp Jones, also on

10          behalf of the defendants.

11                  MR. HARVEY:  I'm Robb Harvey

12          of Waller Lansden here in Nashville

13          representing the third-party witness,

14          Mr. Craig Moon.

15                  MR. REID:  Apparently, I said

16          Ms. Scott was on the line.  She's

17          obviously right to my left.  I

18          apologize for that.

19                  VIDEOGRAPHER:  Madam Court

20          Reporter, if you will please swear in

21          the witness.

22                  MR. REID:  Marla is on the

23          line.  Marla Hudgens is on the line.

24          **CRAIG MOON,**

25     having been first duly sworn, testified as

1    understand a question that I ask, please make me

2    know that so I can clarify a question or -- or

3    try it another way.

4                    Do you understand that?

5            A.      Sure.

6            Q.      You've been brought here for a

7    deposition because of the prior work that you

8    performed at the *Las Vegas Review-Journal*.

9                    Do you understand that?

10           A.      Yes.

11           Q.      Okay.  And how long were you

12   employed at the RJ in Las Vegas?

13           A.      Two years and two months.

14           Q.      In what capacity were you

15   employed at the RJ?

16           A.      Publisher and president.

17           Q.      Did you have any other titles

18   or job responsibilities?

19           A.      I did not.

20           Q.      Who was the owner of the RJ

21   during the time that you were employed there?

22           A.      The Adelson family.

23           Q.      Who hired you to be the

24   publisher of the *Review-Journal*?

25           A.      Sheldon Adelson.

1          Q.      2016?

2          A.      Yes.

3          Q.      So you believe you met with

4  Mr. Adelson sometime in December of 2015?

5          A.      Yes.

6          Q.      Do you recall when Mr. Adelson

7  purchased the paper?

8          A.      I do not.

9          Q.      When you were hired, were

10 you -- who -- who were you replacing as

11 publisher?

12         A.      Jason Taylor.

13         Q.      What was your understanding as

14 to why Jason Taylor was let go?

15         A.      To be honest with you, I don't

16 know about Jason, but replacing GateHouse as

17 managing partner was a emphasis.

18         Q.      Why was that important to

19 Mr. Adelson?

20              MR. HARVEY:  Object to the

21         form.

22              MR. SINGER:  Objection.

23         Foundation -- or form.

24              THE WITNESS:  I don't know why

25         it was important, except I didn't

```
 1                    THE WITNESS:  The JOA does
 2           that.
 3  BY MR. REID:
 4           Q.      What do you mean by that
 5  response?
 6           A.      Well, the split is outlined in
 7  the joint operating agreement.
 8           Q.      When you were operating the RJ
 9  and you decided to increase your editorial
10  expenses, that had a direct effect on the money
11  that the Sun received, correct?
12                    MR. SINGER:  Objection.  Form.
13                    THE WITNESS:  I don't know
14           that there's any place in the joint
15           operating agreement that comes out and
16           qualifies that the joint operating
17           agreement must make a profit.
18  BY MR. REID:
19           Q.      Well, that wasn't my question,
20  okay.  That wasn't my question.
21                    My question was, when you
22  chose to increase the RJ's editorial expense,
23  that had a direct effect of reducing the money
24  that the Sun would receive through the JOA
25  calculation, correct?
```

```
 1                        MR. SINGER:  Objection.  Form.
 2                        THE WITNESS:  Yes.
 3   BY MR. REID:
 4             Q.       And what prevented you from
 5   increasing expenses so much that the Sun would
 6   receive nothing from the JOA calculation?
 7             A.       Nothing.
 8             Q.       In fact, that's what happened
 9   in 2017, correct?
10             A.       Well, it was a combination of
11   loss and revenue, and increase in expenses.
12             Q.       Both Stephens and GateHouse
13   managed expenses despite revenue declines such
14   that there were JOA payments made to the Sun
15   during the ownership of both of those owners,
16   correct?
17             A.       Well --
18                        MR. SINGER:  Objection.  Form.
19                        THE WITNESS:  As I said
20                    before, the profit in 2005 was very
21                    close to $125 million.  It declined by
22                    the time I had taken over to roughly
23                    14 million, my recollection.
24                        So chances if we didn't turn
25                    around the ad losses, which was the
```

```
 1              C E R T I F I C A T E

 2
      STATE OF TENNESSEE        )
 3                              )
      COUNTY OF RUTHERFORD      )
 4

 5
              I, STEPHANIE A. BRANIM, LCR, CRI,
 6    CPE, CERTIFY:

 7            The foregoing proceedings were taken
      before me at the time and place stated in the
 8    foregoing styled cause with the appearance as
      noted.
 9
              Being a Court Reporter, I then
10    reported the proceedings in Stenotype, and
      the foregoing pages contain a true and
11    correct transcript of my said Stenotype notes
      then and there taken.
12
              I am not in the employ of and am not
13    related to any of the parties or their
      counsel, and I have no interest in the matter
14    involved.

15            I FURTHER CERTIFY that this
      transcript is the work product of this court
16    reporting agency and any unauthorized
      reproduction AND/OR transfer of it will be in
17    violation of Tennessee Code Annotated
      39-14-104, Theft of Services.
18
              Witness my signature, this, the 11th
19    day of March, 2022.

20

21

22

23

24       Stephanie A. Branim, LCR, CRI, CPE
         LCR No. 323, Expires June 30, 2022
25
```

