1  E. LEIF REID, Nevada Bar No. 5750                JORDAN T. SMITH, Nevada Bar No. 12097
   KRISTEN L. MARTINI, Nevada Bar No. 11272         BROWNSTEIN HYATT FARBER
2  NICOLE SCOTT, Nevada Bar No. 13757               SCHRECK, LLP
3  CLARK HILL PLC                                   100 North City Parkway, Suite 1600
   1700 S. Pavillion Center Dr., Suite 500          Las Vegas, Nevada 89106
4  Las Vegas, Nevada 89135                          Tel: 702.464.7022
   Tel: 702.862.8300                                Fax: 702.382.8135
5  Fax: 702.778.9709                                Email: jtsmith@bhfs.com
   Email: lreid@clarkhill.com
6         kmartini@clarkhill.com                    JOSEPH M. ALIOTO, *PRO HAC VICE*
7         nscott@clarkhill.com                      ALIOTO LAW FIRM
                                                    One Sansome Street, 35th Floor
8  JAMES J. PISANELLI, Nevada Bar No. 4027          San Francisco, California 94104
   TODD L. BICE, Nevada Bar No. 4534                Tel: 415.434.8900
9  PISANELLI BICE PLLC                              Fax: 415.434.9200
   400 South 7th Street, Suite 300                  Email: jmalioto@aliotolaw.com
10 Las Vegas, Nevada 89101
11 Tel: 702.214.2100
   Fax: 702.214.2101
12 Email: JJP@pisanellibice.com
          TLB@pisanellibice.com
13
14 *Attorneys for Plaintiff/Counterdefendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| LAS VEGAS SUN, INC., a Nevada corporation,<br><br>Plaintiffs,<br><br>v.<br><br>SHELDON ADELSON (Estate Of), an individual, and as the alter ego of News+Media Capital Group LLC, Las Vegas Review-Journal, Inc., and Interface Operations LLC dba Adfam; PATRICK DUMONT, an individual, and as alter ego of Las Vegas Review-Journal, Inc., News+Media Capital Group, LLC, and Interface Operations LLC dba Adfam; NEWS+MEDIA CAPITAL GROUP LLC, a Delaware limited liability company; LAS VEGAS REVIEW-JOURNAL, INC., a Delaware corporation; INTERFACE OPERATIONS LLC dba ADFAM, a Delaware limited liability company and as the alter ego of Las Vegas Review-Journal, Inc., and News+Media Capital Gorup, LLC; and DOES, | Case No.: 2:19-CV-01667-ART-MDC<br><br>**PLAINTIFF/COUNTER-DEFENDANTS' OPPOSITION TO DEFENDANTS' NOTICE OF MOTION AND RENEWED MOTION TO DISSOLVE PRELIMINARY INJUNCTION (ECF NO. 1055)** |

| | |
|---|---|
| 1 | I-X, inclusive, |
| 2 | Defendants. |
| 3 | LAS VEGAS REVIEW-JOURNAL, a Delaware corporation, |
| 4 | Counterclaimant, |
| 5 | v. |
| 6 | LAS VEGAS SUN, INC., a Nevada corporation; BRIAN GREENSPUN, an individual and as alter ego of Las Vegas Sun, Inc.; GREENSPUN MEDIA GROUP, LLC, a Nevada limited liability company, as the alter ego of Las Vegas Sun, Inc., |
| 7 | |
| 8 | |
| 9 | |
| 10 | Counterclaim Defendants. |

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION AND RELEVANT FACTS

The RJ presents its Motion as a mere "respectful[ ] request[ ] that the Court dissolve the Preliminary Injunction." ECF No. 1055 at 4. It recites the Ninth Circuit's ruling that the 2005 JOA is unlawful and unenforceable, requiring immediate dissolution of the Stipulated Order[1] requiring the RJ to "perform under the 2005 JOA." *Id.* at 4-5. The RJ warns this Court that it is bound by the Ninth Circuit's Opinion and cannot ignore it. *Id.* It instructs this Court to "reject any argument by the Sun that the Preliminary Injunction should remain in place notwithstanding the Ninth Circuit's ruling." *Id.* at 5. Unfortunately for the RJ, the law of this case does not support the RJ's maneuvering. The RJ's Motion is a functional Trojan Horse designed to improperly propel the RJ to its preferred finish line. The law and the facts of this case dictate otherwise.

