J. RANDALL JONES, ESQ., SBN 1927
r.jones@kempjones.com
MONA KAVEH, ESQ., SBN 11825
m.kaveh@kempjones.com
KEMP JONES LLP
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada  89169
Telephone:	+1 702 385 6000

DAVID R. SINGER, ESQ. (*pro hac vice*)
dsinger@jenner.com
AMY M. GALLEGOS, ESQ. (*pro hac vice*)
agallegos@jenner.com
JENNER & BLOCK LLP
515 South Flower Street, Suite 3300
Los Angeles, California  90071
Telephone:	+1 213 239 5100
Facsimile:	+1 213 239 5199

MICHAEL J. GAYAN, ESQ., SBN 11135
mike@claggettlaw.com
CLAGGETT & SYKES LAW FIRM
4101 Meadows Lane, Suite 100
Las Vegas, Nevada  89107
Telephone:	+1 702 333 7777
Facsimile:	+1 702 655 3763

RICHARD L. STONE, ESQ. (*pro hac vice*)
rstone@fastmail.com
850 Devon Avenue
Los Angeles, California  90024
Telephone:	+1 310 993 2068

*Attorneys for Defendants/Counterclaimant*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| LAS VEGAS SUN, INC.,<br><br>                    Plaintiff,<br><br>     v.<br><br>SHELDON ADELSON, et al.,<br><br>                    Defendants. | Case No. 2:19-cv-01667-ART-MDC<br><br>**DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT** |
| AND RELATED COUNTERCLAIM | |

Defendant/Counterclaimant Las Vegas Review-Journal, Inc. (the "Review-Journal"), and Defendants News+Media Capital Group LLC, Estate of Sheldon Adelson, Patrick Dumont, and Interface Operations LLC dba Adfam (Review-Journal and other Defendants, collectively, the "Defendants"), by and through their counsel of record, Kemp Jones, LLP, Jenner & Block LLP, Claggett & Sykes Law Firm and Richard L. Stone, Esq., hereby move this Court for an order granting the Review-Journal summary judgment pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56-1.

This Motion is based on the following memorandum of points and authorities, the papers and pleadings on file in this action, any exhibits, and any argument the Court may allow at a hearing on the motion.

Dated: March 9, 2026

CLAGGETT & SYKES LAW FIRM

By: */s/ Michael Gayan*
MICHAEL J. GAYAN, ESQ., SBN 11135
4101 Meadows Lane, Suite 100
Las Vegas, Nevada 89107

J. RANDALL JONES, ESQ., SBN 1927
MONA KAVEH, ESQ., SBN 11825
KEMP JONES LLP
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169

DAVID R. SINGER, ESQ. (*pro hac vice*)
AMY M. GALLEGOS, ESQ. (*pro hac vice*)
JENNER & BLOCK LLP
515 South Flower Street, Suite 3300
Los Angeles, California 90071

RICHARD L. STONE, ESQ. (*pro hac vice*)
850 Devon Avenue
Los Angeles, California 90024

*Attorneys for Defendants/Counterclaimant*

I.  **INTRODUCTION**

For more than six years, the Sun has pursued claims against Defendants under Sections 1 and 2 of the Sherman Act.[1] A necessary element of every Section 1 or Section 2 claim is proving that the defendant engaged in predatory (*i.e.*, anticompetitive) actions to achieve or maintain a monopoly. Mere possession of monopoly power alone is not illegal. Instead, a defendant must also have engaged in *anticompetitive conduct* to be liable under the Sherman Act. The best example of anticompetitive conduct is collusion with a competitor on things like price and product supply. That is why a joint operating arrangement between newspapers was found to be illegal by the U.S. Supreme Court nearly 60 years ago[2] in a case that ultimately led Congress to pass the Newspaper Preservation Act, which creates limited exceptions for otherwise anticompetitive collusion.

