UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| LAS VEGAS SUN, INC.,<br><br>                        Plaintiff,<br>v.<br>SHELDON ADELSON, *et al.*,<br>                        Defendants. | Case No. 2:19-cv-01667-ART-VCF<br><br>ORDER ON MOTION TO DISSOLVE AND MOTION FOR TEMPORARY RESTRAINING ORDER (ECF Nos. 1055 and 1061) |
| LAS VEGAS REVIEW-JOURNAL, INC.,<br><br>                        Counter Claimant,<br>v.<br>LAS VEGAS SUN, INC., *et al.*,<br>                        Counter Defendants. | |

This is an antitrust action between the Las Vegas Sun ("Sun") and the Las Vegas Review-Journal ("RJ"). Following a remand from the Ninth Circuit, the parties return to this Court with motions to dissolve the current preliminary injunction (ECF No. 1055), order new preliminary injunctive relief (ECF No. 1061), and for leave to file a new complaint consistent with the Ninth Circuit's opinion. (ECF No. 1065.) The Court now grants the RJ's unopposed motion to dissolve the operative preliminary injunction and grants in part the Sun's motion for a new Temporary Restraining Order, preserving the status quo insofar as necessary to prevent irreparable harm while the remaining requests are briefed and adjudicated in an orderly fashion.

**I.   BACKGROUND**

The Sun filed this antitrust action against the RJ in 2019, bringing claims under the Sherman Act, the Clayton Act, and Nevada's Unfair Trade Practices

1

Act. (ECF No. 621.) The RJ filed a motion to dismiss three of the Sun's claims, which was granted in part and denied in part. *Las Vegas Sun, Inc. v. Adelson*, No. 2:19-CV-01667-ART-MDC, 2024 WL 1382842, at *3 (D. Nev. Mar. 31, 2024), *rev'd in part on reconsideration,* No. 2:19-CV-01667-ART-VCF, 2025 WL 562654 (D. Nev. Feb. 20, 2025), *and rev'd and remanded,* 147 F.4th 1103 (9th Cir. 2025). After adjudication of the motion to dismiss, the operative complaint's remaining claims were for monopolization in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2; attempted monopolization in violation of the same statutory section; violation of the Nevada Unfair Trade Practices Act, NRS 598A, which is construed in conformity with the federal antitrust laws; and conspiracy or combination in restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. (ECF No. 621.) The Sun sought declaratory, monetary, and injunctive relief, including: an injunction requiring the RJ to cease alleged anticompetitive practices, including the threat to terminate the 2005 JOA; an injunction prohibiting the the RJ from acquiring the Sun; an injunction prohibiting the RJ from terminating the 2005 JOA; an injunction ordering the RJ to divest itself of the Sun, or in the alternative to divest itself of the Sun's non-editorial business operations and to require the creation of an independent agency or trustee to conduct the non-editorial business of the joint operation; and additional remedies as necessary. (*Id.*)

The context of the dispute was shaped by the parties' 2005 Joint Operating Agreement, which provided the terms under which they combined their publishing operations while preserving the independence of their editorial and reportorial staffs. At the beginning of the suit, the parties entered into a stipulated preliminary injunction whereby the RJ agreed that it would continue to perform under the 2005 JOA. (ECF No. 13.) The RJ moved for summary judgment on the basis that the Sun could not prove antitrust injury and therefore lacked standing, and that the Sun's antitrust claims failed because they were premised on the

invalid and unenforceable 2005 JOA. (ECF No. 843.) The Court denied the RJ's motion for summary judgment on both grounds. *Las Vegas Sun, Inc.*, 2024 WL 1382842, at *7-15. Based on its finding that the 2005 JOA was enforceable, the Court denied the RJ's related motion to dissolve the stipulated preliminary injunction. *Id.* at *10. The RJ appealed the denial of the motion to dissolve the stipulated preliminary injunction to the Ninth Circuit, and during the pendency of the appeal the parties prepared and submitted a joint pretrial order and began anticipating the assignment of a trial date. (ECF No. 1008.) The Ninth Circuit reversed the denial of the Defendants' motion to dissolve the preliminary injunction, finding that the 2005 JOA was unlawful and unenforceable. *Las Vegas Sun, Inc. v. Adelson*, 147 F.4th 1103, 1122 (9th Cir. 2025).

