# EXHIBIT A

## Petition for Writ of Mandamus filed March 18, 2026

No. __-____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

SHELDON ADELSON; PATRICK DUMONT; NEWS+MEDIA CAPITAL GROUP, LLC; LAS VEGAS REVIEW-JOURNAL, INC.; INTERFACE OPERATIONS, LLC D/B/A ADFAM,

*Petitioners-Defendants,*

v.

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEVADA,

*Respondent*,

LAS VEGAS SUN, INC.,

*Real-Party-in-Interest-Plaintiff*.

## PETITION FOR WRIT OF MANDAMUS TO THE U.S. DISTRICT COURT FOR THE DISTRICT OF NEVADA TO ENFORCE MANDATE

J. Randall Jones
KEMP JONES LLP
3800 Howard Hughes Pkwy., 17th Fl.
Las Vegas, Nevada 89169
(702) 385-6000

Richard L. Stone
850 Devon Avenue
Los Angeles, California 90024
(310) 993-2068

Michael J. Gayan, Esq.
CLAGGETT & SYKES LAW FIRM
4101 Meadows Lane, Suite 100
Las Vegas, Nevada 89107
(702) 333-7777

Ian Heath Gershengorn
Tanner J. Lockhead
JENNER & BLOCK LLP
1099 New York Ave. NW, Suite 900
Washington, DC 20001
(202) 639-6000
igershengorn@jenner.com

David R. Singer
Amy M. Gallegos
JENNER & BLOCK LLP
515 South Flower Street, Suite 3300
Los Angeles, California 90071
(213) 239-5100

Gabriel K. Gillett
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
(312) 840-7220

*Counsel for Petitioners-Defendants*

i

## DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, the undersigned counsel for Petitioners-Defendants Las Vegas Review-Journal, Inc., News+Media Capital Group, LLC, Estate of Sheldon Adelson, Patrick Dumont, and Interface Operations, LLC d/b/a Adfam state that Las Vegas Review-Journal, Inc., is a nongovernmental, privately held corporate party. Las Vegas Review-Journal, Inc. is a wholly owned subsidiary of News+Media Capital Group, LLC. No publicly held corporation owns more than 10% of Las Vegas Review-Journal, Inc.'s stock. News+Media Capital Group, LLC is a wholly owned subsidiary of Orchid Flower LLC. No publicly held corporation owns more than 10% of News+Media Capital Group, LLC's stock. Interface Operations, LLC d/b/a Adfam is a non-governmental, privately held corporate party. No publicly held corporation owns more than 10% of Interface Operations, LLC d/b/a Adfam's stock.

ii

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... IV

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................ 1

JURISDICTION ............................................................................................... 6

BACKGROUND AND PROCEDURAL HISTORY ............................................... 8

ARGUMENT ................................................................................................. 15

I.      Mandamus Is Warranted. ............................................................... 15

        A.      The District Court Required Performance Of An Unlawful Contract By Reimposing The 2005 JOA, In Direct Contravention of This Court's Mandate. ........................................... 15

        B.      The District Court Compelled Speech In Violation Of The First Amendment. ................................................................ 18

II.     The District Court Offered No Valid Basis To Circumvent This Court's Mandate And Order Performance Of An Unlawful Agreement. ................... 21

        A.      The Supposed Evidence of Anticompetitive Conduct Cannot Justify The Injunction. ................................................... 22

        B.      Vacating The Injunction Will Not Harm The Sun. ............... 25

        C.      The Injunction Is Against The Public Interest. .................... 27

CONCLUSION ............................................................................................. 28

STATEMENT OF RELATED CASE ................................................................ 30

CERTIFICATE OF SERVICE ......................................................................... 31

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Hawaii ex rel. Anzai v. Gannett Pac. Corp.*,
   99 F. Supp. 2d 1241 (D. Haw. 1999)......................................................19, 20

*Associated Press v. United States*,
   326 U.S. 1 (1945)....................................................................................19

*ATSA of Cal., Inc. v. Cont'l Ins. Co.*,
   754 F.2d 1394 (9th Cir. 1985) ...............................................................17

*Barber v. Ohana Mil. Communities, LLC*,
   694 Fed. App'x 583 (9th Cir. 2017) .......................................................20

*Bauman v. U.S. Dist. Ct.*,
   557 F.2d 650 (9th Cir. 1977) .................................................................14

*Brown Shoe Co. v. United States*,
   370 U.S. 294 (1962)...............................................................................23

*Brown v. Baden*,
   815 F.2d 575 (9th Cir. 1987) .................................................................17

*Citizen Publ'g Co. v. United States*,
   394 U.S. 131 (1969)...............................................................................23

*In re Core Commc'ns, Inc.*,
   531 F.3d 849 (D.C. Cir. 2008)...............................................................17

*East Bay Sanctuary Covenant v. Trump*,
   932 F.3d 742 (9th Cir. 2018) ...................................................................7

*Elrod v. Burns*,
   427 U.S. 347 (1976)...............................................................................18

*Epic Sys. Corp. v. Lewis*,
   584 U.S. 497 (2018)...............................................................................24

*Hart v. Massanari*,
   266 F.3d 1155 (9th Cir. 2001) ...............................................................17

*Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*,
736 F.3d 1239 (9th Cir. 2013) ................................................................20

*J.A. Jones Const. Co. v. Lehrer McGovern Bovis, Inc.*,
120 Nev. 277 (2004) ...............................................................................16

*Kaiser-Frazer Corp. v. Otis & Co.*,
195 F.2d 838 (2d Cir. 1952) ...................................................................17

*Kaiser Steel Corp. v. Mullins*,
455 U.S. 72 (1982)...............................................................................2, 17

*Las Vegas Sun, Inc. v. Adelson*,
147 F.4th 1103 (9th Cir. 2025), *cert. denied*, No. 25-697, 2026 WL
490865 (U.S. Feb. 23, 2026).............................................................*passim*

*Lydo Enters., Inc. v. City of Las Vegas*,
745 F.2d 1211 (9th Cir. 1984) ................................................................25

