E. LEIF REID, Nevada Bar No. 5750
KRISTEN L. MARTINI, Nevada Bar No. 11272
NICOLE SCOTT, Nevada Bar No. 13757
CLARK HILL PLC
1700 S. Pavilion Center Dr., Suite 500
Las Vegas, Nevada 89135
Tel: 702.862.8300
Fax: 702.778.9709
Email: lreid@clarkhill.com
        kmartini@clarkhill.com
        nsscott@clarkhill.com

JAMES J. PISANELLI, Nevada Bar No. 4027
TODD L. BICE, Nevada Bar No. 4534
PISANELLI BICE PLLC
400 South 7th Street, Suite 300
Las Vegas, Nevada 89101
Tel: 702.214.2100
Fax: 702.214.2101
Email: JJP@pisanellibice.com
        TLB@pisanellibice.com

JORDAN T. SMITH, Nevada Bar No. 12097
BROWNSTEIN HYATT FARBER
SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106
Tel: 702.464.7022
Fax: 702.382.8135
Email: jtsmith@bhfs.com

JOSEPH M. ALIOTO, *PRO HAC VICE*
ALIOTO LAW FIRM
One Sansome Street, 35th Floor
San Francisco, California 94104
Tel: 415.434.8900
Fax: 415.434.9200
Email: jmalioto@aliotolaw.com

*Attorneys for Plaintiff/Counterdefendants*

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEVADA

| | |
|---|---|
| LAS VEGAS SUN, INC., a Nevada corporation,<br><br>Plaintiffs,<br><br>v.<br><br>SHELDON ADELSON (Estate Of), an individual, and as the alter ego of News+Media Capital Group LLC, Las Vegas Review-Journal, Inc., and Interface Operations LLC dba Adfam; PATRICK DUMONT, an individual, and as alter ego of Las Vegas Review-Journal, Inc., News+Media Capital Group, LLC, and Interface Operations LLC dba Adfam; NEWS+MEDIA CAPITAL GROUP LLC, a Delaware limited liability company; LAS VEGAS REVIEW-JOURNAL, INC., a Delaware corporation; INTERFACE OPERATIONS LLC dba ADFAM, a Delaware limited liability company and as the alter ego of Las Vegas Review-Journal, Inc., and News+Media Capital Gorup, LLC; and DOES, | Case No.: 2:19-CV-01667-ART-MDC<br><br>**PLAINTIFF/COUNTERDEFENDANTS'** *EMERGENCY* **RENEWED MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION,**<br><br>**AND**<br><br>*EMERGENCY* **MOTION TO RESET HEARING ON SUN'S PENDING MOTION FOR PRELIMINARY INJUNCTION (ECF NO. 1040/1047)** |

I-X, inclusive,

Defendants.

LAS VEGAS REVIEW-JOURNAL, a
Delaware corporation,

Counterclaimant,

v.

LAS VEGAS SUN, INC., a Nevada
corporation; BRIAN GREENSPUN, an
individual and as alter ego of Las Vegas Sun,
Inc.; GREENSPUN MEDIA GROUP, LLC, a
Nevada limited liability company, as the alter
ego of Las Vegas Sun, Inc.,

Counterclaim Defendants.

Plaintiff/Counterdefendant Las Vegas Sun, Inc., and Counterdefendants Brian Greenspun and Greenspun Media Group, LLC (together, for purposes of this Motion and for ease of reference, referred to as, the "Sun"), move this Court on an emergency basis pursuant to Local Rule 7-4 for a renewed Temporary Restraining Order ("TRO") and Preliminary Injunction pursuant to Federal Rule of Civil Procedure 65 and Section 16 of the Clayton Act (15 U.S.C. § 26). The Sun files this Motion in response to, and in consideration of, the Ninth Circuit's Order granting the RJ's Petition for Writ of Mandamus on March 30, 2026, directing this Court to vacate the March 12 Order granting the Sun's injunctive relief.

