E. LEIF REID, Nevada Bar No. 5750
KRISTEN L. MARTINI, Nevada Bar No. 11272
NICOLE SCOTT, Nevada Bar No. 13757
CLARK HILL PLC
1700 S. Pavilion Center Dr., Suite 500
Las Vegas, Nevada 89135
Tel: 702.862.8300
Fax: 702.778.9709
Email: lreid@clarkhill.com
kmartini@clarkhill.com
nsscott@clarkhill.com

JAMES J. PISANELLI, Nevada Bar No. 4027
TODD L. BICE, Nevada Bar No. 4534
PISANELLI BICE PLLC
400 South 7th Street, Suite 300
Las Vegas, Nevada 89101
Tel: 702.214.2100
Fax: 702.214.2101
Email: JJP@pisanellibice.com
        TLB@pisanellibice.com

JORDAN T. SMITH, Nevada Bar No. 12097
BROWNSTEIN HYATT FARBER
SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106
Tel: 702.464.7022
Fax: 702.382.8135
Email: jtsmith@bhfs.com

JOSEPH M. ALIOTO, *PRO HAC VICE*
ALIOTO LAW FIRM
One Sansome Street, 35th Floor
San Francisco, California 94104
Tel: 415.434.8900
Fax: 415.434.9200
Email: jmalioto@aliotolaw.com

*Attorneys for Plaintiff/Counterdefendants*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

LAS VEGAS SUN, INC., a Nevada corporation,

Plaintiffs,

v.

SHELDON ADELSON (Estate Of), an individual, and as the alter ego of News+Media Capital Group LLC, Las Vegas Review-Journal, Inc., and Interface Operations LLC dba Adfam; PATRICK DUMONT, an individual, and as alter ego of Las Vegas Review-Journal, Inc., News+Media Capital Group, LLC, and Interface Operations LLC dba Adfam; NEWS+MEDIA CAPITAL GROUP LLC,, a Delaware limited liability company; LAS VEGAS REVIEW-JOURNAL, INC., a Delaware corporation; INTERFACE OPERATIONS LLC dba ADFAM, a Delaware limited liability company and as the alter ego of Las Vegas Review-Journal, Inc., and News+Media Capital Gorup, LLC; and DOES I-X, inclusive,

Defendants.

Case No.: 2:19-CV-01667-ART-MDC

**PLAINTIFF'S MOTION FOR LEAVE TO MODIFY THE SCHEDULING ORDER AND AMEND AND SUPPLEMENT THE COMPLAINT (ECF NO. 621)**

LAS VEGAS REVIEW-JOURNAL, a Delaware corporation,

Counterclaimant,

v.

LAS VEGAS SUN, INC., a Nevada corporation; BRIAN GREENSPUN, an individual and as alter ego of Las Vegas Sun, Inc.; GREENSPUN MEDIA GROUP, LLC, a Nevada limited liability company, as the alter ego of Las Vegas Sun, Inc.,

Counterclaim Defendants.

Plaintiff Las Vegas Sun, Inc. ("Sun"), through its counsel of Clark Hill PLC, Pisanelli Bice PLLC, Brownstein Hyatt Farber Schreck, LLP, and Alioto Law Firm, moves the Court pursuant to Federal Rule of Civil Procedure 16(b)(4) and Local Rule 26-3, and Federal Rule of Civil Procedure 15(a)(2) and (d), for leave to modify the Scheduling Order and file its proposed Second Amended and Supplemental Complaint for Divestiture, Injunction, and Damages by Reason of Defendants' Violations of the Sherman Antitrust Act, the Clayton Antitrust Act, and the Nevada Unfair Trade Practices Act ("Second Am. Compl.").[1] The Sun's proposed Second Amended Complaint is attached as **Exhibit 1** to this Motion in accordance with LR 15-1(a).

This Motion is based on the following Memorandum of Points and Authorities, the attached **Exhibit 1**, and the pleadings and papers on file herein.

DATED this 6th day of April 1, 2026.

CLARK HILL PLC

By: /s/ *Kristen L. Martini*
E. Leif Reid, Nevada Bar No. 5750
Kristen L. Martini, Nevada Bar No. 11272
Nicole Scott, Nevada Bar No. 13757
1700 S. Pavilion Center Drive, Suite 500
Las Vegas, Nevada 89135

PISANELLI BICE PLLC
James J. Pisanelli, Nevada Bar No. 4027
Todd L. Bice, Nevada Bar No. 4534
400 South 7th Street, Suite 300

[1] This Motion is filed in accordance with this Court's minute order (ECF No. 1112) issued after the April 3, 2026, Status Conference.

ii

Las Vegas, Nevada 89101

BROWNSTEIN HYATT FARBER SHRECK, LLP
Jordan T. Smith, Nevada Bar No. 12097
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106

ALIOTO LAW FIRM
Joseph M. Alioto, Pro Hac Vice
One Sansome Street, 35th Floor
San Francisco, California 94104

*Attorneys for Plaintiff/Counterdefendants*

iii

**<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>**

**I.      INTRODUCTION**

On August 4, 2025, the Ninth Circuit issued its Opinion in the RJ's interlocutory appeal. The Opinion has a profound, but not dispositive, impact on the landscape of this case as it moves forward. In sum and substance, the Ninth Circuit rejected all existing caselaw, DOJ Regulations, and the DOJ's and NPA lawyers' longstanding practices and beliefs that existed prior to that point in time. In short, the Ninth Circuit said, for the first time anywhere, that even amendments to previously approved, post-1970 JOAs needed Attorney General approval under 15 U.S.C. § 1803(b). It thereby concluded that because the 2005 JOA "did not receive the required 'prior written consent of the Attorney General,' the 2005 JOA is unlawful and unenforceable." *Las Vegas Sun, Inc. v. Adelson*, 147 F.4th 1103, 1121 (9th Cir. 2025). Needless to say, this ruling was a significant intervening change in the law.

Importantly, the Ninth Circuit's Opinion did not end this case. Even with the Ninth Circuit's ruling, the unenforceability of the 2005 JOA cannot function to end the joint operation under any circumstance, or absolve the RJ of liability for the litany of anticompetitive conduct it has undertaken in violation of the Sherman Act. The Ninth Circuit most recently confirmed, "We reiterate, however, that we do not have before us any issue concerning a reversion to the 1989 JOA, and we express no views on any such questions." ECF No. 1106 at 7.

The Ninth Circuit's Opinion imposed upon the Sun the obligation to conform its pleadings to comport with this new law. That is what the Sun seeks now. The Sun comes to the Court requesting leave to file an amended and supplemental pleading to take into consideration the impact of this new law on the Sun's existing claims and allegations previously presented in its operative First Amended Complaint (ECF No. 621). To be clear, for its amended allegations, the Sun does not offer new facts, circumstances, or antitrust claims that were not already the subject of discovery or that this Court has not already considered. In making its amendment, the Sun updates its allegations to conform to the evidence, which this Court already specifically analyzed at summary judgment: there is nothing in the amendments contained in the Sun's proposed Second Amended Complaint that this Court has not read before. *See id.* The Sun's proposed amendment alleges the

1

same antitrust claims for relief, the same relevant market, the same anticompetitive conduct, and the same antitrust injury that the parties have been litigating for nearly seven years. This Court is vastly familiar with all of it. *See* ECF No. 970; *see also* ECF Nos. 836, 870, 902.

