J. RANDALL JONES, ESQ., SBN 1927
r.jones@kempjones.com
MONA KAVEH, ESQ., SBN 11825
m.kaveh@kempjones.com
KEMP JONES LLP
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169
Telephone:      +1 702 385 6000

DAVID R. SINGER, ESQ. (*pro hac vice*)
dsinger@jenner.com
AMY M. GALLEGOS, ESQ. (*pro hac vice*)
agallegos@jenner.com
JENNER & BLOCK LLP
515 South Flower Street, Suite 3300
Los Angeles, California 90071
Telephone:      +1 213 239 5100
Facsimile:      +1 213 239 5199

MICHAEL J. GAYAN, ESQ., SBN 11135
mike@claggettlaw.com
CLAGGETT & SYKES LAW FIRM
1160 N. Town Center Drive, Suite 200
Las Vegas, Nevada 89144
Telephone:      +1 702 333 7777
Facsimile:      +1 702 655 3763

RICHARD L. STONE, ESQ. (*pro hac vice*)
rstone@fastmail.com
850 Devon Avenue
Los Angeles, California 90024
Telephone:      +1 310 993 2068

*Attorneys for Defendants/Counterclaimant*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| LAS VEGAS SUN, INC.,<br><br>               Plaintiff,<br><br>    v.<br><br>SHELDON ADELSON, et al.,<br><br>               Defendants.<br><br>AND RELATED COUNTERCLAIM | Case No. 2:19-cv-01667-ART-MDC<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO MODIFY THE SCHEDULING ORDER AND AMEND AND SUPPLEMENT THE COMPLAINT** |

## TABLE OF CONTENTS

INTRODUCTION .........................................................................................................................1

LEGAL STANDARD..................................................................................................................4

ARGUMENT ...............................................................................................................................5

I.   The SAC Is Another Futile Attempt to Enforce The Unlawful 2005 JOA........................5

     A.   On Its Face, the SAC Asserts Claims Based On The 2005 JOA. ............................5

     B.   The Sun Cannot Pretend The SAC Seeks To Enforce the 1989 JOA......................7

     C.   The Amended Complaint Cannot Be Saved By The Force Majeure
          Provision In The 1989 JOA. .................................................................................10

II.  The SAC Will Cause Extraordinary Prejudice. ..............................................................13

     A.   The Sun Has No Valid Reason For Delaying Until Now To Seek To
          Amend.......................................................................................................................13

     B.   Accepting The SAC Would Require This Case To Start Again From
          Scratch, Causing A Discovery Do-Over And Extraordinary Prejudice.................15

III. The Ninth Circuit's Orders Confirm Amendment Is Improper. ........................................21

CONCLUSION...........................................................................................................................22

i

**INTRODUCTION**

The Ninth Circuit has now held—twice—that the 2005 JOA is "unlawful and unenforceable." *Las Vegas Sun, Inc. v. Adelson*, 147 F.4th 1103, 1121 (9th Cir. 2025); ECF No. 1106 "Mandamus Op." at 4, 6. Both times, the Ninth Circuit reversed this Court's decisions allowing the Sun to advance claims premised on violations of the 2005 JOA. The Ninth Circuit made clear that to the extent a claim is premised on "compliance with the 2005 JOA" or seeks to preserve the "core of the status quo arrangement," it is barred. Mandamus Op. at 6–7.

The Sun now asks this Court for permission to file a new complaint. The Sun assures this Court, again and again, that its proposed pleading "does not offer new facts" and "alleges the same antitrust claims for relief, the same relevant market, the same anticompetitive conduct, and the same antitrust injury" and that "there is nothing in the Sun's proposed Second Amended Complaint that this Court has not read before." ECF No. 1118 at 1, 2, 11.

Taking the Sun at its word, the SAC is doomed. The Sun's admission that its proposed amended complaint is just an updated version of the operative complaint—which was based *entirely* on the Review-Journal's alleged failure to perform under the 2005 JOA and sought to enforce obligations under the 2005 JOA—means that its claims are foreclosed by the Ninth Circuit and Supreme Court rulings that the 2005 JOA is unlawful and unenforceable.

That is true notwithstanding the Sun's shameless attempts to whitewash references to the 2005 JOA and its provisions, as reflected in the redline comparing the FAC and the SAC. *See* Declaration of Michael Gayan ("Gayan Decl.") at Exhibit 1. For example, the SAC proposes to replace references to the 2005 JOA with thinly veiled euphemisms like "joint operation" (in lower case) (*see, e.g.*, SAC at 3, ¶¶ 125, 135, 226–27), the "parties' longstanding combination" (SAC ¶ 228), or the parties' "past practices" or "longstanding practice" (SAC ¶¶ 170, 174, 177, 184, 197) and to scrub direct references to the terms of the 2005 JOA (*id.* ¶¶ 53–77), in a cynical effort to imply that the 2005 JOA is not the source of every obligation the Sun claims the Review-Journal wrongfully failed to perform. The Sun continues to identify the Review-Journal's purported anticompetitive conduct as the failure to meet the specifications of the Sun Box on the front page, not making the Sun's logo large enough in joint promotions, not including the Sun in the e-Edition

1

of the Review-Journal, and improperly deducting editorial and promotional expenses when accounting to the Sun—obligations that were contained in the 2005 JOA and only exist if that JOA is enforceable, which it is not.

The Sun's attempt to file a new complaint that demands retroactive enforcement of specific terms of the 2005 JOA—however reworded—cannot survive without flagrantly violating controlling precedent in this case and ignoring Congress's will as expressed in the NPA.

The Sun cannot pretend that the claims in the SAC—which, again, the Sun insists are the "same" as its prior claims—merely seek to enforce the obligations of the 1989 JOA. The Ninth Circuit recognized that starting in 2005 the parties were operating under the 2005 JOA—not the 1989 JOA. *See Adelson*, 147 F.4th at 1108, 1111–12 ("after the 2005 JOA, those [joint] facilities" established under the 1989 JOA "*are thereafter 'operated' 'pursuant' to" the 2005 JOA*"); *see also* Mandamus Op. at 6 (describing "core" of the status quo as the 2005 JOA).

The Sun cannot avoid the fact that the SAC violates the Ninth Circuit's mandate simply by pleading that the 1989 JOA has actually been in force since 2005 and governing the parties' operations alongside the 2005 JOA. The Sun's attempt to allege that the 1989 JOA was actually in effect all along is futile. Indeed, the Sun pleads the *exact opposite* by attaching to the SAC a so-called "Comparison Chart" that shows the 1989 JOA and the 2005 JOA have little if anything in common. If they worked together in harmony, as the Sun contends, why would a color-coded, 43-page Enigma machine be needed to decipher when an "intentionally omitted" or dramatically altered provision was meant to remain in force and when it was meant to be superseded? Moreover, the Sun does not allege any instance since 2005 when anyone even suggested that the parties were bound by any aspect of the 1989 JOA or acted as though that were the case. That is why, as the Sun admits, since 2005 the Review-Journal has printed a single morning newspaper with a *Sun* insert and delivered it to a single subscriber list (which the 2005 JOA required)—and not also printed an afternoon *Sun* that it distributed to a separate list of Sun-only subscribers (which the 1989 JOA required). That is why, as the Sun admits, since 2005 the front page of the Review-Journal has included the Sun Box (which the 2005 JOA required). That is also why, as the Sun admits, since 2005 the Sun has only had the right to receive a portion of any profits based on

EBITDA (which the 2005 JOA required)—and not any upfront cash payments (which the 1989 JOA required).

