E. LEIF REID, Nevada Bar No. 5750
KRISTEN L. MARTINI, Nevada Bar No. 11272
NICOLE SCOTT, Nevada Bar No. 13757
CLARK HILL PLC
1700 S. Pavilion Center Dr., Suite 500
Las Vegas, Nevada 89135
Tel: 702.862.8300
Fax: 702.778.9709
Email: lreid@clarkhill.com
        kmartini@clarkhill.com
        nsscott@clarkhill.com

JAMES J. PISANELLI, Nevada Bar No. 4027
TODD L. BICE, Nevada Bar No. 4534
PISANELLI BICE PLLC
400 South 7th Street, Suite 300
Las Vegas, Nevada 89101
Tel: 702.214.2100
Fax: 702.214.2101
Email: JJP@pisanellibice.com
        TLB@pisanellibice.com

JORDAN T. SMITH, Nevada Bar No. 12097
BROWNSTEIN HYATT FARBER
SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106
Tel: 702.464.7022
Fax: 702.382.8135
Email: jtsmith@bhfs.com

JOSEPH M. ALIOTO, *PRO HAC VICE*
ALIOTO LAW FIRM
One Sansome Street, 35th Floor
San Francisco, California 94104
Tel: 415.434.8900
Fax: 415.434.9200
Email: jmalioto@aliotolaw.com

*Attorneys for Plaintiff/Counterdefendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| LAS VEGAS SUN, INC., a Nevada corporation,<br><br>Plaintiffs,<br><br>v.<br><br>SHELDON ADELSON (Estate Of), an individual, and as the alter ego of News+Media Capital Group LLC, Las Vegas Review-Journal, Inc., and Interface Operations LLC dba Adfam; PATRICK DUMONT, an individual, and as alter ego of Las Vegas Review-Journal, Inc., News+Media Capital Group, LLC, and Interface Operations LLC dba Adfam; NEWS+MEDIA CAPITAL GROUP LLC, a Delaware limited liability company; LAS VEGAS REVIEW-JOURNAL, INC., a Delaware corporation; INTERFACE OPERATIONS LLC dba ADFAM, a Delaware limited liability company and as the alter ego of Las Vegas Review-Journal, Inc., and News+Media Capital Gorup, LLC; and DOES, | Case No.: 2:19-CV-01667-ART-MDC<br><br>**APPENDIX OF EXHIBITS TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**<br><br>**(VOLUME 3)** |

1

I-X, inclusive,

Defendants.

LAS VEGAS REVIEW-JOURNAL, a Delaware corporation,

Counterclaimant,

v.

LAS VEGAS SUN, INC., a Nevada corporation; BRIAN GREENSPUN, an individual and as alter ego of Las Vegas Sun, Inc.; GREENSPUN MEDIA GROUP, LLC, a Nevada limited liability company, as the alter ego of Las Vegas Sun, Inc.,

Counterclaim Defendants.

## APPENDIX INDEX

| Exhibit No. | Description | Vol. | Page Nos. |
|---|---|---|---|
| 1 | Sept. 19, 2022, Expert Report Excerpts of Las Vegas Sun, Inc.'s Expert Dr. Michael Katz (**FILED UNDER SEAL**) | 1 | SA1-SA246 |
| 2 | Sept. 19, 2022, Expert Report Excerpts of Las Vegas Sun, Inc.'s Expert Dr. Robert Picard (**FILED UNDER SEAL**) | 2 | SA247-SA291 |
| 3 | June 17, 1989, Joint Operating Agreement (the "1989 JOA") (SUN_00001996-2039) | 2 | SA292-SA336 |
| 4 | Report of the Assistant Attorney General in Charge of the Antitrust Division, Public File No. 44-03-13, In the Matter of: Application by the Las Vegas Sun, Inc. and Donrey of Nevada, Inc. for Approval of a Joint Newspaper Operating Arrangement Pursuant to the Newspaper Preservation Act, 15. U.S.C. §§ 1801-1804 (SUN_00024386-453) | 2 | SA337–SA405 |

2

| 5 | June 1, 1990, Opinion of The Attorney General, Public File No. 44-03-13, In the Matter of: Application by the Las Vegas Sun, Inc. and Donrey of Nevada, Inc. for Approval of a Joint Newspaper Operating Arrangement Pursuant to the Newspaper Preservation Act, 15. U.S.C. §§ 1801-1804 (SUN_00024373-85) | 2 | SA406–SA420 |
|---|---|---|---|
| 6 | Declaration of Brian Greenspun in Support of Plaintiff/Counterdefendants' Emergency Motion for Temporary Restraining Order and Preliminary Injunction | 2 | SA421–SA428 |
| 7 | Hearing Transcript Excerpts of Mark Hinueber, *Las Vegas Sun, Inc. v. Stephens Media LLC*, AAA Case No. 01-16-0001-9187 (Oct. 6, 2016) (Vol. 4) (SUN_00023106-08, 273-74, 278, 280, 282-86, 383) (**FILED UNDER SEAL**) | 2 | SA429–SA442 |
| 8 | Sept. 8, 2016, Declaration of Mark Hinueber in Support of Stephens Media LLC's Opposition to Las Vegas Sun's Motion for Summary Judgment, AAA Case No. 01-16-0001-9187 (SUN-00064364-67) (**FILED UNDER SEAL**) | 2 | SA443–SA447 |
| 9 | June 10, 2005, Amended and Restated Agreement (the "2005 JOA") (SUN_00002045-69) | 2 | SA448–SA473 |
| 10 | Hearing Transcript Excerpts of Jackson Farrow, *Las Vegas Sun, Inc. v. Stephens Media LLC*, AAA Case No. 01-16-0001-9187 (Oct. 5, 2016) (Vol. 3) (SUN_00021972-74, 76-83, 159) (**FILED UNDER SEAL**) | 2 | SA474-SA486 |
| 11 | Hearing Transcript Excerpts of Brian Greenspun, *Las Vegas Sun, Inc. v. Stephens Media LLC*, AAA Case No. 01-16-0001-9187 (Oct. 3, 2016) (Vol. 1) (SUN_00019641-43, 70, 96-97, 99, 703, 842) (**FILED UNDER SEAL**) | 2 | SA487-SA496 |
| 12 | Sept. 19, 2022, Expert Report Excerpts of Las Vegas Sun, Inc.'s Expert Lawrence Aldrich (**FILED UNDER SEAL**) | 3 | SA497–SA537 |

3

| 13 | June 16, 2005, email from G. Lang to J. Farrow et al., re DR Partners' submission of 2005 JOA to DOJ "pursuant to the Newspaper Preservation Act, 15 USC § 1801 et seq. and 28 CFR § 48.16 (SUN_00005886-89) (**FILED UNDER SEAL**) | 3 | SA538–SA542 |
|---|---|---|---|
| 14 | Sept. 19, 2022, Expert Report Excerpts of Las Vegas Sun, Inc.'s Expert Dr. Russell Lamb (**FILED UNDER SEAL**) | 3 | SA543-SA548 |
| 15 | Deposition Transcript Excerpts of Las Vegas Sun, Inc.'s Expert L. Aldrich, *Las Vegas Sun, Inc. v. Adelson*, No. 2:18-cv-0166-ART-VCF (D. Nev. March 15, 2023) | 3 | SA549–SA574 |
| 16 | Sept. 23, 2005, email from C. Cliff to D. Jordan, et al., re Amendment of the Las Vegas JOA – Joint Defense Agreement (SUN_00001673-84) (**FILED UNDER SEAL**) | 3 | SA575-SA587 |
| 17 | Aug. 5, 2005, facsimile from B. Matelson to G. Lang re Las Vegas JOA, CID No. 23751 (SUN_00012237-47) (**FILED UNDER SEAL**) | 3 | SA588-SA599 |
| 18 | Oct. 12, 2005, letter from A. Marx to B. Matelson, re responses to CID No. 23751 (SUN_00001806-14) (**FILED UNDER SEAL**) | 3 | SA600–SA609 |
| 19 | Feb. 13, 2006, facsimile from B. Matelson to A. Marx, re Civil Investigative Demand Nos. 24097 & 24098 (SUN_00012233-36) (**FILED UNDER SEAL**) | 3 | SA610–SA614 |
| 20 | Deposition Transcript Excerpts of Las Vegas Sun, Inc.'s 30(b)(6) Corporate Representative Robert Cauthorn, *Las Vegas Sun, Inc. v. Adelson*, No. 2:18-cv-0166-ART-VCF (D. Nev. Feb. 16, 2022) (**REDACTED**) | 3 | SA615–SA636 |
| 21 | Aug. 16, 2005, letter from B. Matelson to G. Lang re 8/16/05 DOJ faxed letter to G. Lang re Civil Investigative Demand No. 23751 (SUN_00012248-50) (**FILED UNDER SEAL**) | 3 | SA637–SA640 |

| 22 | Aug. 25, 2005, letter from G. Lang to B. Matelson re Las Vegas JOA (SUN_00001965-68) (**FILED UNDER SEAL**) | 3 | SA641–SA645 |
|---|---|---|---|
| 23 | Apr. 9, 2008, letter from B. Matelson to G. Lang, et al., re Las Vegas Joint Operating Agreement ("No Action Letter") (DEFS0000418) | 3 | SA646–SA647 |
| 24 | Deposition Transcript Excerpts of Las Vegas Review-Journal 30(b)(6) Corporate Representative Glenn Cook, *Las Vegas Sun, Inc. v. Adelson*, No. 2:19-cv-0166-ART-VCF (D. Nev. Aug. 19, 2022) (**REDACTED**) | 3 | SA648–SA669 |
| 25 | Deposition Transcript Excerpts of Brian Greenspun, *Las Vegas Sun, Inc. v. Adelson*, No. 2:19-cv-0166-ART-VCF (D. Nev. Mar. 23, 2022) (**REDACTED**) | 3 | SA670–SA689 |
| 26 | Final Award of Arbitrator, *Las Vegas Sun, Inc. v. News+Media Capital Group, LLC*, AAA Case No. 01-18-0000-7568 (July 2, 2019) (SUN_00013635-46) (**FILED UNDER SEAL**) | 3 | SA690–SA702 |
| 27 | Aug. 29, 2019, letter from K. Moyer to B. Greenspun re: Notice of Default (SUN_00053251-53) | 3 | SA703-SA706 |
| 28 | Sept. 27-Oct. 4, 2019, email between counsel re Preliminary Injunction Motion | 3 | SA707-SA718 |
| 29 | Jan. 11, 2015, email from R. Pergament to P. Dumont et al., re Preliminary Observations (DEFS0028645-47) (**FILED UNDER SEAL**) | 3 | SA719–SA722 |
| 30 | Deposition Transcript Excerpts of Jason Taylor, *Las Vegas Sun, Inc. v. News+Media Capital Group, LLC*, AAA Case No. 01-18-0000-7568 (Mar. 21, 2019) (**FILED UNDER SEAL**) | 4 | SA723–SA765 |
| 31 | Deposition Transcript Excerpts of Jason Taylor, *Las Vegas Sun, Inc. v. Adelson*, No. 2:19-cv-0166-ART-VCF (D. Nev. May 12, 2022) (**REDACTED**) | 4 | SA766–SA790 |

| 32 | April 3, 2017, email from J. Wilson to N. Cusick re Monday Meeting Notes (DEFS0016006-07) (**FILED UNDER SEAL**) | 4 | SA791–SA793 |
|----|----|----|----|
| 33 | Deposition Transcript Excerpts of Craig Moon, *Las Vegas Sun, Inc. v. Adelson*, No. 2:19-cv-0166-ART-VCF (D. Nev. Mar. 3, 2022) | 4 | SA794–SA804 |
| 34 | Jan. 18, 2023, Rebuttal Expert Report Excerpts of Las Vegas Sun, Inc.'s Expert Barbara Gottlieb (**FILED UNDER SEAL**) | 4 | SA805–SA813 |
| 35 | Las Vegas Review Journal Payment Calculation JOA Fiscal Year Ending March 2018 (**FILED UNDER SEAL**) | 4 | SA814–SA816 |
| 36 | Mar. 3, 2017, email from P. McGuire to C. Moon re Revised Summary of JOA Pmt. Calc (DEFS0165095-97) (**FILED UNDER SEAL**) | 4 | SA817–SA820 |
| 37 | Stephens Media Group's Las Vegas Review Journal Fiscal Year End March 31, 2006, Financials (Exhibit 7 to Deposition of Robert Cauthorn, *Las Vegas Sun, Inc. v. News+Media Capital Group, LLC*, AAA Case No. 01-18-0000-7568 (Mar. 27, 2019)) (**FILED UNDER SEAL**) | 4 | SA821–SA824 |
| 38 | Deposition Transcript Excerpts of Las Vegas Review-Journal 30(b)(6) Corporate Representative Stephen Hall, *Las Vegas Sun, Inc. v. Adelson*, No. 2:19-cv-0166-ART-VCF (D. Nev. May 12, 2022) (**REDACTED**) | 4 | SA825–SA846 |
| 39 | Sept. 19, 2022, Expert Report Excerpts of Las Vegas Sun, Inc.'s Expert Barbara Gottlieb (**FILED UNDER SEAL**) | 4 | SA847–SA859 |
| 40 | Feb. 12, 2016, email from P. Sack to S. Garfinkel re Las Vegas (DEFS0093000-24) (**FILED UNDER SEAL**) | 4 | SA860–SA887 |

| 41 | Feb. 9, 2015, VRC Valuation of Certain Intangible Assets of Las Vegas Review Journal as of Dec. 10, 2015 (DEFS0092587-621) (**FILED UNDER SEAL**) | 4 | SA888–SA923 |
| 42 | March 3, 2017, Email from C. Moon to F. Vega re an update and two quick questions (DEFS0013609-10) (**FILED UNDER SEAL**) | 4 | SA924–SA926 |
| 43 | Las Vegas Review-Journal, Inc. Financial Statements December 31, 2019, and 2018 (DEFS0083496-515) (**FILED UNDER SEAL**) | 4 | SA927–SA947 |
| 44 | Las Vegas Review Journal Payment Calculation JOA Fiscal Year Ending March 2020 (SUN_00008774) (**FILED UNDER SEAL**) | 5 | SA948–SA950 |
| 45 | Apr. 30, 2022, email from S. Hall to R. Cauthorn re JOA Calculation – JOA Year Ended March 2022 (SUN_00084445-47) (**FILED UNDER SEAL**) | 5 | SA951–SA954 |
| 46 | Sept. 19, 2022, Expert Report Excerpts of Las Vegas Sun, Inc.'s Expert Dr. Gregory Gundlach (**FILED UNDER SEAL**) | 5 | SA955–SA1005 |
| 47 | Sept. 19, 2022, Expert Report Excerpts of Las Vegas Sun, Inc.'s Expert J. David Kordalski (**FILED UNDER SEAL**) | 5 | SA1006–SA1020 |
| 48 | Apr. 4, 2023, Supplemental Expert Report Excerpts of Las Vegas Sun, Inc.'s Expert Dr. Gregory Gundlach (**FILED UNDER SEAL**) | 5 | SA1021–SA1025 |
| 49 | Sept. 19, 2016, email from J. Wilson to E. Cassidy re: RJ with Sun? (DEFS01454464-67) (**FILED UNDER SEAL**) | 5 | SA1026–SA1030 |
| 50 | Apr. 2, 2017, email from C. Moon to R. Cauthorn Re: Concerns about your new design (DEFS0002488-89) (**FILED UNDER SEAL**) | 5 | SA1031–SA1033 |

7

| 51 | Apr. 17, 2019, email from K. Espejo to K. Moyer re: The Sun in eEdition (DEFS0166089-94) (**FILED UNDER SEAL**) | 5 | SA1034–SA1040 |
| --- | --- | --- | --- |
| 52 | Defendants' First Amended Responses to Plaintiff's Interrogatories (First Set), served March 19, 2021 | 5 | SA1041-SA1052 |
| 53 | Deposition Transcript Excerpts of Las Vegas Review-Journal 30(b)(6) Corporate Representative Chris Blaser, *Las Vegas Sun, Inc. v. Adelson*, No. 2:19-cv-0166-ART-VCF (D. Nev. Aug. 11, 2022) (**REDACTED**) | 5 | SA1053–SA1069 |
| 54 | Chris Jones & J.M. Kalil's article, Las Vegas Sun to rise with morning RJ, published in the Las Vegas Review Journal on June 15, 2005 (SUN_0000627-32) | 5 | SA1070–SA1076 |
| 55 | Steve Kanigher's article, *Sun deal with R-J "a tremendous opportunity" Newspaper to return to morning delivery*, published in the Las Vegas Sun on June 15, 2005 (DEFS0190559-61) | 5 | SA1077–SA1080 |
| 56 | Deposition Transcript Excerpts Ray Brewer, *Las Vegas Sun, Inc. v. Adelson*, No. 2:19-cv-0166-ART-VCF (D. Nev. June 24, 2022) | 5 | SA1081–SA1091 |
| 57 | Las Vegas Review Journal Newsroom Guide (DEFS0185654-69) ((**FILED UNDER SEAL**) | 5 | SA1092–SA1108 |
| 58 | June 4, 2016, Front Page of Newspapers (SUN_00009885) | 5 | SA1109–SA1110 |
| 59 | Jan. 11, 2018, Front Page of Las Vegas Sun (DEFS0001703) | 5 | SA1111–SA1112 |
| 60 | Feb. 13, 2018, Front Page of Las Vegas Sun (DEFS0001697) | 5 | SA1113–SA1114 |
| 61 | Feb. 12, 2018, Email from R. Brewer to R. Cauthorn re: Two quick questions from LV Sun print (SUN_00055720) (**FILED UNDER SEAL**) | 5 | SA1115–SA1116 |

| 62 | Jan. 18, 2023, Rebuttal Expert Report Excerpts of Las Vegas Sun, Inc.'s Expert Dr. Michael Katz (**FILED UNDER SEAL**) | 6 | SA1117–SA1229 |
|---|---|---|---|
| 63 | Deposition Transcript Excerpts Patrick Dumont, *Las Vegas Sun, Inc. v. Adelson*, No. 2:19-cv-0166-ART-VCF (D. Nev. Oct. 28, 2021) (**FILED UNDER SEAL**) | 6 | SA1230–SA1246 |
| 64 | Deposition Transcript Excerpts Keith Moyer, *Las Vegas Sun, Inc. v. Adelson*, No. 2:19-cv-0166-ART-VCF (D. Nev. Apr. 5, 2022) | 6 | SA1247–SA1264 |
| 65 | Aug. 30, 2019, letter from T. Burkholder to B. Greenspun re Message via the Las Vegas Sun (SUN_00000293) (**REDACTED**) | 6 | SA1265–SA1266 |
| 66 | Sept. 6, 2019, email originally from A. Marshall to Las Vegas Sun Letters, re Please work with the RJ to maintain the JOA (SUN_00024479) (**REDACTED**) | 6 | SA1267–SA1268 |
| 67 | Jan. 15, 2019, email from K. Woods to B. Greenspun re Message via the Las Vegas Sun (SUN_00000315) (**REDACTED**) | 6 | SA1269–SA1270 |
| 68 | Aug. 27, 2017, email from M. Spigelman to B. Greenspun re Message via the Las Vegas Sun (SUN_00000376-77) (**REDACTED**) | 6 | SA1271–SA1273 |
| 69 | Aug. 30, 2019, email from W. Wreatha to Las Vegas Sun Letters, re Printing & distribution arrangement with LV Review-Journal (SUN_0000300) (**REDACTED**) | 6 | SA1274–SA1275 |
| 70 | Sept. 6, 2019, email from C. Sappraicone to Las Vegas Review Journal Letters re Not printing The Las Vegas Sun? (SUN_0000298) (**REDACTED**) | 6 | SA1276–SA1277 |
| 71 | Sept. 5, 2019, email from P. Ryan to B. Greenspun re Keep the Sun (SUN_0000303-04) (**REDACTED**) | 6 | SA1278–SA1280 |

