E. LEIF REID, Nevada Bar No. 5750
KRISTEN L. MARTINI, Nevada Bar No. 11272
NICOLE SCOTT, Nevada Bar No. 13757
CLARK HILL PLC
1700 S. Pavilion Center Dr., Suite 500
Las Vegas, Nevada 89135
Tel: 702.862.8300
Fax: 702.778.9709
Email: lreid@clarkhill.com
        kmartini@clarkhill.com
        nsscott@clarkhill.com

JAMES J. PISANELLI, Nevada Bar No. 4027
TODD L. BICE, Nevada Bar No. 4534
PISANELLI BICE PLLC
400 South 7th Street, Suite 300
Las Vegas, Nevada 89101
Tel: 702.214.2100
Fax: 702.214.2101
Email: JJP@pisanellibice.com
        TLB@pisanellibice.com

JORDAN T. SMITH, Nevada Bar No. 12097
BROWNSTEIN HYATT FARBER
SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106
Tel: 702.464.7022
Fax: 702.382.8135
Email: jtsmith@bhfs.com

JOSEPH M. ALIOTO, *PRO HAC VICE*
ALIOTO LAW FIRM
One Sansome Street, 35th Floor
San Francisco, California 94104
Tel: 415.434.8900
Fax: 415.434.9200
Email: jmalioto@aliotolaw.com

*Attorneys for Plaintiff/Counterdefendants*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| LAS VEGAS SUN, INC., a Nevada corporation,<br><br>       Plaintiffs,<br><br>v.<br><br>SHELDON ADELSON (Estate Of), an individual, and as the alter ego of News+Media Capital Group LLC, Las Vegas Review-Journal, Inc., and Interface Operations LLC dba Adfam; PATRICK DUMONT, an individual, and as alter ego of Las Vegas Review-Journal, Inc., News+Media Capital Group, LLC, and Interface Operations LLC dba Adfam; NEWS+MEDIA CAPITAL GROUP LLC, a Delaware limited liability company; LAS VEGAS REVIEW-JOURNAL, INC., a Delaware corporation; INTERFACE OPERATIONS LLC dba ADFAM, a Delaware limited liability company and as the alter ego of Las Vegas Review-Journal, Inc., and News+Media Capital Gorup, LLC; and DOES, | Case No.: 2:19-CV-01667-ART-MDC<br><br>**PLAINTIFF'S STATUS REPORT PER PRE-HEARING ORDER (ECF NO. 1164)** |

I-X, inclusive,

        Defendants.

LAS VEGAS REVIEW-JOURNAL, a Delaware corporation,

        Counterclaimant,

v.

LAS VEGAS SUN, INC., a Nevada corporation; BRIAN GREENSPUN, an individual and as alter ego of Las Vegas Sun, Inc.; GREENSPUN MEDIA GROUP, LLC, a Nevada limited liability company, as the alter ego of Las Vegas Sun, Inc.,

        Counterclaim Defendants.

Plaintiff Las Vegas Sun, Inc. (the "Sun"), submits the following as its Status Report pursuant to this Court's April 13, 2026, Pre-Hearing Order (ECF No. 1164).

## I.    EVIDENCE THE SUN WIL PRESENT

The Sun's list of Exhibits is attached as **Exhibit 1** to this Status Report.

## II.    WITNESSES THE SUN WILL CALL

1.    Brian Greenspun
President of Las Vegas Sun, Inc., and Member-manager of Greenspun Media Group, LLC[1]
c/o Leif Reid, Esq., Kristen Martini, Esq., and Nicole Scott, Esq.
Clark Hill PLC
1700 S. Pavilion Center Dri., Suite 500
Las Vegas, Nevada 89135

Mr. Greenspun is the owner of and publisher for the Sun and is expected to testify on the 2005 JOA, the 1989 JOA and the Attorney General's approval thereof, and the parties' operations under the joint operating agreements, and the public interest. Mr. Greenspun is also expected to testify about: (1) the barriers to entry the Sun newspaper faces to reenter the Newspaper Market after its exclusion by the RJ and in the absence of the 1989 JOA; (2) the consideration the Sun provided the RJ to enter into the 1989 JOA; (3) the disadvantages present for the Sun as the

---

[1] Greenspun Media Group, LLC, owns the Las Vegas Sun, Inc.

secondary newspaper in the Newspaper Market; (4) the irreparable harm experienced by the Sun as a result of its exclusion from the Newspaper Market by the RJ; (5) the Sun's ability to obtain financing to support its operations in the absence of the 1989 JOA; and (6) the Sun's ability to pay for the bond requested by the RJ.

