J. RANDALL JONES, ESQ., SBN 1927
r.jones@kempjones.com
MONA KAVEH, ESQ., SBN 11825
m.kaveh@kempjones.com
KEMP JONES LLP
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169
Telephone:      +1 702 385 6000

DAVID R. SINGER, ESQ. (*pro hac vice*)
dsinger@jenner.com
AMY M. GALLEGOS, ESQ. (*pro hac vice*)
agallegos@jenner.com
JENNER & BLOCK LLP
515 South Flower Street, Suite 3300
Los Angeles, California 90071
Telephone:      +1 213 239 5100
Facsimile:      +1 213 239 5199

MICHAEL J. GAYAN, ESQ., SBN 11135
mike@claggettlaw.com
CLAGGETT & SYKES LAW FIRM
4101 Meadows Lane, Suite 100
Las Vegas, Nevada 89107
Telephone:      +1 702 333 7777
Facsimile:      +1 702 655 3763

RICHARD L. STONE, ESQ. (*pro hac vice*)
rstone@fastmail.com
850 Devon Avenue
Los Angeles, California 90024
Telephone:      +1 310 993 2068

*Attorneys for Defendants/Counterclaimant*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| LAS VEGAS SUN, INC., | Case No. 2:19-cv-01667-ART-MDC |
| Plaintiff, | **DEFENDANTS' MOTION TO DISMISS SUN'S SECOND AMENDED AND SUPPLEMENTAL COMPLAINT [ECF NO. 1162]** |
| v. | |
| SHELDON ADELSON, et al., | **[ORAL ARGUMENT REQUESTED]** |
| Defendants. | |
| AND RELATED COUNTERCLAIM | |

## TABLE OF CONTENTS

I.      Introduction..................................................................................................................1

II.     Legal Standard ............................................................................................................3

III.    The SAC Should Be Dismissed Because It Violates the Ninth Circuit's
        Mandate, Violates the NPA, and Fails to State Any Cognizable Claims. ..........................4

        A.      Permitting a Lawsuit to Proceed That Seeks to Hold the Review-
                Journal Liable for Failing to Comply with the 2005 JOA Would
                Violate the Mandate and NPA. ................................................................................4

        B.      The Review-Journal's Alleged "Accounting Abuses" Are Not
                Cognizable Because They Are Just Breaches of the Unlawful 2005
                JOA and Not Anticompetitive Conduct. ...................................................................7

        C.      The Review-Journal's Alleged "Promotional Abuses" Are Not
                Cognizable Because They Are Just Breaches of the Unlawful 2005
                JOA, Not Anticompetitive Conduct. ......................................................................10

        D.      The Review-Journal's Alleged Failure to Maximize Profits for the
                Sun's Benefit Is Likewise Just an Alleged Breach of the 2005 JOA and
                Not Anticompetitive. ..........................................................................................12

        E.      The Sun's "Sham" Litigation Claim Is Barred by Noerr-Pennington. ..................14

        F.      The Sun's Declaratory Relief Claim Improperly Seeks to Enforce the
                2005 JOA and Otherwise Fails to Plead any Entitlement to Declaratory
                Relief. ..............................................................................................................16

IV.     At Minimum, the Court Should Strike All Theories That Rely on the
        Unenforceable 2005 JOA. ..........................................................................................19

V.      Conclusion ..............................................................................................................20

**TABLE OF AUTHORITIES**

**Page(s)**

**Statutes**

15 U.S.C. § 1803(b) ...........................................................................................1, 5, 14

**Cases**

*Adidas Am., Inc. v. TRB Acquisitions LLC*,
    2017 WL 337983 (D. Or. Jan. 23, 2017) ............................................................15–16

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..............................................................................................4

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)......................................................................................3, 4, 7

*Berlyn, Inc. v. Gazette Newspapers, Inc.*,
    223 F. Supp. 2d 718 (D. Md. 2002)......................................................................10

*Citizen Pub. Co. v. United States*,
    394 U.S. 131 (1969) .........................................................................................9, 13

*City of Reno v. Netflix, Inc.*,
    52 F.4th 874 (9th Cir. 2022) ................................................................................16

*Coronavirus Rep. v. Apple Inc.*,
    85 F.4th 948 (9th Cir. 2023) ..................................................................................4

*Creech v. Tewalt*,
    84 F.4th 777 (9th Cir. 2023) ..................................................................................1

*Cung Le v. Zuffa, LLC*,
    108 F. Supp. 3d 768 (N.D. Cal. 2015) ....................................................................5

*Fantasy, Inc. v. Fogerty*,
    984 F.2d 1524 (9th Cir. 1993) ..............................................................................19

*Foremost Int'l Tours, Inc. v. Qantas Airways Ltd.*,
    478 F. Supp. 589 (D. Haw. 1979).........................................................9–10, 11–12

*FTC v. Qualcomm Inc.*,
    969 F.3d 974 (9th Cir. 2020) ..............................................................................9, 11

*Graham-Sult v. Clainos*,
    756 F.3d 724 (9th Cir. 2014) ..............................................................................4, 16

*Harper v. Charter Commc'ns, LLC*,
    2019 WL 3683706 (E.D. Cal. Aug. 6, 2019).......................................................16, 18

*Int'l Longshore & Warehouse Union v. ICTSI Oregon, Inc.*,
    863 F.3d 1178 (9th Cir. 2017) ...............................................................................15

*J.A. Jones Const. Co. v. Lehrer McGovern Bovis, Inc.*,
    120 Nev. 277 (2004) ......................................................................................16, 18

*Las Vegas Sun, Inc. v. Adelson*,
    147 F.4th 1103 (9th Cir. 2025) ...............................................................1, 2, 5, 7, 14

*Maynard v. United Servs. Auto. Ass'n Fed. Sav. Bank*,
    2022 WL 4126272 (N.D. Cal. Sept. 9, 2022) ........................................................20

*Nevada Bank of Com. v. Esquire Real Est., Inc.*,
    86 Nev. 238 (1970) ........................................................................................16, 18

*Novell, Inc. v. Microsoft Corp.*,
    731 F.3d 1064 (10th Cir. 2013) ..............................................................................13

*Omni Fin., LLC v. Kal-Mor-USA, LLC*,
    138 Nev. 973 (2022) ..............................................................................................18

*Oregon Nat. Res. Council v. Mohla*,
    944 F.2d 531 (9th Cir. 1991) ..................................................................................14

*Pac. Exp., Inc. v. United Airlines, Inc.*,
    959 F.2d 814 (9th Cir. 1992) ..................................................................................13

*Prof'l Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*,
    508 U.S. 49 (1993)............................................................................................14, 15

*Rice v. Norman Williams Co.*,
    458 U.S. 654 (1982)..................................................................................................7

*Sidney-Vinstein v. A.H. Robins Co.*,
    697 F.2d 880 (9th Cir. 1983) ..................................................................................19

*Somers v. Apple, Inc.*,
    729 F.3d 953 (9th Cir. 2013) ..................................................................................15

*Sosa v. DIRECTV, Inc.*,
    437 F.3d 923 (9th Cir. 2006) ..................................................................................14

