E. LEIF REID, Nevada Bar No. 5750
KRISTEN L. MARTINI, Nevada Bar No. 11272
NICOLE SCOTT, Nevada Bar No. 13757
CLARK HILL PLC
1700 S. Pavilion Center Dr., Suite 500
Las Vegas, Nevada 89135
Tel: 702.862.8300
Fax: 702.778.9709
Email: lreid@clarkhill.com
        kmartini@clarkhill.com
        nsscott@clarkhill.com

JAMES J. PISANELLI, Nevada Bar No. 4027
TODD L. BICE, Nevada Bar No. 4534
PISANELLI BICE PLLC
400 South 7th Street, Suite 300
Las Vegas, Nevada 89101
Tel: 702.214.2100
Fax: 702.214.2101
Email: JJP@pisanellibice.com
        TLB@pisanellibice.com

JORDAN T. SMITH, Nevada Bar No. 12097
BROWNSTEIN HYATT FARBER
SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106
Tel: 702.464.7022
Fax: 702.382.8135
Email: jtsmith@bhfs.com

JOSEPH M. ALIOTO, *PRO HAC VICE*
ALIOTO LAW FIRM
One Sansome Street, 35th Floor
San Francisco, California 94104
Tel: 415.434.8900
Fax: 415.434.9200
Email: jmalioto@aliotolaw.com

*Attorneys for Plaintiff/Counterdefendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| LAS VEGAS SUN, INC., a Nevada corporation, <br><br> Plaintiffs, <br><br> v. <br><br> SHELDON ADELSON (Estate Of), an individual, and as the alter ego of News+Media Capital Group LLC, Las Vegas Review-Journal, Inc., and Interface Operations LLC dba Adfam; PATRICK DUMONT, an individual, and as alter ego of Las Vegas Review-Journal, Inc., News+Media Capital Group, LLC, and Interface Operations LLC dba Adfam; NEWS+MEDIA CAPITAL GROUP LLC,, a Delaware limited liability company; LAS VEGAS REVIEW-JOURNAL, INC., a Delaware corporation; INTERFACE OPERATIONS LLC dba ADFAM, a Delaware limited liability company and as the alter ego of Las Vegas Review-Journal, Inc., and News+Media Capital Gorup, LLC; and DOES, I-X, inclusive, <br><br> Defendants. | Case No.: 2:19-CV-01667-ART-MDC <br><br><br> **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SUN'S SECOND AMENDED AND SUPPLEMENTAL COMPAINT (ECF NO. 1162) [ECF NO. 1193]** |

LAS VEGAS REVIEW-JOURNAL, a Delaware corporation,

Counterclaimant,

v.

LAS VEGAS SUN, INC., a Nevada corporation; BRIAN GREENSPUN, an individual and as alter ego of Las Vegas Sun, Inc.; GREENSPUN MEDIA GROUP, LLC, a Nevada limited liability company, as the alter ego of Las Vegas Sun, Inc.,

Counterclaim Defendants.

## TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ...........................................................................1

I.      INTRODUCTION ..............................................................................................................1

II.     THIS COURT ALREADY FOUND THAT THE SAC PLEAD COGNIZABLE
        CLAIMS FOR RELIEF ......................................................................................................2

III.    THE RJ'S INTENTIONAL CONFLATION OF ANTITRUST AND CONTRACT
        LAW PROVIDES NO BASIS FOR DISMISSAL .............................................................3

        A.      The Ninth Circuit's Mandate is No Bar to the Sun's Claims for Relief ....................3

        B.      The SAC does Not Require "Enforcement" of the 2005 JOA ................................4

                1.      The RJ Misconstrues *Cung Le v. Zuffa, LLC*, 108 F. Supp. 3d 768
                        (N.D. Cal. 2015) ...................................................................................................4

                2.      The Sun Has Properly Plead the RJ's Anticompetitive Conduct
                        and Effects Therefrom, Which Are the Focus of Antitrust Laws ................6

                        i.      *The RJ's Accounting Abuses Reduced Competition and were Not Competition
                                on the Merits* .................................................................................................11

                        ii.     *The RJ's Failure to Maximize Profits Reduced Competition and was Not
                                Competition on the Merits* ............................................................................13

                        iii.    *The RJ's Decreasing Consumer Knowledge and Awareness of the Sun Reduced
                                Competition and was Not Competition on the Merits* .................................15

                        iv.     *The RJ's Termination Litigation Weakened and Has Eliminated Competition
                                and is Not Competition on the Merits* ..........................................................17

IV.     THE RJ CONTINUES TO MISREAD THE SUN'S CLAIM FOR DECLARTORY
        RELIEF, AND THE RJ's DEFENSES FAIL TO WARRANT DISMISSAL ...................21

V.      THE RJ MISUSES RULE 12(F) TO STRIKE RELEVANT AND MATERIAL
        ALLEGATIONS FROM THE SAC ...................................................................................23

VI.     CONCLUSION ..................................................................................................................24

CERTIFICATE OF SERVICE .......................................................................................................26

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.     **INTRODUCTION**

The RJ's Motion[1] is a reprise of the same futility arguments this Court already rejected when it granted leave to amend and held that the Sun's Second Amended Complaint ("SAC") "states claims that are cognizable on their face." ECF No. 1161 at 8. The RJ's disagreements go to the merits, not Rule 12(b)(6) plausibility. *Id.* at 7-8. Nothing in the RJ's Motion warrants reconsideration or a different result.

As this Court already concluded, the Ninth Circuit's Mandate is no bar to the Sun's claims. Both Ninth Circuit rulings addressed only the enforceability of the 2005 JOA and related injunctions, expressly disavowing any determination about reversion to the 1989 JOA and saying nothing about the RJ's exclusionary conduct, the Sun's antitrust injury, or consumer harm. And, the SAC does not seek "enforcement" of the 2005 JOA. Instead, it plausibly alleges a multi-year exclusionary scheme to eliminate the Sun (the RJ's only rival) by weaponizing the control the RJ voluntarily assumed under the Attorney General-approved 1989 JOA to undertake: accounting abuses and profit-suppression tactics to starve the Sun of newsroom resources; near-wholesale failure to deploy commercially reasonable, "best efforts" promotions to diminish consumer awareness of the Sun; and sham termination litigation to finish the job after weakening the Sun's ability to compete. All of this conduct is part of the RJ's coherent exclusionary plan that harmed competition and consumers. This is what antitrust laws seek to prevent. The SAC alleges plausible antitrust claims.

Neither the *Noerr-Pennington* ("*Noerr*") doctrine nor the RJ's other affirmative defenses warrant dismissal, either. This Court already rejected a categorical *Noerr* bar when denying the RJ's first motion to dismiss because the Sun's claims are not based entirely on petitioning activity, and, in any event, the SAC pleads specific sham-litigation conduct, satisfying the Ninth Circuit's requirement to allege the "specific activities" that bring the petitioning within the sham exception.

The RJ's misreading of the Sun's Declaratory Relief claims is not only belied by the SAC's allegations themselves, but the RJ's argument contravenes controlling authority. The RJ's request that

---

[1]   The RJ's Motion to Dismiss the Sun's Second Amended Complaint (ECF No. 1193) is referred to herein as "Motion."

1

this Court strike the SAC's references to the 2005 JOA under Rule 12(f) is similarly unfounded and misapplies the rule.

For these reasons, further discussed herein, the RJ's Motion must be denied.

## II.   THIS COURT ALREADY FOUND THAT THE SAC PLEAD COGNIZABLE CLAIMS FOR RELIEF

The RJ's Motion should be denied because the futility standard this Court employed when considering the Sun's motion for leave to amend is the same standard employed under Rule 12(b)(6). *See Thompson v. Los Robles Reg'l Med. Ctr.*, 2021 WL 5002214, at \*1 (9th Cir. Oct. 28, 2021). When the Sun sought leave to amend, the RJ opposed the Sun's request, arguing that the proposed SAC was futile on the same bases it argues now. *Compare* ECF No. 1122 *with* Mot.; *see also* ECF No. 1161 at 7-8 (summarizing the RJ's arguments as "the changes proposed are a mere change in terminology, that the Sun's complaint is still premised on the RJ's obligation to comply with the 2005 JOA, and that its claims are foreclosed by the Ninth Circuit's ruling"). This Court considered the RJ's arguments (including the RJ's argued defenses of novation and abandonment), analyzed the SAC, and concluded that the SAC was not futile, holding, "The proposed amended complaint states claims that are cognizable on their face." ECF No. 1161 at 8, 7. This Court's findings and conclusions remain applicable. Like its opposition to the Sun's motion to amend, the RJ's arguments here "do[ ] not accuse the Sun of failure to state a claim; rather, the RJ's allegation is that the Sun's claims must fail … [because the] allegedly anticompetitive acts are not actually anticompetitive in nature," which "is an argument on the merits." ECF No. 1161 at 7-8. The RJ's Motion should be denied.

