# EXHIBIT 2

October 14, 2019, Motion to Dismiss Counterclaims or, Alternatively, to Stay Counterclaims Pending Federal Court Action, *Las Vegas Sun, Inc. v. News+Media Capital Group, LLC, et al.*, Eighth Judicial District Court, Clark County, Nevada, Case No. A-18-772591-B

# EXHIBIT 2

**APP201**

Electronically Filed
10/14/2019 5:26 PM
Steven D. Grierson
CLERK OF THE COURT

E. Leif Reid, Esq., Bar No. 5750
Kristen L. Martini, Esq., Bar No. 11272
Nicole Scott, Esq., Bar No. 13757
LEWIS ROCA ROTHGERBER CHRISTIE LLP
One East Liberty Street, Suite 300
Reno, NV  89501-2128
Telephone:  775.823.2900
Facsimile:   775.823.2929
Email: lreid@lrrc.com
          kmartini@lrrc.com
          nscott@lrrc.com

James J. Pisanelli, Esq., Bar No. 4027
JJP@pisanellibice.com
Todd L. Bice, Esq., Bar No. 4534
TLB@pisanellibice.com
Jordan T. Smith, Esq., Bar No. 12097
JTS@pisanellibice.com
PISANELLI BICE PLLC
400 South 7th Street, Suite 300
Las Vegas, Nevada  89101
Telephone:  702.214.2100
Facsimile:   702.214.2101

*Attorneys for Plaintiff/Counter-Defendant*

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

## DISTRICT COURT

## CLARK COUNTY, NEVADA

| | |
|---|---|
| LAS VEGAS SUN, INC., a Nevada corporation,<br>                    Plaintiff,<br><br>vs.<br><br>NEWS+MEDIA CAPITAL GROUP LLC, a Delaware limited liability company; and LAS VEGAS REVIEW-JOURNAL, INC., a Delaware limited liability company;<br><br>                    Defendants.<br><hr>LAS VEGAS REVIEW-JOURNAL, INC., a Delaware corporation,<br>                    Counterclaimant,<br><br>vs.<br><br>LAS VEGAS SUN, INC., a Nevada corporation,<br>                    Counter-Defendant. | Case No.:   A-18-772591-B<br>Dept. No.   XVI<br><br><br>**MOTION TO DISMISS COUNTERCLAIMS OR, ALTERNATIVELY, TO STAY COUNTERCLAIMS PENDING FEDERAL COURT ACTION**<br><br>**HEARING REQUESTED** |

1

**APP202**

## I.     INTRODUCTION

The Las Vegas Review-Journal, Inc.'s ("Review-Journal"), Counterclaims are the culmination of the anticompetitive campaign that Sheldon Adelson ("Adelson") has orchestrated to monopolize the newspaper industry in Clark County. Through shell companies, Adelson purchased the Review-Journal subject to a preexisting joint operating agreement with the Las Vegas Sun, Inc. ("Sun"). The joint operating agreement or "JOA" is authorized by the Newspaper Preservation Act ("NPA") and approved by the United States Department of Justice. JOAs are designed to save struggling newspapers by allowing them to combine operations while remaining editorially independent.  Like other JOAs around the country, the Sun/Review-Journal JOA required the Sun to relinquish its own printing press so that Las Vegas would not lose the Sun's unique voice forever.

The NPA is a comprehensive statutory framework with an antitrust exemption for JOAs because Congress recognized the vital national interest in maintaining diverse editorial voices and preventing editorial monopolies in American communities. The NPA antitrust exemption was meant to provide a financial mechanism to limit newspaper failures in a difficult media environment, and operational mergers are an effective way to accomplish this goal.  Without the exemption, JOAs would constitute an unlawful predatory combination. The NPA thus ensured American communities continued to benefit from a robust and competitive press in the most important editorial force in any community: the American newspaper and its associated newsrooms.

The Review-Journal's Counterclaims seek to do the opposite. The Counterclaims would eviscerate the NPA, while simultaneously creating a cartel blessed by this Court.  From the start, Adelson abused the JOA to financially starve the Sun, either to close it or force its fire-sale.  By all measures, Adelson could not tolerate another publication shining light on his actions or expressing views contrary to his own, especially in front of an audience that the Sun and the Review-Journal had earned working together for 30 years.  But when Adelson's efforts failed in arbitration, the Review-Journal filed these Counterclaims to end the JOA altogether.

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

2

The Review-Journal asserts that the Sun has breached the JOA by not living up to the Review-Journal's biased and amorphous standard of "newspaper quality," and it requests a judicial declaration terminating the JOA.  Not only does the Review-Journal effectively ask this Court to step into the Sun's newsroom and act as a super-editor-in-chief—critiquing the entire body of work and newsroom practices—it also asks this Court to rewrite the JOA **and** to create an instant monopoly. Terminating the JOA would leave this community with one editorial voice:  Sheldon Adelson's.

The Review-Journal's Counterclaims are objectively baseless and nothing more than a sham to perpetuate Adelson's anticompetitive scheme against the Sun.  However, this Court need not reach the underlying merits of the Review-Journal's Counterclaims because the Court lacks subject matter jurisdiction.  The Review-Journal's requested relief inherently involves the NPA and federal antitrust law, all of which are within the federal courts' exclusive jurisdiction.  State courts cannot preside over these federal antitrust matters.   Yet the Review-Journal's Counterclaims would necessarily require the Court to do just that.   The Review-Journal's Counterclaims seek to dissolve the same federally-authorized JOA that granted the Review-Journal sole control of newspaper printing operations in Clark County and immunized it from antitrust violations.