# EXHIBIT 34

Jan. 18, 2023, Rebuttal Expert Report Excerpts of Las Vegas Sun, Inc.'s Expert
Barbara Gottlieb (**FILED UNDER SEAL**)

# EXHIBIT 34

# EXHIBIT 35

Las Vegas Review Journal Payment Calculation JOA Fiscal Year Ending March 2018 (**FILED UNDER SEAL**)

# EXHIBIT 35

# EXHIBIT 36

Mar. 3, 2017, email from P. McGuire to C. Moon re Revised Summary of JOA Pmt. Calc (DEFS0165095-97) (**FILED UNDER SEAL**)

# EXHIBIT 36

# EXHIBIT 37

Stephens Media Group's Las Vegas Review Journal Fiscal Year End March 31, 2006, Financials (Exhibit 7 to Deposition of Robert Cauthorn, *Las Vegas Sun, Inc. v. News+Media Capital Group, LLC*, AAA Case No. 01-18-0000-7568 (Mar. 27, 2019)) **(FILED UNDER SEAL)**

# EXHIBIT 37

SA821

# EXHIBIT 38

Deposition Transcript Excerpts of Las Vegas Review-Journal 30(b)(6) Corporate Representative Stephen Hall, *Las Vegas Sun, Inc. v. Adelson*, No. 2:19-cv-0166-ART-VCF (D. Nev. May 12, 2022) (**REDACTED**)