The Sun in no way disputes the binding nature of the Ninth Circuit's Order. And the Sun honors the Ninth Circuit's conclusion that the 2005 JOA is invalid and unenforceable because the parties did not obtain Attorney General written consent when the RJ (under the leadership of the RJ's prior owners) filed the amendment with the DOJ and submitted to the DOJ Antitrust Division's investigation into its terms. *See Las Vegas Sun v. Adelson*, 147 F.4th 1103 (9th Cir. 2025). Nor does the Sun contest that the Ninth Circuit's ruling instructs this Court to reverse its decision denying the RJ's motion to dissolve the Stipulated Order. *See id.* at 1122. But dissolving the Stipulated Order does not grant the RJ affirmative rights to eliminate its sole competitor, the Sun. And the Ninth Circuit's ruling does not authorize the RJ's immediate termination of the Sun either. *See generally id.* Nothing in the ruling frees the RJ from its obligations to continue the joint operation and printing and distributing the Sun. *See generally id.* The 1989 JOA is still valid and existing, and importantly, it *was* approved by the Attorney General. The 2005 JOA could not and did not lawfully displace it. *See* ECF No. 970 at 18-19 (concluding that the 2005 JOA was not a novation of the 1989 JOA). Despite these indisputable facts, the RJ seeks relief that is objectively out of its reach.

---

[1] The "Stipulated Order" refers to the Stipulation and Order to Maintain Status Quo entered by this Court on October 10, 2019. ECF No. 13.

Although styled as an innocuous request to dissolve the Stipulated Order, the RJ admittedly filed its Motion as a preemptive response to the Sun's *Emergency* Motion for Temporary Restraining Order and Preliminary Injunction. *See* ECF No. 1055 at 4 n.1. Therefore, with the Sun's request for preliminary relief pending, the RJ inevitably seeks to manipulate the Ninth Circuit's ruling and this Court's dissolution of the Stipulated Order into express permission to stop printing and distributing (thereby eliminating) the Sun. *See id*. But the applicability of the Ninth Circuit's Opinion is limited to the Stipulated Order and the enforceability of the 2005 JOA. That's it. The Sun is not asking this Court to maintain the Stipulated Order. Instead, the Sun requests that this Court exercise its broad equitable powers to prevent irreparable competitive harm and preserve competition pending adjudication on the merits. *See* ECF No. 1040. The Sun's requested relief is properly tailored to the RJ reverting to the lawful baseline of continuing the combination and printing and distributing the Sun pursuant to the 1989 JOA—not the Stipulated Order or the 2005 JOA.

The Ninth Circuit's Opinion did not prevent this Court from exercising its equitable powers or discretion in this way. *See generally Las Vegas Sun*, 147 F.4th 1103. The Ninth Circuit was completely silent about the consequences of the 2005 JOA's unenforceability in this case. *See generally id*. The Ninth Circuit did not discuss the legal consequences that an invalid 2005 JOA could have on the previously approved operations under the 1989 JOA. *See id*. The Ninth Circuit did not address the material elements of the 1989 JOA that the Attorney General approved, and which continued after 2005. *Id*. Furthermore, this Court's finding that the 2005 JOA was not a novation of the 1989 JOA stands. *Id*. Further still, the Ninth Circuit's declaration of unenforceability of the 2005 JOA does not erase the history of the parties' dealings whereby the RJ expressed its desire and intent that the parties revert to the 1989 JOA should the 2005 JOA be hindered or impacted by the DOJ. Consequently, nothing in the Opinion speaks to the remaining issues to be adjudicated by this Court, including the RJ' ability to terminate the joint operation and cease printing or distribution of the Sun. *Id*. Without a judgment on these (and related) issues, this Court retains broad authority to fashion equitable remedies to prevent irreparable competitive and public harm while the parties litigate these issues. *See infra*. The RJ's argument that this Court

cannot exercise its discretion to afford the Sun equitable relief under the First Amendment has already been rejected in contexts such as this. *Id.*

To be clear, while the Sun does not dispute that the Stipulated Order should be dissolved under the Ninth Circuit's ruling that the 2005 JOA is unenforceable, the Sun's pending request for preliminary relief must "fill the gap" while the parties litigate the unresolved and outstanding issues. Each day the RJ terminates the joint operation, and ceases to print and distribute the Sun, the irreparable harm to the Sun, competition, and consumers is compounded and it is irreversible. This is the antithesis of antitrust law and is precisely why Congress granted courts broad equitable authority for redress when it enacted Section 16 of the Clayton Act.