The Sun has alleged that Defendants engaged in seven supposedly "anticompetitive acts and/or practices through which the RJ willfully acquired or maintained monopoly power." *See* ECF No. 621 ("Am. Compl.") ¶¶ 66–121; *see also* ECF No. 1008 ("JPTO") at 23–27. Each of these so-called "anticompetitive acts" is merely an alleged contractual breach of the 2005 JOA. *See id.* Thus, for the Sun to prove that Defendants supposedly engaged in "anticompetitive" acts, the Sun must also prevail on its theory that Defendants supposedly violated the 2005 Joint Operating Agreement (the "2005 JOA") between Defendants and the Sun. Because every one of the Sun's alleged "predatory acts" is premised on obligations that were created by the 2005 JOA itself—obligations that do not exist (and would otherwise *violate* the Sherman Act) unless the parties are bound to the 2005 JOA—the Sun's theory, and its remaining claims, are now foreclosed as a matter of law.

In a published opinion, the Ninth Circuit squarely held that "the 2005 JOA is unlawful and unenforceable" under the Newspaper Preservation Act ("NPA"), 15 U.S.C. § 1801 *et seq.*, because it was entered into without the statutorily required prior written approval of the Attorney General.

---

[1] The Sun's Sherman Act § 2 conspiracy claim and Clayton Action § 7 claim have been dismissed, ECF No. 243 at 15, 18, so only its claims for monopolization and attempted monopolization under Section 2 of the Sherman Act (First and Second Claims for Relief), violation the Nevada Unfair Trade Practices Act (Fifth Claim for Relief), and violation of Section 1 of the Sherman Act (Sixth Claim for Relief) remain (the "remaining claims").

[2] *See Citizen Pub. Co. v. United States*, 394 U.S. 131 (1969).

ECF No. 1016 at 33. That decision is now final: the Ninth Circuit denied the Sun's petition for rehearing *en banc*, the Supreme Court has denied the Sun's petition for certiorari, and the Ninth Circuit has issued its mandate. As a result, neither party could lawfully perform under the 2005 JOA, and no court can lawfully enforce any duties that purportedly arise from the 2005 JOA. Without an enforceable 2005 JOA, there is no basis for finding that Defendants engaged in predatory conduct—a necessary element of every one of the Sun's remaining claims. Allowing this case to proceed would not only contradict binding precedent but would also result in the unlawful enforcement of an agreement federal law expressly prohibits.

The Court should grant Defendants' renewed motion for summary judgment.

## II.   STATEMENT OF UNDISPUTED FACTS

1. The Sun filed this lawsuit against the Review-Journal newspaper's current owner and others on September 24, 2019, claiming Defendants are engaged in an "anticompetitive scheme" to eliminate the Sun and "monopolize the market for daily local newspapers in Clark County." ECF No. 1 ("Compl.") ¶ 48.

2. The Sun originally brought six claims against Defendants, and only its claims under Sections 1 and 2 of the Sherman Act and its claim under the Nevada Unfair Trade Practices Act (the "Remaining Claims") are still at issue. *See* ECF No. 243 at 15, 18.

3. The Parties agree that the Sun's claim under the Nevada Unfair Trade Practices Act rises and falls with its federal claims. Am. Compl. ¶ 183 ("[t]he Nevada Unfair Trade Practices Act [is] construed in conformity with federal antitrust laws").

4. Each supposedly "anticompetitive act[]" the Sun argues is evidence supporting its remaining claims is predicated on an alleged violation of contractual provisions of or duties supposedly imposed by the 2005 JOA between the Sun and the Review-Journal:[3]

   a. **Termination of "Relationship with Then-Publisher Jason Taylor" (*i.e.*, breach of Section 4.2 and Appendix D of the 2005 JOA):** *First*, the Sun alleges and seeks to proffer evidence that the Defendants' termination of the *Review-Journal*'s former publisher Jason Taylor

---

[3] The Sun's factual assertions would never hold up to scrutiny if this case proceeded, but, as set forth herein, Defendants are entitled to judgment even if one assumes the assertions are true.