The parties have responded to the Ninth Circuit's opinion with a flurry of new motions. The RJ moved this Court to dissolve the stipulated preliminary injunction in conformity with the remand (ECF Nos. 1055), which the Sun did not oppose (ECF No. 1067). Instead, the Sun moved for new preliminary injunctive relief, seeking to enjoin the RJ from unilaterally ending the joint operation and ceasing to print and distribute the Sun, among other requests. (ECF No. 1061.) Subsequently, the Sun moved for leave to amend its complaint a second time in order to address the Ninth Circuit's opinion and update its allegations to conform to the evidence. (ECF No. 1065.) The proposed amended complaint asserts the same causes of action, and seeks most of the same declaratory, monetary, and injunctive relief, except that the Sun's original requests to prohibit the RJ until 2040 from acquiring the Sun or terminating the 2005 JOA have been replaced by a request to enjoin the RJ from unilaterally ending the joint operation and ceasing to print and distribute the Sun. (ECF No. 1065-1.) Both the Sun's motion for preliminary injunctive relief and its motion to amend the complaint are vigorously opposed by the RJ. The RJ has also filed a renewed motion for summary judgment based on the Sun's operative complaint.

3

1  (ECF No. 1084.)

2  The purpose of this order is to dissolve the stipulated preliminary injunction
3  consistent with the Ninth Circuit's order on remand, while maintaining the status
4  quo pending the orderly resolution of all other motions.

## II. LEGAL STANDARD

A plaintiff seeking a temporary restraining order must demonstrate (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm if preliminary relief is not granted, (3) that the balance of equities is in their favor, and (4) that an injunction is in the public interest. *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *Stuhlbarg Intern. Sales Co, Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that the analysis for a temporary restraining order is "substantially identical" to that of a preliminary injunction).[1] Courts in the Ninth Circuit evaluate "these factors on a sliding scale, such 'that a stronger showing of one element may offset a weaker showing of another.'" *Recycle for Change v. City of Oakland*, 856 F.3d 666, 669 (9th Cir. 2017) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)). For example, when the balance of equities "tips sharply in the plaintiff's favor," the plaintiff only needs to raise "serious questions" on the

---

[1] The RJ claims that two of the Sun's three requested forms of relief are mandatory, and that the Sun must show that the facts and law "clearly" favor their position. *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 684 (9th Cir. 2023). The Sun concedes that it seeks mandatory relief where it asks the Court to compel the RJ to use its best efforts and take all action necessary to obtain Attorney General written consent of the 2005 JOA, and to compel the RJ to revert to the 1989 JOA. (ECF No. 1061 at 50.) The distinction between a mandatory and a prohibitory injunction is whether the court orders the parties to take action or refrain from taking action, or, in other words, whether the injunction preserves the status quo. *See Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1060-61 (9th Cir. 2014). This Order does not address the Sun's requests for mandatory relief. The only relief at issue in this Order is the Sun's request to enjoin the RJ from unilaterally ending the joint operation and ceasing to print mdd distribute the Sun. Since this relief is prohibitory, the usual preliminary injunction standard applies.

4

1 merits—a lesser showing than likelihood of success. *All. for the Wild Rockies*, 632
2 F.3d at 1131–32, 1134–35 (citation omitted); *see also Citigroup Glob. Mkts., Inc.*
3 *v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010). In
4 other cases, "the less certain the district court is of the likelihood of success on
5 the merits, the more plaintiffs must convince the district court that the public
6 interest and balance of hardships tip in their favor." *Sw. Voter Registration Educ.*
7 *Project v. Shelley*, 344 F.3d 914, 918 (9th Cir. 2003).