*Marbury v. Madison*,
5 U.S. (1 Cranch) 137 (1803) ...................................................................6

*Miami Herald Publ'g Co. v. Tornillo*,
418 U.S. 241 (1974)......................................................................3, 18, 19, 20

*Morton v. Mancari*,
417 U.S. 535 (1974)................................................................................24

*In re Multidistrict Vehicle Air Pollution*,
538 F.2d 231 (9th Cir. 1976) ..................................................................23

*Nebaco, Inc. v. Riverview Realty Co.*,
87 Nev. 55 (1971) ...................................................................................16

*Pac. Gas & Elec. Co. v. Pub. Utilities Comm'n of Cal.*,
475 U.S. 1 (1986).................................................................................3, 18

*Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*,
810 F.3d 631 (9th Cir. 2015) ..................................................................16

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
566 U.S. 639 (2012)................................................................................24

*Rodriguez v. Lockheed Martin Corp.*,
   627 F.3d 1259 (9th Cir. 2010) ...............................................................6

*In re U.S. Phillips Corp.*,
   526 Fed. Appx. 728 (9th Cir. 2013).......................................................6

*In re United States*,
   791 F.3d 945 (9th Cir. 2015) .................................................................6

*Valle del Sol Inc. v. Whiting*,
   732 F.3d 1006 (9th Cir. 2013) .............................................................26

*Vizcaino v. U.S. Dist. Ct. for W. Dist. of Washington*,
   173 F.3d 713 (9th Cir. 1999) ....................................................6, 14, 15

*Will v. United States*,
   389 U.S. 90 (1967).................................................................................6

*Wooley v. Maynard*,
   430 U.S. 705 (1977).............................................................................20

**Statutes**

15 U.S.C. § 26.........................................................................................23

15 U.S.C. § 1803......................................................................................26

28 U.S.C. § 1292...................................................................................6, 7

28 U.S.C. § 1651.......................................................................................5

All Writs Act.............................................................................................5

Clayton Act .......................................................................14, 22, 23, 24

Newspaper Preservation Act..............................................................*passim*

Sherman Act...........................................................................................10

**INTRODUCTION AND SUMMARY OF ARGUMENT**

The Review-Journal petitions this Court for a writ of mandamus to enforce the Court's mandate. The district court on remand has reimposed the very injunction that this Court held unlawful. That injunction forces the Review-Journal to continue to perform an illegal agreement to print and distribute in the *Review-Journal* newspaper an insert produced by its chief local rival, the Sun. In doing so, the district court runs roughshod over the Review-Journal's First Amendment rights, forcing the Review-Journal to print, distribute, and promote a publication that, as the Sun itself proclaims, is "a left-leaning editorial voice" that is highly critical of the Review-Journal's owners, their political positions, and the Review-Journal itself. APP0063. The Review-Journal respectfully requests that this Court issue a decision on the writ by March 27, 2026.

This petition arises from a district court order that flouts this Court's mandate and the judgment of Congress. In *Las Vegas Sun, Inc. v. Adelson*, this Court held, based on unambiguous statutory language, that the 2005 Joint Operating Agreement ("2005 JOA") between two competing companies, the Review-Journal and the Sun, was "unlawful and unenforceable." 147 F.4th 1103 (9th Cir. 2025), *cert. denied*, No. 25-697, 2026 WL 490865 (U.S. Feb. 23, 2026). This Court "reverse[d] the district court's order" denying the Review-Journal's motion to dissolve an injunction that

1

had required the Review-Journal to print and distribute the *Sun*. This Court then "remand[ed] for further proceedings consistent with this opinion." *Id.*

Two weeks after the mandate issued, the district court finally dissolved the prior injunction. But what it gave with one hand it took with the other. In the same order, the district court entered a new injunction that reimposed *the same unlawful agreement*, for the asserted purpose of "preserving the core of the status quo arrangement" and enjoining the Review-Journal from "ceasing to print or distribute the Sun." APP0283–84. Therefore, the Review-Journal finds itself back where it was before this Court ruled—compelled to print and distribute the *Sun* against its will, indefinitely.

Immediate action from this Court is required. First, the injunction is in direct violation of this Court's mandate. The Review-Journal is subject to the same "status quo" injunction that this Court declared unlawful and unenforceable.

Second, that is particularly problematic because it is well settled that courts may not enforce contracts that Congress has deemed unlawful. *See Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 83–84 (1982). As the Supreme Court explained in *Kaiser Steel*: "Where the enforcement of private agreements would be violative of [a federal statute], it is the obligation of courts to refrain from such exertions of judicial power." *Id.* at 84. Because this Court held that the 2005 JOA is unlawful

2

under the Newspaper Preservation Act, the district court was without power to require continued performance of that agreement.

Third, the district court's order imposes immediate and irreparable First Amendment harm. Forcing the Review-Journal to carry the voice of its chief editorial rival is quintessential compelled speech. The "choice of material to go into a newspaper" is at the heart of the First Amendment. *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974). Compelling a publisher to carry a third-party insert requires the publisher "to associate with speech with which [it] may disagree" and may alter the publisher's own expression by creating a "pressure to respond." *Pac. Gas & Elec. Co. v. Pub. Utilities Comm'n of Cal.*, 475 U.S. 1, 15–16 (1986). That First Amendment harm is all the more egregious here. According to the Sun's own complaint the Review-Journal is "known as a right-leaning newspaper that mirrors the conservative views" of its owners (referring to members of the Adelson family) and the Sun is a "left leaning editorial voice" "known for its editorials … challenging Donald Trump, the Review Journal, and Adelson himself." APP0063–64. The district court's order expressly sought to preserve a "diversity of editorial viewpoints" by forcing the Review-Journal to print and distribute the *Sun*. APP0280–81. That is not the content-neutral decision-making the First Amendment demands.