The Ninth Circuit's Order focused on the Court's perceived nexus between the March 12 Order and the 2005 Amended JOA. Importantly, the Ninth Circuit did not address the Sun's *pending* Motion for TRO and Preliminary Injunction that seeks mandatory injunctive relief tied quite specifically to the binding and controlling nature of the 1989 JOA (ECF Nos. 1040/1047) ("Initial Motion").[1] This Court stayed that Initial Motion and hearing pending the Ninth Circuit's ruling. ECF No. 1096 at 13. Thus, the Initial Motion remains valid and unresolved.

The Sun now seeks preliminary injunctive relief in the form of a TRO and Preliminary Injunction that is expressly based on the 1989 JOA and that enjoins the RJ from ceasing to print

---

[1] For ease of reference, the Sun cites to its Initial Motion as ECF No. 1040.

and distribute the Sun pending a hearing and decision on the Sun's request for a preliminary injunction. This emergency relief is necessary to prevent the RJ from ceasing to print and distribute the Sun in violation of Section 2 of the Sherman Act (15 U.S.C. § 2).

The Sun further seeks, on an emergency basis, an Order resetting the hearing on the Sun's Initial Motion seeking mandatory injunctive relief, and the present Motion.

This Motion is based on the following Memorandum of Points and Authorities, the attached Declaration of Kristen L. Martini (pursuant to Local Rule 7-4(a)), the Sun's February 23, 2026, *Emergency* Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 1040) and Reply in support thereof (ECF No. 1092) (together, the "Initial Motion"), and the pleadings and papers on file herein.

Dated this 31st day of March, 2026.

CLARK HILL PLC

By: */s/ Kristen L. Martini*
E. Leif Reid, Nevada Bar No. 5750
Kristen L. Martini, Nevada Bar No. 11272
Nicole Scott, Nevada Bar No. 13757
1700 S. Pavilion Center Drive, Suite 500
Las Vegas, Nevada 89135

PISANELLI BICE PLLC
James J. Pisanelli, Nevada Bar No. 4027
Todd L. Bice, Nevada Bar No. 4534
400 South 7th Street, Suite 300
Las Vegas, Nevada 89101

BROWNSTEIN HYATT FARBER SHRECK, LLP
Jordan T. Smith, Nevada Bar No. 12097
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106

ALIOTO LAW FIRM
Joseph M. Alioto, Pro Hac Vice
One Sansome Street, 35th Floor
San Francisco, California 94104

*Attorneys for Plaintiff/Counterdefendants*

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

The Ninth Circuit's recent Order directing this Court to vacate its March 12 injunction Order ("Order") has made an already procedurally complicated matter even more so. But, it did not render this case unmanageable, nor did it expressly or implicitly direct that this case end in the RJ's favor. All the Ninth Circuit did was make clear that whatever relief this Court deems appropriate, that relief cannot be tied to the terms and obligations embodied in the 2005 JOA. While the Sun believes that this Court's Order was not tied to that agreement, the Sun offers this Motion to make clear, beyond any doubt, that its request for injunctive relief is tied inextricably to the 1989 JOA. Indeed, the Sun has asserted this position as an affirmative defense from the beginning of this case. And an injunction compelling the RJ to continue the publication and distribution of the Sun is authorized by the express text of the 1989 JOA and compelled by Section 16 of the Clayton Act. A joint edition of the Newspapers is authorized by multiple provisions of the 1989 JOA, including Section 4.4 (jointly published editions), Section 5.1 (Saturday/Sunday/holiday joint publication), Appendix A.2(b) and (c) (content and timing), and Section 8.2 (the force majeure joint edition publication obligation). The Attorney General reviewed and approved all of these provisions pursuant to the Newspaper Preservation Act in 1990.

The law of this case is clear as it relates to the RJ's attempt to recruit this Court to act as an accomplice to its anticompetitive scheme. This Court has ruled, at summary judgment, that the 1989 JOA was not terminated and that no novation occurred. This Court already ruled that changing economic factors was foreseeable and did not excuse the RJ's performance. ECF No. 970 at 48-49. Likewise, it was entirely foreseeable that complying with the 1989 JOA would not be easy, nor would it be inexpensive. As a consequence, as this Court already made clear, neither the doctrine of impossibility nor the doctrine of impracticality, nor even force majeure, would allow the RJ to cease printing and distributing the Sun, eliminating it from the market.