And now, given the recent change in the law resulting from the Ninth Circuit's Opinion and the flurry of events that have transpired since—all of which have been subject to vast briefing before this Court—the Sun likewise seeks leave to merely supplement its pleading to address the recent change in the law, the RJ's new conduct undertaken in furtherance of its anticompetitive scheme that is already the subject of the Sun's operative pleading, and a declaratory relief claim with a supporting request for injunctive relief to prevent the RJ from permanently eliminating the Sun from the market as a result of the RJ's conduct over the last six weeks. Like its amended allegations, the Sun's proposed supplemental allegations are nothing new to the RJ or this Court. The parties have briefed these issues numerous times over the last month and a half in dozens of filings.

Nor is there any serious argument that the Sun has acted in any way but expeditiously and in good faith in bringing this Motion. Because each of the factors under Rules 15, 16, and Local Rule 26-3 favor the Sun, an Order granting the Sun's Motion is warranted.

## II.    STATEMENT OF THE RELEVANT FACTS

The Sun filed its complaint initiating this action on September 24, 2019. ECF No. 1. The RJ moved to dismiss under Rule 12(b)(6), which this Court denied as to the Sun's Section 2 claims under the Sherman Act on November 30, 2020. *See* ECF No. 243. When the parties entered the discovery phase on the Sun's claims for monopolization, attempted monopolization, and alter ego, and the RJ's subsequent counterclaims, the written discovery proved expansive. This, together with the substitution of the Magistrate Judge, led this Court to vacate all case deadlines and appoint a special master. *See, e.g.*, ECF Nos. 383, 389-391, 393. On May 3, 2021, the amended Scheduling Order set December 23, 2021, as the "Last Day to Amend Pleadings for all parties." ECF No. 393 at 3.

Before the December 23 deadline expired, the Sun sought leave to amend and supplement its complaint to add Defendant Interface Operations LLC, dba Adfam ("Adfam"), and a Section 1

ClarkHill\105559\1015963\287259794.v1-4/6/26

claim under the Sherman Act. *See* ECF Nos. 537/539 (FUS). The Sun's request was based on new evidence uncovered in discovery. *Id.* This Court granted the Sun's motion for leave to file its first amended complaint on March 18, 2022 (ECF No. 619), which the RJ subsequently moved to dismiss under Rule 12(b)(6). *See generally* ECF No. 632. While the RJ's Rule 12 motion was pending, the parties continued with written discovery, fact depositions, and expert discovery. They explored at length the Sun's claims under Sections 2 and 1 of the Sherman Act, and the Nevada Unfair Trade Practices Act. Their discovery on these claims involved the Sun's alleged relevant market, the economic competition between the Newspapers, and the Sun's antitrust injury (among all other aspects). The parties also engaged in fulsome discovery on the RJ's counterclaims and affirmative defenses challenging the enforceability of the 2005 JOA under Section 1803(b) of the NPA, which encompassed the 1989 and the 2005 JOAs (including issues surrounding the material elements of the 1989 JOA that continued on in the 2005 JOA), the DOJ's investigations of both JOAs, and whether the 2005 JOA was a novation. All of these issues accumulated before the Court at summary judgment. *See*, *e.g.*, ECF Nos. 829, 843. Both parties cross-moved for summary judgment on the enforceability of the 2005 JOA. *See id.* The RJ coincidingly moved to dissolve the five-year-old Stipulated Order to Maintain Status Quo where it agreed, in part, to "refrain from taking any non-judicial steps to terminate the 2005 JOA until after the entry of final judgment … permitting such termination." ECF No. 853; *see also* ECF No. 13.

On March 31, 2024, this Court entered its Order (in relevant part) on the RJ's pending motion to dismiss, the parties' cross-motions for summary judgment, and the RJ's motion to dissolve the stipulated order. ECF No. 970. Importantly, the Court denied: (1) the RJ's motion to dismiss the Sun's Section 1 claim; (2) the RJ's request for summary judgment on the enforceability of the 2005 JOA, that the 2005 JOA was a novation of the 1989 JOA, and the Sun's antitrust injury; and (3) the RJ's motion to dissolve. *See id.* This Court denied the RJ's motion to dissolve on the same basis that it denied the RJ's cross-motion for summary judgment on the enforceability of the 2005 JOA (and granted summary judgment in favor of the Sun). ECF No. 970 at 19. The RJ filed an interlocutory appeal to the Ninth Circuit on the Court's denial of the RJ's motion to dissolve. ECF No. 972.

3

On August 4, 2025, the Ninth Circuit issued its Opinion in the RJ's appeal. *Adelson*, 147 F.4th 1103. The Ninth Circuit rejected all existing caselaw, the DOJ Regulations (including 28 C.F.R. § 48.1), and the DOJ's and NPA lawyers' longstanding practices and beliefs to conclude that even amendments to previously approved, post-1970 JOAs needed Attorney General approval under 15 U.S.C. § 1803(b). It therefore concluded that because the 2005 JOA "did not receive the required 'prior written consent of the Attorney General,' the 2005 JOA is unlawful and unenforceable." *Id.* at 1121. The Sun petitioned to the United States Supreme Court for a writ of certiorari. On February 23, 2026, the Supreme Court denied the Sun's petition. No. 25-697, 2026 WL 490865 (U.S. Feb. 23, 2026). The same day, the Sun filed its *Emergency* Motion for Temporary Restraining Order and Preliminary Injunction ("*Emergency* Mot."). *See, e.g.*, ECF No. 1062. The Sun's *Emergency* Motion set off a flurry of filings.

Eighty-five docket entries have been entered in this case since the Sun's February 23 motion. *See* ECF Nos. 1024-1109. A high-level summary of what has transpired since the Sun's February 23, 2026, includes:

- this Court's March 12 Order granting the Sun's *Emergency* Motion in part while holding the Sun's other requests for injunctive relief in abeyance to be heard at an evidentiary hearing (*see* ECF No. 1040/1047; ECF No. 1096);
- the Sun's initial request for leave to modify the scheduling order and amend and supplement its first amended complaint (ECF No. 1065);
- the RJ's Petition for Writ of Mandamus to the Ninth Circuit on this Court's March 12 injunction; the RJ's request to stay the entirety of these proceedings and this Court's order granting the stay and vacating the evidentiary hearing on the Sun's *Emergency* Motion (ECF Nos. 1099, 1100);
- the Ninth Circuit's granting of the RJ's request for mandamus, requiring reversal of the March 12 injunction for being predicated on the 2005 JOA (ECF No. 1106);
- the Sun's Renewed *Emergency* Motion for Temporary Restraining Order and Preliminary Injunction and *Emergency* Motion to Reset Hearing on Sun's Pending Motion for Preliminary Injunction [ ] (ECF No. 1103-05);

- this Court's Order vacating the March 12 injunction pursuant to the Ninth Circuit's order and directing the parties to appear before the Court for a status conference on these and other pending motions on April 3, 2026 (ECF No. 1109);

- the RJ ceasing to print and distribute the Sun on April 3, 2026, excluding it from the market entirely;

- and this Court's Order at the April 3, 2026, status conference allowing the Sun to withdraw its prior motion to modify and amend and supplement (ECF No. 1065) with a new proposed Second Amended and Supplemental Complaint no later than 10:00 a.m. today. *See* ECF No. 1112.[2]

The Sun contemporaneously files its Notice of Withdrawal of its previous Motion for Leave to Modify Scheduling Order and Amend and Supplement the Complaint [ ] (ECF No. 1065). This Motion now follows.