The SAC also violates the Ninth Circuit's mandate because the relief it seeks is the core of the 2005 JOA cobbled together out of pieces of the 1989 JOA. Specifically, the Sun wants the Court to order the Review-Journal to continue printing and distributing the *Sun* insert—but to base the order on the force majeure provision of the 1989 JOA or provisions in the 1989 JOA relating to printing a joint weekend or holiday edition. But those provisions do not apply and would not apply even if there had been a force majeure event. In the words of the Ninth Circuit's decision granting mandamus relief: "any such modified arrangement would constitute an *amendment* of the parties' post-NPA JOA under our prior opinion" and "such a new modified 'core' of the 2005 JOA would therefore squarely violate § 4(b) under our opinion." Mandamus Op. at 6–7. Moreover, the Sun's new theory based on the force majeure provision of the 1989 JOA is futile because the SAC does not plead—nor can it—that the Review-Journal stopped printing the afternoon Sun because of a force majeure event.

Finally, permitting the Sun to amend its complaint now would cause extreme prejudice. Over six years of litigation based on the operative complaint, the parties have produced tens of thousands of documents, logged more than two hundred hours in depositions (obtaining key admissions pegged to specific language in the 2005 JOA), produced hundreds of pages of expert analysis based on the 2005 JOA, spent tens of millions of dollars in legal fees, filed dozens of motions, taken an interlocutory appeal that went all the way to the Supreme Court, and obtained mandamus relief from the Ninth Circuit after this Court required the Review-Journal to print and distribute the Sun in violation of the Ninth Circuit's mandate. Allowing the Sun to assert a new theory now would require substantial additional discovery, expert work, and motion practice.

In addition, extensive new fact and expert discovery tailored to the SAC would be required in its place before this case could proceed in this Court.[1] Even a cursory review of the redlined

---

[1] The Review-Journal reserves all rights to seek immediate emergency appellate review if this Court enters an order that violates the mandate (for the second time) by permitting the Sun to amend the complaint to assert claims that are premised on requiring the Review-Journal to perform or enforce the unlawful and unenforceable 2005 JOA.

3

changes proposed by the SAC shows that the Sun is seeking to rewrite most of its Complaint. At a minimum, due process would entitle the Review-Journal to take discovery regarding the multitude of new allegations and the Sun's implausible theory that since 2005 the 1989 JOA has been silently obligating the Review-Journal to print and distribute the *Sun* even though no one said or did anything to support that theory. Whatever stray mentions of the 1989 JOA the Sun may be able to dig out from the mountain of discovery, discovery did not include the Sun's theory that the 1989 JOA was "valid and enforceable" after the parties entered into the 2005 JOA, and thus supported an antitrust claim. The issue of whether the parties intended to terminate the 1989 JOA in 2005, intended to revert to the 1989 JOA if the 2005 JOA were invalidated 20 years later, and believed they operated under the 1989 JOA since 2005 also was not explored in discovery or litigated. Allowing the Sun to advance that theory now would unfairly and severely undermine the evidence and testimony disproving the Sun's operative allegations that the Review-Journal has amassed over the past 6 years.

In twice reversing this Court, the Ninth Circuit made clear that the Sun cannot possibly prevail on claims that seek to hold the Review-Journal liable for failure to perform the substance of the unlawful 2005 JOA. Yet, the Sun's SAC seeks to do just that. The Sun's motion for leave to amend should be denied.

**LEGAL STANDARD**

Parties may amend their complaint once by right, but after that, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2) (permitting further amendment only "when justice so requires"). To determine whether further amendment is appropriate, courts consider undue delay, bad faith, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint. *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 538 (9th Cir. 1989).

Under Rule 15(d), "the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). This rule is designed to facilitate "judicial economy and convenience" to "promote the economical and speedy disposition of the

4

controversy." *Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir. 1988). The standard under Rule 15(d) is the same as for leave to amend. *Desio v. State Farm Mut. Auto. Ins. Co.*, 339 F.R.D. 632, 638 n.9 (D. Nev. 2021).

In addition, when a party moves for leave to amend after the court's deadline, the movant must show "good cause," Fed. R. Civ. P. 16(b)(4), and "excusable neglect," Local Rule 26-3. *See Fed. Hous. Fin. Agency v. Saticoy Bay, LLC*, 2024 WL 2801492, at *2 (D. Nev. May 30, 2024). To determine whether a party has made that showing, courts consider "(1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *EB Holdings II*, *Inc. v. Ill. Nat'l Ins. Co.*, 2021 WL 12348633, at *1 (D. Nev. Sept. 20, 2021). "Rule 16(b)'s standard is more demanding than Rule 15(a)'s," and a "party must first show good cause before the Court considers whether amendment is proper under Rule 15(a)." *Velez v. Foresters Life Ins. & Annuity Co.*, 2025 WL 3691474, at *2 (C.D. Cal. Dec. 11, 2025).

## ARGUMENT

### I. The SAC Is Another Futile Attempt to Enforce The Unlawful 2005 JOA.

Twice now, the Ninth Circuit has explained—unequivocally and emphatically—that the Sun cannot bring claims premised on performance or enforcement of the substance of the unlawful and unenforceable 2005 JOA. But that is exactly what the Sun's proposed SAC does. For that reason alone, leave to amend must be denied.

#### A. On Its Face, the SAC Asserts Claims Based On The 2005 JOA.

The Sun assures this Court, again and again, that its proposed pleading offers nothing new. The Sun insists that its proposed amendment alleges "the same antitrust claims for relief, the same relevant market, the same anticompetitive conduct, and the same antitrust injury that the parties have been litigating for nearly seven years." *See* ECF No. 1118 at 1–2. That necessarily means that it would be futile to allow the Sun to file the SAC.