9

| 72 | June 13, 2016, email from J. Perdigao to F. Vega et al., re JOA Info (DEFS0146935) (**FILED UNDER SEAL**) | 6 | SA1281–SA1282 |
|---|---|---|---|
| 73 | Excerpts of Defendants News+Media Capital Group LLC and Las Vegas Review-Journal Inc.'s First Amended Answer to Complaint and Counterclaims, *Las Vegas Sun, Inc. v. News+Media Capital Group LLC* (Clark Cnty. Dist. Ct. Sept. 30, 2019) | 6 | SA1283-SA1290 |
| 74 | Deposition Transcript Excerpts of the RJ's Rule 30(b)(6) corporate representative Stephen Hall, *Las Vegas Sun, Inc. v. News+Media Capital Group LLC*, AAA Case No. 01-18-0000-7567 (Mar. 13, 2019) (SUN_00024708-09, 11, 14, 16, 32-33, 946) (**FILED UNDER SEAL**) | 6 | SA1291-SA1300 |
| 75 | Excerpts from the September 19, 2022, initial report of Las Vegas Sun, Inc.'s expert Lawrence Aldrich (**FILED UNDER SEAL**) | 6 | SA1301-SA1304 |
| 76 | February 16, 2022, Deposition Transcript Excerpts of the Sun's Rule 30(b)(6) corporate representative Robert Cauthorn, Las Vegas Sun, Inc. v. Sheldon Adelson (Estate of), Case No. 2:19-cv-01667-ART-MDC | 6 | SA1305-SA1329 |
| 77 | Declaration of Barbara J. Gottlieb in Support of Plaintiff/Counterdefendants' Emergency Motion for Temporary Restraining Order and Preliminary Injunction | 6 | SA1330-SA1333 |
| 78 | Declaration of Robert G. Picard | 6 | SA1334-SA1340 |
| 79 | Las Vegas Review-Journal Newspaper Subscriptions Options as of April 3, 2026 (SUN_00169020) | 6 | SA1341-SA1342 |
| 80 | *Why we've stopped printing the Sun* article, April 3, 2026 (SUN_00169045-46) | 6 | SA1343-SA1345 |
| 81 | Sun letters and social media posts, April 3-5, 2026 (SUN_00169041-44, 47-51) (**REDACTED**) | 6 | SA1346-SA1355 |
| 82 | Combined Newspapers front pages, 1991-2004 (SUN_00169021-40) | 7 | SA1356-SA1376 |

| 83 | April 10, 2026, Declaration of J. David Kordalski in Support of Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction and Supplemental Expert Report of J. David Kordalski **(FILED UNDER SEAL)** | 7 | SA1377-SA1389 |
|----|----|----|----|
| 84 | April 10, 2026, Declaration of Barbara J. Gottlieb and Supplement to Expert Witness Reports of Barbara J. Gottlieb, CPA/CFF, CFE **(FILED UNDER SEAL)** | 7 | SA1390-SA1398 |
| 85 | April 10, 2026, Declaration of Robert G. Picard in Support of Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction and Supplemental Report of Robert G. Picard, Ph.D. **(FILED UNDER SEAL)** | 7 | SA1399-SA1412 |
| 86 | April 10, 2026, Declaration of Gregory T. Gundlach in Support of Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction and Second Supplement to Report of Gregory T. Gundlach, J.D., PhD. **(FILED UNDER SEAL)** | 7 | SA1413-SA1424 |
| 87 | April 10, 2026, Declaration of Lawrence J. Aldrich in Support of Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction and Supplemental Expert Report of Lawrence J. Aldrich **(FILED UNDER SEAL)** | 7 | SA1425-SA1434 |
| 88 | April 10, 2026, Declaration of Michael L. Katz and Supplemental Report of Michael L. Katz **(FILED UNDER SEAL)** | 7 | SA1435-SA1459 |
| 89 | Declaration of Brian L. Greenspun in Support of Plaintiff/Counterdefendants' Motion for Temporary Restraining Order and Preliminary Injunction **(FILED UNDER SEAL)** | 7 | SA1460-SA1470 |

DATED this 10th day of April, 2026.

CLARK HILL PLC

By: */s/ Kristen L. Martini*

E. Leif Reid, Nevada Bar No. 5750
Kristen L. Martini, Nevada Bar No. 11272
Nicole S. Scott, Nevada Bar No. 13757
1700 S. Pavilion Center Drive, Suite 500
Las Vegas, Nevada 89135

PISANELLI BICE PLLC
James J. Pisanelli, Nevada Bar No. 4027
Todd L. Bice, Nevada Bar No. 4534
400 South 7th Street, Suite 300
Las Vegas, Nevada 89101

BROWNSTEIN HYATT FARBER
SHRECK, LLP
Jordan T. Smith, Nevada Bar No. 12097
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106

ALIOTO LAW FIRM
Joseph M. Alioto, Pro Hac Vice
One Sansome Street, 35th Floor
San Francisco, California 94104

*Attorneys for Plaintiff/Counterdefendants*

## CERTIFICATE OF SERVICE

I certify that I am an employee of CLARK HILL PLC, and I caused a true and correct copy of the foregoing **APPENDIX OF EXHIBITS TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION (VOLUME 3)** to be served by electronically filing the foregoing with the CMECF electronic filing system which will send notice of electronic filing to:

J. Randall Jones, Esq.
Mona Kaveh, Esq.
KEMP JONES, LLP
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, NV 89169

Michael J. Gayan, Esq.
CLAGGETT & SYKES LAW FIRM
4101 Meadows Lane, Suite 100
Las Vegas, NV 89107

Amy M. Gallegos, Esq.
David R. Singer, Esq.
Andrew G. Sullivan, Esq.
Alison I Stein, Esq.
JENNER & BLOCK LLP
515 South Flower Street, Suite 3300
Los Angeles, CA 90071

Richard L. Stone, Esq.
850 Devon Avenue
Los Angeles, CA 90024

DATED: April 10, 2026.

/s/ Kristen L. Martini
An Employee of Clark Hill PLC

13

# EXHIBIT 12

Sept. 19, 2022, Expert Report Excerpts of Las Vegas Sun, Inc.'s Expert Lawrence Aldrich (**FILED UNDER SEAL**)

# EXHIBIT 12

# EXHIBIT 13

June 16, 2005, email from G. Lang to J. Farrow et al., re DR Partners' submission of 2005 JOA to DOJ "pursuant to the Newspaper Preservation Act, 15 USC § 1801 et seq. and 28 CFR § 48.16 (SUN_00005886-89) (**FILED UNDER SEAL**)

# EXHIBIT 13

# EXHIBIT 14

Sept. 19, 2022, Expert Report Excerpts of Las Vegas Sun, Inc.'s Expert Dr. Russell Lamb (**FILED UNDER SEAL**)

# EXHIBIT 14

SA543

# EXHIBIT 15

Deposition Transcript Excerpts of Las Vegas Sun, Inc.'s Expert L. Aldrich, *Las Vegas Sun, Inc. v. Adelson*, No. 2:18-cv-0166-ART-VCF (D. Nev. March 15, 2023)

# EXHIBIT 15

SA549

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

LAS VEGAS SUN, INC., a          )
Nevada corporation,             )
                                )
                Plaintiff,      )   CASE NO:
                                )   2:19-CV-01667-GMN-VCF
        vs.                     )
                                )
SHELDON ADELSON, an             )
Individual and as the alter     )
Ego of News+Media Capital       )
Group LLC and as the alter      )
Ego of Las Vegas Review         )
Journal, Inc.; PATRICK          )
DUMONT, an individual;          )   VIDEOTAPED DEPOSITION
NEWS+MEDIA CAPITAL GROUP        )
LLC, a Delaware limited         )        OF
Liability company; LAS          )
VEGAS REVIEW-JOURNAL, INC.,     )    EXPERT WITNESS
A Delaware corporation; and     )
DOES, I-X, inclusive,           )   LAWRENCE J. ALDRICH
                                )
                Defendants.     )
_____)    WEDNESDAY,
LAS VEGAS REVIEW-JOURNAL,       )   MARCH 15, 2023
INC., a Delaware                )
Corporation,                    )
                                )
                Counterclaimant,)
                                )
        vs.                     )
                                )
LAS VEGAS SUN, INC. A           )
Nevada corporation; BRIAN       )
GREENSPUN, an individual        )
And as the alter ego of Las     )
Vegas Sun, Inc.; GREENSPUN      )
MEDIA GROUP, LLC, a Nevada      )
Limited liability company,      )
As the alter ego of Las         )   REPORTED BY:
Vegas Sun, Inc.,                )   BRITTANY CASTREJON,
                                )   RPR, CRR, NV CCR #926
        Counterclaim-Defendants.)
_____)    JOB NO. 959153

SA550

Page 2

VIDEOTAPED DEPOSITION OF LAWRENCE J. ALDRICH,

Expert Witness, taken at Kemp Jones, located at 3800

Howard Hughes Parkway, Seventeenth Floor, Las Vegas,

Nevada 89169, stenographically reported on, WEDNESDAY,

MARCH 15, 2023, at 9:05 a.m., before Brittany Castrejon,

Certified Realtime Reporter, in and for the State of

Nevada.


APPEARANCES:

For Plaintiff/Counterclaim-Defendants:

               LEWIS ROCA ROTHGERBER CHRISTIE LLP
               BY: E. LEIF REID, ESQ.
               BY: KRISTEN MARTINI, ESQ. (Via Zoom)
               BY: NICOLE SCOTT, ESQ.
               One East Liberty Street
               Suite 300
               Reno, Nevada 89501
               775-823-2900
               lreid@lewisroca.com

For Defendants/Counterclaimants:

               KEMP JONES, LLP
               BY:  MICHAEL GAYAN, ESQ.
               3800 Howard Hughes Parkway
               17th Floor
               Las Vegas, Nevada 89169
               702-385-6000
               m.gayan@kempjones.com

               JENNER & BLOCK LLP
               BY:  DAVID SINGER, ESQ.
               BY:  KRISTEN GREEN, ESQ.
               515 South Flower Street
               Suite 3300
               Los Angeles, California 90071
               213-239-2206
               dsinger@jenner.com

SA551

LAWRENCE J. ALDRICH - 03/15/2023

Page 3

APPEARANCES (CONTINUED):

Also Present:   Terrell Holloway, Videographer
                Jordan Smith, Esq. (Via Zoom)
                Ben Lipman, Esq. (Via Zoom)
                Brian Greenspun (Via Zoom)
                Robert Cauthorn (Via Zoom)
                Keith Moyer (Via Zoom)

LAWRENCE J. ALDRICH - 03/15/2023

Page 4

INDEX OF EXAMINATION

WITNESS:  LAWRENCE J. ALDRICH

EXAMINATION                                              PAGE

By Mr. Singer                                          7, 344

By Mr. Reid                                               341


INDEX OF EXHIBITS

NUMBER          DESCRIPTION                              PAGE

EXHIBIT 207   2005 JOA                                      *
              (Previously marked exhibit)

EXHIBIT 235   Gannett 2018 Annual Report                    *
              (Previously marked exhibit)

EXHIBIT 236   New York Times Article Re Gannett             *
              (Previously marked exhibit)

EXHIBIT 263   9/26/2005 DOJ Letter                          *
              (Previously marked exhibit)
              (CONFIDENTIAL)

EXHIBIT 264   4/9/2008 DOJ Letter                           *
              (Previously marked exhibit)

EXHIBIT 319   Verified Complaint                            *
              (Previously marked exhibit)
              (CONFIDENTIAL)

EXHIBIT 387   DEFS0093000-DEFS0093024; Exhibit F            *
              (Previously marked exhibit)
              (CONFIDENTIAL)

EXHIBIT 520   LVS Amended Complaint                         *
              (Previously marked exhibit)

EXHIBIT 522   Aldrich Expert Report                        **

EXHIBIT 523   Aldrich Rebuttal Report                      **

EXHIBIT 524   Sun's First Supplement to Initial            **
              Expert Disclosure Statement

LAWRENCE J. ALDRICH - 03/15/2023

Page 5

INDEX OF EXHIBITS (CONTINUED)

WITNESS:  LAWRENCE J. ALDRICH

NUMBER          DESCRIPTION                              PAGE

EXHIBIT 527  CRS - Newspapers in the Digital Age       **

EXHIBIT 529  SUN_00005886 - SUN_00005889               **
             (CONFIDENTIAL)

EXHIBIT 531  ALDRICH_00000156 - ALDRICH_00000165       **
             (CONFIDENTIAL)

EXHIBIT 532  5/26/2022 Pew Newspaper Fact Sheet        **

EXHIBIT 533  3/26/2019 Pew Local News Dynamics         **

EXHIBIT 536  1803 Antitrust Exemptions                 **

EXHIBIT 537  SUN_00004372 -SUN_00004403                **
             (CONFIDENTIAL)

EXHIBIT 543  DEFS0193784                                **
             (ATTORNEYS EYES ONLY)

EXHIBIT 548  DEFS0013621 - DEFS0013622                  **
             (CONFIDENTIAL)

EXHIBIT 549  Supreme Court of Nevada Opinion           **

EXHIBIT 558  Pew Eight-in-Ten Article                  **

EXHIBIT 559  Nolte Expert Report                       **
             (CONFIDENTIAL)

* Denotes Previously Marked Exhibits
** Denotes exhibits marked before the proceedings.

Page 7

I'll be taking the deposition today.  I represent the defendants and counterclaimants.

On Zoom are Ben Lipman, the general counsel of the Las Vegas Review-Journal.  Keith Moyer, the publisher is also on.

And with me here today is Kristen Green from Jenner & Block.

MR. GAYAN:  And Michael Gayan from Kemp Jones also for the same parties.

MR. REID:  Jordan Smith is also on, representing the Las Vegas Sun.

MR. GAYAN:  And, actually, it looks like Mr. Moyer may not be on yet, but, I believe, he intends to join today.

MR. SINGER:  Yeah, and we expect him around 10 or 10:30, I believe.

THE VIDEOGRAPHER:  Will the court reporter please swear in the witness.

(The witness was sworn in.)

EXAMINATION

BY MR. SINGER:

Q.  Good morning, Mr. Aldrich.

A.  Good morning, Mr. Singer.

Q.  You've been deposed before; correct?

A.  I have not.

SA555

Page 22

BY MR. SINGER:

Q. Right. They get the Review-Journal and Sun in print or nothing?

MR. REID: Objection. Form.

MR. SINGER: Is that right?

THE WITNESS: I -- I believe that to be correct.

MR. SINGER: Okay.

BY MR. SINGER:

Q. You agree that under the 1989 JOA, the Sun and the Review-Journal produced and distributed separate daily newspapers; correct?

A. I believe they produced separate daily newspapers and one Sunday newspaper.

Q. And under the 1989 JOA, I believe you just -- I'm just clarifying what I think you just said.

A. Uh-huh.

Q. But under the 1989 JOA, consumers could choose to subscribe to the print Sun or to the print R-J or both perhaps; correct?

MR. REID: Objection. Form.

THE WITNESS: I don't know that to be true or not, Mr. -- Mr. Singer.

BY MR. SINGER:

Q. What's your understanding?

Page 23

A.  It would be unusual if you could not subscribe to those individually, so my -- my educated assumption would be you could subscribe individually to either the R-J or the Sun under the 1989 agreement.

Q.  Well, are you aware that under the 1989 agreement, the Sun and the R-J had separate circulation numbers that were tracked by AAM?

A.  I believe I've seen AAM reports that showed separate circulation numbers for the Sun and the R-J, yes, sir.

Q.  And wouldn't that tell you that subscribers had a choice to subscribe to the print Sun or the print R-J under the 1989 JOA?

MR. REID:  Objection.  Form.

THE WITNESS:  I think that's a logical conclusion, although I'm not sure it's absolutely always the case, but I believe that to be the case, as I said earlier.

BY MR. SINGER:

Q.  And that would have been typical for JOAs, in your experience; right?

MR. REID:  Objection.  Form.

THE WITNESS:  It would have been -- it was certainly the case in Tucson.  I certainly believe that most of the papers would -- that would be the case.  I

LAWRENCE J. ALDRICH - 03/15/2023

Page 46

MR. SINGER:  I'm asking you as an expert witness in this case.

THE WITNESS:  As a --

MR. REID:  So -- hold on.  Objection.  Form and scope.

THE WITNESS:  That is -- I did not undertake an opinion.  I was not asked to undertake an opinion as to whether that is, but, I believe, that as -- if I were advising the Sun, not necessarily as a lawyer, but as an adviser, and this litigation turned into a -- a question about the -- whether the 2005 agreement was in place, I would advise the Sun to reinstitute this '89 agreement.

BY MR. SINGER:

Q.  Okay.  But I'm asking, as you sit here today, having reviewed all the materials you reviewed in this case, is it your opinion that the 1989 JOA is currently in effect?

MR. REID:  Objection.  Form and scope.

THE WITNESS:  That specific would be outside -- certainly, outside the scope of what I've asked -- been asked to opine in this case, Mr. Singer.

BY MR. SINGER:

Q.  So you don't have an opinion on that?

A.  I do not have an opinion on that.

Q.  It may be in effect.  It may not.  You just don't

Page 49

So, for example, the ability for the Sun to distribute a separate afternoon newspaper would be different under the '89 agreement as it were.

BY MR. SINGER:

Q.  Is it your opinion that every contract term in the 2005 JOA has been approved in writing by the attorney general?

MR. REID:  Objection.  Form and scope.

THE WITNESS:  It is my opinion that the attorney general has no authority to approve the 2005 amended agreement.