2.    Robert G. Picard, PhD.
      c/o Leif Reid, Esq., Kristen Martini, Esq., and Nicole Scott, Esq.
      Clark Hill PLC
      1700 S. Pavilion Center Dri., Suite 500
      Las Vegas, Nevada 89135

Dr. Picard is expected to testify about: (1) the barriers to entry in the Newspaper Market, which the Sun newspaper faces to reenter after its exclusion by the RJ; (2) the consideration the Sun provided the RJ to enter into the 1989 JOA; (3) the irreparable harm experienced by the Sun as a result of its exclusion from the Newspaper Market by the RJ; and (4) the disadvantages present for the Sun as the secondary newspaper in the Newspaper Market.

3.    Michael L. Katz, Ph.D.
      c/o Leif Reid, Esq., Kristen Martini, Esq., and Nicole Scott, Esq.
      Clark Hill PLC
      1700 S. Pavilion Center Dri., Suite 500
      Las Vegas, Nevada 89135

Dr. Katz is expected to testify about: (1) the public interest in preserving local newspaper competition; (2) the relevant market, the Newspaper Market; (3) the RJ's willful acquisition and maintenance of monopoly power in the Newspaper Market; (4) the RJ's challenged conduct and antitrust injury; and (5) the administrable remedy.

4.    Patrick Dumont
      c/o J. Randall Jones, Esq. And Mona Kaveh, Esq.
      Kemp Jones, LLP
      3880 Howard Hughes Parkway, 17th Floor
      Las Vegas, Nevada 89169

Mr. Dumont has personal knowledge of the terms and enforcement of the 2005 JOA, and the parties' operations under the joint operating agreement. Mr. Dumont has been involved in directing Defendants and Defendants' representatives' conduct alleged in this action, as well as

involved in communications with the Sun, and with Defendants and Defendants' representatives regarding, and has knowledge of, Defendants' conduct alleged in this action. Mr. Dumont is also expected to testify about: (1) the balance of hardships between requiring the RJ and its ownership to continue printing and publishing the Sun pursuant to the 1989 JOA and the creation of a monopoly by permitting the RJ to continue to refuse to perform its obligations under the 1989 JOA; (2) the RJ's access to capital to meet the financial obligations required under the 1989 JOA; (3) the public interest; (4) the Adelson family's objections to the editorial and reportorial content published in the Sun newspaper; and (5) the RJ's anticompetitive conduct and the Adelson family's specific intent to monopolize the Newspaper Market in Las Vegas.

## III.    AMOUNT OF TIME THE SUN SEEKS FOR PRESENTATION

The parties have agreed that they will have equal time for examination, including cross-examination, of the witnesses. While the parties have discussed and agreed that each side will have one hearing day, the Sun acknowledges this Court's statements at the April 3, 2026, hearing where the Court set the hearing for April 20-21, open to additional time as the hearing takes shape. ECF No. 1112 at 89:6-8.

## IV.    THE PARTIES' STIPULATED UNDISPUTED MATERIAL FACTS[2]

The parties have stipulated to the following undisputed material facts:

1.    The Sun is a Nevada corporation doing business in the State of Nevada.

2.    The Sun is a wholly owned subsidiary of GMG.

3.    Las Vegas Review-Journal, Inc., is a Delaware corporation doing business in the State of Nevada.

4.    In 1989, the Sun was in probable danger of financial failure.

5.    Las Vegas Review-Journal, Inc., is a wholly owned subsidiary of News + Media Capital Group LLC.

6.    Orchid Flower LLC is the sole member of News+Media Capital Group LLC.

7.    The Orchid Trust, for the benefit of its beneficiaries, owns Orchid Flower LLC.

---

[2] Given the vehemently contested issues of fact, including those identified below in Section V (which should not be disputed), the parties have agreed to submit the only undisputed facts between them, which are set forth in the amended joint pretrial order. *See* ECF No. 1008 at 14-17.