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ....................................................................................4

*Universal Analytics, Inc. v. MacNeal-Schwendler Corp.*,
    914 F.2d 1256 (9th Cir. 1990) ................................................................................13

*Verizon Commc'ns v. L. Offs. of Curtis V. Trinko, LLP*,
    540 U.S. 398 (2004)......................................................................................4, 11, 13

iii

*Vizcaino v. U.S. Dist. Ct. for W. Dist. of Washington,*
173 F.3d 713 (9th Cir. 1999) ............................................................................................6–7

**Rules**

Fed. R. Civ. P. 12(b)(6).......................................................................................................3

Fed. R. Civ. P. 12(f)...........................................................................................................19

## I.     __Introduction__

The Ninth Circuit has twice held the 2005 JOA is "unlawful and unenforceable" under the plain language of the Newspaper Preservation Act ("NPA") and twice reversed this Court for enforcing it. *Las Vegas Sun, Inc. v. Adelson*, 147 F.4th 1103, 1121 (9th Cir. 2025); ECF No. 1106 ("Mandamus Op.") at 4, 6; 15 U.S.C. § 1803(b) (making it unlawful to "perform" or "enforce" a JOA that was not approved by the Attorney General, i.e., the 2005 JOA). Any claim that is premised on "compliance with the 2005 JOA" or that seeks to preserve its "core" is barred and cannot proceed in this Court. Mandamus Op. at 6. The Ninth Circuit has instructed this Court to "implement both the letter and the spirit of the mandate." Mandamus Op. at 3 (quoting *Creech v. Tewalt*, 84 F.4th 777, 787 (9th Cir. 2023)). And yet the Sun is taking yet another run at enforcing the 2005 JOA through its Second Amended Complaint. *See* ECF No. 1162 ("SAC").

The Sun's SAC pleads the same supposedly wrongful conduct as its original complaint. But while the Sun's original complaint pled that the Review-Journal's conduct violated antitrust law because it failed to comply with the express terms of the 2005 JOA, its SAC now alleges that the same purported conduct violated antitrust law because it failed to comply with the Review-Journal's obligations to the "joint operation" that it "voluntarily agreed to" in 2005. The actual obligations at issue are still the same obligations that were created by and arose under the 2005 JOA—an agreement that is, and has always been, unlawful. The SAC also, shockingly, pleads that the Review-Journal's successful challenge to the 2005 JOA's validity was a sham—even though the Ninth Circuit *agreed with the Review-Journal's position*. Allowing the Sun to proceed on these theories will violate the mandate and set this Court up for yet another reversal.

The Sun's entire complaint is a thumb in the eye to the Ninth Circuit. The SAC purports to state claims for monopolization and attempted monopolization under the Sherman Act. But both claims are premised on the theory that it was anticompetitive for the Review-Journal to fail to comply with (a) provisions in the 2005 JOA governing the accounting methodology used to calculate the annual profits payment the Sun was entitled to under that JOA; (b) provisions in the 2005 JOA governing how the Review-Journal should promote the joint newspaper product created by that JOA; (c) provisions in the 2005 JOA governing the front-page layout and format of the

1

joint newspaper product and (d) provisions in the 2005 JOA that the Sun claims required the Review-Journal to maximize joint operation profits for the Sun's benefit. Because the 2005 JOA was never lawful or enforceable, the Review-Journal was under no obligation to comply with these provisions and cannot be held liable for its alleged failure to do so. Indeed, given the Ninth Circuit's ruling, it would have been unlawful for the Review-Journal to *perform* under the 2005 JOA. *Adelson*, 147 F.4th at 1121. The entire premise of the Sun's complaint—that it was unlawful under the Sherman Act for the Review-Journal to *not* perform under the 2005 JOA—is squarely in conflict with the Ninth Circuit's ruling.

The Court should reject the Sun's attempt to mischaracterize its claims as arising under the long-abandoned 1989 JOA and/or under general antitrust principles (which, of course, could never be applied to punish a party under the antitrust laws for "failing" to engage in actions that themselves would be in violation of the antitrust laws). None of the obligations the Sun accuses the Review-Journal of breaching are present in the 1989 JOA—i.e., the 1989 JOA does not require the Review-Journal to exclude editorial expenses from the EBITDA, to promote the Sun in "equal prominence," to display a "Sun Box" on its front page, or to include the Sun in its electronic replica edition. These requirements were all new to the unlawful 2005 JOA and related to specific provisions that existed only under the 2005 JOA. The Court must reject the Sun's false allegations that the 1989 JOA required these practices. The 1989 JOA is attached to the complaint, and shows on its face that the Sun's allegations that these requirements are in the 1989 JOA are not true. And, given that there has not been a lawful JOA in place since 2005, any effort by the Review-Journal since then to work with the Sun to maximize both newspapers' profits—as the Sun claims the Review-Journal should have done—would itself be anticompetitive. Under antitrust law, competitors are supposed to *compete with each other*. They are not supposed to collude to maximize profits from a single customer base.

Equally doomed to failure is the Sun's theory that the Review-Journal's successful legal challenge to the 2005 JOA, and its subsequent refusal to accede to the Sun's position that the defunct 1989 JOA somehow now controls, is conduct that amounts to "sham litigation." As a matter of law, the Review-Journal's challenge to the 2005 JOA cannot be sham litigation because

the Review-Journal prevailed: the Ninth Circuit held that the 2005 JOA was unlawful and unenforceable for exactly the reason the Review-Journal has argued since day one. If there was any sham litigation, it was the Sun's litigation strategy of insisting the 2005 JOA was lawful and enforceable despite never having been approved by the Attorney General, as the NPA requires, and then continuing its efforts to enforce it despite the Ninth Circuit's rulings. Moreover, the facts pled in the SAC show that the Review-Journal's current litigation position is not a sham. For one, the SAC concedes the 2005 JOA is unenforceable yet it relies on a provision in the 2005 JOA for its argument that the parties intended the 1989 JOA to revive. Additionally, the facts pled in the SAC describe a course of conduct—converting the print *Sun* from a standalone daily afternoon newspaper to an insert in the *Review-Journal*, profit-sharing under an EBITDA-based formula— that is flatly inconsistent with the 1989 JOA and entirely consistent with the Review-Journal's position that the 1989 JOA was abandoned and replaced by the 2005 JOA via novation.

The Sun's declaratory relief claim is, likewise, an improper attempt to enforce the 2005 JOA in violation of the Ninth Circuit's mandate. Although the Sun ostensibly seeks a declaration that the 1989 JOA is valid and in effect, its requested declaration does not reflect the actual terms of the 1989 JOA as written. Instead, the Sun asks the Court to reformulate the 1989 JOA into the 2005 JOA. It seeks to accomplish this sleight of hand by asking the Court to declare that a force majeure has occurred and that, as a result, the Review-Journal is required to print and distribute the *Sun* as an *insert* inside the *Review-Journal*. This series of machinations is not going to fool the Ninth Circuit. The Sun's declaratory relief action improperly seeks to enforce the core of the 2005 JOA, in violation of the mandate. Additionally, the Sun's request for declarations that the Review-Journal must seek approval of the 2005 JOA and share its subscriber list with the Sun have no legal basis, and the Sun's complaint fails to plead any facts that would entitle it to this relief. For all these reasons, and as set forth in more detail below, the SAC should be dismissed.