Even if this Court were to consider the RJ's arguments, yet again, Federal Rule of Civil Procedure 8(a)(2) applies with equal force to antitrust actions. *Bell Atl. v. Twombly*, 550 U.S. 544 (2007). Accordingly, the SAC is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the "defendant fair notice of what the … claim is and the grounds upon which it rests." *Id.* (quotations omitted). The standard requires only "enough facts to state a claim to relief that is plausible on its face"—the standard is not "probability." *Id.* at 570, 556. "A claim has facial plausibility when the plaintiff pleads factual content [when taken as true] that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

556 U.S. 662, 678, 666 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011), *cert denied*, 566 U.S. 982 (2012). It further bears reminding that the plaintiff is not required "to plead around affirmative defenses," which, "ordinarily … may not be raised on a motion to dismiss." *U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*, 931 F.3d 966, 972 (9th Cir. 2019) (quotations omitted). Only when the complaint itself "establishes the defense" is consideration for dismissal appropriate. *Id.* Here, the RJ misapplies this Rule 12(b)(6) standard and continues to improperly challenge the merits of the Sun's claims rather than the plausibility of the SAC.

## III.    THE RJ'S INTENTIONAL CONFLATION OF ANTITRUST AND CONTRACT LAW PROVIDES NO BASIS FOR DISMISSAL

For the umpteenth time, the RJ argues that its Anticompetitive Conduct undertaken during the timeframe in which the RJ believed the 2005 JOA was enforceable cannot support antitrust liability because doing so would be "enforcing" the 2005 JOA in violation of the Mandate. Mot. 10-11. In other words, in the RJ's view, where the 2005 JOA's unenforceability could not afford the RJ antitrust immunity, it provides the RJ antitrust absolution. But this Court already considered and rightly rejected this argument when granting the Sun leave to amend. ECF No. 1161 at 7-8 (considering the RJ's argument "that [the Sun's] claims are foreclosed by the Ninth Circuit's ruling," and expressly rejecting it); *see also* ECF No. 1122 at 4-5, 8-9, 12-14. But, as discussed below, even if this Court were to (re)examine the RJ's meritless arguments anew, the RJ's arguments are just as meritless now as they were then.

### A.    <u>The Ninth Circuit's Mandate is No Bar to the Sun's Claims for Relief</u>

Any reading of the Ninth Circuit's Mandate, which is strictly limited to the validity of the 2005 JOA, reveals that it has no bearing on the Sun's amended antitrust claims. Both of the Ninth Circuit's rulings demonstrate that its holdings are expressly limited to the enforceability of the contract, the 2005 JOA. Neither ruling addresses—in spirit or otherwise—the merits of the Sun's claims, including whether the RJ engaged in exclusionary conduct, whether the Sun suffered antitrust injury, or whether competition and consumers were harmed. *See generally Las Vegas Sun, Inc. v. Adelson*, 147 F.4th 1103 (9th

3

Cir. 2025) & ECF No. 1106. The sole issues determined by the Ninth Circuit were: (1) whether the 2005 JOA was unenforceable due to lack of Attorney General approval, and whether this Court erred in refusing to dissolve the stipulated injunction ordering the RJ to continue to perform under it (*Adelson*, 147 F.4th at 1121-22); and (2) whether this Court's entry of the March injunction—requiring the RJ to continue to perform under the 2005 JOA by ordering it to print and distribute the Sun according to the 2005 JOA's status quo—went against the Ninth Circuit's directive that the Court dissolve the earlier stipulated injunction. ECF No. 1106. The Ninth Circuit expressly disavowed making any determination as to "reversion to the 1989 JOA." *Id.* at 7.

Contrary to the RJ's arguments, the Sun is not seeking continued performance of the 2005 JOA. The Sun is seeking adjudication of the continuing validity of the 1989 JOA and the parties' rights and obligations thereunder, and for the RJ to be held liable under antitrust laws for its exclusionary conduct undertaken since it purchased the Review-Journal in 2015. None of these issues were addressed by the Ninth Circuit.

### B.      The SAC does Not Require "Enforcement" of the 2005 JOA

Faced with the above undisputable facts, the RJ attempts to conflate antitrust law with contract law to argue that the SAC seeks unlawful "enforcement" of the 2005 JOA. Mot. 9-10. The RJ's attempt to prop-up its argument on an inapposite District of California case offers no recourse to its fundamentally flawed position. Not only has the United States Supreme Court and the Ninth Circuit long rejected the RJ's position, but the RJ's Anticompetitive Conduct was undertaken in exploitation of its power and control over the Sun that was borne from the 1989 JOA.

#### 1.      The RJ Misconstrues *Cung Le v. Zuffa, LLC*, 108 F. Supp. 3d 768 (N.D. Cal. 2015)

The legal premise of the RJ's argument that the SAC seeks "enforcement" of the 2005 JOA is predicated on the case, *Cung Le v. Zuffa, LLC*, 108 F. Supp. 3d 768 (N.D. Cal. 2015). Mot. 9-10. Citing *Cung Le*, the RJ argues, "Whether an antitrust action 'enforces' a contract turns on the 'substance of [the] claims, stripped of their labels'" and, therefore, antirust actions premised on contracts require the court "to interpret or enforce" those contracts. *Id.* Nothing in *Cung Le* can be read to convert the Sun's antitrust claims into an action to "enforce" the 2005 JOA.

4

The dispute in *Cung Le* was over the scope of a valid forum selection clause designating an exclusive jurisdiction for any action brought "to interpret or enforce any provision" of the parties' contract. 108 F. Supp. 3d 768, 775. The plaintiffs' antitrust action was brought "to interpret" those contracts because the plaintiffs challenged the very terms in the "exclusive dealing contracts" as being "restrictive" or "anticompetitive." *Id.* at 776.

These facts render *Cung Le* inapposite. The Sun has never alleged that any provision in the 2005 JOA is restrictive or anticompetitive (the Sun has alleged that the RJ's *conduct* is anticompetitive). Furthermore, no forum selection clause is in dispute here, which matters because *Cung Le*'s statements cited by the RJ are specific to the policy and purpose of forum selection clauses. As the *Cung Le* court explained, forum selection clauses have a "strong judicial policy favoring their enforcement," and the resolution of the dispute that falls within the scope of such a clause necessitates enforcement of it.[2] *Id.* at 774. Hence, the RJ's quoted statements from *Cung Le* were made under the well-established policy favoring the enforcement of valid forum selection clauses, for "adoption of such a restrictive and mechanical interpretation of the clause [*i.e.*, limiting it solely to breach of contract claims] is inconsistent with the strong judicial preference to enforce a contractual venue." *Id.* at 777. The court's statements cannot be extended to support the RJ's argument that the Sun's antitrust claims seek "enforcement" of the 2005 JOA and therefore relieve the RJ of all liability for its Anticompetitive Conduct. The RJ's further extension of *Cung Le* to argue that the Sun's allegations regarding the RJ's "course of dealing," "voluntary practices," and operating "framework," etc., are "new labels" like the Court disregarded in *Cung Le* (Mot. 10) is wrong not only for the reasons stated above, but also because the *Cung Le* court did not convert the plaintiffs' antitrust claims into contract claims as the RJ seeks to do here. The legal foundation of the RJ's argument that the Sun seeks to enforce the 2005 JOA is flawed and unsupported.

---

[2]    The contract interpretation principles the *Cung Lee* court employed to ascertain whether the plaintiffs' antitrust claims fell within the scope of the binding forum selection clause was not unlike the non-antitrust cases the *Cung Le* court cited, which undertook the same analysis to determine whether any claim is subject to a forum selection clause. *Id.* at 775-76 (citing *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1361 (2d Cir. 1993), as "holding, as to whether plaintiffs' claims for securities violations were subject to a contractual forum selection clause, that only 'if the substance of their claims, stripped of their labels, does not fall within the scope of the clauses, the clauses cannot apply," & *Graham Tech. Solutions, Inc. v. Thinking Pics., Inc.*, 949 F. Supp. 1427, 1433 (N.D. Cal. 1997), "[T]he better view … is the one which upholds the forum selection clause where the claims alleged in the complaint relate to the interpretation of the contract")).