As discussed more fully below, the NPA preempts state law causes of action related to JOA terminations.  That is, in part, why the Sun filed a federal antitrust suit under the Sherman Act and Clayton Act immediately after the Review-Journal sought leave to assert the Counterclaims.  The Sun's first-filed federal action alleges that the Counterclaims themselves are part of the Review-Journal's and Adelson's anticompetitive conduct.  Allowing the Counterclaims to proceed in state court would risk dragooning this Court into participating in the Review-Journal's antitrust conspiracy.   Instead, this Court should dismiss or stay the Counterclaims in deference to the first-filed federal court proceedings.  Doing so will not deprive the Review-Journal of its day in court.  Rather, its Counterclaims are compulsory in the federal court action and it must litigate them in the federal forum, if at all.  Thus, this Court should

**APP204**

dismiss the Review-Journal's Counterclaims or, alternatively, stay them pending the resolution the Sun's federal antitrust action.

## II.    STATEMENT OF FACTS

### A.    The Sun and the Review-Journal Enter into a Joint Operating Agreement.[1]

"The Sun newspaper was first published in 1950 and has a long history of publishing original local news stories of interest to the community." (Countercl. ¶ 11.)  The Sun has a reputation for "in-depth reporting" and has won "dozens of journalism awards," including the Pulitzer Prize for an extensive investigative series into Las Vegas construction deaths. (*Id*. ¶¶ 3, 11, 14.)  Despite these accolades (and more), the Sun has been unable to escape the economic pressures facing all newspapers during a decades-long decline in the newspaper industry. (*See id*. ¶¶ 3, 11, 19.)

In 1989, to bolster their respective financial positions and readership, the Sun and the Review-Journal entered into a joint operating agreement (the "1989 JOA") under the NPA, 15 U.S.C. § 1801, et seq. (*Id*. ¶ 12.)  The NPA "allows financially troubled newspapers to partner with their competitors.  Its goal is to prevent communities with struggling papers from losing editorial diversity." (*Id*.; 18 U.S.C. § 1801.)  When passing the NPA, Congress declared that it is in the national public interest to "maintain[ ] a newspaper press *editorially and reportorially independent and competitive* in all parts of the United States . . . ." 15 U.S.C. § 1801 (emphasis added).

Accordingly, the NPA provides a limited antitrust exemption for competing, but struggling, newspapers that enter into a joint operating agreement with prior approval of the Attorney General.  15 U.S.C. § 1803.  "Joint newspaper operating arrangements that are put into effect without the prior written consent of the Attorney General remain fully subject to the antitrust laws." 28 C.F.R. § 48.1.  Likewise, the NPA does not exempt "any predatory pricing, any predatory practice, or any other conduct in the otherwise lawful operations of a joint newspaper operating arrangement which would be unlawful under any antitrust law if engaged in

---

[1]    Although the Sun disputes many of the Review-Journal's factual allegations, the Court must accept them as true for this Motion only. *Allum v. Valley Bank of Nev.*, 109 Nev. 280, 281 n.1, 849 P.2d 297, 298 n.1 (1993).

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

**APP205**

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

by a single entity."  15 U.S.C. § 1803(c).  A joint operating agreement or party is only immune from antitrust to the extent the NPA allows.  *Id.*

The Sun and the Review-Journal submitted the 1989 JOA to the United States Attorney General and received approval.  (*See* Ex. 1 (1989 JOA, § 1.1).)[2]  The JOA has a 50-year term, ending in 2040.  (*See id.* § 1.2.)  Under the 1989 JOA, the Sun had to transfer certain assets and contracts to the Review-Journal.  (*Id.* § Art. 3.)  Most significantly, the Sun had to relinquish its printing press and equipment, its advertising and sales department, its circulation, and all of its non-editorial operations.  (*Id.*)  The 1989 JOA left the Sun completely at the Review-Journal's mercy for publication.

In 2005, the Sun and the Review-Journal amended and restated the JOA ("2005 JOA").  (*Id.* ¶ 13.)  Once again, the parties filed the 2005 JOA "with the Attorney General of the United States under the Newspaper Preservation Act."  (Ex. 2 (2005 JOA § 1.1).)[3]  "Under the 2005 JOA, as under the prior agreement, the Review-Journal is responsible for handling and paying the costs of all business functions of the Sun—including production, distribution, and advertising."  (Countercl. ¶ 13; *see generally* Ex. 2.)  The 2005 JOA also provides that the Review-Journal will distribute the Sun as a separately-branded newspaper inside the Review-Journal rather than a separate standalone newspaper.  (*Id.* ¶ 14.)

Even though the Review-Journal controls all non-editorial operations for both newspapers, they maintain separate and independent news and editorial control.  (*Id.* ¶ 13.)  This separation is required by the NPA.  *See* 15 U.S.C. § 1801.  In fact, Section 5.2 in the 2005 JOA, entitled "News and Editorial Autonomy," states:  "Preservation of the news and editorial independence and autonomy of both the Review-Journal and the Sun *is of the essence of this Restated Agreement*."  (Ex. 2 § 5.2) (emphasis added).  The Sun has "exclusive and complete control, authority and

---

[2]   Without converting a motion to dismiss into a motion for summary judgment, "[a] court may also consider unattached evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *Baxter v. Dignity Health*, 131 Nev. 759, 764, 357 P.3d 927, 930 (2015) (quotations omitted). Considering matters incorporated by reference or integral to a claim does not convert a motion to dismiss into a motion for summary judgment. *Id.*

[3]   *See supra* n.2.