# EXHIBIT 38

```
 1                UNITED STATES DISTRICT COURT

 2                    DISTRICT OF NEVADA

 3
     LAS VEGAS SUN, INC., a        )
 4   Nevada corporation,           )
                                   )
 5            Plaintiff,           )   CASE NO:
                                   )   2:19-CV-01667-GMN-VCF
 6      vs.                        )
                                   )
 7   SHELDON ADELSON, an           )
     Individual and as the alter   )
 8   Ego of News+Media Capital     )
     Group LLC and as the alter    )
 9   Ego of Las Vegas Review       )
     Journal, Inc.; PATRICK        )
10   DUMONT, an individual;        )   VIDEOTAPED DEPOSITION
     NEWS+MEDIA CAPITAL GROUP      )
11   LLC, a Delaware limited       )          OF
     Liability company; LAS        )
12   VEGAS REVIEW-JOURNAL, INC.,   )    STEPHEN HALL
     A Delaware corporation; and   )
13   DOES, I-X, inclusive,         )    30(b)(6) OF
                                   )   REVIEW-JOURNAL, INC.
14            Defendants.          )
     _____ )
15   LAS VEGAS REVIEW-JOURNAL,     )     WEDNESDAY,
     INC., a Delaware              )   JULY 20, 2022
16   Corporation,                  )
                                   )
17            Counterclaimant,     )
                                   )
18      vs.                        )
                                   )
19   LAS VEGAS SUN, INC. A         )
     Nevada corporation; BRIAN     )
20   GREENSPUN, an individual      )
     And as the alter ego of Las   )
21   Vegas Sun, Inc.; GREENSPUN    )
     MEDIA GROUP, LLC, a Nevada    )
22   Limited liability company,    )
     As the alter ego of Las       )
23   Vegas Sun, Inc.,              )   REPORTED BY:
                                   )   BRITTANY CASTREJON,
24        Counterclaim-Defendants. )   RPR, CRR, NV CCR #926
     _____ )
25                                     JOB NO.:  881282
```

```
 1        VIDEOTAPED DEPOSITION OF STEPHEN HALL, 30(b)(6)

 2   of Review Journal, Inc., located at 3993 Howard Hughes

 3   Parkway, Suite 600, Las Vegas, Nevada 89169,

 4   stenographically reported on, WEDNESDAY, JULY 20, 2022,

 5   at 9:10 a.m., before Brittany Castrejon, Certified

 6   Realtime Reporter, in and for the State of Nevada.

 7

 8

 9

10   APPEARANCES:

11   For Plaintiff/Counterclaim-Defendants:

12                   LEWIS ROCA ROTHGERBER CHRISTIE LLP
                     BY: E. LEIF REID, ESQ.
13                   BY: KRISTEN MARTINI, ESQ. (Via Zoom)
                     BY: NICOLE SCOTT, ESQ.
14                   One East Liberty Street
                     Suite 300
15                   Reno, Nevada 89501
                     775-823-2900
16                   lreid@lewisroca.com

17   For Defendants/Counterclaimants:

18                   KEMP JONES, LLP
                     BY:  MICHAEL GAYAN, ESQ.
19                   3800 Howard Hughes Parkway
                     17th Floor
20                   Las Vegas, Nevada 89169
                     702-385-6000
21                   m.gayan@kempjones.com

22                   JENNER & BLOCK LLP
                     BY:  DAVID SINGER, ESQ.
23                   515 South Flower Street
                     Suite 3300
24                   Los Angeles, California 90071
                     213-239-2206
25                   dsinger@jenner.com
```

```
 1    APPEARANCES (CONTINUED):

 2    Also Present:   Terrell Holloway, Videographer
                      Robert Cauthorn
 3                    Brian Greenspun
                      Keith Moyer
 4                    Ben Lipman, Esq.
                      Andrew Sullivan
 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
                                                             Page  4
 1                       INDEX OF EXAMINATION

 2   WITNESS:  STEPHEN HALL

 3   EXAMINATION                                             PAGE

 4   By Mr. Reid                                                6

 5

 6

 7                        INDEX OF EXHIBITS

 8   NUMBER        DESCRIPTION                               PAGE

 9   EXHIBIT 1     DEFS0092586                                 27
                   ATTORNEYS' EYES ONLY
10
     EXHIBIT 2     DEFS0093000                                 31
11                 CONFIDENTIAL

12   EXHIBIT 3     DEFS0193790                                 70
                   ATTORNEYS' EYES ONLY
13
     EXHIBIT 4     DEFS0081201                                 81
14                 ATTORNEYS' EYES ONLY

15   EXHIBIT 5     Handwritten Notes                           88

16   EXHIBIT 6     SUN_00084445                               101
                   CONFIDENTIAL
17
     EXHIBIT 7     SUN_00024707                               109
18                 CONFIDENTIAL

19   EXHIBIT 8     DEFS0193819                                116
                   ATTORNEYS' EYES ONLY
20
     EXHIBIT 9     DEFS0193845                                116
21                 ATTORNEYS' EYES ONLY

22   EXHIBIT 10    Defendant's Answer and Defenses to         132
                   Las Vegas Sun, Inc.'s Complaint and
23                 Las Vegas Review-Journal, Inc's
                   Counterclaims
24
     EXHIBIT 11    Amended Notice of Videotaped Deposition 154
25                 30(b)(6) of Review-Journal, Inc.
```

SA829

```
                                                          Page 5
 1                 INDEX OF EXHIBITS (CONTINUED)

 2   WITNESS:  STEPHEN HALL

 3   NUMBER        DESCRIPTION                          PAGE

 4   EXHIBIT 12   LVRJ Motion for Leave to Amend Answer  159

 5   EXHIBIT 13   DEFS0189990                            175
                  ATTORNEYS' EYES ONLY
 6
     EXHIBIT 14   DEFS0145998                            216
 7                CONFIDENTIAL

 8   EXHIBIT 15   DEFS0014008                            221
                  CONFIDENTIAL
 9
     EXHIBIT 16   DEFS0170489                            235
10                CONFIDENTIAL

11   EXHIBIT 17   DEFS0092809                            251
                  ATTORNEYS' EYES ONLY
12
     EXHIBIT 18   DEFS0092809-DEFS0092835               251
13                CONFIDENTIAL

14

15

16

17

18

19

20

21

22

23

24

25
```

Page 6

1          LAS VEGAS, NEVADA; WEDNESDAY, JULY 20, 2022

2                          9:10 a.m.