## II. THIS COURT'S GRANT OF THE RJ'S MOTION CANNOT BE USED TO IMPINGE ON THE COURT'S EQUITABLE AUTHORITY TO PRESERVE COMPETITION

### A. The Ninth Circuit's Opinion does Not Eliminate This Court's Authority to Grant the Sun's *New* Request for Equitable Relief

This Court has expansive authority under Section 16 of the Clayton Act to fashion an equitable remedy according to the necessities of this case in order to prevent irreparable harm to the Sun and preserve competition.

Section 16 provides, in relevant part:

> Any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties, against threatened loss or damage by a violation of the antitrust laws, … when and under the same conditions and principles as injunctive relief ….

15 U.S.C. § 26. The United States Supreme Court has consistently expressed that, under Section 16, district courts are "clothed with large discretion to fit the decree to the special needs of the individual case—not just to unfetter a market from anticompetitive conduct" (it can also expand competition in a market). *In re Google Play Store Antitrust Litig.*, 147 F.4th 917, 946 (9th Cir. 20-25) (quotations omitted); *see also Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1024 (9th Cir. 2016) ("District courts have broad latitude in fashioning equitable relief when necessary to remedy an established wrong.") (quotations omitted). Section 16 "states no restrictions or exceptions to the forms of injunctive relief a private plaintiff may seek, or that a court may order.... Rather, the

3

statutory language indicates Congress' intention that traditional principles of equity govern the grant of injunctive relief." *California v. Am. Stores Co.*, 495 U.S. 271, 281 (1990)[2] (quotations omitted).

Therefore, when the court finds that the conduct at issue threatens economic harm to consumers, the court is well within its discretion to fashion equitable relief that prohibits that conduct from causing harm. *See id.* at 282. Section 16's language places no limitation on this Court's power to grant relief against anticompetitive conduct, structural relief, or to issue prohibitory and mandatory injunctions. *See id.* at 282-83; *see also id.* at 283-84 (recognizing precedent upholding injunctions issued pursuant to Section 16 regardless of whether they were mandatory or prohibitory in character and collecting cases).

The rationale is this: Section 16 "was enacted 'not merely to provide private relief, but ... to serve as well the high purpose of enforcing the antitrust laws.'" *Id.* at 284 (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 130-31 (1969)). It is to be applied "with this purpose in mind, and with the knowledge that the remedy it affords." *Id.* (quotations omitted). No different than other "equitable remedies, [it] is flexible and capable of nice adjustment and reconciliation between the public interest and private needs as well as between competing private claims." *Id.* (quotations omitted). In sum, Section 16 is to be "construed generously and flexibly pursuant to principles of equity." *Id.*; *see also id.* at 295. Accordingly, "[t]he essence of equity jurisdiction has been the power of the [Court] to do equity and to mould each decree to the necessities of the particular case." *Id.* at 295.

In line with the purpose of Section 16, the Sun requests that this Court do equity to prevent the RJ from eliminating its competition from the market until this case is resolved on the merits. In doing so, the Sun is not asking the Court to enforce the Stipulated Order or contradict the Ninth Circuit's Opinion holding that the 2005 JOA is unenforceable. Therefore, while the Sun does not contest that the Stipulated Order should be dissolved, the Sun does contest that this Court's Order

---

[2] While the equitable remedy challenged in the *America Stores* case was a preliminary injunction that amounted to divestiture, that is of no consequence here. The Supreme Court's analysis of the purpose and scope of Section 16 of the Clayton Act is not limited to the particular remedy fashioned in that case. *See generally* 496 U.S. at 278-96.