3

was "in [f]urtherance of [i]ts [a]nticompetitive [s]cheme" because Mr. Taylor had supposedly "advocated ceasing" accounting practices that allegedly ran afoul of the 2005 JOA. Am. Compl. ¶¶ 67–80; *see also* JPTO at 89–90 (listing Mr. Taylor as a witness the Sun "[e]xpects to [p]resent at [t]rial" and listing Mr. Taylor's testimony among the depositions the Sun will seek to offer).

      b. **"Charging Prohibited Editorial Expenses Against the Joint Operation to Reduce Profit Payments to the Sun"** (*i.e.*, breach of Section 4.2 and Appendix D of the 2005 JOA): *Second*, the Sun alleges and seeks to proffer evidence that supposedly shows "Defendants had increased the Review-Journal's editorial costs" and charged those costs against the joint operation "even though under the 2005 JOA the parties are to 'bear their own respective editorial costs.'" Am. Compl. ¶¶ 81–85; JPTO at 23 (listing "[c]harging the RJ's editorial costs to the Joint Operation" as an example of Defendants' alleged "anticompetitive conduct"). The Sun claims this practice "lead [sic] to lower Annual Profits Payments to the Sun." Am. Compl. ¶ 82. This theory comes from Section 4.2 of the 2005 JOA ("[t]he Review-Journal and the Sun shall each bear their own respective editorial costs") and from Appendix D of the 2005 JOA (setting forth the formula for calculating and paying the Sun's "annual profits payment"). *See* ECF No. 39-5 ("2005 JOA").

      c. **Charging "the Review-Journal's Individual and Uncovered Promotional Expenses to the Joint Operation to Reduce Annual Profits Payments to the Sun"** (*i.e.*, **breach of Section 5.1.4 and Appendix D of the 2005 JOA**): *Third*, the Sun alleges and seeks to proffer evidence that supposedly shows that Defendants marketed and promoted "the Review-Journal in various advertising mediums without any mention of the Sun, or displaying the Sun's logo disproportionately to the Review-Journal's, ***in contravention to the RJ's promotional responsibilities under the 2005 JOA***" and that the Review-Journal then improperly charged the expenses for these promotions against the joint operation even though that is "***barred by the 2005 JOA***." ECF No. 621 ¶¶ 86–96 (emphasis added); JPTO at 24–25. In other words, the Sun claims the Review-Journal breached Section 5.1.4 of the 2005 JOA, which provides that the "Review-Journal shall use commercially reasonable efforts to promote the Newspapers," and that "[a]ny promotion of the Review-Journal as an advertising medium or to advance circulation shall include mention of equal prominence for the Sun," 2005 JOA § 5.1.4, as well as Appendix D, which sets

forth the exclusive formula for calculating and paying the Sun's "annual profits payment," *see id.*, App'x D.

   d. **Removal of the Sun Box, "Minimizing Visibility of the Sun Logo on the Front Page," and "Covering the Sun's Mention on the Front Page with Advertising Stickers" (i.e., breach of Appendix B of the 2005 JOA):** *Fourth,* the Sun alleges and seeks to proffer evidence that the Defendants violated the 2005 JOA by redesigning the Sun's noticeable mention on the front page of the *Review-Journal* and concealing the Sun's noticeable mention with stickers and spadea. Am. Compl. ¶¶ 97–106; JPTO at 24–25; *see also* 2005 JOA App'x B (setting forth standards for the Sun's front-page noticeable mention).

   e. **Elimination of "the Sun from the Electronic Replica Edition" (i.e., breach of Section 10.6 of the 2005 JOA):** *Fifth*, the Sun alleges and seeks to proffer evidence that the Defendants violated Section 10.6 of the 2005 JOA by removing the Sun from the *Review-Journal*'s electronic replica edition. Am. Compl. ¶¶ 107–112; JPTO at 24; *see also* 2005 JOA § 10.6.

   f. **"Block[ing] the Sun from Exercising Its Audit Rights Under the JOA" (i.e., breach of Appendix D of the 2005 JOA):** *Sixth*, the Sun alleges and seeks to proffer evidence that Defendants "obstructed" the audit rights guaranteed by the 2005 JOA by withholding requested documents and information. Am. Compl. ¶¶ 113–119; JPTO at 25–26; *see also* 2005 JOA at App'x D (setting forth the Sun's "right" to "examine and audit the books and records of the Review-Journal").

   g. **"Seek[ing] to Terminate the [2005] JOA on Made-Up Grounds":** *Seventh*, the Sun claims that Defendants' state-court counterclaims to terminate the 2005 JOA are a sham because they were inconsistent with the Parties' respective obligations under the 2005 JOA. Am. Compl. ¶¶ 120–121; JPTO at 26–27.