Private antitrust plaintiffs are entitled to preliminary and final equitable relief under Section 16 of the Clayton Act, which provides them with equitable remedies "when and under the same conditions and principles as injunctive relief … is granted by courts of equity, under the rules governing such proceedings." 15 U.S.C. § 26; *see Cal. v. Am. Stores Co.*, 495 U.S. 271, 279 (1990). Preliminary injunctive relief under Section 16 may encompass both structural relief and prohibitions on antitrust conduct. *See Am. Stores Co.*, 495 U.S. at 279. Relief must serve an antitrust purpose, such as ending conduct in violation of the antitrust laws, depriving violators of the benefits of that conduct, and restoring competition. *In re Multidistrict Vehicle Air Pollution*, 538 F.2d 231, 234-35 (9th Cir. 1976). Preliminary relief awarded should bear a "reasonable relationship" to the permanent relief requested, in that "the preliminary relief granted should ensure the availability of permissible permanent relief sought." *California v. American Stores Co.*, 872 F.2d 837, 845 (9th Cir. 1989) (overruled on other grounds).

### III. DISCUSSION

#### A. Likelihood of Success on the Merits

To establish a claim for monopolization, the plaintiff must show: "(1) the defendant possesses monopoly power in the relevant market; (2) the defendant has willfully acquired or maintained that power; and (3) the defendant's conduct has caused antitrust injury." *Cost Mgmt. Servs., Inc. v. Wash. Nat. Gas Co.*, 99

F.3d 937, 949 (9th Cir. 1996). To succeed on a claim for attempted monopolization, "a plaintiff must prove (1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." *Cascade Health Solutions v. PeaceHealth*, 515 F.3d 883, 893 (9th Cir. 2008) (quotations omitted).

The Sun has at least raised serious questions regarding whether the RJ's conduct meets the relevant standards. Based on the evidence submitted with the motion for preliminary injunctive relief, there is at minimum a serious question on the merits of the Sun's claims that the RJ willfully acquired and maintained its dominant market position through the alleged anticompetitive acts, causing injury. The RJ has four responses to the Sun's argument of likely success on the merits. The RJ claims that the relevant market encompasses online news in addition to print; that it did not engage in anticompetitive conduct; that the Sun is not engaged in economic competition; and that the alleged harm did not flow from conduct that reduced lawful competition.

The Sun has at least shown serious questions going to the merits of their proposed market definition. Relying primarily on its expert's report, the Sun argues that under the *Brown Shoe* factors, the relevant market is English-language, local, daily print newspapers in Clark County and the Southern portion of Nye County, Nevada. *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962). The question of market definition has come up several times throughout the history of his case, and each time, it has been resolved in favor of the Sun. The RJ contested the Sun's proposed market definition in a motion to dismiss, which was decided in November 2020 against them. *Las Vegas Sun, Inc. v. Adelson*, No. 219CV01667GMNBNW, 2020 WL 7029148, at *5 (D. Nev. Nov. 30, 2020). The RJ moved to certify an interlocutory appeal on the subject of the Sun's market definition, but their motion was denied in 2021 on the grounds that there were no substantial grounds for a difference of opinion on controlling questions

of law. *Las Vegas Sun, Inc. v. Adelson*, No. 219CV01667GMNBNW, 2021 WL 2169935, at *5 (D. Nev. May 27, 2021). Most recently, the RJ failed to contest the Sun's market definition for the purposes of summary judgment, and the Court accepted the Sun's definition for purposes of resolving that motion. *Las Vegas Sun, Inc.*, 2024 WL 1382842, at *11. The judicial system has an interest in consistency and in avoiding needless reconsideration. *See Ingle v. Cir. City*, 408 F.3d 592, 594 (9th Cir. 2005).