3

The district court's justifications for its actions do not survive scrutiny. First, the district court suggested that the Sun "has at least raised serious questions that the [Review-Journal] has engaged in cognizable anticompetitive conduct." APP0278. The Review-Journal disagrees. The "evidence" that the district court cites is drawn from the Sun's expert reports, and those reports were entirely predicated on the 2005 JOA, which, to repeat the obvious, this Court found unlawful. APP0277–78. But the main point here is that the question of whether the antitrust laws were violated is distinct from the question of what relief may be permissible to compensate for any violation. Any anticompetitive injury may be compensable in damages, but it certainly cannot justify injunctive relief that this Court and Congress have declared unlawful and that is a plain violation of the First Amendment.

Second, the district court concluded that the Sun would suffer irreparable harm from the loss of readership, visibility, and goodwill without some joint operating arrangement compelling the Review-Journal to continue printing and distributing it. APP0279–80. But the Sun's primary publication is the digital *Las Vegas Sun*, which is published online and will be unaffected by the district court's order, and which provides an ample platform for the Sun to reach its readers. And the Sun can publish its own standalone daily print newspaper (like the weekly print paper published by the Sun's owner) simply by paying market rates to use the Review-Journal's printing presses (as the Review-Journal has offered). *See*

4

APP0271. Perhaps for that reason, the Sun does not assert that an injunction would be necessary to protect its own First Amendment rights. *See* APP0185. Any concern about "irreparable harm" to the Sun thus cannot justify any injunction, much less one that compels the Review-Journal to maintain an unlawful arrangement and publish content with which it strongly disagrees.

Finally, the district court found that "the public interest weighs heavily in favor of maintaining two competing editorial voices in the relevant market." APP0282. As noted, the Sun could maintain its print newspaper by contracting to keep it in place; and, in any event, it strains credulity to hold in this digital age that the elimination of the Sun's print voice while leaving its digital voice fully intact could have any impact on "editorial voices" in Las Vegas. But the flaws in the district court's analysis run deeper: Congress settled what is in the public interest when it enacted the NPA. Congress determined that joint operating arrangements are unlawful and therefore contrary to the public interest unless they are approved by the Attorney General, and the 2005 JOA did not satisfy that requirement. The district court's belief that the public would benefit from having access to the Sun's viewpoint in print rather than online is simply beside the point: the district court lacked authority to override Congress's judgment of where the public interest lies.

Emergency relief is warranted. Every day this injunction remains in place, it violates (1) this Court's prior decision, which held the 2005 JOA "unlawful and

unenforceable"; (2) the will of Congress, which made it "unlawful" to "perform or enforce" a JOA that was not approved by the Attorney General; and (3) the First Amendment, which protects against compelling newspapers to carry the content of their editorial rivals and viewpoints with which they disagree.

The Review-Journal respectfully asks this Court to grant the petition, order expedited briefing, and issue a decision by March 27, 2026, in advance of an April 10 hearing in the district court to address the injunction.

## JURISDICTION

This court has jurisdiction pursuant to the All Writs Act, which empowers federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions." 28 U.S.C. § 1651(a). "[W]hen a lower court obstructs the mandate of an appellate court, mandamus is the appropriate remedy." *Vizcaino v. U.S. Dist. Ct. for W. Dist. of Washington*, 173 F.3d 713, 719 (9th Cir. 1999); *Will v. United States,* 389 U.S. 90, 95 (1967) (explaining that the writ is traditionally used to "confine an inferior court to a lawful exercise of its prescribed jurisdiction"); *Rodriguez v. Lockheed Martin Corp.*, 627 F.3d 1259, 1267 (9th Cir. 2010) (treating writ of mandamus and motion to enforce the mandate as synonymous).

Here, where the district court is compelling the Review-Journal to print and distribute the product of a competing publisher in contravention of this Court's mandate, mandamus is justified because "inferior courts' disregard of appellate

6

mandates 'would severely jeopardize the supervisory role of the courts of appeals within the federal judicial system.'" *Vizcaino*, 173 F.3d at 719; *see In re United States*, 791 F.3d 945, 953 (9th Cir. 2015) (citing *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 147 (1803)).

In addition, because the district court issued an order of indefinite duration "granting, continuing, [or] modifying" an injunction, this Court also has jurisdiction under 28 U.S.C. § 1292(a)(1). *See In re U.S. Phillips Corp.*, 526 Fed. Appx. 728, 732 (9th Cir. 2013) (construing mandamus petition as a timely notice of appeal in response to order reflecting "intransigence of the district court in refusing to comply with our prior mandates"). That jurisdiction holds even though the district court at times labeled its action as a temporary restraining order, while ordering "preliminary injunctive relief" that exceeds the 28-day limit for a TRO under Federal Rule of Civil Procedure 65(b)(2), APP0272–0284. *See East Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 762 (9th Cir. 2018) (determining appealability by the effect of the order, not its label, and noting that "where a TRO has the same effect as a preliminary injunction, it is appealable under 28 U.S.C. § 1292(a)(1).").[1]

---

[1] The Sun itself has described the order as a preliminary injunction. *Federal Judge Orders Las Vegas Review-Journal to Keep Printing and Distributing the Las Vegas Sun*, Las Vegas Sun (Mar. 12, 2026), https://lasvegassun.com/news/2026/mar/12/federal-judge-orders-las-vegas-review-journal-to-k/.

## BACKGROUND AND PROCEDURAL HISTORY

The factual and legal background of this litigation is set out in detail in this Court's prior opinion. It is recounted here in brief, along with additional pertinent facts and procedural history, as relevant for this emergency application.