And so, this Motion is the logical consequence of the RJ's success. The RJ sought to have the 2005 JOA deemed invalid. It won that issue. As a result, the law dictates that the 1989 JOA is the valid and  governing agreement, and the parties are obligated to comply with it, just as they

1

always intended. Reversion to the 1989 JOA is automatic and self-executing. In other words, no claim for relief is needed for that reversion to occur.[2] The Court's intervention is only needed because the RJ refuses to meet its obligations. This Motion is the Sun's request to this Court to hold the RJ accountable and responsible to perform its contractual duties under the 1989 JOA. Judicial enforcement of the existing, Attorney General-approved JOA is not only consistent with the Ninth Circuit's mandate, but required here under antitrust laws in order to prevent the RJ from creating a monopoly. Accordingly, this Court need not require afternoon publication of the Sun to be grounded in the 1989 JOA. An injunction requiring the RJ to publish a joint edition of the Newspapers as set forth in Section 8.2 and Appendix A.2(b)-(c) until this Court rules on the Sun's mandatory relief requested in its Initial Motion, or until the merits of this case are fully litigated is warranted. This request is in accordance with the Ninth Circuit's Opinion and recent Order. In the absence of relief, the Sun will cease to exist, and that cannot under any reasonable read of the parties' pact be the fair and equitable result of this dispute.

## II.    RECENT FACTS AND PROCEDURAL HISTORY

On February 23, 2026, the Sun filed its *Emergency* Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 1040) in which it sought a TRO and preliminary injunction that: (1) enjoins the RJ from unilaterally ending the joint operation and ceasing to print and distribute the Sun during the pendency of this litigation, (2) compels the RJ to use its best efforts to and take all action necessary to obtain Attorney General written consent of the 2005 JOA, and (3) compels the RJ to revert to the 1989 JOA until a final judgment on the merits or an earlier order of the Attorney General granting written approval of the 2005 JOA under 28 C.F.R. § 48.14. The Sun's Initial Motion sets forth the detailed factual history supporting its request for injunctive relief, which the Sun incorporates by express reference as though fully set forth herein. ECF No. 1040 at 3-24 ("II. STATEMENT OF THE FACTS") (citing Appendices, ECF Nos. 1041-46).

---

[2] While this Court noted that the Sun does not have an affirmative claim for relief for reversion to the 1989 JOA but that it was pleaded as an affirmative defense (ECF No. 1096 at 11), the Sun does not believe that it needs an affirmative claim when the 1989 JOA is the valid and operative agreement by operation of law. Nonetheless, if this Court sees otherwise, the Sun will gladly include a declaratory relief claim in an amended pleading.

2

On February 24, 2026, this Court ordered expedited briefing on the Sun's Initial Motion. ECF No. 1057. This Court then set a hearing on the Initial Motion for March 13, 2026. ECF No. 1066. The RJ filed its Opposition on March 3, 2026 (ECF No. 1070), and the Sun filed its Reply on March 10, 2026 (ECF No. 391).

In its Order on the Sun's Initial Motion, this Court first analyzed the likelihood of success factor, finding that the Sun satisfied its burden:

> The Sun has at least raised serious questions regarding whether the RJ's conduct meets the relevant standards. Based on the evidence submitted with the motion for preliminary injunctive relief, there is at minimum a serious question on the merits of the Sun's claims that the RJ willfully acquired and maintained its dominant market position through the alleged anticompetitive acts, causing injury.