## III.    GOVERNING LEGAL STANDARDS

When a motion to amend or supplement is filed after the court's deadline set forth in its scheduling order, the moving party must first satisfy the "good cause" standard established by Rule 16(b)(4). *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992); *see also Desio v. State Farm Mut. Auto. Ins. Co.*, 339 F.R.D. 632, 640 (D. Nev. 2021) (concluding that the deadline established in scheduling orders for amending pleadings equally applies to supplements). Federal Rule of Civil Procedure 16(b)(4) provides, "A schedule may be modified only for good cause and with the judge's consent." Rule 16(b)(4)'s good cause standard "primarily considers the diligence of the party seeking the amendment." *Johnson*, 975 F.2d at 609. While prejudice is a consideration, this analysis focuses on the moving party's "reasons for seeking modification." *EB Holdings II, Inc. v. Illinois Nat'l Ins. Co.*, 2021 WL 12348633, at *1 (D. Nev. Sept. 20, 2021).

Local Rule 26-3 adds that a party filing a motion for leave to amend or supplement after the

---

[2] Providing, "The Plaintiff has up to 10:00 a.m. on Monday, April 6, 2026, to withdraw the current Plaintiff's Motion for Leave to Amend and Supplement the Complaint [ECF No. 621] (ECF No. [1065]) and refile the motion for leave to amend, with the new proposed amended complaint attached, or alternatively, advise the Court if the Plaintiff rests on its current filed motion for leave to amend (ECF No. 1065)."

ClarkHill\105559\1015963\287259794.v1-4/6/26

scheduling order's deadline must show "excusable neglect." *E.g.*, *Fed. Hous. Fin. Agency v. Saticoy Bay, LLC*, 2024 WL 2801492, at *2 (D. Nev. May 30, 2024); *Branch Banking & Trust Co. v. DMSI, LLC*, 871 F.3d 751, 764-65 (9th Cir. 2017). Excusable neglect under Local Rule 26-3 requires this Court to analyze factors that include: "(1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *EB Holdings II*, 2021 WL 12348633, at *1 (citation omitted). The Court's decision to modify the scheduling order falls within its sound discretion. *E.g.*, *Brown v. Clark Cnty. Det. Ctr.*, 2018 WL 1457292, at *3 (D. Nev. Mar. 23, 2018).

Upon finding that the requisite showing to modify the scheduling order is satisfied, the Court will then turn to whether leave to amend or supplement is proper under Rule 15(a) and/or 15(d). The decision to grant leave to amend and/or supplement a pleading is also subject to this Court's broad discretion. *LT Intern. Ltd. v. Shuffle Master, Inc.* 8 F. Supp. 3d 1238, 1250 (D. Nev. 2014) (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)); *Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir. 1988). In exercising its discretion, courts are guided by the purposes of Rule 15(a) and 15(d). *See United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981) (finding that "a court must be guided by the underlying purpose of Rule 15" in exercising its discretion when deciding to grant leave).

Rule 15(a)(2), governing amendments sought with leave of court,[3] is "to facilitate decision on the merits, rather than on the pleadings or technicalities." *E.g.*, *Webb*, 655 F.2d at 979. This purpose directs that leave to amend should "be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quotations omitted); Fed. R. Civ. P. 15(a) (providing that "[t]he court should freely give leave when justice so requires"); *see also Foman*, 371 U.S. at 182 ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.") (quotations omitted).

---

[3] Federal Rule of Civil Procedure 15(a) addresses amendments before trial and reads, "In all other cases [*i.e.*, not an amendment as a matter of course], a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."

6

Rule 15(d), governing supplements (which set forth new facts that have occurred after the filing of the original pleading to bring the case up to date[4]), is "a tool of judicial economy and convenience" "'to minimize technical obstacles to a determination of the controversy on its merits.'" *Keith*, 858 F.2d at 473, 475-76 (quoting *United States ex rel. Atkins v. Reiten*, 313 F.2d 673, 675 (9th Cir. 1963)). Like amendments under Rule 15(a)(2), the Ninth Circuit has concluded that allowing supplemental pleadings is "favored" and Rule 15(d) is to be liberally construed. *Id.* at 473, 475.

The legal standard governing motions to amend under Rule 15(a)(2) and motions to supplement under Rule 15(d) are the same. *E.g.*, *Desio*, 339 F.R.D. at 638 n.9. Therefore, in the absence of (1) undue delay, (2) bad faith or dilatory motive on the movant's part, (3) prejudice to the opposing party, (4) the futility of the amendment or supplement, or (5) repeated failure of previous amendments or supplements, leave should be granted. *Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (9th Cir. 2014); *Desio*, 339 F.R.D. at 638 n.9. The opposing party bears the burden of showing why leave to amend or supplement is not proper. *EB Holdings II, Inc.*, 2021 WL 12348633, at *2.

## IV. AN ORDER MODIFYING THE SCHEDULING ORDER AND GRANTING THE SUN LEAVE TO AMEND AND SUPPLEMENT IS WARRANTED

Leave to modify the scheduling order and to amend and/or supplement a pleading must be decided upon facts and circumstances of each particular case. *See Caddy-Imler Creations, Inc. v. Caddy*, 299 F.2d 79, 84 (9th Cir. 1962). Against the backdrop of the Ninth Circuit's intervening change of law in this case, the analyses applicable to the Sun's request to modify the scheduling order under Rule 16(b)(4) and Local Rule 26-3, and leave to amend and supplement under Rule 15(a) and (d), are satisfied. Because the deadline for the Sun to amend (and supplement) its pleading expired on December 23, 2021 (ECF No. 393 at 3), the Sun first discusses good cause and excusable neglect necessary to modify the Scheduling Order, before turning to the propriety of the Sun's

---

[4] *Kroll v. Incline Vill. Gen. Imp. Dist.*, 598 F. Supp. 2d 1118, 1124 (D. Nev. 2009); Fed. R. Civ. P. 15(d) (providing, in pertinent part, "[T]he court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense.").

requests under Rule 15.

### A.      Modification of the Scheduling Order

As explained below, the Sun satisfies the good cause standard because it has been diligent in seeking to modify the Scheduling Order. The intervening change in the law is the "reason" for the Sun's modification request, which evidences the Sun's diligence under the good cause standard for Rule 16(b)(4), and also satisfies the third factor (the reason for delay) of the excusable neglect standard under Local Rule 26-3. The Sun addresses both of these factors together in subsection IV(A)(1) below. Similarly, as the first factor (danger of prejudice) in the excusable neglect standard under Local Rule 26-3 naturally coincides with the second excusable neglect factor (the length of delay and its potential impact on the proceedings), the Sun discusses them in tandem in subsection IV(A)(2). As for the fourth excusable neglect factor (good faith), the Sun makes that showing in subsection IV(A)(3). Each of these factors favor the Sun's request.

### 1.      The Sun has Been Diligent, Particularly Given the Reason for Delay in Seeking Modification

"[T]he benchmark of good cause" to modify a scheduling order under Rule 16(b)(4) is whether the moving party acted with diligence to meet the deadline previously set by the court. *EB Holdings II, Inc.*, 2021 WL 12348633, at *2; *Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002). This consideration must "take[ ] account of all relevant circumstances surrounding the party's omission." *Saticoy Bay, LLC*, 2024 WL 2801492, at *2.