The logic is simple and straightforward. The Sun has said all along that the claims in the FAC were based on enforcing the 2005 JOA and sought to require the Review-Journal to perform under the 2005 JOA. *See, e.g.* FAC ¶¶ 88, 95, 98, 108, 113, 150, 159; ECF No. 844-20 at 2–4. The

5

Ninth Circuit held, twice, that the Sun could not advance claims or seek relief based on the 2005 JOA because it is unlawful and unenforceable. *Adelson*, 147 F.4th at 1121; Mandamus Op. at 6. The Sun now says the SAC is substantively the same as the FAC, and that the SAC seeks the same relief as the FAC. ECF No. 1118 at 1, 2, 11; *see* SAC ¶ 298 (seeking an injunction requiring the RJ to "print and distribute the Sun in the joint edition format on a daily basis as an interim measure"); *id.* ¶ 300 (same); *id.* ¶ 307 (same); *id.* ¶ 307 (seeking to enjoin the RJ "from unilaterally ending the joint operation and ceasing to print and distribute the Sun until 2040").

If the SAC is substantively the same as the FAC and seeks the same relief, then the SAC is *also* based on the unlawful and unenforceable 2005 JOA and allowing the Sun to file it would violate the Ninth Circuit's mandate. That renders the SAC futile and an improper supplement. *See, e.g.*, *Saticoy Bay*, 2024 WL 2801492, at *3 (leave to amend should be denied where the proposed amendment would be futile); *Brown v. Deputy No. 1*, 2013 WL 5536371, at *6 (S.D. Cal. Oct. 8, 2013) ("A supplemental pleading is designed to . . . set forth new facts affecting the controversy that may have occurred since the original pleading was filed."). This Court need not proceed any further.

The Sun's proposed SAC itself makes clear that the Sun's claims seek to enforce the material elements of the 2005 JOA. Indeed, the 2005 JOA undergirds the alleged predatory acts described in the SAC. As just some examples:

- The Sun complains (¶ 124) that the Review-Journal "abused its management of and complete control over the joint operation, and therefore the Sun, by *manipulating the 2005 JOA framework* . . . to reduce competition, harm the Sun, and harm consumers." That purported "predatory conduct" is based on the 2005 JOA.

- The Sun complains (¶ 125) that the Review-Journal "theoriz[ed] termination of the 2005 JOA" and "hypothesize[d] about what would happen to the Sun if the RJ squeezed the Sun out of the market by eliminating its profits payment from the [2005] joint operation." That is based on the 2005 JOA.

- The Sun complains (¶¶ 131–32, 153) that the Review-Journal failed to maximize joint operation profits, including by removing its publisher. That is based on the 2005 JOA.

- The Sun complains (¶¶ 157–61) that the Review-Journal "manipulate[d] the 2005 JOA formula the RJ agreed to" and "abus[ed] its control over the joint operation accounting" then complains about accounting practices under the 2005 JOA. That is based on the 2005 JOA.

- The Sun complains that the Review-Journal "destroy[ed] the Sun Box," *id*. ¶¶ 166, 177, and "omitte[d] the Sun from the electronic replica edition of the Newspaper Bundle," *id*. ¶ 166, 184–85. Both obligations are based on the 2005 JOA.

- The Sun complains (¶¶ 194–95) that the Review-Journal declined the Sun's request to examine and audit its books and records. That is predicated on the 2005 JOA.

- The Sun complains (¶ 205) that the Review-Journal sought to "exclude the Sun from the Newspaper Market" by supposedly failing to follow § 1.1 of the 2005 JOA, which the Sun contends is a "mechanism to revert to operation under the 1989 JOA."

All of these allegations are materially identical to what the Sun described in the operative complaint as predatory breaches of the 2005 JOA. *See* ECF No. 1070 at 11–14; ECF No. 1084 at 8–13.[2] Allowing the Sun to amend the complaint to assert these same allegations would countenance the Sun's third attempt to sidestep the Ninth Circuit's mandate.

**B. The Sun Cannot Pretend The SAC Seeks To Enforce the 1989 JOA.**

To try to get around the reality that the FAC and SAC allege the same supposedly anticompetitive conduct (*i.e.*, breaches of the terms of the 2005 JOA), the Sun attempts to cleanse its pleadings of any reference to the 2005 JOA—as though that will fix the problem. As the Sun has learned twice already, the Ninth Circuit will not be so easily fooled. All the Ninth Circuit needs to do is look at a redline comparison of the FAC and SAC—which the Sun again, curiously, failed to provide along with its motion to amend.

For starters, the SAC deletes references to the 2005 JOA where it appeared in the FAC and replaces it with euphemisms like "joint operation" (in lower case) (*see, e.g.*, SAC at 3, ¶¶ 125, 135, 226–27), the "parties' longstanding combination" (SAC ¶ 228), or the parties' "past practices" or "longstanding practice" (SAC ¶¶ 170, 174, 177, 184, 197). But as the Ninth Circuit has recognized and the Sun itself has admitted, the *only* "joint operation" under which the parties operated since 2005 *is* the 2005 JOA. *See Adelson*, 147 F.4th at 1108, 1111–12 (now-dissolved injunction required the parties to "continue to perform under the 2005 JOA"); *see also* ECF No. 839, Ex. 53

---

[2] The Sun alleges the Review-Journal engaged in anticompetitive conduct by "threatening unilateral termination of the joint operation and complete exclusion of the Sun from the Newspaper Market through pretextual, sham litigation." SAC ¶ 126. Any claim based on the Review-Journal's successful effort to enforce the law and invalidate the 2005 JOA is futile because that conduct is immunized by the *Noerr-Pennington* doctrine. *See Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1007 (9th Cir. 2008).

7

at ¶¶ 30, 34 (Sun alleging that in 2004 it "began renegotiating the 1989 JOA," which resulted in a "new agreement" that "combined the two newspapers into a single media product"); ECF No. 40 at 23 (the parties "have been conducting business… for over a decade" under the 2005 JOA). Simply deleting the references to the 2005 JOA cannot make it go away.

The Sun does the same thing (in marginally more disguised form) when it rewrites language plainly tethered to the 2005 JOA and replaces that language with verbiage at a higher level of generality. Consider the revisions to Paragraph 126. *Compare* FAC ¶ 66 *with* SAC ¶ 126. In that paragraph alone, the Sun: (1) strikes "[2005] JOA" and replaces it with "joint operating accounting"; (2) deletes "redesigning the Review-Journal's front page and the Sun's box" and replaces it with "reduce the Sun's visibility"; and (3) deletes "termination of the JOA" and replaces it with "termination of the joint operation."

66126. These discussions launched Defendants' predatoryexclusionary and anticompetitive scheme further, the components of which comprise the wide-sweeping operational and accounting abuses can be grouped as follows: (1) removing a publisher with a proven record of turning around declining newspapers, who had already been implementing a plan that was reversing negative trends, and installing a replacement publisher to execute their predatory scheme towhereby the RJ used its power over the joint operation and the Sun—harnessed since 1989—to manipulate the framework under which both parties believed was valid and enforceable to: (1) fail to maximize the joint operation's profits to drive the joint operation into a loss and eliminate the SunSun's profits; (2) abusingabuse the RJ's control over operations and advertising (and the accounting thereof) under the JOA in such a way so as to either put the Sun out of business or to so diminish its value that the Sun will be forced to sell to the RJ at a fire-sale price; (3) redesigning the Review-Journal's front page and the Sun's box with the purpose of making the Sun's presence on the Review-Journal's front page less noticeable and selling advertising products concealing the Sun's front page presencethe joint operation accounting to further reduce and eliminate the Sun's profit payments; (3) reduce the Sun's visibility and consumers' knowledge of the Sun; and (4) threatening involuntaryunilateral termination of the JOAjoint operation and complete exclusion of the Sun from the Newspaper Market through pretextual, sham litigation (together, "Anticompetitive Conduct").