BY MR. SINGER:

Q.  That wasn't my question, though.

A.  I'm sorry, Mr. -- Mr. Singer.  I thought that was your question.

Q.  Do you want me to read it again?

A.  Please.

Q.  Okay.  Is it your opinion that every contract term in the 2005 JOA has been approved in writing by the attorney general?

MR. REID:  Objection.  Form and scope.

THE WITNESS:  So my -- my view is that they have no authority, which, therefore, by definition means they were -- it was not -- every contract provision in the 2005 amended agreement was not approved in writing

Page 50

by the attorney general.

BY MR. SINGER:

Q.  Are the new contract provisions that appeared for the first time in the 2005 JOA covered by the Newspaper Preservation Act if they were not approved in writing by the attorney general?

MR. REID:  Objection.  Form and scope.

THE WITNESS:  I believe the justice department made that determination by not challenging the 2005 agreement, and that's evidenced by what they did in the Charleston case.

BY MR. SINGER:

Q.  All right.  Let me just make sure I have an answer to my question though.

Are the new contract terms that appeared for the first time in the 2005 JOA covered by the Newspaper Preservation Act even though they were not approved in writing by the attorney general?

MR. REID:  Objection. Form. Scope. Asked and answered.

THE WITNESS:  I believe the -- all the terms in the 2005 amended JOA are covered and have the limited antitrust exemption under the Newspaper Preservation Act, yes, sir.

///

Page 229

A.  I am giving --

MR. REID:  Hold on.  Objection.  Form and scope.

THE WITNESS:  I have provided opinions regarding the approval of -- of the 1989 JOA, a submission of the 2005 amendment to the Antitrust Division, to the Department of Justice, and that those complied with the terms as they were submitted.

BY MR. SINGER:

Q.  Are you providing opinions in this case about the meaning of the Newspaper Preservation Act statute?

MR. REID:  Objection.  Form.

THE WITNESS:  Hard to answer, Mr. Singer.  I do have these opinions listed here in the beginning, and they are specifically related to the Review-Journal's joint operating agreements, not to the Newspaper Preservation Act in general.

BY MR. SINGER:

Q.  So you're not able to answer my question?

MR. REID:  Objection.  Form.  Argumentative.

THE WITNESS:  I don't believe I can beyond that.

BY MR. SINGER:

Q.  Are you giving any opinions in this case about what the phrase "joint operating arrangement" means in

Page 230

Section 1803(b) of the Newspaper Preservation Act?

MR. REID:  Objection.  Form and scope.

THE WITNESS:  A difficult question to answer, Mr. Singer, because I conclude that, as my opinion states, the 1989 JOA was -- was properly filed and approved by the attorney general that somewhat assumes an interpretation of joint newspaper operating arrangement.  It would be hard to give that opinion without that.

But specifically, am I interpreting that for purposes of this case?  I am not.

BY MR. SINGER:

Q.  Is an amendment a type of joint operating arrangement?

MR. REID:  Objection.  Form.

THE WITNESS:  I do not believe an amendment can be a type of joint operating arrangement.

BY MR. SINGER:

Q.  So you are giving an opinion on the meaning of the phrase "joint operating arrangement"?

MR. REID:  Objection.  Form.

THE WITNESS:  Slightly different question.

I have concluded that the 2005 amended JOA was filed with the justice department and the investigation occurred, and the JOA was -- the amended

SA562

Page 231

JOA was implemented by the parties consistent with its terms.

BY MR. SINGER:

Q.   Is the phrase "joint operating arrangement" in Section 1803(b) ambiguous, in your opinion?

MR. REID:  Objection.  Form.

THE WITNESS:  I would say by definition it is not ambiguous, but the Department of Justice had to implement a series of regulations to determine how the statute would be implemented at the Department of Justice.  So there were definitional questions included in the -- in the regulations that implemented the joint -- the Newspaper Preservation Act.

BY MR. SINGER:

Q.   And it's your opinion in this case that amendments to JOAs do not need to be approved by the Attorney General of the United States or Department of Justice; correct?

MR. REID:  Objection.  Form.

THE WITNESS:  That is correct.

BY MR. SINGER:

Q.   Do -- you say in your report that even though not required by the Newspaper Preservation Act, the practice was for owners of newspapers to submit copies of JOAs to the Department of Justice for review; correct?

SA563

Page 232

MR. REID:  Objection.  Form.

THE WITNESS:  When I was at the justice department and when I was a -- the Gannett antitrust -- in-house antitrust counsel, we submitted amendments to the JOA with the department, whether those JOAs were implemented prior to 1970 or implemented after.

BY MR. SINGER:

Q.  If you can turn to page 22 of your report, please, your main report.

A.  I am there.

Q.  You write in the middle, "No provision in the NPA or the rules implementing the NPA require or even authorize approvals of amendments to JOAs -- whether pre- or post-1970 -- by DOJ."

That's an opinion you're giving in this case?

A.  That is con --

MR. REID:  Objection.  Form.

THE WITNESS:  That is contained in my report.  It is not the basis of a specific opinion, but I stand by what I said there.

BY MR. SINGER:

Q.  Okay.  So here, when you refer to what is or is not in the Newspaper Preservation Act, you are giving an opinion about what the statute means, are you not?

MR. REID:  Objection.  Form.

Page 233

THE WITNESS:  I am stating what I read in here, not as much an opinion, but the fact from both the statute and from the regulations.  There's no statement in the NPA or in the rules, the regulations, that require or even authorize approval.

That's what the statute, I believe, says. It's not an opinion.  It's what it says, and it's what the regulations say.

BY MR. SINGER:

Q.  Well, isn't one way to read the statute that an amendment to a joint operating agreement is itself a joint operating arrangement?

MR. REID:  Objection.  Form.  Argumentative.

THE WITNESS:  I do not believe you can read the Newspaper Preservation Act or the rules in that fashion.

BY MR. SINGER:

Q.  And that's your opinion?

A.  That is my opinion today.  Not a specific opinion in my report, but that is my opinion.

Q.  And you've said, that filing a JOA amendment "with the Department of Justice enables the antitrust division staff to review, and as desired, investigate the amendment to determine noncompliance with the NPA."

I'm reading from where we just were.

Page 234

That's also one of your opinions in this case?

A.   That is what I said in my report.

Q.   If no approval is needed for amendments, then what is there to comply with?

MR. REID:  Objection.  Form.

THE WITNESS:  The Newspaper Preservation Act, as I recall, has specific limitations and restrictions, and those are articulated or fleshed out in the Code of Fed -- Federal Regulations, as I recall.

That would enable the justice department to determine the boundaries of any limited antitrust exemption, and if they disagreed with that an amendment was consistent with the NPA, to investigate and take action.  Just as they did in the Chat -- in the case in Charleston, West Virginia.

BY MR. SINGER:

Q.   If a JOA amendment fails to comply with the Newspaper Preservation Act, is it an unlawful agreement?

MR. REID:  Objection.  Form.

THE WITNESS:  Since the Newspaper Preservation Act, as I understand, provides a limited antitrust exemption, and the rules are -- as I also recall, specifically states that.  It doesn't mean that a -- a JOA or an amendment that didn't comply would -- would violate the law, would not be unlawful.

Page 235

BY MR. SINGER:

Q. So what is the consequence -- let me just make sure I get this right.

If the JOA doesn't comply with the Newspaper Preservation Act, it's your testimony that it's not protected by the antitrust immunity afforded by the Newspaper Preservation Act.

Is that -- am I understanding that right?

MR. REID: Objection. Form.

THE WITNESS: That is my understanding. It may not otherwise violate the antitrust laws, but any argument of having an antitrust exemption would -- would go away.

BY MR. SINGER:

Q. Okay. And that -- that same is true with an amendment to a JOA?

MR. REID: Objection. Form.

THE WITNESS: If an amendment to a JOA breached what was covered under the -- the Newspaper Preservation Act -- I'm trying to contemplate what a breach might possibly be. None comes to mind.

But I would say, theoretically, there -- there may not be -- no longer be an antitrust exemption, and then the question would be: Do the prosecutors deem the combination, if that's still a combination and

Page 236

agreement, was subject to antitrust enforcement.

BY MR. SINGER:

Q.  Okay.  So an amendment gets submitted to the Department of Justice and the Department of Justice makes a determination as to whether the provisions of the Newspaper Preservation Act will extend to the amendment or not; correct?

MR. REID:  Objection.  Form.

THE WITNESS:  So there's -- since there's no enforcement, it would depend upon what the prosecutors, typically in the antitrust division, would determine whether they wish to investigate, and if they chose to investigate and determine that an exemption no longer applied, whether they wished to prosecute.

There's nothing to compel the antitrust division or the justice department to take action pro or con.

BY MR. SINGER:

Q.  Right.  I mean, justice department only takes action civilly on a small percentage of antitrust violations; correct?

MR. REID:  Objection.  Form and scope.

THE WITNESS:  Yeah, I have no idea what percentage of investigations are as a percentage of total potential violations.

Page 237

BY MR. SINGER:

Q.  But you would agree that if an amendment to a JOA is not covered by the Newspaper Preservation Act, it's your opinion that that means that it is not afforded the antitrust immunity from the Newspaper Preservation Act; right?

MR. REID:  Objection.  Form.

THE WITNESS:  I think that issue would be a question for -- between the prosecutors and the newspapers being investigated as to whether, one, there was an inconsistency with the NPA and determine that the ex -- limited exemption no longer applied; and two, whether the underlying behavior created an otherwise violation of the antitrust laws.

BY MR. SINGER:

Q.  Okay.  But I just want to make sure I have this right.

The Department of Justice reviews and sometimes investigates JOA amendments to determine whether or not they are protected by the antitrust immunity afforded by the Newspaper Preservation Act.

Is that a fair statement?

MR. REID:  Objection.  Form and scope.

THE WITNESS:  To respond and limit that scope under -- when I reviewed amendments that came to

Page 238

me, in con -- consultation with my bosses, would determine whether there was something to investigate.

The amendment might be a technical amendment. It might just change the notice provision, for example.

In which case, I assume no investigation, and certainly, no investigation that I was responsible for would have -- would have gone beyond that process. Would have been filed and nothing -- no action would have been taken.

BY MR. SINGER:

Q. All right. In -- in. . .

Does the Department of Justice ever approve JOA amendments in writing?

MR. REID: Objection. Form.

THE WITNESS: The only thing I can discuss, Mr. Singer, is when I was a justice -- and I do not recall us ever approving an amendment at the antitrust division, and most cases, I don't recall us ever even advising the attorney general an amendment had been filed. How many times that happened, I do not recall. What has happened since I left, I do not know.

BY MR. SINGER:

Q. If the parties to a JOA modify the terms of their arrangement, are the modified terms automatically

Page 240

THE WITNESS:  I think if you look at the regulations themselves, they pull back from the language that's specifically stated in the statute, which is black -- appears to be black and white; it shall be unlawful and reflect that the filings are only when the parties seek a limited antitrust exemption.

Now, that is slightly from memory, so my apology if I have that incorrect, but I believe that to be correct.

BY MR. SINGER:

Q.  And was it -- to your understanding, is it well known in the JOA community that amendments do not require Department of Justice approval?

MR. REID:  Objection.  Form.

THE WITNESS:  I would be hard-pressed to say whether it's well known.  I don't -- not familiar with the -- the universe of anti -- newspaper antitrust lawyers around the country.  Many of them are not necessarily antitrust lawyers.  May be contract lawyers.

But I think it's well known in the number of -- those lawyers who specialize in Newspaper Preservation Acts in the private sector that amendments must always be filed with the Department of Justice. And I believe the regulations specifically state that.

///

SA571

Page 241

BY MR. SINGER:

Q.  Okay.  So just so I'm clear.  In order to get the protections of the Newspaper Preservation Act, in your opinion, would an amendment to a JOA need to be approved by the Department of Justice?

MR. REID:  Objection.  Form.

THE WITNESS:  If it's an amendment to either an existing JOA pre-1970 or an amendment to a JOA approved by the attorney general post-1970, those newspaper JOAs would have anti -- limited antitrust exemption, and the amendment would not need to be approved by the attorney general.

And, again, the regulations, I believe, do not talk in terms of approval of amendments.  They talk about filing.

BY MR. SINGER:

Q.  Okay.  Now, I'm talking about post-1970 JOAs.

A.  Post-1970.

Q.  And that's all I'm going to be talking about the rest of the day.  Okay?

A.  I will take that as my assumption.

Q.  Okay.  So what if an amendment to a post-1970 JOA changed every material provision, but the title of it still said amended JOA?  Would you consider that to be an amendment or a new JOA?

Page 347

STATE OF NEVADA )
                ) SS:
COUNTY OF CLARK )

CERTIFICATE OF REPORTER

I, Brittany J. Castrejon, a Certified Court Reporter licensed by the State of Nevada, do hereby certify:  That I reported the VIDEOTAPED DEPOSITION OF LAWRENCE J. ALDRICH, on WEDNESDAY, MARCH 15, 2023, at 9:05 a.m.;

That prior to being deposed, the witness was duly sworn by me to testify to the truth.  That I thereafter transcribed my said stenographic notes into written form, and that the typewritten transcript is a complete, true and accurate transcription of my said stenographic notes.  That the reading and signing of the transcript was requested.

I further certify that I am not a relative, employee or independent contractor of counsel or of any of the parties involved in the proceeding; nor a person financially interested in the proceeding; nor do I have any other relationship that may reasonably cause my impartiality to be questioned.

IN WITNESS WHEREOF, I have set my hand in my office in the County of Clark, State of Nevada, this 20th day of March, 2023.

_____
Brittany J. Castrejon, RPR, CRR, CCR #926

**ERRATA SHEET**

| Page | Line | Should read: | Reason for Change: |
|------|------|--------------|--------------------|
| 16 | 12 | "in early '93" | Typo |
| 25 | 8 | "There could have been" | Typo |
| 63 | 21 | "within the marketplace" | Typo |
| 74 | 9 | "I would say they" | Typo |
| 75 | 17 | "in the R-J or Sun" | Typo |
| 77 | 19 | "That selection decision" | Typo |
| 90 | 7 | "economies of scale" | Misunderstood |
| 121 | 25 | "for the R-J to detour" | Misunderstood |
| 123 | 8 | "independent of the" | Typo |
| 126 | 23 | "Does indicate some" | Typo |
| 162 | 7 | "tangential, | |
| | | being a Gannett lawyer, was" | Typo |
| 181 | 12 | "timing or the action" | Typo |
| 239 | 19 | "didn't need to seek a limited exemption" | Typo |
| 243 | 19 | "I'm not familiar with" | Misunderstood |
| 293 | 1 | "I think it was assumed" | Clarify context |

Date: 4/25/2023

Signature of Witness

_____Lawrence J. Aldrich_____
Print Name of Witness

1

117445748.1

SA574

# EXHIBIT 16

Sept. 23, 2005, email from C. Cliff to D. Jordan, et al., re Amendment of the Las Vegas JOA – Joint Defense Agreement (SUN_00001673-84)
**(FILED UNDER SEAL)**

# EXHIBIT 16

SA575

# EXHIBIT 17

Aug. 5, 2005, facsimile from B. Matelson to G. Lang re Las Vegas JOA, CID No. 23751 (SUN_00012237-47) (**FILED UNDER SEAL**)

# EXHIBIT 17

SA588

# EXHIBIT 18

Oct. 12, 2005, letter from A. Marx to B. Matelson, re responses to CID No. 23751 (SUN_00001806-14) (**FILED UNDER SEAL**)

# EXHIBIT 18

SA600

# EXHIBIT 19

Feb. 13, 2006, facsimile from B. Matelson to A. Marx, re Civil Investigative Demand Nos. 24097 & 24098 (SUN_00012233-36) (**FILED UNDER SEAL**)

# EXHIBIT 19

# EXHIBIT 20

Deposition Transcript Excerpts of Las Vegas Sun, Inc.'s 30(b)(6) Corporate Representative Robert Cauthorn, *Las Vegas Sun, Inc. v. Adelson*, No. 2:18-cv-0166-ART-VCF (D. Nev. Feb. 16, 2022) (**REDACTED**)

# EXHIBIT 20

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

LAS VEGAS SUN, INC., a                )
Nevada corporation,                   )
                                      )
               Plaintiff,             ) Case No.: 2:19-CV-01667-GMN-VCF
                                      )
        v.                            )
                                      )
SHELDON ADELSON, an                   )
individual and as the alter           )
ego of News+Media Capital             )
Group LLC and as the alter            )
ego of Las Vegas Review               )
Journal, Inc.; PATRICK                )
DUMONT, an individual;                )
NEWS+MEDIA CAPITAL GROUP LLC,         )
a Delaware limited liability          )
company; LAS VEGAS REVIEW             )
-JOURNAL, INC., a Delaware            )
corporation; and DOES, I-X,           )
inclusive,                            )
                                      )
               Defendants.            )
_____       )
LAS VEGAS REVIEW-JOURNAL,              )
INC., a Delaware corporation,         )
                                      )
           Counterclaimant,           )
                                      )
        v.                            )
                                      )
LAS VEGAS SUN, INC. a Nevada          )
corporation; BRIAN GREENSPUN,         )
an individual and as the              )
alter ego of Las Vegas Sun,           )
Inc.,; GREENSPUN MEDIA GROUP,         )
LLC, a Nevada limited                 )
liability company, as the             )
alter ego of Las Vegas Sun,           )
Inc.,                                 )
                                      )
      Counterclaim-Defendants.        )
_____       )

Reported by: Mickey Marez, RPR, CRR, NV CCR No. 950

Job No.: 837043

SA616

Page 2

VIDEOCONFERENCED/ZOOM/VIDEOTAPED

DEPOSITION OF ROBERT CAUTHORN, FRCP 30(B)(6)

OF LAS VEGAS SUN, INC.