8. Defendant Patrick Dumont, Dr. Miriam Adelson, and Sivan Dumont are the Trustees of The Orchid Trust.

9. Patrick Dumont is married to Sivan Dumont, and thus a son-in-law to Sheldon Adelson and Dr. Miriam Adelson.

10. The manager of News + Media Capital Group LLC is NMCG Manager LLC.

11. Stephen O'Connor is the manager of NMCG Manager LLC.

12. O'Connor does not receive compensation directly from the Las Vegas Review-Journal, Inc., or News+Media Capital Group LLC.

13. O'Connor is the Chief Financial Officer of Interface Group - Massachusetts, LLC.

14. Defendant Interface Operations LLC dba Adfam ("Adfam") is a Delaware limited liability company that does business in the State of Nevada.

15. Adfam was founded by Sheldon Adelson and operates as the private family office of the Adelson family. Adfam provides professional services to support the Adelson family and members' personal and business interests, including Las Vegas Review-Journal, Inc. and News+Media Capital Group LLC.

16. In 2019, the Sun, as claimant, and Las Vegas Review-Journal, Inc. and News+Media Capital Group LLC, as respondents, engaged in an Arbitration, AAA Case Number: 01-18-0000¬7567 (the "2019 Arbitration").

17. On August 30, 2019, after the 2019 Arbitration, in the related state court action pending in Clark County, Nevada, as Case No. A-18-772591-B, Las Vegas Review-Journal, Inc. and News+Media Capital Group LLC moved to amend their answer, and Las Vegas Review-Journal, Inc. moved to assert counterclaims against the Sun to, among other things, terminate the 2005 Amended JOA.

18. Brian Greenspun is the Chief Executive Officer of the Sun, and Publisher and Editor of the Sun newspaper.

19. Las Vegas Review-Journal, Inc., (also referred to as the "Review-Journal") operates and publishes the *Las Vegas Review-Journal* daily print newspaper in Clark County, Nevada.

20.     Under the 2005 Amended JOA, the newspapers' websites operated outside of the joint arrangement and were not costs chargeable to the JOA.

21.     Stephen O'Connor is not involved in day-to-day operational matters regarding the Review-Journal; he is not involved in the hiring or firing of employees of the Review-Journal; and he does not make significant decisions on behalf of either the Review-Journal or News+Media without prior consultation with certain members of the Adelson family (including when responding to funding requests).

22.     Mr. O'Connor's role includes ensuring that certain members of the Adelson family is informed regarding Review-Journal matters.

23.     Employees of Adfam receive updates regarding the financial performance of the Review-Journal.

24.     Certain employees of Adfam create and perform internal control checks on the Review-Journal and oversee the preparation of "going concern" letters to the Review-Journal's outside auditing firm, which are approved by Mr. Dumont and executed by Mr. O'Connor.

25.     After News+Media acquired the Review-Journal, GateHouse continued to operate the Review-Journal under a management agreement that was later terminated.

26.     On November 28, 2017, the Review-Journal agreed to produce certain categories of documents requested by the Sun.

27.     On January 25, 2017, a meeting with Craig Moon, Robert Cauthorn, Brian Greenspun, and Frank Vega was held to preview financial results for the end of the fiscal year.

28.     In early May 2019, Keith Moyer called Robert Cauthorn to inform him that the Review-Journal had restored or would shortly restore the Sun to the electronic replica edition to reverse a decision by Craig Moon.

29.     The Las Vegas Review-Journal is a daily newspaper published in Clark County, Nevada. The newspaper's publication dates back to 1909, when it was first published as the Clark County Review. In 1929, the Clark County Review purchased the Clark County Journal, and the two publications began being published as a single newspaper, subsequently named the Las Vegas Review-Journal (the "Review-Journal").