## II.    Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (citations omitted).

Unlike well-pled facts, bare, conclusory assertions are not assumed to be true. *Id.* at 557. Legal conclusions likewise are not assumed to be true on a motion to dismiss. As the Supreme Court made clear, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Twombly*, 550 U.S. at 555 (courts, on a motion to dismiss, "are not bound to accept as true a legal conclusion couched as a factual allegation"). Additionally, where a plaintiff attaches contracts to the complaint as the Sun has done here with the 1989 and 2005 JOAs, the Court is entitled to review those contracts and is not bound by the plaintiff's allegations about what they say and mean. *See Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001) ("The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit").

To state a claim under Section 2 of the Sherman Act, the plaintiff must allege, among other things, that the defendant possessing monopoly power undertook "anticompetitive conduct." *Verizon Commc'ns v. L. Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004); *Coronavirus Rep. v. Apple Inc.*, 85 F.4th 948, 954–55 (9th Cir. 2023). Failure to allege cognizable anticompetitive conduct is grounds for dismissal. *See, e.g.*, *Trinko*, 540 U.S. at 410 (affirming the district court's dismissal of Section 2 claim because the alleged anticompetitive conduct, failure to aid a competitor, was not anticompetitive as a matter of law). A plaintiff seeking declaratory relief must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," including facts showing "an actual case or controversy" between the parties. *Graham-Sult v. Clainos*, 756 F.3d 724, 748, 750 (9th Cir. 2014).

**III.    The SAC Should Be Dismissed Because It Violates the Ninth Circuit's Mandate, Violates the NPA, and Fails to State Any Cognizable Claims.**

**A.    Permitting a Lawsuit to Proceed That Seeks to Hold the Review-Journal Liable for Failing to Comply with the 2005 JOA Would Violate the Mandate and NPA.**

However styled, the Sun's claims ask this Court to enforce the 2005 JOA in violation of the mandate. The Sun's SAC is thus an improper and unlawful attempt to enforce the 2005 JOA.

4

Whether an antitrust action "enforces" a contract turns on the "substance of [the] claims, stripped of their labels." *Cung Le v. Zuffa, LLC*, 108 F. Supp. 3d 768, 776–77 (N.D. Cal. 2015) (holding that antitrust action premised on contracts required the court "to interpret or enforce" those contracts). The Sun offers new labels—e.g., "course of dealing" (ECF No. 1144 at 2, 12), "voluntary" practices (SAC ¶¶ 1, 210), "framework" (SAC ¶¶ 52, 61, 99, 124, 126, 161, 210), "economic setting" (ECF No. 1159 at SA1441), and "yardstick" (ECF No. 1121 at 81:17–82:25)—but none change the substance of its claims. Each claim depends on alleged breaches of the 2005 JOA: the 2005 JOA's accounting provisions (*see* Section III.B, *infra*), the 2005 JOA's joint-promotion provisions (*see* Section III.C, *infra*), the 2005 JOA's front-page provisions (*see* Section III.C, *infra*), and the 2005 JOA's profit-payment provisions (*see* Section III.D, *infra*). Additionally, now that the Ninth Circuit has repeatedly held that the 2005 JOA was never approved by the Attorney General under the NPA, ***it would violate federal law to enforce the 2005 JOA***. 15 U.S.C. § 1803(b). Therefore, by definition, allowing the SAC to survive and proceed to discovery, summary judgment, or even trial would necessarily be an enforcement of the 2005 JOA because the SAC repeatedly identifies the Review-Journal's supposed anticompetitive conduct as failing to comply with the specific terms of the 2005 JOA.

The Sun's argument that the 2005 JOA can somehow still serve as a reference point—a "yardstick" or "framework"—for evaluating whether the Review-Journal's conduct was anticompetitive ignores the fact that the 2005 JOA was, and always has been, an unlawful agreement between competitors. It was not a lawful agreement that later became unlawful; it was illegal from inception. *Adelson*, 147 F.4th at 1121; Mandamus Op. at 4, 6. In short, this agreement was never lawful, is not lawful, and cannot establish a standard of conduct that the Review-Journal was obligated to follow. Permitting the Sun to use the 2005 JOA as a "yardstick" for antitrust liability would effectively enforce the unlawful 2005 JOA through the back door, which is precisely what the Ninth Circuit's mandate and the NPA prohibit. Mandamus Op. at 6.

If the Court were to accept the Sun's invitation to use the 2005 JOA as a "yardstick" or "framework" to assess antitrust liability, the Court would necessarily need to interpret and enforce the 2005 JOA by, among other things, adjudicating whether the Review-Journal properly "[bore

5

its] own . . . editorial costs" to the extent required under the 2005 JOA (SAC ¶¶ 68, 153–63), jointly promoted the Sun with "equal prominence" to the Review-Journal in the manner required by the 2005 JOA (*id.* ¶¶ 66, 164–74), gave the Sun the "noticeable mention" on the front page that was required by the 2005 JOA (*id.* ¶¶ 64–65, 175–83), and used "commercially reasonable efforts to maximize" circulation and profits of the joint operation (*id.* ¶¶ 127–52). And resolving these claims in the Sun's favor would mean holding the Review-Journal liable for failing to perform under the 2005 JOA—an agreement that is, and always has been, unlawful and unenforceable. Adjudicating these claims would, by definition, give effect to and enforce the "core" of the 2005 JOA—precisely what the mandate forbids. Mandamus Op. at 6.

The Sun has admitted as much. Its First Amended Complaint pled breaches of the 2005 JOA. *See, e.g.*, ECF No. 621 ("FAC") ¶¶ 88, 95, 98, 108, 113, 150, 159; ECF No. 844-20 at 2–4. Although the Sun amended its prior complaint in order "to plead around the invalidation of the 2005 JOA" (ECF No. 1161 at 7), it tells the Court that the SAC "does not offer new facts" and pleads "the same antitrust claims for relief, the same relevant market, *the same anticompetitive conduct*, and the same antitrust injury" (ECF No. 1118 at 1, 2, 11) (emphasis added). This admission is fatal: the SAC seeks enforcement of the unlawful 2005 JOA. There is no way for the Sun to "plead around" the fact that the 2005 JOA is the sole basis for any past dealings between the Review-Journal and the Sun during the relevant time period. The Review-Journal's current owners acquired the newspaper in December 2015—a full decade after the parties had terminated and abandoned the 1989 JOA in favor of the 2005 JOA. Every obligation, every accounting methodology, and every structural arrangement the Sun complains about traces to the 2005 JOA because that agreement is the only one the parties ever treated as governing.[1]

The Sun's claims also defy the spirit of the mandate by placing the Review-Journal in an absurd Catch-22. *See Vizcaino v. U.S. Dist. Ct. for W. Dist. of Washington*, 173 F.3d 713, 719 (9th