**2.    The Sun Has Properly Plead the RJ's Anticompetitive Conduct and Effects Therefrom, Which Are the Focus of Antitrust Laws**

It is inconsequential to the viability of the Sun's claims that the RJ's Anticompetitive Conduct was undertaken while the parties were operating under the recently declared unenforceable 2005 JOA, because: (1) the RJ's conduct has weakened and now eliminated the Sun's ability and incentive to compete with the RJ, harming the Sun, competition, and consumers; and (2) the RJ's conduct is also anticompetitive under the governing 1989 JOA.

As a preliminary recap, the Sun's antitrust claims require a showing that the RJ undertook anticompetitive conduct that "harm[s] the competitive *process* and thereby harm[s] consumers." *Fed. Trade Comm'n v. Qualcomm Inc.*, 969 F.3d 974, 990 (9th Cir. 2020) (alteration in original). This is <u>the</u> focus and purpose of antitrust laws: "the promotion of consumer welfare," *PLS.com, LLC v. Nat'l Ass'n of Realtors*, 32 F.4th 824, 832 (9th Cir. 2022) (quotations omitted), "against conduct which unfairly tends to destroy competition itself…. not out of solicitude for private concerns but out of concern for the public interest." *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 458 (1993). This principle is why the United States Supreme Court and the Ninth Circuit established the long line of authority that antitrust defendants do not escape liability merely because the challenged conduct occurred within a relationship that itself might have antitrust problems. *See, e.g.*, *Perma Life Mufflers, Inc. v. Int'l Parts Corp.*, 392 U.S. 134, 138-39 (1968), *overruled on other grounds by Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752 (1984); *PharmacyChecker.com LLC v. LegitScript LLC*, 137 F.4th 1031, 1041 (9th Cir.), *cert. denied*, 146 S. Ct. 209 (2025) (collecting cases). Antitrust laws do not stop protecting competition or consumers in such instances. And the NPA expressly excludes conduct that would otherwise be unlawful under any antitrust law if engaged in by a single entity from antitrust immunity. 15 U.S.C. § 1803(c); SAC ¶ 24.

"The plaintiff need not show that the conceded monopolist's acts were of a kind that would be unlawful for an ordinary enterprise[,] … the test is whether the defendant's acts, otherwise lawful, were [u]nreasonably restrictive of competition." *Cal. Comput. Prods., Inc. v. Int'l Bus. Machs. Corp.*, 613 F.2d 727, 735-36 (9th Cir. 1979). Even when firms undertake conduct that could generally be considered "legal" in other contexts, that conduct is anticompetitive when it is not competition on the merits, and is undertaken by firms with monopoly power or a dangerous probability of achieving

6

monopoly power to reduce competition, exclude rivals, or harm consumers.[3] As a parallel proposition, "[i]f the injury flows from aspects of the defendant's conduct *that are beneficial or neutral to competition*, there is no antitrust injury, even if the defendant's conduct is illegal *per se.*" *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1433 (9th Cir. 1995) (first emphasis added). The benefit of consumer welfare is the premise of Congress's enactment of antitrust laws and deputization of private citizens as antitrust enforcers representing the public interest. *E.g.*, *Haw. v. Standard Oil Co. of Cal.*, 405 U.S. 251, 262 (1972); *PharmacyChecker.com*, 137 F.4th at 1041.

These principles dictate that the RJ's conduct and their effects on competition are the focus of the inquiry when examining the plausibility of the Sun's antitrust claims.[4] In looking to the RJ's actual behavior and its effects on competition, the unique history surrounding this dispute cannot be erased.

Before turning to the Anticompetitive Conduct alleged, the Sun disposes of the RJ's arguments made *in passim* that their joint operation is illegal under *Citizen Publishing Co. v. United States*, 394 U.S. 131 (1969), and the Sun is a mere stranger competitor to which the RJ owes no duty to deal. Mot. 9, 14-15, 16-17, 18.

The RJ's repeated reliance on *Citizen Publishing* is unpersuasive, where the Attorney General approved the parties' combination in 1990, and the 1989 JOA established the RJ's substantive duties, which continued post-2005 (and which this Court already concluded were continuing, unchanged "material elements" ECF No. 970 at 18).

As the SAC alleges, the parties remain subject to an NPA-authorized JOA approved by the Attorney General, under which the RJ voluntarily agreed it would be responsible for and in control of all business aspects of the joint operation, acting on behalf of both Newspapers. SAC ¶ 30. By virtue of the 1989 JOA, the Sun became entirely dependent on the RJ for its non-editorial and -reportorial

---

[3]  *E.g.*, *Qualcomm*, 969 F.3d at 990, *supra*; *Dreamstime.com, LLC v. Google LLC*, 54 F.4th 1130, 1137 (9th Cir. 2022) ("Exclusionary conduct" refers to acts that "tend[ ] to impair the opportunities of rivals" and "do[ ] not further competition on the merits or do[ ] so in an unnecessarily restrictive way.") (alterations in original and quotations omitted); *Spectrum Sports*, 506 U.S. at 458-59 (holding that conduct is unlawful "when it actually monopolizes or dangerously threatens to do so").

[4]  Importantly, in seven years of litigation, the RJ has never offered any argument—let alone evidence—that its Anticompetitive Conduct has fostered competition. *See* ECF No. 970 at 27-28 (stating, "No party has argued that the Sun's claimed injury was the result of increased competition"). The RJ has indisputably eliminated competition entirely.

business functions, with the Sun having been required to relinquish all of its printing and distribution infrastructure to operate independently. *Id.* & ¶¶ 36, 53, 61, 99, 202. The Sun paid the RJ more than $25 million for the promise that the RJ would print and distribute the Sun, and manage the joint operation until 2040. SAC ¶ 38. As a result, the RJ expressly agreed to assume control and be responsible for: printing and producing the Newspapers; sales and distribution; purchasing materials; soliciting, selling, and collecting on the Newspapers' advertising and circulation revenues; promoting the Newspapers, setting rates; paying, recording, and maintaining all expenses and revenues of the joint operation; and accounting to the Sun and distributing the joint operation's pooled revenues. SAC ¶ 30. This voluntary course of dealing was profitable. SAC ¶¶ 203, 52, 101. And each and every one of these material obligations the RJ voluntarily undertook in 1989 continued after 2005.[5] SAC ¶ 61.

The NPA expressly provides for the type of "collusion" antitrust laws generally prohibit, including agreements with respect to operations, rate-setting, and pooling and sharing in revenue, so long as "there is no merger, combination, or amalgamation of editorial or reportorial staffs, and that editorial policies be independently determined." *E.g.*, 15 U.S.C. § 1802(2). Therefore, where the RJ asserts that "[u]nder antitrust laws, competitors are supposed to *compete with each other*" (Mot. 6), the Sun and the RJ have competed with each other as contemplated by NPA and the Attorney General since 1989, *i.e.*, through editorial and reportorial competition. *E.g.*, SAC ¶¶ 227, 229, 26-27, 46-48, 50, 59; 15 U.S.C. §§ 1801, 1802(2).

Relatedly, because of the unique structure of newspaper JOAs, the applicable NPA and the Attorney General's approval of the parties' combination in 1989, the RJ's repeated argument that it owed no duty to the Sun is baseless and further evidence of its Anticompetitive Conduct. *See* Mot. 9, 14-15, 16-17, 18. In substantially weaker relationships between competitors, unregulated by a statute like the NPA and not Attorney-General vetted and approved, the United States established that "the right to refuse to deal with other firms does not mean that the right is unqualified." *See Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 601, 608 (1985) (concluding the defendant had a duty

---

[5]    While the RJ argues that the 1989 JOA could not have "operated in parallel with the 2005 JOA," the RJ inherently concedes that they "cover the same subject matter," and the RJ fails to reasonably dispute that the "material elements" of the 1989 JOA remained unchanged post-2005. *Compare* Mot. 11 n.1 *with infra* & ECF No. 970 at 18.

to deal after years of voluntary cooperation where the jury could have concluded the defendant "elected to forego the[ ] short-run benefits because it was more interested in reducing competition … over the long run by harming its smaller competitor"); *see also Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1075 (9th Cir. 2013) (explaining that if "the monopolist's refusal to deal was part of a larger anticompetitive enterprise, such as [ ] seeking to drive a rival from the market," such can constitute anticompetitive conduct); *Verizon Commc'ns v. Trinko, LLP*, 540 U.S. 398, 411, 408 (2004) (providing that "[a]ntitrust analysis must always be attuned to the particular structure and circumstances of the industry at issue," and recognizing,"[u]nder certain circumstances, a refusal to cooperate with rivals can constitute anticompetitive conduct and violate § 2"). This Court denied the RJ's first motion to dismiss based on the RJ's same 'no duty-to-deal' argument. ECF No. 243 at 13-14.