**APP206**

direction over the news and editorial content, features and services to be furnished by Sun to Review-Journal to be included in its newspaper, including without limitation the right of selection of all its news and editorial employees, and the exclusive right to hire and discharge such employees." (*Id.*)  Section 4.1 similarly provides:

> Review-Journal and Sun each shall maintain a staff of news and editorial employees, and shall license such feature materials (including, but not limited to, news and editorial services supplied by third parties), adequate to provide its respective newspaper with all of the news and editorial copy and related services deemed necessary by each of them as to its respective newspaper.

(*Id.* § 4.1.)

The newspapers "each bear their own respective editorial costs and . . . establish whatever budgets each deems appropriate." (*Id.* § 4.2; *see also id.* § 5.4  ("The Sun shall provide and pay for its own offices for its news and editorial department and management.").)    The Review-Journal may only charge to the joint operation the costs of promotional activities that mention the Sun in equal prominence to the Review-Journal. (*See id*. § 5.1.4, App. D.)  The Review-Journal pays the Sun a percentage of the joint operation's annual profits monthly. (*Id.* § App. D.)  The Sun has a right to audit the Review-Journal's books and records to ensure that the Review-Journal's calculation for the Sun's annual profit payment is accurate and complies with the contract. (*Id*. § App. D.)

The 2005 JOA contains a good faith clause in which the "Review-Journal and Sun each hereby agree to preserve high standards of newspaper quality throughout the term of this Restated Agreement consistent with United States metropolitan newspapers." (*Id.* § 5.2.)  But the wall between the Review-Journal's and the Sun's journalistic functions is necessary to maintain their antitrust exemption and it is expressed clearly in the contract:  Both newspapers have no control over the editorial choices of the other and their mutual opinions of the other have no bearing on editorial choices each makes.  It would contradict the NPA's purpose—and violate antitrust laws—for one competitor to have any control over another competitor's reportorial and editorial viewpoints. *See* 15 U.S.C. §§ 1801, 1803.

The 2005 JOA outlines the circumstances in which the Review-Journal may stop printing the Sun:  "So long as Sun furnishes news and editorial copy, features and services to

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

6

**APP207**

Review-Journal in accordance with Article 4 of this Restated Agreement, Review-Journal agrees to produce the Sun daily . . . and to sell all advertising for, promote and circulate such newspapers as provided herein." (*Id*. § 5.1.) In turn, Article 4 provides for the Sun's mutual obligation to maintain a news and editorial staff and license feature materials, and bear and budget for editorial costs. (*Id.* §§ 4.1, 4.2.) Article 4 also sets forth the logistical and formatting requirements for the Sun's submissions to the Review-Journal. (*Id.* § 4.3.) In particular, Section 4.3 requires the Sun to "provide such material in a form appropriate for the production of its newspaper, in conformity with the mechanical standards, deadlines and production requirements which prevail in the Review-Journal plant from time to time, including deadlines, page size, column width, and cut-offs established by Review-Journal, upon reasonable notice to Sun." (*Id*. § 4.3.) If the Sun defaults in the performance of these technical obligations, the Review-Journal must provide written notice and a 60-day cure period before terminating the 2005 JOA. (*Id*. § 9.1.2.)[4] However, as long as the Sun timely provides its news and editorial content in a printable format, the Review-Journal *must* print the Sun.

The Review-Journal's only other option is to print and distribute both newspapers *separately*. The 2005 JOA delineates that "[i]n the event the Review-Journal determines that the Sun's continued placement in the Review-Journal has a material and substantial negative financial impact on the revenue and profit of the Newspapers[,] it may deliver the Sun separately from the Review-Journal but at the same time, place, and manner as the Review-Journal." (*Id*. § A.5.) If the Sun disputes whether there has been a "material and substantial negative financial impact," a specially qualified arbitrator must assess only "advertiser abandonment of the Newspapers specifically due to the Sun's inclusion within the Review-Journal or subscriber cancellations of the Newspapers specifically due to the Sun's inclusion within the Review-Journal. The Material and substantial negative financial impact shall be determined by reference to generally accepted stand newspaper industry sources." (*Id*.) The "quality" of the Sun's journalistic material is not a consideration.

---

[4] The Review-Journal may also terminate the 2005 JOA if the Greenspun family no longer owns the Sun or the Sun enters bankruptcy. (*Id.* §§ 9.1.2-9.1.3.)

**APP208**

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

**B.    The Sun Files Suit and the Review-Journal Counterclaims to Terminate the JOA.**

In April 2018, the Sun initiated this action to enforce its audit rights under the 2005 JOA and sought damages for the Review-Journal's improper allocation of expenses to the joint operation. (*See generally* Compl.)  The Review-Journal's new ownership, bankrolled by Sheldon Adelson, had been charging the costs of its own editorial and independent promotional activities to the joint operation to drain the Sun's profit payments to zero.  (*See generally id*.)  The Review-Journal had also unilaterally altered the Sun's contracted-for "noticeable mention," or "Sun Box," on the front page, and obscured the noticeable mention to hide the Sun from the public view.  (*Id.*)  Adelson intended to starve the Sun out of existence so he could monopolize the newspaper industry in Clark County and silence any voices opposing his interests.  (*See generally id.*)

The Court compelled the Sun's editorial and promotional cost disputes and the audit dispute to arbitration but retained the "Sun Box" claims.  Ultimately, the Arbitrator entered an award in favor of the Sun.  The Arbitrator found that the Review-Journal wrongly charged its separate editorial and promotional costs to the joint operation, awarded damages, and directed an audit to calculate the Sun's remaining losses. (*See generally* Pl.'s Mot. to Confirm Arb. Award in Part & to Vacate or, Alternatively, Modify or Correct the Award, in Part, Sept. 13, 2019.)