3                           -oOo-

4              THE VIDEOGRAPHER:  This is the beginning of

5      Media Number 1 in the deposition 30(b)(6) of

6      Review-Journal, Stephen Hall, in the matter of Las Vegas

7      Sun, Inc., v. Adelson Sheldon held at Lewis Roca

8      Rothgerber Christie LLP on July 20th, 2022, at 9:10 a.m.

9              The court reporter is Brittany Castrejon.  I

10     am Terrell Holloway, the videographer, an employee of

11     Litigation Services.

12             This deposition is being videotaped at all

13     times unless specified to go off the video record.

14             Would all present please identify

15     themselves, beginning with the witness.

16             THE WITNESS:  Good morning.  This is

17     Stephen Hall, CFO for the Review-Journal.

18             MR. GAYAN:  Michael Gayan, counsel for

19     Mr. Hall and the Review-Journal.

20             MR. REID:  This is Leif Reid.  I'll be

21     taking the deposition.  I represent the Las Vegas Sun.

22             To my left is my partner, Nicole Scott.

23             On Zoom observing the deposition are

24     Kristen Martini, Brian Greenspun, and Robert Cauthorn.

25             THE COURT REPORTER:  We also have Mr. Singer

1    on the Zoom.

2                    MR. REID:  Okay.

3                    THE VIDEOGRAPHER:  Will the court reporter

4    please swear in the witness.

5                    (The witness was sworn in.)

6                              EXAMINATION

7    BY MR. REID:

8        Q.  **Good morning, Mr. Hall.**

9        A.  Good morning.

10       Q.  **My understanding is you've been brought here to**

11   **appear as a Rule 30(b)(6) witness on behalf of your**

12   **employer, Las Vegas Review-Journal.**

13           **Is that your understanding?**

14       A.  Yes.

15       Q.  **And --**

16               (Cell phone discussion.)

17               MR. GAYAN:  Oh.

18               MR. REID:  Let's go off the record.

19               THE VIDEOGRAPHER:  Off the video record at

20   9:12.

21               (A break was taken at 9:12 a.m.)

22               (Back on the record at 9:14 a.m.)

23               THE VIDEOGRAPHER:  Back on the video record

24   at 9:14.

25               MR. REID:  Okay.







Page 72



1   previously.  I know, obviously, it's been an issue of --

2   of contention during -- during this process, and it --

3   it will be -- there will be some adjustments going

4   forward.

5   BY MR. REID:



16    Q.  Let's -- let's mark that because I -- I -- I do

17    know that you had a notation there, but I'm not going to

18    say it was extremely clear.  So let's talk about it.

19    Okay?

20              MR. REID:  This is going to be tab 54, and

21    we'll mark it as Exhibit 6.  Thanks.

22              (Exhibit 6 was marked for identification.)

23              THE WITNESS:  Thank you.

24              MR. SINGER:  We're -- I'm still waiting to

25    get a copy.  Okay.  Here it is.

1    gone back to remedy that at this point; is that your

2    testimony?

3        A.  Correct.  We have not finalized those

4    calculations.

5        Q.  Okay.  And in -- in Department 1 -- 105, am I

6    right that the total expense for fiscal year 2018 was

7    $650,000; right?

8        A.  Just under that, correct.

9        Q.  For the -- it's the news investigation division?

10       A.  Correct.







Page 274

```
 1   STATE OF NEVADA )
                     )  SS:
 2   COUNTY OF CLARK )

 3              CERTIFICATE OF REPORTER

 4        I, Brittany J. Castrejon, a Certified Court

 5   Reporter licensed by the State of Nevada, do hereby

 6   certify:  That I reported the VIDEOTAPED DEPOSITION OF

 7   STEPHEN HALL, on WEDNESDAY, JULY 20, 2022, at 9:10 a.m.;

 8        That prior to being deposed, the witness was duly

 9   sworn by me to testify to the truth.  That I thereafter

10   transcribed my said stenographic notes into written

11   form, and that the typewritten transcript is a complete,

12   true and accurate transcription of my said stenographic

13   notes.  That the reading and signing of the transcript

14   was requested.

15        I further certify that I am not a relative,

16   employee or independent contractor of counsel or of any

17   of the parties involved in the proceeding; nor a person

18   financially interested in the proceeding; nor do I have

19   any other relationship that may reasonably cause my

20   impartiality to be questioned.

21        IN WITNESS WHEREOF, I have set my hand in my
     office in the County of Clark, State of Nevada, this
22   28th day of July, 2022.

23   _____

24        Brittany J. Castrejon, RPR, CRR, CCR #926

25
```