4

1  dissolving the injunction entitles the RJ to stop printing and distributing the Sun. The outcome of
2  this argument is an existential question for the Sun. The Sun's pending request does not fall within
3  the Stipulated Order or the Ninth Circuit's ruling, contrary to the RJ's suggestion. *See* ECF No.
4  1055 at 4 n.1. The Sun is instead requesting that this Court, under its expansive cloak of discretion
5  afforded by Section 16, further the purpose of antitrust laws and preserve competition by requiring
6  the RJ to print and distribute the Sun under the 1989 JOA pending the outcome of the outstanding
7  issues.[3] This is the only remedy to prevent immediate and irreversible competitive harm to the Sun,
8  and consumers in southern Nevada. *See Gannett*, 99 F. Supp. 2d at 1253-24 (concluding that the
9  dominant JOA newspaper's impairment of circulation and access to the weaker paper, which
10 harmed the public perception of the viability of the weaker paper, would cause irreparable injury if
11 not enjoined because the weaker paper "would no longer be a viable newspaper," and no amount
12 of money would be able to compensate the loss of the weaker paper's editorial and reportorial
13 voice).

**B.   This Court's Authority to Issue the Sun's Equitable Remedy is Not Limited by the RJ's Claimed First Amendment Rights**

The RJ's new challenge that being "forced to print content *inside its newspaper* against its will … is a clear violation of the Review-Journal's First Amendment rights," is also meritless for two interrelated reasons. *See* ECF No. 1056 at 4, 6 (emphasis added).[4] Preliminarily, as this Court already explained in its summary judgment Order, "'The Supreme Court has recognized that constitutional rights may ordinarily be waived if it can be established by clear and convincing evidence that the waiver is voluntary, knowing and intelligent.'" ECF No. 970 at 42-43 (quoting *Davies v. Grossmont Union High Sch. Dist.*, 930 F.2d 1390, 1394 (9th Cir. 1991), and citing *D.H.*

---

[3] Moreover, given the RJ's first contest to the validity of the 2005 JOA in 2019 and the Ninth Circuit's recent Opinion, the 1989 JOA is also, in fact, the "status quo ante litem" for the propriety of the preliminary injunction. *See GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2020) (defining "[t]he status quo ante litem" as "not simply to any situation before the filing of a lawsuit, but instead to "the last uncontested status which preceded the pending controversy").

[4] While the RJ made its First Amendment challenge in its Emergency Motion to Expedite Resolution of Defendants' Renewed Motion to Dissolve Preliminary Injunction but not in its actual Renewed Motion to Dissolve (*compare* ECF No. 1056 at 4, 6 *with* ECF No. 1055), the RJ will inevitably raise this issue in its reply in support of its renewed motion. The Sun, therefore, addresses this argument now.

5

1  *Overmyer Co. v. Frick Co.*, 405 U.S. 174, 185, 187 (1972)). Relatedly, this Court previously found
2  that the RJ is not publishing the Sun's content in the RJ's newspaper; rather, "the Court f[ound]
3  that the Sun is a separate and independent newspaper product" even when published under the
4  Newspaper Bundle format. ECF No. 970 at 28.

5  More specifically, as this Court stated with respect to the Sun, the RJ has knowingly and
6  voluntarily waived its First Amendment rights not to print and distribute the Sun when it entered
7  into the 1989 JOA, which requires it to do so. *See* ECF No. 970 at 42-43; *see also* ECF No. 1040
8  at 3-6 (discussing how the RJ knowingly and voluntarily entered into the 1989 JOA and agreed to
9  be responsible for and in control of all business aspects of the joint operation including acting on
10 behalf of the Sun and printing and distributing the Sun (citing the Preliminary Statement and
11 Sections 5.1, 4.3, among others)). The NPA and the Attorney General's approval of the 1989 JOA
12 further dispels any argument that the RJ's waiver of any First Amendment rights should not be
13 enforced, because "'the interest in its enforcement' is most certainly not 'outweighed in the
14 circumstances by a public policy harmed by enforcement of the agreement'" to waive those rights.
15 *See* ECF No. 970 at 43 (quoting *Leonard v. Clark*, 12 F.3d 885, 890 (9th Cir. 1994)); *see also* ECF
16 No. 1040 at 6-8 (discussing the Attorney General's approval of the 1989 JOA based on the RJ's
17 representations made in the agreement and to the DOJ, which established that the policy and
18 purpose of the NPA would be effectuated by "preserve[ing] the Sun in operations … as a second
19 editorial voice"); *id.* at 4 (discussing how the RJ agreed in the 1989 JOA that "continued publication
20 of at least two newspapers of general circulation, editorially and reportorially separate and
21 independent, is of paramount importance to the citizens of Las Vegas and its environs" and the
22 importance of preserving their respective editorial and reportorial independence and autonomy as
23 "the *essence*" of their agreement); *see also* 15 U.S.C. § 1801.[5] The RJ's waiver was categorically
24 and undisputedly found to be *in* the paramount public interest in preserving the Sun Newspaper as