 5. Early in this case, the Court entered a stipulated preliminary injunction maintaining the status quo under the 2005 JOA during litigation, subject to judicial intervention. ECF No. 13.

 6. Defendants later moved to dissolve the stipulated preliminary injunction because the 2005 JOA is unlawful and unenforceable as a matter of law. ECF Nos. 852, 853.

7. On March 31, 2024, this Court denied that motion, finding that the 2005 JOA satisfied the requirements of the NPA and was enforceable. ECF No. 970 at 19:21–25.

8. In that same Order, this Court denied Defendants' summary judgment motion, stating, "[b]ecause the Court finds that the 2005 JOA is enforceable, it denies the RJ's motion for summary judgment on this ground." ECF No. 970 at 19:20–21.

9. Defendants appealed, arguing the NPA required the 2005 JOA to be approved in writing by the Attorney General and that because the 2005 JOA was not approved in writing, it was unlawful and unenforceable. Opening Brief for Defendants-Appellants at 34–53, *Las Vegas Sun, Inc. v. Adelson*, No. 24-2287 (9th Cir. May 9, 2024), Dkt. No. 14. In its answering brief, the Sun argued that written AG approval was not required and that even if it were, the lack of approval would not "invalidate the Amended JOA." Appellee's Answering Brief at 66–67, *Las Vegas Sun, Inc. v. Adelson*, No. 24-2287 (9th Cir. June 13, 2024), Dkt. No. 24.

10. On appeal, the Ninth Circuit reversed the district court and rejected all of the Sun's arguments. In a published opinion, the unanimous panel held that because the parties had not obtained "the prior written consent of the Attorney General," the 2005 JOA is "unlawful and unenforceable" as a matter of law. ECF No. 1016 at 4, 33 (quoting 15 U.S.C. § 1803(b)).

11. The Sun then filed a petition for panel rehearing and rehearing *en banc*, arguing that the panel had erred in finding that the written AG approval was required and that lack of written AG approval invalidated the 2005 JOA. Petition for Rehearing or Rehearing *En Banc* at 16–20, *Las Vegas Sun, Inc. v. Adelson*, No. 24-2287 (9th Cir. Aug. 18, 2025), Dkt. No. 62.

12. The Ninth Circuit denied the Sun's petition for panel rehearing and rehearing *en banc*. Order, *Las Vegas Sun, Inc. v. Adelson*, No. 24-2287 (9th Cir. Sept. 11, 2025), Dkt. No. 63.

13. The Supreme Court denied the Sun's petition for certiorari. *Las Vegas Sun, Inc. v. Adelson*, --- S. Ct. ----, 2026 WL 490865 (2026).

14. The Ninth Circuit's mandate issued on February 25, 2026. ECF No. 1063.

/ / /

/ / /

### III. LEGAL STANDARD

The Court should grant summary judgment in this case because the record demonstrates that there is no genuine issue as to any material fact, and the Review-Journal is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Gorlick Distrib. Ctrs.*, *LLC v. Car Sound Exhaust Sys., Inc.*, 723 F.3d 1019, 1021 (9th Cir. 2013). Summary judgment is mandatory when a plaintiff fails to provide sufficient evidence to "establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"A moving party may renew a motion for summary judgment notwithstanding denial of an earlier motion by showing a different set of facts or some other reason justifying renewal of the motion." *Carnegie Mellon Univ. v. Hoffman-La Roche Inc.*, 148 F. Supp. 2d 1004, 1010 (N.D. Cal. 2001). For example, a renewed summary judgment motion is appropriate where, as here, an appellate court ruling calls into question the court's prior summary judgment decision. *See, e.g.*, *Vejo v. Portland Pub. Schs.*, 2018 WL 6312998, at *1 (D. Or. Nov. 30, 2018) (granting renewed motion for summary judgment in light of appellate decision reversing determination of the district court).

### IV. ARGUMENT

The Ninth Circuit's decision finding that the 2005 JOA is unlawful and unenforceable as a matter of law conclusively establishes that there is no triable issue of fact on the Sun's remaining claims. This Court therefore should grant summary judgment.