The Sun has at least raised serious questions that the RJ has engaged in cognizable anticompetitive conduct. The RJ argues that following the Ninth Circuit's holding that the 2005 JOA is unlawful and unenforceable, the Sun's allegations of anticompetitive conduct have no foundation. The Sun says that the RJ engaged in anticompetitive conduct when, "exploring ways to terminate the Sun," it took steps to weaken the Sun financially and reduce its visibility. (ECF No. 1061 at 22-23.) The Sun argues that in so doing, the RJ secured or attempted to secure a more dominant position in the market not through healthy competition, but by reducing the Sun's ability to compete. (*Id.* at 42-43.) *See Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990) (showing a violation of the antitrust laws requires showing that there was some "competition-reducing aspect or effect of the defendant's behavior.") In resolving the RJ's motion for summary judgment, this Court held that the Sun was not precluded from making its antitrust claims just because the parties had previously arbitrated the RJ's intent to breach the implied covenant of good faith and fair dealing implicit in the 2005 JOA. *Las Vegas Sun, Inc.*, 2024 WL 1382842, at *16. In other words, the Sun's claims turn on allegations of anticompetitive conduct, not breach of the 2005 JOA.

The Sun has made out at least a serious question as to whether it engages in cognizable competition, and whether its requested relief would restore competition to the relevant market. The RJ's arguments to the contrary assume

1   that the Sun and the RJ are not in competition, but this Court previously held
2   that "editorial competition is commercial competition in the newspaper context."
3   *Id.* at *12. The theory, as laid out in comparable precedents, is that editorial
4   competition between competing newspapers produces financial rewards, such as
5   by increasing a newspaper's value, especially in the eyes of potential acquisitors,
6   and enhancing its bargaining position when a JOA containing a profit-sharing
7   agreement is up for renegotiation or termination. *Id.* Editorial competition may
8   also increase traffic to the Newspapers' digital operations outside of the joint
9   operation and promote their principal owners' economic or business interests
10  more broadly. *Id.* Here, the parties have agreed that but for the Sun's requested
11  relief, the RJ will stop printing the Sun. If the Sun is, as it claims, the RJ's only
12  competitor in the relevant market, then there are at least serious questions as to
13  whether the Sun's requested relief may maintain its operations and protect
14  competition in the relevant marketplace for local print news.

### B. Likelihood of Irreparable Harm

The Sun has shown a likelihood of irreparable harm if interim injunctive relief is not granted. Section 16 of the Clayton Act authorizes courts to grant preliminary injunctive relief upon "a showing that the danger of irreparable loss or damage is immediate." 15 U.S.C. § 16. "[I]ntangible injuries, such as damage to ongoing recruitment efforts and goodwill, qualify as irreparable harm." *Rent-A-Center, Inc. v. Canyon Television and Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991). Only irreparable harm to the plaintiff itself may be considered. *See Winter*, 555 U.S. at 20 ("A plaintiff seeking a preliminary injunction must establish... that *he* is likely to suffer irreparable harm in the absence of preliminary relief") (emphasis added). Stopping the printing and distribution of the *Sun* would cause the Sun to suffer immediate and intangible harms in the form of "loss of staff and ability to recruit new employees... loss of readership and visibility, and loss of goodwill." (ECF No. 1028 at 184.) In terms of tangible harms,

the Sun has credibly alleged that it faces an immediate risk of closure if the joint operation is terminated. "The threat of being driven out of business is sufficient to establish irreparable harm." *Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1474 (9th Cir. 1985).

### C. Balance of Equities

The balance of equities tips sharply in the Sun's favor. On the level of the business, the potential hardship to the Sun ranges from loss of institutional memory to "economic demise." *Hawaii ex rel. Anzai v. Gannett Pac. Corp.*, 99 F. Supp. 2d 1241, 1254 (D. Haw.), *aff'd sub nom. State of Hawaii v. Gannett Pac. Corp.*, 203 F.3d 832 (9th Cir. 1999). While the Sun may face a risk of closure if preliminary injunctive relief is not granted, the RJ faces no such corresponding risk. Considering the Sun's financial and legal interests, preliminary injunctive relief at this stage will be necessary so that the Sun may eventually obtain full relief if it prevails at trial. *See id.* (finding that the balance of hardships tipped in plaintiff-movant's favor where the threatened closure of the affected newspaper would "impair the ability of this Court to provide the relief requested").