### I.      Factual Background[2]

**1.** In 1989, Donrey of Nevada, Inc., then-publisher of the *Las Vegas Review-Journal*, and the Las Vegas Sun entered into a joint operating arrangement ("1989 JOA"). Under the 1989 JOA, the Review-Journal operated as a morning newspaper and the Sun as a separate afternoon newspaper, each with its own subscribers, advertisers, and newsroom. *See* APP0118–19 (1989 JOA § 5.1). The Review-Journal handled operations including printing, distribution, and sales for both papers. *Id*. The Sun was guaranteed an "editorial expense allocation" payment each month and was entitled to ten percent of the joint operation's profits. *See* APP0115, 123–24, 138, 148–49 (1989 JOA §§ 4.2, 6.1, 6.4, App'x A.1, App'x D). The Review-Journal was also required to allocate at least forty percent of its total promotional budget to promoting the Sun. *See* APP0120–21, 139 (1989 JOA §§ 5.1.4, App'x A.3). This arrangement—which otherwise would have violated the antitrust laws—was permitted under the Newspaper Preservation Act ("NPA") because it was expressly

---

[2] Essential background material is contained in addenda to this filing and cited as "APP." All citations to ECF numbers refer to docket entries in the U.S. District Court for the District of Nevada in case No. 2:19-cv-01667.

approved by the Attorney General after he found the *Sun* was a "failing newspaper." APP0177; APP0050–54. Without AG approval, the 1989 JOA would have been "unlawful and unenforceable" and neither party would have had any duties under it. *Adelson*, 147 F.4th at 1120–21.

The *Sun* continued to fail under the 1989 JOA. Its "circulation dropped precipitously as a result of its afternoon placement." APP0069. The 1989 JOA's foundational assumption—that the *Sun* could be viable as an afternoon newspaper— proved incorrect. Afternoon newspaper circulation steadily declined in the following decades. The last daily afternoon newspaper serving a major American city ceased publication in 2010. APP0357–58.

**2.** In June 2005, the Sun and the entity that published the *Review-Journal* newspaper at the time, DR Partners, purported to enter into a new JOA ("2005 JOA"). The 2005 JOA was a major change from the 1989 JOA. Under the new arrangement, the Review-Journal would print and distribute the *Sun* as a short insert within the *Review-Journal* rather than as a separate afternoon newspaper with its own subscribers. The 2005 JOA also included a host of new marketing, accounting, and profit-sharing requirements that were not part of the 1989 JOA. *See, e.g.,* APP0152, 154, 171–74 (2005 JOA, §§ 4.2, 5.1.4, App'x D).

Unlike with the 1989 JOA, the parties "agree[d] to file" the 2005 JOA "with the Attorney General" but did not agree to seek approval from the Attorney General.

9

*See* APP0151–52 (2005 JOA § 1.1). The parties explicitly agreed that the 1989 JOA would terminate on "September 30, 2005." *Id.* § 1.2. The Justice Department then conducted an investigation into the 2005 JOA and ultimately took no action, informing the parties that the 2005 JOA "remains subject to antitrust scrutiny." APP0058; *Adelson*, 147 F.4th at 1111.

**3.** In December 2015, the Review-Journal was purchased by an entity affiliated with the Adelson family. In the transaction, the Review-Journal's current ownership agreed to assume the 2005 JOA but was not bound to the 1989 JOA; the holding company it acquired—DB Nevada Holdings, Inc.—was neither a party nor a successor-in-interest to the obligations of the 1989 JOA. APP0258–69.

Just days after learning of the transaction, the Sun's owner, Brian Greenspun, sought to leverage the 2005 JOA for a buyout to exit the newspaper business. *See, e.g.*, APP0363–70; APP0375; ECF No. 861 at 8 (citing ECF No. 858-27 at 197-98) (noting Mr. Greenspun initiated discussions with the current owners about a buy-out, not the other way around). By March 2017, Greenspun confirmed his desire to stop publishing the *Sun*, writing: "I am prepared to exit the JOA." APP0179. He continued: "[I am] [n]ot just selling out of [the] joa but ending my commitment to Las Vegas through a daily newspaper," and "I will be out of daily newspaper business." *Id*.

10

Consistent with the broader market, the Review-Journal struggled financially as subscribers and advertisers went online. APP0351–52. For years, the Review-Journal's owners have subsidized the Review-Journal to keep it viable. APP0349.

## II.    Prior Proceedings

These proceedings began in 2018. After the Sun sued the Review-Journal in state court, the Review-Journal asserted a breach-of-contract counterclaim and sought a declaration that it could terminate the 2005 JOA. APP0005–48. In response, the Sun sued in federal court, asserting, *inter alia*, that the Review-Journal's alleged failure to comply with the 2005 JOA and its efforts to terminate the 2005 JOA violated the Sherman Act, 15 U.S.C. § 2. APP0059–104.

The Review-Journal and Sun agreed to a joint stipulation and order in 2019 to "maintain the status quo" by "continu[ing] to perform under the 2005 JOA" and "refrain[ing] from taking any non-judicial steps to terminate the 2005 JOA until after the entry of final judgment by a court of competent jurisdiction permitting such termination." APP0003–04. The district court entered the stipulated order on October 9, 2019. *Id*.

Years of discovery ensued. The discovery confirmed, among other things, that the 2005 JOA had not been approved by the Attorney General. At that point, the Review-Journal moved to dissolve the stipulated injunction on the grounds that the 2005 JOA was "unlawful" under the NPA. ECF No. 20. The district court denied the

11

motion, concluding that the 2005 JOA was valid even though it had not been approved by the Attorney General. ECF No. 243.

The Review-Journal appealed and this Court reversed. This Court held that "[b]ecause it did not receive the required 'prior written consent of the Attorney General,' the 2005 JOA is unlawful and unenforceable." *Adelson*, 147 F.4th at 1121–22 (holding the district court's order was "squarely foreclosed by the plain language of the statute"). The Court's decision was unanimous and unequivocal: the 2005 JOA is unlawful, and the district court may not enforce it. This Court then remanded for further proceedings. *Id.* at 1122.

Recognizing the magnitude of this Court's ruling, the Sun did everything it could to reverse the decision, filing petitions for rehearing and rehearing en banc, and, when those failed, filing a petition for a writ of certiorari to the Supreme Court. Each petition was denied. 2026 WL 490865 (U.S. Feb. 23, 2026). The mandate issued on February 25, 2026. APP0187.

### III.    Proceedings Following Remand

On remand, the Review-Journal moved to dissolve the existing injunction, consistent with this Court's mandate. ECF No. 1055.