Order 6. Relatedly, this Court found that "[t]he Sun has at least shown serious questions going to the merits of their proposed market definition," as supported by the data analysis undertaken by the Sun's renowned expert economist Dr. Michael Katz, and noting that the RJ has failed to challenge the Sun's relevant market twice before. *Id.* at 6-7. This Court similarly concluded that the Sun met its burden in establishing that the RJ's conduct was anticompetitive, additionally explaining that "the Sun's claims turn on allegations of anticompetitive conduct, not breach of the 2005 JOA." *Id.* at 7. The Sun also established that it engages in cognizable competition under antitrust laws, and that its requested relief would restore competition in the relevant market. This Court reiterated its prior findings that Sun's claims and alleged harm fall squarely within the antitrust framework applicable to print newspapers:

> editorial competition is commercial competition in the newspaper context. The theory, as laid out in comparable precedents, is that editorial competition between competing newspapers produces financial rewards, such as by increasing a newspaper's value, especially in the eyes of potential acquisitors, and enhancing its bargaining position when a JOA containing a profit-sharing agreement is up for renegotiation or termination. Editorial competition may also increase traffic to the Newspapers' digital operations outside of the joint operation and promote their principal owners' economic or business interests more broadly.

*Id.* at 8, 7 (quotations and citations omitted).

For the second factor, this Court concluded that the Sun showed a likelihood of irreparable harm if injunctive relief was not granted because evidence demonstrated that ceasing to print and

3

distribute the Sun would cause the Sun to suffer immediate and intangible harms in the form of "loss of staff and ability to recruit new employees… loss of readership and visibility, and loss of goodwill, " and tangible harms in the form of "credibl[e]" evidence that it would face "an immediate risk of closure," which established irreparable harm. *Id.* at 8-9 (citing cases).

The third balance of equities factor also favored the Sun where "the Sun may face a risk of closure if preliminary injunctive relief is not granted, the RJ faces no such corresponding risk." *Id.* at 9. On the other hand, "the RJ is required to do nothing more than to continue printing and distributing the Sun, which it has done since 1989." *Id.* This Court rejected the RJ's First Amendment arguments relying on *Hawaii ex rel. Anzai v. Gannett Pac. Corp.*, 99 F. Supp. 2d 1241, 1252 (D. Haw.), *aff'd sub nom. State of Hawaii v. Gannett Pac. Corp.*, 203 F.3d 832 (9th Cir. 1999), holding that "enjoining a defendant from terminating a joint operating agreement furthered the aims of the First Amendment, rather than violating that defendant's First Amendment rights to refrain from speaking or publishing," and preserving two distinct newspaper voices in the relevant market furthers the aims for the First Amendment as expressed by the Supreme Court. Order 9-10.

For the final, public interest, factor, this Court found that the public's interest was not only in preserving distinct newspaper voices, but it is also the "motivating policies of antitrust law favor protecting the production and distribution of the Sun." *Id.* at 10. Closing a local newspaper deprives readers, advertisers, and writers of the monetary and nonmonetary benefits of a free and open marketplace." *Id.* Because of the public interest in preserving a second newspaper, and preventing elimination of a competitor through anticompetitive conduct, the public interest favored the injunction where the failure to preserve the Sun would "lead to irreversible harms and foreclose th[e] [c]ourt's ability to consider injunctive relief if the Sun prevails at trial." *Id.* at 11.

After finding that the Sun satisfied each of the *Winter* factors, it addressed the Sun's requested prohibitive injunction, looking to the purpose of Section 16. *Id.* at 11-12. This Court found that the "RJ object[ed] to all proposed forms of relief" despite failing to "counter the Sun's theory" that the 1989 JOA remained enforceable. *Id.* More importantly, this Court found that "the RJ d[id] not address what remedies would be available to the Sun if it prevails on any of its antitrust claims," where "[t]he Ninth Circuit's opinion did not address those antitrust claims or available remedies."

4

*Id.* at 12. In other words, in the RJ's view, the only option was to eliminate the Sun from the market and give the RJ a literal monopoly in the market. *Id.* This Court rightly disagreed.