District courts in this Circuit have commonly recognized that an intervening change in the law is a circumstance that satisfies Rule 16(b)(4)'s good cause standard. *E.g.*, *Velez v. Foresters Life Ins. & Annuity Co.*, 2025 WL 3691474, at *2 (C.D. Cal. Dec. 11, 2025) ("Courts find good cause when the amendment is based on new or previously unavailable information, such as a change in controlling law."); *Cryer v. Idaho Dep't of Lab.*, 2018 WL 3636529, at *2 (D. Idaho July 30, 2018) ("Fed. R. Civ. P. 1. Rule 16(b) clearly contemplates that changes in law … may justify later amendments to a complaint."); *see also Boorman v. Nevada Mem'l Cremation Soc'y, Inc.*, 772 F. Supp. 2d 1309, 1317 (D. Nev. 2011) (concluding that the plaintiff's request to file a fourth amended complaint was not unduly delayed where the plaintiffs' "claims raise[d] novel issues which required

this Court to certify questions to the Nevada Supreme Court for guidance" and the plaintiffs "promptly amended following the Nevada Supreme Court's Opinion" to correct their claims in accordance with the law). In similar fashion, the Ninth Circuit has recognized, "It is common practice to allow plaintiffs to amend their pleadings to accommodate changes in the law…." *E.g., Doe I v. Nestle USA, Inc.*, 766 F.3d 1013, 1028 (9th Cir. 2014); *Wilcox v. First Interstate Bank of Oregon, N.A.*, 815 F.2d 522, 530 (9th Cir. 1987) ("We conclude that, instead of sorting out the various possible interpretations attributable to the pleadings, the [plaintiffs] should be given the opportunity to amend their pleadings to conform with our recent decisions."); *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117-18 (9th Cir. 2013) (courts may grant leave to amend in "situations where the controlling precedents changed midway through the litigation"). Even where an issue was one of "first impression" in the jurisdiction, it is still a change in the law. *Boorman*, 772 F. Supp. 2d at 1317 (rejecting argument that issue of first impression decision was not a change in the law warranting leave to amend).

The Sun's request for modification is prompted by the Ninth Circuit's Opinion that changed the law. Its ruling split from half a century of caselaw throughout the country, DOJ Regulations, and the DOJ's, the parties', and JOA lawyers' practices. Before the Ninth Circuit's Opinion, all courts addressing this issue, including this Court, established that amendments to previously approved, post-1970 JOAs were valid and enforceable without Attorney General signature. *See* ECF No. 970 16-17, 19 (discussing cases). The DOJ's Regulation directing the same (28 C.F.R. § 48.1) had survived challenge for 51 years. The evidence presented in this case showed that in the history of the NPA, no prior amendment to a previously approved, post-1970 JOA had ever undergone the application procedures for Attorney General approval. *See*, *e.g.*, ECF No. 836 at 11; ECF No. 902 at 18 n.10; ECF No. 907-24. The Sun and the RJ both understood the law to be as such. ECF No. 970 at 17. And the DOJ and NPA lawyers practiced under this procedure for decades. *Id.*; *see also* ECF No. 836 at 11-13. This Court agreed, and granted the Sun's cross-motion for summary judgment on this issue as a result. *See* ECF No. 970 at 18-19. Therefore, when the Ninth Circuit considered the issue on the RJ's interlocutory appeal (an issue of first impression in this Circuit), it departed from all existing law and practice to declare that even amendments to

9

previously approved, post-1970 JOAs needed Attorney General approval, and they were unlawful without it. *See Adelson*, 147 F.4th 1103. This was a dramatic, intervening change in the law. It supports a finding of good cause. *See, e.g.*, *Velez*, 2025 WL 3691474, at *2; *Cryer*, 2018 WL 3636529, at *2.

Furthermore, the Sun's promptness in filing this Motion evidences its diligence. The Ninth Circuit issued its mandate on February 25, 2026. ECF No. 1063. Five days later, the Sun first requested modification of the Scheduling Order. ECF No. 1065. Such immediacy "after the [mandate issued] shows diligence" in seeking modification. *See*, *e.g.*, *Velez*, 2025 WL 3691474, at *2 (concluding that seeking modification and leave to amend two weeks after the court issued its mandate satisfied the diligence requirement); *Saticoy Bay, LLC*, 2024 WL 2801492, at *2 (concluding that despite that the amendment deadline ran four years earlier, where the reason for the delay consists of an intermittent change in the law, the near three-month delay is excusable); *see also Boorman*, 772 F. Supp. 2d at 1317 (concluding that where the plaintiffs "promptly amended [their pleading] following the Nevada Supreme Court's Opinion" to correct their claims in accordance with the law there was no undue delay). Because the Sun "could not have met the [December 23, 2021] deadline, no matter how diligently [it] may have acted, given that the appellate court ruling[ ] came out years later," the Sun satisfies both the good cause standard under Rule 16(b)(4), and the third "reason for delay" excusable neglect factor under Local Rule 26-3. *See Saticoy Bay, LLC*, 2024 WL 2801492, at *2.

### 2.   There is No Danger of Prejudice to the RJ

When considering the first prejudice factor for excusable neglect, in cases where discovery has already been completed (like this case), this Court has simultaneously analyzed the second excusable neglect factor, "length of delay and its potential impact on the proceedings." *Chowning v. Nationwide Ins. Co. of Am.*, 2025 WL 3089766, at **5, 8 (D. Nev. Nov. 4, 2025). And in this context, "[p]rejudice requires greater harm than simply that relief would delay resolution of the case." *Id.* (alteration in original); *see also Montes v. Bank of Am.*, 2014 WL 1340232, at *3 (D. Nev. Apr. 3, 2014) ("The Ninth Circuit has repeatedly stated that the prejudice must be 'substantial.'") (collecting cases). "Neither delay resulting from the proposed amendment nor the

10

prospect of additional discovery needed by the non-moving party in itself constitutes a sufficient showing of prejudice." *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1158 (N.D. Cal. 2010). Thus, even if discovery has closed and supplemental discovery limited to a new component addressing the change in the law is needed, "[c]ourts routinely find no prejudice where amendment does not radically shift the case or require significant new discovery." *E.g.*, *Velez*, 2025 WL 3691474, at *5; *Pizana v. SanMedica Int'l LLC*, 345 F.R.D. 469, 483-84 (E.D. Cal. 2022) (finding no prejudice where the amendment did not fundamentally alter the case and additional discovery would be limited). This Court has gone further to hold that when a plaintiff's "claims factually have not changed" but "merely have altered legal theories" in light of a clarification of the law, the defendant does not suffer prejudice. *Boorman*, 772 F. Supp. 2d at 1317. And the Ninth Circuit has gone as far as establishing that it "is not fatal to amendment" on the sole basis that "new claims set forth in the amended complaint would have greatly altered the nature of the litigation and would have required defendants to have undertaken, at a late hour, an entirely new course of defense." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). The Sun's addition of its Declaratory Relief claim does not raise new factual issues either—the facts are set forth in the record, where the RJ's positions and ceasing to print and distribute the Sun are explicitly the subject of the flurry of filings since February 23. Applying the law in this Circuit, the RJ will not suffer prejudice, let alone the required "substantial" prejudice, from this Court's grant of the Sun's request.

Modifying the Scheduling Order will neither prejudice the RJ nor substantially delay or impact these proceedings. No trial date has been set in this case. Although discovery has closed, the Sun's proposed Second Amended Complaint does not seek to add new parties, additional antitrust claims, or otherwise seek to expand the scope of the case. *Compare* ECF No. 621 *with* **Ex. 1**; *see also* ECF No. 1062. The Sun's proposed pleading alleges the same antitrust claims, anticompetitive conduct, relevant market, and antitrust injury that the parties have been litigating for nearly seven years—all with which this Court is intimately familiar. *See* ECF No. 970.