That is: the Sun is still seeking to enforce the terms of the 2005 JOA but is simply trying to obscure that fact by relabeling them using different words. That is about as subtle as a sledgehammer.

8

There are more examples of the Sun playing word games to try to salvage its legally defective claims. In SAC ¶ 177 for example, the SAC alleges that the Review-Journal engaged in predatory conduct by "eliminat[ing] the Sun Box entirely" from the front-page, "deviat[ing] from the parties' longstanding practice" that had been followed "for the preceding 12 years." The FAC had similar content, but also alleged (as it must) that these "specifications" for the Sun Box were *"in the 2005 JOA"* and that the "Sun Box had been published in compliance with the 2005 JOA for the preceding 12 years." FAC ¶ 98.

> 98177. Two days later, the RJ commenced publishing a new front-page design that eliminateseliminated the Sun Box entirely and deviatesdeviated from the parties' longstanding practice of printing the Sun's noticeable mention specifications and illustrations in the 2005 JOA, including forcing a reduction in size of the Sun's logo. The Sun Box had been published in compliance with the 2005 JOAin the specified Sun Box format for the preceding 12 years.

So, the Sun deleted those references to the 2005 JOA and now acts like the Sun Box has nothing to do with the 2005 JOA, when the only reason the Review-Journal ever printed the Sun Box was because it was expressly required under the 2005 JOA. *See* 2005 JOA App'x A.2(d), App'x B.

The inescapable conclusion is that the Sun seeks to file the SAC to enforce the 2005 JOA— just without using the term "2005 JOA." That is as ham-handed as it is impermissible. Allowing the Sun to file the SAC is tantamount to allowing the Sun to attempt to enforce the 2005 JOA. That would violate the NPA, defy the Ninth Circuit's unequivocal holding that the 2005 JOA cannot lawfully be enforced, and disobey the Ninth Circuit's directive in granting the Review-Journal's mandamus petition just weeks ago. This Court has no discretion to countenance that result. It is "bound by circuit authority" and "has no choice but to follow it, even if convinced that such authority was wrongly decided." *Hart v. Massanari*, 266 F.3d 1155, 1175 (9th Cir. 2001). The Sun may not pursue claims against the Review-Journal that are premised on the 2005 JOA—under whatever label.

Nor can the Sun save the SAC by asserting that the "material components and obligations of the 1989 JOA never stopped being performed," SAC ¶ 210, so it supposedly seeks to enforce the 1989 JOA not the 2005 JOA. The Sun's motion to amend commits the same fundamental error

9

that led the Ninth Circuit to issue a writ of mandamus just weeks ago. In that decision, the Ninth Circuit made crystal clear that it is unlawful for this Court to order "either continued compliance with the 2005 JOA or, at the very least, continued adherence to what [this Court] described as the 'core of the status quo arrangement,' *i.e.*, the 'core' of the 2005 JOA." Mandamus Op. at 6. If the Sun's new theory is that the Court can enforce the "core" of the status quo arrangement because that core was really somehow based on the 1989 JOA, then that theory is barred by the Ninth Circuit's decisions: As the Ninth Circuit made clear, the Sun cannot retroactively enforce the 2005 JOA—whether openly as the Sun tried to do in the FAC, or under the pretext of enforcing the 1989 JOA as the Sun seeks to do in the SAC—because the 2005 JOA *is* the status quo. *See Adelson*, 147 F.4th at 1108, 1111–12 ("after the 2005 JOA, those [joint] facilities" established under the 1989 JOA "***are thereafter 'operated' 'pursuant' to" the 2005 JOA***); *see also* Mandamus Op. at 6 (describing "core" of the status quo as the 2005 JOA); ECF No. 6 ¶ 6 (now-vacated stipulated injunction referring to the 2005 JOA as the "status quo"). If the Sun wants to contend that the SAC "should be understood as relying upon the '1989 JOA' … rather than on the 2005 JOA" notwithstanding the language of the SAC itself, then the Ninth Circuit can once again hold that the Sun's argument is "manifestly incorrect." Mandamus Op. at 5–6.

**C. The Amended Complaint Cannot Be Saved By The Force Majeure Provision In The 1989 JOA.**

In its motion to amend, the Sun argues that the Court can evade the Ninth Circuit's mandate and order the Review-Journal to print and distribute the Sun "on a daily basis under the joint edition format provided for in Section 4.4 and Appendix A.2(b) and (c) of the 1989 JOA on an interim basis pursuant to Section 8.2" until the Review-Journal figures out how to "fully perform under the 1989 JOA. *See* SAC ¶¶ 267, 278, 284, 292, 307. Section 8.2, the force majeure provision, states:

> Neither party shall be liable to the other for any failure or delay in performance under this Agreement, occasioned by war, riot, government action, act of God or public enemy, damage to or destruction of facilities, strike, labor dispute, failure of suppliers or workers, inability to obtain adequate newsprint or supplies, or any other cause substantially beyond the control of the party required to perform, provided that in the event partial performance under this Agreement is feasible, notwithstanding the occurrence of one or more of the foregoing, performance shall be allocated between

10

the newspapers by the Review-Journal, in its sole judgment, and if it is feasible to publish only one newspaper product, Review-Journal shall exercise its best efforts to produce a jointly published newspaper in which the Sun portion shall be determined by Review-Journal, notwithstanding the provisions of Appendix A hereto, provided, that the Sun portion shall not be less than two (2) pages.

The Review-Journal has explained at length why the 1989 JOA has not been in force since 2005 and why there is absolutely no merit to the Sun's argument that the 1989 JOA sprung back to life when the 2005 JOA was invalidated. *See* ECF No. 1070 at 5–11; ECF No. 1086 at 8–12; ECF No. 857 at 27–29.[3] Each of those arguments are sufficient grounds for this Court to reject the Sun's argument.

The Sun's attempt to invoke Section 8.2 also fails for three additional reasons—each of which is sufficient to find that the SAC is futile and therefore leave to amend should be denied. *See Saticoy Bay*, 2024 WL 2801492, at *3.