ALL PARTIES APPEARING REMOTELY

WEDNESDAY, FEBRUARY 16, 2022

Reported by: Mickey Marez, RPR, CRR, NV CCR No. 950

Job No.: 837043

ROBERT CAUTHORN, 30 (B)(6) LAS VEGAS SUN, INC. - 02/16/2022

Page 3

VIDEOCONFERENCED/ZOOM/VIDEOTAPED DEPOSITION OF ROBERT CAUTHORN, on

Wednesday, February 16, 2022, at 9:06 a.m., before Mickey Marez,

Registered Professional Reporter and Certified Realtime Reporter with

the National Court Reporters Association, Certified Court Reporter, in

and for the State of Nevada


APPEARANCES:
FOR THE PLAINTIFF/COUNTERCLAIM-DEFENDANTS:
BY: E. LEIF REID, ESQ.
BY: MARLA J. HUDGENS, ESQ.
BY: KRISTEN L. MARTINI, ESQ.
BY: NICOLE SCOTT, ESQ.
LEWIS ROCA ROTHGERBER CHRISTIE LLP
ONE EAST LIBERTY STREET, SUITE 300
RENO, NEVADA 89501
TELEPHONE: (775)823-2900
FAX: (775)823-2929
E-MAIL: lreid@lewisroca.com; kmartini@lewisroca.com;
mhudgens@lewisroca.com; nscott@lewisroca.com

BY: JORDAN T. SMITH, ESQ.
PISANELLI BICE PLLC
400 SOUTH SEVENTH STREET, SUITE 300
LAS VEGAS, NEVADA 89101
TELEPHONE: (702)214-2100
FAX: (702)214-2101
E-MAIL: jts@pisanellibice.com

FOR THE DEFENDANTS/COUNTERCLAIMANTS:
BY: MICHAEL J. GAYAN, ESQ.
KEMP JONES, LLP
3800 HOWARD HUGHES PARKWAY, 17TH FLOOR
LAS VEGAS, NEVADA 89169
TELEPHONE: (702)385-6000
FAX: (702)385-6001
E-MAIL: m.gayan@kempjones.com

BY: DAVID R. SINGER, ESQ.
JENNER & BLOCK LLP
515 SOUTH FLOWER STREET, SUITE 3300
LOS ANGELES, CALIFORNIA 90071
TELEPHONE: (213)239-2206
FAX: (213)239-2216
E-MAIL: dsinger@jenner.com

SA618

ROBERT CAUTHORN, 30 (B)(6) LAS VEGAS SUN, INC. - 02/16/2022

Page 4

BY: BENJAMIN A. LIPMAN, ESQ.
LAS VEGAS REVIEW-JOURNAL, INC.
1111 WEST BONANZA ROAD
LAS VEGAS, NEVADA 89106
TELEPHONE: (702)383-0224
E-MAIL: blipman@reviewjournal.com

ALSO PRESENT:
BRIAN GREENSPUN
MAYRA GREENSPUN
ALONSO PONCE

VIDEOGRAPHER: DUSTIN KITTLESON
LITIGATION SERVICES, LLC
3960 HOWARD HUGHES PARKWAY, SUITE 700
LAS VEGAS, NEVADA 89169
TELEPHONE: (800)330-1112

* * * * *

Page 5

INDEX

WITNESS:  ROBERT CAUTHORN

EXAMINATION                                          PAGE

BY DAVID R. SINGER, ESQ.                               9


                      EXHIBITS

NUMBER          DESCRIPTION                  MARKED

EXHIBIT 215    SUN00025139-25156, 83091         55

EXHIBIT 220    SUN00008851-8852                 99

EXHIBIT 221    LAS VEGAS, SUN, INC.'S          139

               RESPONSES TO DEFENDANTS'

               FIRST SET OF REQUESTS FOR

               ADMISSION TO PLAINTIFF

EXHIBIT 226    PLAINTIFF AND                    148

               COUNTERDEFENDANTS'

               TWENTY-EIGHTH SUPPLEMENT TO

               INITIAL DISCLOSURES

               PURSUANT TO FED. R. CIV. P.

               26(e)

EXHIBIT 229    SUN00008909                      189

ROBERT CAUTHORN, 30 (B)(6) LAS VEGAS SUN, INC. - 02/16/2022

Page 6

| | | | |
|---|---|---|---|
| EXHIBIT 207 | SUN00002045-2069 | | 223 |
| EXHIBIT 262 | FIRST AMENDED COMPLAINT | | 226 |
| EXHIBIT 263 | SUN00002230-2235 | | 237 |
| EXHIBIT 264 | DEFS0000418 | | 250 |
| EXHIBIT 265 | SUN00024371-24453 | | 258 |
| EXHIBIT 266 | FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT | | 268 |
| EXHIBIT 232 | SUN00001255-1256 | | 283 |
| EXHIBIT 270 | SUN00008398 | | 313 |
| EXHIBIT 267 | SUN00001996-2039 | | 327 |
| EXHIBIT 268 | SUN00009432-9469 | | 334 |
| EXHIBIT 269 | SUN00004559-4565 | | 338 |
| EXHIBIT 271 | SUN00053251-53253 | | 371 |
| EXHIBIT 272 | MR. CAUTHORN'S NOTES | | 383 |

SA621

Page 9

THE VIDEOGRAPHER:  Okay.  Thank you.

Will the court reporter please swear in the witness?

Whereupon,

ROBERT CAUTHORN,

having been sworn to testify to the truth, the whole truth, and nothing but the truth, was examined and testified under oath as follows:

EXAMINATION

BY MR. SINGER:

Q.  **Good morning, Mr. Cauthorn.  How are you?**

A.  I'm fine.  Thank you.  How are you?

Q.  **Okay.  Good.**

**You understand that you're under oath here today?**

A.  I do.

Q.  **And you're testifying today as a Rule 30(b)(6) witness for the Sun; correct?**

A.  Correct.

Q.  **I should have mentioned this before we go on the record, and I'm sure this goes without saying:  But since we're doing this via ZOOM, I assume that you'll agree that you won't be communicating with anyone using a device or a computer application while we're on the record; correct?**

SA622

ROBERT CAUTHORN, 30 (B)(6) LAS VEGAS SUN, INC. - 02/16/2022

Page 237

Q.   And another change to the 2005 JOA was giving the Sun audit rights; correct?

A.   Yes.

Q.   And when the Sun and the Review Journal entered into the 2005 JOA, the Department of Justice opened an investigation; correct?

A.   Two years -- yeah, it was sometimes afterwards, yes.  They opened it, and then they conducted it two years later.

Q.   Let's take a look at Exhibit 263, please.

        (Deposition Exhibit 263 was marked for identification.)

        THE WITNESS:  Am I still in control or not? Just curiosity.

        THE VIDEOGRAPHER:  Yes.

        THE WITNESS:  Okay.  Thank you.

        MR. REID:  Blow it up.

BY MR. SINGER:

Q.   And this is a September 26, 2005, letter from the Department of Justice to Gordon Lang at Nixon Peabody and Alan Marx at King & Ballow.  It was produced by the Sun in this case.

        And I assume you reviewed this when preparing for your deposition today?

A.   Yes, I did.

SA623

Page 245

[black redaction bars]

Q.   Did the Department of Justice ever provide written consent that the new provisions of the 2005 JOA were covered by the Newspaper Preservation Act?

MR. REID:  Calls for a legal conclusion.

THE WITNESS:  Yeah, that -- obviously, that's a matter that's going to be adjudicated here.  But -- but the Sun's position is -- is that the -- the justice department did not -- did not have the option to -- to either approve or deny because their -- the obligation under the Newspaper Preservation Act, as both parties understood it, as the RJ understood it and testified to -- the obligation is to file an amendment, and that there is no mechanism within the Justice Department to -- to -- approve or deny an amended JOA.

BY MR. SINGER:

Q.   You need to answer my question, Mr. Cauthorn.

SA624

ROBERT CAUTHORN, 30 (B)(6) LAS VEGAS SUN, INC. - 02/16/2022

Page 246

MR. REID:  He did answer your question. Your -- your response is argumentative.  He responded to your question.

BY MR. SINGER:

Q.   My question was:  Did the DOJ ever provide written consent that the new provisions of the 2005 JOA were covered by the Newspaper Preservation Act?

MR. REID:  Asked and answered.  Calls for a legal conclusion.

BY MR. SINGER:

Q.   What's your answer?

MR. REID:  He provided you an answer --

MR. SINGER:  He didn't even answer it.

THE WITNESS:  My -- my answer to you is -- is that -- is that they -- there -- there was no -- there -- they -- that was not an issue.  And so, no, there was no approval.

There was no written document to that effect, because that simply was not an issue.  It was not within the -- the -- the -- the Justice Department's purview with respect to how you handle amendments to the JOA.

BY MR. SINGER:

Q.   Well, isn't it true that, in fact, the DOJ stated in writing that it was not consenting to the new

SA625

Page 253

MR. SINGER: Okay.

BY MR. SINGER:

Q.    Mr. Cauthorn --

MR. REID: Let's hear what the court reporter said. I couldn't hear that. That was over the top of your question.

MR. SINGER: Okay. Can I continue?

(The court reporter requested the parties speak one at a time.)

THE WITNESS: Okay.

BY MR. SINGER:

Q.    Would you agree that the DOJ concluded that the amendments to the 2005 JOA are not covered by the Newspaper Preservation Act?

MR. REID: Objection. Calls for a legal conclusion.

THE WITNESS: I would not agree to that -- to that. Because it clearly states that the decision was not based on a conclusion, one way or the other.

I mean, that's -- that's the way it -- it is read. That's the way both parties -- what both parties took it to mean, that there is -- this is a complete null. This sentence is a nullity.

However, the decision was not based on the conclusion that the 2005 amendments to the parties'

Page 254

joint operating agreement are protected by antitrust

immunity afforded by the Newspaper Preservation Act.

BY MR. SINGER:

Q.    But the --

A.    That means -- I'm not finished with my --

please, if you -- I'm trying to help the court

reporter, but -- but I'm not finished with my answer.

The -- the -- the fact of the matter is it

is -- is that -- when you say a decision is not based

on something, that doesn't mean the decision was --

that -- that -- that it nullifies it, it doesn't mean

that it affirms it.  It means that they had no bearing

on it whatsoever.

And that is appropriate because there is no

process to approve or to deny an amendment to a JOA --

to -- to -- to a joint operating agreement under the

Newspaper Preservation Act.

Q.    Mr. Cauthorn, would you agree that this

letter says that the parties conduct pursuant to the

amendments to the 2005 JOA --

A.    Okay.

Q.    -- remains subject to antitrust scrutiny?

MR. REID:  So, Mr. -- Mr. Singer, your --

your question -- so, we've -- we've lost Mr. Singer.

MR. SINGER:  I'm right here.  You can't hear

Page 256

Would you agree that this letter says that the parties conduct pursuant to the amendments to the 2005 JOA remain subject to antitrust scrutiny?

MR. REID:  So, the question calls for a legal conclusion.  I object to it on that basis.

THE WITNESS:  It -- it -- indeed it does call for a legal conclusion.  I can tell you how both parties during that period of time read that.

And it was a -- a simple manner, in that the antitrust protections afforded by the Newspaper Preservation Act are quite limited.

And it is indeed the case that any JOA in -- in the nation was always subject to antitrust scrutiny. Because there's all sorts of things that one might do under a JOA that would raise antitrust concerns.

It is not a blanket removal of antitrust issues.  And so, what they're stating here is the situation that existed then and now for every JOA in America, and that's that they all remain subject to antitrust scrutiny.

BY MR. SINGER:

Q.   Would you agree, Mr. Cauthorn, that Exhibit 264 is not affirmative written consent that the new amendments to the 2005 JOA are covered by the Newspaper Preservation Act?

SA628

Page 257

MR. REID:  Objection.  Calls for a legal conclusion.

THE WITNESS:  The -- the -- there was no consent that could be given under Justice Department -- under the Newspaper Preservation Act.

BY MR. SINGER:

Q.    **So, can you answer my question?**

A.    That's what I -- I -- I -- I said it -- it -- it -- it is not consent because no consent can be given.

Q.    **Okay.**

A.    There -- the process on filing an amendment, is you file it with the Justice Department, and -- and there is no -- they can conduct an investigation, if they choose.  And -- and that there is no -- there is no approval process for amendments.

MR. SINGER:  Okay.  Do you want to take a break, Leif?

MR. REID:  Sure.  Let's come back in ten minutes.

THE VIDEOGRAPHER:  Off the record at 2:27.

(Pause in the proceedings.)

THE VIDEOGRAPHER:  Back on the record at 2:37.

SA629

Page 270

14:53:45  Mr. Cauthorn.

14:53:46      A.   Okay.

14:53:47      Q.   Would you like me to read it again?

14:53:49      A.   No, I can see it.  I've got it up now.

14:53:52      Q.   Okay.  Is that a true statement?

14:53:58      A.   Yes, I believe that to be a true statement.

14:54:01      Q.   Now, if you look below it in Paragraph 16 --
give a little scroll down to Paragraph 16.

14:54:13      A.   Uh-huh.

14:54:17      Q.   Paragraph 16 states that (as read):
"The 2005 amended JOA was approved by the
Attorney General of the United States in the same
manner as the 1989 JOA, and was found to effectuate
similarly the policy and purpose set forth by Congress
in the Newspaper Preservation Act."
        Do you see that?

14:54:41      A.   I do see that.

14:54:42      Q.   That statement is false; isn't it?

14:54:48      MR. REID:  Calls for a legal conclusion.
Objection.

14:54:50      THE WITNESS:  So, the -- the -- I want to go
up a little bit here, because the -- I want to go to
Paragraph -- by way of answer -- I want to answer your
question -- but by way of answer, I want to go up to
Paragraph 12.  And I want to note something here.

Page 271

This -- this document is some -- somewhat internally inconsistent, in that it says (as read):

"The 1989 JOA ensured that the Sun would be in existence and publication until at least until 2040."

And it also mentions a little higher up that the Sun was no longer a failing newspaper. And the -- so, the -- the challenge in my mind is -- and this document is somewhat in- -- inconsistent, I suppose, in the language. I -- I don't know how to characterize it legally.

But the -- the -- the 1989 JOA was still fully in effect when the amendment was -- was -- was -- was approved. So, you can say easily that the -- the 19- -- 2005 JOA was properly part of the 1999 -- 1989 JOA.

And if -- if -- it did effectuate the same policy, the Justice Department never said it does not effectuate the same policy.

They never said it wasn't -- wasn't invalid. They treated it as a -- as a -- as an amendment to the JOA. So, the 1989 JOA is still -- while the terms are changed, the approval remains intact. So, it is approved in that sense in the same manner.

SA631

Page 272

BY MR. SINGER:

Q.   Can you answer --

A.   The Sun was no longer -- the Sun was no longer a failing newspaper, so it couldn't -- the -- and that's why the requirements for a brand-new JOA, the Sun, by 2005, was no longer a failing newspaper by virtue of the 1989 JOA.

Q.   Are -- are you able to answer my question, Mr. Cauthorn?

A.   I --

MR. REID:  Objection.  That's argumentative. He answered your question.

BY MR. SINGER:

Q.   My question is whether the statement I read to you from Paragraph 16 in the Sun's complaint that it filed in State court June 20, 2015, is a false statement?

A.   That's --

MR. REID:  Asked and answered.

THE WITNESS:  As I expressed, it is not a false statement.  Because the 1989 JOA was still -- was still -- the approval of that was still in effect under the -- under the amended and restated JOA.

And so, the same method -- the -- you know -- you know, basically, it -- it's not a false statement,

SA632

Page 273

necessarily.

I mean, it -- it -- it might be something that -- that you would want to express slightly differently. But it's not false. The 1989 JOA approval was still fully in effect.

BY MR. SINGER:

Q.   Okay.  So, it's your testimony in this lawsuit to this jury that the 2005 amended JOA was approved by the Attorney General of the United States in the same manner as the 1989 JOA, and was found to effectuate similarly the policy and purpose set forth by Congress in the Newspaper Preservation Act?

That is your testimony in this case, that that's --

MR. REID:  Objection.  You just misstated his testimony.  He --

BY MR. SINGER:

Q.   Is that -- is that --

MR. REID:  If -- no, if you -- if you want the court reporter to read back what his answer was, it certainly was not that.  So, you --

MR. SINGER:  Right, okay.  Well --

MR. REID:  -- you misstated his testimony and you are arguing with the witness.

Page 274

BY MR. SINGER:

Q. Okay. Can you answer my question?

A. I -- I can answer your question.

Q. Let me -- should I restate it? Because your counsel inter- -- inter- -- interjected and interrupted, and it's -- I'd like to have a clean record.

MR. REID: I -- I -- I didn't interject or interrupt. I stated an objection as is appropriate, and as is my obligation to do. So --

THE WITNESS: I -- and you don't need to restate it for this reason: Is that the -- the question was predicated upon -- upon assertions which I -- which I -- I -- I cannot recognize as being realistic. And, therefore, I can't say yes or no to that.

And here's my response to that: Is that the 1989 JOA was properly approved using Justice Department guidelines. The amended and restated 2005 JOA was filed as it's required by -- by the Newspaper Preservation Act with the Justice Department.

The Justice Department decided to undertake a -- an investigation. At the end of that investigation, the Justice Department took -- took no action and also asserted that it had -- that -- that

SA634

Page 275

lack of action had nothing to do with any judgment about the -- about the limited antitrust protection, and that both parties turned at -- at that point -- regarded that.

Because it had a provision to revert to 1989 if there was a problem.  Both parties took that no-action letter to mean that -- that -- that there was not a problem with -- with the terms of the 2005 JOA, and that they could proceed as they've done for the -- the subsequent -- subsequent -- subsequent period of time, until your client arrived on the scene and decided they wanted to get rid of the -- the JOA and suddenly decided that they were going to raise an issue with this.

If they really believed that, they have a remedy available to them, and that's to revert to 1989.  And that remedy still exists today.  That's my testimony.

I'm not -- you -- you -- the way you characterize what I'm testifying to the jury was not complete.  That's my testimony in this case.

BY MR. SINGER:

Q.   So, it's the Sun's position in this case that the 2005 amended JOA was approved by the Attorney General of the United States in the same

Page 387

CERTIFICATE OF REPORTER

STATE OF NEVADA  )
                 )
COUNTY OF CLARK  )

I, Mickey Marez, a duly commissioned and licensed court reporter, Clark County, State of Nevada, Registered Professional Reporter and Certified Realtime Reporter with the National Court Reporters Association, do hereby certify:  That I reported the taking of the deposition of the witness, ROBERT CAUTHORN, commencing on Wednesday, February 16, 2022, at 9:06 a.m.;

That prior to being examined, the witness was, by me, duly sworn to testify to the truth.  That I thereafter transcribed my said shorthand notes into typewriting and that the typewritten transcript of said deposition is a complete, true, and accurate transcription of said shorthand notes.

I further certify that I am not a relative or employee of an attorney or counsel or any of the parties, nor a relative or employee of an attorney or counsel involved in said action, nor a person financially interested in the action; that a request has been made to review the transcript.

IN WITNESS THEREOF, I have hereunto set my hand in my office in the County of Clark, State of Nevada, this 21st day of February, 2022.