30.     The Las Vegas Sun newspaper began publication as a daily newspaper in Clark County, Nevada, in 1950.

31.     On June 12, 1989, Donrey of Nevada, Inc., which at the time published the Review-Journal newspaper, and the Las Vegas Sun, Inc. (the "Sun"), which publishes the Las Vegas Sun newspaper, entered a joint operating arrangement (the "1989 JOA").

32.     Under the 1989 JOA, the *Review Journal* was a morning newspaper, and the Sun was an afternoon newspaper, save for joint publications on weekends, holidays, and special editions.

33.     Under the 1989 JOA, the *Review-Journal* and the *Sun* remained separately sold and distributed newspapers with separate subscriber bases, except that both newspapers were jointly published on weekends, holidays, and for special editions.

34.     In June 2005, the Sun and the publisher of the *Review-Journal* at that time, DR Partners, a Nevada Partnership, the successor-in-interest to Donrey of Nevada Inc., with Stephens Group, Inc., as its General Partner, executed an "Amended and Restated Agreement" (the "2005 Amended JOA").

## V.     THE SUN'S STATEMENTS OF MATERIAL FACTS THE RJ HAS REFUSED TO ACCEPT AS UNDISPUTED

The RJ has taken the position that the findings and legal conclusions contained in this Court's Summary Judgment Order (ECF No. 970) are still "disputed." Although these issues have been determined as a matter of law by this Court, the RJ wishes to relitigate them. The issues decided in the Court's Summary Judgment Order, and which can no longer be "disputed," are as follows:

1.     On June 12, 1989, Donrey of Nevada, Inc., which at the time published the Las Vegas Review-Journal ("the RJ") newspaper, and the Las Vegas Sun, Inc., which publishes the Las Vegas Sun ("the Sun") newspaper, entered a joint operating arrangement (the "1989 JOA"). ECF No. 970 at 2.

2.     The 1989 JOA included the following key provisions: The Sun agreed to dispose of all of its infrastructure that would allow it to print and distribute its newspaper independently. *Id*.

The RJ was obligated to print the Sun, though the RJ and Sun were sold and distributed separately, save for joint publications on weekends and holidays. *Id.*

3.    The RJ, operating through a separate entity referred to in the JOA as the "Agency," was responsible for, among other things, handling the production, circulation, and print advertising functions for both newspapers. *Id.*

4.    With respect to each newspaper's editorial expenses, the "Review-Journal shall establish an allocation for Review-Journal news and editorial expenses, and the allocation for, news and editorial expenses for the Sun shall be equal to sixty-five percent (65%) of the Review-Journal allocation, subject to a minimum of Two Million Two Hundred Fifty Thousand Dollars ($2,250,000) per fiscal year, . . . ." *Id.* at 3.

5.    With respect to each newspaper's promotional activities expenses, "the Review-Journal shall establish for each fiscal year after the Effective Date a budget for promotional activities of the Review-Journal and the Sun and at least forty percent (40%) of each total budget shall be allocated to the Sun." *Id.*

6.    The parties also agreed to share in the operation's operating profit, with the RJ receiving 90% and the Sun receiving 10%. *Id.*

7.    In place of the of the allocations for news and editorial expenses set forth in the 1989 JOA, the 2005 JOA states: "[t]he Review-Journal and the Sun shall each bear their own respective editorial costs and shall establish whatever budgets each deems appropriate." *Id.*

8.    Only those promotional costs that include both the Sun and the RJ in equal prominence can be charged against the joint operation. *Id.*

9.    Despite their separate promotional budgets, the RJ is required to "use commercially reasonable efforts to promote the Newspapers" and to "maximize the circulation of the Newspapers." *Id.* at 3-4. This requires mentioning the Sun equally with the RJ's promotional activities to ensure the Sun's brand remains as visible as the RJ. *Id.* at 4.