---

[1] The Sun's vague suggestion that the obligations of the 1989 JOA somehow operated in parallel with the 2005 JOA is incoherent. *See* SAC ¶¶ 56, 209–10. The 1989 JOA and the 2005 JOA may cover the same subject matter, but their terms are incompatible and there is no way the agreements could operate in tandem: (i) under the 1989 JOA, the Sun was a standalone daily afternoon newspaper with its own distribution, whereas it was a morning insert in the *Review-Journal* delivered to a single subscriber list under the 2005 JOA; (ii) under the 1989 JOA, the parties shared

Cir. 1999) (courts must enforce "the letter and the spirit of the mandate" and consider "the appellate court's opinion and the circumstances it embraces"). The Ninth Circuit held that performing the 2005 JOA is unlawful. *Adelson*, 147 F.4th at 1114. In the SAC, the Sun alleges that *not* performing it is *also* unlawful. *See, e.g.,* SAC ¶¶ 124, 157, 170, 177, 184, 197. Under the Sun's theory, the Review-Journal violates the law whether it performs the 2005 JOA or refuses to. The antitrust laws do not create such traps. *Rice v. Norman Williams Co.*, 458 U.S. 654, 661 (1982) (rejecting a reading of law that would "mandate[] or authorize[] conduct that necessarily constitutes a violation of the antitrust laws in all cases"). The Ninth Circuit did not intend to create this trap. Holding the Review-Journal liable for failing to perform under a JOA that the Ninth Circuit has now twice held is unlawful to perform or enforce would plainly violate both the letter and the spirit of the mandate.

### B. The Review-Journal's Alleged "Accounting Abuses" Are Not Cognizable Because They Are Just Breaches of the Unlawful 2005 JOA and Not Anticompetitive Conduct.

The Sun alleges that the Review-Journal engaged in "accounting abuses" that reduced the Sun's annual profits payments and thus gave rise to antitrust liability. SAC ¶¶ 153–63. But the label "accounting abuses" is, in and of itself, a conclusory characterization that, standing alone, does not satisfy *Twombly*'s requirement of well-pled factual allegations. 550 U.S. at 555. Courts must look past such labels to the specific allegations behind them. *Id*. Here, every practice the Sun uses as support for its conclusion that the Review-Journal engaged in "accounting abuse" is, at bottom, an allegation that the Review-Journal breached a specific provision of the 2005 JOA. The Sun's attempt to whitewash its complaint with conclusory relabeling cannot hide that reality.

---

profits on a fixed 90/10 operating-profit split; the 2005 JOA uses an EBITDA-based formula; and (iii) the 1989 JOA had no Sun Box or joint promotion requirement whereas the 2005 JOA did. Moreover, both the 1989 and 2005 JOAs contain identical "cooperation" clauses requiring the parties "to carry out and effectuate the intent, purposes, and provisions" of each (different) agreement. *See* 1989 JOA § 5.3; 2005 JOA § 5.3. But both cannot be in force at once—the parties cannot "carry out" the provisions of both agreements when their terms are so deeply incompatible. The Sun's own 43-page "Comparison Chart" attached to the SAC confirms as much, cataloguing the extensive and irreconcilable differences between the two agreements. *See* SAC, Ex. 3. These fundamental differences show the agreements are not complementary instruments—they are substitutes.

7

The alleged factual conduct underlying the "accounting abuses" label is that the Review-Journal supposedly deducted editorial costs in violation of the 2005 JOA's prohibition, charged promotional expenses that failed the 2005 JOA's equal-prominence test, and diverted revenue away from the EBITDA calculation prescribed by the 2005 JOA. *See* SAC ¶ 159 (RJ charged its editorial expenses to the joint operation, "even though under the 2005 JOA the parties had agreed to 'bear their own respective editorial costs'"); *id.* ¶ 161 ("under the belief that the 2005 JOA was valid and enforceable," the RJ charged "disallowed promotional expenses that did not include equal mention of the Sun"); *id.* ¶ 157 (the RJ "manipulat[ed] the 2005 JOA formula" because "the RJ knew that higher operating expenses under the 2005 JOA formula would reduce the joint operation EBITDA and, consequently, lead to lower profit payments to the Sun"). The Sun even concedes that "[e]ach of the RJ's abuses" arose "under the accounting formula that both parties believed governed their joint operation," *id.* ¶ 163—that is, the 2005 JOA.

Sometimes, the SAC explicitly references the 2005 JOA.[2] Other times, the SAC scrubs references to the "2005 JOA" that were in the FAC and replaces them with euphemisms like "the joint operation," "the parties' longstanding practice," and "the framework." *Compare* FAC ¶¶ 48, 65–66, 98 *with* SAC ¶¶ 99, 125–26, 177. But as the Sun itself has told this Court, the SAC "does not offer new facts" and pleads "the same antitrust claims for relief, the same relevant market, the same anticompetitive conduct, and the same antitrust injury." ECF No. 1118 at 1, 2, 11. The relabeling does not change the substance: each alleged "accounting abuse" is an allegation that the Review-Journal failed to comply with the 2005 JOA's EBITDA-based profit-sharing formula and related accounting provisions.

Although the Sun vaguely references the 1989 JOA in connection with its "accounting abuse" theory, it does not plead that the Review-Journal's accounting methodology violated the 1989 JOA. Nor can it, because the 1989 JOA does not require the same type of accounting as the 2005 JOA. The 2005 JOA introduced, for the first time, an EBITDA-based profit-sharing formula. Critically, the language the Sun relies on to argue that the Review-Journal should not have

---

[2] *See* SAC ¶ 157 (alleging "manipulat[ion of] the 2005 JOA"); *id.* ¶ 159 (alleging breach of 2005 JOA); *id.* ¶ 160 (citing the parties' "interpretation of the 2005 JOA").

8

deducted editorial expenses when calculating EBITDA (i.e., that the Review-Journal must "bear [its] own . . . editorial costs") was added for the first time in the 2005 JOA and was not in the 1989 JOA. 2005 JOA § 4.2; App. D; *see also* SAC Exhibit 3 at 9. The 1989 JOA, by contrast, *required* editorial expenses to be charged to the joint operation. 1989 JOA App. B § B.1.1. The 1989 JOA also used an entirely different profit-sharing structure—a fixed 90/10 operating-profit split (*see* 1989 JOA App. D)—which is not the same formula that the SAC alleges the Review-Journal "manipulated" (SAC ¶¶ 157–63). In short, the EBITDA-based formula the Sun claims the Review-Journal manipulated, and the prohibition on deducting editorial expenses that is the Sun's core complaint, were solely creations of the unlawful 2005 JOA.

Even after the Ninth Circuit held the 2005 JOA to be unlawful, the Sun could not delete these allegations of noncompliance with 2005 JOA requirements because they *are* the Sun's case. Once the Sun's conclusory labels are stripped away, all that is left are breaches of the 2005 JOA— nothing more. Because the 2005 JOA is—and has always been—unlawful to perform or enforce, neither the Review-Journal's alleged non-compliance with the accounting and audit provisions, nor its alleged failure to pay the Sun the amount it supposedly would have been owed under that unlawful agreement, can be a basis for antitrust liability. To hold otherwise would be to enforce the 2005 JOA in contravention of the Ninth Circuit's mandate and the NPA.