The RJ's citations to cases for the general proposition that competitors do not have a duty to deal with one another contravene the Sun's well-plead allegations, and are inapplicable for the very reason that they do not involve JOA newspapers. *E.g.*, Mot. 6, 9, 14, 18 (citing *Trinko, LLP*, 540 U.S. at 407; *Qualcomm*, 969 F.3d at 995; *Foremost Intern. Tours, Inc. v. Qantas Airways Ltd.*, 478 F. Supp. 589, 598 (D. Haw. 1979)).[6]

In sum and substance, the RJ cannot ignore the Sun's allegations that but-for the RJ's complete and exclusive control over all business aspects of the joint operation, which the Sun granted to the RJ with the Attorney General's approval of the 1989 JOA, the RJ would not have been in the position to undertake its Anticompetitive Conduct. The fact that after availing itself for decades of the benefits and privileges of its dominance, the RJ wielded its power to undertake the Anticompetitive Conduct to reduce competition and harm the Sun and consumers, and happened to do so while believing the

---

[6]    These cases are also distinguishable at a more granular level. The *Trinko* court found significant that the services the defendant allegedly withheld were "not otherwise marketed or available to the public," unlike those at issue in *Aspen Skiing* where the defendant was already in the business of providing a bundle of services to skiers like the RJ's services of printing and distributing newspapers to subscribers. 540 U.S. at 409-10. Critical to the *Qualcomm* court was that the defendant was never in the practice of dealing with its rivals and its conduct was not directed to a specific rival, unlike the parties' long-term course of dealing and directed conduct here. 969 F.3d at 994, 995. Finally, in *Foremost*, the challenged conduct occurred after the express termination of the parties' contract upon which their relationship was based (unlike here), and the court found significant that not only did the defendant treat the plaintiff equal to its other competitors but none of the conduct "constitute[d] an effort to achieve or exercise monopoly power." 478 F. Supp. at 597-98.

2005 JOA was the governing agreement and utilizing the mechanics thereunder, changes nothing. The RJ's substantive duties and powers were not borne from the 2005 JOA—they are rooted in the 1989 JOA, the master agreement.[7,8] *E.g.*, SAC ¶¶ 30, 61-62.

Where the RJ challenges the SAC's phrases like, "course of dealing," and "voluntary practices," nothing negates the competition-reducing conduct the RJ actually undertook. *See* Mot. 10. Besides incorrectly assuming that the 2005 JOA was the only instrument between the parties, the RJ's argument ignores that to ascertain the effects the RJ's actual behavior had on competition, one must examine what would have happened absent the RJ's conduct. Therefore, the "framework" under which the RJ was actually operating to determine whether its conduct was competition-reducing—rather than competition-fostering—is the proper antitrust analysis.

Turning to the details of the RJ's conduct alleged and its effects on competition below, the SAC sets forth plausible antitrust claims when alleging that the RJ undertook its Anticompetitive Conduct by exerting its power and control over the joint operation and the Sun (borne from the 1989 JOA) to weaken the Sun's ability and incentives to compete with the RJ, reduce the Sun's visibility and consumers' knowledge, and threaten and execute unilateral termination of the joint operation through pretextual sham litigation. *E.g.*, SAC ¶¶ 113-238.

/ / /

/ / /

/ / /

---

[7]    The RJ's citation to the Sun's assertion that the SAC continues to plead the same antitrust claims, relevant market, anticompetitive conduct, and antitrust injury as "evidence" that the SAC seeks enforcement of the 2005 JOA (Mot. 11) actually establishes the contrary. The continuity in the Sun's plead conduct, market, and injury evidences the continuity of the underlying material duties the RJ's conduct violates. *See further infra.*

[8]    The RJ offers various arguments disputing the Sun's factual allegations, sounding in the RJ's affirmative defenses of abandonment and novation, and otherwise challenging the merits of the Sun's claims—all of which are not proper subjects in a Rule 12 motion. *See, e.g.*, Mot. 11 (arguing that its current owners are not bound by any obligation under the 1989 JOA, contrary to the Sun's well-plead allegations that the RJ is the successor-in-interest to the owners of the Review-Journal subject to the 1989 JOA (SAC ¶¶ 40, 113, 206) and contrary to the law of the case (ECF No. 970 at 35)); *see also* Mot. 11 & n.1, 23 (arguing affirmative defenses that the 1989 JOA has been abandoned, terminated as a substitution/novation contrary to the Sun's factual allegations (*e.g.*, SAC ¶¶ 90, 62, 205, 208) and the law of the case (ECF No. 970 at 18-19)).

i. *The RJ's Accounting Abuses Reduced Competition and were Not Competition on the Merits*

The RJ argues that the Sun's alleged accounting abuses are mere breaches of the 2005 JOA, and, therefore, holding the RJ liable for (a) artificially depreciating the joint operation's profits; and (b) inflating the joint operation's expenses, to reduce and eliminate the Sun's profit payments to squeeze the Sun from the market, would be an improper "enforcement" the 2005 JOA. Mot. 12-14.[9] But, as the Sun alleged, and the statutory scheme makes clear, the NPA does not determine how JOA newspapers are to account for their joint operation's revenues and expenses. SAC ¶¶ 153-56; 15 U.S.C. §§ 1801-04. The only requirement is that the parties account for the joint operation expenses and revenues sufficient for the weaker newspaper to have enough resources in furtherance of the NPA's policy and purpose, *i.e.*, "to enable [the Sun] to continue to provide an independent editorial voice in the Las Vegas community," "preserv[ing] the Sun in operation …." SAC ¶¶ 153-56; 15 U.S.C. § 1801. Enabling the Sun to compete with the RJ editorially and reportorially is the purpose of the NPA, in furtherance of preserving competition as contemplated by antitrust laws for the benefit of consumers and the public interest. 18 U.S.C. § 1801.

The RJ's duty to refrain from accounting abuses was not limited to the 2005 JOA, either. Its obligations are rooted in the 1989 JOA and the purpose of the NPA, as approved by the Attorney General. *E.g.*, SAC ¶¶ 30, 33-36, 61-62, 153-63. In the 1989 JOA, the RJ entered into a voluntarily course of dealing with the Sun, expressly agreeing that "publication of the Sun c[ould] be carried on profitably, and its continued editorial existence and independence thereby assured, if its production, distribution and advertising functions and related non-news and non-editorial activities are conducted and performed by the Review-Journal," where the RJ would act on behalf of the Sun. SAC ¶¶ 25-28. Accordingly, the RJ's voluntary obligations extended to the joint operation accounting. It expressly agreed to be charged with: soliciting, selling, and collecting on the Newspapers' advertising and circulation; paying, recording, and maintaining all expenses and revenues of the joint operation;

---

9   The RJ's aside that the Sun's alleged accounting abuses are impermissibly conclusory are refuted by the SAC. *Compare* Mot. 12 *with* SAC ¶¶ 153-63 (satisfying *Twombly*'s requirement that the complaint contain only "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the "defendant fair notice of what the … claim is and the grounds upon which it rests," 550 U.S. at 554-55, 570).

11

accounting to the Sun after the close of each fiscal year, and opening its books and records for inspection by the Sun; and distributing the Sun's share of the joint operation's profits, derived from all advertising and circulation revenues of the Newspapers and sales incidental to the publication of the Newspapers or involving the Review-Journal's facilities or personnel, under a 90/10 split. SAC ¶¶ 30, 33. Inherent is these provisions is the RJ's obligations to act faithfully on behalf, and for the benefit, of the Sun in furtherance of the overarching purpose of the NPA to preserve the Sun—which obligations were continuous after the 2005 JOA. *Id.* & ¶¶ 61-62. The voided 2005 JOA did not change the RJ's obligations to refrain from accounting abuses to drive the joint operation into a loss to eliminate the Sun.

Consequently, the RJ's conduct was unlawful no matter the unenforceability of the 2005 JOA where: (1) the RJ was in complete control over the joint operation's accounting by virtue of the 1989 JOA and thereafter; (2) the RJ manipulated the accounting to increase expenses and divert joint operation revenue to the RJ's outside entity to reduce and eliminate the Sun's profit payments, and then refuse to open the joint operation's books to the Sun; and (3) the RJ's accounting abuses weakened the Sun's ability to compete, harming consumers. <u>Any</u> accounting abuse employed by the RJ— regardless of the governing *contract* between the parties—to overstate the costs and understate the revenues of the joint operation, thereby reducing the Sun's funding for editorial, reportorial, and promotional activities, and creating uncertainty and weakening the Sun's ability to compete, is anticompetitive.[10] SAC ¶¶ 163, 233-34. None of the RJ's *non-JOA* cited cases (once again) allow for a contrary conclusion—the RJ continues to wrongly treat the joint operation's finances as the RJ's own finances. *See* Mot. 14-15;[11] SAC ¶ 161.