After losing in arbitration, and no longer able to strangle the Sun's resources, the Review-Journal and Adelson dropped all pretenses and moved to terminate the 2005 JOA.  On August 30, 2019, the Review-Journal moved for leave to amend its Answer and to assert counterclaims on shortened time.  (Defs.' Mot. Leave to Am. Answer & Assert Countercl., Aug. 30, 2019.)  The Review-Journal proposed four causes of action seeking a finding that the Sun is in material breach of the JOA and a "judicial declaration that the 2005 JOA is terminated and has no further effect."  (Countercl., ¶¶ 45, 55 and Prayer for Relief ¶ 4.)

The Review-Journal's Counterclaims hinge on the manufactured contention that the Sun has failed to "preserve the high standards of newspaper quality" under Section 5.2 thereby "deteriorating" and "sabotaging" the joint printed product.  (Countercl. ¶¶ 43-46, 49-50, 53-55.)

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

**APP209**

Unavoidably, the Review-Journal asks the Court to act as a Judicial Editor-in-Chief with the authority to judge the "quality" of the Sun's news and editorial content. Worse, if the Court were to accept the invitation to serve in this unprecedented role, the Court would become the censor of editorial voices in the community. Yet, neither the NPA nor the 2005 JOA allow the Court or the Review-Journal to grade the Sun's work. The newspaper press must be "*editorially and reportorially independent*," 18 U.S.C. § 1801 (emphasis added), and "[p]reservation of the news and editorial independence and autonomy . . . *is of the essence of*" of the 2005 JOA. (Ex. 2 § 5.2 (emphases added).)

### C.    The Sun Files an Antitrust Lawsuit in Federal Court Based, in Part, on the Review-Journal's Counterclaims.

Because the Review-Journal's then-pending Counterclaims were the final step in Adelson's efforts to monopolize and kill the Sun, the Sun promptly filed a complaint in federal court on September 24, 2019, under the Sherman Act and the Clayton Act, among other claims. (*See* Notice of Related Fed. Ct. Action, Sept. 24, 2019.)[5] Federal courts have exclusive jurisdiction over Sherman Act and Clayton Act claims.

The Sun's federal court complaint details Adelson's and the Review-Journal's anticompetitive scheme and their nefarious motivations. For example, Defendants removed a publisher with a history of turning around declining newspapers and replaced him with a publisher whose only qualification was a willingness to do Adelson's bidding. (Ex. 1 to Notice of Related Fed. Ct. Action ¶¶ 56-69.) The Sun described the Review-Journal's abuse of its control over the newspapers' operations, advertising, and design. (*Id*. ¶¶ 56, 70-107.) And the Sun recounted how the Review-Journal's Counterclaims violated federal antitrust laws. (*Id*. ¶¶ 56, 108-09.) The Review-Journal's Counterclaims are an objectively baseless attack on the same document that insulates the Review-Journal from antitrust liability. (*Id*. ¶¶ 108-09.) The Counterclaims are a continuation of Adelson's and the Review-Journal's predatory crusade.

---

[5] The Court may also take judicial notice of the federal court proceedings. *See Mack v. Estate of Mack*, 125 Nev. 80, 91, 206 P.3d 98, 106 (2009).

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

9

**APP210**

This Court held a hearing on the Review-Journal's request to amend the day after the Sun initiated the federal court action. (Ct. Mins., Sept. 25, 2019.) The Court granted leave to amend and the Review-Journal filed its Counterclaims on September 30, 2019—nearly a week after the Sun initiated the federal court action.

On October 9, 2019, the Sun and the Review-Journal filed a stipulation in the federal action to maintain the status quo. (Ex. 3 (SAO to Maintain Status Quo, Oct. 9, 2019).) The Sun announced its intention to the Review-Journal to file a motion for preliminary injunction. But, rather than litigate, Defendants agreed to "maintain the status quo (*i.e*. RJ will continue to perform under the 2005 JOA), including without limitation, that Defendants will refrain from taking non-judicial steps to terminate the 2005 JOA until after final judgment by a court of competent jurisdiction permitting such termination." (*Id*.) The Review-Journal disputes which court has jurisdiction; this is true. But, the Review-Journal's disagreement is of no moment, as only the federal courts can entertain issues related to a JOA termination, as set forth below. Because of the intertwined antitrust issues, this Court lacks subject matter jurisdiction to hear the Counterclaims.

**III.   ARGUMENT**

   **A.   The Standard to Dismiss for Lack of Subject Matter Jurisdiction.**

Under Nevada Rule of Civil Procedure 12(b)(1), a party may move to dismiss for lack of subject matter jurisdiction. "If the court determines at any time that it lacks subject-matter jurisdiction, the court *must* dismiss the action." NRCP 12(h)(3) (emphasis added). The party asserting the claim bears the burden of proving subject matter jurisdiction. *Morrison v. Beach City LLC*, 116 Nev. 34, 36, 991 P.2d 982, 983 (2000). "[T]he district court can take evidence on the claim that the complaint does not fall within the subject matter jurisdiction requirements of the court, and such evidence is not necessarily confined to the allegations of the complaint." *Id*. (citing 2 James Wm.Moore et al., *Moore's Federal Practice* § 102.107[1], [2] (3d ed.1999)).