Page 275

1                          ERRATA SHEET

2

3          I declare under penalty of perjury that I have

4   read the foregoing 275____ pages of my testimony, taken

5   on _July 20, 2022_____ (date) at

6   _Las Vegas_____(city), _Nevada_____(state),

7   and that the same is a true record of the testimony

8   given by me at the time and place herein above set

9   forth, with the following exceptions:

10

11  Page Line    Should read:            Reason for Change:**

12                          (See below before completion)

13  _12_  _8_    "Blazer" to "Blaser"    Transcription Error

14  12    11     "Shultese (phonetic)" to "Sholtes"    Transcription Error

15  _13_  _3_    "Blazer" to "Blaser"    Transcription Error

16  13    7      "Blazer" to "Blaser"    Transcription Error

17  _14_  _1_    "Schulteze" to "Scholtes"    Transcription Error

18  14    7      "Kusick" to "Cusick"    Transcription Error

19  _14_  _12_   "Schulteze" to "Scholtes"    Transcription Error

20  14    23     "Schulteze" to "Scholtes"    Transcription Error

21  _18_  _20_   "Ric" to "Kirk"    Transcription Error

22  41    7      "as" to "at"    Transcription Error

23  _45_  _3_    "place" to "plant"    Transcription Error

24  84    7      "face is" to "faces"    Transcription Error

25

30(B)(6) STEPHEN HALL - 07/20/2022

```
                                                        Page 276
 1                         ERRATA SHEET

 2    Page  Line   Should read:          Reason for Change:**

 3                          (See below before completion)

 4    122   21     "all pub" to "alt pub"      Transcription Error

 5    173   9      "Blazer" to "Blaser"        Transcription Error

 6    187   15     "DL" to "GL"                Transcription Error

 7    188   6-7    "oh no" to "O&O"            Transcription Error

 8    209   19     " Stephens' " to "Stephens"  Transcription Error

 9    241   17     "Blazer" to "Blaser"        Transcription Error

10    243   16     "rating" to "writing"       Transcription Error

11    256   25     "ENY" to "E&Y"              Transcription Error

12    259   9      "billing" to "building"     Transcription Error

13

14    ____  ____

15

16

17    Date:   8/25/2022              _Steph W. Hall_____

18                          Signature of  Witness

19                                  Stephen Hall
                              _____

20                          Name Typed or Printed

21

22    **THE "REASON FOR CHANGE" COLUMN SHOULD ONLY BE

23    COMPLETED FOR FEDERAL DISTRICT OR BANKRUPTCY COURT

24    MATTERS (FRCP RULE 30(e)).  THIS COLUMN SHOULD NOT BE

25    COMPLETED FOR STATE COURT ACTIONS.
```

# EXHIBIT 39

Sept. 19, 2022, Expert Report Excerpts of Las Vegas Sun, Inc.'s Expert Barbara Gottlieb (**FILED UNDER SEAL**)

# EXHIBIT 39

# EXHIBIT 40

Feb. 12, 2016, email from P. Sack to S. Garfinkel re Las Vegas (DEFS0093000-24) (**FILED UNDER SEAL**

# EXHIBIT 40

# EXHIBIT 41

Feb. 9, 2015, VRC Valuation of Certain Intangible Assets of Las Vegas Review
Journal as of Dec. 10, 2015 (DEFS0092587-621) (**FILED UNDER SEAL**)

# EXHIBIT 41

# EXHIBIT 42

March 3, 2017, Email from C. Moon to F. Vega re an update and two quick
questions (DEFS0013609-10) **(FILED UNDER SEAL**)

# EXHIBIT 42

# EXHIBIT 43

Las Vegas Review-Journal, Inc. Financial Statements December 31, 2019, and 2018 (DEFS0083496-515) (**FILED UNDER SEAL**)

# EXHIBIT 43