---

[5] Providing, "In the public interest of maintaining a newspaper press editorially and reportorially independent and competitive in all parts of the United States, it is hereby declared to be the public policy of the United States to preserve the publication of newspapers in any city, community, or metropolitan area where a joint operating arrangement has been heretofore entered into because of economic distress or is hereafter effected in accordance with the provisions of this chapter." 15 U.S.C. § 1801.

a distinct editorial voice in Clark County. *See supra*.

The court in *Hawaii ex rel. Anzai v. Gannett Pacific Corp.*, 99 F. Supp. 2d 1241 (D. Haw. 1999), expressly rejected this same First Amendment argument advanced by the RJ now to limit this Court's granting of the preliminary injunction. In holding that termination of the JOA "would be completely at odds with the congressional intent embodied in the Newspaper Preservation Act," and would likely violate the Sherman Act (*id.* at 1252; *see also id.* at 1248-51), the *Gannett* court concluded that the newspaper's First Amendment rights "to refrain from speaking or publishing" the weaker paper were not implicated by its preliminary injunction. *See generally id.* at 1252. Like the Supreme Court found in *Associated Press v. United States*, 326 U.S. 1, 20 (1945), the *Gannett* court concluded that it was proper to "reject[ ] the argument that the press is immune from the antitrust laws by virtue of the First Amendment" because the NPA does not exempt the newspapers' attempt to terminate the joint operation from antitrust scrutiny. *Id.* at 1252.

The circumstances the *Gannett* court found persuasive exist here. This Court would not be "compelling Defendants to publish any particular viewpoint[;] … [c]onversely, here the Court would merely enjoin Defendants to continue doing that which they are already doing under the terms of the JOA, namely publishing a newspaper with whatever editorial and reportorial content they deem appropriate." *Id.* at 1252-53; *see also Comm. for an Indep. P-I v. Hearst Corp.*, 704 F.2d 467, 483 (9th Cir. 1983) (finding no First Amendment injury under a JOA entered into pursuant to the NPA). There is no First Amendment violation. *Gannett*, 99 F. Supp. 2d at 1252.

Relatedly, the RJ is not being compelled to print the Sun's content in the Review-Journal Newspaper. As has always been the case under the 1989 JOA and the 2005 JOA, "[t]he Sun supplies content to the RJ 'for publication in the Sun,' not in the RJ[;] [t]he Sun has full editorial independence, and the RJ must publish the Sun so long as the Sun complies with production requirements[;]" and the parties (and consumers) treat the Sun as a separate Newspaper. *See* ECF No. 970 at 28; *see also* ECF No. 870 at 5-6, 29-30. For this reason, even under the 2005 JOA Newspaper Bundle format and 1989 joint edition format, "the Sun is a separate and independent newspaper product." *See* ECF No. 970 at 28; *see also, e.g.*, ECF No. 970 at 28 & ECF No. 1040 at 9-10 (discussing 2005 JOA provisions, especially Section 5.1, providing, "So long as the Sun

furnish[ed] news and editorial copy, features and services to the Review-Journal in accordance with Article 4" (setting for the technical specifications for publishing), the RJ would "produce the Sun" and "include the Sun copy and to sell all advertising for, promote and circulate such newspapers.") *with* ECF No. 1040 at 5 (discussing the same provisions in the 1989 JOA, especially Section 5.1, providing "So long as [the] Sun furnish[ed] news and editorial copy, features and services to [the] Review-Journal in accordance with Article 4" (setting forth the technical specifications for publishing), the RJ "agree[d] to produce the Sun" and "include the Sun copy and features in jointly published newspapers ... and to sell all advertising for, promote and circulate such newspapers.").