#### A. The 2005 JOA is Unlawful and Unenforceable as a Matter of Law.

The Ninth Circuit held as a matter of law that the 2005 JOA is unlawful and unenforceable. The Sun has exhausted all opportunities to appeal that ruling and the Ninth Circuit's mandate has issued. The Ninth Circuit's ruling is now final and binding on this Court.

Under the law-of-the-case doctrine, a court is barred from "reconsidering an issue that has already been decided by … a higher court in the identical case … either expressly or by necessary implication." *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993) (citation omitted). "The rule of mandate is similar to, but broader than, the law of the case doctrine." *United States v. Cote*, 51

7

F.3d 178, 181 (9th Cir. 1995). It requires that, "[w]hen a case has been once decided . . . on appeal, and remanded to the district court, whatever was before th[e] [appellate] court, and disposed of by its decree, it considered as finally settled." *Alaska Dep't of Fish & Game v. Fed. Subsistence Bd.*, 139 F.4th 773, 787 (9th Cir. 2025). As the Ninth Circuit has explained:

> A district court, upon receiving the mandate of an appellate court cannot vary it or examine it for any other purpose than execution. Thus, a district court could not refuse to dismiss a case when the mandate required it, and a district court could not revisit its already final determinations unless the mandate allowed it.

*Cote*, 51 F.3d at 181. Applying this rule, courts have granted a party's renewed motion following an appeal where an appellate decision rejected the theory underlying the district court's prior decision. *See, e.g.*, *Vejo*, 2018 WL 6312998, at *1; *Montana v. Talen Montana, LLC*, 2018 WL 3649606, at *3–4, *8 (D. Mont. Aug. 1, 2018) (granting renewed motion to dismiss based on Supreme Court decision).

The same result is required here. This Court denied Defendants' summary judgment motion based on its view that the 2005 JOA was lawful and enforceable. ECF No. 970 at 19:20–21. The Ninth Circuit has now expressly rejected that position as a matter of law. ECF No. 1016. Accordingly, based on the Ninth Circuit's decision, this Court must grant summary judgment for Defendants on any claim by the Sun based on the 2005 JOA. Each of the Sun's claims are based on the 2005 JOA, so each must be dismissed.

### B. The Sun's Remaining Claims Fail Because They Are Premised on the 2005 JOA.

To prevail on its remaining claims, the Sun must prove that Defendants engaged in predatory (*i.e.*, anticompetitive) conduct. *See Fed. Trade Comm'n v. Qualcomm Inc.*, 969 F.3d 974, 990 (9th Cir. 2020). If the Sun cannot show Defendants engaged in a predatory act, the Sun's Sherman Act claims (and by extension, its Nevada Unfair Trade Practices Act claim) fail as a matter of law. *See id.* at 1005 (reversing district court ruling on Section 1 and 2 claims where the defendant's conduct did not "amount to anticompetitive conduct"); *see also* ECF No. 970 at 26–27 (explaining that "[a]n antitrust injury must 'flow[] from that which makes defendants' acts unlawful'") (quoting *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of California*, 190 F.3d 1051, 1056 (9th

Cir. 1999)); ECF No. 829 at 56–57 (the Sun arguing that in order to prove antitrust injury, the Review-Journal must show that its "loss flows from an anticompetitive aspect or effect of the [Sun]'s behavior") (citing *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1433 (9th Cir. 1995)).

In its prior decision denying Defendants' motion for summary judgment, this Court found that the "2005 JOA is enforceable," and denied the "RJ's motion for summary judgment on this ground." ECF No. 970 at 19:20–21. It further found the Sun had met its burden of proving antitrust injury because the Defendants' alleged anticompetitive acts (i.e., its "alleged breach[es] of the 2005 JOA") allegedly "result[ed] in harm to the Sun, competition in the relevant market, and consumers." *Id.* at 26:10–14. Following the Ninth Circuit's decision, however, the Sun cannot rely on alleged breaches of the illegal 2005 JOA to serve as anticompetitive acts necessary to sustain its remaining claims. And because each of the seven so-called "anticompetitive acts" the Sun has alleged is premised on breaches of the 2005 JOA, the Sun's claims fail as a matter of law.