Preliminary injunctive relief can be appropriately tailored to prevent hardship to the RJ. If the RJ is required to do nothing more than to continue printing and distributing the Sun, which it has done since 1989, several of the RJ's concerns going to the equities are moot. The RJ's only remaining objection is that this relief will impair their First Amendment rights. The District of Hawaii addressed precisely this concern in *Gannett*, where it held that enjoining a defendant from terminating a joint operating agreement furthered the aims of the First Amendment, rather than violating that defendant's First Amendment rights to refrain from speaking or publishing. *Gannett*, 99 F. Supp. 2d at 1252. Citing *Associated Press v. United States*, 326 U.S. 1, 20 (1945), the court explained that the Sherman Act protects the First Amendment where it prevents news media organizations from combining and reducing the diversity of editorial viewpoints.

9

*See id.* (the First Amendment "rests on the assumption that the widest possible dissemination of information from diverse and antagonistic sources is essential to the welfare of the public, that a free press is a condition of a free society.") This same reasoning applies here because preserving two editorial voices in the relevant market furthers the aims of the First Amendment as expressed in *Associated Press*.

### D. The Public Interest

Parties agree that in the absence of preliminary injunctive relief, the Sun would no longer be printed. Public policy favors preserving local newspapers. 15 U.S.C. § 1801 (declaring that it is "public policy of the United States to preserve the publication of newspapers in any city, community, or metropolitan area where a joint operating arrangement has been heretofore entered into"). Studies have found that civic engagement fell faster in cities where one of two daily newspapers were lost, and that voter turnout was depressed in the areas where the defunct newspaper was once popular. (ECF No. 1034 ¶ 149.) Other studies have found that when local newspapers close, split-ticket voting goes down, municipal borrowing costs go up, and political engagement declines. (*Id.* ¶ 150.)

The motivating policies of antitrust law favor protecting the production and distribution of the Sun. Closing a local newspaper deprives readers, advertisers, and writers of the monetary and nonmonetary benefits of a free and open marketplace. *Gannett*, 99 F. Supp. 2d at 1250. In enacting the Sherman Act, Congress sought to protect consumers from corporate control over prices, output, and other forms of corporate control. *Id.* (citing *Apex Hosiery Co. v. Leader*, 310 U.S. 469, 493-94 (1940)). A competitive marketplace "advance[s] social welfare" by providing more desirable goods and services at a lower price. *Reilly v. Medianews Grp., Inc.*, No. C06-4332 SI, 2007 WL 1068202, at *5 (N.D. Cal. Apr. 10, 2007) (quoting *FTC v. Indiana Federation of Dentists*, 476 U.S. 447, 459 (1986)). The RJ's objections focus either on forms of relief not awarded in this

order or First Amendment concerns already addressed *supra.* All these considerations counsel that the public interest weighs heavily in favor of maintaining two competing editorial voices in the relevant market, especially insofar as the failure to do so now may lead to irreversible harms and foreclose this Court's ability to consider injunctive relief if the Sun prevails at trial.

### E. Remedy

Preliminary injunctive relief "preserve[s] the status quo ante litem pending a determination of the action on the merits." *Boardman v. Pac. Seafood Grp.,* 822 F.3d 1011, 1024 (quoting *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1023 (9th Cir. 2009)) "Status quo ante litem" refers to "the last uncontested status which preceded the pending controversy." *Id.* (quoting *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000)). Preliminary injunctive relief must not be overbroad. *Id.,* 822 F.3d 1011, 1024. Generally, it does not remedy harms that may be adequately compensated by damages at the end of the litigation. *See In re Multidistrict Vehicle Air Pollution,* 538 F.2d at 234-235.