The Sun, for its part, conceded that dissolution was required by this Court's decision, but nonetheless moved for a *new* TRO and preliminary injunction that effectively undid its concession. ECF No. 1040. The Sun implored the court to enter

12

a new injunction to "enjoin[] the [Review-Journal] from unilaterally ending the joint operation and ceasing to print and distribute the Sun." APP0186. The Sun's motion, it explained, sought to impose "obligations, in all material respects … unchanged [from those] under the 2005 framework." APP0185. That is, it sought a new injunction to preserve the core requirements of the 2005 JOA and to prevent the Review-Journal from ceasing to print and distribute the Sun.

According to the Sun, if the Review-Journal were no longer required to print the *Sun* insert, readers would lack access to the Sun's "alternative editorial voice"—described in its own filings as a "left-leaning" publication that "often feature[s] attitudes, opinions, and coverage diametrically opposed to the [Review-Journal]." APP0063–64; APP0186. According to the Sun, its "alternative" voice provides a counterpoint to the Review-Journal, which the Sun describes as a "right-leaning newspaper that mirrors the conservative views" of its owners. APP0063–64.

Shortly thereafter, the Sun moved to file a Second Amended Complaint ("SAC"). The Sun insisted that "there is nothing in the Sun's proposed Second Amended Complaint that this Court has not read before"—affirming that its new pleading "does not offer new facts" and alleges "the same claims for relief." APP0190–92. Indeed, the proposed SAC simply deleted references to the "2005 JOA" and replaced them with references to the "joint operating arrangement," all while continuing to cite alleged violations of the 2005 JOA as purported predatory

13

conduct. APP0194–254. In addition, the Sun asserted that the Review-Journal's efforts to invalidate the 2005 JOA through, among other things, its prior appeal to this Court, were themselves predatory acts, even though this Court ruled that the 2005 JOA was unlawful and unenforceable. APP0211–14, 229–237. The Review-Journal opposed, explaining (among other things) that the SAC was an attempt to circumvent this Court's ruling that the 2005 JOA was unlawful and unenforceable. ECF No. 1086.

The night before oral argument on the Review-Journal's motion to dissolve and the Sun's motions to amend and for a TRO and preliminary injunction, the district court issued the order under review. In that order, the district court granted the Review-Journal's unopposed request to dissolve the stipulated injunction that required the Review-Journal to print and distribute the *Sun*. But in the same order, the district court issued a new injunction aimed at "preserving the core of the status quo arrangement" and so "enjoined [the Review-Journal] from ceasing to print or distribute the Sun." APP0283–84. That injunction, it reasoned, was necessary to preserve "a second editorial voice" in Las Vegas. APP0283.

The district court stated that it was not reviving the 1989 JOA. APP0275. The district court also claimed it was not enforcing the 2005 JOA, even though it entered an order requiring the Review-Journal to perform the 2005 JOA. Instead, the district court invoked Clayton Act § 16 as the sole basis of authority to enter the injunction.

14

## ARGUMENT

### I.     Mandamus Is Warranted.

#### A.     The District Court Required Performance Of An Unlawful Contract By Reimposing The 2005 JOA, In Direct Contravention of This Court's Mandate.

"[W]hen a lower court obstructs the mandate of an appellate court, mandamus is the appropriate remedy." *Vizcaino,* 173 F.3d at 719. Mandamus in this context protects "'the supervisory role of the courts of appeals within the federal judicial system,'" and ensures that "litigants who have proceeded to judgment in higher courts … 'not be required to go through that entire process again to obtain execution of the judgment.'" *Id.* Given these unique concerns, the ordinary test for mandamus in other contexts—requiring, *e.g.*, a "clea[r] erro[r] … of law" that is "not correctable on appeal," *Bauman v. U.S. Dist. Ct.*, 557 F.2d 650, 654–55 (9th Cir. 1977)—"does not apply when mandamus is sought on the ground that the district court failed to follow the appellate court's mandate," *Vizcaino*, 173 F.3d at 719. Instead, the question is simply whether "the district court disregarded [the] mandate." *Id.* at 720.

The district court disregarded the mandate here. This Court held unequivocally that "because it did not receive the required 'prior written consent of the Attorney General,' the 2005 JOA is unlawful and unenforceable." *Adelson*, 147 F.4th at 1121. As a result, this Court "reverse[d] the district court's order denying [the Review-Journal's] motion [to dissolve the injunction]," and "remand[ed] for further proceedings consistent with this opinion." *Id.* at 1122.

15

But on remand, the district court effectively ordered the Review-Journal to perform under the 2005 JOA anyway. To be sure, the district court paid lip service to this Court's mandate, acknowledging that "[t]he Ninth Circuit reversed" the district court's decision denying the motion to dissolve and held "that the 2005 JOA was unlawful." APP0274. But the district court order confirms that the court resurrected the 2005 JOA in all but name. The district court order states that it is "preserving the core of the status quo arrangement" and enjoining the Review-Journal from "ceasing to print or distribute the Sun." APP0283–84. That is just a barely disguised way of saying that the Review-Journal must continue to perform under the 2005 JOA, because the status quo *is* the performance of the 2005 JOA. *See* APP0001–04 (stipulated order). Indeed, as this Court recognized, the Review-Journal's obligation to print and distribute the *Sun* was at the core of the 2005 JOA that this Court found was unlawful and unenforceable. *See Adelson*, 147 F.4th at 1110.[3] The district court is correct that "[u]nder any interpretation of the status quo ante litem, the RJ printed and distributed the Sun," APP0283, but that is *only* because

---

[3] Removing all doubt, the district court stated it was *not* ordering the Review-Journal to perform under the 1989 JOA. APP0275. The district court could not have ordered the Review-Journal to perform under the 1989 JOA in any event. The Sun did not ask for relief tied to the 1989 JOA in either its operative Complaint or in its proposed Second Amended Complaint. APP0282. And "[w]hen a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction." *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 633 (9th Cir. 2015).

16

the 2005 JOA required it. The district court's injunction, in short, requires the Review-Journal to perform the 2005 JOA after this Court held the 2005 JOA was "unlawful and unenforceable."

The injunction is particularly troubling because the district court lacked authority to order performance of an agreement that (as this Court held) violated a federal statute. As the Supreme Court has explained, "[w]here the enforcement of private agreements would be violative of [a federal statute], it is the obligation of courts to refrain from such exertions of judicial power." *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 84 (1982); *see also Kaiser-Frazer Corp. v. Otis & Co.*, 195 F.2d 838, 843 (2d Cir. 1952) ("a contract which violates the laws of the United States and contravenes the public policy as expressed in those laws is unenforceable"). The district court thus had no authority to require the Review-Journal to perform under the unlawful 2005 JOA.

In short, the district court is "bound by circuit authority" and "has no choice but to follow it, even if convinced that such authority was wrongly decided." *Hart v. Massanari*, 266 F.3d 1155, 1175 (9th Cir. 2001). There is thus "no doubt" that the district court had "a 'clear duty' to respond to [this Court's] remand." *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008). And there is similarly no doubt that the district court had no power to circumvent this Court's mandate by ordering the Review-Journal to print and distribute the *Sun* after this Court held the 2005 JOA

17

was unlawful and unenforceable. The appropriate remedy is therefore "to issue a writ of mandamus to 'prevent the frustration of orders previously issued'" by this court. *Id.* at 856; *Brown v. Baden,* 815 F.2d 575, 576 (9th Cir. 1987) (mandamus issued to compel district court to comply with prior appellate order); *ATSA of Cal., Inc. v. Cont'l Ins. Co.,* 754 F.2d 1394, 1396 (9th Cir. 1985) (similar).

**B.    The District Court Compelled Speech In Violation Of The First Amendment.**

Compounding the urgent need for mandamus, the district court's injunction violates the First Amendment by compelling the Review-Journal to carry speech that it does not wish to carry, including political and editorial viewpoints contrary to its own.

That First Amendment harm demands immediate action. Each day the injunction remains in place, the Review-Journal is forced to publish material it does not wish to publish. The Review-Journal's ability to "exercise [] editorial control and judgment" over the material it publishes is at the core of First Amendment protections. *Tornillo*, 418 U.S. at 258 (striking down statute compelling speech); *Pac. Gas*, 475 U.S. at 15–16. Each day, the Review-Journal is suffering severe harm—to its business, reputation, goodwill, and First Amendment rights—that is incapable of repair after-the-fact: "The loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

The district court's order is particularly offensive to the First Amendment because it requires the Review-Journal to publish and disseminate material antithetical to its own editorial viewpoint. The Sun has been clear from the beginning of this case that it views the print insert as an opportunity to express liberal viewpoints not shared by the Review-Journal and its current owners. *See, e.g.*, APP0063–64, 66; APP0186. Drawing on this theme, the district court noted that its order was designed to "preserv[e]" the Sun's "editorial voice[]" and a "diversity of editorial viewpoints," and that it viewed "maintaining" the Sun's particular editorial voice as sufficient grounds to issue an injunction. APP0280–82. The district court apparently views government-imposed political balance as a good thing, reasoning that "preserving two editorial voices in the relevant market furthers the aims of the First Amendment." APP0281.

That gets the First Amendment exactly backwards. Compelling a newspaper to amplify viewpoints it disagrees with does not protect the free press—it puts the free press in jeopardy. Long ago, the Supreme Court declared that government action requiring newspapers to publish competing viewpoints "violates the guarantees of a free press." *Tornillo*, 418 U.S. at 258 (striking down a requirement that newspapers must allow subjects criticized by the newspaper to reply). "The balance struck by the First Amendment with respect to the press is that society must take the risk that occasionally debate on vital matters will not be comprehensive and that all

19

viewpoints may not be expressed." *Id.* at 260 (White, J. concurring). Moreover, "prior compulsion by government in matters going to the very nerve center of a newspaper—the decision as to what copy will or will not be included in any given edition—collides with the First Amendment." *Id*. at 261.

Whatever the benefit of the "widest possible dissemination of information from diverse and antagonistic sources," *Associated Press v. United States*, 326 U.S. 1, 20 (1945), federal courts may not superintend that balance. Federal courts may not force a newspaper to publish editorial content with which it disagrees. Yet that is precisely what the district court did here. The district court's ruling cannot stand.

*Hawaii ex rel. Anzai v. Gannett Pac. Corp*., 99 F. Supp. 2d 1241 (D. Haw. 1999), which the district court relied upon, is entirely inapposite. In that case, after two newspapers consented to terminating a joint operating arrangement, the State of Hawaii challenged the termination as a violation of antitrust law. The district court enjoined that termination. *Id.* at 1252. But there, neither party was "compell[ed] … to publish any particular viewpoint." *Id*. at 1252. Indeed, the court expressly distinguished other cases, like this one, where parties were required to publish a competitor's material antithetical to their own views. *Id*. (distinguishing *Wooley v. Maynard,* 430 U.S. 705, 714 (1977) and *Tornillo*, which both struck down compelled speech). More to the point: the district court in *Gannett* entered an order to temporarily reinstate a JOA that all parties agreed was *legal*. Here, by contrast, the

20

district court reinstated the 2005 JOA after this Court declared it "unlawful and unenforceable." *See Adelson*, 147 F.4th at 1120–21.

What's more, the district court's injunction compels the Review-Journal to publish material that directly impugns the Review-Journal itself. For instance, the Sun has used its insert to expressly instruct readers *not* to subscribe to the *Review-Journal* and to subscribe to the Sun's website instead. APP0181–83. That, too, fails First Amendment scrutiny. Being yoked to the Sun and forced to carry its speech has tarnished the Review-Journal's "business reputation" and caused "damage to goodwill"—both of which constitute "irreparable harm." *Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013); *see Barber v. Ohana Mil. Communities, LLC*, 694 Fed. App'x 583, 584 (9th Cir. 2017) ("damage to reputation" is irreparable harm). That harm is compounded when it persists despite successful court challenges to the precise arrangement that has tethered the Review-Journal to the Sun.

## II. The District Court Offered No Valid Basis To Circumvent This Court's Mandate And Order Performance Of An Unlawful Agreement.

The district court offered three main justifications for its actions. None of them is sufficient to justify the relief it imposed.

21

### A.    The Supposed Evidence of Anticompetitive Conduct Cannot Justify The Injunction.

The district court reasoned first that its injunction was appropriate because the Sun "has at least raised serious questions that the [Review-Journal] has engaged in cognizable anticompetitive conduct." APP0278.

To start, the "evidence" the district court cites is solely based on the 2005 JOA. APP0277–78. In fact, the opinion cites only one piece of record evidence relevant to the merits—an expert report from the Sun regarding the definition of the relevant market, offered to substantiate its claims regarding allegedly anticompetitive acts—but that expert report was expressly based on the 2005 JOA. APP0277. In other words, the factual basis for the district court's order is that the Review-Journal allegedly failed to perform under the 2005 JOA. But that is just a thinly veiled effort to enforce the 2005 JOA after this Court held it was unenforceable.

More importantly, the district court conflated the question of antitrust liability with the question of antitrust remedy. Those are two distinct concepts. Assuming that the Review-Journal engaged in anticompetitive conduct (which the Review-Journal denies), the Sun may have a claim for damages. But that claim cannot justify the injunctive relief here, reinstating an arrangement that this Court and Congress deemed unlawful.

22

Indeed, at times, even the district court seemed to recognize the problem, observing that it could only issue preliminary relief that it could order as permanent relief. *See* APP0276 (conceding that "[p]reliminary relief awarded should bear a 'reasonable relationship' to the permanent relief requested"). But the court then proceeded to award preliminary relief that is plainly barred and cannot possibly be permanent relief: the continued performance of an unlawful joint operating agreement.[4]

For similar reasons, the district court fared no better when it sought to find authority for its injunction in the Clayton Act. *See* APP0276 (granting "[p]reliminary injunctive relief under Section 16" of the Clayton Act); 15 U.S.C. § 26. Relief under the Clayton Act "must serve an antitrust purpose, such as ending conduct in violation of the antitrust laws, depriving violators of the benefits of that conduct, and restoring competition." APP0276 (citing *In re Multidistrict Vehicle Air Pollution*, 538 F.2d 231, 234–35 (9th Cir. 1976)).

---

[4] The Sun's pending motion to amend its Amended Complaint cannot rescue the district court's unlawful order. The district court recognized that the Sun itself conceded that the proposed Second Amended Complaint "asserts the same causes of action, and seeks most of the same declaratory, monetary, and injunctive relief." APP0274. The only difference is "the Sun's original requests" to enjoin termination of "the 2005 JOA have been replaced by a request to enjoin the RJ from unilaterally ending the joint operation and ceasing to print and distribute the Sun." *Id.* (not explaining what "the joint operation" means if not the 2005 JOA). If the Sun's operative Complaint seeks enforcement of the 2005 JOA, and the proposed Second Amended Complaint is no different, then any future injunction based on the proposed Second Amended Complaint would violate this Court's mandate too.

The district court's order served no such pro-competitive purpose. Instead, it improperly resurrected an unlawful agreement to fix prices and output—which violates the antitrust laws because the agreement was not approved by the Attorney General as required by the NPA—to compel one newspaper to amplify the contrary viewpoint of another. That result is antithetical to the goals of the Clayton Act, which aims to *prevent* unlawful consolidation, not facilitate it. *Brown Shoe Co. v. United States*, 370 U.S. 294, 317 (1962) (explaining that Congress enacted the Clayton Act to prevent "mergers whose effect may tend to lessen competition"); *Citizen Publ'g Co. v. United States*, 394 U.S. 131, 140 (1969) (finding newspaper consolidation under JOA anticompetitive). Rather than allow the breakup of two newspapers engaged in anticompetitive conduct that was not permitted under the NPA, the district court here invoked the Clayton Act to compel competitors to prolong their unlawful joint arrangement. That is not what the Clayton Act and the NPA are for.

Nor could the district court interpret its equitable authority under the Clayton Act in a way that all but nullifies the NPA. A court "is not at 'liberty to pick and choose among congressional enactments' and must instead strive 'to give effect to both.'" *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 510 (2018) (citing *Morton v. Mancari*, 417 U.S. 535, 551 (1974)). In this case, the NPA specifically regulates newspaper joint operating arrangements, and "it is a commonplace of statutory construction that the specific controls the general." *RadLAX Gateway Hotel, LLC v.*

24

*Amalgamated Bank*, 566 U.S. 639, 645 (2012). This Court's opinion confirms that same approach. *See Adelson*, 147 F.4th at 1115 n.3 (analyzing the intersection of the antitrust laws with the NPA). The district court's order violates all of those principles by invoking the Clayton Act as authority to ignore the NPA's clear command.

### B.     Vacating The Injunction Will Not Harm The Sun.

Next, the district court concluded that its injunction was needed to avoid imposing irreparable harm on the Sun. The Sun will not be irreparably harmed by vacating the injunction. The Sun will maintain its online publication, which is its primary forum for exercising its editorial voice. In fact, the Sun already reserves much of its "editorial voice" for its own online website rather than for its print insert, intentionally withholding its best content and filling the print insert with stale national wire copy rather than timely local content. *See* APP0285–347. Greenspun Media will also retain its print weekly newspaper—which declares itself "#1 in local news" in Las Vegas. *See Greenspun Media Group*, Print, GMG Vegas, https://www.gmgvegas.com/print (last visited Mar. 18, 2026). That may be why the Sun did not assert that an injunction was necessary to protect its own First Amendment rights. APP0184; ECF No. 1061. And that confirms that, without the district court's injunction, all the Sun would "lose" is the opportunity to force the Review-Journal to carry the Sun's voice in print in the Review-Journal's publication,

25

*in addition to* the Sun's expressing its voice on its own website and its other publications.

Instead, the Sun seems to suggest that an injunction is justified to ensure that third-party readers have access to its "alternative" viewpoint. ECF No. 1061 at 12. But over the last six years of litigation—including in its motion for a TRO and preliminary injunction, *id.*—the Sun has not identified a single individual who would be deprived of the Sun's content were they required to view that content online rather than as a print insert in the *Review-Journal*. That is telling.

Moreover, the Sun concedes that without a joint operating arrangement it can still print and distribute its own paper copies if it wishes, ECF No. 1091 at 24 (describing the "RJ's printing press" as among "alternatives … for the Sun to explore"), and the Review-Journal has offered to rent its own printing press at the market rate, APP0271. That will cost the Sun money. But there is no reason the Sun could not spend its money on printing and distributing its content, rather than on lawyers seeking to compel the Review-Journal to print and disseminate the Sun's content that the Review-Journal does not wish to publish. Monetary injuries are not irreparable, *Lydo Enters., Inc. v. City of Las Vegas,* 745 F.2d 1211, 1213 (9th Cir. 1984), and do not justify emergency relief—much less injunctive relief that violates this Court's mandate, federal statutes, and another party's constitutional rights.

At bottom, the district court's order forces the Review-Journal to carry the Sun's speech within its newspaper, handcuffing the Review-Journal to a toxic partner that is intentionally degrading the quality of the *Review-Journal* and forcing it to publish political content with which it disagrees. That order, which is clearly contrary to this Court's directive, has harmed the Review-Journal in ways that are genuinely irreparable.

## C.     The Injunction Is Against The Public Interest.

Finally, the district court believed its injunction was needed to protect the public interest. There, too, the district court was wrong.

According to the district court, an injunction is in the public interest because it will facilitate "political engagement," counter downturns in voter turnout, encourage "split-ticket voting," and safeguard the Sun's "competing editorial voic[e]." APP0281–82. Even putting aside the district court's reliance on the perceived value of particular viewpoints as a basis for requiring the Review-Journal to publish certain material, the district court gets the public interest issue wrong: Congress has settled when joint operating arrangements between newspapers serve the public interest and when they do not—and Congress has concluded that they only serve the public interest if approved by the Attorney General.

Under the NPA, it is unlawful "to enter into, perform, or enforce a joint operating arrangement, not already in effect, except with the prior written consent

27

of the Attorney General of the United States." 15 U.S.C. § 1803(b). The district court's injunction resurrects a joint operating arrangement that fails this requirement. It is "not [] equitable or in the public's interest … to violate the requirements of federal law," *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013), and the district court simply lacks authority to second-guess Congress's assessment of where the public interest lies.

Moreover, the district court's assessment of the public interest balance was woefully incomplete, because it left out of the equation the First Amendment harms suffered by the Review-Journal. *See supra* I.B. Judicial insistence that newspapers carry and promote viewpoints with which they disagree goes to the core of what the First Amendment was intended to prevent. When the lens is broadened to include the Constitution, the district court's public interest assessment cannot stand.

## CONCLUSION

For the reasons stated herein, the Review-Journal respectfully requests that this Court grant a writ of mandamus to enforce its mandate and vacate the district court's order.

Dated March 18, 2026

Respectfully submitted,

/s/ Ian Heath Gershengorn

J. Randall Jones
KEMP JONES LLP

Ian Heath Gershengorn
Tanner J. Lockhead

28

3800 Howard Hughes Pkwy., 17th Fl.
Las Vegas, Nevada 89169
(702) 385-6000
r.jones@kempjones.com

Richard L. Stone
850 Devon Avenue
Los Angeles, California 90024
(310) 993-2068
RStone@fastmail.com

Michael J. Gayan
CLAGGETT & SYKES LAW FIRM
4101 Meadows Lane, Suite 100
Las Vegas, Nevada 89107
(702) 333-7777
mike@claggettlaw.com

JENNER & BLOCK LLP
1099 New York Ave. NW, Suite 900
Washington, DC 20001
(202) 639-6000
igershengorn@jenner.com
tlockhead@jenner.com
David R. Singer
Amy M. Gallegos
JENNER & BLOCK LLP
515 South Flower Street, Suite 3300
Los Angeles, California 90071
(213) 239-5100
dsinger@jenner.com
agallegos@jenner.com

Gabriel K. Gillett
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
(312) 840-7220
ggillett@jenner.com

*Counsel for Petitioners-Defendants*

29

## STATEMENT OF RELATED CASE

Petitioners' mandamus petition arises from prior proceedings in this Court in *Las Vegas Sun, Inc. v. Adelson*, 147 F.4th 1103 (9th Cir. 2025), cert. denied, No. 25-697, 2026 WL 490865 (U.S. Feb. 23, 2026). That proceeding arose from the same district court case as this petition, and this Court's prior ruling is at issue with respect to the enforcement of its mandate.

For this reason, Petitioners intend to move the Court pursuant to Ninth Circuit General Orders 1.2 and 3.6(d) for designation of this petition as a comeback case to be assigned to the prior panel, which included Judges Daniel P. Collins, Lawrence VanDyke, and Salvador Mendoza, Jr.

## CERTIFICATE OF SERVICE

I hereby certify that on March 18, 2026, I electronically filed the foregoing with the Clerk of the Court by using the appellate CM/ECF system. Service has been accomplished via email to the following counsel:

*Counsel for Real-Parties-in-Interest-Plaintiffs*:

Kristen L. Martini (kmartini@clarkhill.com)
E. Leif Reid (lreid@clarkhill.com)
Nicole Scott (nscott@clarkhill.com)
James J. Pisanelli (JJP@pisanellibice.com)
Todd L. Bice (TLB@pisanellibice.com)
Jordan T. Smith (jsmith@bhfs.com)
Joseph M. Alioto (jmalioto@aliotolaw.com)

The district court has been provided with a copy of this petition for writ of mandamus pursuant to Federal Rule of Appellate Procedure 21(a).

*s/ Ian Heath Gershengorn*
Ian Heath Gershengorn

31