The Court concluded that "[u]nder any interpretation of the status quo ante litem, the RJ printed and distributed the Sun," including under the 1989 JOA, to "maintain[ ] the existence of a second editorial voice in the relevant market for local news." *Id.* Thus, in dissolving the stipulated injunction, where the Ninth Circuit's Opinion did not address the Sun's claims or the 1989 JOA, among other issues, this Court concluded that injunctive relief was imperative:

> [T]he value of preserving *the core of the status quo arrangement* cannot be reduced to an award of damages. Some interim injunctive relief is necessary to protect community and consumer interests, allow time to fully brief and adjudicate the Sun's motion to amend the complaint and preliminary injunction motion, and ensure the availability of any appropriate injunctive relief post-trial. The Sun's complaint raises substantial antitrust questions which should be resolved before an irremediable loss is dealt, not afterwards.

*Id.* (emphasis added).

After the RJ filed its Petition for Writ of Mandamus ("Petition") with the Ninth Circuit, it sought an emergency stay of all proceedings below pending this Court's determination, including the April 10 evidentiary hearing on the Sun's Initial Motion. ECF No. 1099. On March 20, 2026, this Court granted the stay, and vacated the April 10 hearing pending a decision from the Ninth Circuit. ECF No. 1100.

On March 30, the Ninth Circuit granted the RJ's Petition and directed this Court to vacate its Order enjoining the RJ from ceasing to print and distribute the Sun based on the "core" of the 2005 JOA. Most importantly, the Ninth Circuit offered no direction or impediment to an injunction tied the 1989 JOA when it reiterated, "[W]e do not have before us any issue concerning reversion to the 1989 JOA, and we express no views on any such questions."

Whereas the Sun's Initial Motion seeking mandatory injunctive relief remains pending, and this Court has already found that the Sun satisfied its burden in establishing a likelihood of success and irreparable harm, that the balance of hardships sharply tips in the Sun's favor, and the public interest is served by enjoining the RJ from ceasing to print and distribute the Sun, the Sun's instant Motion now follows. This Court remains within its authority to enter preliminary relief enjoining

5

the RJ from ceasing to print and distribute the Sun based upon the provisions of the valid and operative 1989 JOA.

**III.    THE RELEVANT GOVERNING PROVISIONS OF THE 1989 JOA**

Section 5.1 contains the 1989 JOA's operative publication format provision. While the obligation to publish the Sun as an afternoon paper runs Monday through Friday only, the 1989 JOA explicitly requires a different format in the form of a jointly published combined edition for Saturdays, Sundays, holidays, and "other special editions." ECF No. 1028 at 23. The RJ has frequently referred to the afternoon publication but the provision reads: "Subject to the terms of this Agreement, and as of the Effective Date, Sun shall be a daily afternoon newspaper and Review-Journal shall be a daily morning newspaper and on Saturday, Sunday, holidays, and other special editions the newspapers shall be jointly published as provided in Section 4.4." *Id.* (emphasis added).

Section 4.4 of the 1989 JOA defines what the "jointly published newspapers" are and how they are formatted. It reads:

> Sun shall furnish editorial copy, features and comics to permit the Review-Journal to include them within jointly published newspapers, which shall be Sundays, Saturdays, holidays, other special editions and total market coverage editions. The Sun portion of jointly published newspapers shall be in accordance with Appendix A hereto.

*Id.* at 21. According to Appendix A, Subsection A.2(b) governing the Sunday joint editions requires that the Sun contain "a separate section of three (3) open pages (one cover page, one editorial page and one op. ed. page), plus four hundred fifty (450) column inches" and also requires that the Sun be placed within the first four sections of the Newspaper Bundle. *Id.* at 44. Subsection A.2(c) governing the Saturday and holiday joint edition provides that the Sun is "entitled to one editorial or op. ed. page and one comic page." *Id.*

Section 4.4 also sets forth how the joint edition of the Newspapers distinguish the Newspapers from each other. It reads:

> All components of jointly published newspapers shall bear the Review-Journal's headdress, typeface and style. The front page logo of all jointly published newspapers shall read "Las Vegas REVIEW-JOURNAL and SUN," and all folios shall similarly refer to both papers, except for editorial and other pages described in Appendix A as being for the use of only one newspaper, which pages shall bear only

6

the name of such newspaper. The Review-Journal shall provide all of the news content of jointly published newspapers, except for stories and features included on those pages described in Appendix A as being only for the use of the Sun.

*Id.* at 21-22 (emphasis added) (further providing, "The Review-Journal reserves the right to print conspicuous notices in jointly published newspapers to the effect that the news content of the non-Sun portion of the newspaper, including locally produced supplements, is produced by Review-Journal personnel.").

Section 8.2 of the 1989 JOA contemplates a joint edition publication on a daily basis, including when publication and distribution of two separate newspapers is infeasible. It provides as follows:

Neither party shall be liable to the other for any failure or delay in performance under this Agreement, occasioned by war, riot, government action, act of God or public enemy, damage to or destruction of facilities, strike, labor dispute, failure of suppliers or workers, inability to obtain adequate newsprint or supplies, or any other cause substantially beyond the control of the party required to perform, provided that in the event partial performance under this Agreement is feasible, notwithstanding the occurrence of one or more of the foregoing, performance shall be allocated between the newspapers by the Review-Journal, in its sole judgment, and if it is feasible to publish only one newspaper product, Review-Journal shall exercise its best efforts to produce a jointly published newspaper in which the Sun portion shall be determined by Review-Journal, notwithstanding the provisions of Appendix A hereto, provided, that the Sun portion shall not be less than two (2) pages.

*Id.* at 33 (emphasis added).

## IV. THE LEGAL STANDARD FOR GRANTING A TRO AND PRELIMINARY INJUNCTION

Plaintiffs have the right to "injunctive relief … against threatened loss or damage by a violation of the antitrust laws." 15 U.S.C. § 26. The legal standard for issuing a temporary restraining order is the same for issuing a preliminary injunction. *E.g.*, *Patmont Motor Werks, Inc. v. Pedego LLC*, 2012 WL 13071201, at *1 (D. Nev. Mar. 6, 2012) (citing *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001)). To prevail on a TRO and preliminary injunction pursuant to Federal Rule of Civil Procedure 65, the moving party must establish: (1) a likelihood of success on the merits, (2) the threat of irreparable injury, (3) the balance of equities tips in its favor, and (4) the injunction is in the public interest. *Stormans, Inc. v. Selecky*,

586 F.3d 1109, 1127 (9th Cir. 2009). The Sun has satisfied all combinations of the test for granting its requested relief. *See* ECF No. 1096.

## V.    A TRO AND PRELIMINARY INJUNCTION ENJOINING THE RJ FROM CEASING TO PRINT AND DISTRIBUTE THE SUN BASED ON THE 1989 JOA ARE NECESSARY

The Sun restates its arguments and evidence as set forth in its Initial Motion and Reply—which this Court already found satisfied the Sun's burden under *Winter*—as though fully set forth and incorporated by reference herein. *See* ECF No. 1040 at 25-42; ECF No. 1092. These same facts, evidence, and law establish that injunctive relief under the Clayton Act is necessary to enjoin the RJ from ceasing to print and distribute the Sun, thereby eliminating the Sun from the market, and harming consumers. *See* ECF No. 1040 at 25-42; ECF No. 1092. As explained in the Sun's Reply, this Court is within its broad discretion to enjoin the RJ under the terms of the valid and existing 1989 JOA. ECF No. 1092 at 4, 5-11.

When the Ninth Circuit declared the 2005 JOA unenforceable, the 1989 JOA became the governing agreement between the parties by operation of law. It is a fundamental principle of contract law that the unenforceable 2005 JOA cannot operate to displace or extinguish the valid, Attorney General-approved 1989 JOA. *See*, *e.g.*, *Airs Intern., Inc. v. Perfect Scents Distribs., Ltd.*, 902 F. Supp. 1141, 1148-49 (N.D. Cal. 1995) (providing that where "the new contract is invalid, there is no novation and the parties' previous obligations are not extinguished") (citations omitted). Moreover, this Court already disposed of the RJ's argument (as a matter of law) when it found that the parties clearly did not intend to terminate the 1989 JOA when they entered into the 2005 JOA. ECF No. 970 at 18-19. Therefore, the parties are governed by the 1989 JOA now, without any further action from this Court. Reversion to the 1989 JOA is self-executing. The fact that the parties expressly and unequivocally memorialized reversion to the 1989 JOA "at any time" in the event that lawful performance of the 2005 JOA was hindered or otherwise impaired further confirms that this was always the parties' intention. *Id.* at 150. Stated in the simplest of terms: the parties expressly agreed to a reversion mechanism that the law would have imposed even in the parties' silence. That the parties were not silent on the topic is dispositive of this issue.

Nonetheless, the RJ has recycled its failed (and incorrect) argument that it is impossible to

produce and distribute the Sun as an afternoon newspaper.[3] But, this Court has already entered summary judgment against the RJ's force majeure and impossibility arguments. ECF No. 970 at 47-49. This Court held that the RJ couldn't avoid its contractual obligations because those doctrines require that the events giving rise to their application must be "unforeseeable." ECF No. 970 at 47-49. This Court applied *Nebaco, Inc. v. Riverview Realty Co*., 482 P.2d 305, 307 (Nev. 1971), and held that impossibility and force majeure weren't available because the potential for changes in the industry—including financial challenges—were, in fact, foreseeable and should have been specifically provided for in the contract. *Id*. at 48-49.

The inequity of the RJ's position cannot be overstated. The RJ seeks the grace of this Court to relieve it of the "hardships" of performing its obligations under the 1989 JOA, when those very hardships were either caused by the RJ itself, or were exacerbated by the RJ's chosen lethargy. For instance, it was the RJ's express responsibility to do all it could to receive the Attorney General's approval of the 2005 JOA. Yet, it did nothing. Likewise, the RJ has taken the position that the 2005 JOA was unenforceable *seven* years ago. Knowing that the 1989 JOA would be the valid and operative agreement should the 2005 JOA be declared unenforceable (not only by operation of law but also by the parties expressly contracting to revert back to the 1989 JOA), the RJ had more than ample opportunity to prepare itself to perform fully under the 1989 JOA should it be successful in its advocacy that the 2005 JOA is unenforceable. Yet, it did <u>nothing</u>.

And now, rather than accept the responsibilities of its success, the RJ asks this Court to consummate the RJ's anticompetitive plan and allow it to end, once and for all, the publication of

---

[3] Notably, while the RJ already argued that its First Amendment rights are violated by an injunction prohibiting it from ceasing to print and distribute the Sun, this Court already correctly rejected that argument, holding that "enjoining a defendant from terminating a joint operating agreement furthered the aims of the First Amendment, rather than violating that defendant's First Amendment rights to refrain from speaking or publishing," and preserving two distinct newspaper voices in the relevant market furthers the aims of the First Amendment as expressed by the Supreme Court. ECF No. 1096 at 9-10. Moreover, not only does Section 4.4 of the 1989 JOA further dispose of the RJ's argument because it allows the RJ to print conspicuous notices on the jointly published Newspapers indicating which content is produced by RJ personnel, but the entirety of the 1989 JOA evidences the RJ's knowing and voluntary waiver of its First Amendment rights. *See* ECF No. 1091 at 33; ECF No. 1063 at 7-9; *see also Hawaii ex rel. Anzai v. Gannett Pac. Corp.*, 99 F. Supp. 2d 1241, 1248-52 (D. Haw. 1999), *aff'd sub nom. State of Hawaii v. Gannett Pac. Corp.*, 203 F.3d 832 (9th Cir. 1999).

the Sun. Shockingly, the foundation of the RJ's ask is that the consequences of its success are too expensive. That is not how the law of equity works.  It is not the province of this Court to insulate the RJ from the economic or operational consequence of its market and litigation strategies. The 1989 JOA contains provisions that were approved by the Attorney General that allow for joint publication and distribution of the Newspapers. This is the logical conclusion of all that the RJ has fought for.

Importantly, while the Sun's Initial Motion is pending and the parties are litigating the merits of the Sun's claims, this Court may consider the alternative means of publication contained in the 1989 JOA itself when formulating interim relief to the Sun. For instance, while the 1989 JOA does not allow the RJ to cease publishing the Sun, it does authorize the RJ to publish joint editions of the Newspapers under certain limited circumstances. To be sure, Section 8.2 is not an excuse from performance for the RJ (it contains an affirmative obligation triggered when the RJ believes that publication and distribution of two separate newspapers is infeasible): Section 8.2 provides for the joint edition publication of the Newspapers. It contemplates "government action," and it still provides that the "Review-Journal shall exercise its best efforts to produce a jointly published newspaper" and that the Sun "shall not be less than two (2) pages." ECF No. 1028 at 33. The Court, therefore, can order the RJ to produce a joint edition of the Newspapers as required by Section 8.2 of the 1989 JOA while this case is pending. It would, therefore, be consistent with the Newspaper Preservation Act to order the RJ to continue publication and distribution of the Newspapers consistent with these provisions. What would not be consistent with the Newspaper Preservation Act would be a cancellation of publication and subsequent death of the Sun.

**VI.    CONCLUSION**

For the foregoing reasons, in addition to the mandatory injunctive relief pending in the Sun's Initial Motion, this Court should issue, on an emergency basis, a TRO and preliminary injunction based on the 1989 JOA that enjoins the RJ from ceasing to print and distribute the Sun during the pendency of this litigation. An Order resetting the hearing on the Sun's Initial Motion seeking mandatory injunctive relief, and the present Motion is also warranted.

DATED this 31st day of March, 2026.

CLARK HILL PLC


By: */s/ Kristen L. Martini*
    E. Leif Reid, Nevada Bar No. 5750
    Kristen L. Martini, Nevada Bar No. 11272
    Nicole Scott, Nevada Bar No. 13757
    1700 S. Pavilion Center Drive, Suite 500
    Las Vegas, Nevada 89135

    PISANELLI BICE PLLC
    James J. Pisanelli, Nevada Bar No. 4027
    Todd L. Bice, Nevada Bar No. 4534
    400 South 7th Street, Suite 300
    Las Vegas, Nevada 89101

    BROWNSTEIN HYATT FARBER
    SHRECK, LLP
    Jordan T. Smith, Nevada Bar No. 12097
    100 North City Parkway, Suite 1600
    Las Vegas, Nevada 89106

    ALIOTO LAW FIRM
    Joseph M. Alioto, Pro Hac Vice
    One Sansome Street, 35th Floor
    San Francisco, California 94104

    *Attorneys for Plaintiff/Counterdefendants*

11

**CERTIFICATE OF SERVICE**

I certify that I am an employee of CLARK HILL PLC, and I caused a true and correct copy of the foregoing **PLAINTIFF/COUNTERDEFENDANTS' *EMERGENCY* RENEWED MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION, AND *EMERGENCY* MOTION TO RESET HEARING ON SUN'S PENDING MOTION FOR PRELIMINARY INJUNCTION (ECF NO. 1040/1047)** to be served by electronically filing the foregoing with the CMECF electronic filing system which will send notice of electronic filing to:

J. Randall Jones, Esq.
Mona Kaveh, Esq.
KEMP JONES, LLP
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, NV 89169

Michael J. Gayan, Esq.
CLAGGETT & SYKES LAW FIRM
4101 Meadows Lane, Suite 100
Las Vegas, NV 89107

Amy M. Gallegos, Esq.
David R. Singer, Esq.
Andrew G. Sullivan, Esq.
Alison I Stein, Esq.
JENNER & BLOCK LLP
515 South Flower Street, Suite 3300
Los Angeles, CA 90071

Richard L. Stone, Esq.
850 Deveon Avenue
Los Angeles, CA 90024

DATED: March 31, 2026.

/s/  Kristen L. Martini
An Employee of Clark Hill PLC

12