The Sun's Second Amended Complaint merely supplements its allegations to address the RJ's efforts to obtain the Ninth Circuit's Opinion, what the Opinion held, and the RJ's subsequent

11

conduct after that Opinion, which played out in the Sun's *Emergency* Motions for injunctive relief to bring the factual history of the case current. This includes the Sun's declaratory relief claim triggered by the RJ's threat to eliminate the Sun from the market, which elimination has since been accomplished.

For the Sun's proposed amendments to the pleading, they only consist of allegations to explain how the Sun's existing claims for relief survive despite the Ninth Circuit's Opinion, and amendments to its existing allegations to conform to the facts and evidence that the parties have extensively litigated and that this Court specifically analyzed when ruling on the parties' cross-motions for summary judgment. None of the Sun's amended allegations are new to the RJ or this Court. They relate to the same conduct, transactions, and occurrences alleged in the Sun's first amended complaint. And the parties have already conducted discovery on these issues.

To elaborate, the parties already performed discovery encompassing the Sun's antitrust claims. *See* ECF No. 1065 at 2-3. The parties undertook extensive discovery regarding the Sun's alleged relevant market,[5] the economic competition between the Newspapers,[6] and the Sun's antitrust injury.[7] The RJ's experts have already opined on these exact issues. *See, e.g.*, ECF No. 860 at 3APP_000497-661. The parties cross-moved for summary judgment. *E.g.*, ECF No. 845 at 25-38, ECF No. 857 at 42-47. And this Court's order related to the same should stand. ECF No. 970. For the Sun's declaratory relief claim, this information is set forth in the parties' filings. And the enforceability of the 2005 JOA and reversion was litigated throughout the entirety of this case, where the parties briefed the issue numerous times. *See* ECF No. 40 at 24, 39; ECF No. 50 at 9, 11; ECF No. 61 at 8. The topic of reversion was also a subject of fact witness depositions, the Sun's accounting expert witness's reports, and the parties' expert depositions, since the Sun alleged reversion as an affirmative defense to the RJ's counterclaim for declaratory relief. *See* ECF No. 902 (citing 2SRA457-59, 463-64, 471, 479-80; 2SRA488-89); *see also* ECF No. 861 at 28-29. The reversion issue, too, was briefed at length during summary judgment. *See, e.g.*, ECF No. 836 at iii,

---

[5] *See* **Ex. 2** (Request Nos. 3, 5-8, 12-14, 91, 133, 165); **Ex. 3** (Request Nos. 9-11); **Ex. 4** (Request Nos. 178-79, 181).

[6] *See* **Ex. 2** (Request Nos. 60, 61, 66, 68, 106-07, 133-35); **Ex. 3** (Request Nos. 180, 184).

[7] *See* **Ex. 2** (Request Nos. 34, 66, 67, 68, 69, 90, 160, 162).

12

2, 7, 15, 22, 24, 32, 49; ECF No. 871 at 21-22.

To the extent that any further discovery will be necessary on the Sun's damages, all of the underlying information has already been produced in this case. Any new information is also within the RJ's exclusive control. Any further discovery on this point can and will be narrowly tailored and will not be the herculean task that the RJ has previously overstated. To be clear, there are no new parties and there are no additional antitrust claims in the Second Amended Complaint. There are no new individuals with knowledge.[8] There are no new documents to unearth.[9]

While the Sun expects that supplementation of its expert reports would be required to address the intervening change in law, the potential need for supplementary discovery (such as depositions of experts regarding their updated reports) would necessarily be limited and appropriately tailored. And the Sun is willing to undertake and accomplish any supplemental discovery within a timeframe that this Court deems is reasonable and just.

The law does not recognize prejudice to the RJ under these circumstances, and granting modification would have minimal impact on these proceedings. Again, a trial date has yet to be set. The present circumstances satisfy the first "danger of prejudice" and the second "the length of delay and its potential impact on the proceedings" factors under the excusable neglect standard.

### 3. The Sun's Motion is Made in Good Faith

When a plaintiff seeks leave to amend or supplement, as the Sun now does, "because of a recent change in law, … the good faith factor weighs in plaintiff's favor." *Est. of Browning v. Las Vegas Metro. Police Dep't*, 2023 WL 3340880, at *2 (D. Nev. May 10, 2023); *see also infra* § IV(B)(1) (further establishing the absence of bad faith or dilatory motive). Clearly, the Sun's Motion is brought in good faith given the circumstances of this case and the impact of the Ninth Circuit's change in the law, and the RJ's conduct undertaken in the six weeks following that

---

[8] The RJ already asked broadly and received answers which individuals have knowledge of the Sun's antitrust claims and have knowledge of damages. *See* **Ex. 5** (Interrogatory Nos. 9 & 10).

[9] In addition to the antitrust discovery already conducted discussed in nn.5-7, the RJ requested and received documents and communications with or related to the DOJ (*see* **Ex. 2 (**Request Nos. 77-79, 173) & **Ex. 4 (**Request Nos. 197-198)), and documents and communications between the Sun and RJ regarding the 2005 JOA enforceability and amendments. *See* **Ex. 2** (Request Nos. 38, 76, 80) & **Ex. 4** (Request No. 173).

13

Opinion.

* * * * *

In summary, the Sun has shown that good cause under Rule 16(b)(4) exists to modify the Scheduling Order. And, with all excusable neglect factors also favoring the Sun's request, an Order modifying the Scheduling Order is warranted.

**B.    Leave to Amend and Supplement**

Having established good cause and excusable neglect to modify the Scheduling Order and now turning to the Rule 15 factors, no basis exists to deny the Sun leave to amend and supplement its pleading. The same reasons evidencing the Sun's diligence in seeking to modify the Scheduling Order establish that the first factor (undue delay) under Rule 15 is absent. *See supra* § IV(A)(1). Similarly, because of the lack of prejudice to the RJ and the minimal impact on the proceedings if this Court modified the Scheduling Order—factors one and two in the excusable neglect standard under Local Rule 26-3—the same analysis demonstrates the lack of prejudice (factor three) under Rule 15. *See supra* § IV(A)(2). As discussed below, the balance of the remaining Rule 15 factors (bad faith or dilatory motive, futility, and repeated failures of previous amendments) are not present. The Sun's requested leave to amend and supplement is proper and should be granted.

**1.    No Bad Faith or Dilatory Motive Exist**

"In the context of a motion for leave to amend, bad faith [and/or dilatory motive] means acting with intent to deceive, harass, mislead, delay, or disrupt." *Chowning v. Nationwide Ins. Co. of Am.*, 2025 WL 3089766, at *9 (D. Nev. Nov. 4, 2025) (quotations omitted). It requires a state of mind "impl[ying] the conscious doing of a wrong because of dishonest purpose or moral obliquity." *Silvano v. Circa Hosp. Grp. III LLC*, 2025 WL 1433386, at *1 (D. Nev. May 16, 2025) (quotations omitted). The principal concern is gamesmanship. *Id.* But "when a plaintiff can provide a satisfactory explanation for its delay, and there is no evidence in the record that would indicate wrongful motive, there is no cause to uphold the denial of a leave to amend on the basis of bad faith." *E.g.*, *Silvano v. Circa Hosp. Grp. III LLC*, 2025 WL 1433386, at *1 (D. Nev. May 16, 2025) (quotations omitted).

Nothing in the record indicates that the Sun's instant request to amend and supplement is

14

made in bad faith or is incited by dilatory motive. What the record instead confirms is the parties engaged in a years-long dispute over a legal issue that resulted in an intervening change in the law sought by the RJ. When a plaintiff's claims "raise novel issues" to this jurisdiction that are reviewed at the appellate level, after which the plaintiff promptly seeks leave to amend or supplement following the mandate, no bad faith or dilatory motive exists to preclude leave. *Boorman*, 772 F. Supp. 2d at 1317. This is precisely what happened here.

And the Sun was not required to plead around the RJ's affirmative defenses that the 2005 JOA was unenforceable, or a potential change in 50 years of established law. *See U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*, 931 F.3d 966, 972 (9th Cir. 2019) ("Rule 8 does not require plaintiffs to plead around affirmative defenses."); *see also* ECF No. 243 at 7 ("The first and primary argument raised by the RJ Defendants is an affirmative defense—that the 2005 JOA is illegal and unenforceable under the NPA because the 2005 JOA was not approved by the United States Attorney General."). Nor was the Sun required to proactively adjust its pleading because of a potential change in the law. *Estate of Browning v. Las Vegas Metro. Police Dept.*, 2023 WL 3340880, at *2 (D. Nev. May 10, 2023) ("While it is true that plaintiff could have brought claims pursuant to the Nevada Constitution prior to the *Mack* decision, plaintiff should not be prejudiced for drafting a precise and targeted complaint, based on the law at the time. The alternative would incentivize plaintiffs to always take a 'kitchen sink' approach of listing every conceivable claim, even if the law or the facts do not provide strong support for bringing the claim."); *Velez v. Foresters Life Ins. and Annuity Co.*, 2025 WL 3691474, at *4 (C.D. Cal. Dec. 11, 2025) ("Here, the Court stayed this case pending Ninth Circuit's clarification on the governing legal standard under the Statutes. On June 27, 2024, one week after *Siino* issued its mandate, the Court lifted the stay. On July 10, 2025, two weeks after *Siino* issued its mandate, Velez moved for leave to amend. Velez's prompt action after the stay lifted shows diligence and forecloses any argument that the change in the law was foreseeable or that she unduly delayed her amendment.") (internal citations omitted).

The Sun's complaint was properly plead in accordance with caselaw, DOJ Regulations, and the DOJ's, NPA lawyers', and JOA newspapers' practice—as also understood by both the Sun and

15

ClarkHill\105559\1015963\287259794.v1-4/6/26

the RJ. The RJ cannot demonstrate bad faith or dilatory motive to preclude leave to amend and supplement.

### 2. The Sun's Amendment and Supplement is Not Futile

"Denial of leave to amend on [futility grounds] is rare." *Saticoy Bay, LLC*, 2024 WL 2801492, at *3 (quotations omitted). Under the futility consideration, courts apply the same test applied to Rule 12(b)(6) motions. They will accept the amended and/or supplemental pleading's "factual allegations as true and construe them in [the plaintiff's] favor in deciding whether the allegations constituted a set of facts that could possibly establish" a claim. *Thompson v. Los Robles Reg'l Med. Ctr.*, 2021 WL 5002214, at *1 (9th Cir. Oct. 28, 2021); *Warren v. Cardoza Publ'g Co.*, 2018 WL 6566537, at *2 (D. Nev. Sept. 19, 2018). In other words, "courts will refrain from construing or opining on the merits or likelihood of success of the amendments." *Thompson*, 2021 WL 5002214, at *1. The preferred practice of deferring a ruling on the sufficiency of the allegations in a proposed amendment is guided by "the more liberal standards applicable to motions to amend [or supplement] and the fact that the parties' arguments are better developed through a motion to dismiss or motion for summary judgment." *E.g.*, *GMAC Mortgage, LLC v. Nev. Ass'n Servs., Inc.*, 2018 WL 487101, at *2 (D. Nev. Jan. 2, 2018); *Neche, LLC v. Allied Ins. Co. of Am.*, 2020 WL 870224, at *2 (D. Nev. Feb. 21, 2020); *see also Keith*, 858 F.2d at 473, 475 (providing that leave to supplement pleadings is "favored" and Rule 15(d) is to be liberally construed).

The RJ cannot show that, under this standard and given the purposes of Rule 15(a) and (d), the Sun's proposed Second Amended Complaint sets forth no set of facts that could possibly establish a valid claim. The proposed amended and supplemental allegations not only arise out of the same conduct, transactions, and occurrences as the Sun's operative complaint (and the Sun's original complaint), but they have been litigated in this case the entire time. The standard for leave to amend is nowhere near the standard employed at summary judgment let alone for a likelihood of success factor for preliminary injunctive relief (and the Court should refrain from construing or opining on the merits or likelihood of success when resolving the Sun's current request). The Sun's antitrust claims for relief survived not only two separate Rule 12(b)(6) motions filed by the RJ (*see* ECF Nos. 243, 970), but also the RJ's motion for summary judgment (ECF No. 970), *and* the Court

16

already found that the Sun satisfied its showing under the likelihood of success factor when granting the Sun's initial *Emergency* Motion (which findings were not disturbed by the Ninth Circuit's mandate order). ECF No. 1096; ECF No. 1106. This is conclusive. The Sun's Second Amended Complaint cannot be futile under Rule 15.[10]

The RJ has attempted to resurrect its novation arguments in its recent filing. However, this Court already concluded that the 2005 JOA did not operate expressly or impliedly as a novation of the 1989 JOA. ECF No. 970 at 18. It further concluded that "the material elements of the 1989 JOA that eliminated price and other non-editorial and non-reportorial competition, elements previously approved by the Attorney General, remain unchanged." *Id.* This Court examined the Sun's relevant market and all requirements for the Sun's antitrust injury, including that the RJ's conduct was anticompetitive, and held that the evidence provided by the Sun was sufficient to not only create a triable issue of fact but also a likelihood of success on the merits. ECF No. 970 at 20-28; ECF No. 1096 at 6-8. The Sun has satisfied its low burden for leave to amend and supplement with its proposed Second Amended Complaint.

Moreover, to the extent the RJ again argues that the Sun's antitrust claims are precluded by the Ninth Circuit's Opinion declaring that the 2005 JOA is unenforceable, that, again, is nonsense. The Ninth Circuit's ruling was narrow and limited to whether the 2005 JOA was unenforceable and whether the Stipulated Order compelling continued "perform[ance] under the 2005 JOA" should be dissolved. *Las Vegas Sun v. Adelson*, 147 F.4th 1103, 1111 (9th Cir. 2025). As the Sun has repeated in numerous briefs filed since the Ninth Circuit's mandate, nothing in the Ninth Circuit's rule impacts the Sun's claims or any other unresolved issue before this Court.

As the Sun has repeatedly explained, it does not matter that the RJ's anticompetitive conduct was undertaken while the parties were operating under the now-unenforceable 2005 JOA. The purpose of antitrust laws is to "promot[e] consumer welfare." *PLS.com, LLC v. Nat'l Ass'n of Realtors*, 32 F.4th 824, 832 (9th Cir. 2022) (quotations omitted). "The law directs itself not against conduct which is competitive, even severely so, but against conduct which unfairly tends to destroy

---

[10] Incidentally, the Sun's Section 1 claim (which was not amended in the Sun's Second Amended Complaint) also survived the RJ's motion to dismiss. ECF No. 970 at 6-11.

ClarkHill\105559\1015963\287259794.v1-4/6/26

competition itself. It does so not out of solicitude for private concerns but out of concern for the public interest." *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 47, 458 (1993). Congress deputized citizens to act as "private attorneys general" by bringing antitrust actions to further serve the public good as a result. *E.g.*, *Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251, 262 (1972). In encouraging this function, where the plaintiff "is suing not only in its own behalf, but as a 'private attorney general' representing the public interest," courts will allow antitrust plaintiffs to proceed even in the face of an illegal agreement. *PharmacyChecker.com LLC v. LegitScript LLC*, 137 F.4th 1031, 1041 (9th Cir.), *cert. denied*, 146 S. Ct. 209 (2025). Thus, when firms undertake conduct that could generally be considered "legal" in other contexts, that conduct is anticompetitive when it is not competition on the merits and is undertaken by firms with monopoly power or a dangerous probability of achieving monopoly power to reduce competition, exclude rivals, or harm consumers.[11] This is also why the Ninth Circuit has explained that antitrust liability is distinct from contract disputes, explaining that while antitrust liability can be predicated on conduct that also happens to create a contract dispute, even in that instance any contractual rights do not grant the defendant "the freedom to act anticompetitively." *City of Vernon v. S. Cal. Edison Co.*, 955 F.2d 1361, 1368 (9th Cir. 1992). Stated another way, contractual "limitations do[ ] not speak to antitrust concerns." *Id.*

This Court agreed when finding that the Sun satisfied its likelihood of success burden, concluding that the Sun's claims are not contract claims, they are antitrust claims. ECF No. 1096

---

[11] *E.g.*, *Federal Trade Comm'n v. Qualcomm Inc.*, 969 F.3d 974, 990 (9th Cir. 2020) (finding that otherwise competitive conduct is anticompetitive when it "harm[s] the competitive *process* and thereby harm[s] consumers") (alteration in original); *Dreamstime.com, LLC v. Google LLC*, 54 F.4th 1130, 1137 (9th Cir. 2022) ("Exclusionary conduct" refers to acts that "tend[ ] to impair the opportunities of rivals" and "do[ ] not further competition on the merits or do[ ] so in an unnecessarily restrictive way.") (alterations in original and quotations omitted); *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. at 458-59 (holding that conduct is "unlawful only when it actually monopolizes or dangerously threatens to do so"); *William Inglis & Sons Banking Co. v. ITT Continental Banking Co.*, 668 F.2d 1014, 1030-31 (9th Cir. 1981) (explaining that conduct that "will support a claim of attempted monopolization [if its] anticipated benefits were dependent upon its tendency to discipline or eliminate competition and thereby enhance the firm's long-term ability to reap the benefits of monopoly power. Such conduct is not true competition; it makes sense only because it eliminates competition. It does not enhance the quality or attractiveness of the product, reduce its cost, or alter the demand function that all competitors confront. Its purpose is to create a monopoly by means other than fair competition.").

18

at 7 (concluding that the Sun has raised at least serious questions that the RJ's conduct was anticompetitive, and explaining, "[T]he Sun's claims turn on allegations of anticompetitive conduct, not breach of the 2005 JOA").

Importantly, the Sun has already met the higher preliminary injunction standard in proving that at least "serious questions regarding whether the RJ's conduct meets the relevant standards" where "[b]ased on the evidence submitted with the motion for preliminary injunctive relief, there is at minimum a serious question on the merits of the Sun's claims that the RJ willfully acquired and maintained its dominant market position through the alleged anticompetitive acts, causing injury." *See id.* at 6. This Court made these findings after the Sun had also already survived summary judgment on antitrust injury under the same anticompetitive conduct alleged in the proposed Second Amended Complaint. *See*, *e.g.*, ECF No. 970 at 24-25. This Court already also found that the RJ was the successor-in-interest to the original owners of the Review-Journal,[12] and that the parties did not terminate the 1989 JOA or that the 2005 JOA was a novation of the 1989 JOA. ECF No. 970 at 35, 18-19. This law of the case is well-reasoned. There is no basis to disturb these sound factual findings, including that the unenforceable 2005 JOA cannot operate to terminate the 1989 JOA. *See, e.g.*, *Wilkins v. United States*, 163 F.4th 636, 644 (9th Cir. 2025) ("The law of the case doctrine 'generally preclude[s] [a court] from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case.'") (alterations in original); *Airs Intern., Inc. v. Perfect Scents Distribs., Ltd.*, 902 F. Supp. 1141,1148-49 (N.D. Cal. 1995)

[12] Any rehashed argument that the RJ is not a successor-in-interest to the owners of the Review-Journal under the 1989 JOA is improper when evaluating a motion for leave to amend or supplement and certainly is not a basis for a futility finding. *Thompson*, 2021 WL 5002214, at *1; *Saticoy Bay, LLC*, 2024 WL 28101492, at *3. In any event, the language of the JOAs forecloses the RJ's argument. The very first sentence of the 2005 JOA identifies the Review-Journal's owner as "DR Partners, a Nevada General Partnership, *the* successor-in-interest to Donrey of Nevada, Inc. ('DR')." ECF No. 1042 at 2SA449 (emphasis added); *see also* ECF No. 978 ¶ 25. Donrey of Nevada, Inc., was the original signatory to the 1989 JOA and owned the Review-Journal Newspaper. ECF No. 1042 at 2SA293. The RJ also admitted that it was the "ultimate successor in interest of DR Partners" in its state court pleading (ECF No. 1091 at 18), and that "LVRJ's predecessor(s) and LV Sun entered into a joint operating arrangement in 1989" in its answer in this case. ECF No. 978 ¶ 1. Both Sections 10.9 in the 1989 JOA and the 2005 JOA also bind all successors and assigns. The RJ's arguments are without merit and contradict this Court's previous conclusion. ECF No. 970 at 35-36.

19

(providing that where "the new contract is invalid, there is no novation and the parties' previous obligations are not extinguished") (citations omitted).

The Sun's proposed pleading alleging the same market, anticompetitive conduct, reduction to competition, harm to the Sun—and adding the significant change in events where the RJ has now effectively excluded the Sun from the market entirely—and harm to consumers cannot be futile under the lesser, applicable Rule 12(b)(6) standard now.

Nor can the Sun's additional declaratory relief claim be deemed futile where the present and actual controversies alleged by the Sun for urgent resolution is set forth in the black and white record.

The Sun is entitled to all inferences from its allegations that the RJ believed the 2005 JOA was valid, and used its exclusive power and control over all non-editorial and -reportorial elements of the joint operation and the Sun since 1989 (which continued after the 2005 JOA) to: (1) weaken and now completely eliminate the Sun's ability and incentives to compete with the RJ, (2) reduce and eviscerate the Sun's visibility and consumers' knowledge, and (3) threatening and actual unilateral termination of the joint operation, ceasing to print and distribute the Sun, through pretextual sham litigation where the RJ has baselessly refused to acknowledge the valid and enforceable 1989 JOA while simultaneously refusing to seek Attorney General approval of the 2005 JOA. All of the RJ's anticompetitive conduct harms competition, the Sun, and consumers. The Sun's antitrust claims survive regardless of the unenforceability of the 2005 JOA.

The RJ will likely again attempt to breathe new life into its impossibility and impracticability defenses, but these are not proper for consideration when evaluating a motion for leave to amend under Rule 15. Impossibility and impracticability are affirmative defenses not appropriate for consideration under Rule 12(b). *Nebaco, Inc. v. Riverview Realty Co.*, 482 P.2d 305, 307 (Nev. 1971); *U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*, 931 F.3d 966, 973 (9th Cir. 2019). Those defenses are not cognizable bases to permanently eliminate the Sun from the market in any event. This Court already examined and applied the law governing the RJ's "impossibility" and "impracticability" arguments when granting the Sun summary judgment on the

20

RJ's frustration of purpose/force majeure defenses. ECF No. 970 at 47-48 (citing *Nebaco, Inc. v. Riverview Realty Co.*, 482 P.2d 305, 307 (Nev. 1971)).

To illustrate, Nevada courts treat impossibility and impracticability as the same defense. *E.g.*, *Nebaco*, 482 P.2d at 307. As *Nebaco* makes clear,

> the defense of impossibility is available to a promissor where his performance is made impossible or highly impractical by the occurrence of unforeseen contingencies but if the unforeseen contingency is one which the promissor should have foreseen, and for which he should have provided, this defense is unavailable to him.

*Id.* (emphasis added) (citations omitted).

Here, the RJ has asked for the circumstance it now faces when it sought to have the 2005 JOA declared unenforceable, knowing that the 1989 JOA would become the valid and enforceable agreement to which the parties would revert. The cost and expense of reverting to the 1989 JOA were foreseeable when the parties agreed to Section 1.1's contingency provision in 2005. The parties knew that reverting to the 1989 JOA would require everything the RJ has recently claimed is too costly or difficult. They also knew in 1989 that afternoon newspapers posed logistical challenges. Aware of these risks, the RJ expressly agreed to revert should the 2005 JOA be impaired. Critically, the parties made no mention of those risks as a basis to excuse performance, let alone continue the RJ Newspaper while ending the Sun. Therefore, the RJ assumed the risk. In the words of *Nebeco*, "[o]ne who contracts to render a performance for which government approval is required assumes the duty of obtaining such approval and risk of its refusal is on him." 482 P.2d at 307. In the absence of the parties expressly providing for termination based on the contingency of hardships in reverting to the 1989 JOA, the RJ assumed those risks associated with reversion and cannot avail itself of any impossibility or impracticability defense. *See id.*

The RJ cannot meet its burden to demonstrate futility.

### 3. There are No Repeated Failures of Previous Amendments or Supplements

As the fifth and final factor under Rule 15, the "repeated failure of previous amendments or supplements," it does not exist either. *See Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1155 (9th Cir. 2014). While the Sun previously sought leave to file its First Amended Complaint to add

21

Defendant Adfam and a Section 1 claim, this Court granted the Sun's request. ECF No. 619. And while the Sun filed its initial Motion for Leave to Modify the Scheduling Order and Amend and Supplement the Complaint [ ] (ECF No. 1065), the Sun is contemporaneously withdrawing that Motion and filing the instant Motion pursuant to this Court's order on April 3, 2026. ECF No. 1112. This factor favors the Sun.

* * * * *

For all of the reasons explained above, no basis exists to deny the Sun's request to amend and supplement its pleading under Rule 15(a) and (d).

## V.    CONCLUSION

Because the Sun has satisfied the requirements for leave to modify the Scheduling Order under Rule 16(b)(4) and Local Rule 26-3, and leave to amend and supplement under Rule 15(a)(2) and (d), an Order granting the Sun's Motion is warranted.

DATED this 6th day of April, 2026.

CLARK HILL PLC

By: /s/ *Kristen L. Martini*
E. Leif Reid, Nevada Bar No. 5750
Kristen L. Martini, Nevada Bar No. 11272
Nicole Scott, Nevada Bar No. 13757
1700 S. Pavilion Center Drive, Suite 500
Las Vegas, Nevada 89135

PISANELLI BICE PLLC
James J. Pisanelli, Nevada Bar No. 4027
Todd L. Bice, Nevada Bar No. 4534
400 South 7th Street, Suite 300
Las Vegas, Nevada 89101

BROWNSTEIN HYATT FARBER SHRECK, LLP
Jordan T. Smith, Nevada Bar No. 12097
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106

ALIOTO LAW FIRM
Joseph M. Alioto, Pro Hac Vice
One Sansome Street, 35th Floor
San Francisco, California 94104

*Attorneys for Plaintiff/Counterdefendants*

22

## CERTIFICATE OF SERVICE

I certify that I am an employee of CLARK HILL PLC, and I caused a true and correct copy of the foregoing **PLAINTIFF'S MOTION FOR LEAVE TO MODIFY THE SCHEDULEING ORDER AND AMEND AND SUPPLEMENT THE COMPLAINT (ECF NO. 621)** to be served by electronically filing the foregoing with the CMECF electronic filing system which will send notice of electronic filing to::

J. Randall Jones, Esq.
Mona Kaveh, Esq.
KEMP JONES, LLP
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, NV 89169

Michael J. Gayan, Esq.
CLAGGETT & SYKES LAW FIRM 4101
Meadows Lane, Suite 100
Las Vegas, NV 89107

Amy M. Gallegos, Esq.
David R. Singer, Esq.
Andrew G. Sullivan, Esq.
Alison I Stein, Esq.
JENNER & BLOCK LLP
515 South Flower Street, Suite 3300
Los Angeles, CA 90071

Richard L. Stone, Esq.
850 Devon Avenue
Los Angeles, CA 90024

DATED: April 6, 2026.

_/s/ Kristen L. Martini_
An Employee of Clark Hill PLC

23

ClarkHill\105559\1015963\287259794.v1-4/6/2623

**DECLARATION OF KRISTEN L. MARTINI IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO MODIFY THE SCHEDULING ORDER AND AMEND AND SUPPLEMENT THE COMPLAINT (ECF NO. 621)**

I, Kristen L. Martini, do hereby swear under penalty of perjury that the following assertions are true and correct to the best of my knowledge:

1. I am a duly licensed attorney admitted to practice in the State of Nevada. I am a member of Clark Hill PLC, and counsel for Plaintiff/Counterdefendants Las Vegas Sun, Inc., Counterdefendants Brian Greenspun and Greenspun Media Group, LLC (together, for purposes of this Motion and for ease of reference, referred to as, the "Sun") in this matter. I make this Declaration in support of Plaintiff's Motion for Leave to Modify the Scheduling Order and Amend and Supplement the Complaint (ECF No. 621) ("Motion").

2. Attached as **Exhibit 2** to the Motion is a true and correct copy of excerpts of the Sun's First Supplemental Responses to Defendants' First Set of Requests for Production of Documents to Plaintiff, served on July 8, 2020, in this matter.

3. Attached as **Exhibit 3** to the Motion is a true and correct copy of excerpts of the Sun's Third Supplemental Responses to Defendants' First Set of Requests for Production of Documents to Plaintiff, served on September 10, 2020, in this matter.

4. Attached as **Exhibit 4** to the Motion is a true and correct copy of excerpts of the Sun's Responses to Counterclaimant Las Vegas Review-Journal, Inc.'s First Set of Requests for Production of Documents, served on March 15, 2021, in this matter.

5. Attached as **Exhibit 5** to the Motion is a true and correct copy of excerpts of the Sun's Answers to Defendants' First Set of Interrogatories to Plaintiff, served on June 22, 2020, in this matter.

6. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 6th day of April, 2026.

_____
KRISTEN L. MARTINI

24