*First*, as a matter of law, the Sun has not pleaded any basis for relief under Section 8.2, nor can it. Section 8.2 does not create a right in the Sun to demand that the Review-Journal carry its insert. It is a provision that excuses one party's non-performance in the event of a force majeure. *See* 1989 JOA § 8.2 ("Neither party shall be liable to the other for any failure or delay in performance . . . ."). Neither the Review-Journal nor the Sun have sued the other party for failing to perform under the 1989 JOA, and nobody has invoked a defense of force majeure. The Sun has not pleaded that it stopped publishing, and the Review-Journal stopped distributing, the afternoon Sun because of a force majeure event. The Sun half-heartedly alleges that "government action" made publishing the afternoon Sun infeasible, *see* SAC ¶ 298, but that statement conflicts with the Sun's numerous other allegations in which it pleads that the afternoon Sun newspaper was converted into an insert inside the morning Review-Journal newspaper because the parties were

---

[3] To summarize some of the Review-Journal's arguments developed in its prior filings: the Sun's argument that the 1989 JOA springs back to life is predicated on § 1.1 of the 2005 JOA, *see, e.g.*, SAC ¶ 205, which is unlawful and unenforceable because the 2005 JOA is unlawful and unenforceable. In any event, Section 1.1 does not support revival of the JOA on its own terms, and other provisions in the 2005 JOA expressly state that the 1989 JOA is terminated, *id.* § 1.2, "null, void and of no effect whatsoever," *id.* § 10.4. Neither party has performed under the 1989 JOA for 20 years, rendering it abandoned as a matter of law. *See J.A. Jones Const. Co. v. Lehrer McGovern Bovis, Inc.*, 120 Nev. 277, 292 (2004). And performance under the 1989 JOA now would be impossible or at the very least impracticable, and thus excused. *Nebaco, Inc. v. Riverview Realty Co.*, 87 Nev. 55, 57 (1971).

following the 2005 JOA. *See* FAC ¶¶ 30–42; *see also Reddy v. Litton Industries, Inc.*, 912 F.2d 291, 296–97 (9th Cir. 1990) (a proposed amended complaint may not "contradict[] any of the allegations" of the operative complaint and "may only allege 'other facts consistent with the challenged pleading'"). This is not a "cause substantially beyond the control" of the parties—to the contrary, it was the result of a decision and intentional actions by the Sun and the Review-Journal's prior owners. Section 8.2, on its face, is completely inapplicable to the facts the Sun pleaded. *Oregon Clinic, PC v. Fireman's Fund Ins. Co.*, 75 F.4th 1064, 1073–74 (9th Cir. 2023) (amendment is futile when "allegations depend on an incorrect interpretation" of contract language).

*Second*, even if Section 8.2 applied (and it does not), it does not give the Sun the right to publish an insert in the *Review-Journal*. Section 8.2 is an exculpatory provision that provides that "[n]either party shall be liable" for failure to perform when circumstances beyond a party's control render performance impossible—circumstances like war, natural catastrophes, labor disputes, and the like. The Sun turns this provision on its head, transforming a contractual shield (excusing performance when it is impossible) into a sword (supposedly requiring performance absent certain conditions). The text of Section 8.2 does not provide a basis for the Sun to force the Review-Journal to print and distribute an insert in violation of the Ninth Circuit's mandate.

*Third*, even if a force majeure event had occurred (it did not), Section 8.2 does not require the Review-Journal to print the Sun "under the joint edition format provided for in Section 4.4 and Appendix A.2(b) and (c) of the 1989 JOA," as the Sun demands. SAC ¶ 267. Under Section 8.2, if a force majeure event occurs, the Review-Journal may print a jointly published newspaper "*notwithstanding* the provisions of Appendix A." That means that if Section 8.2 is invoked, it displaces the format described in Appendix A and allows the Review-Journal to reduce the size of the Sun to as little as two pages. And lest the Sun forget, the Ninth Circuit's mandate leaves no room for this Court to pick and choose to enforce certain provisions of the 1989 JOA and not others: "any such modified arrangement would constitute an *amendment* of the parties' post-NPA JOA under our prior opinion," and doing so would "squarely violate § 4(b) under our opinion." Mandamus Op. at 6–7.

12

## II.  The SAC Will Cause Extraordinary Prejudice.

### A.  The Sun Has No Valid Reason For Delaying Until Now To Seek To Amend.

Make no mistake: until now, the Sun's theory at every step of this case has been that the 2005 JOA's requirements are enforceable and that the Review-Journal allegedly violated the antitrust laws by supposedly failing to comply with the 2005 JOA. The Sun has never argued that the 1989 JOA was enforceable all along in parallel with the 2005 JOA, that it was the basis for the parties' current arrangement, that the Review-Journal had failed to comply with it, or that any such alleged failure was the basis for the Sun's claims.

The Sun has known since the inception of this case that the 2005 JOA may be deemed unlawful and unenforceable. After the Sun's original complaint asserted claims predicated exclusively on the 2005 JOA, the Review-Journal moved to dismiss on the ground that the 2005 JOA was unenforceable. ECF No. 20 at 5–13. This was the Review-Journal's first argument in its first motion to dismiss, filed on October 30, 2019, and the Review-Journal's position could not have been clearer: "The Sun's Complaint must be dismissed because all of its claims are based on the 2005 JOA, which was not approved by the DOJ and thus is unenforceable." *Id.*

Faced with this flashing red siren of an argument, the Sun made the strategic decision not to offer any other theory in the alternative. Instead, the Sun doubled down and never looked back—even after this Court warned that there was a "substantial, immediate, and real controversy between the parties as to the invalidity of the 2005 JOA," ECF No. 620 at 23, the Sun amended its complaint but again declined to assert claims predicated on the 1989 JOA. *See* ECF No. 621.

Thereafter, the Sun *continued* to make the calculated tactical choice to base its entire case on the enforceability of the 2005 JOA (and not raise any alternative theory related to the 1989 JOA) while the parties *continued* to litigate (via multiple motions and even an appeal) whether the 2005 JOA was enforceable. *See, e.g.*, ECF No. 836 at 23–32; ECF No. 881 at 18–24; ECF No. 902 at 14–22. The Sun put all its eggs in the 2005 JOA basket despite knowing the Attorney General had never approved the 2005 JOA, a fact it fought hard to avoid admitting. *See* ECF No. 853 at 5–9 (chronicling the Sun's efforts to obfuscate the fact during discovery). Of course, the Ninth Circuit eventually rejected the Sun's argument and held that the 2005 JOA is unlawful and unenforceable.

13

Under well-established Ninth Circuit precedent, the Sun has waited far too long to change its theory of the case now. The Ninth Circuit has repeatedly emphasized "that late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." *Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986); *M/V Am. Queen v. San Diego Marine Constr. Corp.*, 708 F.2d 1483, 1492 (9th Cir. 1983) (denying leave to amend where "[t]he new allegations would totally alter the basis of the action"); *Mir v. Fosburg*, 646 F.2d 342, 347 (9th Cir. 1980) ("At some point, a party may not respond to an adverse ruling by claiming that another theory not previously advanced provides a possible grounds for relief and should be considered.").

Consistent with that precedent, multiple district courts have rejected a party's attempt to advance a late-breaking theory at an advanced stage of the case that it could have—but did not—plead from the beginning. *See, e.g.*, *Ere Ventures, LLC v. David Evans and Assocs.*, 2018 WL 1162587, at *1 (C.D. Cal. Jan. 23, 2018) (denying leave to amend where party attempted to assert new causes of action, requiring different legal theories); *Agricola Baja Best, S. De. R.L. de C.V. v. Harris Moran Seed Co.*, 2013 WL 4499118, at *2 (S.D. Cal. Aug. 20, 2013) ("Counsel's delayed comprehension of legal theories readily available from the outset of the lawsuit does not establish reasonable diligence.").

*Acri* is a good example. There, plaintiffs brought a cause of action premised on one source of law, a labor statute, and declined for "tactical" reasons to plead a cause of action premised on another labor statute. 781 F.2d at 1395, 1398–99. When the court signaled that it would reject plaintiffs' first theory, plaintiffs sought leave to amend to advance their second theory, and the Court rejected the motion as improper. *Id.* at 1398–99 (denying leave to amend). *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990), which the Sun cites (ECF No. 1118 at 11), is also a good example. There, the court denied leave to amend precisely because amendment "would have greatly altered the nature of the litigation and would have required defendants to have undertaken, at a late hour, an entirely new course of defense." *Id.* And when amendment is allowed at a late stage, it is because "Plaintiffs' claims factually [did] not change[]"

and "would not be futile." *Boorman v. Nev. Mem'l Cremation Soc'y, Inc.*, 772 F. Supp. 2d 1309, 1317 (D. Nev. 2011).

This Court should deny leave to amend for the same reasons. The Sun litigated this case for years with the 2005 JOA as the sole basis for its claim. The Court addressed the claims as the Sun presented them—issuing multiple rulings based on the Sun's focus on the 2005 JOA. *See* ECF No. 1118 at 17–18. The Sun could have chosen to add allegations and claims related to the 1989 JOA and to pursue that theory in parallel with its theory that the 2005 JOA was enforceable. But the Sun did not. The Sun must now live with the consequences. *See Acri*, 781 F.2d at 1398 (rejecting leave to amend when party made "a tactical choice" where "the facts and the theory have been known to the party seeking amendment since the inception of the cause of action.").[4]

### B. Accepting The SAC Would Require This Case To Start Again From Scratch, Causing A Discovery Do-Over And Extraordinary Prejudice.

Allowing the Sun to amend its complaint now, after six years of litigation and discovery, would literally start this case over from square one and cause prejudice of epic proportions.

As an initial matter, allowing the SAC to proceed would prompt new dispositive motion practice to determine if the SAC states a claim at all. And if the SAC somehow survived a motion to dismiss (it should not, as noted above), the Review-Journal would need to file a new answer and raise new affirmative defenses and counterclaims that are specific to the SAC. This would be a major new undertaking. The Review-Journal's core defenses under the FAC were all tailored to the 2005 JOA's specific terms. *See* ECF No. 970 at 13–20, 38–49 (arguing the 2005 JOA is unlawful, that the Sun breached its quality and cooperation provisions, and that the force majeure and frustration of purpose clauses permitted termination). But based on the SAC, those defenses must be rebuilt from scratch around the 1989 JOA's entirely different contractual framework.

If the SAC becomes the operative complaint, the Review-Journal will need to conduct significant discovery just to figure out what exactly the Sun is alleging. It appears the Sun's theory

---

[4] It is no response that the Sun "was not required to plead around the RJ's affirmative defenses." ECF No. 1118 at 15. The futility question turns on whether a plaintiff will be able to state a claim. Here, the Sun will not because the SAC is predicated on an unlawful contract that cannot possibly be enforced. *See* Mandamus Op. at 6 (citing *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 83–84 (1982)).

is that the Sun and Review-Journal were simultaneously bound by both the 1989 JOA and the 2005 JOA in parallel—even though both covered the same subject matter, their key terms are incompatible, and the parties only operated under the 2005 JOA. The SAC does not identify the specific provisions of the 1989 JOA that supposedly remained in force after it was expressly terminated in 2005, what terms the Review-Journal was supposedly required to follow, or how the Review-Journal apparently breached those provisions. Those details are critical, to say the least. To unpack and untangle the SAC—just to get an understanding of what exactly the Sun is alleging and how its allegations fit together—will take an enormous amount of discovery.

From there, discovery will only get exponentially more extensive. In its motion, the Sun contends that new discovery "would necessarily be limited and appropriately tailored" because prior discovery that focused on the 2005 JOA supposedly "encompass[ed]" the 1989 JOA. ECF No. 1118 at 12–13. This is objectively false.

Discovery thus far included more than 100 interrogatories and requests for admission, more than 850 requests for production, more than 200,000 pages of documents produced, and 40 lay and expert depositions covering over 200 hours and nearly 12,000 pages of transcripts. *See* Gayan Decl. ¶ 5. The discovery proved useful: the parties proposed roughly 3,000 exhibits for trial, designated 29 deposition transcripts, and envisioned calling roughly 50 lay witnesses and 12 experts. *See* ECF No. 1003.

The 2005 JOA was at the heart of this discovery. The 2005 JOA was discussed in 39 of 40 depositions,[5] used as an exhibit in 16 depositions, and was the subject of numerous requests for production. *See* Gayan Decl. ¶¶ 6–7. For example, the parties propounded 38 requests for production for documents relevant to the Review-Journal's supposed accounting obligations under the 2005 JOA, another 38 related to the Review-Journal's alleged obligation under the 2005 JOA related to the Sun's front-page "noticeable mention," and 17 related to the 2005 JOA's requirement that the Review-Journal display the Sun in "equal prominence" in promotions. *See* Gayan Decl. ¶ 7. All of these issues are unique to and flow exclusively from the 2005 JOA. *See, e.g.*, FAC ¶ 34

---

[5] Every single witness discussed the 2005 JOA, but Steve O'Connor, who was deposed three times in connection with this action, "only" discussed the 2005 JOA in two of those depositions.

(in which the Sun states that "[w]ith the new, single-media product, the 2005 JOA contains strict and mutually-agreed upon formatting specifications for the Sun's pages"); FAC ¶ 35 (the Sun alleging that "[t]he 2005 JOA changed the prior marketing provisions" and requires the Review-Journal to use "commercially reasonable efforts" to promote the Sun in "equal prominence" to the Review-Journal).

By contrast, the 1989 JOA could not have been further from the center of discovery. None of the requests for production served in this case (of which there were more than 850) expressly sought documents about the 1989 JOA or the parties' compliance with its terms. *See* Gayan Decl. ¶ 8. Likewise, no interrogatories or requests for admissions asked about the 1989 JOA or the parties' compliance with its terms. *See* Gayan Decl. ¶ 9. The 1989 JOA was not even mentioned in most depositions taken in this case, and it was only used as an exhibit in two depositions. *See* Gayan Decl. ¶ 10. If the Sun is allowed to amend the complaint—and the SAC supersedes the FAC as the operative pleading—then all of this discovery and related litigation was for naught: the testimony, responses, and admissions keyed to the FAC would become largely unusable at trial.

Moreover, there has not been *any* discovery focused on the Sun's new theory that the 1989 JOA is the valid, enforceable, and currently governing agreement between the parties. The 1989 JOA was never the basis for any claim in the prior operative complaint. This new theory, combined with the Sun's new factual allegations regarding events occurring in 2025 and 2026, would unleash a wave of new discovery on subjects never before at issue. Just by way of example, discovery would entail investigation into, among other things:

- the intent, purpose, and circumstances surrounding each change between the 1989 JOA and the 2005 JOA, and why certain provisions were retained, modified, or omitted—which bears directly on whether the parties intended the 2005 JOA to supersede and replace the 1989 JOA in its entirety;

- documents and testimony regarding each specific provision that changed between the 1989 JOA and the 2005 JOA, including the intent behind provisions that were "Intentionally omitted" (such as the Section 9.1.4 loss-operation termination right) and provisions that were added (such as the Sun Box, the equal prominence requirement, the electronic replica edition obligation, and the EBITDA formula);

- whether the 1989 JOA continued "in the shadows" as a binding agreement from 2005 through the present, including any instance in which either party acknowledged, referenced, demanded performance under, or complied with the 1989 JOA since 2005;

17

- all instances in which the Sun demanded or expected performance under the 2005 JOA (rather than the 1989 JOA) from December 2015 through August 2025, and all instances in which the Sun itself complied with the 2005 JOA rather than the 1989 JOA during that period;

- the Sun's intent in agreeing to fundamentally restructure the parties' relationship through the 2005 JOA—specifically, whether the Sun sought to abandon the failing afternoon-newspaper format under the 1989 JOA because that structure was not economically viable;

- whether it is possible or economically practical to perform the 1989 JOA's terms today, including operating the Sun as a standalone afternoon print newspaper—encompassing the logistical, financial, and operational requirements of afternoon printing, separate distribution, and the building of an independent subscriber base and advertising operation, and whether an afternoon print newspaper could attract subscribers, advertisers, and distribution resources in the current media environment;

- documents and testimony regarding the Sun's view, at any time from 2004 to the present, of the viability of an afternoon print newspaper, including internal analyses, board discussions, communications with advertisers or subscribers, and any consideration of whether reverting to the 1989 JOA structure was feasible;

- the 1989 JOA's distinct profit-sharing structure—a fixed 90/10 operating-profit split (Appendix D) rather than the 2005 JOA's EBITDA formula—and what the Sun's damages would be under that entirely different structure;

- whether 1989 JOA § 9.1.4, which permits termination after losses for two consecutive years, has been triggered, and whether the parties intended it to be enforced retroactively;

- the basis for the Sun's allegation about the pre-acquisition due diligence and strategy of the Review-Journal's current owners;

- the basis for the Sun's allegations that the Review-Journal is required to seek Attorney General approval of the 2005 JOA, notwithstanding contrary language in the 2005 JOA;

- documents and testimony related to novation—specifically, whether the parties intended the 2005 JOA to entirely replace the 1989 JOA—including the Sun's own internal communications reflecting that understanding, and the Sun's representations to third parties (including the DOJ, advertisers, and subscribers) that the 2005 JOA was the governing agreement;

- documents and testimony regarding the Sun's efforts, if any, to print or consider printing its newspaper independently of the Review-Journal at any point from 2005 to the present;

- complete new expert discovery on antitrust injury under the 1989 JOA framework, which is structurally different from the 2005 JOA in every material respect relevant to the Sun's damages theories;

- expert discovery on antitrust injury beyond the existing work that relates to the 2005 JOA's EBITDA-based profit formula, the Sun Box and equal prominence obligations, and the electronic replica edition requirement (none of which appear in the 1989 JOA).

18

The Sun is also wrong to claim that "reversion was litigated throughout the entirety of this case" and the subject of fact and expert discovery. ECF No. 1118 at 12. Every citation the Sun offers to support that point is to *legal* briefing, or to a passing reference to the 1989 JOA during testimony directed at entirely different issues. The reality is that no party has ever served a document request, propounded an interrogatory, or taken deposition testimony directed at whether the parties intended to revert to the 1989 JOA if the 2005 JOA were deemed unenforceable, whether the 1989 JOA imposed obligations on the parties at any time after 2005, whether the 1989 JOA can actually be performed in 2026, whether an afternoon newspaper is economically viable, what the Sun's damages would be under the 1989 JOA's 90/10 profit-sharing formula, or any of the other issues the proposed amended complaint now places at the center of this case.

Finally, the Sun baldly asserts that the SAC will not cause the Review-Journal to suffer prejudice because the Sun does not offer new "antitrust claims," does not "seek to expand the scope of the case," and advances "the same relevant market" as the prior complaint. ECF No. 1118 at 1, 2, 11, 13. Each of those assertions is belied by the Sun's own proposed amended complaint.

The Sun *admits* that it seeks to add a new claim seeking declaratory and injunctive relief. *See* ECF No. 1118 at 2 (seeking leave to add a new "declaratory relief claim with a supporting request for injunctive relief"). In reality, that claim demands four separate judicial declarations, SAC ¶¶ 297, 300, 303, 305, and four additional injunctions, *id*. ¶ 307(2)–(3), (6)–(7). As just discussed, that new claim would be a major expansion of the scope of the case because it centers on the theory that the 1989 JOA is valid and enforceable.

The Sun also adds many new allegations related to events that occurred after the filing of the operative complaint and after discovery closed. *See, e.g.*, SAC ¶¶ 89–93, 105, 114, 190–92, 219–26, 230–31, 236. Obviously the parties have not taken discovery related to those allegations. If the Sun wishes to forego discovery related to those new allegations, that is its prerogative. But it would be deeply unfair for the Sun to obtain permission to amend the complaint based on representations that subsequent discovery will be narrow and tailored, only to seek voluminous discovery down the road. And the Sun cannot unilaterally constrain the Review-Journal's rights to take discovery to defend against the baseless claims in the SAC.

19

The SAC also explicitly *alters* the relevant product market definition. In the FAC, the Sun alleged the "relevant market is ***the sale*** of local daily newspapers." ECF No. 1 ¶ 13; ECF No. 621 ¶¶ 20, 44, 48, 158. But in the SAC, the Sun alleges that the relevant market is "English-language, local, daily print newspapers." SAC ¶¶ 20, 95, 257, 269, 273.

> ~~44~~95. Thus, ~~the sale of~~English-language, local, daily print newspapers ~~is~~are a distinct relevant product market and line of commerce within the meaning of Section 2 of the Sherman Act and Section 7 of the Clayton Act.

This is a *major* change. It is an attempt to end-run the discovery that conclusively showed that the Sun does not ***sell*** newspapers and therefore does not compete in the market that it alleged and has no standing to bring its antitrust claims. *See* ECF No. 845 at 22–38; ECF No. 903 at 5–18. It also requires significant new substantial expert and fact discovery because, as the Sun itself has recognized, the relevant product market is a crucial and "highly fact-based inquiry" that underlies every aspect of its Section 2 claims. ECF No. 1091 at 13; ECF No. 50 at 13–14.

Under these circumstances, this Court should follow the many Ninth Circuit decisions affirming the denial of a motion to amend where allowing a new complaint would set the case back to square one and require reopening discovery. *See, e.g.*, *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1161 (9th Cir. 1989) (finding undue prejudice "[t]o put [defendant] through the time and expense of continued litigation on a new theory" where the defendant "has already incurred substantial litigation costs, which a more careful reading of [the statute] by [plaintiff] would have avoided"); *M/V Am. Queen*, 708 F.2d at 1492 (finding prejudice where amendment involved "different acts, employees and time periods necessitating additional discovery"); *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 953 (9th Cir. 2006) (finding prejudice where allowing amendment "would have unfairly imposed potentially high, additional litigation costs on [defendant] that could have easily been avoided had [plaintiff] pursued its 'tainted product' theory in its original complaint"); *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994) (affirming denial of leave to amend where parties had already "engaged in voluminous and protracted discovery," discovery was complete, and trial was two months away); *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1387–88 (9th Cir. 1990) (prohibiting amendment where shift in legal

theories will lead to "nullification of prior discovery" and "the burden of necessary future discovery") (citing *Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989) ("Putting the defendants 'through the time and expense of continued litigation on a new theory, with the possibility of additional discovery, would be manifestly unfair and unduly prejudicial.'")); *Stein v. United Artists Corp.*, 691 F.2d 885, 898 (9th Cir. 1982) (denying leave to amend sought "after the trial court had heard and granted dismissal motions"); *Acri*, 781 F.2d at 1398–99 (denying leave to amend after court heard oral argument on summary judgment motion).

Indeed, the cases the Sun itself cites confirm that *denying* leave to amend is the proper course when, as here, the proposed amendment operates to "shift the case or require significant new discovery." ECF No. 1118 at 11 (citation omitted); *Morongo*, 893 F.2d at 1079 (affirming denial of leave to amend when proposed new complaint "would have required defendants to have undertaken, at a late hour, an entirely new course of defense."); *accord Boorman*, 772 F. Supp. 2d at 1317 (allowing amendment because, unlike here, "Plaintiffs' claims factually [did] not change").

### III. The Ninth Circuit's Orders Confirm Amendment Is Improper.

The Sun contends that the Ninth Circuit's decision to hold the 2005 JOA is unlawful and unenforceable justifies the Sun's belated motion to amend the complaint. The Sun is wrong.

For starters, regardless of any change in law, granting leave to amend is improper here because of its futility, the Sun's extreme delay, and the substantial and unjustifiable prejudice that it would cause. In deciding a motion to amend, courts must "tak[e] account of all relevant circumstances." *Saticoy Bay*, 2024 WL 2801492, at *2. And in circumstances like these—where allowing amendment would be futile or force an advanced case back to the beginning and require significant new discovery—multiple courts have denied a motion to amend *notwithstanding* a change in law. *See, e.g.*, *Cryer v. Idaho Dep't of Lab.*, 2018 WL 3636529, at *3 (D. Idaho July 30, 2018) (denying leave to amend notwithstanding a change in law due to prejudice and other factors); *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) ("Futility of amendment can, by itself, justify the denial of a motion for leave to amend"); *Nowak v. Genworth Life & Annuity Ins. Co.*, 726 F. App'x 637, 638 (9th Cir. 2018) (affirming denial of leave to amend, reasoning that futility "includes the 'inevitability of a claim's defeat on summary judgment'").

21

In any event, this is not a case where the supposed change in law justifies a belated amendment. In general, amendment may be appropriate following a change in law when the new law constitutes "new or previously unavailable information" that changes the contours of a case. *Velez*, 2025 WL 3691474, at *2. For example, courts have permitted amendment in "situations where the controlling precedents changed midway through the litigation." *Sonoma Cnty. Ass'n of Retired Emps v. Sonoma Cnty.*, 708 F.3d 1109, 1117–18 (9th Cir. 2013); ECF No. 1118 at 8–9 (citing cases allowing amendment when previously binding circuit or Supreme Court law changed during litigation).

Those cases are inapposite here. There has been no change in *controlling* law: the NPA's plain language has not changed, and the Ninth Circuit did not upend 50 years of precedent; it applied modern statutory interpretation principles to resolve "an issue of first impression" on which there previously was no on-point circuit precedent. *See* ECF No. 1118 at 9. Furthermore, the SAC does not reflect an attempt to take account of the Ninth Circuit's decision. The SAC attempts to *circumvent* the Ninth Circuit's decision by keeping the core of the FAC intact while whitewashing the allegations to seem like they are no longer based on the unlawful and unenforceable 2005 JOA. In other words, the Sun seeks to amend its complaint in spite of what it claims is a change in law, not because of it. The Sun does not cite a single case permitting amendment for that purpose and the Review-Journal is not aware of one.

## CONCLUSION

For any one and all of the reasons set forth in this opposition, Defendants respectfully request that the Court deny Plaintiff's motion to further amend its Amended Complaint.

Dated:    April 8, 2026

CLAGGETT & SYKES LAW FIRM

By:    */s/ Michael Gayan*
MICHAEL J. GAYAN, ESQ., SBN 11135
1160 N. Town Center Drive, Suite 200
Las Vegas, Nevada 89144

J. RANDALL JONES, ESQ., SBN 1927
MONA KAVEH, ESQ., SBN 11825
KEMP JONES LLP
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169

22

DAVID R. SINGER, ESQ. (*pro hac vice*)
AMY M. GALLEGOS, ESQ. (*pro hac vice*)
ANDREW G. SULLIVAN, ESQ. (*pro hac vice*)
JENNER & BLOCK LLP
515 South Flower Street, Suite 3300
Los Angeles, California 90071

RICHARD L. STONE, ESQ. (*pro hac vice*)
850 Devon Avenue
Los Angeles, California 90024

*Attorneys for Defendants/Counterclaimant*

23

**PROOF OF SERVICE**

I hereby certify that on the 8th day of April, 2026, I served a true and correct copy of the foregoing **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO MODIFY THE SCHEDULING ORDER AND AMEND AND SUPPLEMENT THE COMPLAINT** via the United States District Court's CM/ECF electronic filing system to all parties on the e-service list.

_/s/ Melisa Pytlik_

24