_____
Mickey Marez, RPR, CRR, NV CCR No. 950

# EXHIBIT 21

Aug. 16, 2005, letter from B. Matelson to G. Lang re 8/16/05 DOJ faxed letter to G. Lang re Civil Investigative Demand No. 23751 (SUN_00012248-50) (**FILED UNDER SEAL**)

# EXHIBIT 21

SA637

# EXHIBIT 22

Aug. 25, 2005, letter from G. Lang to B. Matelson re Las Vegas JOA
(SUN_00001965-68) (**FILED UNDER SEAL**)

# EXHIBIT 22

SA641

# EXHIBIT 23

Apr. 9, 2008, letter from B. Matelson to G. Lang, et al., re Las Vegas Joint Operating Agreement ("No Action Letter") (DEFS0000418)

# EXHIBIT 23



**U.S. Department of Justice**

Antitrust Division

_Liberty Place Building_
_325 Seventh Street, NW_
_Washington, DC  20530_

April 9, 2008

VIA ELECTRONIC MAIL

Gordon Lang, Esq.
Nixon Peabody L.L.P.
401 Ninth Street, NW
Suite 900
Washington, DC 20004

Alan L. Marx, Esq.
King and Ballow
1100 Union Street Plaza
315 Union Street
Nashville, TN 37201

          Re:    Las Vegas Joint Operating Agreement

Dear Messrs. Lang and Marx:

       I am writing to advise you of the status of the above-referenced investigation.  The Antitrust Division has closed its investigation.  However, that decision was not based on a conclusion that the 2005 amendments to the parties' Joint Operating Agreement are protected by the antitrust immunity afforded by the Newspaper Preservation Act.  Accordingly, the parties' conduct pursuant to those amendments – and in particular conduct not integral to the parties' revised arrangements for the joint distribution of the _Review-Journal_ and the _Sun_, the effects of which we reviewed as part of our investigation – remains subject to antitrust scrutiny.

       Please advise me within 30 days whether your clients prefer that we return the documents produced pursuant to the Civil Investigative Demands or destroy them per our usual procedure.

                           Sincerely,

                           Bennett J. Matelson
                           Trial Attorney

DEFS0000418

SA647

# EXHIBIT 24

Deposition Transcript Excerpts of Las Vegas Review-Journal 30(b)(6) Corporate Representative Glenn Cook, *Las Vegas Sun, Inc. v. Adelson*, No. 2:19-cv-0166-ART-VCF (D. Nev. Aug. 19, 2022) (**REDACTED**)

# EXHIBIT 24

SA648

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

LAS VEGAS SUN, INC., a Nevada )
corporation,                  ) Case No.:  2:19-cv-01667-ART-VCF
                              )
                              )
              Plaintiff,      )
                              )
      v.                      )
                              )
SHELDON ADELSON, an           )
individual and as the alter   )
ego of News+Media Capital     )
Group LLC and as the alter    )
ego of Las Vegas Review       )
Journal, Inc.; PATRICK        )
DUMONT, an individual;        )
NEWS+MEDIA CAPITAL GROUP LLC, )
a Delaware limited liability  )
company; LAS VEGAS            )
REVIEW-JOURNAL, INC., a       )
Delaware corporation; and     )
DOES, I-X, inclusive          )
                              )
              Defendants.     )
_____)
LAS VEGAS REVIEW-JOURNAL,     )
INC., a Delaware corporation, )
                              )
      Counterclaimant,        )
                              )
      v.                      )
                              )
LAS VEGAS SUN, INC. a Nevada  )
corporation; BRIAN GREENSPUN, )
an individual and as the      )
alter ego of Las Vegas Sun,   )
Inc.,; GREENSPUN MEDIA GROUP, )
LLC, a Nevada limited         )
liability company, as the     )
alter ego of Las Vegas Sun,   )
Inc.                          )
      Counterclaim Defendants. )
_____)

Reported by: Mickey Marez, RPR, CRR, NV CCR No. 950

Job No.: 902154

SA649

Page 2

VIDEOTAPED DEPOSITION OF GLENN COOK,

FRCP 30(B)(6) OF THE LAS VEGAS REVIEW-JOURNAL, INC.

LAS VEGAS, NEVADA

FRIDAY, AUGUST 19, 2022

Reported by: Mickey Marez, RPR, CRR, NV CCR No. 950

Job No.: 902154

SA650

Page 3

VIDEOTAPED DEPOSITION OF GLENN COOK, FRCP 30(B)(6) OF LAS VEGAS REVIEW-JOURNAL, INC., held at LEWIS ROCA ROTHGERBER CHRISTIE, LLP, located at 3993 Howard Hughes Parkway, #600, Las Vegas, Nevada, on Friday, August 19, 2022, at 9:05 a.m., before Mickey Marez, Registered Professional Reporter and Certified Realtime Reporter with the National Court Reporters Association, Certified Court Reporter, in and for the State of Nevada

APPEARANCES:
FOR THE PLAINTIFF/COUNTERCLAIM-DEFENDANTS:
BY: LEIF REID, ESQ.
BY: KRISTEN L. MARTINI, ESQ. (VIA ZOOM)
BY: NICOLE SCOTT, ESQ.
LEWIS ROCA ROTHGERBER CHRISTIE LLP
ONE EAST LIBERTY STREET, SUITE 300
RENO, NEVADA 89501
TELEPHONE: (775)823-2900
FAX: (775)823-2929
E-MAIL: lreid@lewisroca.com; kmartini@lewisroca.com; nscott@lewisroca.com

BY: JORDAN T. SMITH, ESQ. (VIA ZOOM)
PISANELLI BICE PLLC
400 SOUTH SEVENTH STREET, SUITE 300
LAS VEGAS, NEVADA 89101
TELEPHONE: (702)214-2100
FAX: (702)214-2101
E-MAIL: jts@pisanellibice.com

FOR THE DEFENDANT/COUNTERCLAIMANTS:
BY: MONA KAVEH, ESQ. (VIA ZOOM)
BY: MICHAEL J. GAYAN, ESQ.
BY: BREANNA SWITZLER, ESQ. (VIA ZOOM)
KEMP JONES, LLP
3800 HOWARD HUGHES PARKWAY, 17TH FLOOR
LAS VEGAS, NEVADA 89169
TELEPHONE: (702)385-6000
FAX: (702)385-6001
E-MAIL: m.gayan@kempjones.com; m.kaveh@kempjones.com

SA651

Page 4

FOR THE DEFENDANTS/COUNTERCLAIMANTS:
BY: DAVID R. SINGER, ESQ. (VIA ZOOM)
JENNER & BLOCK LLP
515 SOUTH FLOWER STREET, SUITE 3300
LOS ANGELES, CALIFORNIA 90071
TELEPHONE: (213)239-2206
FAX: (213)239-2216
E-MAIL: dsinger@jenner.com


FOR THE DEFENDANTS/COUNTERCLAIMANTS:
BY: BENJAMIN A. LIPMAN, ESQ. (VIA ZOOM)
LAS VEGAS REVIEW-JOURNAL, INC.
1111 WEST BONANZA ROAD
LAS VEGAS, NEVADA 89106
TELEPHONE: (702)383-0224
E-MAIL: blipman@reviewjournal.com


ALSO PRESENT:
BRIAN GREENSPUN (VIA ZOOM)
ROBERT CAUTHORN (VIA ZOOM)
KEITH MOYER (VIA ZOOM)

VIDEOGRAPHER: TERRELL HOLLOWAY
LITIGATION SERVICES, LLC
3960 HOWARD HUGHES PARKWAY, SUITE 700
LAS VEGAS, NEVADA 89169
TELEPHONE: (800)330-11120

                              *  *  *  *  *

SA652

Page 5

INDEX

WITNESS:  GLENN COOK, FRCP 30(B)(6) OF LAS VEGAS REVIEW-JOURNAL, INC.

EXAMINATION                                                    PAGE

BY LEIF REID, ESQ.                                              8


                        EXHIBITS

NUMBER          DESCRIPTION                    MARKED

EXHIBIT 1     DEFS0018708-10                     56

EXHIBIT 2     DEFS0091875-880                    69

EXHIBIT 3     SUN_00085792-85901                 94

EXHIBIT 4     SUN_00085620-85624                118

EXHIBIT 5     SUN_00000627-632                  143

EXHIBIT 6     DEFS0028086-DEFS0028157           161

EXHIBIT 7     DEFS0018446/DEFS0018448           190

EXHIBIT 8     DEFS0136323                       211

EXHIBIT 9     DEFS0185588                       216

SA653

EXHIBIT 10        DEFS0013299-13303

Page 6
264

SA654

Page 7

LAS VEGAS, NEVADA; FRIDAY, AUGUST 19, 2022
9:05 A.M.
* * * * *

-oOo-

THE VIDEOGRAPHER:  This is the beginning of Media No. 1, in the deposition of Las Vegas Review-Journal 30(b)(6), Glenn Cook, in the matter of Las Vegas Sun, Inc., versus Adelson, Sheldon, held at Lewis Roca on August 19, 2022, at 9:04 a.m.

The court reporter is Mickey Marez.  I'm Terrell Holloway, the videographer, an employee of Litigation Services.  This deposition is being videotaped at all times, unless specified to go off the video record.

Would all present, please, identify themselves, beginning with the witness?

THE WITNESS:  My name's Glenn Cook.  I'm the executive editor and senior vice president for news for the Las Vegas Review-Journal.

MR. GAYAN:  I'm Mike Gayan, the defense counsel for Mr. Cook and the Review-Journal and the other defendants.  Also with me today on Zoom, I've got my co-counsel, David Singer and Andrew Sullivan.

Also have the Review-Journal's publisher, Keith Moyer, and the Review-Journal's general counsel, Ben Lipman.

MR. REID:  I'm Leif Reid.  I represent the Sun.  Nicole Scott is to my left.  On Zoom, Kristen Martini.  Jordan Smith will be on shortly.  He has a conflicting hearing.  So, we may hear him join.

Also on the Zoom are two of the Sun's representatives, Brian Greenspun and Robert Cauthorn.

THE VIDEOGRAPHER:  Will the court reporter, please, swear in the witness?

Whereupon,

GLENN COOK,

having been sworn to testify to the truth, the whole truth, and nothing but the truth, was examined and testified under oath as follows:

EXAMINATION

BY MR. REID:

Q.  **Tell me your full name and address, please.**

A.  My full name is William Glenn Cook.  Glenn's spelled with two Ns.  No E on the end of Cook.  My address is 10913 Cardinal Crest Lane, Las Vegas, Nevada 89144.

Q.  **I think I have a cousin who lives right near you, so we'll leave it at that.**

MR. GAYAN:  I was just thinking that.  Leif, I think you may have been a class member of my class-actions.

Page 8

MR. REID:  I'm Leif Reid.  I represent the Sun.  Nicole Scott is to my left.  On Zoom, Kristen Martini.  Jordan Smith will be on shortly.  He has a conflicting hearing.  So, we may hear him join.

Also on the Zoom are two of the Sun's representatives, Brian Greenspun and Robert Cauthorn.

THE VIDEOGRAPHER:  Will the court reporter, please, swear in the witness?

Whereupon,

GLENN COOK,

having been sworn to testify to the truth, the whole truth, and nothing but the truth, was examined and testified under oath as follows:

EXAMINATION

BY MR. REID:

**Q.   Tell me your full name and address, please.**

A.   My full name is William Glenn Cook.  Glenn's spelled with two Ns.  No E on the end of Cook.  My address is 10913 Cardinal Crest Lane, Las Vegas, Nevada 89144.

**Q.   I think I have a cousin who lives right near you, so we'll leave it at that.**

MR. GAYAN:  I was just thinking that.  Leif, I think you may have been a class member of my class-actions.

SA657

Arizona.

I worked very briefly at the El Conquistador Resort in Tucson and a Costco, until I retained a position in Las Vegas with a company called IT Corporation.

Which was a U.S. Department of Energy contractor. And it was not a great job. I didn't like it. I missed being in newspapers and media. I had the chance to meet a couple of people who worked for the Review-Journal, encouraged me to apply for an opening that existed in The View newspaper section.

And then in September of '96, I joined the Review-Journal. So, my employment with IT Corporation lasted from November of '94 through August of '96, and then joined the RJ in September '96.

Q. **And happy anniversary.**

A. Thank you very much.

Q. **Yeah.**

**Describe to me the -- what control does the Sun have to set the price of newspapers here in Clark County?**

MR. GAYAN: Object to form. Outside the scope.

THE WITNESS: To my knowledge, the Sun does not -- is not involved in decisions to set the single

copy price of the Review-Journal or subscription rates

to the combined Review-Journal.

BY MR. REID:

Q.   So, just to confirm:  The -- the Sun doesn't have any control over the setting of newspaper pricing in Las Vegas?

A.   I don't believe so.

MR. GAYAN:  Object to form and outside the scope.

BY MR. REID:

Q.   What control does the Sun have over the sales of subscriptions?

MR. GAYAN:  Object to form and outside the scope.

THE WITNESS:  They -- the -- the Sun does not -- as part of the joint operating agreement between the Review-Journal and Sun to produce a combined printed newspaper, the Sun does not have any business operations over the partnership.

When the -- the joint operating agreement was struck, it turned control over the print publication, distribution, ad sales, business office function, revenue collection.  All business functions of the joint operating agreement are handled by the Review-Journal offices.

BY MR. REID:

Q.   Does the Sun have -- have any control over the RJ's circulation efforts?

MR. GAYAN:  Object to form.  Outside the scope.

THE WITNESS:  I would argue that the Sun does.  The Sun puts out quality newspaper.  It makes -- creates a product that is easier to sell and is more desirable to purchase for subscribers.

BY MR. REID:

Q.   Okay.  So, my question was -- just so we're -- I -- I understand your response.

A.   Sure.

Q.   But my question was focused on the efforts to -- to contact potential subscribers or to market the newspapers.

Does the Sun have any control over that -- those efforts that take place here in Clark County?

MR. GAYAN:  Object to form and outside the scope.

THE WITNESS:  Well, the -- while the Review-Journal has a circulation department that interacts with subscribers and runs the delivery operations of the combined newspaper product and deals with customer wishes, for example, for vacation hold or

Page 19

a subscription cancellation, the Sun does have some role in encouraging circulation by using their printed newspaper to encourage people to continue reading it.

BY MR. REID:

Q.   What control does the Sun have to determine what issues the RJ covers in the Review-Journal?

A.   None.

Q.   Does it have any control over the editorial positions that the RJ takes?

A.   No.

Q.   Does the Sun have any control to set compensation for RJ reporters?

A.   No.

Q.   Does the Sun control the market for daily printed newspapers in Clark County?

MR. GAYAN:  Object to form.  Outside the scope.

THE WITNESS:  I think the basis of your question is incorrect, because a daily printed newspaper market does not exist.  There's no such thing.

BY MR. REID:

Q.   Why do you say that?

A.   Because the combined Review-Journal/Sun print edition does not exist in a vacuum -- sorry, in a --

SA661

Page 140

covers part of a Sun skybox somehow triggers a reader to -- who might otherwise be inclined to read the Las Vegas Sun, subsequently sees a sticky note that is designed to be peeled back easily and quickly, that someone might suddenly be disinclined to look at the Sun and see that the Sun has issued political endorsements, when any long-time subscriber of the Las Vegas Sun knows that Brian Greenspun and the Sun endorse almost exclusively Democratic candidates for office.

The idea that a randomly and unintentionally placed sticky note somehow could damage the Sun's ability to influence an election with its endorsements is preposterous.

BY MR. REID:

**Q.   Do readers benefit when the -- the two newspapers, the Review-Journal and the Sun, take different opinions on political candidates or issues --**

MR. GAYAN:  Object --

BY MR. REID:

**Q.   -- and shares that to readers?**

MR. GAYAN:  Object to form.

THE WITNESS:  The -- the -- they're -- the marketplace of ideas is vast and growing.  And the joint printed newspaper between the Sun and the

Page 141

Review-Journal, you know, preserves two local voices.

The problem that we have right now with the joint operating agreement is that the Sun withholding content from their print edition, that the Sun not acting in partnership with the Review-Journal and trying to actively undermine the Review-Journal and the joint partnership, has created an environment where the Sun is actively trying to silence the Review-Journal's voice by damaging and destroying the joint product and making it impossible for the joint product to be a viable enterprise going forward.

BY MR. REID:

**Q.   So, I'm going to ask Mick to read the question back to you --**

A.   Okay.

**Q.   -- because you didn't respond to my question.**

MR. GAYAN:  I'm just going to object.
Argumentative.

(The court reporter read the requested portion of the record.)

THE WITNESS:  They can if the -- if the opinions are presented as part of a high-quality, local newspaper.  If the rest of the newspaper is substandard, no one's going to want to read the newspaper to go to the endorsements.

SA663

Page 159

Brian Greenspun's urging, the Las Vegas Sun pursued an amendment to the 2005 joint operating agreement to effectively end that joint operating agreement and end the publication of the Las Vegas Sun section in the Review-Journal.

So, I imagine that considering the Sun and current RJ ownership have gone through a round of negotiations over an amendment to the joint operating agreement, that they have some understanding of how it works.

BY MR. REID:

**Q. Well -- okay. So, in 2008 when the RJ received the correspondence that you just referenced, did the RJ continue to -- to conduct its operations consistent with the 2005 amendment to the JOA?**

MR. GAYAN: Object to form and outside the scope.

THE WITNESS: So, clearly, they did. The -- but why Stephens Media continued to do so is a question best left to Stephens Media. I can't speak for Stephens Media's response or nonresponsive to receiving a notice from the Department of Justice.

BY MR. REID:

Page 286

CERTIFICATE OF REPORTER

STATE OF NEVADA   )
                  )
COUNTY OF CLARK   )

I, Mickey Marez, a duly commissioned and licensed court reporter, Clark County, State of Nevada, Registered Professional Reporter and Certified Realtime Reporter with the National Court Reporters Association, do hereby certify:  That I reported the taking of the deposition of the witness, GLENN COOK, FRCP 30(B)(6) OF LAS VEGAS REVIEW-JOURNAL, INC., commencing on Friday, August 19, 2022, at 9:05 a.m.;

That prior to being examined, the witness was, by me, duly sworn to testify to the truth.  That my said shorthand notes were thereafter transcribed into typewriting and that the typewritten transcript of said deposition is a complete, true, and accurate transcription of said shorthand notes.

I further certify that I am not a relative or employee of an attorney or counsel or any of the parties, nor a relative or employee of an attorney or counsel involved in said action, nor a person financially interested in the action; that a request has been made to review the transcript.

IN WITNESS THEREOF, I have hereunto set my hand in my office in the County of Clark, State of Nevada, this 1st day of September, 2022.

_____
Mickey Marez, RPR, CRR, NV CCR No. 950

Page 285

CERTIFICATE OF DEPONENT

PAGE     LINE     CHANGE                REASON

**See attached errata sheet listing corrections.**

_____

_____

_____

_____

_____

_____

_____

_____

_____

*    *    *    *    *

I, GLENN COOK, FRCP 30(B)(6) OF LAS VEGAS REVIEW-JOURNAL, INC., deponent herein, do hereby certify and declare the within and foregoing transcription to be my deposition in said action; that I have read, corrected, and do hereby affix my signature to said deposition under penalty of perjury.

GLENN COOK, FRCP 30(B)(6) OF LAS
VEGAS REVIEW-JOURNAL, INC.,
Deponent

Job No. 902154

SA666

## ERRATA SHEET

### 30(B)(6) GLENN COOK – 8/19/2022

| Page:Line | Should Read: (Changes in **Bold**) | Reason for Change |
|---|---|---|
| 11:7 | Change "Schultz" to "Scholtes" | Transcription Error |
| 11:21 | Change "time" to "town" | Transcription Error |
| 14:13 | "consultant/freelance attorney on **an** hourly basis for the" | Transcription Error |
| 14:14 | "Review-Journal **under** GateHouse. And" | Misspoke |
| 18:7 | "does. **If** the Sun puts out **a** quality newspaper, **it** makes –" | Transcription Error |
| 21:16 | Change "featured" to "feature" | Transcription Error |
| 22:4 | "those websites and read stories, **albeit** short" | Transcription Error |
| 24:7 | "news reporting based. There was a time **when a** couple of" | Transcription Error |
| 30:12 | Change "sceptical" to "skeptical" | Spelling Error |
| 30:23 | Change "sceptical" to "skeptical" | Spelling Error |
| 34:25 | Change "researching" to "reaching" | Transcription Error |
| 36:5 | Change "featured" to "feature" | Transcription Error |
| 37:35 | Change "interests" to "interest" | Transcription Error |
| 38:3 | Change "interests" to "interest" | Transcription Error |
| 39:7 | "major news organization and even mid-metro **and** small" | Transcription Error |
| 42:6 | "the **timeliest** news possible, news from the previous" | Transcription Error |
| 61:4 | Change "manager" to "editor" | Transcription Error |
| 69:14 | Change "than" to "in" | Transcription Error |
| 93:6 | "the day before. It contains **feature** stories," | Transcription Error |
| 93:15 | "Often, their stories are **feature** stories." | Transcription Error |
| 93:16 | "**Feature** stories that have been published on the" | Transcription Error |
| 98:19 | Capitalize "phoenix" | Spelling Error |
| 99:12 | Change "it's" to "its" | Spelling Error |

SA667

| 107:23 | Change "covered" to "cover" | Transcription Error |
|---|---|---|
| 109:17 | "the newspaper to meet the quality standards of **a**" | Transcription Error |
| 112:7 | "are **relevant**. It depends on the news of the day." | Misspoke (see my correction on the record at page 112, line 13) |
| 114:18 | Change "communicative" to "communicated" | Transcription Error |
| 130:20 | Change "in-precise" to "imprecise" | Transcription Error |
| 132:20 | Change "satisfy" to "satisfied" | Transcription Error |
| 152:14 | "national headliner award **for** public service." | Transcription error |
| 159:21 | "Stephens Media's response or **nonresponse** to receiving" | Transcription Error |
| 169:7 | "**sale** that was, and I don't know what the nature of his" | Transcription Error |
| 169:21 | "given that **title** or whether he was working strictly on a" | Transcription Error |
| 175:18 | "ordered the statement **removed** from Page 3, and it was" | Transcription Error |
| 189:19 | "in advancing **the** interest of the joint operating agreement" | Transcription Error |
| 199:5 | "physically **surrounds** his newspaper in which he relies on" | Transcription Error |
| 209:7 | Change "horizons" to "horizon" | Transcription Error |
| 229:14 | "week before his announced date **of** resignation, Mr. Moyer" | Transcription Error |
| 240:20 | "harm and hurting our ability to retain **a** print" | Transcription Error |
| 241:17 | "Q. If the RJ **weren't** publishing the Sun anymore" | Transcription Error |
| 246:11 | Change "engage" to "gauge" | Transcription Error. |
| 258:11 | "in presenting to **as** wide **an** audience as possible" | Transcription Error |
| 263:14 | Change "hault" to "halt" | Spelling Error |
| 270:17 | Change "legislatures" to "legislators" | Transcription Error |
| 273:17 | Change "legislatures" to "legislators" | Transcription Error |
| 273:9 | "Some of them won't even get back to us. But **a** funny" | Transcription Error |
| 278:22 | "itself in all the wrong **ways** by not having enough" | Transcription Error |

2

SA668

| 279:18 | Change "featured" to "feature" | Transcription Error |

Date: 10/2/22

_____
Signature of Witness

Glenn Cook
Print Name of Witness

# EXHIBIT 25

Deposition Transcript Excerpts of Brian Greenspun, *Las Vegas Sun, Inc. v. Adelson*, No. 2:19-cv-0166-ART-VCF (D. Nev. Mar. 23, 2022)

# EXHIBIT 25

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

LAS VEGAS SUN, INC., a                )
Nevada corporation,                   )
                                      )
              Plaintiff,              ) Case No.: 2:19-CV-01667-GMN-VCF
                                      )
     v.                               )
                                      )
SHELDON ADELSON, an                   )
individual and as the alter          )
ego of News+Media Capital            )
Group LLC and as the alter           )
ego of Las Vegas Review              )
Journal, Inc.; PATRICK               )
DUMONT, an individual;               )
NEWS+MEDIA CAPITAL GROUP LLC,         )
a Delaware limited liability         )
company; LAS VEGAS REVIEW            )
-JOURNAL, INC., a Delaware           )
corporation; and DOES, I-X,          )
inclusive,                           )
                                      )
              Defendants.            )
_____)
LAS VEGAS REVIEW-JOURNAL,             )
INC., a Delaware corporation,        )
                                      )
              Counterclaimant,        )
                                      )
     v.                               )
                                      )
LAS VEGAS SUN, INC. a Nevada          )
corporation; BRIAN GREENSPUN,        )
an individual and as the             )
alter ego of Las Vegas Sun,          )
Inc.,; GREENSPUN MEDIA GROUP,         )
LLC, a Nevada limited                )
liability company, as the            )
alter ego of Las Vegas Sun,          )
Inc.,                                 )
                                      )
     Counterclaim-Defendants.        )
_____)
Reported by: Mickey Marez, RPR, CRR, NV CCR No. 950

Job No.: 846351

SA671

Page 2

VIDEOCONFERENCED/ZOOM/VIDEOTAPED

DEPOSITION OF BRIAN GREENSPUN

ALL PARTIES APPEARING REMOTELY

WEDNESDAY, MARCH 23, 2022

Reported by: Mickey Marez, RPR, CRR, NV CCR No. 950

Job No.: 846351

SA672

Page 3

VIDEOCONFERENCED/ZOOM/VIDEOTAPED DEPOSITION OF BRIAN GREENSPUN, on

Wednesday, March 23, 2022, at 9:05 a.m., before Mickey Marez,

Registered Professional Reporter and Certified Realtime Reporter with

the National Court Reporters Association, Certified Court Reporter, in

and for the State of Nevada


APPEARANCES:
FOR THE PLAINTIFF/COUNTERCLAIM-DEFENDANTS:
BY: E. LEIF REID, ESQ.
BY: MARLA J. HUDGENS, ESQ.
BY: KRISTEN L. MARTINI, ESQ.
BY: NICOLE SCOTT, ESQ.
LEWIS ROCA ROTHGERBER CHRISTIE LLP
ONE EAST LIBERTY STREET, SUITE 300
RENO, NEVADA 89501
TELEPHONE: (775)823-2900
FAX: (775)823-2929
E-MAIL: lreid@lewisroca.com; kmartini@lewisroca.com;
mhudgens@lewisroca.com; nscott@lewisroca.com

BY: JORDAN T. SMITH, ESQ.
PISANELLI BICE PLLC
400 SOUTH SEVENTH STREET, SUITE 300
LAS VEGAS, NEVADA 89101
TELEPHONE: (702)214-2100
FAX: (702)214-2101
E-MAIL: jts@pisanellibice.com

FOR THE DEFENDANTS/COUNTERCLAIMANTS:
BY: MICHAEL J. GAYAN, ESQ.
BY: MONA KAVEH, ESQ.
KEMP JONES, LLP
3800 HOWARD HUGHES PARKWAY, 17TH FLOOR
LAS VEGAS, NEVADA 89169
TELEPHONE: (702)385-6000
FAX: (702)385-6001
E-MAIL: m.gayan@kempjones.com; m.kaveh@kempjones.com




//

BRIAN GREENSPUN - 03/23/2022

Page 4

FOR THE DEFENDANTS/COUNTERCLAIMANTS:
BY: RICHARD L. STONE, ESQ.
BY: DAVID R. SINGER, ESQ.
JENNER & BLOCK LLP
515 SOUTH FLOWER STREET, SUITE 3300
LOS ANGELES, CALIFORNIA 90071
TELEPHONE: (213)239-2206
FAX: (213)239-2216
E-MAIL: rstone@jenner.com; dsinger@jenner.com

BY: BENJAMIN A. LIPMAN, ESQ.
LAS VEGAS REVIEW-JOURNAL, INC.
1111 WEST BONANZA ROAD
LAS VEGAS, NEVADA 89106
TELEPHONE: (702)383-0224
E-MAIL: blipman@reviewjournal.com

ALSO PRESENT:
BOB CAUTHORN
MYRA GREENSPUN
PATRICK DUMONT
KEITH MOYER
ALONSO PONCE

VIDEOGRAPHER: NICK APARO
LITIGATION SERVICES, LLC
3960 HOWARD HUGHES PARKWAY, SUITE 700
LAS VEGAS, NEVADA 89169
TELEPHONE: (800)330-1112

                              * * * * *

SA674

BRIAN GREENSPUN - 03/23/2022

Page 5

                              INDEX

WITNESS:  BRIAN GREENSPUN

EXAMINATION                                              PAGE

BY RICHARD L. STONE, ESQ.                                 11




                             EXHIBITS

NUMBER            DESCRIPTION                    MARKED

EXHIBIT 319    SUN_00058442_2013 VERIFIED          31

               COMPLAINT


EXHIBIT 349    SUN_00068060                        92


EXHIBIT 320    2009-10-21_LVS_HENDERSON            96

               BOULDER CITY NEWSPAPERS TO

               SUSPEND PUBLICATION


EXHIBIT 216    2019-09-24_001_LVS                 124

               COMPLAINT


EXHIBIT 215    GREENSPUN-CAUTHORN TEXT            140

               MESSAGES


EXHIBIT 331    DEFS0006274_2016-04-27             189

BRIAN GREENSPUN - 03/23/2022

Page 6

EXHIBIT 332    2017-03-05_SUN_00000482_BRI    225

AN NOTES RE JOA MEETING

EXHIBIT 333    20170411_DEFS0002626_KEY-TH    240

IS THING IS GOING TO BUILD

UP AGAIN

EXHIBIT 334    DEFS0018510_2020-09-16-PROD    243

3FEDERALPRODUCTION24654

EXHIBIT 336    20170510_1608_DEFS0016996_K    250

EY

EXHIBIT 337    20170531_1125_DEFS0013290_K    260

EY

EXHIBIT 338    20170607_DEFS0018527    264

EXHIBIT 339    20170628_0955_DEFS0018419    265

EXHIBIT 340-A  SUN_00083384_GREENSPUN-TAYL    278

OR

EXHIBIT 341    SUN_00007870-IMAGE    289

BRIAN GREENSPUN - 03/23/2022

Page 7

EXHIBIT 342   SUN_00007733_IMAGE                          294

EXHIBIT 343   SUN_00007691_IMAGE                          300

EXHIBIT 344   SUN_00008049_IMAGE                          302

EXHIBIT 345   SUN_00083425_IMAGE                          305

EXHIBIT 346   SUN_00083427_IMAGE                          308

EXHIBIT 350   2015-2020_SUN_00068067_AEO_                 315

              GMG FINANCIALS FROM

              CAUTHORN NOTES

EXHIBIT 352   SUN_00055159_IMAGE                          325

EXHIBIT 353   SUN_00055162_IMAGE                          327

EXHIBIT 330   DEFS0000611_2018-01-11_A                    331

              NOTE FROM THE SUN

EXHIBIT 225   SUN_00055822_ANDERSON, RIC                  355

At the request of Richard Stone, Esq.,                    103

this portion of the transcript was marked for identification.

BRIAN GREENSPUN - 03/23/2022

Page 10

nearly every hearing.  And you know very well who he is -- who she is.  So, let's just proceed.

I'm not going to -- I don't understand the import of this.  You know very well who Myra Greenspun is.  Let's not play any games.

MR. SINGER:  Yeah, Leif, the import is that a public hearing is one thing, but access to attorneys' eyes only or confidential documents is another.

So, if you want to identify what party she's affiliated with and how, that will allow us to proceed efficiently.

MR. REID:  Myra Greenspun, as has been identified in numerous hearings in this case, is one of the owners of the Las Vegas Sun.

MR. SINGER:  Okay.  Well, we'll -- we'll deal with it as we come up with documents.  And you can let us know what she can or can't see.  Let's go on.

MR. GAYAN:  Good morning, Mickey.  This is Michael Gayan on behalf of defendants, as well.

MR. REID:  Good morning, Michael.

MS. KAVEH:  And good morning.  This is Mona Kaveh, also on behalf of defendants.

MR. REID:  Good morning.

THE VIDEOGRAPHER:  Okay.  Will the court reporter please swear in the witness?

BRIAN GREENSPUN - 03/23/2022

Page 11

Whereupon,

                    BRIAN GREENSPUN,

having been sworn to testify to the truth, the whole truth, and

nothing but the truth, was examined and testified under oath as

follows:

                    EXAMINATION

BY MR. STONE:

    Q.   Good morning, again, Mr. Greenspun.  I'm
Richard Stone.  I represent the defendants and
counterclaimants in this lawsuit.

    A.   Good morning.

    Q.   May I ask you what you did to prepare for
your deposition here today?

    A.   Yes, you may.  What did I do?  I -- I had a
few telephonic meetings with my lawyers.  "A
few," being three or four over the last week or so.

         I read through, quickly, the 2005 amended
JOA.  I looked through my -- I believe it was my
deposition testimony for an earlier arbitration,
2016ish.

         What else did I do?  I -- I looked at some
e-mails in the context of the meetings with the
lawyers.  That's pretty much it.

    Q.   And were these e-mails that you either sent
or received?

SA679

BRIAN GREENSPUN - 03/23/2022

Page 163

sitting here.

Q.   Okay.

And so, it was just you and Mr. Adelson meeting one evening shortly after a discussion with Mr. Taylor; correct?

A.   Sometime after the discussion.  I don't know if it was shortly, or a week, or three weeks.  I -- but within that period, yes.

Q.   Yeah, that -- that's what I'm trying to do, is jog your memory.  It was roughly within a month of your conversation with Mr. Taylor?

A.   What I remember are the pickles.  I just don't remember the exact time.  And I know it was late after work, 6:00/7:00 o'clock at night or something.

Q.   Do you recall the time of year, whether it was already dark, or whether it was warm, not warm? Anything that would tell you the season?

A.   I think it was within a few weeks of when we found out that Mr. Adelson owned the newspaper.  So, that would have been in the winter.

Q.   Okay.  And what do you recall about your discussion with Mr. Adelson at this first meeting?

A.   He asked me to explain what the JOA was.  He asked me to explain what my disagreement was with the prior owners, which I did gladly.  I --

SA680

BRIAN GREENSPUN - 03/23/2022

Page 164

Q.  Did you say -- I'm sorry.  Did you say "agreement" or "disagreement"?  You cut out there for a second.

A.  My disagreement --

Q.  Your --

A.  My disagreement with the prior owners.

Q.  Okay.

A.  I told him what I believed his obligations were as the owner of the Review Journal toward the Sun, as the operator of the JOA, the Review Journal.

And he promised me that he was not that person, he was going to abide by the letter of the JOA, to the letter and I didn't have to worry about that.  And we had pickles.  I thought we got along just fine.  And that's where we left it.

Q.  Were any numbers exchanged in relationship to a potential buyout of the Sun from the JOA at this meeting?

A.  I don't believe so.  Because I don't think I talked to him about a buyout.  I may have mentioned that -- again, being consistent, I didn't want to fight with him.

I was -- oh, I did tell him I was thrilled that for the first time in my history the ownership of the Review Journal would be owned by somebody local,

SA681

BRIAN GREENSPUN - 03/23/2022

Page 172

where there would no longer be a Sun insert to the Review Journal?

MR. REID:  Objection.  Form.

THE WITNESS:  That's part of the problem I'm having.  I don't recall ever talking about amending the JOA where there would be no presence of the Sun.

It would have been the extent of the presence of the Sun.  But I specifically -- to answer the question specifically, I -- I certainly recall -- whenever I started meeting with Mr. Dumont, and I believe it was early 2017ish, there, we certainly discussed a range of numbers about amending the -- how to amend and what it would cost to amend the JOA.  That would have been in 2017.

BY MR. STONE:

Q.   Was that the first time you discussed any numbers for amending the JOA?

MR. REID:  Objection.  Form.

THE WITNESS:  Well, prior to that, as I said, in the first meeting with Mr. Adelson, we did talk about numbers and the newspapers.  But it wasn't about the JOA itself.

BY MR. STONE:

Q.   Okay.  So, you're not answering my question. I'm asking you if you had any discussions prior to

BRIAN GREENSPUN - 03/23/2022

Page 173

20- -- 2017 where you discussed any numbers for amending the joint operating agreement.

A.   And I'm saying, I don't --

MR. REID:  Hold on, hold on.

THE WITNESS:  Excuse me.

MR. REID:  Objection.  Form.

Also, Mr. Stone, are -- did you say "numbers for" or "numbers or"?

MR. STONE:  For, f-o-r.

MR. REID:  Thank you.

Same -- same objection.  Form.

THE WITNESS:  I -- I think I answered -- or I -- if I did not, I will now.  I don't recall prior to the meetings I had with Mr. Dumont in 2017.

BY MR. STONE:

Q.   Okay.  What was your opening offer to revise the JOA and amend it?

MR. REID:  Objection.  Form.

THE WITNESS:  I don't -- I don't recall what it was.  I'm not so sure I made an opening offer.  I think maybe Patrick did.  But I don't recall.

BY MR. STONE:

Q.   What was his opening offer, if you recall?

A.   I recall that.  I think it was $4 million.

Q.   What was your response to that, as far as the

BRIAN GREENSPUN - 03/23/2022

Page 174

number?  In other words, did you have -- did you counter it with a different number?

MR. REID:  Objection.  Form.

THE WITNESS:  Being polite, I might have said that's far, far, far too low for the next 20 something years of the JOA.

BY MR. STONE:

Q.  Okay.  My question is:  Did you counter with a different number?

A.  I think I countered with a sense of disbelief when he told me he only had $4 million to pay for it.

Q.  When you say "a sense of disbelief," do you mean you told Patrick Dumont you did not believe him?

A.  In -- in so many words, I didn't -- not that I didn't believe that he was offering $4 million, but that I didn't believe that that's all the money that he was -- he should -- should have been willing to pay for a significant amendment of the JOA.

Q.  And did the talks end at that point in time, then?

A.  No.  We talked -- I don't know if it was over a two-month or a six-month period.  But for some period of time, because we had five/six meetings, maybe more, maybe less -- one or two less.

We had a number -- we had, you know, a number

SA684

Page 175

of meetings during a period of time where we tried to get to some understanding.  We never got there.

But I don't remember -- I just don't remember how long, over what period of time.  I think it was about six months.

Q.  **So, what did you understand Mr. Dumont was offering the 4 million for?**

MR. REID:  Objection.  Form.

THE WITNESS:  Well, I had a list of things I wanted.  And I assume he had a list of things he wanted.

So, when you say what was it for, in my mind, I never got to what specifically his 4 million was for. I think it ultimately went to four and a half million. He found another half million somewhere.

What I remember -- and I think I may have told Patrick this.  When I first did the negotiations for the JOA in 1989 with a man named Fred Smith, who was running Donrey Media, we had lists of 20 things that we both wanted.

And he said, "Well, Brian, here are the three things that I need.  And until I get to these three things, it doesn't make any sense to talk about the other 17 things," or 37 things, whatever that was.

So, in my head with Patrick, when he threw

BRIAN GREENSPUN - 03/23/2022

Page 176

out that he only had $4 million and on and on and on -- and this was at a time when I think they were losing 5 or $6 million a year or more.

So, there was a sense of disbelief that he only had $4 million, because I was worried he'd have to close the Review Journal.

In my head, long before we could get to really how much, one, that it was going to make an agreement to amend the JOA in a serious way, there were other things that I wanted. And I never got most of those.

So, in my mind, the discussions never got to the point that were so darn close, for just this far away. So, when you ask, "You know, did you -- what were the numbers and everything else," we were just kind of playing around the edges at that time.

And in my mind, we never got to the real meat. I know toward the end I threw out a number. Frankly, just to see if -- you know, how -- how hard did he bite or choke, whatever that was. And I think that was the end of the discussion, if I'm not mistaken.

BY MR. STONE:

Q. **Okay. When you say near the end, when are you referring to?**

Page 177

A.   Oh, whenever that period of time came that we stopped talking about amending the JOA.

Q.   I know.  My question is:  When was that?

A.   I -- I -- I told you it could have been four/five months from the time we started.  I know the time we started.  It's when we were told to go talk to Patrick.

Because his message to us directly was, "The newspaper is never going to -- basically, never going to make money again, so this is the very best time to talk to them, because it's never going to be worth more than it is right now."

Q.   What was the number that you threw out that you believe ended the discussions?

A.   It was either 10 million or 20 million.

MR. REID:  Objection.  Form.

THE WITNESS:  Sorry.

I think I -- I think it was $20 million to amend the JOA.  And then I still had my whole list of things that I wanted that we hadn't even reached any agreement on.  So, I had --

BY MR. STONE:

Q.   Such as?

A.   I had a long way to go.

Q.   So, what was the 20 million for?  What would

Page 365

CERTIFICATE OF REPORTER

STATE OF NEVADA   )
                  )
COUNTY OF CLARK   )

I, Mickey Marez, a duly commissioned and licensed court reporter, Clark County, State of Nevada, Registered Professional Reporter and Certified Realtime Reporter with the National Court Reporters Association, do hereby certify:  That I reported the taking of the deposition of the witness, BRIAN GREENSPUN, commencing on Wednesday, March 23, 2022, at 9:05 a.m.;

That prior to being examined, the witness was, by me, duly sworn to testify to the truth.  That I thereafter transcribed my said shorthand notes into typewriting and that the typewritten transcript of said deposition is a complete, true, and accurate transcription of said shorthand notes.

I further certify that I am not a relative or employee of an attorney or counsel or any of the parties, nor a relative or employee of an attorney or counsel involved in said action, nor a person financially interested in the action; that a request has been made to review the transcript.

IN WITNESS THEREOF, I have hereunto set my hand in my office in the County of Clark, State of Nevada, this 1st day of April, 2022.

_____
Mickey Marez, RPR, CRR, NV CCR No. 950

DocuSign Envelope ID: 46EA5D2A-7BA4-4A62-80F8-BC6E9B28A192

BRIAN GREENSPUN – 03/23/2022

Page 364

CERTIFICATE OF DEPONENT

| PAGE | LINE | CHANGE | REASON |
|------|------|--------|--------|
| 133 | 7 | "for," not "to" | Transcription error |
| 146 | 13 | "night," not "knife" | Transcription error |
| 205 | 23 | "overriding," not "overwriting" | Transcription error |
| 266 | 16 | "extremis," not "extremist" | Transcription error |
| 275 | 9 | "emotion," not "a motion" | Transcription error |

_____

_____

_____

_____

_____

*    *    *    *    *

I, BRIAN GREENSPUN, deponent herein, do hereby certify and declare the within and foregoing transcription to be my deposition in said action; that I have read, corrected, and do hereby affix my signature to said deposition under penalty of perjury.

DocuSigned by:

Bill G    4/29/2022

908EFFBA0931439...

BRIAN GREENSPUN, Deponent

Job No. 846351

SA689

# EXHIBIT 26

Final Award of Arbitrator, *Las Vegas Sun, Inc. v. News+Media Capital Group, LLC*, AAA Case No. 01-18-0000-7568 (July 2, 2019) (SUN_00013635-46)
(**FILED UNDER SEAL**)

# EXHIBIT 26

# EXHIBIT 27

Aug. 29, 2019, letter from K. Moyer to B. Greenspun re: Notice of Default
(SUN_00053251-53)

# EXHIBIT 27



August 29, 2019

Via Hand Delivery
Brian L. Greenspun, Esq.
President & Editor
Las Vegas Sun
2275 Corporate Circle Drive
Suite 300
Henderson, Nevada   89074

### Re: Notice of Default

Dear Brian:

Las Vegas Review-Journal, Inc. (the "Review-Journal") provides this notice under Section 9.1.2 of the Amended and Restated Agreement dated June 10, 2005 (the "JOA") of Las Vegas Sun, Inc.'s ("Sun Corporation's") default of its material obligations under the JOA. The JOA, of course, is the governing agreement between our two companies concerning the operations of the printed *Las Vegas Review-Journal* and printed *Las Vegas Sun*. In addition to Sun Corporation's default, it is also the conclusion of the Review-Journal that the purpose of the JOA has been frustrated, and that circumstances beyond the Review-Journal's control would excuse it from the requirements of the JOA.

The Review-Journal will continue, upon your request, to print and distribute the printed *Sun* newspaper until the Review-Journal obtains a court judgment that Sun Corporation has defaulted or that the termination of the JOA is otherwise lawful. If the Review-Journal prevails, please consider this letter notice that, among other remedies, the Review-Journal will seek payment from Sun Corporation for such printing, distribution and other services provided during the pendency of the Review-Journal's claim. Please note, Section 9.1.2 of the JOA gives Sun Corporation sixty days to cure certain of its defaults.

Sun Corporation has breached its obligations under the JOA in multiple ways, including:

(1)     Sun Corporation has failed to publish a printed newspaper that meets the quality standards set forth in the JOA: Under Section 5.2 of the JOA, each party "**agrees to preserve high standards of newspaper quality throughout the term of this Restated Agreement consistent with United States metropolitan daily newspapers.**" The printed *Sun* was awarded a Pulitzer Prize in 2009, but in the decade since, the decline in the quality of the printed *Sun* has been dramatic. Today it is clear that the *Sun* fails to meet the JOA's required high standards of newspaper quality. By way of example, the printed *Sun* has little or no breaking local news coverage and scant original content. Instead, its pages are filled with wire service stories that are



1111 W. Bonanza Road, Las Vegas, Nevada 89106
LVRJ.com

SUN_00053251

SA704

**LAS VEGAS**
**REVIEW-JOURNAL**

readily available from other sources and usually days old by the time they make it to the printed *Sun*. And when the printed *Sun* does have local stories, those are typically stories that had appeared much earlier in other Greenspun Media Group products. By ceasing to print meaningful, timely content, the printed *Sun* has failed to preserve high standards of newspaper quality. For each of these reasons, Sun Corporation is in default, and its actions have harmed the JOA, the Review-Journal and the public.

(2)    Sun Corporation has breached the JOA by taking actions to ensure that the JOA fails to the benefit of other Greenspun Media ventures: Sun Corporation has also defaulted from its obligation under Section 5.3 of the JOA **"to take all corporate action necessary to carry out and effectuate the intent, purposes and provisions of this Restated Agreement, and to cooperate with the other party in every reasonable way that will promote successful and lawful operation under this Restated Agreement for both parties."** Among other things, rather than contribute to the success of the JOA by making the printed *Sun* attractive to newspaper readers, subscribers and advertisers, as was intended, Sun Corporation has opted to use the printed *Sun* to promote the digital *Sun* and its sister Greenspun Media publications (such as *Las Vegas Weekly*)—all of which are not part of the JOA to the detriment of the JOA. The *Sun* hoards the bulk of any original content it generates for publication solely in the digital *Sun*; it occasionally tosses an old story from the digital *Sun* or another Greenspun Media publication into the printed *Sun*, and employs the printed *Sun* to advertise for those other publications. The Sun Corporation has not acted to make the JOA successful, but instead has used it as a vehicle to divert readers to other Greenspun Media ventures through exposure in the printed *Sun*.

In addition to Sun Corporation's breaches of the JOA, the JOA has a fundamental problem: it can no longer serve its purpose. The theory of the Newspaper Preservation Act, under which the JOA was formed, was that by permitting newspapers to combine their business operations to save costs and eliminate commercial competition between them, their combined operation could be profitable, and thus preserve editorial voices that otherwise might be lost. But events since the making of the 2005 Amendment have ensured that purpose can no longer be achieved here. The drastic decline in readership, circulation, and advertising revenue for local daily newspapers and the rise of the internet and digital economy have put many local daily newspapers out of business. **These immense financial challenges facing local newspapers are only exacerbated when one newspaper is forced to subsidize another publisher's substandard product.** It was a condition of each party's performance under the JOA that the JOA serve the purpose of the Act. That condition is no longer met.

We do not know the Sun Corporation's editorial costs for the printed *Sun*. But even if only the editorial costs for the printed *Review-Journal* are considered, the costs of publishing, printing and distributing the printed *Review-Journal* and *Sun* exceed the revenues received from those printed newspapers' operations by several million dollars per year. Our JOA is not economically sustainable, and thus cannot preserve editorial voices.



SUN_00053252

SA705

**LAS VEGAS**
**REVIEW-JOURNAL**

The Review-Journal has thus concluded, in addition to the Sun's breaches of Sections 5.2 and 5.3 of the JOA, that the Review-Journal would be within its rights to terminate the JOA due to frustration of purpose and that its performance would be excused under Section 8.2 of the JOA due to causes substantially beyond its control and for failure of a condition precedent. The Review-Journal reserves all rights accordingly.

Sincerely,

Keith Moyer
Publisher & Editor



1111 W. Bonanza Road, Las Vegas, Nevada 89106
LVRJ.com

SUN_00053253

SA706

# EXHIBIT 28

Sept. 27-Oct. 4, 2019, email between counsel re Preliminary Injunction Motion

# EXHIBIT 28

SA707

## Helm, Jessica

| | |
|---|---|
| **From:** | Michael Gayan <m.gayan@kempjones.com> |
| **Sent:** | Friday, October 4, 2019 10:11 AM |
| **To:** | Martini, Kristen |
| **Cc:** | Reid, Leif; Randall Jones; Scott, Nicole S.; James Pisanelli; Jordan T. Smith; Jamie Miller |
| **Subject:** | RE: Preliminary Injunction Motion |
| **Attachments:** | SAO re JOA_Final (executed).pdf; SAO re JOA_Final.pdf; SAO re JOA_Final.docx |

**[EXTERNAL]**

Kristen,

Here's my scanned signature and clean PDF and Word versions for your files. As I mentioned on the phone, I cleaned up some issues with the signature block and, after accepting the redlines, fixed the formatting around the blank space. Please copy us when you file.

Thanks,

**Michael J. Gayan, Esq.** | KEMP, JONES & COULTHARD, LLP
(P) 702-385-6000 | (F) 702-385-6001 | m.gayan@kempjones.com

---

**From:** Martini, Kristen [mailto:KMartini@lrrc.com]
**Sent:** Thursday, October 03, 2019 7:22 PM
**To:** Michael Gayan
**Cc:** Reid, Leif ; Randall Jones ; Scott, Nicole S. ; James Pisanelli ; Jordan T. Smith ; Jamie Miller
**Subject:** [External] Re: Preliminary Injunction Motion

Michael,

We agree to your changes. Please execute and scan back to us for our signature and filing.

Thank you,

Kristen

On Oct 3, 2019, at 6:03 PM, Michael Gayan <m.gayan@kempjones.com> wrote:

> **[EXTERNAL]**
>
> Kristen,
>
> We accepted your redlines and made a few minor edits/clarifications. Feel free to call me to discuss.
>
> Thanks,
>
> **Michael J. Gayan, Esq.** | KEMP, JONES & COULTHARD, LLP
> (P) 702-385-6000 | (F) 702-385-6001 | m.gayan@kempjones.com
>
> ---
> **From:** Martini, Kristen [mailto:KMartini@lrrc.com]
> **Sent:** Thursday, October 03, 2019 11:59 AM
> **To:** Michael Gayan <m.gayan@kempjones.com>; Reid, Leif <LReid@lrrc.com>; Randall Jones

1

SA708

<r.jones@kempjones.com>
**Cc:** Scott, Nicole S. <NScott@lrrc.com>; James Pisanelli <jjp@pisanellibice.com>; Jordan T. Smith <JTS@pisanellibice.com>; Jamie Miller <jmiller@aliotolaw.com>
**Subject:** [External] RE: Preliminary Injunction Motion
**Importance:** High

Michael,

We accepted your redlines, subject to two minor changes.

Kristen

> **Kristen Martini**
> Of Counsel
> Reno and Las Vegas Direct: 775.321.3446
> kmartini@lrrc.com
> _____
> Lewis Roca Rothgerber Christie LLP
> One East Liberty Street Suite 300
> Reno, Nevada 89501-1922
> lrrc.com

3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169-0918
lrrc.com

**From:** Michael Gayan <m.gayan@kempjones.com>
**Sent:** Thursday, October 3, 2019 10:59 AM
**To:** Martini, Kristen <KMartini@lrrc.com>; Reid, Leif <LReid@lrrc.com>; Randall Jones <r.jones@kempjones.com>
**Cc:** Scott, Nicole S. <NScott@lrrc.com>; James Pisanelli <jjp@pisanellibice.com>; Jordan T. Smith <JTS@pisanellibice.com>; Jamie Miller <jmiller@aliotolaw.com>
**Subject:** RE: Preliminary Injunction Motion

**[EXTERNAL]**

---

Kristen,

We accepted all existing redlines in the version you sent and redlined some additional edits and comments. Feel free to give me a call if you'd like to discuss.

Thanks,

**Michael J. Gayan, Esq.** | KEMP, JONES & COULTHARD, LLP
(P) 702-385-6000 | (F) 702-385-6001 | m.gayan@kempjones.com

---

**From:** Michael Gayan
**Sent:** Wednesday, October 02, 2019 6:21 PM
**To:** 'Martini, Kristen' <KMartini@lrrc.com>; Reid, Leif <LReid@lrrc.com>; Randall Jones <r.jones@kempjones.com>
**Cc:** Scott, Nicole S. <NScott@lrrc.com>; James Pisanelli <jjp@pisanellibice.com>; Jordan T. Smith <JTS@pisanellibice.com>; Jamie Miller <jmiller@aliotolaw.com>
**Subject:** RE: Preliminary Injunction Motion

Kristen,

2

SA709

Thanks for calling a little while ago to discuss. As agreed, we'll work on getting you our additional redlines and comments by 11am tomorrow. Have a good evening.

Best,

**Michael J. Gayan, Esq.** | KEMP, JONES & COULTHARD, LLP
(P) 702-385-6000 | (F) 702-385-6001 | m.gayan@kempjones.com

---

**From:** Martini, Kristen [mailto:KMartini@lrrc.com]
**Sent:** Wednesday, October 02, 2019 4:59 PM
**To:** Michael Gayan <m.gayan@kempjones.com>; Reid, Leif <LReid@lrrc.com>; Randall Jones <r.jones@kempjones.com>
**Cc:** Scott, Nicole S. <NScott@lrrc.com>; James Pisanelli <jjp@pisanellibice.com>; Jordan T. Smith <JTS@pisanellibice.com>; Jamie Miller <jmiller@aliotolaw.com>
**Subject:** [External] RE: Preliminary Injunction Motion

Michael,

Please see the attached stipulation with our redlines. We accepted most of your changes, but have comments about a couple of them, which we redlined. I tried to call you to discuss, but there was no answer. Feel free to call me if you would like to talk about our changes.

Thank you,

Kristen

**Kristen Martini**
Of Counsel
Reno and Las Vegas Direct: 775.321.3446
kmartini@lrrc.com
_____

Lewis Roca Rothgerber Christie LLP
One East Liberty Street Suite 300
Reno, Nevada 89501-1922
lrrc.com
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169-0918
lrrc.com

**From:** Michael Gayan <m.gayan@kempjones.com>
**Sent:** Wednesday, October 2, 2019 3:45 PM
**To:** Reid, Leif <LReid@lrrc.com>; Randall Jones <r.jones@kempjones.com>
**Cc:** Martini, Kristen <KMartini@lrrc.com>; Scott, Nicole S. <NScott@lrrc.com>; James Pisanelli <jjp@pisanellibice.com>; Jordan T. Smith <JTS@pisanellibice.com>; Jamie Miller <jmiller@aliotolaw.com>
**Subject:** RE: Preliminary Injunction Motion

**[EXTERNAL]**

---

Leif:

Find attached a redlined version of the proposed stipulation. As you requested, this version includes comments. And as we've previously stated, my clients are prepared to enter into this stipulation

SA710

simply because it is consistent with the RJ's prior public and private commitment to continue publishing the Sun until a court of competent jurisdiction rules on the issue.

If for some reason this stipulation does not satisfy the Sun, we reiterate our request that you identify the immediate threat of irreparable harm that the Sun believes could possibly serve as the basis for seeking a preliminary injunction. Despite our many emails on the subject, no such threat has ever been identified.

Regards,

**Michael J. Gayan, Esq.** | KEMP, JONES & COULTHARD, LLP
(P) 702-385-6000 | (F) 702-385-6001 | m.gayan@kempjones.com

---

**From:** Michael Gayan
**Sent:** Wednesday, October 02, 2019 12:13 PM
**To:** 'Reid, Leif' <LReid@lrrc.com>; Randall Jones <r.jones@kempjones.com>
**Cc:** Martini, Kristen <KMartini@lrrc.com>; Scott, Nicole S. <NScott@lrrc.com>; James Pisanelli <jjp@pisanellibice.com>; Jordan T. Smith <JTS@pisanellibice.com>; Jamie Miller <jmiller@aliotolaw.com>
**Subject:** RE: Preliminary Injunction Motion

Leif:

We will send you a redline.

Thanks,

**Michael J. Gayan, Esq.** | KEMP, JONES & COULTHARD, LLP
(P) 702-385-6000 | (F) 702-385-6001 | m.gayan@kempjones.com

---

**From:** Reid, Leif [mailto:LReid@lrrc.com]
**Sent:** Wednesday, October 02, 2019 11:11 AM
**To:** Michael Gayan <m.gayan@kempjones.com>; Randall Jones <r.jones@kempjones.com>
**Cc:** Martini, Kristen <KMartini@lrrc.com>; Scott, Nicole S. <NScott@lrrc.com>; James Pisanelli <jjp@pisanellibice.com>; Jordan T. Smith <JTS@pisanellibice.com>; Jamie Miller <jmiller@aliotolaw.com>
**Subject:** [External] RE: Preliminary Injunction Motion

Michael - You are correct that for the last several days we have been attempting to work with Defendants in good faith in order to reach an agreement that would result in an enforceable order preventing the Review-Journal from ceasing publication of the Sun absent authorization from a jurisdictional federal court, while preserving all parties' rights. While you state that you have made repeated assurances to maintain the status quo, it is unclear why Defendants refuse to enter into our proposed stipulation. To date, you have not identified the basis for Defendants' refusal to do so, or even identified which portions of our proposed stipulation are objectionable. In a final showing of good faith, we welcome you to provide redlines and comments to our proposed stipulation by mid-afternoon. Otherwise, we intend to file our motion prior to the close of business. Thanks. Leif

**From:** Michael Gayan <m.gayan@kempjones.com>
**Sent:** Wednesday, October 2, 2019 9:53 AM
**To:** Reid, Leif <LReid@lrrc.com>; Randall Jones <r.jones@kempjones.com>
**Cc:** Martini, Kristen <KMartini@lrrc.com>; Scott, Nicole S. <NScott@lrrc.com>; James Pisanelli <jjp@pisanellibice.com>; Jordan T. Smith <JTS@pisanellibice.com>; Jamie Miller

SA711

<jmiller@aliotolaw.com>
**Subject:** RE: Preliminary Injunction Motion

[EXTERNAL]

---

Leif:

The Sun has been threatening to seek a preliminary injunction for nearly a week but has not yet identified *any* immediate threat of irreparable harm to the Sun. The defendants have made repeated assurances as far back as August 29, 2019 that the Review Journal will continue to print the Sun and perform under the 2005 JOA until a court issues a ruling that would allow the RJ to terminate the agreement. Since August 29, defendants have done nothing to even suggest otherwise. The Sun's threatened PI motion is premised on a completely fabricated emergency, and we do not believe these negotiations are being conducted in good faith by your client.

Regards,

**Michael J. Gayan, Esq.** | KEMP, JONES & COULTHARD, LLP
(P) 702-385-6000 | (F) 702-385-6001 | m.gayan@kempjones.com

---

**From:** Reid, Leif [mailto:LReid@lrrc.com]
**Sent:** Tuesday, October 01, 2019 4:59 PM
**To:** Michael Gayan <m.gayan@kempjones.com>; Randall Jones <r.jones@kempjones.com>
**Cc:** Martini, Kristen <KMartini@lrrc.com>; Scott, Nicole S. <NScott@lrrc.com>; James Pisanelli <jjp@pisanellibice.com>; Jordan T. Smith <JTS@pisanellibice.com>; Jamie Miller <jmiller@aliotolaw.com>
**Subject:** [External] RE: Preliminary Injunction Motion

Michael – Attached is a modified version of our original stipulation we sent you yesterday. We believe that the background and contextual recitals are important and should remain in the stipulation. Please advise me in the morning if the Review-Journal will consent to the filing of this stipulation in lieu of requiring us to file our motion for preliminary injunction. Thanks. Leif

**From:** Michael Gayan <m.gayan@kempjones.com>
**Sent:** Tuesday, October 1, 2019 3:16 PM
**To:** Reid, Leif <LReid@lrrc.com>; Randall Jones <r.jones@kempjones.com>
**Cc:** Martini, Kristen <KMartini@lrrc.com>; Scott, Nicole S. <NScott@lrrc.com>; James Pisanelli <jjp@pisanellibice.com>; Jordan T. Smith <JTS@pisanellibice.com>; Jamie Miller <jmiller@aliotolaw.com>
**Subject:** RE: Preliminary Injunction Motion

[EXTERNAL]

---

Leif,

Our clients are prepared to enter into the attached stipulation. Please let us know whether this is acceptable to the Sun.

Regards,

**Michael J. Gayan, Esq.** | KEMP, JONES & COULTHARD, LLP
(P) 702-385-6000 | (F) 702-385-6001 | m.gayan@kempjones.com

SA712

**From:** Reid, Leif [mailto:LReid@lrrc.com]
**Sent:** Tuesday, October 01, 2019 11:03 AM
**To:** Michael Gayan <m.gayan@kempjones.com>; Randall Jones <r.jones@kempjones.com>
**Cc:** Martini, Kristen <KMartini@lrrc.com>; Scott, Nicole S. <NScott@lrrc.com>; James Pisanelli <jjp@pisanellibice.com>; Jordan T. Smith <JTS@pisanellibice.com>; Jamie Miller <jmiller@aliotolaw.com>
**Subject:** [External] RE: Preliminary Injunction Motion

Michael – Attached is the word version of our stipulation you requested. Thanks. Leif

**From:** Michael Gayan <m.gayan@kempjones.com>
**Sent:** Tuesday, October 1, 2019 10:46 AM
**To:** Reid, Leif <LReid@lrrc.com>; Randall Jones <r.jones@kempjones.com>
**Cc:** Martini, Kristen <KMartini@lrrc.com>; Scott, Nicole S. <NScott@lrrc.com>; James Pisanelli <jjp@pisanellibice.com>; Jordan T. Smith <JTS@pisanellibice.com>; Jamie Miller <jmiller@aliotolaw.com>
**Subject:** RE: Preliminary Injunction Motion

**[EXTERNAL]**

Leif,

The Sun still has not identified any threat of irreparable harm, despite the many assurances our client has already given – both publicly and privately – regarding maintaining the status quo. Nonetheless, as a further compromise and to avoid wasting the court's time, Defendants will agree to maintain the status quo until such time as either the federal court, or the state court, issues a ruling that would allow the RJ to terminate the 2005 JOA. This would remove any conceivable immediate threat of irreparable harm to the Sun. During this time, the RJ will continue to fully perform under the JOA, as described in our prior emails. Of course, this stipulation is without waiver of defendants' many arguments as to why the Sun's threatened preliminary injunction motion is utterly baseless.

Regards,

**Michael J. Gayan, Esq.** | Kᴇᴍᴘ, Jᴏɴᴇꜱ & Cᴏᴜʟᴛʜᴀʀᴅ, LLP
(P) 702-385-6000 | (F) 702-385-6001 | m.gayan@kempjones.com

**From:** Reid, Leif [mailto:LReid@lrrc.com]
**Sent:** Monday, September 30, 2019 4:20 PM
**To:** Michael Gayan <m.gayan@kempjones.com>; Randall Jones <r.jones@kempjones.com>
**Cc:** Martini, Kristen <KMartini@lrrc.com>; Scott, Nicole S. <NScott@lrrc.com>; James Pisanelli <jjp@pisanellibice.com>; Jordan T. Smith <JTS@pisanellibice.com>; Jamie Miller <jmiller@aliotolaw.com>
**Subject:** [External] RE: Preliminary Injunction Motion

Michael – We obviously disagree with your arguments and characterizations in the below email, as well as your email from this morning. Nonetheless, please let us know regarding the stipulation before 11am tomorrow morning. Thank you. Leif

**From:** Michael Gayan <m.gayan@kempjones.com>
**Sent:** Monday, September 30, 2019 4:01 PM
**To:** Reid, Leif <LReid@lrrc.com>; Randall Jones <r.jones@kempjones.com>

6

SA713

**Cc:** Martini, Kristen <KMartini@lrrc.com>; Scott, Nicole S. <NScott@lrrc.com>; James Pisanelli <jjp@pisanellibice.com>; Jordan T. Smith <JTS@pisanellibice.com>; Jamie Miller <jmiller@aliotolaw.com>
**Subject:** RE: Preliminary Injunction Motion

**[EXTERNAL]**

---

Leif,

Given defendants$B!G(J proposed stipulation, there is clearly no emergency, nor is there any threat of irreparable harm to the Sun, let alone any immediate threat. We will not be able to meaningfully respond to your counter-proposal within your self-imposed, 60-minute deadline, especially since it is Rosh Hashanah. That said, we$B!G(Jll do our best to provide a substantive response by tomorrow.

Regards,

**Michael J. Gayan, Esq.** | KEMP, JONES & COULTHARD, LLP
(P) 702-385-6000 | (F) 702-385-6001 | m.gayan@kempjones.com

---

**From:** Reid, Leif [mailto:LReid@lrrc.com]
**Sent:** Monday, September 30, 2019 2:32 PM
**To:** Michael Gayan <m.gayan@kempjones.com>; Randall Jones <r.jones@kempjones.com>
**Cc:** Martini, Kristen <KMartini@lrrc.com>; Scott, Nicole S. <NScott@lrrc.com>; James Pisanelli <jjp@pisanellibice.com>; Jordan T. Smith <JTS@pisanellibice.com>; Jamie Miller <jmiller@aliotolaw.com>
**Subject:** [External] RE: Preliminary Injunction Motion

Michael – In response to your email, attached is the proposed stipulation that the Sun is willing to submit in lieu of pursuing its Motion for Preliminary Injunction. As you will see in the stipulation, we are unwilling to allow the term of the injunction be limited to the Court's resolution of your promised Motion to Dismiss. Please advise me before 4:00pm today if the stipulation is acceptable or we will file our motion. Thanks. Leif

**From:** Michael Gayan <m.gayan@kempjones.com>
**Sent:** Monday, September 30, 2019 8:40 AM
**To:** Reid, Leif <LReid@lrrc.com>; Randall Jones <r.jones@kempjones.com>
**Cc:** Martini, Kristen <KMartini@lrrc.com>; Scott, Nicole S. <NScott@lrrc.com>
**Subject:** RE: Preliminary Injunction Motion

**[EXTERNAL]**

---

Leif:

There is no basis whatsoever for the Sun to be seeking a preliminary injunction. The Sun's antitrust claims are frivolous, and there is no threatened harm whatsoever. Indeed, the Review-Journal has already assured the Sun that it would not terminate the JOA without a ruling by the court. To avoid having to oppose a frivolous PI motion, Defendants will stipulate that the Review-Journal will maintain the status quo with respect to operations under the JOA until Judge Boulware rules on the forthcoming motion to dismiss in the federal action, or until our clients prevail on the counterclaim that has been allowed to proceed in the state court action.

During this time, consistent with what Keith Moyer already stated in his August 29th Notice of Default letter, the Review-Journal would agree to not terminate the JOA and to fully comply with its terms. Of

7

SA714

course, defendants reserve all other rights they may have in either the state court or federal court cases, including their rights to free speech in and out of court.

If the federal court denies our motion to dismiss, or if we prevail on our counterclaims in state court, we can meet and confer about a further stipulation through trial in the federal court case, or you can file your PI motion at that time.

Can you also respond to our request for a two-week extension to respond to the complaint as requested in my earlier email?

Please let us know if these terms are satisfactory, and about the extension. We are available to answer any questions or meet and confer further. If, despite our reasonable proposal, the Sun chooses to seek injunctive relief, please provide the Court with a copy of this email.

Regards,

**Michael J. Gayan, Esq.** | KEMP, JONES & COULTHARD, LLP
(P) 702-385-6000 | (F) 702-385-6001 | m.gayan@kempjones.com

---

**From:** Reid, Leif [mailto:LReid@lrrc.com]
**Sent:** Friday, September 27, 2019 4:45 PM
**To:** Michael Gayan <m.gayan@kempjones.com>; Randall Jones <r.jones@kempjones.com>
**Cc:** Martini, Kristen <KMartini@lrrc.com>; Scott, Nicole S. <NScott@lrrc.com>
**Subject:** [External] Preliminary Injunction Motion

Michael –

On our call this afternoon, I informed you that the Sun was prepared to file a motion requesting an injunction in Case No. 2:19-cv-01667-RFB-BNW, Las Vegas Sun, Inc. v. Adelson et al. I asked if the Defendants would be willing to stipulate to an injunction in lieu of requiring us to pursue the motion. The stipulated preliminary injunction would enjoin Defendants from:

(i)      terminating the 2005 JOA;

(ii)     taking any steps whatsoever that are contrary to, or inconsistent with, the 2005 JOA, including, without limitation, the right of the Sun to produce and furnish features, news and editorial copy, and like material, to the RJ for publication in the Sun and the requirement that RJ produce the Sun daily as a morning newspaper and to sell advertising for, promote, and circulate the Sun;

(iii)    taking any actions whatsoever that may cause any material adverse change in the business, including loss of subscribers and advertisers, or financial condition of the Sun as a viable going concern; and

SA715

(iv)      taking any retaliatory action whatsoever against the Sun as a result of the filling of the

underlying lawsuit.

Please advise me by 9:00 am Monday morning, September 30, if the Review-Journal agrees to stipulate to the above preliminary injunction terms. Thank you. Please feel free to contact me over the weekend if you have any additional questions regarding this request.

Leif


**Leif Reid**
Partner
775.321.3415 office
775.823.2929 fax
lreid@lrrc.com
_____
Lewis Roca Rothgerber Christie LLP
One East Liberty Street Suite 300
Reno, Nevada 89501-1922
lrrc.com



**EXPERIENCE**
AMPLIFIED

Because what matters
to you, matters to us.
*Read* our client service principles

---

This message and any attachments are intended only for the use of the individual or entity to which they are addressed. If the reader of this message or an attachment is not the intended recipient or the employee or agent responsible for delivering the message or attachment to the intended recipient you are hereby notified that any dissemination, distribution or copying of this message or any attachment is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the sender. The information transmitted in this message and any attachments may be privileged, is intended only for the personal and confidential use of the intended recipients, and is covered by the Electronic Communications Privacy Act, 18 U.S.C. $B!x(J2510-2521.

---

This message and any attachments are intended only for the use of the individual or entity to which they are addressed. If the reader of this message or an attachment is not the intended recipient or the employee or agent responsible for delivering the message or attachment to the intended recipient you are hereby notified that any dissemination, distribution or copying of this message or any attachment is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the sender. The information transmitted in this message and any attachments may be privileged, is intended only for the personal and confidential use of the intended recipients, and is covered by the Electronic Communications Privacy Act, 18 U.S.C. $B!x(J2510-2521.

---

This message and any attachments are intended only for the use of the individual or entity to which they are addressed. If the reader of this message or an attachment is not the intended recipient or the employee or agent responsible for delivering the message or attachment to the intended recipient you are hereby notified that any

9

SA716

dissemination, distribution or copying of this message or any attachment is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the sender. The information transmitted in this message and any attachments may be privileged, is intended only for the personal and confidential use of the intended recipients, and is covered by the Electronic Communications Privacy Act, 18 U.S.C. $B!x(J2510-2521.

This message and any attachments are intended only for the use of the individual or entity to which they are addressed. If the reader of this message or an attachment is not the intended recipient or the employee or agent responsible for delivering the message or attachment to the intended recipient you are hereby notified that any dissemination, distribution or copying of this message or any attachment is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the sender. The information transmitted in this message and any attachments may be privileged, is intended only for the personal and confidential use of the intended recipients, and is covered by the Electronic Communications Privacy Act, 18 U.S.C. $B!x(J2510-2521.

This message and any attachments are intended only for the use of the individual or entity to which they are addressed. If the reader of this message or an attachment is not the intended recipient or the employee or agent responsible for delivering the message or attachment to the intended recipient you are hereby notified that any dissemination, distribution or copying of this message or any attachment is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the sender. The information transmitted in this message and any attachments may be privileged, is intended only for the personal and confidential use of the intended recipients, and is covered by the Electronic Communications Privacy Act, 18 U.S.C. $B!x(J2510-2521.

This message and any attachments are intended only for the use of the individual or entity to which they are addressed. If the reader of this message or an attachment is not the intended recipient or the employee or agent responsible for delivering the message or attachment to the intended recipient you are hereby notified that any dissemination, distribution or copying of this message or any attachment is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the sender. The information transmitted in this message and any attachments may be privileged, is intended only for the personal and confidential use of the intended recipients, and is covered by the Electronic Communications Privacy Act, 18 U.S.C. $B!x(J2510-2521.

This message and any attachments are intended only for the use of the individual or entity to which they are addressed. If the reader of this message or an attachment is not the intended recipient or the employee or agent responsible for delivering the message or attachment to the intended recipient you are hereby notified that any dissemination, distribution or copying of this message or any attachment is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the sender. The information transmitted in this message and any attachments may be privileged, is intended only for the personal and confidential use of the intended recipients, and is covered by the Electronic Communications Privacy Act, 18 U.S.C. $B!x(J2510-2521.

This message and any attachments are intended only for the use of the individual or entity to which they are addressed. If the reader of this message or an attachment is not the intended recipient or the employee or agent responsible for delivering the message or attachment to the intended recipient you are hereby notified that any dissemination, distribution or copying of this message or any attachment is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the sender. The information transmitted in this message and any attachments may be privileged, is intended only for the personal and confidential use of the intended recipients, and is covered by the Electronic Communications Privacy Act, 18 U.S.C. $B!x(J2510-2521.

SA717

This message and any attachments are intended only for the use of the individual or entity to which they are addressed. If the reader of this message or an attachment is not the intended recipient or the employee or agent responsible for delivering the message or attachment to the intended recipient you are hereby notified that any dissemination, distribution or copying of this message or any attachment is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the sender. The information transmitted in this message and any attachments may be privileged, is intended only for the personal and confidential use of the intended recipients, and is covered by the Electronic Communications Privacy Act, 18 U.S.C. §2510-2521.

SA718

# EXHIBIT 29

Jan. 11, 2015, email from R. Pergament to P. Dumont et al., re Preliminary Observations (DEFS0028645-47) (**FILED UNDER SEAL**)

# EXHIBIT 29