10.    The text and history of the 2005 JOA clearly show that it is an amended JOA, not a new JOA. *Id.* at 17.

7

11. The Attorney General signed the 1989 JOA when it was a new JOA, as required by § 1803(b). *Id.*

12. The 2005 JOA continued the fifty-year term contained in the 1989 JOA, which was tethered to the Attorney General's approval of the agreement on June 1, 1990. *Id.*

13. The RJ's argument that the 2005 JOA was a novation lacks record support. A novation occurs when parties expressly terminate an existing contract and enter a new contract that materially changes their rights and obligations. *Id.* at 18.

14. Here, the Court finds no triable issues of fact on the issue of novation. The parties' intention to amend the 1989 JOA is evident from the face of the 2005 JOA. *Id.*

15. The 2005 JOA is titled "Amended and Restated Agreement." *Id.* at 17. It tracks the structure and language of the 1989 JOA. *Id.* It continues the original term of the 1989 JOA. *Id.* at 18. While the 2005 JOA includes changes to the profit-sharing scheme and the distribution of the newspapers, the material elements of the 1989 JOA that eliminated price and other non-editorial and nonreportorial competition, elements previously approved by the Attorney General, remain unchanged. *Id.*

16. Indeed, the 1989 JOA included a joint distribution scheme on Saturdays, Sundays, holidays, and special editions, so even the joint distribution scheme is not new to the 2005 JOA. *Id.*

17. The evidence supporting the parties' intent to amend is not adequately rebutted by the RJ's reference to provisions in the 2005 JOA expressly terminating the 1989 JOA on the "Transition Date" and releasing all claims and obligations arising under the 1989 JOA. *Id.* at 18.

18. The Court finds that even viewing the RJ's evidence in the light most favorable to the RJ, it does not create triable issues of fact pertaining to novation. *Id.*

19. Editorial competition for readers' attention, even in the context of jointly distributed papers, has economic effects on the newspapers. *Id.* at 23.

20. The Court finds that editorial competition for readers' attention in the relevant market can be the basis for an antitrust claim in the newspaper context. *Id.*

21. The stated purpose of the 2005 JOA is to preserve "editorially and reportorially independent and competitive newspapers in Las Vegas and its environs." *Id.* at 28. The Sun supplies

content to the RJ "for publication in the Sun," not in the RJ. *Id.* The Sun has full editorial independence, and the RJ must publish the Sun so long as the Sun complies with production requirements. *Id.*

22.     Given the parties' treatment of the Sun in the 2005 JOA, the Court finds that the Sun is a separate and independent newspaper product distributed in the newspaper bundle. *Id.* at 28.

23.     The RJ agreed upon acquiring the RJ to step into the shoes of the JOA's original parties, without coercion. *Id.* at 35.

24.     As successors in interest to the 2005 JOA, Defendants stepped into the shoes of their predecessors, as if they had been present at the JOA's formation. *Id.*

25.     The RJ argues that the JOA's force majeure provision allows it to terminate its printing obligations, but that argument fails because the provision is not sufficiently specific. ECF 970 at 48.

The RJ also continues to dispute this Court findings in ECF No. 1096, again summarily asserting that they are "disputed."

## VI.     THE SUN'S OBJECTIONS TO THE RJ'S EXHIBIT LIST AND EXHIBITS

The RJ has failed to comply with this Court's Pre-Hearing Order regarding the RJ's Exhibit List in various respects, which has severely prejudiced the Sun.

First, the RJ did not timely disclose its Exhibits, but instead disclosed its Exhibits more than 20 minutes after the Court-ordered noon deadline ("First RJ Exhibit List"), and after which the Sun disclosed its Exhibit List, which provided the RJ with the unfair and prejudicial opportunity to modify and expand its Exhibit disclosures in direct response to the Sun's Exhibit List.

Second, compounding this issue exponentially to the severe prejudice to the Sun, the RJ then submitted an "updated" Exhibit List ("Second RJ Exhibit List") overnight that adds seven new, substantive documents that have never been disclosed to Sun and were not disclosed pursuant to this Court's Pre-Hearing Order. These Exhibits are described as the expert declarations of David Nolte and David Evans, and declarations of Janet Owen and Chris Blaser, as well as excel spreadsheets entitled "Spring Sales Campaign," "Subscriber Stops," and "Connecting the dots," none of which were in the untimely First RJ Exhibit List. Notably, despite that the RJ submitted its

first expert declaration of David Nolte weeks ago (ECF Nos. 1075/1076), the Sun requested the RJ to disclose all backup documents that David Nolte stated he relied on—none of which have ever been produced in these proceedings—the RJ refused to produce the underlying data on April 9, 2026, and failed to identify and produce it on the April 16 deadline. The Sun also requested that the RJ disclose the seven new documents immediately, to which the RJ responded that it was "complying with the Court's briefing order, which was extended to today at noon in the same order," conflating its obligations under the Pre-Hearing Order with its opposition to the Sun's Renewed Motion deadline. *See* **Ex. 2**. The Sun objects to all of the RJ's Exhibits as being untimely, and strenuously objects to the RJ's addition of the seven new Exhibits in the Second RJ Exhibit List.

While it appears that the RJ is intending to include this new evidence in its opposition to the Sun's Renewed Motion (ECF No. 1152) that was filed a week ago, the RJ was required to disclose this hearing evidence on the Court-ordered April 16th noon deadline. The Sun will not be able to review the documents to submit objections thereto before this Court's contemporaneous deadline for this Status Report.

Third, both the RJ's Exhibit Lists are improper because the RJ's list contain argumentative document descriptions which do not accurately describe the documents or which modify the title of the documents. *See generally* LR IA 10-3. The RJ should be ordered to resubmit an Exhibit List that does not contain fictionalized and argumentative document titles.

Given the above, the Sun's objections are to the <u>First RJ Exhibit List</u> and are attached to this Status Report as **Exhibit 3**.

DATED this 17th day of April, 2026.

CLARK HILL PLC

By: */s/ Kristen L. Martini*
E. Leif Reid, Nevada Bar No. 5750
Kristen L. Martini, Nevada Bar No. 11272
Nicole Scott, Nevada Bar No. 13757
1700 S. Pavilion Center Drive, Suite 500
Las Vegas, Nevada 89135

10

PISANELLI BICE PLLC
James J. Pisanelli, Nevada Bar No. 4027
Todd L. Bice, Nevada Bar No. 4534
400 South 7th Street, Suite 300
Las Vegas, Nevada 89101

BROWNSTEIN HYATT FARBER
SHRECK, LLP
Jordan T. Smith, Nevada Bar No. 12097
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106

ALIOTO LAW FIRM
Joseph M. Alioto, Pro Hac Vice
One Sansome Street, 35th Floor
San Francisco, California 94104

*Attorneys for Plaintiff/Counterdefendant*

**CERTIFICATE OF SERVICE**

I certify that I am an employee of CLARK HILL PLC, and I caused a true and correct copy of the foregoing **PLAINTIFF'S STATUS REPORT PER PRE-HEARING ORDER (ECF NO. 1164)** to be served by electronically filing the foregoing with the CMECF electronic filing system which will send notice of electronic filing to:

J. Randall Jones, Esq.
Mona Kaveh, Esq.
KEMP JONES, LLP
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, NV 89169

Michael J. Gayan, Esq.
CLAGGETT & SYKES LAW FIRM
4101 Meadows Lane, Suite 100
Las Vegas, NV 89107

Amy M. Gallegos, Esq.
David R. Singer, Esq.
Andrew G. Sullivan, Esq.
Alison I Stein, Esq.
JENNER & BLOCK LLP
515 South Flower Street, Suite 3300
Los Angeles, CA 90071

Richard L. Stone, Esq.
850 Devon Avenue
Los Angeles, CA 90024

DATED: April 17, 2026.

/s/  Kristen L. Martini
An Employee of Clark Hill PLC

12

## INDEX OF EXHIBITS

| Exhibit No. | Description | No. of Pages |
|:---:|---|:---:|
| 1 | Plaintiff Las Vegas Sun, Inc.'s Exhibit List | 10 |
| 2 | April 16-17, 2026, Emails Between Counsel Re: Exchange Per April 13 Minute Order | 6 |
| 3 | Plaintiff's Objections to Defendants' Exhibits | 6 |