Without a lawful JOA imposing these particular accounting requirements, the question is whether the Review-Journal was under some independent duty under antitrust law to use the accounting methodology created by the 2005 JOA. Of course, it was not. Antitrust law does not require the Review-Journal to share profits with a competitor at all—let alone according to the competitor's preferred accounting methodology. Indeed, such "profit-pooling" would be illegal under the Sherman Act. *See Citizen Pub. Co. v. United States*, 394 U.S. 131, 135 (1969). Moreover, the Review-Journal's decisions about how to manage its finances cannot be the basis of an antitrust violation, even if they harm a competitor. *See FTC v. Qualcomm Inc.*, 969 F.3d 974, 998–99 (9th Cir. 2020) (holding that disputes over whether financial terms reflect their fair value are contract or regulatory matters and do not "amount to anticompetitive harm in the antitrust sense"); *Foremost Int'l Tours, Inc. v. Qantas Airways Ltd.*, 478 F. Supp. 589, 599 (D. Haw. 1979) (finding

the selection of a cost accounting methodology was "a reasonable business judgment … and no inference of predation can be drawn therefrom"); *Berlyn, Inc. v. Gazette Newspapers, Inc.*, 223 F. Supp. 2d 718, 734–35 (D. Md. 2002) (dismissing claim that a defendant newspaper's cost calculation methodology constituted anticompetitive or predatory pricing). For these reasons, the Sun's "accounting abuse" theory cannot form the basis of a plausible Sherman Act claim.

### C. The Review-Journal's Alleged "Promotional Abuses" Are Not Cognizable Because They Are Just Breaches of the Unlawful 2005 JOA, Not Anticompetitive Conduct.

The SAC likewise alleges that the Review-Journal engaged in "promotional abuses" that amount to anticompetitive conduct. SAC ¶ 166. However, the allegations underlying this vague and conclusory label of "promotional abuses" all trace back to the unlawful 2005 JOA. The SAC pleads that the Review-Journal (1) failed to promote the *Sun* in "equal prominence" with the *Review-Journal*, (2) destroyed the Sun Box, diminishing the *Sun's* presence on the front page of the Newspaper Bundle, and (3) omitted the *Sun* from the electronic replica edition of the Newspaper Bundle. SAC ¶ 166. These allegations cannot form the basis of a plausible antitrust claim because they are based entirely on purported breaches of the unlawful 2005 JOA. In the absence of a lawful JOA requiring the Review-Journal to take these specific actions, the Review-Journal's refusal to promote its competitor cannot give rise to antitrust liability.

The first alleged "promotional abuse" is that the Review-Journal "fail[ed] to promote the Sun in equal prominence with the RJ." SAC ¶ 166; *see also id*. ¶¶ 167–74. The only basis for the "equal prominence" requirement comes from the 2005 JOA, which is—and has always been—unlawful and unenforceable. *See* 2005 JOA § 5.1.4 (requiring "equal prominence" in joint advertisements); Mandamus Op. at 4, 6. Indeed, the Sun conceded as much in its prior complaint when it tied its "equal prominence" claim to the 2005 JOA. FAC ¶¶ 86–96; *see also* SAC ¶ 167 (alleging the Review-Journal "voluntarily agreed" to this requirement while refusing to identify the actual agreement because it is the unlawful 2005 JOA). Unlike the 2005 JOA, the 1989 JOA contains no joint promotion requirement and no "equal prominence" obligation. Rather, the 1989 JOA allocated separate promotional budgets between the two newspapers and provided that each newsroom determines its own promotional activities. *See* 1989 JOA § 5.1.4 & App. A § A.3.

10

The second alleged "promotional abuse" is that the Review-Journal supposedly "destroy[ed] the Sun Box and diminish[ed] the Sun's presence on the front page of the Newspaper Bundle." SAC ¶ 166; *see also id*. ¶¶ 175–83. But again, these requirements only appear in the unlawful 2005 JOA which set forth specifications for a "Sun Box" that would appear on the front page of the joint newspaper product; the 1989 JOA makes no mention of a "Sun Box" or any specifications for it. 2005 JOA § 5.1; App. A.2(d) (Sun Box specifications). The 1989 JOA provided for the Sun to have its ***own separate afternoon newspaper***. 1989 JOA § 5.1 (providing for the *Sun* to be a separate paper, so no "Sun Box" provision exists). Indeed, the Sun Box requirements are based solely on the 2005 JOA, which is—and has always been—unlawful and unenforceable.[3]

The third alleged "promotional abuse" is that the Review-Journal "omit[ted] the Sun from the electronic replica edition of the Newspaper Bundle." SAC ¶ 166; *see also id*. ¶¶ 184–90. Here too, this requirement comes exclusively from the 2005 JOA, which is—and has always been—unlawful and unenforceable. *See* 2005 JOA § 10.6 (imposing obligation to distribute Sun in the electronic replica edition). There is no such requirement in the 1989 JOA. *See generally* 1989 JOA.

Without any lawful JOA requiring the Review-Journal to promote the Sun in these specific ways, the question becomes whether the Review-Journal's alleged failure to promote the Sun in equal prominence, comply with the Sun Box requirements, and include the Sun in the electronic replica edition of the Review-Journal, are otherwise anticompetitive under antitrust law. They are not. The Review-Journal is not under any affirmative legal obligation to promote the Sun at all, let alone in the specific ways the Sun demands. *See Trinko*, 540 U.S. at 411 (there "is no duty to aid competitors"); *Qualcomm*, 969 F.3d at 995 (defendant's licensing practices with respect to rivals were not anticompetitive because there is no "antitrust duty to license rival[s]"); *Foremost Int'l Tours*, 478 F. Supp. at 598 (holding that "subsequent to the termination of its agreement with

---

[3] The 1989 JOA did occasionally require a front-page mention—providing that the front page of any joint weekend or holiday edition "shall read 'Las Vegas REVIEW-JOURNAL and SUN.'" 1989 JOA § 4.4. But the Sun does not allege that the Review-Journal failed to comply with the 1989 JOA's joint-edition requirements—its complaint is about the daily Sun Box, which is a creature of the 2005 JOA alone. *See* 2005 JOA § 5.1; App. A.2(d).

plaintiff, [defendant] was of course under no obligation to render preferential treatment to [plaintiff]"). Put plainly, it is not anticompetitive for an entity to decline to promote its competitor. And here, to hold otherwise would be to enforce obligations that arise exclusively under the unlawful and unenforceable 2005 JOA.

### D. The Review-Journal's Alleged Failure to Maximize Profits for the Sun's Benefit Is Likewise Just an Alleged Breach of the 2005 JOA and Not Anticompetitive.

For similar reasons, the Sun's theory that it was anticompetitive for the Review-Journal to allegedly "fail to maximize the joint operation's profits" is not cognizable either.

*First*, as with its other theories, the Sun is again seeking enforcement of the 2005 JOA. The Sun cites the 2005 JOA as the source of the Review-Journal's supposed obligation to make "commercially reasonable efforts" to maximize profits. *See* SAC ¶ 129; 2005 JOA §§ 5.1.3, 5.1.4, 5.3.[4] The Sun alleges the Review-Journal's failure to maximize profits was supposedly anticompetitive because, as a result, the Sun did not receive a profit-sharing payment. SAC ¶¶ 130–63. However, as explained above, the profit-sharing formula the Sun claims was "manipulated" existed only under the 2005 JOA. *See* Section III.B, *supra*.

*Second*, to the extent the Sun tries to ground this theory in the 1989 JOA, it still fails given that the 1989 JOA does not require the Review-Journal to maximize profits. *See* SAC ¶ 129 (citing 1989 JOA §§ 5.1.3, 5.1.4, 5.3). Section 5.1.3 of the 1989 JOA states that the Review-Journal "agrees it will use its best efforts, using the same degree of diligence, to sell advertising space in the Sun and the Review-Journal and to promote and circulate the Sun and the Review-Journal." 1989 JOA § 5.1.3. This provision says nothing about maximizing profits. Section 5.1.4 has to do with budgeting and other requirements for promotional activities; it says nothing about maximizing profits either. *Id.,* § 5.1.4. Section 5.3 is a cooperation clause that likewise says nothing about maximizing profits. *Id.*, § 5.3.

---

[4] To be clear—neither the 1989 JOA nor the 2005 JOA requires the Review-Journal to "maximize profits." Section 5.1.3 of the 2005 JOA requires the Review-Journal to use "commercially reasonable efforts" to maximize *circulation*—not profits. These are distinct and potentially conflicting objectives: maximizing circulation in a declining print market can require significant expenditures that reduce, rather than increase, profitability.

12

*Third*, the Review-Journal was not under any independent obligation to operate its business so as to maximize profits and, by extension, the Sun's share of those profits. To the contrary, it is *unlawful* for competing newspapers to share profits unless the profit-sharing occurs pursuant to a lawful JOA. *See Citizen Pub. Co.*, 394 U.S. at 134–35. And even if competitors sharing profits was not illegal, which it is, the Review-Journal's decisions about how to run its business cannot be grounds for antitrust liability even if those decisions have negative consequences for competitors. *Pac. Exp., Inc. v. United Airlines, Inc.*, 959 F.2d 814, 818 (9th Cir. 1992) ("The Sherman Act was not designed, and has never been interpreted, to reach all business practices, unfair or otherwise, damaging to individual companies."). And, of course, businesses are free to elect not to maximize profits for any number of legitimate reasons—for example, to invest in improving their products. *See, e.g., Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1075 (10th Cir. 2013) ("firms routinely sacrifice short-term profits for lots of legitimate reasons that enhance consumer welfare").

Finally, the Review-Journal's decision to remove Jason Taylor as publisher cannot be a basis for antitrust liability for multiple additional reasons. The 2005 JOA is invalid and the 1989 JOA was not in effect when Jason Taylor was removed. But even if one of these agreements had been in effect, they both make clear that the Review-Journal has "***exclusive and complete control***" over the "***selection of all its news and editorial employees, and the exclusive right to hire and discharge such employees***." 2005 JOA § 5.2 (emphasis added); 1989 JOA § 5.2 (same). Moreover, even independent of any JOAs, the Sherman Act "does not restrict the long-recognized right of [a] [company] engaged in an entirely private business, freely to exercise [its] own independent discretion as to parties with whom [it] will deal," *Trinko*, 540 U.S. at 408, and which employees it hires, *Universal Analytics, Inc. v. MacNeal-Schwendler Corp.*, 914 F.2d 1256, 1258 (9th Cir. 1990) (hiring decisions are "predatory" only "when talent is acquired not for purposes of using that talent but for purposes of denying it to a competitor").

For all the foregoing reasons, no theory of anticompetitive conduct in the SAC survives scrutiny. The Sun's theory of antitrust liability that it labels as "failure to maximize profits"—like the Sun's theories regarding "accounting abuses" and "promotional abuses"—depends entirely on

13

obligations that existed only under the unlawful 2005 JOA. If this Court permits the Sun to proceed to discovery, summary judgment, and trial on these theories, it will necessarily be required to interpret and apply the provisions of the 2005 JOA—to determine, for example, whether the Review-Journal properly calculated EBITDA under Appendix D of the 2005 JOA, whether the Review-Journal's promotions satisfied 2005 JOA § 5.1.4's equal-prominence requirement, or whether the Review-Journal used commercially reasonable efforts to maximize circulation under § 5.1.3 of the 2005 JOA. That is *enforcement* of the 2005 JOA. And enforcement of the 2005 JOA is precisely what the Ninth Circuit has twice forbidden and what Congress has deemed unlawful. *See* Mandamus Op. at 4, 6; *Adelson*, 147 F.4th at 1121; 15 U.S.C. § 1803(b).

### E.  The Sun's "Sham" Litigation Claim Is Barred by Noerr-Pennington.

The Sun fails to state a claim of antitrust liability based on the Review-Journal's litigation conduct. The Noerr-Pennington doctrine presumes that litigation conduct is constitutionally protected and does not violate the antitrust laws. *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929–34 (9th Cir. 2006). Such claims face a heightened pleading standard: a complaint must identify "'the specific activities' which bring the defendant's conduct into one of the exceptions to Noerr-Pennington protection"; "[c]onclusory allegations" will not do. *Oregon Nat. Res. Council v. Mohla*, 944 F.2d 531, 533 (9th Cir. 1991). To invoke the "sham" litigation exception, the plaintiff must show (1) the litigation was "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits," and (2) it was intended to "interfere directly" with a competitor's business by "us[ing] the governmental process—as opposed to the outcome of that process—as an anticompetitive weapon." *Prof'l Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60–62 (1993) ("*PRE*").

The Sun's conclusory allegations that "refusing to acknowledge the enforceability of the 1989 JOA" is a "sham" fall far short of this high standard.[5] As an initial matter, the litigation

---

[5] Unprompted, the Sun abandoned most of its sham litigation theories in recent preliminary injunction briefing, now contending only that "the RJ's refusal to recognize the 1989 JOA as the governing agreement… is a sham." ECF No. 1189 at 6. This is irreconcilable with the allegations in the SAC. *See* SAC ¶ 203 (alleging the RJ's state court counterclaims were "bogus" and "objectively baseless"); *id.* ¶¶ 126, 204–05, 224–25 (alleging the RJ's efforts to have the 2005 JOA declared unenforceable were "objectively baseless"). The Sun had no choice but to retreat: a

14

conduct the Sun attacks as a "sham" is not a freestanding lawsuit or counterclaim—it is a legal position the Review-Journal advanced when opposing the Sun's motions for a preliminary injunction. *See* ECF Nos. 1070 at 6–9, 1144 at 30–37. And, the Sun's allegations that this position is "baseless" are entirely conclusory. *See, e.g.*, SAC ¶ 209 (the RJ's position that the 2005 JOA effected a novation is "false[]"), ¶ 224 (opposing the revival of the 1989 JOA is "objectively baseless, unreasonable" and "contradict[s] established law and this Court's prior rulings"), ¶ 225 ("[n]o reasonable litigant could realistically expect success" on the Review-Journal's "baseless" position). These allegations merely parrot *PRE* without explaining why the Review-Journal's position is baseless. *See PRE*, 508 U.S. at 60. The Sun does not allege that the Review-Journal has misrepresented facts or law or failed to conduct a reasonable investigation—only that the Review-Journal's position is, according to the Sun, baseless. This is not enough.

Even worse, the Sun offers just one allegation that the Review-Journal used "governmental process—as opposed to the outcome of that process—as an anticompetitive weapon." *PRE*, 508 U.S. at 60–61. The Sun alleges that the Review-Journal "weaponize[d] the litigation process itself to [sic] delay the Sun's preliminary and final relief." SAC ¶ 224. But opposing the Sun's motion for a preliminary injunction is not an abuse of process—it is the process. The Sun's position reduces to the remarkable proposition that the Review-Journal should have filed no opposition and simply accepted the Sun's legal position as true. Tellingly, the only harm the Sun identifies is that it will lose money if the Court rules against it on the 1989 JOA revival question. SAC ¶ 205. But that harm flows from the *outcome* the Review-Journal seeks (a ruling that the 1989 JOA does not govern), not from any abuse of the litigation *process*. The Sun's real complaint is that the Review-Journal is advocating for a legal position the Sun does not want the courts to consider. That is what the First Amendment protects, and *Noerr-Pennington* immunizes.

In any event, the face of the Sun's complaint confirms that the Review-Journal's position is "arguably warranted by existing law" and therefore not a sham. *Int'l Longshore & Warehouse Union v. ICTSI Oregon, Inc.*, 863 F.3d 1178, 1188 (9th Cir. 2017); *see also Adidas Am., Inc. v.*

---

winning position is "by definition a reasonable effort at petitioning for redress and therefore not a sham." *PRE*, 508 U.S. at 60 n.5. The abandoned allegations should be stricken. *See Somers v. Apple, Inc.*, 729 F.3d 953, 959–61 (9th Cir. 2013).

15

*TRB Acquisitions LLC*, 2017 WL 337983, at *5–6 (D. Or. Jan. 23, 2017) (concluding from the pleadings that a claim was not a "sham"). The Sun pleads facts establishing that the 1989 JOA is no longer in force. *See* SAC ¶¶ 52, 113; *see also id*. ¶¶ 81–82, 124, 157, 161. The Sun alleges that, after 2005, "all believed [the 2005 JOA] was *the* valid and enforceable, governing agreement." SAC ¶ 113 (emphasis added). This allegation confirms that the 2005 JOA was a novation, supplanting the 1989 JOA as the governing agreement between the parties. *See Nevada Bank of Com. v. Esquire Real Est., Inc.*, 86 Nev. 238, 240–41 (1970) (the "substitution of a new obligation for an existing one, effects a novation" and novation may be inferred from the conduct of the parties); *see also Harper v. Charter Commc'ns, LLC*, 2019 WL 3683706, at *7–8 (E.D. Cal. Aug. 6, 2019) (a contract "merely void on statutory grounds" may effect a novation). The Sun further admits that the "parties operated under [the 1989 JOA] for 16 years" (SAC ¶ 52) meaning the parties *stopped* performing under the 1989 JOA in 2005, legally abandoning it. *See J.A. Jones Const. Co. v. Lehrer McGovern Bovis, Inc.*, 120 Nev. 277, 292 (2004) (a contract is legally abandoned when one party takes actions "inconsistent with the contract's existence" and the other party "acquiesce[s]"). These allegations alone establish that the 1989 JOA does not bind the parties—and that the Review-Journal's legal position is far from a "sham."

### F. The Sun's Declaratory Relief Claim Improperly Seeks to Enforce the 2005 JOA and Otherwise Fails to Plead any Entitlement to Declaratory Relief.

The Sun's request for declaratory relief is yet another attempt to enforce the 2005 JOA—and it fails for multiple independent reasons.

*First*, declaratory relief is a remedy, not an independent cause of action. *City of Reno v. Netflix, Inc.*, 52 F.4th 874, 878 (9th Cir. 2022) (affirming dismissal because a request for declaratory judgment "does not provide an affirmative cause of action where none otherwise exists"). To obtain such relief, a plaintiff must plead facts showing "an actual case or controversy" between the parties that is "plausible on its face." *See Graham-Sult v. Clainos*, 756 F.3d 724, 748, 750 (9th Cir. 2014). Here, the Sun pleads no underlying breach by the Review-Journal—neither an actual breach of the 1989 JOA nor an anticipated one. Instead, the Sun seeks affirmative declarations that would require the Review-Journal to perform specific obligations—printing and

16

distributing the Sun as a daily insert, sharing its subscriber list, and seeking Attorney General approval of the 2005 JOA. SAC ¶¶ 297–307. But these are not requests to "declare the rights" of the parties; they are requests for specific performance of supposed contractual obligations, untethered from any contractual promise and from any corresponding allegation of breach. Having pled no contract claim, the Sun cannot use its requests for declaratory relief as a vehicle to enforce the 1989 JOA (let alone contractual terms that do not even exist).

*Second*, the declarations the Sun seeks are not even aimed at enforcing compliance with the 1989 JOA—rather, they seek to enforce the core terms of the unlawful 2005 JOA. The 1989 JOA required the Sun to produce, and the Review-Journal to print and deliver, a standalone daily afternoon *Sun* newspaper. *See* 1989 JOA § 5.1. But the Sun does not seek a declaration that the parties must return to the 1989 JOA as written—it seeks a declaration that the Review-Journal must print and deliver the *Sun* as an insert in the daily morning *Review-Journal* newspaper. SAC ¶¶ 297–300. This is what the 2005 JOA required, not the 1989 JOA. *See* 2005 JOA § 5.1 & App. A–B.[6]

The Sun bases this requested declaration on the force majeure provision of 1989 JOA, which provides that the *Sun* newspaper may be distributed as an insert in the *Review-Journal* newspaper in the event the Review-Journal invokes the force majeure provision in the 1989 JOA as an excuse for non-performance. SAC ¶¶ 297–300, Prayer for Relief A (4)–(5), B (2)–(3); 1989 JOA §§ 4.4, 8.2 & App. A.2(b). But the Review-Journal has not invoked the force majeure provision, nor has any force majeure event prevented the parties from performing under the 1989 JOA. As the SAC makes clear, the reason nobody is performing under the 1989 JOA is not because of a force majeure. It is because two decades ago the Sun, along with the Review-Journal's prior owner, abandoned the 1989 JOA in favor of a new JOA that turned out to be illegal because they did not obtain the Attorney General's approval as the NPA requires. *See* SAC ¶¶ 52, 73–75, 78–

---

[6] The Sun's declaratory relief claim also seeks to enforce the unlawful 2005 JOA in another respect. Its argument that the 1989 JOA revived when the 2005 JOA was declared unlawful is rooted in the 2005 JOA, itself. Specifically, the Sun alleges that "[t]he RJ has refused to recognize the current validity of the 1989 JOA, the unenforceability of which is the result of the 2005 JOA being declared unenforceable and *as expressly intended by the parties, as memorialized in the 2005 JOA*." SAC ¶ 296 (emphasis added); *see also id.*, ¶ 77.

82, 113. Moreover, even if a force majeure event had occurred, which it did not, Appendix A.2(b)–(c)—which the Sun claims should govern the format of the joint paper—does not apply when the joint paper is produced under force majeure conditions. 1989 JOA § 8.2 (Review-Journal determines the format of the jointly published newspaper "notwithstanding the provisions of Appendix A").

*Third*, the Sun's request for declaratory relief fails on purely legal grounds because the 1989 JOA remains terminated by operation of law regardless of the 2005 JOA's unenforceability. *See* Section III.E, *supra*. Under well-established law, a novation extinguishes the prior obligation even if the substituted agreement is later found to be void. *Harper,* 2019 WL 3683706, at *7–8 (a contract "merely void on statutory grounds" may effect a novation). The Sun's own allegations confirm this result: it alleges that after 2005, "all believed [the 2005 JOA] was *the* valid and enforceable, governing agreement" (SAC ¶ 113), that the parties stopped performing under the 1989 JOA in 2005 (*id.* ¶ 52), and that since then the parties operated exclusively under the 2005 JOA's structure—a morning insert (*see id*. ¶¶ 63, 177), EBITDA-based profit sharing (*see id*. ¶¶ 69–70), a Sun Box (*see id*. ¶¶ 64, 177), and more. That constitutes both a novation (*see Nevada Bank of Com.,* 86 Nev. at 241) and an abandonment (*see J.A. Jones Const. Co.,* 120 Nev. at 292). Moreover, the 2005 JOA also expressly states that the 1989 JOA had no effect after the "Transition Date" of September 30, 2005 (§ 1.2) and "shall be null, void and of no effect whatsoever" (§ 10.4). This language reaffirms that the parties intended to replace the 1989 JOA entirely with the 2005 JOA and therefore further supports a finding of novation. *Omni Fin., LLC v. Kal-Mor-USA, LLC*, 138 Nev. 973 at *2–3 (2022). However, the termination of the 1989 JOA is not contingent on the 2005 JOA's validity—the parties' conduct demonstrates that a novation occurred by operation of law, regardless of the contractual validity of the termination provision of the 2005 JOA. In short, the 1989 JOA did not spring back to life when the 2005 JOA was declared unlawful. The Sun's declaratory relief claim rests on a legal fiction.

Finally, the Sun's declaratory relief claim also seeks other declarations, such as a declaration that the Review-Journal must seek approval of the 2005 JOA and share its subscriber list with the Sun. SAC ¶¶ 301–05, Prayer for Relief A (6)–(7). The SAC pleads no plausible theory

18

under which the Sun is entitled to either declaration. To the extent the Sun suggests that such relief is necessary to remedy alleged antitrust violations, the Sun has pled no cognizable antitrust violations as explained above.

## IV. At Minimum, the Court Should Strike All Theories That Rely on the Unenforceable 2005 JOA.

Here, as explained above, none of the Sun's antitrust theories are cognizable. They should be dismissed in full on that basis. To the extent, however, that the Court believes certain of the Sun's theories are viable, then it should strike the non-viable theories under Rule 12(f) because they are legally irrelevant and allowing them to remain in the case would substantially prejudice the Review-Journal. *See Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (affirming strike of "immaterial" and "impertinent" allegations related to a claim that was barred by res judicata and the statute of limitations; these allegations did not support a cognizable claim for relief and were irrelevant and prejudicial to other claims in the case).

Rule 12(f) allows the Court to strike "any redundant, immaterial, impertinent, or scandalous matter" from a pleading. Fed. R. Civ. P. 12(f). Allegations are "immaterial" if they have "no essential or important relationship to the claim for relief … being pleaded." *Fogerty*, 984 F.2d at 1527. Similarly, allegations are "impertinent" if they "do not pertain, and are not necessary, to the issues in question." *Id*. "Superfluous historical allegations"—excessive background information that is unnecessary to the pleading—may be stricken under Rule 12(f). *Id.* "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).

Antitrust theories that violate the mandate and/or cannot form a basis for liability as a matter of law are irrelevant. *See, e.g., Fogerty*, 984 F.2d at 1527–28 (conduct that may be illegal but is barred by statute of limitations is properly stricken from complaint). Allowing these allegations to remain in the case would prejudice the Review-Journal by forcing it to waste time and resources addressing allegations with no legal relevance. *See Sidney-Vinstein*, 697 F.2d at 885. Permitting these allegations to remain would also sow needless "confusion of the issues," forcing

19

the Review-Journal to explain at trial why the 2005 JOA and alleged breaches of it are irrelevant in light of the Ninth Circuit's opinions and the NPA. *See Maynard v. United Servs. Auto. Ass'n Fed. Sav. Bank*, 2022 WL 4126272, at *2 (N.D. Cal. Sept. 9, 2022).

**V.    Conclusion**

For the reasons set forth above, Defendants respectfully request that the Court dismiss the SAC with prejudice and without leave to amend. In the alternative, Defendants respectfully request that the Court strike every allegation that relies on the 2005 JOA.

Dated:    May 18, 2026                    CLAGGETT & SYKES LAW FIRM


                                          By:    /s/ Michael J. Gayan
                                                 MICHAEL J. GAYAN, ESQ., SBN 11135
                                                 4101 Meadows Lane, Suite 100
                                                 Las Vegas, Nevada 89107

                                                 J. RANDALL JONES, ESQ., SBN 1927
                                                 MONA KAVEH, ESQ., SBN 11825
                                                 KEMP JONES LLP
                                                 3800 Howard Hughes Parkway, 17th Floor
                                                 Las Vegas, Nevada 89169

                                                 DAVID R. SINGER, ESQ. (*pro hac vice*)
                                                 AMY M. GALLEGOS, ESQ. (*pro hac vice*)
                                                 JENNER & BLOCK LLP
                                                 515 South Flower Street, Suite 3300
                                                 Los Angeles, California 90071

                                                 RICHARD L. STONE, ESQ. (*pro hac vice*)
                                                 850 Devon Avenue
                                                 Los Angeles, California 90024

                                                 *Attorneys for Defendants/Counterclaimant*

**PROOF OF SERVICE**

I hereby certify that on the 18th day of May, 2026, I served a true and correct copy of the foregoing **DEFENDANTS' MOTION TO DISMISS SUN'S SECOND AMENDED AND SUPPLEMENTAL COMPLAINT [ECF NO. 1162]** via the United States District Court's CM/ECF electronic filing system to all parties on the e-service list.

/s/ Melisa Pytlik
Melisa Pytlik
Employee of Claggett & Sykes Law Firm

21