---

[10]    The RJ's focus on the mechanical details set forth in the 2005 JOA regarding the profit payment formula and the editorial cost expenses is inconsequential. Mot 13-14. These specifications did not change the RJ's duty to undertake honest accounting practices to properly account for the joint operation's revenues and expenses (not to defund the Sun) and faithfully divide the pooled revenue (without manipulation to systematically zero out the Sun's share).

[11]    Citing *Qualcomm*, 969 F.3d at 998-99 (involving a chip licensor's alleged "anticompetitive surcharge" based on its patent license royalty rates, where the court refused to adopt antitrust liability under the surcharge theory when the licensor could not prove the "fair value" of its portfolios corresponded to the prices the market was willing to pay); *Foremost*, 478 F. Supp. at 599 (involving a challenge to an airline defendant's U.S.-to-Australian dollars exchange rate in the absence of a joint operation agreement or any other contractual relationship with the plaintiff, and where the court determined the exchange rate used was "proper" under a "legitimate economy of integration" between the countries);

12

*ii.*    *The RJ's Failure to Maximize Profits Reduced Competition and was Not Competition on the Merits*

When arguing its failure to maximize the joint operation's profits is not cognizable as anticompetitive conduct because it had no duty to maximize profits, the RJ argues the "profit-sharing formula the Sun claims was 'manipulated' existed only under the 2005 JOA," and the RJ was under no obligation to share in profits with the Sun as its competitor. Mot. 17-19. These arguments are meritless for the reasons stated above.[12] *See supra* §§ III(B) & (B)(2)(i). In many ways, the RJ's arguments admit the antitrust violation.

Next, the RJ contends that the 1989 JOA does not require the RJ to maximize profits and therefore the Sun seeks enforcement of the 2005 JOA. Mot. 17, 19. However, the source of the RJ's obligation to cooperate in the joint operation for the mutual economic benefit of both parties, including maximizing the joint operation's profits, is not only inherent in the RJ's position as dominant JOA-partner, but also in the terms of the 1989 JOA and the NPA. As the Sun alleged, "Both newspaper owners in a JOA traditionally have strong economic interests in the success of the joint operation and the combined financial results." SAC ¶ 127. This accords with "[the] basic economic assumption [ ] that a firm's aim is to maximize profit." *Gibson v. Cendyn Grp., LLC*, 148 F.4th 1069, 1084 n.9 (9th Cir. 2025).

And, per the 1989 JOA, the RJ voluntarily agreed that "publication of the Sun c[ould] be carried on profitably, and its continued editorial existence and independence thereby assured, if its production, distribution and advertising functions and related non-news and non-editorial activities are conducted and performed by the Review-Journal," where the RJ would act on behalf of the Sun. SAC ¶ 28. The RJ likewise agreed "'to take all reasonable measures to promote the successful operation of the Newspapers for the benefit of both parties.'" SAC ¶ 129 (quoting 1989 JOA). Therefore, when the RJ

*Berlyn, Inc. v. Gazette Newspapers, Inc.*, 233 F. Supp. 2d 718, 734-35 (D. Md. 2002) (involving challenges by plaintiff newspaper publishers to an independent—*non-JOA*— newspaper's pricing policy, but plaintiffs failed to identify any pricing policy that was suspicious).

[12]    The RJ's two *non-JOA* cases cited, like the others (*supra* n.11), are inapplicable. Mot. 18 (citing *Pac. Exp., Inc. v. United Airlines, Inc.*, 959 F.2d 814, 818 (9th Cir. 1992) (involving two unrelated airline competitors where the injury sustained by the plaintiff was caused by an increase in competition, not a reduction in competition) & *Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1066, 1069, 1075 (where the defendant refused to allow its rival—an independently operated firm to whom it had no duties—access to the defendant's intellectual property)).

13

voluntarily committed to the Sun (and the DOJ) to control and manage the joint operation in furtherance of the NPA and preservation of the Sun's competing newspaper voice in 1989, it agreed to manage the joint operation faithfully towards the profitability of the joint operation on the Sun's behalf to preserve the Sun. SAC ¶¶ 25-52, 61-62, 127-30.

To accomplish these results the RJ voluntarily and expressly agreed to assume control and be responsible for: the Newspapers' sales and distribution; soliciting, selling, and collecting on the Newspapers' advertising and circulation; promoting and circulating the Newspapers, using the RJ's "best efforts"; and distributing the Sun's share of the joint operation's profits, derived from all advertising and circulation revenues of the Newspapers and sales incidental to the publication of the Newspapers or involving the Review-Journal's facilities or personnel. SAC ¶ 30. "[M]aximiz[ing] the maintenance and enhancement of the circulation of the newspapers to the extent economically feasible," as set forth in Section 5.1.4 of the 1989 JOA, is always the goal of any newspaper joint operation, where the newspapers' revenue is derived from circulation and advertising efforts. And these duties continued after 2005. SAC ¶¶ 61-62. In other words, the RJ's commitment included using its "best efforts" or, at minimum "commercially reasonable efforts," to maximize the Newspapers' circulation, and agreeing to take all reasonable measures to promote the successful operation of the Newspapers for the benefit of both parties, establishes its duty to maximize profits of the joint operation. SAC ¶¶ 129-31.

The SAC specifically alleges that the RJ "fail[ed] to maximize the joint operation's profits to drive the joint operation into a loss and eliminate the Sun's profits," including by failing to undertake commercially reasonable efforts to reduce the costs of (and refrain from charging improper expenses to) the joint operation, and to raise the revenues of the joint operation, thereby failing to "promote the successful operation for the benefit of both Newspapers." SAC ¶¶ 126-31, 151. The Sun alleged that the RJ did so in an abuse of "its power to drive the joint operation into a loss, in turn, threatening the Sun's existence" as "a part of the RJ's anticompetitive scheme to eliminate the Sun." SAC ¶¶ 151-52. The RJ's conduct is anticompetitive where the RJ "weakened the Sun's ability to compete, ... created uncertainty that has raised the Sun's costs and weakened the Sun's investment incentives" harming

14

competition.[13] *E.g.*, SAC ¶ 234.

The RJ's arguments that "businesses are free to elect not to maximize profits for any number of legitimate reasons," and "a declining print market can require significant expenditures that reduce, rather than increase, profitability" (Mot. 18, 17 n.4) is an attempt to improperly contravene the Sun's well-plead allegations in violation of Rule 12(b)(6)'s standard.

                  *iii.*      <u>The RJ's Decreasing Consumer Knowledge and Awareness of the Sun Reduced Competition and was Not Competition on the Merits</u>

According to the RJ, the Sun's allegations that the RJ has exploited its control over the Sun's promotions to suppress promotion of the Sun to decrease consumer awareness and visibility of the Sun "trace back" to the 2005 JOA, thus seeking enforcement of the 2005 JOA. Mot. 15-16. Yet, again, the NPA does not specify how the dominant JOA newspaper is to promote the smaller paper. *See* 15 U.S.C. §§ 1801-04. A dominant JOA partner honoring the joint operation and the intent of the NPA shares in that interest, because ensuring that both Newspapers are healthy benefits the joint operation by expanding consumer awareness of the diverse editorial voices, bolstering joint operation revenue and therefore the weaker paper's newsroom funding. SAC ¶¶ 164-65. Where the plaintiff complains that the dominant JOA newspaper merely *intends* to stop promotions and solicitation of new readers for the weaker paper, which would necessarily impact the newsroom budget, thereby reducing competition, denial of a motion to dismiss is warranted. *U.S. v. Daily Gazette Co.*, 567 F. Supp. 2d 859, 863, 872 (S.D.W. Va. 2008).

As the SAC pleads, the Sun, like all weaker newspapers in a JOA, has a long-term interest in ensuring that its newspaper is preserved (the same interest as the NPA), and a key part of that preservation is how the Sun's separate brand and content are promoted. SAC ¶ 164. The Sun's ability to communicate with consumers about the Sun's Newspaper and brand preserves its viability as a

---

[13]    The RJ deliberately misconstrues the Sun's allegations regarding the RJ's replacement of Jason Taylor. *See* Mot. 18. The Sun has not alleged that the RJ's hiring practices are anticompetitive. *See generally* SAC. As the SAC makes clear, the RJ "unreasonably rejected revenue and expense initiatives set out by [Taylor]; instead, the RJ removed and replaced Taylor with a publisher who would accomplish the RJ's plan to drive the joint operation EBITDA into the ground and eliminate the Sun." SAC ¶ 132. As the Sun further alleged, "[t]hereafter, the RJ did not follow Taylor's commercially reasonable strategic plan [to maximize profits], <u>or any other commercially reasonable strategy</u>"; instead, it "unreasonably increased the joint operation's expenses." SAC ¶ 140 (emphasis added).

second newspaper and furthers its ability to compete with the Review-Journal. SAC ¶¶ 165, 229-30, 232-37. The RJ agreed with this purpose when it voluntarily entered into the joint operation in 1989. SAC ¶¶ 28, 30, 35. Since 1989, the RJ was in complete control over promoting and circulating the Sun, using the RJ's "best efforts." SAC ¶ 30; *see also* SAC ¶¶ 61-62. The RJ's assertion that the 1989 JOA provided that each newsroom would determine "its own promotional activities" to suggest that it was not responsible for promoting the Sun up to the joint operation's promotion budget allocated to the Sun is wrong. Mot. 15. The RJ was always responsible for, and in control of, the Sun's promotions. SAC ¶ 30 (citing 1989 JOA & § 5.1.3, which expressly requires the RJ to use "the same degree of diligence ... to promote and circulate the Sun"). While the RJ voluntarily agreed to more detailed mechanics in the 2005 JOA regarding how it would promote the Sun, including by promoting the Sun "in equal prominence," publishing the front page "Sun Box," and including the Sun in the electronic replica edition of the Newspapers, the RJ agreed that those provisions simply ensured the Sun's brand would remain as robust as the Review-Journal's, necessarily benefitting the joint operation revenues while furthering the editorial and reportorial competition between the Newspapers. The RJ's near-wholesale failure to promote the Sun in any fashion deviated not only from the purpose of the NPA and the 1989 JOA, but also from a long-standing course of dealing in which the RJ included the Sun in promotions of the Newspapers in equal prominence, published the Sun Box, and included the Sun in the electronic replica edition of the Newspapers. SAC ¶¶ 30, 61, 170, 177, 184. The voided 2005 JOA did not create or change the RJ's substantive duty to promote the Sun, in furtherance of the NPA.[14]

Consequently, the RJ's conduct was unlawful irrespective of the enforceability of the 2005 JOA where (1) the RJ was in complete control over the Sun's promotions since 1989; (2) the RJ exploited that control by virtually failing to promote the Sun in any form whatsoever, resulting in a failure to solicit new readers of the Sun; and (3) the RJ's actions undermined the Sun's ability to communicate with consumers about the nature and value of the Sun's newspaper and brand, therefore weakening its

[14]    The RJ concedes that even under the 1989 JOA, Section 4.4 required the front page to read, "Las Vegas REVIEW-JOURNAL and SUN," which were in equal prominence. While the Sun Box was a modification of the detailed appearance, the RJ's duty to display the Sun on the front page in a way that preserved its brand and value, raising consumer awareness of the Sun's presence remained unchanged.

16

brand and undermining the Sun's ability to compete. SAC ¶¶ 30, 61-62, 164-92, 227-30, 232-37. The RJ's continued citation to *non-JOA* cases for the proposition that the Sun is a stranger competitor to which it had no duty fail for the reasons set forth above. *Compare* Mot. 16-17 *with supra* & n.6.

> iv.    *The RJ's Termination Litigation Weakened and Has Eliminated Competition and is Not Competition on the Merits*

The RJ advances the following two arguments to challenge the Sun's allegations concerning the RJ's efforts to terminate the joint operation to eliminate the Sun from the market on made-up and legally deficient grounds: (1) the SAC's allegations establish the RJ's litigation conduct was not a sham, and (2) the Sun has not satisfied the pleading standard to exclude the RJ's conduct from *Noerr-Pennington* protection. Mot. 19-21. Neither of the RJ's arguments are meritorious.

This Court already rejected the RJ's *Noerr* defense in the RJ's first motion to dismiss because none of the Sun's claims are based entirely on petitioning activity; consequently, the defense does not preclude any of the Sun's claims in their entirety, prohibiting dismissal. ECF No. 243 at 14. The same holds true for the Sun's SAC and no reason exists to deviate from this Court's prior decision.

Looking at the issue anew establishes that denial of the RJ's Motion is required. "First Amendment rights are not immunized from regulation when they are used as an integral part of conduct which violates a valid statute." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 938 (9th Cir. 2006) (quotations omitted). The reason being: "At times this activity, disguised as petitioning, is simply an effort to interfere directly with a competitor. In that case, the 'sham' petitioning activity is not entitled to first amendment protection, because it is not an exercise of first amendment rights." *Clipper Exxpress v. Rocky Mt. Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1255 (9th Cir. 1982); *Rickards v. Canine Eye Registration Found.*, 783 F.2d 1329, 1334 (9th Cir. 1986) (finding sham litigation where "a baseless lawsuit [was] coupled with the evidence of a concerted refusal to deal which the trial court found sufficient, alone, to support liability").

The purpose of the *Noerr* doctrine and the standard under Rule 12(b)(6) applied here demonstrates that dismissal of the Sun's claims based on the RJ's *Noerr* defense is not appropriate. While the RJ argues that the SAC confirms the RJ's position is not sham litigation because "the 1989 JOA is no longer in force" since "the 2005 JOA was a novation" or the 1989 JOA was abandoned

(Mot. 20-21), this argument is an improper assertion of affirmative defenses not established by the SAC. The Sun's well-plead allegations assert that the 1989 JOA is the governing agreement, each of the RJ's material obligations were borne from the 1989 JOA, which the parties never ceased performing and to which the parties are still bound. *E.g.*, SAC ¶¶ 210, 30, 61-62, 211-12, 224. None of the Sun's allegations establish that the 1989 JOA was abandoned. *Id.*; *see also* ECF No. 970 at 18 (finding "the material elements of the 1989 JOA… remain unchanged"). Equally unpersuasive is the RJ's novation argument, which not only fails as a matter of law because the 2005 JOA is <u>invalid</u> (*see, e.g.*, *United Fire Ins. Co. v. McClelland*, 780 P.2d 193, 195 (Nev. 1989) (novation requires four elements, including "the new contract must be valid"[15]), but, as already confirmed by this Court, the parties never intended to terminate the 1989 JOA. ECF No. 970 at 18-19; *see also* SAC ¶¶ 210, 53-69, 74; *McClelland*, 780 P.2d at 196 ("[T]he party asserting novation has the burden of proving all the essentials of novation by clear and convincing evidence."). Dismissal is not appropriate based on the RJ's *Noerr* defense.[16]

Turning to the sufficiency of the Sun's allegations establishing its sham claims, while the RJ cites to a "heightened pleading standard" for sham litigation (Mot. 19), the Ninth Circuit has only required that the plaintiff plead the "specific activities" alleged to constitute anticompetitive petitioning activity, which the Sun has satisfied. A Rule 9-type heightened pleading standard applies only where the specific sham exception to the *Noerr* doctrine is based on fraud or misrepresentation, no different than other claims sounding in fraud. *E.g.*, *Kottle v. Northwest Kidney Ctrs.*, 146 F.3d 1056, 1063 (9th Cir. 1998) (analyzing only the second sham litigation claim based on misrepresentations under the

---

[15] The RJ's cited novation authority is unpersuasive. Mot. 21 (citing *Nev. Bank of Com. v. Esquire Real Est., Inc.*, 468 P.2d 22, 23 (Nev. 1970) (where the new agreement substituting the parties' obligations was valid); *Harper v. Charter Commc'ns, LLC*, 2019 WL 3683706, at *7-8 (E.D. Cal. Aug. 6, 2019) (applying California law that contradicts well-settled Nevada novation law); *J.A. Jones Constr. Co. v. Lehrer McGovern Bovis, Inc.*, 89 P.3d 1009 (Nev. 2004) (addressing a jury verdict and recognizing a general abandonment theory by which "contractors have recovered the reasonable value of performed work not contemplated by the terms of a contract" in the face of a "no damages for delay" clause; and not involving an express memorialization that the underlying agreement would be the governing agreement or continued performance of the material terms of the original contract as the parties did here).

[16] The *Noerr* doctrine is an affirmative defense. *E.g.*, *Schrader Cellars, LLC v. Roach*, 129 F.4th 1115, 1126 (9th Cir. 2025). As such, it not appropriately considered in a Rule 12(b)(6) context unless the complaint, itself, establishes the defense. *E.g.*, *MJ's Mkt., Inc. v. Jushi Holdings, Inc.*, 766 F. Supp. 3d 197, 213-14 (D. Mass. 2025) (collecting cases"); *accord Waugh Chapel S., LLC v. United Food & Com. Workers Union Loc. 27*, 728 F.3d 354 (4th Cir.2013). "Whether something is a genuine effort to influence governmental action, or a mere sham, is a question of fact." *Clipper Exxpress*, 690 F.2d at 1253.

heightened pleading standard of Rule 9); *Omni Resource Dev. Corp. v. Conoco, Inc.,* 739 F.2d 1412, 1414 (9th Cir. 1984) (finding that because "nothing more is alleged than the use of false affidavits in the state suit," the misrepresentation allegation was insufficient to overcome *Noerr* immunity).

More importantly, the RJ's cited case, *Oregon National Resources Council v. Mohla*, 944 F.2d 531, 533, 536 (9th Cir. 1991) (Mot. 19), which also dealt with a misrepresentation sham claim, applied the "heightened pleading standard" pursuant to *Franchise Realty Interstate Corp. v. San Francisco Loc. Joint Exec. Bd. of Culinary Workers*, 542 F.2d 1076, 1082 (9th Cir. 1976). In *Franchise Realty*, the Ninth Circuit defined the "heightened pleading standard" as follows: "a complaint must include allegations of the specific activities" that bring the defendant's conduct into one of the exceptions to *Noerr* protection. 542 F.2d at 1082. Critically, the Ninth Circuit expressly clarified,

> **[W]e are not adopting a rule that so-called "fact" pleading, as distinguished from "notice" pleading, is required in antitrust cases**. We repudiated that notion in *Walker Distributing Co. v. Lucky Lager Brewing Co.*, [323 F.2d 1, 3-4 (9th Cir. 1963)[17]]. What we do hold is that in any case, whether antitrust or something else, where a plaintiff seeks damages or injunctive relief, or both, for conduct which is prima facie protected by the First Amendment, the danger that the mere pendency of the action will chill the exercise of First Amendment rights requires more specific allegations than would otherwise be required.

*Id.* at 1082-83 (emphasis added).

The Sun has satisfied the specialized pleading requirements for sham litigation as required by *Franchise Realty* when alleging "the specific activities" the RJ undertook. The SAC's detailed allegations identify the RJ's 'activities' as the RJ's state court counterclaims (realleged here, ECF Nos. 296, 978), and current efforts to terminate the joint operation by refusing to recognize the governing 1989 JOA.[18]

---

[17] Stating, "[W]e are of the opinion that there are no special rules of pleading in antitrust cases. Rule 8, F. R. Civ. P., is applicable here as in any other case. No-where in the Rules is there any contrary indication. The fact that Rule 9(b) requires particularity of statement of circumstances constituting fraud or mistake indicates that such particularity is not required in other cases, including antitrust cases." *Walker*, 323 F.2d at 3.

[18] The RJ asserts that the Sun "abandoned" its sham litigation claims in its preliminary injunction briefing except the RJ's refusal to recognize the 1989 JOA, which is "irreconcilable" with the SAC's allegations that "the RJ's *efforts to have the 2005 JOA declared unlawful were objectively baseless.*" Mot. 19 n.5. This assertion is irrelevant under Rule 12(b)(6), and it is wrong. The Sun limited its post-hearing injunction analysis to its claims tailored to the Sun's requested preliminary relief, *i.e.*, to enjoin the RJ from refusing to perform under the governing 1989 JOA. *See* ECF No. 1189. And the Sun never alleged the RJ's efforts to have the 2005 JOA declared unenforceable under the NPA was sham litigation. The RJ's state court counterclaims do not allege the 2005 JOA was unenforceable (SAC ¶ 203). As the SAC

The Sun pointed to the RJ's counterclaims, wherein the RJ alleged claims "that the Sun purportedly fails to meet the JOA's required high standards of newspaper quality, breached the 2005 JOA, and force majeure," despite the Sun's editorial autonomy and the RJ's own promotions of its separate website and after the RJ drove the joint operation into a loss. *E.g.*, SAC ¶ 203 (quotations omitted) & ¶¶ 113, 125-201, 230-34; *see also* ECF No. 970 at 49. The Sun alleged that these activities were objectively baseless such that no reasonable litigant could realistically expect success on the merits. *E.g.*, SAC ¶ 203. The Sun further alleged that the RJ's "counterclaims are a sham meant to directly interfere with, and destroy, a competitor." *Id.*

The Sun then set forth the additional allegations specifying the RJ's "refus[al] to acknowledge the enforceability of the 1989 JOA and comply with it," after the 2005 JOA was declared unenforceable (thereby triggering performance of the 1989 JOA by operation of law and as evidenced by the parties' express, memorialized intentions), and despite this Court's conclusion that the 2005 JOA was not a novation. SAC ¶¶ 224, 90, 205-25. The RJ's "weaponization of the litigation process itself [was] to create delay [of] the Sun's preliminary and final relief to permanently eliminate the Sun from the Newspaper Market." SAC ¶ 224. In conclusion, the SAC alleged, "No reasonable litigant could realistically expect success on the merits. The RJ's counterclaims, and leveraging of knowingly baseless legal positions to achieve through process what they cannot achieve through competition, are a sham meant to directly interfere with, and destroy, its sole competitor." SAC ¶ 225; *see also* SAC ¶¶ 231-38 (discussing the anticompetitive effects of the RJ's conduct, refuting the RJ's argument that the Sun only alleges it will "lose money" as a result of the RJ's conduct).

That the RJ has only taken its positions with respect to the 1989 JOA in court *filings* is inconsequential. *See* Mot. 19-20. "[P]etitioning activity" that is generally afforded *Noerr* immunity and is therefore also subject to sham exception includes filing "assorted documents … in which plaintiffs or defendants make representations and present arguments to support their request that the court do or not do something." *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1184 (9th Cir. 2005) (further providing, "[C]onduct incidental to a petition is protected by *Noerr-Pennington* <u>if</u> the petition itself is

---

specifically alleges, the RJ's conduct in refusing to acknowledge the governing 1989 JOA in the face of the unenforceability of the 2005 JOA is sham litigation. SAC ¶¶ 204-25.

protected" (emphasis added)); *Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 707-08 (1962) (where "[r]espondents were engaged in private commercial activity … [t]o subject them to liability under the Sherman Act for eliminating a competitor … would effectuate the purposes of the Sherman Act and would not remotely infringe upon any of the constitutionally protected freedoms spoken of in Noerr").

Contrary to the RJ's conclusory arguments and deliberate misreading of the SAC, the Sun's allegations sufficiently plead sham litigation. The RJ's affirmative *Noerr* defense, and argument that its conduct was warranted, provides no basis for dismissal under Rule 12(b)(6). *See supra* § II.

## IV.   THE RJ CONTINUES TO MISREAD THE SUN'S CLAIM FOR DECLARTORY RELIEF, AND THE RJ'S DEFENSES FAIL TO WARRANT DISMISSAL

The RJ's arguments that the Sun has failed to plausibly allege a viable claim for relief in is SAC, or that the SAC fails to allege "an actual case or controversy between the parties" are not serious arguments. *See* Mot. 21. Initially, the RJ's argument is premised on the faulty assumption that the Sun has failed to state any viable claim for relief upon which a declaratory judgment could be based. *See id.* at 21 (citing *City of Reno v. Netflix, Inc.*, 52 F.4th 874, 877-78, 879 (9th Cir. 2022) (upholding dismissal of a claim based on violation of a state statute that provided no private right of action, and the ancillary declaratory relief claim seeking performance under the same). For the reasons stated above, the Sun has plead viable antitrust claims for relief for which a private right of action exists.[19] *See* 15 U.S.C. § 15; NRS 598A.210.

Moreover, the RJ's assertion that because the Sun has not alleged a breach of contract claim for the 1989 JOA the declaratory relief claim must be dismissed is made in contravention of the law. *See* Mot. 21-22. The Declaratory Judgment Act authorizes courts to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C.A. § 2201. Where "[t]he availability of relief under the Declaratory Judgment Act 'presupposes the existence of a judicially remediable right'" (*Netflix*, 54 F.4th at 878), an example of such is a declaratory judgment action setting forth disputes over the validity of an agreement and the

---

[19]    The RJ's summary challenge to the Sun's additional declaratory relief requests on the basis that the Sun has not stated viable claims under antitrust law (Mot. 23-24) likewise fail for the reasons stated above. *See supra* § III(B)(2).

parties' rights and obligations thereunder. *E.g.*, *Gaham-Sult v. Clainos*, 756 F.3d 724, 750 (9th Cir. 2014) (reversing dismissal of the plaintiff's claim for declaratory judgment because "[t]he district court incorrectly concluded that Plaintiffs 'ha[d] not alleged facts showing that there is an actual case or controversy'" where the issue of the validity of the agreement and the parties' rights thereunder was a "disputed issue of fact and law") (cited by Mot. 21); *Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 143 (9th Cir. 1994) (reversing dismissal of a declaratory relief action seeking a judgment regarding the rights and obligations under an insurance policy).

In *Siino v. Foresters Life Ins. & Annuity*, 133 F.4th 936, 943-45 (9th Cir. 2025), the Ninth Circuit recently explained that declaratory judgment may be sought "to clarify any attending contractual obligations," irrespective of a breach of contract claim, which raises "different questions and turn on different considerations." The *Siino* court concluded that "declaratory relief requires no more than a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 945. "In other words, what a claimant must prove to earn declaratory relief is context-specific: It may overlap entirely with the underlying claim … or it may turn on certain smaller issues or topics to which the desired declaration pertains," which "depend[s] on the nature of the relief asked for and granted[,] as opposed to the precise claim underlying the declaratory judgment remedy." *Id.* at 945-46 (quotations omitted). The Ninth Circuit further approved of the plaintiff's declaratory relief claim that sought an answer to "the future obligations of the parties." *Id.* at 944 (emphasis added); *see also Welk Biology Co. v. Hakumo LLC*, 2025 WL 2421232, at *17 (D. Nev. Aug. 20, 2025) (where this Court refused to dismiss the plaintiff's declaratory judgment claim because the claim "could clarify the parties' legal relations … going forward").

The SAC sufficiently alleges the validity of the governing 1989 JOA and the RJ's refusal to recognize it as such, and that the RJ's refusal is a part of its anticompetitive scheme to permanently eliminate the Sun from the market. SAC ¶¶ 83-93, 205-211, 213, 215-26, 294-97. The RJ's own filings in this Court establish the existence of a ripe case in controversy over the continuing validity of the 1989 JOA and the parties' rights and obligations thereunder. *E.g.*, *id.*; ECF No. 1174. The Sun's request for injunctive relief enjoining the RJ from continuing to refuse to perform under the 1989 JOA is not

22

only the proper subject of injunctive relief under the Clayton Act, but it is also proper under *Siino* and *Welk Biology*.

The RJ's repeated contention that the Sun's declaratory judgments "seek to enforce the core terms of the unlawful 2005 JOA" are also belied by the allegations themselves. *See* Mot. 22. The Sun's declaratory relief claim expressly requests that the RJ perform "pursuant to the terms of the 1989 JOA" in its entirety. SAC ¶ 297. Predicated on the RJ's *own* arguments that it would be too burdensome to print and distribute the Sun as an afternoon newspaper, the Sun's declaratory relief claim seeks an *alternative* declaration that, if the RJ believes it is too difficult to do so, the RJ must print and distribute the Sun as expressly set forth in Section 8.2 of the 1989 JOA.[20] SAC ¶¶ 298-300. Nothing in the Sun's declaratory relief claim seeks "enforcement" of the 2005 JOA.[21]

The RJ's continued assertions of its (baseless) affirmative defenses, that the 1989 JOA was terminated because the 2005 JOA was a novation and the 1989 JOA has been abandoned, cannot be grounds for dismissal under Rule 12(b)(6). *Compare* Mot. 22-23 *with supra* § II.

**V.    THE RJ MISUSES RULE 12(F) TO STRIKE RELEVANT AND MATERIAL ALLEGATIONS FROM THE SAC**

In an unusual and "heavily disfavored"[22] attempt to back-door a dismissal of the Sun's properly plead claims (undoubtedly to dispute any injunctive relief), the RJ asks this Court to strike the Sun's "theories" that "rely" on the 2005 JOA under Rule 12(f). Mot. 24-25 (citing *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993)). In *Fantasy*, the court struck portions of the pleading that were already dismissed as barred by res judicata and statute of limitation *and because* they "did not involve the parties to the … action." 984 F.2d at 1527-28. Because those allegations had already been fully litigated, would have been burdensome to try anew, and they pertained to nonparties to that dispute, the risk of prejudicial inferences was present. *Id.* at 1528-29. That is not this case, nor is it the function of a Rule

---

[20]    The fact that the RJ has not *formally* invoked the force majeure provision is inconsequential. *See* Mot. 22. No formal invocation of Section 8.2 is required: where the RJ's "sole judgment" that an afternoon publication is infeasible, Section 8.2 is triggered. SAC ¶ 37 (quoting § 8.2).

[21]    The RJ argues that the Sun seeks to "enforce" the 2005 JOA because the Sun cited to Section 1.1. as *further evidence* of the parties' intent (*compare* Mot. 22 n.6 *with* SAC ¶¶ 208, 296); and yet, the RJ cites to the 2005 JOA to support its novation and abandonment defenses. *See* Mot. 23.

[22]    *Doe v. Boys & Girls Club of S. Nev.*, 2023 WL 6794212, at *1 (D. Nev. Oct. 13, 2023) (quotations omitted).

12(f) motion. *See Fantasy*, 984 F.2d at 1527 ("[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial.").

The RJ's argument that the Sun's "historical" allegations concerning the parties' combination in 1989 and the RJ's actual behavior thereafter is impertinent, immaterial, or superfluous is hollow (Mot. 24), where the 1989 JOA is the now governing agreement, the power and control over the Sun that the RJ has been exploiting to eliminate the Sun from the market was borne from the 1989 JOA, and the RJ has continued to exploit that power and control even under the 2005 framework. *See Fantasy*, 984 F.2d at 1527 (defining immaterial and impertinent matter as being not essential or important to issues or claims for relief). This history, the RJ's continuing obligations, and the RJ's behavior since its purchase of the Review-Journal in 2015, are the crux of the RJ's Anticompetitive Conduct in this litigation: they are material and relevant to the Sun's claims and no basis exists to strike them. *See, e.g.*, *id.*; *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970 (9th Cir. 2010) (upholding refusal to strike allegations as to the plaintiff's lost profits where the defendant challenged entitlement to the profits, concluding that the allegations were proper because they "pertain[] directly to the harm being alleged"); *Martel v. Cadjew*, 2011 WL 4386209, at *2-3 (E.D. Cal. Sept. 20, 2011) (refusing to strike historical allegations that "provide[d] a context for plaintiff's lawsuit" and "when read with the complaint as a whole, g[a]ve a full understanding thereof").[23]

## VI.   CONCLUSION

For the foregoing reasons, denial of the RJ's Motion is warranted.

DATED this 17th day of June, 2026.

CLARK HILL PLC

By: */s/ Kristen L. Martini*
    E. Leif Reid, Nevada Bar No. 5750
    Kristen L. Martini, Nevada Bar No. 11272
    Nicole Scott, Nevada Bar No. 13757
    1700 S. Pavilion Center Drive, Suite 500
    Las Vegas, Nevada 89135

---

[23] Moreover, these issues have already been the subject of discovery as well, so the RJ's suggestion that they would cause an additional expenditure of time and money is equally meritless (*see* Mot. 24)— the purpose of Rule 12(f) has no implication here. *See Fantasy*, 984 F.2d at 1527.

PISANELLI BICE PLLC
James J. Pisanelli, Nevada Bar No. 4027
Todd L. Bice, Nevada Bar No. 4534
400 South 7th Street, Suite 300
Las Vegas, Nevada 89101

BROWNSTEIN HYATT FARBER
SHRECK, LLP
Jordan T. Smith, Nevada Bar No. 12097
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106

ALIOTO LAW FIRM
Joseph M. Alioto, Pro Hac Vice
One Sansome Street, 35th Floor
San Francisco, California 94104

*Attorneys for Plaintiff/Counterdefendants*

**CERTIFICATE OF SERVICE**

I certify that I am an employee of CLARK HILL PLC, and I caused a true and correct copy of the foregoing **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SUN'S SECOND AMENDED AND SUPPLEMENTAL COMPAINT (ECF NO. 1162) [ECF NO. 1193]** to be served by electronically filing the foregoing with the CM/ECF electronic filing system which will send notice of electronic filing to:

J. Randall Jones, Esq.
Mona Kaveh, Esq.
KEMP JONES, LLP
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, NV 89169

Michael J. Gayan, Esq.
CLAGGETT & SYKES LAW FIRM
4101 Meadows Lane, Suite 100
Las Vegas, NV 89107

Amy M. Gallegos, Esq.
David R. Singer, Esq.
Andrew G. Sullivan, Esq.
Alison I Stein, Esq.
JENNER & BLOCK LLP
515 South Flower Street, Suite 3300
Los Angeles, CA 90071

Richard L. Stone, Esq.
850 Devon Avenue
Los Angeles, CA 90024

DATED: June 17, 2026.

/s/        *Kristen L. Martini*
An Employee of Clark Hill PLC

26