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

**B.**     **The NPA Preempts The Review-Journal's Counterclaims and They Necessarily Involve Federal Antitrust Laws, Which Are Within the Federal Courts' Exclusive Jurisdiction.**

Federal courts have exclusive jurisdiction over antitrust cases involving the Sherman and Clayton Acts. *See Gen. Inv. Co. v. Lake Shore & M.S. Ry. Co.*, 260 U.S. 261, 287 (1922) ("This suit was brought in a state court, and in so far as its purpose was to enjoin a violation of the Sherman Anti-Trust Act that court could not entertain it.  The situation was the same in respect of the purpose to enjoin a violation of the Clayton Act."); *Tafflin v. Levitt*, 493 U.S. 455, 462 (1990) ("[W]e have interpreted § 4 of the Clayton Act to confer exclusive jurisdiction on the federal courts."); *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 379 (1985) ("[F]ederal antitrust claims are within the exclusive jurisdiction of the federal courts.").

"Matters involving federal antitrust laws, whether raised by way of attack or defense, are beyond the jurisdiction of state courts." *Armstrong v. Taco Time Int'l, Inc.*, 635 P.2d 1114, 1120 (Wash. App. 1981); *see also Vaughn & Co. v. Saul*, 237 S.E.2d 622, 631 (Ga. App. 1977) ("jurisdiction to determine matters involving federal antitrust laws is vested exclusively in the federal courts, and issues arising under those laws, whether raised by way of attack or defense, are beyond the jurisdiction of state courts.").

Litigation involving a JOA unavoidably involves federal antitrust law.  The NPA occupies the field and preempts any law, regulation, or cause of action related to JOA termination. Congress enacted the NPA in response to the Supreme Court's holding in *Citizen Publishing Co. v. United States*, 394 U.S. 131 (1969), that a JOA between two Arizona newspapers violated federal antitrust laws.  *See Hawaii Newspaper Agency v. Bronster*, 103 F.3d 742, 744 (9th Cir. 1996). The NPA was Congress' comprehensive solution to the unique economic problems threatening many newspapers' survival. *Id*. at 749.

The Ninth Circuit has held that, in the NPA's comprehensive scheme, "Congress has preempted the field of regulations that are based on a newspaper's involvement in a JOA. Congress has set forth all the conditions governing their formation and qualification for antitrust immunity." *Id*.  The NPA's language and legislative history reflect that Congress intended its JOA regulations to be exclusive. *Id.*  "The NPA's language and structure precludes states from

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

**APP212**

directly *or indirectly* regulating a newspaper's participation in a JOA . . . ." *Id*. (emphasis added); *see also Hawaii Newspaper Agency Ltd. P'ship v. Bronster*, No. CIV. 95-00635 SPK, 1996 WL 67305, at \*\*3-4 (D. Haw. Jan. 3, 1996) (finding field preemption and conflict preemption in NPA case and stating that "[t]he scheme of the NPA and its accompanying regulations thus indicate that Congress intended to preempt the field of regulation relating to newspaper JOAs").

Congress did not merely preempt State *regulations*. It also preempted state law *causes of action* like those the Review-Journal asserts. For example, in *Hawaii ex rel. Anzai v. Gannett Pacific Corp*., 99 F. Supp. 2d 1241, 1245 (D. Haw. 1999),[6] the State of Hawaii sued in federal court to challenge an agreement to terminate a JOA involving the Star-Bulletin. Hawaii argued that terminating the JOA would violate the Sherman Act and cause irreparable harm. *Id*. at 1247-48. The court explained that it need only address Hawaii's federal antitrust claims because the state claims essentially mirrored the federal antitrust claims. *Id*. at 1248 n.7. "[I]f the federal claims lack merit, then *the state law claims would be preempted by the Newspaper Preservation Act*." *Id*. (citing *Bronster*, 103 F.3d at 745) (emphasis added).

The court also highlighted that terminating a JOA necessarily leads to federal antitrust consequences—the type of consequences that belong in federal court. As with the Review-Journal and Adelson, the *Anzai* court recognized that "[d]efendants have availed themselves of exemptions under the Newspaper Preservation Act and have been allowed to operate under a Joint Operating Agreement ('JOA') which, but for the Newspaper Preservation Act, *would have violated the antitrust laws from its inception*." *Id*. at 1243 (emphasis added). And, like the Sun under the 1989 and 2005 agreements, the JOA in *Anzai* stripped the Star-Bulletin of its operating equipment and assets. *Id*. at 1251. The Star-Bulletin was unsustainable if the JOA was terminated. *Id*. "Thus, the Court conclude[d] that the Termination Agreement is not protected by the Newspaper Preservation Act and, therefore, Defendants' actions can be subject to antitrust scrutiny on this limited basis." *Id*. at 1250.

---

[6] *Aff'd sub nom, State of Hawaii v. Gannett Pac. Corp*., 203 F.3d 832 (9th Cir. 1999).

**APP213**

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

Other courts agree. In *Reilly v. Hearst Corp.*, 107 F. Supp. 2d 1192, 1203 (N.D. Cal. 2000), the court held that "a transaction terminating a JOA **is subject to ordinary antitrust scrutiny**. The very nature of such a transaction makes clear that the parties are not seeking to avail themselves of the NPA's antitrust exemptions." (Emphasis added.) The court found that, because of the inherent antitrust side effects, the federal courts and the Department of Justice require a JOA termination to satisfy the *Citizen Publishing* test that the Supreme Court employed before the NPA. *Id*. at 1203-04. This antitrust test is within the exclusive purview of the federal courts.

The connection between the NPA, JOAs, and antitrust laws distinguishes JOA cases from ordinary contract cases that indirectly touch upon the Sherman or Clayton Acts. An "NPA case" or a "JOA case" is, at its heart, an antitrust case. *Reilly v. Medianews Grp., Inc.*, No. C06-4332 SI, 2007 WL 1068202, at *3 (N.D. Cal. Apr. 10, 2007). A JOA may be critical to understanding and analyzing the facts of the case, "but it does not alter the Court's analytical antitrust framework." *Id.*; *see also United States v. Daily Gazette Co.*, 567 F. Supp. 2d 859 (S.D.W. Va. 2008) (holding that the United States stated antitrust claims based on one JOA participant taking "immediate steps to shutter the Charleston Daily Mail[, the other paper]").

Here, the Review-Journal seeks a judicial declaration that the Sun has materially breached the 2005 JOA "and that the JOA is therefore terminated." (Countercl. ¶ 55, Prayer for Relief ¶ 4.) But *any* state law claims related to the termination of the JOA are preempted by the NPA. *See Gannett Pac. Corp.*, 99 F. Supp. 2d at 1248 n.7. The NPA occupies the entire field related to JOA terminations. The NPA left no room for any state law cause of action to supplant the inherent antitrust implications of terminating a JOA. Any state law cause of action that would lead to a JOA termination conflicts with Congress' express intent to ensure that the public benefits from multiple reportorial and editorial voices. 15 U.S.C. § 1801.

The Court could not invalidate the JOA without evaluating the antitrust ramifications. Not only do the Review-Journal's Counterclaims attack the very document that has provided it with antitrust immunity with the Department of Justice's blessing, they also seek to dissolve the agreement that stripped the Sun of its own printing presses. Without the JOA, the Sun cannot

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

**APP214**

publish itself.  As a consequence, terminating the 2005 JOA will immediately create an unlawful monopoly and consummate Adelson's plot to control the newspaper industry in Clark County.

This Court cannot analyze, let alone grant, the Review-Journal's Counterclaims without grappling with the NPA or conducting federal antitrust law scrutiny under the Sherman and Clayton Acts.  This is particularly so in light of the Review-Journal's attacks on the editorial content of the Sun.  These antitrust statutes governing these relationships, including the concept of editorial independence, are within the exclusive jurisdiction of the federal courts. The Court will be improperly forced to confront the monopolistic results if the Review-Journal prevails. Allowing the Review-Journal's Counterclaims to proceed in this forum would render the Court an unwitting accomplice in the Review-Journal anticompetitive scheme "where the judgment of the Court would itself be enforcing the precise conduct made unlawful by the [Sherman] Act." *Kelly v. Kosuga*, 358 U.S. 516, 520 (1959); *see also Kaiser Steel Corp. v. Mullins,* 455 U.S. 72, 79-86 (1982).  The Review-Journal's state law Counterclaims are preempted by the NPA and belong exclusively in federal court.  This Court lacks subject matter jurisdiction over the claims and they must be dismissed pursuant to NRCP 12(b)(1).

### C.   The Court Should Dismiss or Stay Under the First-Filed Rule and Principles of Comity.

When two substantially similar actions involving the same parties are pending in different courts, the court may dismiss the second action or defer to the first-filed suit.  *E.g.*, *Galindo-Milan v. Hammer*, 438 P.3d 341, 2019 WL 1645024, at *1 (Nev. Apr. 12, 2019) (unpublished disposition) (citing *Fitzharris v. Phillips*, 74 Nev. 371, 376-77, 333 P.2d 721, 724 (1958) (providing that when identical causes of action are pending, involving the same parties, a trial court may properly dismiss the second action); *SAES Getters S.A. v. Aeronex, Inc*., 219 F. Supp. 2d 1081, 1089 (S.D. Cal. 2002) (explaining that the first-to-file rule provides that "where substantially identical actions are proceeding in different courts, the court of the later-filed action should defer to the jurisdiction of the court of the first-filed action by either dismissing, staying, or transferring the later-filed suit"); *Inherent.com v. Martindale-Hubbel*, 420 F. Supp. 2d

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

14

1093, 1097 (N.D. Cal. 2006) (providing that the two actions need not be identical, only substantially similar for the first-to-file rule to apply)).

The first-filed rule or "first-to-file rule is intended to serve[ ] the purpose of promoting efficiency well and should not be disregarded lightly." *Kohn Law Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc*., 787 F.3d 1237, 1239 (9th Cir. 2015) (quotations omitted). It is a doctrine of comity. *Sherry v. Sherry*, No. 62895, 2015 WL 1798857, at *1 (Nev. Apr. 16, 2015) (unpublished disposition). "[C]omity is a principle whereby the courts of one jurisdiction may give effect to the laws and judicial decisions of another jurisdiction out of deference and respect." *Mianecki v. Second Jud. Dist. Court, In & For Washoe Cty*., 99 Nev. 93, 98, 658 P.2d 422, 424-25 (1983). The first-filed rule applies with equal force when actions are filed in federal court and state court. *E.g.*, *Commercial Union Ins. Companies v. Torbaty*, 955 F. Supp. 1162, 1163 n.1 (E.D. Mo. 1997); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1173 (11th Cir. 1982) (same and discussing comity principles).[7]

Here, the Sun's federal court antitrust action was filed first. The Sun filed its complaint on September 24, 2019, and the Review-Journal did not file until six days later, on September 30, 2019. It is immaterial that the Review-Journal's Motion for Leave to Amend Answer and Assert Counterclaim was pending when the Sun initiated the federal court action. The first-to-file rule is only triggered by an actual file-stamped complaint; other papers do not suffice. *Uber Techs., Inc. v. Second Jud. Dist. Court of State ex rel. Cty. of Washoe*, No. 66875, 2014 WL 6680785, at *1 (Nev. Nov. 24, 2014) (unpublished disposition); *Pacesetter Sys., Inc. v. Medtronic, Inc*., 678 F.2d 93, 96 n.3 (9th Cir. 1982). Both Nevada Rule of Civil Procedure 3 and Federal Rule of Civil Procedure 3 are clear that "a civil action is commenced by filing a complaint with the court." Since the Review-Journal had not filed its Counterclaims when the Sun filed its federal court complaint, the Sun's action is first-filed and this Court should defer to the United States District Court.

---

[7]   The Nevada Supreme Court has signified that courts should dismiss or stay state court actions when there is a first-filed action pending in United States District Court. *See Gabrielle v. Eighth Judicial Dist. Court of State, ex rel. Cty. of Clark*, No. 66762, 2014 WL 5502460, at *1 (Nev. Oct. 30, 2014) (unpublished disposition); *see also Kohn Law Grp*., 787 F.3d 1237 (affirming stay of federal district court proceedings pending first-filed state court action).

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

15

**APP216**

The parties and claims in both actions are substantially similar. The Sun and Review-Journal are parties to the federal action and, while Sheldon Adelson and Patrick Dumont are new defendants there, their addition does not sufficiently change the overlapping nature of the cases. Both proceedings involve the same legal issues. As discussed above, this Court will invariably have to address the NPA and antitrust implications of the Review-Journal's request to terminate the 2005 JOA. The Court will necessarily have to decide whether terminating the 2005 JOA will create a monopoly and violate antitrust laws. Both courts will have to determine whether the Review-Journal's Counterclaims are objectively baseless either to be finally dismissed on the merits under Nevada law or as evidence of the Review-Journal's anticompetitive conduct under federal antitrust law. *See Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-61 (1993).

And, as discussed below, the Review-Journal's Counterclaims are compulsory and must be brought in the Sun's first-filed federal antitrust action. The Review-Journal can pursue its Counterclaims, if and *only if*, its attempts to terminate the 2005 JOA are not part of a predatory scheme and do not otherwise violate the Sherman and Clayton Acts. The Review-Journal is not prevented from asserting its Counterclaims in the federal court action.

Dismissing (or staying) the Review-Journal's Counterclaims in favor the Sun's first-filed action will serve judicial economy, promote efficiency, and conserve resources. *Pacesetter Sys., Inc.*, 678 F.2d at 95-96. Allowing the Review-Journal's Counterclaims to proceed after the Sun's first-filed action will cause unnecessary duplication and risk conflicting judgments. Much of the arguments, briefing, and discovery will be the same. There will also be the chance that this Court and the federal court may reach different antitrust conclusions. But only the federal court's decision will have preclusive effect on the parties because the Sun cannot bring its federal antitrust claims in state court. *Marrese*, 470 U.S. at 383 (stating state court judgment does not bar later federal antitrust claim). Thus, it is possible that the parties and the Court might expend significant time and energy in the state proceedings for naught.

When a counter-defendant, like the Sun, is prosecuting an antitrust case in federal court and alleging, in part, that the state court action is part of the antitrust violation, "[t]here is . . . an

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

**APP217**

obvious advantage in not litigating these long drawn out and expensive anti-trust questions in two courts." *Am. Broad.-Paramount Theatres, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 42 Misc. 2d 939, 943, 249 N.Y.S.2d 481, 485 (Sup. Ct. 1963), *aff'd*, 20 A.D.2d 890, 251 N.Y.S.2d 906 (1964).  As a result, principles of comity, deference, and judicial administration counsel for dismissing or staying this action in favor of the first-filed federal court antitrust proceeding.  *See Colortyme Fin. Servs., Inc.*, 940 F. Supp. at 274 (granting motion to dismiss and transfer of Hawaii's breach of promissory note case in favor of first-filed Texas action involving antitrust claims).

### D.    The Court Should Dismiss Because the Review-Journal's Counterclaims are Compulsory in the Sun's Federal Court Action.

Under Nevada Rule of Civil Procedure 13(a), a court may dismiss any claim that should have been brought as a compulsory counterclaim in a previously filed action.  *Exec. Mgmt., Ltd. v. Ticor Title Ins. Co*., 114 Nev. 823, 843, 963 P.2d 465, 478 (1998).  "'The purpose of NRCP 13(a) is to make an "actor" of the defendant so that circuity of action is discouraged and the speedy settlement of all controversies between the parties can be accomplished in one action."'  *Id.* at 842, 963 P.2d at 478 (quoting *Great W. Land & Cattle v. Sixth Jud. Dist, Ct*., 86 Nev. 282, 285, 467 P.2d 1019, 1021 (1970)).  Since the Sun's federal court action was filed first, federal law governs whether the Review-Journal's counterclaims are compulsory.  *See Pochiro v. Prudential Ins. Co. of Am*., 827 F.2d 1246, 1249 (9th Cir. 1987).  The Ninth Circuit applies a "logical relationship test" to determine whether two claims arise out of the same transaction or occurrence.  *Id*.

The Review-Journal's Counterclaims are logically connected to the Sun's antitrust claims such that they must be asserted in federal court.  Both cases arise from, and focus on, the 2005 JOA.  Indeed, the Sun's federal court action alleges, among other things, that the Review-Journal has abused the 2005 JOA to drive the Sun out of business and that the very assertion of the state court Counterclaims are part of an unlawful monopolistic enterprise.  The Review-Journal's attempt to terminate the 2005 JOA through its Counterclaims is not only central to both actions, it was the last straw for filing the federal court suit.

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

17

**APP218**

Courts have found many different claims compulsory to antitrust claims. *See, e.g., Colortyme Fin. Servs., Inc. v. Kivalina Corp*., 940 F. Supp. 269, 273 (D. Haw. 1996) (subsequent action on promissory note was dismissed and transferred as a compulsory counterclaim to earlier Sherman Act case in another jurisdiction); *Sikes v. Rubin Law Offices, P.C*., 102 F.R.D. 259, 262 (N.D. Ga. 1984) (defendant's counterclaims for breach of contract, libel, slander, and tortious interference were compulsory to plaintiff's antitrust claim); *Hosp. Bldg. Co. v. Trustees of Rex Hosp*., 86 F.R.D. 694, 697 (E.D.N.C. 1980) (counterclaims for defamation and abuse of process were compulsory to antitrust claim); *see also Seattle Totems Hockey Club, Inc. v. Nat'l Hockey League*, 652 F.2d 852 (9th Cir. 1981) (enjoining Canadian breach of contract action where claims were compulsory counterclaims in pending, first-filed antitrust suit in federal court).

The Sun's antitrust claims are inescapably tangled with the Review-Journal's Counterclaims seeking to terminate the 2005 JOA to advance Adelson's anticompetitive conspiracy. Therefore, the Review-Journal must advance those claims in federal court, the only tribunal with jurisdiction to consider its Sherman Act and Clayton Act liability for terminating an NPA joint operating agreement.

**E.      Alternatively, The Court Should Stay Proceedings on the Review-Journal's Counterclaims Pending the Federal Court Action.**

Courts have inherent authority to stay proceedings. *Maheu v. Eighth Jud. Dist. Court In & For Clark Cty., Dep't No. 6*, 89 Nev. 214, 217, 510 P.2d 627, 629 (1973) (citing *Landis v. N. Am. Co*., 299 U.S. 248, 254-255 (1936)). State courts often stay proceedings when there is concurrent federal antitrust litigation based on the same facts and legal issues. *See, e.g., Gen. Aniline & Film Corp. v. Bayer Co*., 305 N.Y. 479, 485, 113 N.E.2d 844, 847 (1953) (stating in antitrust action: "Accordingly, should a stay of the present action be sought, it will be pertinent to consider, among other matters, whether it is in the state or in the federal forum that a more complete disposition of the issues may be obtained and whether it is the federal or the state court that possesses a greater familiarity and expertise with the trial of such issues.").

For instance, in *Theatre Confections, Inc. v. Andrea Theatres, Inc*., 126 A.D.2d 969, 511 N.Y.S.2d 744, 744 (1987), the New York Supreme Court determined that it was error for the

18

**APP219**

trial court to deny a stay application pending resolution of a federal action that the state court defendant commenced against the plaintiff. Like the Review-Journal's Counterclaims, both actions involved "the validity of the agreement[ ] which plaintiff seeks to enforce in the state action." *Id*. at 744. The defendants contended that the agreements violated federal antitrust laws. *Id*. The court noted that "this is an issue over which the federal court has exclusive jurisdiction." *Id*. The court held that "[s]ince the issue of the legality of the agreements is central, not collateral, to resolution of the state action, considerations of comity, orderly procedure, and judicial economy demand that the federal action be tried first." *Id*. at 745.

The same is true here. As outlined above, the Review-Journal's state law Counterclaims are based on the same agreement that implicates antitrust laws over which the federal courts have sole jurisdiction. The legality of the Review-Journal's attempted JOA termination, and its role in an anticompetitive scheme, are at the core of both actions. The Review-Journal's causes of action are compulsory counterclaims in the federal court case. Therefore, the interests of comity and judicial efficiency warrant entering a stay pending the first-filed federal court proceeding.

## IV.    CONCLUSION

For these reasons, the Sun respectfully requests that the Court dismiss the Review-Journal's Counterclaims. Alternatively, the Court should stay state court proceedings on the Counterclaims pending resolution of the Sun's federal court antitrust action.

DATED this 14th day of October, 2019.

PISANELLI BICE PLLC

By:   */s/ James J. Pisanelli*
James J. Pisanelli, Esq., Bar No. 4027
Todd L. Bice, Esq., Bar No. 4534
Jordan T. Smith, Esq., Bar No. 12097
400 South 7th Street, Suite 300
Las Vegas, Nevada  89101

E. Leif Reid, Esq., Bar No. 5750
Kristen L. Martini, Esq., Bar No. 11272
Nicole Scott, Esq., Bar No. 13757
LEWIS ROCA ROTHGERBER
   CHRISTIE LLP
One East Liberty Street, Suite 300
Reno, NV  89501-2128

*Attorneys for Plaintiff/Counter-Defendant*

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

19

**APP220**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I am an employee of Pisanelli Bice PLLC, and that on this 14th day of October, 2019, I caused to be e-filed/e-served through the Court's electronic filing system true and correct copies of the above and foregoing **MOTION TO DISMISS COUNTERCLAIMS OR, ALTERNATIVELY, TO STAY COUNTERCLAIMS PENDING FEDERAL COURT ACTION** to all parties currently on the electronic service list.

*/s/ Kimberly Peets*
An employee of Pisanelli Bice PLLC

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

20

**APP221**