Given this Court's previous finding that the Sun is a separate and independent Newspaper from the RJ under the 2005 JOA, and the indisputable fact that the Sun was also a separate Newspaper under the 1989 JOA, the RJ is not being forced to publish content in "*its* newspaper." *See* ECF No. 1056 at 4. The mere threatened elimination of a JOA newspaper has been held to warrant an injunction due to the irreparable injury sustained from the loss of competition. *Gannett*, 99 F. Supp. 2d at 1253. And "it is well settled that [the RJ's] First Amendment rights are not immunized from regulation when they are used as an integral part of conduct which violates" antitrust laws. *See Ca. Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 514 (1972). The RJ simply cannot use its First Amendment rights "as the means or the pretext for achieving 'substantive evils,' which the legislature has the power to control. Certainly the constitutionality of the antitrust laws is not open to debate." *Id.* at 515 (citations and quotations omitted).

### III. CONCLUSION

The Sun does not contest the Ninth Circuit's binding Opinion on this Court as the ruling is properly read: that the 2005 JOA is unenforceable and this Court's denial of the RJ's motion to dissolve is reversed. But the RJ's Motion cannot extend this ruling to impinge upon this Court's broad authority and discretion to issue the Sun's new request for preliminary relief to maintain the competitive conditions under the valid and enforceable 1989 JOA. This is squarely within the Court's authority, and a necessary remedy to prevent irreversible harm while this Court determines the continuing legal effects of the 1989 JOA. The RJ's attempt to eliminate its sole competitor is a classic basis for relief under Section 16 of the Clayton Act.

DATED this 3rd day of March, 2026.

                CLARK HILL PLC

By: */s/ Kristen L. Martini*
    E. Leif Reid, Nevada Bar No. 5750
    Kristen L. Martini, Nevada Bar No. 11272
    Nicole Scott, Nevada Bar No. 13757
    1700 S. Pavillion Center Drive, Suite 500
    Las Vegas, Nevada 89169

PISANELLI BICE PLLC
James J. Pisanelli, Nevada Bar No. 4027
Todd L. Bice, Nevada Bar No. 4534
400 South 7th Street, Suite 300
Las Vegas, Nevada 89135

BROWNSTEIN HYATT FARBER SHRECK, LLP
Jordan T. Smith, Nevada Bar No. 12097
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106

ALIOTO LAW FIRM
Joseph M. Alioto, Pro Hac Vice
One Sansome Street, 35th Floor
San Francisco, California 94104

*Attorneys for Plaintiff/Counterdefendants*

9

# CERTIFICATE OF SERVICE

I certify that I am an employee of CLARK HILL PLC, and I caused a true and correct copy of the foregoing **PLAINTIFF/COUNTERDEFENDANTS' OPPOSITION TO DEFENDANTS' NOTICE OF MOTION AND RENEWED MOTION TO DISSOLVE PRELIMINARY INJUNCTION (ECF NO. 1055)** to be served by electronically filing the foregoing with the CMECF electronic filing system which will send notice of electronic filing to:

J. Randall Jones, Esq.
Michael J Gayan, Esq.
Mona Kaveh, Esq.
KEMP JONES, LLP
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, NV 89169

Michael J. Gayan
CLAGGETT & SYKES LAW FIRM
4101 Meadows Lane, Suite 100
Las Vegas, NV 89107

Amy M. Gallegos, Esq.
David R. Singer, Esq.
Andrew G. Sullivan, Esq.
Alison I Stein, Esq.
JENNER & BLOCK LLP
515 South Flower Street, Suite 3300
Los Angeles, CA 90071

Richard L. Stone, Esq.
850 Deveon Avenue
Los Angeles, CA 90024

DATED: March 3, 2026.

/s/ Kristen L. Martini
An Employee of Clark Hill PLC