### 1. *Defendants' Alleged Termination of Jason Taylor Because of His Supposed Desire to Comply with the 2005 JOA.*

*First*, the Sun claims that Defendants' terminated Mr. Taylor "because" he had supposedly "advocated ceasing" accounting practices that allegedly ran afoul of the 2005 JOA, "which was contrary to Adelson and the remaining Defendants' plan to starve the Sun of funds needed to operate." Am. Compl. ¶¶ 67–80. According to the Sun, Mr. Taylor "discovered that the Review-Journal's former owner, Stephens Media Group, had been dishonest in calculating the profit payments **under the 2005 JOA** due and owing to the Sun." *Id.* ¶¶ 69–70 (emphasis added). The Sun also alleges that Taylor was "removed to pave the way for another publisher," who allegedly made certain accounting decisions that reduced the Sun's profits payment under the 2005 JOA. *Id.* ¶¶ 77, 79.

Absent an approved JOA under the Newspaper Preservation Act, it is unlawful for two newspapers to collude on price and profits. *See Citizen Publishing Co.*, 394 U.S. 131; 15 U.S.C. § 1. The only basis for the Sun's annual profits payment, or Defendants' supposed obligation to keep Mr. Taylor on as publisher is the now-invalidated 2005 JOA. Even assuming the Sun's allegations were true (they are not—Mr. Taylor was fired because his claims that he could improve the

9

Review-Journal's bottom-line were smoke and mirrors, and Defendants wanted a publisher who would honestly try to make the newspaper as good as it could be), without the 2005 JOA, Mr. Taylor's termination cannot be an "anticompetitive act" under the Sherman Act, which "does not restrict the long recognized right of [a] [company] engaged in an entirely private business, freely to exercise [its] own independent discretion as to parties with whom [it] will deal." *Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 408 (2004).

### 2. *Defendants' Alleged Breach of Section 4.2 of the 2005 JOA and the 2005 JOA's Accounting Requirements for Editorial Expenses.*

*Second*, the Sun claims that "Defendants had increased the Review-Journal's editorial costs" and charged those costs against the joint operation "even though under the 2005 JOA the parties are to 'bear their own respective editorial costs.'" Am. Compl. ¶¶ 81–85; JPTO at 23 (listing "[c]harging the RJ's editorial costs to the Joint Operation" as an example of Defendants' alleged "anticompetitive conduct"). This purported predatory conduct is based on Section 4.2 of the 2005 JOA which provides that "[t]he Review-Journal and the Sun shall each bear their own respective editorial costs" and Appendix D, which sets forth the exclusive formula for calculating and paying the Sun's "annual profits payment." These allegations are baseless (Defendants merely continued the practice prior owners of the Review-Journal had engaged in and which the Sun had known about and approved of for ten years before suddenly claiming it supposedly violated the 2005 JOA), but now that the 2005 JOA has been declared unlawful, these supposed breaches cannot be "anticompetitive" under the Sherman Act, in any event.

This is because "[a]s a general rule, businesses are free to choose the parties with whom they will deal, as well as the prices, terms, and conditions of that dealing." *Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 448 (2009). Indeed, it is well established that "there is no duty to aid competitors," *Trinko, LLP*, 540 U.S. at 411, and the Supreme Court has recognized that "a market participant's right to refuse to deal with competitors generally serves *procompetitive* purposes." *Facebook, Inc. v. BrandTotal Ltd.*, 2021 WL 3885981, at *7 (N.D. Cal. Aug. 31, 2021) (emphasis added) (citing *Trinko*, 540 U.S. at 407–08).

*CoStar Group, Inc. v. Commercial Real Estate Exchange Inc.*, 619 F. Supp. 3d 983 (C.D. Cal. 2022), is instructive. There, the plaintiff asserted claims under Sections 1 and 2 of the Sherman Act, alleging that the defendant, which provided commercial real estate services, had engaged in conduct, including "altering information and images on websites it hosts . . . by adding watermarks and its own logo," which raised costs for competitors like the plaintiff who wanted to "copy" the defendant's content. *Id.* at 988, 992. The court rejected this argument, reasoning that it was not "anticompetitive for [the defendant] to seek to limit the amount it in effect subsidize[d] its competitors" and that because the defendant was "under no obligation to provide information or photographs to [the plaintiff] at all, . . . its decision in some cases to add watermarks or logos to the information [it hosted on its website] [was] not anticompetitive conduct." *Id.* at 992. Here too, the Sun's complaints about the Review-Journal's accounting—which it was under no obligation to do absent the 2005 JOA—do not constitute predatory conduct under the Sherman Act.

In short, without the 2005 JOA, there is no obligation to segregate editorial costs, no profits-payment formula, and no basis for claiming that Defendants' internal accounting decisions constituted predatory conduct. The Sun's accounting allegations were never anything more than a contract dispute dressed in antitrust clothing (and were baseless even as a contract dispute), and since the Ninth Circuit has already held that the contract is void, any claim based on failure to adhere to the contract fails as a matter of law.

### 3. Defendants' Alleged Breach of Their Promotional Obligations and the 2005 JOA's Accounting Requirements for Promotional Expenses.

*Third,* the Sun claims the Review-Journal marketed and promoted "the Review-Journal in various advertising mediums without any mention of the Sun, or displaying the Sun's logo disproportionately to the Review-Journal's, ***in contravention to the RJ's promotional responsibilities under the 2005 JOA***" and that Defendants then improperly charged the expenses for these promotions against the joint operation even though that is "***barred by the 2005 JOA***." ECF No. 621 ¶¶ 86–96 (emphasis added); JPTO at 23–24. Section 5.1.4 of the 2005 JOA provides that "[a]ny promotion of the Review-Journal as an advertising medium or to advance circulation shall include mention of equal prominence for the Sun." 2005 JOA § 5.1.4. The 2005 JOA also

11

established detailed procedures for allocating costs and revenues. *See id.* ¶ 37 (explaining that the 2005 JOA provides that the "Sun shall receive an annual profits payment" from the Review-Journal); *see also* 2005 JOA, App'x D (explaining the procedure for calculating the Sun's profits payment from the Review-Journal). Even if the Sun's claims were true (they are not), these supposed breaches of the 2005 JOA cannot be anticompetitive because the 2005 JOA cannot be enforced. *See Qualcomm*, 969 F.3d at 995; *CoStar*, 619 F. Supp. 3d at 992.

### 4.   *Defendants' Alleged Breaches of the 2005 JOA's Requirements for the Sun's "Noticeable Mention."*

*Fourth,* the Sun claims that Defendants violated the 2005 JOA by improperly redesigning the Sun's front-page noticeable mention and concealing the Sun's noticeable mention with stickers and spadea. Am. Compl. ¶¶ 97–106; *see also* 2005 JOA App'x B (setting forth standards for the Sun's front-page noticeable mention).

As the Sun itself has alleged, the 2005 JOA is the sole source of these obligations. *See* Am. Compl. ¶ 34 (explaining that "[w]ith the *new*, single-media product, the 2005 JOA contains strict and mutually-agreed upon formatting specifications for the Sun's pages") (emphasis added); *id.* § App'x B (setting forth standards for the Sun's front-page noticeable mention). Without the 2005 JOA, Defendants had no obligation to include any sort of mention of the Sun on the *Review-Journal*'s front page at all, let alone in any of the ways the Sun demands in its complaint. *See Qualcomm*, 969 F.3d at 995 (defendant's licensing practices with respect to rival chip makers were not anticompetitive because defendant was not "under an antitrust duty to license rival chip makers"); *CoStar*, 619 F. Supp. 3d at 992 (defendant's failure to provide information it was "under no obligation to provide" was not anticompetitive). Because the 2005 JOA is unenforceable, Defendants' supposed violations of those provisions cannot possibly qualify as wrongful predatory conduct.

### 5.   *Defendants' Alleged Breach of the 2005 JOA by Removing the Sun From the E-Edition.*

*Fifth*, the Sun claims that Defendants violated Section 10.6 of the 2005 JOA by removing the Sun from the Review-Journal's electronic replica edition. Am. Compl. ¶¶ 107–112; 2005 JOA

12

§ 10.6. As the Sun alleges, "[t]he 2005 JOA . . . included a **new provision** regarding the RJ's requirement to publish the Sun as part of its electronic replica edition," Am. Compl. ¶¶ 36; *see also id.* ¶ 107 (emphasis added). Setting aside that the Sun acquiesced in this conduct, the 2005 JOA is void, and, therefore, these obligations never legally existed. Any alleged failure to perform these void contract provisions cannot be deemed an anticompetitive act. *See Qualcomm*, 969 F.3d at 995; *CoStar*, 619 F. Supp. 3d at 992.

### 6. *Defendants' Alleged Breach of the 2005 JOA By Obstructing the Sun's Contractual Audit Rights.*

*Sixth*, the Sun (falsely) contends that the Review-Journal obstructed its contractual audit rights. Am. Compl. ¶¶ 113–119. But, again, these claims are all premised on provisions of the 2005 JOA that supposedly provide the Sun with such audit rights. *See id.* ¶ 113 (explaining that the Sun "notified Defendants of its intent to examine and audit the Review-Journal's books and records" "***in accordance with the 2005 JOA***") (emphasis added). Now that the 2005 JOA has been conclusively rejected as unlawful, the Review-Journal had no duty to perform an audit and its alleged failure to do so cannot serve as an antitrust predicate. *See Qualcomm*, 969 F.3d at 995; *CoStar*, 619 F. Supp. 3d at 992. No law imposes an independent duty to furnish audit information between competitors.

### 7. *Defendants' Alleged Breach of the 2005 JOA By Filing the State-Court Counterclaims Against the Sun.*

*Seventh*, the Sun claims that the Review-Journal's counterclaims against the Sun in the related state-court action and in this case, which seek to terminate the 2005 JOA, are "predatory because attempting to terminate the 2005 JOA was inconsistent with the Parties' obligations under the agreement. Am. Compl. ¶¶ 120–121; JPTO at 26–27. Setting aside that the Sun's claims would be baseless even if the 2005 JOA were enforceable, now that the 2005 JOA has been held unlawful and unenforceable, the Review-Journal's attempts to terminate the agreement cannot be anticompetitive, regardless of its reasons for seeking to terminate the agreement. *See Qualcomm*, 969 F.3d at 995; *CoStar*, 619 F. Supp. 3d at 992.

\*\*\*

Under these circumstances, the Court cannot grant relief to the Sun. To do so would be to enforce the 2005 JOA, in violation of the Ninth Circuit's ruling and federal law. ECF No. 1016 at 33; 15 U.S.C. § 1803(b) (making it unlawful to perform or enforce a JOA not already in effect as of July 24, 1970, without the express written consent of the Attorney General); *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 77 (1982) ("our cases leave no doubt that illegal promises will not be enforced in cases controlled by the federal law"); *see also Shanehsaz v. Johnson*, 259 F. Supp. 3d 894, 901–02 (S.D. Ind. 2017) (granting summary judgment for the defendant on plaintiff's claim for damages from theft of promissory notes that violated law prohibiting new investments in Iran and holding that "[s]imply put, Plaintiff may not invoke the power of the Court to obtain any recovery based upon an entitlement to the fruits of his illegal transaction because the recovery itself would further violate the law"). Accordingly, the Court should grant summary judgment and dismiss the Sun's remaining claims.

## V. CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court grant their renewed motion for summary judgment and enter judgment in their favor on all of the Sun's remaining claims.

Dated: March 9, 2026

CLAGGETT & SYKES LAW FIRM

By: */s/ Michael Gayan*
MICHAEL J. GAYAN, ESQ., SBN 11135
4101 Meadows Lane, Suite 100
Las Vegas, Nevada 89107

J. RANDALL JONES, ESQ., SBN 1927
MONA KAVEH, ESQ., SBN 11825
KEMP JONES LLP
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169

DAVID R. SINGER, ESQ. (*pro hac vice*)
AMY M. GALLEGOS, ESQ. (*pro hac vice*)
JENNER & BLOCK LLP
515 South Flower Street, Suite 3300
Los Angeles, California 90071

RICHARD L. STONE, ESQ. (*pro hac vice*)
850 Devon Avenue
Los Angeles, California 90024

*Attorneys for Defendants/Counterclaimant*

**PROOF OF SERVICE**

I hereby certify that on the 9th day of March, 2026, I served a true and correct copy of the foregoing **DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT** via the United States District Court's CM/ECF electronic filing system to all parties on the e-service list.

/s/ Melisa Pytlik
An employee of Claggett & Sykes Law Firm