The Sun argues that during the status quo ante litem, the parties operated under the 1989 JOA, and that therefore the most appropriate form of preliminary injunctive relief is reversion to the 1989 JOA. (ECF No. 1091.) Although reversion was pleaded as an affirmative defense, the Sun's currently operative complaint does not plead it. (ECF No. 621.) Neither does the Sun's proposed amended complaint, which refers to the parties' "joint operation" without expressly stating whether the 1989 JOA might legalize the relief requested, or whether any form of legalization is necessary.

The RJ argues that the status quo ante litem was the state of play as of December 2015, before it allegedly began committing anticompetitive acts. (ECF No. 1088.) At the same time, the RJ objects to all proposed forms of relief that would preserve the essential elements of a 2015 status quo, maintaining that the 1989 JOA has been abandoned and is impracticable, among other defects; that

1    the 2005 JOA is clearly unlawful; and that any new form of relief that compels
2    the parties to maintain combined operations would constitute a new JOA that is
3    unlawful under the Ninth Circuit's recent opinion. *Las Vegas Sun, Inc.*, 147 F.4th
4    at 1122. In arguing against the re-imposition of the 1989 JOA as a form of relief,
5    the RJ does not directly counter the Sun's theory that in invalidating the entire
6    2005 JOA, the Ninth Circuit also reversed the termination of the 1989 JOA. More
7    relevantly to present purposes, the RJ does not address what remedies would be
8    available to the Sun if it prevails on any of its antitrust claims. The Ninth Circuit's
9    opinion did not address those antitrust claims or available remedies.

10   Under any interpretation of the status quo ante litem, the RJ printed and
11   distributed the Sun, maintaining the existence of a second editorial voice in the
12   relevant market for local news. The Ninth Circuit has directed that the initial
13   stipulated injunction be dissolved. Under these circumstances, the value of
14   preserving the core of the status quo arrangement cannot be reduced to an award
15   of damages. Some interim injunctive relief is necessary to protect community and
16   consumer interests, allow time to fully brief and adjudicate the Sun's motion to
17   amend the complaint and preliminary injunction motion, and ensure the
18   availability of any appropriate injunctive relief post-trial. The Sun's complaint
19   raises substantial antitrust questions which should be resolved before an
20   irremediable loss is dealt, not afterwards.

21   **F. Bond**

22   District courts have discretion to set the amount of security, "if any," for
23   preliminary injunctive relief under Rule 65(c). *Jorgensen v. Cassiday*, 320 F.3d
24   906, 919 (9th Cir. 2003). Courts may dispense with the bond where the relief
25   ordered creates "no realistic likelihood of harm to the defendant." *Id.* The RJ has
26   argued that the Sun should be required to post a bond of at least $51.4 million,
27   but the calculations that it relies upon in reaching that figure assume that it
28   would be required to revive an afternoon-print newspaper. (ECF No. 1075 ¶¶ 4-

5.) An afternoon-print newspaper is not part of the relief ordered. In the absence of argument on the cost of the relief ordered, the Court declines to set bond at this time. This decision shall be without prejudice to any future requests for bond that the RJ may make connected with a preliminary injunction or other equitable relief.

### IV. CONCLUSION

It is therefore ordered that the RJ's unopposed motion to dissolve the 2019 stipulated preliminary injunction is GRANTED.

It is further ordered that the Sun's motion for preliminary injunctive relief is GRANTED IN PART. The RJ is enjoined from ceasing to print or distribute the Sun.

It is further ordered that the hearing currently set for March 13, 2026 is VACATED.

It is further ordered that a preliminary injunction hearing is scheduled for April 10, 2026, at 10:00 a.m., before U.S. District Judge Anne R. Traum in a Las Vegas courtroom to be determined. Counsel will be notified of the courtroom location as soon as one is assigned.

It is further ordered that by April 3, 2026, the parties will file a status report with the Court detailing the evidence that they will present and the time allotted for presentation.

It is further ordered that the parties shall deliver by April 8, 2026, electronic exhibits to the courtroom deputy.

DATED: March 12, 2026

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE