# EXHIBIT 10

May 28, 2026, Transcript of Hearing Re: Status Check: Status of Case;
Defendants' Motion to Lift Stay and Motion for Summary Judgment,
*Las Vegas Sun, Inc. v. News+Media Capital Group, LLC, et al.*, Eighth
Judicial District Court, Clark County, Nevada, Case No.
A-18-772591-B

# EXHIBIT 10

**APP286**

**Electronically Filed**
**5/29/2026 3:02 PM**
**Steven D. Grierson**
**CLERK OF THE COURT**

TRAN

DISTRICT COURT
CLARK COUNTY, NEVADA
* * * * *

LAS VEGAS SUN INC.,                )
                                   )
           Plaintiff,              )      CASE NO. A-18-772591-B
                                   )      DEPT NO. 16
vs.                                )
                                   )
NEWS+MEDIA CAPITAL GROUP           )
LLC,                               )
                                   )      **TRANSCRIPT OF**
                                   )       **PROCEEDINGS**
           Defendant.              )
                                   )
AND RELATED PARTIES                )


BEFORE THE HONORABLE TIMOTHY C. WILLIAMS, DISTRICT COURT JUDGE

THURSDAY, MAY 28, 2026

**TRANSCRIPT OF HEARING RE:**

**STATUS CHECK:   STATUS OF CASE**

**DEFENDANTS' MOTION TO LIFT STAY AND MOTION FOR SUMMARY JUDGMENT**


APPEARANCES:

FOR THE PLAINTIFF:                      JAMES J. PISANELLI, ESQ.
                                        LEIF REID, ESQ.
                                        KRISTEN L. MARTINI, ESQ.
                                        Via Zoom


FOR NEWS+MEDIA CAPITAL GROUP,           J. RANDALL JONES, ESQ.
AND LAS VEGAS REVIEW-JOURNAL:           MICHAEL J. GAYAN, ESQ.


RECORDED BY: MARIA GARIBAY, COURT RECORDER
TRANSCRIBED BY:  JD REPORTING, INC.

1

**APP287**

**LAS VEGAS, CLARK COUNTY, NEVADA, MAY 28, 2026, 1:29 P.M.**

**\* \* \* \* \***

THE COURT: Okay. We're on the record. I just want to say good afternoon to everyone and welcome you to Thursday, May 28th, 2026, 1:30 p.m. session.

And let's go ahead and set forth our appearances, and we'll start first with the plaintiff and then move to the defense.

MR. PISANELLI: Good afternoon, Your Honor. James Pisanelli on behalf of the plaintiff, Las Vegas Sun, with my colleague Mr. Reid, and Kristen Martini is online watching.

THE COURT: All right. Thank you, sir.

MR. GAYAN: Good afternoon, Your Honor. Michael Gayan, Claggett & Sykes, on behalf of defendants and counterclaimant. Also with me is my cocounsel Randall Jones here in court. And I understand -- I can't see it on my monitor here, but I understand David Singer, our cocounsel, and Katrina Stark from my office are both observing as well as the Review-Journal's chief legal officer, Benjamin Lipman.

(Colloquy.)

THE COURT: And let's go ahead and get started. I've had an opportunity to review the points and authorities on file. I also took a look at the First Amended Complaint that was filed back on November 15th of 2019.

All right. Let's go ahead and get started.

MR. GAYAN:  Thank you, Your Honor.  For the record, Michael Gayan for defendants.

So this is a relatively straightforward and simple motion.  The Sun --

THE COURT:  And for the record, I did rereview the decision issued by the Ninth Circuit Court of Appeals.

MR. GAYAN:  And I appreciate that.  I appreciate the Court's preparation.  That is really the crux of the motion and the impetus for us filing this motion in the first place and why we waited until we did to file it because the mandate from the Ninth Circuit issued in late February of this year.  But --

THE COURT:  And I don't mind saying for the record I remember this case.  I remember the pushback I had regarding the antitrust litigation.  I said I would not touch that.  That's up to the federal courts to make that determination.  I understood.  I understood what my limited role was as it related to the arbitration proceeding in this matter.

And, for the record, I did take a look at the First Amended Complaint just to make sure I understood what was remaining.

MR. GAYAN:  Well, and Your Honor's recollection is actually saying something here because this case has been stayed for nearly six and a half years.  So it's good that you do recall where we were at.  And we've laid it out in our papers.  Essentially a portion of the claims were compelled to

**APP289**

A-18-772591-B | LV Sun v. News+Media | Motion| 05-28-2026

arbitration. That occurred. The Court had some motion practice and ultimately confirmed the arbitrator's decision. And that went up on appeal, and the Nevada Supreme Court affirmed Your Honor. And so that was all of the arbitrable claims.

And then before Your Honor entered the stay, the parties were working towards litigating the Sun's remaining claims and the Review-Journal moved for leave to amend its answer and assert a counterclaim. There was a lot of motion practice, which was reflected on the docket.

But, ultimately, the Sun filed an antitrust case in federal court, and Your Honor after extensive briefing and oral argument decided to stay the case because the federal action at that point, the Review-Journal had challenged the enforceability of the 2005 joint operating arrangement under federal law, specifically the Newspaper Preservation Act.

And, Your Honor, if I may, I have a one page handout. I'd like to approach. I've given opposing counsel a copy of this.

THE COURT: And you may, sir. Thank you.

MR. GAYAN: And there's nothing new in this handout. It simply is to highlight kind of the key points of the motion and the reply. And to begin with, Your Honor, your stay order entered on January 31st, 2020, and that's Document 210 in the record, makes it quite clear why the Court stayed this case to

**APP290**

A-18-772591-B | LV Sun v. News+Media | Motion| 05-28-2026

wait and see what happened in the federal antitrust action. And this is at page 2, lines 23 to 26 of the Court's order. It says, quote, The Court finds that in light of the issues currently pending before the federal court in the matter styled as Las Vegas Sun, Inc. versus Adelson, et al., 2:19-CV-01667-RSB-BMW, some of which could impact the pending claims, defenses and counterclaims, a stay of all further action in this case is appropriate.

And then I think the next passage here on the handout from page 3, lines 2 to 4, relate to Your Honor's comments from a minute ago, and I forgot the quotation marks on this one, on the handout, but it is a direct quote from your order, quote, The Court has not addressed the merits of whether the 2005 JOA is unlawful and unenforceable as a matter of federal law under the Newspaper Preservation Act, an issue that is currently before the federal court.

So that is what Your Honor was thinking at the time or at least articulated in the order, that it would not be appropriate to move forward in this case based on the federal courts consideration of whether the 2005 JOA was a lawful and enforceable agreement under federal law.

THE COURT: And the reason why I did that instinctively, I mean, I didn't know what our federal courts would do with that issue. And I don't know if this was surprising or not, but I read their decision, and they were

JD Reporting, Inc. | olsedana@gmail.com | 702.378.3456

5

**APP291**

A-18-772591-B | LV Sun v. News+Media | Motion| 05-28-2026

fairly clear as far as the Ninth Circuit is concerned.  And it went up to the U.S. Supreme Court, and they denied the writ of cert.  That's my understanding.

MR. GAYAN:  That's correct, Your Honor.  So that decision is final and I guess to close the loop on why it made sense to stay this case.  And I'm looking at page 14 of our motion.

The Sun's remaining claims, the claims that had not been compelled to arbitration are all premised on the existence of an enforceable and lawful 2005 JOA.  The first claim is for declaratory relief related to the parties' rights and obligations under the 2005 JOA.  And the second, fifth, seventh, and eighth claims for relief are all for breach of contract tied to specific provisions in the 2005 JOA:  The arbitration provision; the front-page-format provision, also known as the Sun box provision (phonetic); the promotional obligation provisions; and the E-edition provision.

And then finally, the ninth claim is for tortious breach of the implied covenant of good faith and fair dealing.  Well, that claim, although a tort, it can only survive if there's a valid contract on which it can be based.  So that is why it made sense for Your Honor to stay this case.

And I should also mention the Review-Journal's counterclaim, which Your Honor granted leave to file, I believe, in September of 2019, sought to terminate the 2005

**APP292**

A-18-772591-B | LV Sun v. News+Media | Motion| 05-28-2026

joint operating arrangement on various grounds.  So all of those contract-based issues, claims, defenses, et cetera, could potentially all be impacted by whatever the federal court decided under the Newspaper Preservation Act with respect to the 2005 JOA.  And that's why, at least from our perspective, Your Honor entered the order expressly acknowledging that some of those claims, defenses, and counterclaims could be impacted by the federal case, and specifically the outcome of whether the 2005 JOA was lawful and enforceable under the Newspaper Preservation Act.

And Your Honor has recognized it already from the Ninth Circuit, but the handout quotes the key passage.  It's a lengthy published opinion cited in our papers.  I know Your Honor has reviewed it, but the key passage is, quote, For the foregoing reasons, we conclude that because it did not receive the required prior written consent of the Attorney General, the 2005 JOA is unlawful and unenforceable.

So and after the Ninth Circuit issued that unanimous opinion, it also denied the Sun's request for *en banc* rehearing.  The Sun filed a petition for writ of cert to the U.S. Supreme Court, which was denied earlier this year and then mandate issued.  So I don't believe there's any debate on whether the Ninth Circuit's decision is final and that the 2005 JOA is now unlawful and unenforceable.

And what's important to note from the Newspaper

JD Reporting, Inc. | olsedana@gmail.com | 702.378.3456

**APP293**

A-18-772591-B | LV Sun v. News+Media | Motion| 05-28-2026

Preservation Act, and I might say NPA from time to time, but the NPA specifically provides that it is unlawful and unenforceable to enter into, perform, or enforce a JOA that has not been approved in writing by the Attorney General.  So this case simply cannot go forward.  The Sun's remaining causes of action are all expressly foreclosed by the Ninth Circuit's decision.

And just so that's very clear, it's in our papers in the motion at page 14 I mentioned, but also in the reply at pages 8 and 9, there's a lengthy footnote that lays out the different causes of action and the paragraph citations from the First Amended Complaint on file in this case.

But, specifically, the first cause of action seeks dec relief, quote, One, interpreting the parties' rights and duties as set forth in the 2005 JOA; and two, directing defendants to comply with the 2005 JOA.

Well, this Court, respectfully, cannot grant that relief at all.  It is mooted by the Ninth Circuit's decision. We've covered it in our --

THE COURT:  I think I recognized that six years ago; right?  I mean...

MR. GAYAN:  Yeah.

THE COURT:  Yeah.

MR. GAYAN:  So and then to shortcut things, the second, fifth, seventh, eighth, and ninth causes of action all

**APP294**

A-18-772591-B | LV Sun v. News+Media | Motion| 05-28-2026

have the same allegation, quote, The 2005 JOA is a valid and existing contract. Well, they all have that because that's a required element to obtain any of the relief and prevail on any of those claims.

Well, that allegation is no longer possible as a matter of law. It was foreclosed by the Ninth Circuit's decision, and the Sun can never prove all of the elements of any one of its remaining causes of action. So that is the purpose of a Rule 56 motion. And that is why we've moved to lift the stay and for summary judgment, because there is no longer any purpose to the stay.

The Sun debates who said what six and a half years ago and why this Court entered the stay and what the real scope of the stay was or should be today. But, in reality, there's nothing left to this case. And it is ripe for summary judgment and ending.

And the Sun does not dispute that. There is actually no dispute in the Sun's opposition about the merits of its claims. It does not claim that any of its causes of action have any chance of success or should survive.

The language of Rule 56(a), and I actually attended a CLE last week upstairs on the 17th floor with Justice Herndon and Judges Gall, Bluth and Reynolds on Rule 56 and appropriate uses, and we talked about this. Rule 56(a) is actually mandatory. It says the Court shall grant summary judgment if

APP295

the movant shows that there is no genuine dispute as to any material fact.  And the movant is entitled to judgment as a matter of law.  And the last sentence of that provision is the Court should state on the record the reasons for granting or denying the motion.

So, Your Honor, here, and I know Your Honor is very familiar with the burden and the burden shifting.  And here, the Review-Journal has -- and defendants have met their burden under Rule 56 to show that there are no genuine issues of material fact left in this case.

And that shifted the burden to the Sun to show otherwise, and they did not.  If the Court studies the Sun's opposition, there is no attempt whatsoever to meet the Sun's Rule 56 burden.  And so that is frankly fatal to the Sun's fate here today.  They really have no basis to move forward or for this Court to not enter summary judgment.

All we've heard from the Sun is that the Court should essentially reconsider the reason for its stay order and keep the stay in place just to see what else might happen in the federal case.  Well, that is not a valid basis for a stay of a case that should be resolved via summary judgment.

Like I said, 56(a) is mandatory.  We filed the motion.  We've carried our burden.  The Sun has not.  Summary judgment is mandatory at this point.

In terms of the Sun's request to keep the stay in

**APP296**

A-18-772591-B | LV Sun v. News+Media | Motion| 05-28-2026

place despite its claims having no chance of success, there's myriad procedural problems with what they're asking for.  They have not actually moved for leave to amend their complaint.  They have not counter --

THE COURT:  I read that.

MR. GAYAN:  Yeah.  And there's no copy of a proposed amended complaint attached with their opposition.  And, in fact, Your Honor, it's Document 183 on the docket, but this Court entered a second amended scheduling order on November 20th, 2019, that provided that the deadline to move to amend the pleadings closed.

And if you go back even further, on September 24th, 2019, the Sun stipulated with defendants that the deadline to amend pleadings would be September 30th, 2019, long before the stay was entered.  And I believe it was even after the Sun had filed its federal antitrust case when that stipulation was entered into and granted by the Court.  So --

THE COURT:  I think we have some clarification as far as amendment of pleadings are concerned in light of our Supreme Court decision in *Nutton*.

MR. GAYAN:  That's kind of where I was going.  So the Sun has not attempted to -- has not mentioned *Nutton* or attempted to meet that standard.  So there's many procedural issues with what the Sun is asking this Court to do to just kind of keep the stay in place in case something else comes up

APP297

A-18-772591-B | LV Sun v. News+Media | Motion| 05-28-2026

down the road.  But that is not -- you know, respectfully, this Court has a lot of discretion on stays, but --

THE COURT:  It's not unfettered.

MR. GAYAN:  It's not unfettered.  It was fully -- it was extensively briefed in late --

THE COURT:  I mean, I don't mind saying this.  And I think this is sometimes overlooked, but I do understand limitations on judicial power, and I always look to the rules to see what discretion, if any, I'm given.  Sometimes I'm not given any.  Sometimes I'm given some latitude.  Sometimes much broader, but it's done on an issue-by-issue, case-by-case basis.

But I never have unlimited; right?

MR. GAYAN:  That's right.  And I actually went back and looked at the stay briefing, and there's cases cited there, and stays are supposed to be issued in an evenhanded, fair way.  And so Your Honor has a lot of discretion there.

But here, what's fair is to lift the stay and grant summary judgment.

And we cited in our reply, after we saw the Sun's kind of position on keeping the stay in place as a contingency for them essentially.

Now, we've cited Rule 1 about the just, speedy, and inexpensive determination of every action.  The case has been stayed for six and a half years.  I don't know that it would be

A-18-772591-B | LV Sun v. News+Media | Motion| 05-28-2026

just, speedy or inexpensive to keep it stayed indefinitely because the Sun has really not proposed any end to whatever stay they're asking this Court to continue.

We also cited EDCR 1.10, that directs the courts to efficiently administer court business.  And we also cited the Nevada Supreme Court's annual report, most recent report, but I believe it's essentially the same format and message every year, specifically that timely outcomes build confidence in the judicial system and efficient and timely justice for all is what Nevada Court's promise litigants.

So the Review-Journal is entitled to a timely resolution of this case.  There is no reason to keep this case on the Court's docket for any reason at this point because every cause of action that the Sun has asserted is foreclosed as a matter of law.

Your Honor, I'd be happy to answer any questions the Court has, but I think it is pretty straightforward compared to some of the motions people argued in this case and others.

THE COURT:  Oh, the issues in this case at one point were somewhat very complex and nuanced.  I remember the work I had to perform regarding what to do as far as confirmation and vacation of the arbitration award, and which took a lot of time.  I mean, I actually went back and looked at some of the factual issues that were set forth in the arbitration decision. And I even looked at the record, and there was a controversy

JD Reporting, Inc. | olsedana@gmail.com | 702.378.3456

13

**APP299**

A-18-772591-B | LV Sun v. News+Media | Motion| 05-28-2026

about doing that.  The Supreme Court said I did it right.  And that's what I want to do with this issue right here.

MR. GAYAN:  Thank you, Your Honor.  I'll reserve some time for rebuttal comments after we hear from the Sun.

THE COURT:  All right.  Thank you, sir.

Mr. Pisanelli, sir.

MR. PISANELLI:  Good afternoon, Your Honor.

THE COURT:  Good afternoon.

MR. PISANELLI:  Your Honor, if I may approach, I've got some hard copies of some PowerPoint I'd like to use.

THE COURT:  Absolutely.  I guess if you brought that. I don't know if we have our -- we're not up to snuff right now, right, as far as PowerPoint?

MR. PISANELLI:  Sure we are.  Look at that.

THE COURT:  Oh, there you go.

MR. PISANELLI:  Look at that.

THE COURT:  I guess you fixed it.

And I think that's true, Mr. Pisanelli.

MR. PISANELLI:  Your Honor, I would say this.  I'll start with slide Number 1 actually.  If there is any judicial philosophy that I have learned from you about you it is this one; right?  It is that in this case, and I'd be willing to say every case I've had before you, you have this consistency about not rushing to judgment and allowing parties, to quote you, an opportunity to fully develop their claims.  And, of course --

**APP300**

MR. GAYAN:  I'll just -- Sorry, Counsel.  I just wanted to place on the record I just got these slides right before Mr. Pisanelli started.  I just, on behalf of defendants, will object to anything in the slides that were not provided with the Sun's opposition or otherwise in the motion or reply. I think there's a couple of things in here like that.

THE COURT:  I have -- like when I look at the quote, I think that's true.

MR. PISANELLI:  Yeah.  And the foundation of it makes complete sense; right?  Our job here, and I think this is the underlying foundation of your desire that parties fully develop their claims and have the opportunity to do so is because our job -- you've said this to us time and time again -- is to get it right.

That's what all of us are here to do, not just Your Honor.  All of us are here to get it right, to find the truth of what really happened, find where justice lies.  Because that means when we find justice, sometimes there'll be exoneration. Sometimes there's going to be accountability, but we can't achieve either of those goals of justice unless cases are fully developed.  And I'm going to be blunt about this motion.  It's not anything personal against counsel, but I can't think of a better word about this motion than that it feels perverse. It's a perverse attempt to rush to judgment.

They had the benefit of the length of the stay

**APP301**

A-18-772591-B | LV Sun v. News+Media | Motion| 05-28-2026

because we have parallel litigation, and it sounds startling. I agree, six and a half years, I probably would have said it more times than Mr. Gayan did if I was in his shoes. It sounds startling, but we know the reason why. Parties and the courts haven't been sitting doing nothing for this, this time period. There's been a lot, and I mean a lot of litigation going on, and issues that impact what we do here.

So by rushing to judgment here while a stay is pending, it actually is not what Your Honor seeks to do in your guidance to us developing cases. This is an attempt to stifle the development of this case. It's not in line with the policies underlying Rule 56. It's not in line with the Court's judicial policy that's up on the screen. It's not well-founded. And, respectfully, it's not well intended. Rule 56, by it's black letter tells us to get to the merits of a dispute. And that's not what this motion is.

They're jumping straight to judgment before, not after, as counsel would suggest to you, but before the Sun gets the opportunity to amend its claims to conform to a change in law. A change in law that's been in place for 50 plus years. They sprint to this courthouse before an amendment can happen while the stay is in place to say let's end this case; there's nothing left. I think we just heard those exact words. Let's end it because there's nothing left.

What it is, and let's call it what it is. This is a

**APP302**

A-18-772591-B | LV Sun v. News+Media | Motion| 05-28-2026

sharp litigation tactic, Your Honor, designed to avoid accountability. That's really what it is, and I don't mean that disrespectfully, Counsel, it's just what it is.

You know, as lawyers, Your Honor, we love to use metaphors in how we advocate before you and before juries. And this motion to me just feels like an attempt for RJ to slip summary judgment not through the back door, but through a closed door, slipping it under a locked door, locked because there's been a stay in place and seeking judgment on claims that haven't even been filed yet. That's what we're doing here.

And even worse, Your Honor, I think it's an attempt at a procedural stonewall. There's no one in any of these tables that believes that the dispute between these parties is over, no one.

But attempting to stop us from bringing the actual amended claims before you with this summary judgment is what's going on here. And they come, the RJ does, Your Honor, with clear eyes. There's no accidents here; right?

The RJ is fully aware that the Ninth Circuit's recent opinion changed 50 years of law practice and regulations, 50 years of it.

And they're also fully aware that the Ninth Circuit expressly stated that they were taking no position on the enforceability and the reversion back to the original 1989 JOA,

A-18-772591-B | LV Sun v. News+Media | Motion| 05-28-2026

which was approved, and there isn't any argument anywhere, not a legitimate one anyway, that that is no longer enforceable.

So let's take a look at slide 2 just simply to see what the Ninth Circuit said about it.

We reiterate, the Court said, that we do not have before us any issues concerning a reversion of the 1989 JOA, and we express no views on any such questions.

So the RJ comes to you fully aware that the Sun intends to amend its pleadings to bring up and to allege the reversion back to the 1989 JOA. They know that's going to happen because they've seen it. They've seen it in the federal court. And, by the way, Your Honor, they saw it here.

When we were litigating before you, we foreshadowed the express contractual provision where both parties said, if anything happens to the 2005 JOA, it becomes unenforceable. There's some inability to enforce it.

The parties expressly agreed they would revert back to 1989. So the parties always knew as litigants, and, as we'll call them, partners, that the 1989 agreement was going to be at issue if anything ever happens to the 2005 agreement. It was foreshadowed in the federal court case. And, as I said, it's in the contract itself.

Now, here's an important fact for Your Honor that hasn't been brought up. The Sun has already amended its claims in the federal action. That's already happened. And the RJ

**APP304**

ran to this Court in the face of the stay to seek summary judgment before the amendment could happen on claims it knows are no longer operating.  The claims that counsel read to you about the 2005 JOA are not the claims that will govern this dispute, that govern these parties.  They know that because it's already happened in the federal court.

So the bottom line is this:  These two motions, a stay on the one hand and summary judgment on the other cannot be prosecuted together.  That's where we lose our way.  That's where justice cannot be found.

The only proper issue before Your Honor is whether to lift the stay.  That's it.  The proper mechanism either should have been at a status report or in a motion to lift the stay to explain to Your Honor why they want the leave to file summary judgment.

Your Honor would have been given all of the background of what's been going on in federal court and made a decision, okay, go ahead and file it.  But running to court and prosecuting these two claims together denies the due process to the Sun.

What it does is it gives the effect that there never really was a stay in the first place.  If we're sitting on our hands as we're supposed to with a stay in place and all of a sudden get hit with a summary judgment, not even the debate of whether it should be filed, that's the denial of due process.

JD Reporting, Inc. | olsedana@gmail.com | 702.378.3456

**APP305**

A-18-772591-B | LV Sun v. News+Media | Motion| 05-28-2026

That's the denial of fully developing your case that is the heart -- at the heart of our position.

Your Honor, should know this exact tactic, exact tactic RJ tried in federal court, the exact maneuver of summary judgment and early summary judgment on the old claims, and they got shot down immediately.

Let's take a look at slide 3.

The court -- the federal court granted the Sun leave to amend, to update its claims in light of the change of the 50 years of law.

And this is what the Court said.  The Sun did not have cause to submit the proposed amendments until the Ninth Circuit opinion on the interlocutory appeal changed the legal landscape.  Under the circumstances the Court said, the Sun was not under an obligation to plead in advance of the Ninth Circuit's opinion.

And the Court went onto say, a change in the law, including where there's previously an absence of controlling law is the kind of change that justifies amendment of a complaint.

The Ninth Circuit opinion acknowledges, the Court said, that it diverges with other authorities, and to the extent the Ninth Circuit relied on the *Loper Bright* decision, which should be noted that *Loper Bright* was not law until June of 2024, about two and a half years after the decline -- the

**APP306**

deadline to amend pleadings passed.

Isn't that an interesting quote in light of what counsel just said to you, quoting a case management order from 2019 and the expiration of the deadline to amend?  Well, with the change of law and the stay in place, naturally those have to be taken into consideration.

So what the federal court did when presented with the exact thing Your Honor has been presented is granted leave to amend, to, quote, To alter its complaint, mostly to plead around the invalidation of the 2005 JOA and bring the complaint current.  Federal court denied as moot -- that's the quote -- denied as moot the RJ's pending motion for summary judgment that was tied to the older complaint.

That's exactly what the RJ is doing here, prosecuting a motion for summary judgment against the complaint it knows is no longer operative, it knows is locked away in a case that is subject to a stay.

THE COURT:  Can you tell me, what was the timing of the stay in this case?  Because that I don't remember.

And what I mean by that is this because we're talking six years ago.

MR. PISANELLI:  Yeah.

THE COURT:  I do remember the appeal, right, regarding the confirmation and/or vacation of the arbitration decision.  I remember that.  And we're talking about six years

APP307

or so ago.  And was the stay entered along with the appeal to the State court?  Was it or no?  I don't know.

MR. PISANELLI:  The appeal to the Ninth Circuit, Your Honor?

THE COURT:  No.  I'm talking about the appeal to the Nevada Supreme Court as it relates to my decision pertaining to confirmation and/or vacation of the arbitration award.

MR. PISANELLI:  Yeah.  My recollection is that the stay was entered after that, but I'll defer to Mr. Reid.

MR. REID:  I can answer that, Your Honor.  After you -- there may have been a stay of the --

THE COURT:  Do you see where I'm going on that?  Because I think -- I'm looking at it in two ways.  And I remember having -- it's funny how I remember a lot of these cases.  We had a discussion about antitrust law and those types of things, and one of the things I really pushed back on at the time, because I understand the limits of my jurisdiction.  I wasn't going to touch it; right?  And I understand you were going to run to federal court, and that was up to them to decide those specific issues.

And so -- and I don't know for this for sure, but I would anticipate I probably entered a stay in this case as it pertains to the appeal on vacation and confirmation of the arbitration award.  And if I didn't, I didn't.  That's okay.

So I'm trying to get the --

**APP308**

A-18-772591-B | LV Sun v. News+Media | Motion| 05-28-2026

MR. REID:  It's slightly different than that, and I can just clarify it for you really quickly.

The case came back to you after the Supreme Court issued its remittitur confirming your decision and affirming the arbitration award.  Shortly after that, within 30 days or so, the RJ moved to amend its -- they moved for leave to assert counterclaims in this case.  And as a response to the counterclaims that were asserted here, so this would have been in September or so of 2019, we filed a motion -- pardon me.  We filed our complaint in federal court, the antitrust complaint and moved for a stay of those counterclaims that were before you.  And then in response to our motion for leave to stay the proceedings, the RJ then moved for the entire case to be stayed.

THE COURT:  All right.

MR. GAYAN:  Your Honor, if I may.

THE COURT:  And I've actually -- we can talk about this, but I've just been handed, of course, thank you, Tori, a copy of my stay order with specific findings, and that apparently was entered on, oh, wow, January 31st, 2020.

MR. GAYAN:  Your Honor, can I address one --

THE COURT:  I'm going to let you address everything, Mr. Gayan, you know that, because I went to get to the bottom of it.

But I'm just looking here, and I do make some

JD Reporting, Inc. | olsedana@gmail.com | 702.378.3456

23

**APP309**

findings. It says this matter comes before the Court on December 14th -- December 4th of 2019, at 9:30 a.m. with all parties appearing by and through their counsel of record and the Las Vegas Review-Journal, collectively RJ, emergency motion to stay the case and postpone the action on arbitration related motions on an order shortening time.

See, that's why I'm kind of going -- I'm trying to figure out, okay, granted a stay. Why did I grant the stay? And the order kind of says why I granted the stay. And I said arbitration related motions on order shortening time, and the Las Vegas Sun's countermotion to stay defendants' 10, 26 -- 27th affirmative defense's countermotion.

Interesting. And I actually -- and then I go down here, and I discussed one of the purposes for the stay, and this was a finding I made, quote, this is on page 2, The Court finds that in light of the issues currently pending before the federal court in the matter styled Las Vegas Sun versus Adelson, gives the citation, of course, from the federal court, some of which could impact the pending claims, defenses and counterclaims and stay all further action in the case is appropriate with the exception of the Court ruling on postarbitration motions. The stay shall remain in place until further order of the Court.

And I'm looking here because I do kind of -- I do remember this. My major concern was this. I wanted to be

hands off as far as the antitrust claims were concerned.  I didn't want to make any decisions that potentially would impact anyone's rights from a due process and a litigation perspective.

But looking at the timing, is somewhat unique because right here -- and I was very much concerned about the federal court action, and I wanted to know what impact, if any, it had on pending claims.

Now, hypothetically, based upon the decision from the Ninth Circuit, it might have a significant impact on pending claims, at least according to the order.

But go ahead.  Because I think that's important, reviewing the order granting the, yeah.

MR. PISANELLI:  Your Honor, it is important, and here's why.  The parallel actions going on in the federal court versus here, when you went to the stay, were not identical claims, but there were issues that overlapped.

The original claims in the federal court were based upon the RJ's anticompetitive behavior, and the foundation for some of its behavior, of course, but the parties were bound together contractually by the 2005 JOA.

Your Honor recognized, well, wait a minute.  We have a breach of contract related claims in 2005.  So I have to wait and see what it is the federal court is going to do with its analysis of the 2005.  Even though it's not breach of contract,

**APP311**

they are analyzing the relationship between the parties as it relates to that contract.

That's exactly what's going on now; right?  The federal court has said, All right, in light of the Ninth Circuit's opinion, we have to shift, even though there's not a breach of contract claim, the tie between the parties is now the 1989 contract, the JOA.  They reverted back, and so the exact same analysis applies.

Now, we have claims, once we are given leave, if the stay is lifted and we then file an appropriate motion with permission because the stay is lifted for leave to amend, then we will, just as the federal court allowed, will update our claims to allege the reversion back to 1989 JOA, and here we are right back where we started with the stay.

We will now be fighting over the 1989 JOA while the 1989 JOA is at the heart of a mix of the anticompetitive behavior and claim related thereto in the federal court.  It is truly parallel, exactly the same issue that inspired Your Honor to put the stay in place the first time.

The only difference is that they ran to you without leave to file summary judgment to say, in essence, Your Honor, end this case before the Sun amends its complaint, as the federal court allowed them to do.  That's why I said it was perverse.  It wasn't the development of claims that they're trying to do; it was the stifling of claims which the federal

**APP312**

court said, I'm not going to permit that.  Your summary judgment in the federal court said is moot because I'm going to, as the law requires, I'm going to allow the Sun to amend its complaint.

THE COURT:  So tell me why aren't these -- in light of the current decision by the Ninth Circuit, and I understand there's an amendment in the federal courts, but why weren't these claims included as part of that amendment?

And the reason why I asked that question -- it's been a long time since I thought about it, but I remember taking a course 45 -- it might be longer than that, years ago, pendent versus ancillary jurisdiction and jurisdiction of federal courts, and it seems to me that if the federal courts have jurisdiction over what they are apparently litigating, why don't they have everything up there?  I mean, why is this case still here today?  Because I get it, and I understand there was a really, an issue of enforceability as it pertains to the 2005 joint operating agreement.  I understand that.

But that -- because I'm trying to figure out why would we have parallel litigation going on now in state court versus federal court, and why the federal court isn't handling everything.

MR. PISANELLI:  Well, the case started here with contract-based claims with you.

THE COURT:  I understand.  Yeah.

**APP313**

A-18-772591-B | LV Sun v. News+Media | Motion| 05-28-2026

MR. PISANELLI:  And as antitrust arose from the behavior of the RJ, then they migrated over to federal court where they belonged.  But that is not to say that because the federal court has jurisdiction over the anti-competitive behavior related claims that the federal court must and only must also take all of those potentially pending claims.  It is the pleading party's choice absent any authority, which I haven't seen, and has not been presented to you.

It is the option to have these claims here, and there's never been a litigation motion.  There's never been anything in federal court.  There's never been anything here that says it's procedurally improper to have these contract-based claims here.

What is improper, and Your Honor recognized that with the original stay is for both courts to be analyzing the overlapping issues.  They are independent claims, but the overlapping issues, for instance, of the enforceability of originally of the 2005 JOA, now the enforceability of the 1989 JOA, there's an overlap there that's the same point you raised in staying this case.

What should happen here, Your Honor, understanding your point that there could be a circumstance where the federal court takes these claims.

But, remember, that case too is fully developed.  So there's no guarantee, Your Honor, if you were to end this case

A-18-772591-B | LV Sun v. News+Media | Motion| 05-28-2026

that the federal court is going to say, okay, I'll take those new claims.  We could end up with the Sun having no forum, having no place to hear its contract-related claims.

If we simply leave the stay in place, who knows?  Perhaps there is a world where the RJ is not held accountable either on contract or an antitrust for the behavior that it has employed here.  I don't see it, but it's possible.  And then this case never goes anywhere with the stay in place.

On the other hand, we have already litigated, and they've already lost summary judgment on the suggestion that the 1989 JOA was terminated by the concept of the doctrine of novation.  They've already lost that issue.

They raised it again, but they've lost it on summary judgment.  They raised it again at the preliminary injunction stage.

And so in all likelihood, there will be a day of reckoning.  There is going to be accountability for what the RJ has done.

But to say that Your Honor -- the better practice, may be the best practice is all of these claims are in federal court with no guarantee that the federal court will take them puts the Sun at risk unnecessarily.

We didn't create this, the quagmire.  It's the way -- that the case has developed.

THE COURT:  And I kind of get that, but, I mean,

JD Reporting, Inc. | olsedana@gmail.com | 702.378.3456

29

**APP315**

A-18-772591-B | LV Sun v. News+Media | Motion| 05-28-2026

technically, the claims are before me right now because the claims that are before me right now are based upon the 2005 joint operating agreement.

MR. PISANELLI: That's right. That's right. But we have not had our moment before you with a lifted stay to tell you why equity requires us given an opportunity to fully develop our claims by amending and the law in Nevada.

Nevada Supreme Court has ruled expressly with the change of law it is error for a trial court not to allow an amendment to a pleading even after the expiration of the deadline for amendment when the law changed.

The reason I put the quotes from the Federal Circuit -- or the federal court up there, Your Honor, is to make the point that this is the exact issue that went to the federal court, and the federal court said there has been no reason for the Sun to amend up to this point. The law just changed with this Ninth Circuit opinion.

So there has been no undue delay. The Court found no prejudice to the RJ, found no bad faith as it relates to the Sun and granted the Sun the right in light of the change of law to update its claims.

If Your Honor were to say today the only issue before you is whether the stay should be lifted, as I've said, it's inherently unfair and inequitable --

THE COURT: I understand what you're saying.

**APP316**

MR. PISANELLI:  -- to have a summary judgment --

THE COURT:  You're saying look, Judge --

MR. PISANELLI:  -- then we would file that motion.

THE COURT:  I understand what you're saying.  I get that, I do.  You're saying look, Judge, first and foremost, the stay -- a stay motion should be filed, and then that evens the playing field, and then we can -- I can move.  They can do what they have to do, and you can conduct a much different analysis. I understand that.

MR. PISANELLI:  That's right.

And I think it's also important to make this point, Your Honor.  The unenforceability of the 2005 JOA does not exonerate the RJ from liability for his conduct over the past, we'll call it 11 years.

Let's take the antitrust claims and put them aside. Just the pure state based contract-related claims, simply by saying, the Ninth Circuit, that the 2005 JOA is not enforceable does not eliminate the day of reckoning and accountability for the RJ.  We have claims for the unjust enrichments, for instance, even where the contract's invalid.  The Nevada Supreme Court has told our trial courts not to be so enamored with the Latin phrase *in pari delicto*; right?

What the court wants us to do is to look at the rule and see if the public cannot be protected because of the application of the rule where is there no serious moral

**APP317**

turpitude because of this illegal contract?  Is the defendant the one actually guilty, or does that ring a bell on what we're doing here?

Then under those circumstances, Nevada law permits the prosecution of claims for unjust enrichment, for restitution, for quasi contract.  There's nothing or implied contract and all of the remedies that come along with that, including constructive trust and accounting.  So with a chance to amend, if again this was merely the procedurally correct motion of lifting the stay and Your Honor says, yes, we would ask you for permission to amend, and all of those claims of accountability unrelated to the enforceability of the 2005 JOA would be brought before you.

In addition, we would show you that the federal court has entered summary judgment on the issue of novation so that the 1989 agreement is now enforceable, and we'll show you the express language of the RJ itself where it agreed that the 1989 -- that the parties would revert back to 1989.

So simply by telling you that the 2005 JOA is unenforceable, there's nothing left in this case is dead wrong. There's a lot left to litigate here.

THE COURT:  I'm still wondering why these issues aren't in front of the federal court.  I --

MR. PISANELLI:  If we were --

THE COURT:  I'm really thinking about it.  The more I

APP318

think about it because this would be -- and I forget the term. I understand I haven't practice in federal court in 25 years, but my point would be this.  This would come under the term of art pendent and/or ancillary jurisdiction because it seems to me that if we're going to litigate the 2000 -- I'm sorry, yeah, the 1989 joint operating agreement and whether there were breaches or not and the like, and I understand the antitrust issue that I pushed away, why wouldn't they handle that?

Because at the end of the day, ultimately, I would think decisions made on the federal level regarding the, quote, 1989 agreement potentially would impact the breach of contract and all those things.

MR. PISANELLI:  It surely will.  It surely will.  The federal court's ruling on summary judgment technically you would think has already impacted this case, but the --

THE COURT:  Well, it has because 2005 is out.

MR. PISANELLI:  Yeah, and federal court says, the trial court said, okay, you can amend the complaint, and now there are two claims for injunction and declaratory relief in relation to the 2000 -- or the 1989 JOA.  Those claims are pending in federal court.

Now, Your Honor, I'm not going to be ever standing before you and telling you that I can tell you off the top of my head what the debate of pendent jurisdiction and ancillary jurisdiction and how it would result would fall out.

APP319

A-18-772591-B | LV Sun v. News+Media | Motion| 05-28-2026

But I can tell you that there's no certainties in law anywhere.  And if you allow this case --

THE COURT:  Well, no, I understand that because --

MR. PISANELLI:  -- to fall away, we have no forum.

THE COURT:  Well, it seems like to me that that would be the legally logical results because you know --

MR. PISANELLI:  And if Court cases --

THE COURT:  And as you know, and, Mr. Pisanelli, I don't want to cut you off.

As you know, sometimes the legally logic --

(Multiple parties talking, indiscernible speech.)

THE COURT:  -- doesn't always happen.

MR. PISANELLI:  It doesn't always work out.  Yeah.  And when you have --

THE COURT:  Well, like in front of the Ninth Circuit.  I was kind of surprised that we (indiscernible), but, you know.

MR. PISANELLI:  And you have lots of really smart lawyers and complicated issues.  It's a rare day that things go as predicted for either side; right?  The chess games get pretty complicated, and that's what we found here.

Your question, I think, obviously, is a very good one.  And obvious, to me anyway, is that it would have been an appropriate one if both cases in 1989 launched -- or not -- I'm sorry, 2019, launched at the same time, and there's two, and either the federal court or Your Honor is saying why do we have

**APP320**

A-18-772591-B | LV Sun v. News+Media | Motion| 05-28-2026

two?

But we know how and why we have two because things developed after the filing of this case that actually triggered the antitrust laws, and that's one of the many reasons that we have this complicated -- I'll use Mr. Jones's word, quagmire, but not one that we can't get through so long as the stay here remains in place.

So, Your Honor, a point that I think can't be lost, because I think it's misleading, is the reason that we have a stay here is because Your Honor was very clear about its judicial philosophy, and it wanted to know and not be at odds with the federal court on defining the relationship and, in particular, the contractual relationship between the parties.

The RJ offers this very narrow reason that you didn't have these judicial policies or this public policy issues in mind.  You just said, what's the answer on 2005?  And that's just not the case.  We have lots and lots to look to that shows that Your Honor had a broader view, as you always do, when dealing with these complex issues of what is the best thing to do for all the parties and for the Court concerned, and the RJ's suggestion that this was merely a single issue referral to the federal court just isn't consistent with the record.

Your Honor, you stated issues about deference to the federal court on the federal claims.  You issued broader -- you mentioned broader considerations of the overlapping issues;

A-18-772591-B | LV Sun v. News+Media | Motion| 05-28-2026

right?  You mentioned the economies of a stay and the worst case scenario of all, you wanted to avoid the inconsistent result by letting two cases go forward at once.

If you look at slide 4, Your Honor, I think the reason I pulled these quotes up from you from that hearing on the stay is because it shows just how broadly you were analyzing these issues; right?  You said, a reason I didn't dismiss, that you stayed the case instead is that you want to know what the federal courts are going to do with it.  You're taking a cautious approach you said.

You said that you worried about judicial economy.  And I'm talking specifically about 2005.

And matter of fact, the third quote shows that you had a much broader concern about this debate between these two parties.  You said, I look at this case, and there's a series of what appears to me to be rolling disputes.  Isn't that foreshadowing.  You saw it in advance what was going on with these different moving targets, these moving issues.

Rolling disputes you said, as it relates to interpretation and enforcement.

THE COURT:  I like that.  I do like that.

MR. PISANELLI:  Right?  You hit the nail on the head, and you even said the 1989 agreement in the quote.  You saw then that the 1989 agreement.  And the next two quotes, you said it relates to the JOA, the 1989 version, the 2005 version.

JD Reporting, Inc. | olsedana@gmail.com | 702.378.3456

**APP322**

A-18-772591-B | LV Sun v. News+Media | Motion| 05-28-2026

When you told us that the stay was in place, you saw these broader points, and it wasn't just simply a referral of the 2005 enforceability. You said these are rolling disputes that touch upon the 1989 JOA, the 2005 JOA and we'll have great clarity by spending no money whatsoever, by letting those issues play out in the federal court, and we'll figure out what's left, if anything, once that's done.

And that's the exact position we're here because the federal court case advanced more than this one did in light of the RJ's strategy, and they had -- the federal court had in front of her the issue of an amendment, and she said what are we doing talking about summary judgment on these 2005 claims? Right? We have the RJ standing up shooting not at fish in a barrel, dead fish in a barrel here and congratulating themselves for it. Well, that's easy to do when you know that there's 10 other barrels, 10 other bodies of water where the real fight is going to lie, and they're sitting here shooting a gun into a barrel and congratulating themselves that they hit something that was just sitting there.

2005 isn't our issue anymore. 1989 is the issue. And it's already at issue, and it's in play in the federal court, and it should be in play in this court.

So the suggestion, Your Honor, that there's something other than judicial economy, avoidance of duplicative efforts, avoidance of inconsistent results, promotion of a full

JD Reporting, Inc. | olsedana@gmail.com | 702.378.3456

37

**APP323**

A-18-772591-B | LV Sun v. News+Media | Motion| 05-28-2026

development, that's what the stay was about, and that's exactly why we are still here today.

I have to bring up RJ's own words because they have flip-flopped. And that's okay. It happens in litigation, but their comments when they were arguing for the stay were prescient; right? They are important.

Let's look at slide 6. Counsel -- I think it was Mr. Jones -- I listen when he speaks, and I think that's who it was. He said, we think a more cautious way to do it is to wait for everything. He hit the nail on the head. It is more cautious to wait and see what happens with the 1989 agreement. Maybe we won't even have to amend here, Your Honor. Maybe we'll lose fall flat on our face on the 1989 agreement, and we won't even have to have the debate here. Maybe not, but the cautious approach allows us to stand down here and have the debate over there. Mr. Jones's words, wait for everything is very smart advice that he was asking Your Honor to take, and I think he was right then.

Your Honor, I think besides your own comments, I'd like to take a look at slide 7 because there's a suggestion in the briefing that somehow these are new and they don't see these issues coming at least in the State court. Counsel was very clear in his debate today, his presentation today about this is all 2005 and that's all there's ever been.

But besides Your Honor's own comments, I made those

**APP324**

A-18-772591-B | LV Sun v. News+Media | Motion| 05-28-2026

comments standing right in this exact spot to you that the 1989 agreement was always at issue in this case, even if it hadn't been pled yet.  It didn't need to be pled yet because the law of 50 years had not been changed.

I argued to you that the 2005 -- RJ's argument that the 2005 is unenforceable, parties agreed to revert to the 1989 JOA.  We will not find ourselves without a contract.  No one will say it, being 1989 JOA, is illegal or unenforceable.  The law says you can't have a novation without enforceable agreement, and the parties agreed to go back to 1989.  That's exactly what the debate is going to be if and when we need to amend our pleading here.

We've always known here that 1989 JOA could come into play.  We just didn't know when or if because nobody knew what the Ninth Circuit was going to do.

So, as I've said, Your Honor, the circumstances haven't changed.  Just four digits have changed.  The exact debate in fill in 2005 JOA of why you put in the stay, now put the exact arguments, the exact facts, the exact law and just say 1989 JOA.  We are exactly where we started.

This suggestion that we did not offer any evidence that the Ninth Circuit opinion is not dispositive that's in their brief, that lifting the stay, we haven't proven that lifting the stay lifts or risks inconsistent rulings or that the 1989 JOA remains, we haven't proved that, those aren't

**APP325**

serious arguments.

As I've already said, the 1989 JOA, summary judgment was entered on that point.  The federal court saw exactly what was going on and allowed amendments to happen and specifically said in summary judgment that there was no novation.  So 1989 is at play.

The RJ's argument saying that it was terminated also is belied.

Let's look at slide eight by the way, Ashley.

So here we have, Your Honor, the Court's order.  This is what the federal court said about the suggestion that you see in the RJ's brief that 1989 has been abandoned and is no longer enforceable.

The Court ruled that the RJ argues that the 2005 JOA is a novation making it a new JOA, not an amended JOA.  Both arguments fail, the Court said.  The JOA is clearly an amended JOA, not a new one and that their claim of novation, quote, lacks record support.

The Court went on to say, the Court therefore grants summary judgment to the Sun on this issue.

They now come before you raising that issue in this case and, very importantly, they have raised it again post summary judgment in their briefing and opposition to the preliminary injunction.

So they, not us, they, have put this issue at play in

**APP326**

A-18-772591-B | LV Sun v. News+Media | Motion| 05-28-2026

both cases.  I put it at issue here standing before you five years ago.  They're now putting at issue again after losing summary judgment in the federal court.

Your Honor, if you were to grant us leave to amend, we're going to have a claim before you that the federal court is looking at.  So leave the stay in place.  The federal court may rule against us, and I'm not going to ask you to amend, but the court could rule for us, and I'm going to say, okay.  When and if we come back here, now, is our turn to fully develop our claim.

They are getting ahead of this so that they don't have to answer to the 1989 agreement before the federal court rules.  That's not an equitable way to manage a case.

This issue about novation, Your Honor, I've mentioned it to you about the Nevada Supreme Court.  I would direct you to United Insurance [as said] Company versus McClelland, 105 Nevada 504, where the Supreme Court of Nevada specifically unambiguously said for novation to occur with a new contract, here, the 2005 JOA, must be valid, plain simple rule of law.

They have shouted from the highest mountain top that the 2005 JOA is unenforceable.  It's illegal to enforce it, all those things Mr. Gayan just appropriately said to you.

Well, you can't have it both ways.  You can't say it's unenforceable, and it serves as a novation for 1989.

The fact of the matter is, 1989 is going to be the

**APP327**

A-18-772591-B | LV Sun v. News+Media | Motion| 05-28-2026

reason why in this case in particular, the RJ will be held accountable. They expressly said they will revert back to it. The law says they will revert back to it, and the law says both at summary judgment and the Supreme Court that there can be no novation.

Because the federal court is resolving those rights about the 1989 JOA, there's no reason to do anything different than we've already done.

Counsel has appropriately told you that you have the inherent power to stay these actions. Of course you do. Nobody is going to debate that.

What he didn't tell you, however, is that the burden to remove the stay lies with the RJ. A motion to remove the stay is considered under Nevada law a motion for reconsideration, and a motion for reconsideration always has the burden on the moving party.

And I'll quote, again, this is the party seeking to reconsider. It is the party seeking reconsideration that bears the burden of demonstrating that the same is warranted. Not a big issue. I don't think any of us really are going to debate it is the RJ that came to this Court asking for the stay to be lifted, and so it is their burden to prove that there's no reason to do it.

Unless they can prove to you, Your Honor, and they haven't and they can't, that there is no amendment that is

possible for the --

THE COURT: Futility.

MR. PISANELLI: Yeah, for futility. They can't say that, not after the federal court has already said amendment is appropriate. Amendments are not late. They're not in bad faith. There's no prejudice. They can't come and tell you that our amendment would be futile.

Think of how clean and clear this debate would have been had this motion not been tied, this summary judgment motion not been tied to a motion to lift stay if they had just simply said can we have leave to file summary judgment. I can't envision a scenario where the Court wouldn't just simply say, wait a minute, you already tried that in federal court. And they said no. Why are we going to waste all of that money here?

We all know the debate in this case is the 1989 JOA. Why are they searching for a judgment to end the case on claims that we all know are no longer going to be the operative ones? It's like someone moving for summary judgment on a claim that somebody -- on a complaint that a plaintiff has voluntarily already amended at the beginning of the case. It's moot. What are you doing? That's exactly the scenario that we're dealing with here.

So I'd be remiss not to at least address this, I think rather minor point, Your Honor. In their papers and just

briefly in oral argument, counsel correctly states, they bemoaned the fact that the Sun hasn't filed a motion for leave to amend, hasn't given a proposed amended complaint.  That's exactly right.  And the reason we haven't is because we were not allowed to because we were the ones actually honoring Your Honor's stay.  We're not allowed to file a motion for leave to amend when a stay is in place.

The only thing we're allowed to do is ask you for permission to file that motion.  And then we have to ask ourselves why would the RJ argue or expect the Sun to come before you and ask for leave to amend its complaint when we don't think the stay should be lifted in the first place?

For all the reasons that I've argued before you today, we think the best course of action is to leave the stay in place while the issues play out in federal court.  So we can hardly be criticized for following the mandate of your order: Do nothing.  There's a stay.

And we can hardly be criticized for doing something we think is counterintuitive and counterproductive to everyone, including the RJ.

The RJ talks about the prejudice of having to incur fees in this case.  The only fees incurred in this case is the ones that they inspire through this motion.  Had they honored the stay, they wouldn't be incurring any expense whatsoever. So, you know, they're stepping on their own foot and

**APP330**

complaining that it hurts a little bit.

THE COURT:  Have I been supplied with a copy of the amended pleading in federal court?

MR. PISANELLI:  I do not believe.

THE COURT:  I'd like to see that.

MR. PISANELLI:  Yes, sir.

THE COURT:  I would.

MR. PISANELLI:  We'll get that to you today.

THE COURT:  I would like to see that.

MR. PISANELLI:  And, Your Honor --

THE COURT:  So I could be definitive as to exactly what's going on for the claims for relief and --

MR. PISANELLI:  Sure.  No, I understand that.

And, you know, I'm a little hesitant to argue the standard for leave to amend.  Counsel is correct.  We haven't asked for it yet.  We don't think it's appropriate until the stay is lifted, but it is interesting to quote you.  I've quoted you to other courts actually on this one where you said we're not talking a high hurdle.  If you're a track guy or low hurdles, we're probably talking a curb is the way you described motions for leave to amend.

THE COURT:  Right.

MR. PISANELLI:  And that's really what we're dealing with here.  So if Your Honor decides --

THE COURT:  Especially if you don't have to conduct a

**APP331**

Rule 16 analysis.

MR. PISANELLI:  Exactly.  Exactly.

I would direct Your Honor's attention though because I think it's important to the Commissioner of Insurance versus Chur.  It's 581 Pacific 3d 441.  And there the Supreme Court made very clear that district courts are to give, quote, considerable weight in favor of granting to leave amended complaint in light of an intervening significant change or clarification of the law.

There, the commissioner appealed arguing that the change in law was sufficient reason to permit amended pleadings, and the district court should have granted permission to amend, and our Supreme Court reversed, agreed that the district court abused its discretion in denying the commissioner's motion for leave under the circumstances with the change of law in Boyd (phonetic).

Doesn't that sound on point of what we're talking about here?  The Ninth Circuit changes 50 years of law, regulation and practice, and the RJ would have Your Honor say, no, there should be no amendments to update the complaints the same way that the federal court permitted.

So, Your Honor, I will close --

THE COURT:  And as far as the amendment in federal court as it pertains to the 1989 joint operating agreement being controlling and the claims for relief or whatever is

**APP332**

A-18-772591-B | LV Sun v. News+Media | Motion| 05-28-2026

going on there, was there an opposition to that?

MR. PISANELLI: Oh, yeah. There was an opposition to everything in this case.

THE COURT: I just wanted to make sure. And so that was thoroughly briefed and vetted, and the federal judge said that's okay --

MR. PISANELLI: Said no bad faith, no dilatory conduct, no prejudice to the RJ. Because of this change in the law, it's appropriate, the Court said, to allow an amendment to basically conform and be updated to the change in the law, that being that the 2005 is no longer effective.

So I will conclude on these two points, Your Honor. Going back to slide 6, Mr. Jones told you that when arguing for the stay the first time, the cautious way, the more cautious way is to wait for everything. And as I've said before, he was right. We can all save a lot of money by not doing this duplicative two step coming over here and fighting if we just sit back and learn what's going to happen from the federal court, clarity without expense, without prejudice will come to all parties, not just the Sun, to all parties by following Mr. Jones's advice.

And, likewise, all the way back to slide 1, Your Honor, never rush to judgment you tell us. Fully develop your claims, and that's all we're asking for; right? This should not be a summary judgment debate. This always should have been

**APP333**

A-18-772591-B | LV Sun v. News+Media | Motion| 05-28-2026

a motion for leave to lift the stay, to file summary judgment. It's inherently inequitable that they're rushing to judgment when the stay was in place in the first place.

So we would ask you to leave the stay in place, deny the summary judgment motion either as moot, or you can even strike it as an unauthorized filing.

And if Your Honor wants to kick up this case and lift the stay, jumping all the way to judgment is not the fair thing to do. If you're going to lift the stay, we would ask for leave to amend.

This motion again can be either stricken or denied as moot without prejudice. And after they get the updated amended pleadings, let's have that debate. I want to see counsel come in with a motion for summary judgment on the 1989 JOA. There's going to be a whole nother story. And they knew that.

That's why they tried to strike fast and strike hard on the 2005 that is not operative. It's not part of this case anymore. 1989 is part of this case, and that's all we're asking for is the day -- our day in court, when and if the timing is right, to fully develop our claims.

Thank you, sir.

THE COURT: And I will say this just for the record, and this is where I'm going. I'm glad I canceled the prior hearing we had because I didn't want to rush.

MR. JONES: Your Honor, you had to know what their

(indiscernible) was going to be hungering for.

MR. PISANELLI:  We know Mr. Gayan takes a long time, Your Honor.  I hear you loud and clear.

MR. GAYAN:  Yeah, that's true.

(Multiple parties talking, indiscernible speech.)

MR. GAYAN:  There's a lot to unwind there, a lot of things that are quite right, Your Honor.

THE COURT:  Oh, I understand, and I'm listening to you.  You know that.

MR. GAYAN:  I think I'll spend a lot more time on rebuttal than I did on my opening comments because, frankly, almost none of what counsel just said is in the Sun's opposition.  So they're complaining about a lack of due process and sandbagging us and the Court, frankly, with all sorts of new purported information and asking Your Honor to consider things that are not in the papers.

The Sun had a full and fair opportunity to file whatever briefs and points and authorities it wanted to file. We have rules for a reason.

MR. PISANELLI:  And, Your Honor, if I might object that what we didn't do was point out about the seven arguments in reply that were new.  So to have counsel now complain that we're rebutting his own new arguments doesn't seem to be very equitable, and I'll leave it at that.

MR. GAYAN:  I'll agree, they did not point that out.

**APP335**

They did not object to anything, and there are no new arguments in our reply.  They are in response to the Sun's opposition.

All of these things about the federal case are not in the opposition, and the Court should not consider them.  I heard Your Honor ask for the copy of the amended complaint the Sun filed in federal court.  I would ask if Your Honor is going to look at that and consider it that we also be allowed to provide the Court with our motion to dismiss that we filed on May 18th.

THE COURT:  And I don't mind -- I don't mind seeing that.  And the reason why I asked for the controlling complaint, I just wanted to see what the claims for relief were and see specifically what's going on in the federal action.

Because I don't mind telling everyone this.  I do feel like, you know, it's been 40 plus years since I took federal courts, but I do remember terms of art called pendent and ancillary jurisdiction; right?  And that's kind of -- that's where the -- it's my recollection we might have some State claims, but there's an overwhelming federal claim, and the federal courts snatched that up, something like that.

Am I missing something?

MR. JONES:  I don't think so, Your Honor.

MR. GAYAN:  No, you're not missing anything, Your Honor, and I took federal courts as well.

One thing that's very interesting here is --

THE COURT:  It's all very interesting.

MR. GAYAN:  It's all very interesting.

THE COURT:  Yes, it is.

MR. GAYAN:  But I really thought Your Honor's question about why weren't -- and I think I wrote this down right -- why weren't the Sun's claims that it -- that counsel just said they're going to have these claims, why weren't they in the Sun's amended federal court complaint?  That is a great question, and I can't recall if we've ever litigated it in this department, but Mr. Jones and I have litigated claim splitting, and --

MR. PISANELLI:  Is this in counsel's brief, Your Honor?  I don't think so.

THE COURT:  Yeah.

MR. GAYAN:  This is in response to the brand-new arguments that counsel raised today for the first time.

MR. PISANELLI:  Still not in their brief.

MR. GAYAN:  I would ask that he stop interrupting me. I did not interrupt him.

THE COURT:  And, gentlemen, we are always gentlemen in the courtroom.  So (indiscernible).

MR. GAYAN:  Yeah.  This is outrageous.

THE COURT:  I mean, and I don't mind telling you this.  I enjoy the complex issues, and I enjoy the argument of counsel and I listen.  I do.  And we have learned counsel, and

**APP337**

A-18-772591-B | LV Sun v. News+Media | Motion| 05-28-2026

I kind of enjoy that.  I'm enjoying this afternoon.  How's that?

MR. GAYAN:  Thank you, Your Honor, but I don't think it's fair --

THE COURT:  I understand and it's a -- and your objection is noted, for the record.

MR. GAYAN:  Or right or appropriate to have a peanut gallery behind me essentially yelling out any time he has a thought.  He can save it and request a surrebuttal.

THE COURT:  And Mr. Pisanelli will stop from doing that, but I'm listening to everybody.  I always listen to everybody; right?  Because I learn from lawyers too.  I do.

MR. GAYAN:  Well, the Court's question, which was raised today and could not have been briefed by the Review-Journal is if the Sun, as counsel repeatedly said, supposedly has claims against the Review-Journal under the 1989 JOA, why weren't they included in the federal complaint?  That is a great question.

Claim splitting is a problem, and they should not -- when you have the same set of facts, you can't have the same party filing separate actions against the same defendant.  So that is a good question, Your Honor, and it ties in with counsel's new claim that they will be left without a forum if Your Honor grants this motion.  That was not explained at all. There is no support for the notion that the Sun could not file

**APP338**

A-18-772591-B | LV Sun v. News+Media | Motion| 05-28-2026

an action.

There were all sorts of new things in counsel's presentation, including in the slides, but one thing we did not hear, which was consistent with the Sun's written opposition is that there is nothing left to this case, the case as pled that Your Honor is presiding over is dead.

And counsel actually said it's like shooting, quote, dead fish in a barrel.  And quote, The 2005 JOA isn't at issue anymore.  We agree.  So what are we doing here?

The Sun came up with, for today's purposes, you know, and this is not the first time this has happened, but we have this -- these new pleas for Your Honor to not act and to save the Sun, things that are not in their papers, procedural complaints with how the Review-Journal did it.

Your Honor's got a copy of your stay order in front of you.

I'm going to read from that right now.

THE COURT:  Let me find it.

MR. GAYAN:  It's at the bottom of page 2.

THE COURT:  Is that the order dated January 31st?

MR. GAYAN:  That's the one.  Bottom of page 2.  And I read lines 23 to 25 earlier.

Now what I'm looking at is line 27.  It's a sentence that says, This stay shall remain in place until further order of the Court.

**APP339**

Well, the Review-Journal had a right to move to lift the stay.  And if you read this stay order, it is quite clear the reason Your Honor entered the stay was to allow, including at the top of page 3, to allow the federal court to decide whether the 2005 JOA was enforceable in the first instance under federal law before Your Honor spent any more time, and you were spending a lot of time, I think almost every motion was on an order shortening time, and we were down here quite frequently in 2019.

So before the parties and this Court spent more time litigating breach of contract claims under the 2005 JOA, Your Honor decided it made sense to stay this case and let the federal court decide whether the 2005 JOA was enforceable, and we now know here today that it is not and it never was.  It was never enforceable because it never had Attorney General written approval under the NPA.

And counsel with the slides and in their opposition, they have some additional points.  They prefer to dig around in the hearing transcript and pick out stray comments from Your Honor or counsel and hope that they will persuade you to not lift the stay or not grant summary judgment.

In particular -- let's see if I can find the one where Mr. Jones was quoted:  Wait for everything.  This was slide 6.  Wait for everything.  That is completely misleading and out of context, Your Honor.

APP340

And this is the comment I wanted to make earlier when Mr. Reid answered the Court's question about the timing of this stay order.  Your Honor entered a separate order staying execution on the arbitration related judgment.  That was in March.

Two months later the Review-Journal moved for a stay of execution and for approval of alternate security.  It was a letter of credit if you -- maybe that jogs the Court's memory.

But there was a letter of credit instead of supersedeas bond.  That is an entirely separate order from this one.  This order, if you read it and you look at the parties' motions, it relates to the Sun's decision to file a separate federal antitrust case.  And then the Sun moved to stay the RJ's counterclaims only, which this court granted.  And then the defendants filed an emergency motion to stay the entire case.

So it is quite clear the context of Mr. Jones's comments about wait for everything was to wait for every claim in this case, not just the counterclaims.  So Mr. Jones is not saying wait around forever for everything to finish over in federal court.  He's saying wait on the Sun's claims and wait on the Review Journal's counterclaims because they all relate to the 2005 JOA.

Your Honor, the other thing that is kind of a fundamental premise of counsel's new arguments is that the

APP341

A-18-772591-B | LV Sun v. News+Media | Motion| 05-28-2026

federal court has already decided that the parties have reverted to the 1989 JOA. That is false. That has not happened. The federal judge has not decided that issue. All she has done is granted the Sun leave to amend, and Your Honor --

THE COURT: And I understand the distinction procedurally. I get that.

MR. GAYAN: Thank you.

And there is a request for reversion, and we heard from counsel many times that the Review-Journal supposedly agreed to revert. That is also false for reasons that will be briefed in federal court and have been briefed, and so counsel knows that's not entirely accurate.

The Review-Journal, Inc., the party in this case, did not exist until the current owner of the paper bought the paper in December of 2015. It is a new entity, as is News+Media, the other defendant in this case.

These entities did not exist until 2015, okay. The agreement that counsel --

THE COURT: So they weren't parties to the 1989 joint operating agreement?

MR. GAYAN: They were not -- they did not negotiate the 2005 JOA either. They did not sign it, and the supposed agreement to revert is Section 1.1 of the illegal and unenforceable 2005 JOA. The Sun will not be able to enforce

**APP342**

A-18-772591-B | LV Sun v. News+Media | Motion| 05-28-2026

any provisions in the 2005 JOA.  And if the federal court allows the Sun or ever relies on any part of the 2005 JOA, I'm confident that my clients will seek appellate review of that decision, which we already did once.  And this --

THE COURT:  I mean, I would hope that that's an avenue from the federal perspective you don't have to go down that road because they're pretty -- I read the decision.  It's fairly long, and I read the analysis, and the Ninth Circuit made it pretty clear.

MR. GAYAN:  They were pretty clear, and we attached to our motion the federal district court's order on March 12th of this year dissolving the prior injunction, but then entering what appears to be a new temporary restraining order.  And the defendants in that case, including the Review-Journal, took an emergency writ of mandamus, which was decided and filed on March 30th, again reversing the federal district court essentially saying you cannot enforce the 2005 JOA or anything like it, any part of it.

So that has been conclusively decided not only by the published unanimous decision from the Ninth Circuit, but also the follow-up mandamus order directing -- vacating the district court's TRO from March of this year and directing the Court to follow the mandate.

Your Honor also asked -- and we have numerous quotes from the federal court's order granting leave to amend

JD Reporting, Inc. | olsedana@gmail.com | 702.378.3456

57

**APP343**

A-18-772591-B | LV Sun v. News+Media | Motion| 05-28-2026

somewhere in the slides, and I heard counsel looking at them. Your Honor asked if that was briefed. It was briefed, but just for this Court's information, the mandamus order came down on March 30th, I believe.

There was a status check set on April 3rd, which I attended. I believe Mr. Jones and possibly Mr. Pisanelli and Mr. Reid also, that I handled. And during that hearing, the federal district court judge ordered the Sun if it was going to amend its pleading, it needed to file a motion for leave to amend by Monday, the next judicial day. This was Friday, April 3rd.

The Sun had until Monday, April 6th to file a motion. The Review Journal only had, and defendants, only had until Wednesday, April 8th, to oppose that motion. The Sun got a reply on April 9th, and the order was entered on April 10th.

And at the same time, that schedule was entered, the Court scheduled an evidentiary hearing for a preliminary injunction motion that hadn't even been filed yet.

So to say the least, it was in a hurry and maybe not in the most ideal procedural sequencing, and the Review-Journal did object to that, but that is what happened.

So but in any event, it is kind of interesting. This is on slide 4 from the Sun's slides. One of the comments that Your Honor made is you said on December 4, 2019, so I don't

**APP344**

A-18-772591-B | LV Sun v. News+Media | Motion| 05-28-2026

want someone running in front of Judge Boulware and say, well, this is what Judge Williams said, you've got to agree, Judge. I'm not going to do that; right?

THE COURT:  Right.

MR. GAYAN:  But that's essentially what the Sun is doing now.  Judge Trom said this, that, and the other thing, and so you, Judge Williams, now need to agree with whatever Judge Trom said.  And that's just not appropriate.

Your Honor's jurisdiction, as we've talked about and you've commented on, is to decide what happens in this case. And this case, as pled, is based solely on the 2005 JOA, which has now been deemed unlawful and unenforceable.  No one can perform under it.  No one can enforce it in any way.  And, respectfully, that includes the courts, and the mandamus order made that clear that the federal district court could not enforce it in any way, shape, or form no matter what her reasons were, equitable or otherwise.

Your Honor, some other --

THE COURT:  You know, and Mr. Gayan, I look at the 2005 joint operating agreement.  That ship sailed; right? There's been a ruling made by our Ninth Circuit.  I would never deviate from any ruling they make and/or the Supreme Court, the State of Nevada and/or Court of Appeals.  I'm a good soldier in that regard.  And, I mean, sometimes cases come back and I get affirmed, and sometimes they don't.  I even had one case

**APP345**

A-18-772591-B | LV Sun v. News+Media | Motion| 05-28-2026

where -- I chuckled a little bit.  I had followed the restatement of contracts and also the majority view, and the Supreme Court decided to go with the minority view.  What do you do under those circumstances; right?  You just chalk it up.  But what do I do about that?

And this is one I was thinking about.  I'm just thinking as I'm listening to you, and I want to take all issues off the table.

In essence what they're saying is they're saying, look, Judge, as far as the stay is concerned, it's, I guess, procedurally problematic, maybe I'll say it that way, to seek to lift the stay and at the same time file a motion for summary judgment.  And how do I address that?  Because we know potentially that might be an issue the Supreme Court picks up on.  What do I do with that?

MR. GAYAN:  Well, that's --

THE COURT:  Because these are my thoughts, you know, because I'm trying to look at -- and I understand your position and saying look, Judge, and I've reviewed the controlling complaint, and it's somewhat lengthy, but and, clearly, the pending complaint deals specifically with the 2005 joint operating agreement.

MR. GAYAN:  Well, Your Honor, that argument is one of the Sun's many new arguments.  I was just flipping through their opposition here on the cart next to me.  I did not see

**APP346**

A-18-772591-B | LV Sun v. News+Media | Motion| 05-28-2026

the Sun raise these procedural arguments in its opposition. And we did give them an extension for their opposition to this motion. So to say that they did not have sufficient time or ability to put all of their points and authorities down in writing is simply wrong.

THE COURT: And I think it's not necessarily the opposition dealing specifically with, I guess, a similar motion to the one that is filed in federal court as it pertains to amendment; that's how I see that, and they're saying, look, we weren't given a chance to do so.

MR. GAYAN: Well, they've had their chance, Your Honor. I guess on the procedural -- let me address it a couple of different ways here. First --

THE COURT: Because I do think I have to at least have some discussion on the record regarding that issue, and I think I have a high level of confidence that the Supreme Court is going to want an answer on that potentially.

MR. GAYAN: Sure. Well, Your Honor's stay order says it's in place until further order of the Court. That's what we've sought leave to do, is to lift the stay. I don't think there's anything procedurally incorrect about moving to lift a stay. Parties do that all of the time.

And my point from earlier was that the scope of the stay order, if you read it, has been satisfied because the federal court has decided the enforceability of the 2005 JOA

A-18-772591-B | LV Sun v. News+Media | Motion| 05-28-2026

under the NPA.  The purpose of the stay has been fulfilled.  It serves no further purpose.  This is not a sharp litigation tactic.  This is not perverse.  This is normal litigation procedure, Your Honor.  And I would also point --

THE COURT:  And no one is saying that it is.  I just --

MR. GAYAN:  Well, other than counsel.  Those are the terms that he used and, you know, since we're on that just real briefly, the Sun has a long history of hyperbole and other types of comments.  When they were opposing this stay motion that resulted in the January 31st, 2020, order, their opposition said my client's position was woefully ill-conceived about arguing that the NPA would not support the 2005 JOA.  They called it an infantile attempt to manipulate the court and that it was so baseless that it's an affront to justice.  So this is the type of rhetoric that the Sun routinely relies on to try to persuade the Court of its position.

But, in terms of the procedure, this is about as straightforward as it gets, Your Honor.  Rule 56(b), and I brought it with me just in case, it says, A party may file a motion for summary judgment at any time until 30 days after the close of all of discovery.

I simply don't understand the Sun's objection to a motion for summary judgment on claims that are foreclosed as a matter of law.

**APP348**

A-18-772591-B | LV Sun v. News+Media | Motion| 05-28-2026

And I believe counsel admitted it multiple times during his presentation.  The Sun has admitted it in its written opposition as well.  Counsel called the 2005 JOA a dead fish.  He said it's over.  There's nothing left to this case. That's an admission that the motion is meritorious.

There was no attempt to meet a Rule 56 burden.  There was no 56(d) affidavit.  Let's just check through all the --

THE COURT:  Well, I'm going to be candid with you.  I don't know if there's much you can do when the Ninth Circuit ruled the way they did.  I mean, I can understand that.  They said as a matter of law they've reviewed it, and made a determination as it pertains to the 2005 and made it pretty clear in their analysis.

MR. GAYAN:  That's right.  Well, a couple of other things, Your Honor.

We heard counsel -- these were some of the other new arguments here today, that the Ninth Circuit decision does not preclude State court claims.  They could assert unjust enrichment and *quantum meruit* or other -- I don't know what else counsel rattled off.

Well, it sounds like they are fully capable of preparing an amended complaint if they know what claims they think would still survive and be viable here.  We obviously strongly disagree with that, but there was no objection in the papers to having insufficient time to countermove for leave to

**APP349**

A-18-772591-B | LV Sun v. News+Media | Motion| 05-28-2026

amend.

There's also no explanation for why the Sun could not simply file a new case if it thought it had a case or seek leave again to amend in the federal case and assert what sounds to be very overlapping claims related to the 1989 JOA. If that court will be deciding whether or not the parties revert to the 1989 JOA, that is an easy forum for the Sun to assert --

THE COURT: Well, that's why I asked my preliminary question as far as issues arising out of the 1989 joint operating agreement as far as the rights and responsibilities of the respective parties. It just appeared to me from an economic perspective that would be the best way to go.

MR. GAYAN: In terms of judicial economy, and we saw that in the slides, that makes a lot of sense. There's no reason for this Court to keep this dead fish of a case open for the Sun to come up with some idea of how it might amend and assert parallel claims again.

Now, I heard counsel say that it's not the Sun's fault for this procedural quagmire. I completely disagree. The Sun filed its state court complaint in this case in 2018. They included arbitrable claims and nonarbitrable claims, and that was their choice.

Then they chose to file a federal court antitrust complaint the night before we came over here to argue the Review-Journal's motion for leave to amend its answer and

**APP350**

assert a counterclaim.

The Sun has chosen --

THE COURT:  Well, I kind of remember -- it's funny.  We're going back six years.  I kind of remember that, but I didn't really push back on any antitrust issues that would potentially be heard in front of me because I understood, hey, that's not my jurisdiction whatsoever.  But go ahead.

MR. GAYAN:  You did.  And that's where -- that's the comment, I believe, and I don't have the slides.  I've set them off to the side, but when Your Honor said Rule 15 isn't a high bar, it's more of a curb, that was the Review-Journal seeking leave to assert the claims, and I believe your comment at the time was the Sun could file a motion to dismiss, and you would consider it then, but you were not going to deny leave to amend to assert the counterclaims in the first instance, and the Sun did that.

And then this case got stayed.  I don't recall whether the motion to dismiss was ever argued or decided, but I don't think it matters for purposes of today's discussion.

But I think, you know, Your Honor, your question about why the Sun couldn't file its claims or didn't or shouldn't file its 1989 JOA related claims all in the federal case, that's a great question.  We've heard no reason why it couldn't file a new case, and we've heard no reason why this Court should keep this case open, why they didn't seek leave to

**APP351**

A-18-772591-B | LV Sun v. News+Media | Motion| 05-28-2026

amend.  They claim they didn't have to because they were respecting your stay order.

I don't think that's a plausible response when someone is facing summary judgment to not oppose the summary judgment and not seek leave to amend when that party believes they have claims.  I mean, that's what they're telling you, Your Honor, that a party can know, and we heard this in the presentation, that they always knew the '89 JOA was in play.

Well, why didn't they plead this case in the alternative then?  That's an interesting question.  Why didn't they assert the claims in a proposed amended complaint in a countermotion for leave to amend in response to our motion for summary judgment?  I don't know.

But I don't think this Court needs to let them off the hook for their tactical decisions and their failures to do things and have motions in front of you or a motion in front of you that is fully supported.  And really all they're doing is asking you to keep the stay in place for what we view as completely improper purposes, to keep my clients on the hook in this case in the event the Sun at some point wants to seek leave to amend in this case.

And I did not hear a response to the fact that Your Honor's scheduling order from November 20th of 2019, already says, the deadline to move to amend the pleadings is closed, and I would encourage the Court to take a look at that.  That's

**APP352**

A-18-772591-B | LV Sun v. News+Media | Motion| 05-28-2026

Document 183. It's closed. There is no seeking leave to amend here. That has passed, and there would have to be a Rule 16(b)(4) showing and a *Nutton* analysis separate from anything the federal judge may have done.

But the Sun has not even triggered Rule 15, Rule 16, *Nutton*, any of it, and that's why I raised it in the first instance. This is not -- this is not even before Your Honor, and that's at the Sun's election.

Your Honor, the other thing, I'm going to just -- if the Court would please bear with me, I want to make sure I cover all the points that counsel raised.

Slide 8, this is an interesting slide. This is quotes from the federal court's March 2024 summary judgment order. The first bullet at the end after the ellipsis, the 2005 JOA is clearly an amended JOA, not a new JOA. That's exactly what the Ninth Circuit reversed the district court on. That's exactly what she got reversed on.

So I'm not sure why they're citing that part of the federal court's summary judgment order. But from my client's standpoint, that summary judgment order is infirm based on the Ninth Circuit's decision.

Your Honor, there was a comment about the Review-Journal needing to show futility, and I believe the Court kind of responded to that briefly, but that's simply not accurate because there is no request for leave to amend.

JD Reporting, Inc. | olsedana@gmail.com | 702.378.3456

**APP353**

A-18-772591-B | LV Sun v. News+Media | Motion| 05-28-2026

THE COURT:  I understand.

MR. GAYAN:  And a lot of these comments that counsel made about claims they could assert were things that the Review-Journal would have to show.  Those are all irrelevant and red herrings designed to distract the Court from the very simple and straightforward nature of this motion, which is there was a stay put in place almost six and a half years ago to let the federal court decide whether the 2005 JOA was lawful and enforceable under the NPA.  We now know that it is not.  It is unlawful and unenforceable under federal law for anyone to perform or enforce the 2005 JOA.

So the purpose for the stay has been fulfilled.  And the Review-Journal has moved for summary judgment because all remaining claims are premised entirely on the 2005 JOA.  There is simply nothing left to be done in this case.

And, Your Honor, I do need to make a couple of other quick responses.  You heard counsel say numerous times that the Ninth Circuit surprised everyone and changed 50 years of law.  That is simply not true.  The Ninth Circuit applied the NPA as written.  It was no surprise to the Review-Journal.  There were no controlling decisions on this issue before then in this jurisdiction.

I'm sorry, Your Honor.  I'm just looking through whether there's anything else.

Your Honor, I think, unless Mr. Jones comes up and

**APP354**

tells me I've forgotten something, I'll make one final comment.

THE COURT:  He might tell you.

MR. GAYAN:  Here it comes.  That was his signal.

All right.  One other point, Your Honor, and then I'll make a closing comment here.

I would encourage her on her to take a look at the Sun's First Amended Complaint, and I know you have, but I would encourage it one more time.

THE COURT:  I'm going to take a look.  And I don't mind telling you this and this has always served me well, and I think there's a really good example in this case.  And the reason why I do this, because, for example, when I make a decision, at that point I'll know exactly, and I'll articulate on the record vis-à-vis a minute order the basis for my decision; right?

However, if I think about it and especially in cases that I know that are going to be appealed, I know this is going to be appealed.  I just do.  And so I want to make sure that when I make a determination and I put it in exactly how I want to.  Because we sign 40 orders a day.  And I could make a decision.  I get a written order coming down two weeks from now.  I'm sorry.  I can't remember exactly why I did what I did.

And because I remember in this prior -- my fair decision in this case regarding the operating agreement and the

**APP355**

arbitration, what I had to do, I don't think -- and I think I issued a fairly lengthy minute order.  I don't think if I would have just made a decision and then waited for the orders to appear by counsel pursuant to the EDCR 7-point, whatever it is, that I would have had that in the record; right?  And sometimes that's why I do things the way I do it because it has been supported from a record perspective.

Heck, I remember that case I had with your firm regarding -- and it's done now, the class-action litigation issue, and I cited 23(b)(4) or (5) or whatever.  That was probably quite helpful at the end of the day; right?

MR. GAYAN:  That it was.

THE COURT:  So all I'm saying is this.  And I will do that, but and that's what I'm going to do.  I'm going to go back and look at everything.  And, of course, they're going to give me a copy of that one that I requested, but I'll get the decision out relatively quick.

The only issue is we're starting another trial on Monday, and tomorrow, unfortunately, I have 31 motions in limine -- no.

THE CLERK:  36.

THE COURT:  No.  36?

THE CLERK:  Yes.

THE COURT:  To deal with.  But.

MR. PISANELLI:  Okay.  Well, that's a lot.

THE COURT:  I don't complain about that.

MR. GAYAN:  In terms of your review, I'll direct Your Honor to paragraph 30, starting there, and it says, In 2004 the Sun and DR partners started to renegotiate the 1989 JOA, and they entered into the 2005 JOA, and they repeatedly call that, the 2005 JOA, the new agreement.  And they go through in painstaking detail each of the provisions that they say the Review-Journal breached.

Well, and importantly, Your Honor, the Sun also goes through in painstaking detail and explains how the provisions that are alleged as breaches in this case and are now mooted by the Ninth Circuit's decision, how those provisions were materially different from anything in the 1989 JOA.

So if the Sun thinks it has breach of contract claims or any other type of claim under the 1989 JOA, even though that document was not in force at any point during the time my clients owned the Review-Journal newspaper, we will deal with it if and when they file that case, but that case is not this case.

This case is the 2005 JOA, which is unlawful, unenforceable, and this dead fish of a case should be disposed of.  And the parties can proceed in federal court as they deem fit.  And if the Sun wants to file a new case, it can do so.

I'm happy to answer any questions, Your Honor.

THE COURT:  Not at this time.

**APP357**

MR. PISANELLI:  Very briefly, Your Honor, correct some points.

MR. GAYAN:  Your Honor, I'll just object for the record.

THE COURT:  I understand.

MR. GAYAN:  Us being the moving pretty and no countermotion.

MR. PISANELLI:  No objection to counsel having the final word, Your Honor.  I appreciate the opportunity.

So counsel took some time telling you that I was wrong when I said that they had agreed contractually to revert because they weren't even in existence at the time.  He seems to have forgotten to tell you that in ECF 970 in the federal court they lost summary judgment on that issue too.  The Court found them to be the successor in interest stepping into the shoes of the party of the contract.  So while, yeah, they didn't utter the words we will revert back to 1989, they stepped into the shoes of the party who did, just so the record is clear on that.

THE COURT:  And that's not really unique, especially involving businesses; right?

MR. PISANELLI:  Sure.  Sure.

Counsel makes a lot about the fact that we did not file a motion for leave to amend or to lift the stay.  And I think it bears repeating because we don't think the stay should

**APP358**

A-18-772591-B | LV Sun v. News+Media | Motion| 05-28-2026

be lifted.  And we didn't want to violate the stay by filing a motion for leave to amend.  It is only after Your Honor lifts the stay we would file that motion for leave to amend.

And the suggestion that leave to amend shouldn't be allowed because there has been no change in the law, well, once again, counsel forgets to tell you that's exactly what the federal court found where she said -- this is slide 3 -- under the circumstances the Sun was not under an obligation to plead in advance of the Ninth Circuit's opinion, a change in the law, including where there was previously an absence of controlling authority is the kind of change that justifies amending a complaint.

That is the exact judicial philosophy that we see in the Commissioner of Insurance versus Chur decision that I cited to you, 581 P.2d 441, where the Supreme Court of Nevada just last year overturned the district court for not allowing an amendment to a pleading after a change in the law.  So, again, nothing surprising that the federal court would issue a statement like that.

So counsel seizes up on the debate of having claims here on contract-based issues and claims in federal court that are anticompetitive-based, antitrust issues saying that that should be the reason without any briefing why we shouldn't be allowed to amend.

Remember how these things happened, Your Honor.  We

**APP359**

A-18-772591-B | LV Sun v. News+Media | Motion| 05-28-2026

have State court claims here, contract-based.  And then the anticompetitive stuff arises.  And there's no filing of identical claims.  Imagine the screaming we would hear, either literal or -- I'll just say literal if we would have filed the exact same claims in two different courts.

So the real debate on claim splitting procedurally should happen if Your Honor wants to open this case, we would ask for leave to amend.  We do ask for leave to amend if you're going to open this case.  And then they can file whatever they want, be it a motion to dismiss, motion for summary judgment, to say that these contract-based claims, despite that they relate back to the original filing of the complaint should not be allowed because there's claim splitting.

And at that time we would debate it, and I would read to you something like this and brief to you, given the opportunity, something like this.

Nevada only -- I'm sorry.  Wrong argument here.

*Smith vs. Hutchins*, 93 Nevada 431 (1978) is a general proposition:  A single cause of action may not be split in separate actions.  Okay.  That's what we're talking about.

Dismissal of a second action is proper generally when the plaintiff's cause of action is indivisible, meaning plaintiff cannot file suit for one part of the defendants wronged in the second part.

Okay.  That makes sense.  But, and I quote again,

**APP360**

A-18-772591-B | LV Sun v. News+Media | Motion| 05-28-2026

this is from the Travelers decision versus Newland (phonetic), Overlapping or even identical federal and state court litigation may proceed simultaneously limited only by doctrines of abstention and comity.  Claim splitting applies only to duplicative cases involving concurrent jurisdiction with federal court and does not apply in this case involving concurrent jurisdiction between state and federal court.

In other words, the law does apply, does allow claims that are not identical, but they arise from the same nucleus of operative facts in the state court and the federal court.  You just can't have identical ones.

But the most important one is -- point of all of this is the one you made:  If we file an amended pleading with your permission and they think they're barred by claim splitting, brief it, and we'll come in and we'll have that debate.  Just to say that we don't get the right to amend to bring the claims current in light of the change of 50 years of law, that's inherently inequitable, and that's not supported by the law anyway.

Counsel said that it's not plausible, not plausible that we didn't bring a motion to lift the stay and a motion for leave to amend.  I don't understand what he means by it's not possible, but I'll only repeat.  We don't think the stay should be lifted, and we didn't have permission until Your Honor says so to file a motion to amend our complaint.  It is only when

**APP361**

A-18-772591-B | LV Sun v. News+Media | Motion| 05-28-2026

Your Honor says, yes, that we'll do that.

We think we should follow Mr. Jones's advice and stay everything until we learn something from the federal court.

And this suggestion that let them file a new case, that obviously is not a serious argument either.  We have a fully developed case, if not fully developed, certainly substantially developed here.  We have preservation of claims from statute of limitations, and it obviously is bait to put us in a compromised position, whether it be statute of limitations or otherwise.

To suggest that they would have no objection to these same exact claims if we start over, but they're somehow prejudiced if we keep them in a case where so much has already been invested by the Court and the parties, that's not sensible.

So, Your Honor, in sum, what we have is an attempt to leapfrog over our rights by going straight to summary judgment without ever lifting the stay in advance.  The only thing we should have been debating here today is whether the stay should be lifted or not.

And if you were to say that that is your inclination, then we would say back then, and we say now that we ask for the right to fully develop our claims, as the federal court said, to bring them up to date in light of the change of law, as the Commissioner of Insurance case told us from the Nevada Supreme

**APP362**

Court, and we fully invite and expect the RJ under those circumstances to either file a Rule 12 motion or even out of the gate a Rule 56 motion on the amended pleadings, and we'll have a fair and robust debate then once we have given you the claims that we have updated in light of the change in the law.

But to say our case is over, whether it be non or quasi contractual claims can never come forward or the updated contractual claims in the 1989 agreement can never come forward because they leapfrogged over your stay, that's inequitable. That denies us due process, and that's not how this should work.

To fully develop the claims, to fully have a debate, to fully get to the merits, we first have to amend our pleading, and that's our request to you.

But for now, in light of the clear and really nondebatable overlap of claims of the 1989 JOA in the federal court and here, we should do what Mr. Jones told us to do a long time ago. Let's sit back. Let's take a breath. Let's see what happens over there. Have periodic status checks with Your Honor. Let you know what's going on over there, and then you can decide, you know, every 90 days, every 60 days, whatever Your Honor's judgment says of whether it's time to lift the stay or not. Now is not that time.

THE COURT: Thank you, sir.

And the only comment I have on that is who knows what

A-18-772591-B | LV Sun v. News+Media | Motion| 05-28-2026

happens to this case after July 1st.

MR. GAYAN:  That's right, Your Honor.

Well, it's disappointing that counsel is still misrepresenting what Mr. Jones said years ago, but the defendants object to this new oral motion for some kind of relief which is completely inconsistent with the Sun's new position not in its written opposition, that it had no obligation to do anything until Your Honor first lifts the stay.

So Your Honor has not lifted the stay.  Yet here is the Sun asking for relief orally but not in its written papers.

We would object that is -- they claim they want due process, but they certainly don't want to provide due process to my clients and provide fair notice of what their positions are.

These -- there is absolutely no reason, and this is what I meant when I said it's not plausible.  It is not plausible that the Sun is facing a motion for summary judgment, and it admits in writing that the motion for summary judgment should be granted because its claims have no merit any longer, and they've admitted it here in court.  So what's not plausible is that they did not think to seek leave to amend in a countermotion.

Rule 56(a) is mandatory, Your Honor.  The motion in front of you, the only proper noticed motion that is on for

A-18-772591-B | LV Sun v. News+Media | Motion| 05-28-2026

hearing today is defendant's motion to lift the stay and for summary judgment.  We have met our burden under Rule 56.  The Sun has not.

Rule 56(a) requires the Court to grant summary judgment and end this case.  If the Sun thought it wanted some other kind of relief, it could have either countermoved or filed its own separate motion.

This motion was filed -- let me get the date.  This was filed on March 24th.  March 24th.  We're standing here on May 28th, more than 60 days later, and because this Court is very busy, this hearing has been continued twice.  The Sun could have filed any kind of motion it wanted before we got here today on an order shortening time or otherwise.  It did not.

Instead, it comes in here, sandbags us with all sorts of new arguments and then on surrebuttal makes an oral motion for relief.  That is completely procedurally improper.  It violates our due process rights.

There is nothing left to this case.  You have yet to hear a single explanation for why the Sun cannot file a new action if it thinks it has claims that cannot be filed in the federal court case.

The Sun will not be without a forum.  Its rights have been honored and protected.  We granted them an extension to respond to this motion.  We gave them the entire length of the

**APP365**

A-18-772591-B | LV Sun v. News+Media | Motion| 05-28-2026

extension that they requested.  They cannot seriously claim any harm from granting this motion.  They have not articulated a single harm to them whatsoever.  Just because they prefer to keep this 2018 case alive, the Nevada Supreme Court has directed the district courts to be efficient and merit out timely justice.

This case is over.  And under Rule 1, EDCR 1.10 and the Nevada Supreme Court's promise in its annual reports, this case should end, and the Sun can file a new action if it wants, but there is nothing left to this case, and the Sun has not sought properly or with any particularity any claims that could possibly survive and be pled in this case.

I'm happy to answer any questions, Your Honor, but we'd ask you to grant the motion in full.

THE COURT:  Thank you, sir.

MR. GAYAN:  Thank you.

MR. JONES:  Your Honor, I just have --

THE COURT:  Of course, Mr. Jones.

MR. JONES:  Court's indulgence.  Just one comment that, since my name has been invoked so repeatedly by Mr. Pisanelli, and he has invoked my advice so many times, I would just say that on the record, that I would -- if they are so interested in my advice, I would advise them to voluntarily dismiss the case and put an end to this madness, and that's all I have to say.

**APP366**

A-18-772591-B | LV Sun v. News+Media | Motion| 05-28-2026

MR. PISANELLI:  And I'll respectfully decline that little piece of advice.  He has some good ones sometimes. That's not a good.

Your Honor, counsels seemed a little angry at my remark about amendment, and I think he misunderstood my position.  I'm not asking -- everything I asked you was conditional.  Our point is that the stay shouldn't be lifted.

THE COURT:  I understand.

MR. PISANELLI:  But if it's lifted, that we should be given that (indiscernible).

THE COURT:  I understand.

MR. GAYAN:  Your Honor, we still object to the conditional request for relief.  It could have been put in writing in a separate motion at any time.

THE COURT:  And, you know, and I understand and respect that too.  Sometimes I ponder what does the Supreme Court do with issues like that, you know, because I haven't seen consistency on that because something comes up, and they say, well, Judge, why didn't you address this, well, formally, and you know what happens; right?

MR. JONES:  Well, Your Honor, they have a very 2020 vision in hindsight.

THE COURT:  Absolutely.

MR. JONES:  Second guessing.

THE COURT:  Yeah, and I see it quite a bit.  And, for

**APP367**

A-18-772591-B | LV Sun v. News+Media | Motion| 05-28-2026

example, I mean, from a trial perspective, that's why I've never been a stickler as far as meet and confer, like, for motions in limine because I'd much rather spend half an hour with you, Mr. Jones, on a complex in limine motion versus a sidebar, right, and sometimes on a sidebar -- I've done this before.  I've made a ruling and I go home and I think about it and I said, oh, why did I do that, whereas if it's thoroughly vetted.

And, you know, I spend a lot of time on those in limine motions, and once I make my decision, I feel very comfortable.

But sometimes, you know, it is what it is, you know.

MR. REID:  Thanks for the last -- no, I was just going to say essentially the same point, but the opportunity to spend two hours debating these things is not something that any of us get every day, and we appreciate your time.

THE COURT:  Well, and I agree with that --

MR. GAYAN:  Definitely agree.

THE COURT:  I apologize for the inconvenience, but I said to myself when you're in here, I'm not going to rush this, you know, and give you half an hour and say, okay, see you later, and make a decision.  I want a thoroughly vetted record. It's an important issue for all the parties involved, and I get that.

MR. REID:  Thank you, Your Honor.

A-18-772591-B | LV Sun v. News+Media | Motion| 05-28-2026

MR. JONES:  And I don't think you need to apologize to anybody.  And since I wasn't the one arguing, I'm going to apologize for the verbosity of the lawyers who did argue.

MR. REID:  Thanks.

MR. PISANELLI:  I would apologize for mine, but I know I can't help it.  So.

THE COURT:  Gentlemen, thank you.

(Proceedings concluded at 3:35 p.m.)

-oOo-

ATTEST:  I do hereby certify that I have truly and correctly transcribed the audio/video proceedings in the above-entitled case to the best of my ability.

Dana L. Williams
Transcriber

**MR. GAYAN: [53]** 2/13 3/1 3/7 3/21 4/21 6/4 8/22 8/24 11/6 11/21 12/4 12/14 14/3 15/1 23/16 23/21 49/4 49/6 49/10 49/25 50/23 51/2 51/4 51/15 51/18 51/22 52/3 52/7 52/13 53/19 53/21 56/8 56/22 57/10 59/5 60/16 60/23 61/11 61/18 62/7 63/14 64/13 65/8 68/2 69/3 70/12 71/2 72/3 72/6 78/2 80/16 81/12 82/18

**MR. JONES: [7]** 48/25 50/22 80/17 80/19 81/21 81/24 83/1

**MR. PISANELLI: [46]** 2/9 14/7 14/9 14/14 14/16 14/19 15/9 21/22 22/3 22/8 25/14 27/23 28/1 30/4 31/1 31/3 31/10 32/24 33/13 33/17 34/4 34/7 34/13 34/17 36/22 43/3 45/4 45/6 45/8 45/10 45/13 45/23 46/2 47/2 47/7 49/2 49/20 51/12 51/17 70/25 72/1 72/8 72/22 81/1 81/9 83/5

**MR. REID: [5]** 22/10 23/1 82/13 82/25 83/4

**THE CLERK: [2]** 70/21 70/23

**THE COURT: [97]**

**'**

**'89 [1]** 66/8
**'89 JOA [1]** 66/8

**-**

**-oOo [1]** 83/9

**1**

**1.1 [1]** 56/24
**1.10 [2]** 13/4 80/7
**10 [3]** 24/11 37/16 37/16
**105 [1]** 41/16
**10th [1]** 58/16
**11 [1]** 31/14
**12 [1]** 77/2
**12th [1]** 57/12
**14 [2]** 6/6 8/9
**14th [1]** 24/2
**15 [2]** 65/10 67/5
**15th [1]** 2/24
**16 [4]** 1/6 46/1 67/3 67/5
**17th [1]** 9/22
**183 [2]** 11/8 67/1
**18th [1]** 50/9
**1978 [1]** 74/18
**1989 [56]** 17/25 18/6 18/10 18/18 18/19 26/7 26/13 26/15 26/16 28/18 29/11 32/16 32/18 32/18 33/6 33/11

33/20 34/23 36/23 36/24 36/25 37/4 37/20 38/11 38/13 39/1 39/6 39/8 39/10 39/13 39/20 39/25 40/2 40/5 40/12 41/12 41/24 41/25 42/7 43/16 46/24 48/14 48/18 52/16 56/2 56/20 64/5 64/7 64/9 65/22 71/4 71/13 71/15 72/17 77/8 77/16
**1:29 [1]** 2/1
**1:30 p.m [1]** 2/5
**1st [1]** 78/1

**2**

**2000 [2]** 33/5 33/20
**2004 [1]** 71/3
**2005 [69]** 4/15 5/13 5/20 6/10 6/12 6/14 6/25 7/5 7/9 7/17 7/23 8/15 8/16 9/1 18/15 18/20 19/4 21/10 25/21 25/23 25/25 27/17 28/18 30/2 31/12 31/17 32/12 32/19 33/16 35/16 36/12 36/25 37/3 37/4 37/12 37/20 38/24 39/5 39/6 39/18 40/14 41/19 41/21 47/11 48/17 53/8 54/5 54/11 54/13 55/23 56/23 56/25 57/1 57/2 57/17 59/11 59/20 60/21 61/25 62/13 63/3 63/12 67/15 68/8 68/11 68/14 71/5 71/6 71/20
**2015 [2]** 56/16 56/18
**2018 [2]** 64/20 80/4
**2019 [12]** 2/24 6/25 11/10 11/13 11/14 21/4 23/9 24/2 34/24 54/9 58/25 66/23
**2020 [4]** 4/24 23/20 62/11 81/21
**2024 [2]** 20/25 67/13
**2026 [3]** 1/13 2/1 2/5
**20th [2]** 11/10 66/23
**210 [1]** 4/24
**23 [3]** 5/2 53/22 70/10
**24th [3]** 11/12 79/9 79/9
**25 [1]** 53/22
**25 years [1]** 33/2
**26 [2]** 5/2 24/11
**27 [1]** 53/23
**27th [1]** 24/12
**28 [2]** 1/13 2/1
**28th [2]** 2/5 79/10
**2:19-CV-01667-RSB-B MW [1]** 5/6

**3**

**30 [3]** 23/5 62/21 71/3
**30th [3]** 11/14 57/16 58/4
**31 [1]** 70/19
**31st [4]** 4/24 23/20 53/20 62/11

**36 [2]** 70/21 70/22
**3:35 p.m [1]** 83/8
**3d [1]** 46/5
**3rd [2]** 58/5 58/11

**4**

**4 from [1]** 58/24
**40 [2]** 50/15 69/20
**431 [1]** 74/18
**441 [2]** 46/5 73/15
**45 [1]** 27/11
**4th [1]** 24/2

**5**

**50 [8]** 16/20 17/21 17/21 20/9 39/4 46/18 68/18 75/17
**504 [1]** 41/17
**56 [16]** 9/9 9/21 9/23 9/24 10/9 10/14 10/22 16/12 16/15 62/19 63/6 63/7 77/3 78/24 79/2 79/4
**581 [2]** 46/5 73/15

**6**

**60 [2]** 77/21 79/10
**6th [1]** 58/12

**7**

**7-point [1]** 70/4

**8**

**8th [1]** 58/14

**9**

**90 [1]** 77/21
**93 [1]** 74/18
**970 [1]** 72/13
**9:30 a.m [1]** 24/2
**9th [1]** 58/15

**A**

**a.m [1]** 24/2
**abandoned [1]** 40/12
**ability [2]** 61/4 83/12
**able [1]** 56/25
**about [54]** 9/18 9/24 12/23 14/1 14/21 14/23 15/21 15/23 18/4 19/4 20/25 21/25 22/5 22/15 23/17 25/6 27/10 32/25 33/1 35/10 35/23 36/11 36/12 36/14 37/12 38/1 38/23 40/11 41/14 41/15 42/7 44/21 46/18 49/13 49/21 50/3 51/5 55/2 55/18 59/9 60/5 60/6 61/21 62/13 62/18 65/21 67/22 68/3 69/16 71/1 72/23 74/20 81/5 82/6
**above [1]** 83/11
**above-entitled [1]** 83/11
**absence [2]** 20/18 73/10
**absent [1]** 28/7
**absolutely [3]** 14/11

78/16 81/23
**abstention [1]** 75/4
**abused [1]** 46/14
**accidents [1]** 17/19
**according [1]** 25/11
**accountability [5]** 15/19 17/2 29/17 31/18 32/12
**accountable [2]** 29/5 42/2
**accounting [1]** 32/8
**accurate [2]** 56/13 67/25
**achieve [1]** 15/20
**acknowledges [1]** 20/21
**acknowledging [1]** 7/6
**act [6]** 4/16 5/15 7/4 7/10 8/1 53/12
**action [24]** 4/13 5/1 5/8 8/6 8/11 8/13 8/25 9/8 9/19 12/24 13/14 18/25 24/5 24/20 25/7 44/14 50/13 53/1 70/9 74/19 74/21 74/22 79/21 80/9
**actions [4]** 25/15 42/10 52/21 74/20
**actual [1]** 17/16
**actually [16]** 3/22 9/17 9/21 9/24 11/3 12/14 13/23 14/20 16/9 23/17 24/13 32/2 35/3 44/5 45/18 53/7
**addition [1]** 32/14
**additional [1]** 54/18
**address [6]** 23/21 23/22 43/24 60/13 61/12 81/19
**addressed [1]** 5/13
**Adelson [2]** 5/5 24/18
**administer [1]** 13/5
**admission [1]** 63/5
**admits [1]** 78/19
**admitted [3]** 63/1 63/2 78/21
**advance [4]** 20/15 36/17 73/9 76/18
**advanced [1]** 37/9
**advice [6]** 38/17 47/21 76/2 80/21 80/23 81/2
**advise [1]** 80/23
**advocate [1]** 17/5
**affidavit [1]** 63/7
**affirmative [1]** 24/12
**affirmed [2]** 4/4 59/25
**affirming [1]** 23/4
**affront [1]** 62/15
**after [21]** 4/12 7/18 11/15 12/20 14/4 16/18 20/25 22/9 22/10 23/3 23/5 30/10 35/3 41/2 43/4 48/12 62/21 67/14 73/2 73/17 78/1
**afternoon [6]** 2/4 2/9 2/13 14/7 14/8 52/1
**again [14]** 15/13 29/13 29/14 32/9 40/22 41/2 42/17 48/11 57/16 64/4 64/17 73/6 73/17 74/25

**against [5]** 15/22 21/15 41/7 52/16 52/21
**ago [10]** 5/11 8/20 9/13 21/21 22/1 27/11 41/2 68/7 77/18 78/4
**agree [7]** 16/2 49/25 53/9 59/2 59/7 82/17 82/18
**agreed [7]** 18/17 32/17 39/6 39/10 46/13 56/11 72/11
**agreement [25]** 5/21 18/19 18/20 27/18 30/3 32/16 33/6 33/11 36/23 36/24 38/11 38/13 39/2 39/10 41/12 46/24 56/19 56/21 56/24 59/20 60/22 64/10 69/25 71/6 77/8
**ahead [7]** 2/6 2/21 2/25 19/18 25/12 41/11 65/7
**al [1]** 5/5
**alive [1]** 80/4
**all [70]** 2/12 2/25 4/4 5/7 6/9 6/13 7/1 7/3 8/6 8/18 8/25 9/2 9/7 10/17 13/9 14/5 15/15 15/16 19/16 19/23 23/15 24/3 24/20 26/4 28/6 29/16 29/20 32/7 32/11 33/12 35/20 36/2 38/24 38/24 41/21 43/14 43/16 43/18 44/13 47/16 47/20 47/20 47/22 47/24 48/8 48/18 49/14 50/3 51/1 51/2 52/24 53/2 55/22 56/3 60/7 61/4 61/22 62/22 63/7 65/22 66/17 67/11 68/4 68/13 69/4 70/13 75/12 79/15 80/24 82/23
**allegation [2]** 9/1 9/5
**allege [2]** 18/9 26/13
**alleged [1]** 71/11
**allow [7]** 27/3 30/9 34/2 47/9 54/3 54/4 75/8
**allowed [10]** 26/12 26/23 40/4 44/5 44/6 44/8 50/7 73/5 73/24 74/13
**allowing [2]** 14/24 73/16
**allows [2]** 38/15 57/2
**almost [3]** 49/12 54/7 68/7
**along [2]** 22/1 32/7
**already [18]** 7/11 18/24 18/25 19/6 29/9 29/10 29/12 33/15 37/21 40/2 42/8 43/4 43/13 43/21 56/1 57/4 66/23 76/13
**also [21]** 2/15 2/23 6/15 6/23 7/19 8/9 13/4 13/5 17/23 28/6 31/11 40/7 50/7 56/11 57/20 57/24 58/7 60/2 62/4 64/2 71/9
**alter [1]** 21/9

**APP370**

**A**

**alternate [1]** 55/7
**alternative [1]** 66/10
**although [1]** 6/20
**always [13]** 12/8 18/18 34/12 34/13 35/18 39/2 39/13 42/15 47/25 51/20 52/11 66/8 69/10
**Am [1]** 50/21
**amend [56]** 4/8 11/3 11/10 11/14 16/19 18/9 20/9 21/1 21/4 21/9 23/6 26/11 27/3 30/16 32/9 32/11 33/18 38/12 39/12 41/4 41/7 44/3 44/7 44/11 45/15 45/21 46/13 48/10 56/4 57/25 58/9 58/10 64/1 64/4 64/16 64/25 65/14 66/1 66/5 66/12 66/21 66/24 67/1 67/25 72/24 73/2 73/3 73/4 73/24 74/8 74/8 75/16 75/22 75/25 77/13 78/22
**amended [23]** 2/23 3/19 8/12 11/7 11/9 17/17 18/24 40/15 40/16 43/21 44/3 45/3 46/7 46/11 48/12 50/5 51/8 63/22 66/11 67/15 69/7 75/13 77/3
**amending [2]** 30/7 73/11
**amendment [17]** 11/19 16/21 19/2 20/19 27/7 27/8 30/10 30/11 37/11 42/25 43/4 43/7 46/23 47/9 61/9 73/17 81/5
**amendments [4]** 20/12 40/4 43/5 46/20
**amends [1]** 26/22
**analysis [7]** 25/25 26/8 31/8 46/1 57/8 63/13 67/3
**analyzing [3]** 26/1 28/15 36/7
**ancillary [4]** 27/12 33/4 33/24 50/17
**angry [1]** 81/4
**annual [2]** 13/6 80/8
**another [1]** 70/18
**answer [9]** 4/9 13/16 22/10 35/16 41/12 61/17 64/25 71/24 80/13
**answered [1]** 55/2
**anti [1]** 28/4
**anti-competitive [1]** 28/4
**anticipate [1]** 22/22
**anticompetitive [4]** 25/19 26/16 73/22 74/2
**anticompetitive-based [1]** 73/22
**antitrust [16]** 3/14 4/11 5/1 11/16 22/15 23/10 25/1 28/1 29/6 31/15 33/7 35/4 55/13 64/23

65/5 73/22
**any [48]** 7/22 9/3 9/3 9/8 9/11 9/19 9/20 10/1 12/9 12/10 13/2 13/13 13/16 14/20 17/13 18/1 18/6 18/7 25/2 25/7 28/7 39/21 42/20 44/24 52/8 54/6 57/1 57/2 57/18 58/23 59/13 59/16 59/22 62/21 65/5 67/6 71/15 71/16 71/24 73/23 78/20 79/12 80/1 80/11 80/11 80/13 81/14 82/15
**anybody [1]** 83/2
**anymore [3]** 37/20 48/18 53/9
**anyone [1]** 68/10
**anyone's [1]** 25/3
**anything [16]** 15/4 15/22 18/15 18/20 28/11 28/11 37/7 42/7 50/1 50/23 57/17 61/21 67/4 68/24 71/13 78/8
**anyway [3]** 18/2 34/22 75/19
**anywhere [3]** 18/1 29/8 34/2
**apologize [4]** 82/19 83/1 83/3 83/5
**apparently [2]** 23/20 27/14
**appeal [7]** 4/3 20/13 21/23 22/1 22/3 22/5 22/23
**appealed [3]** 46/10 69/17 69/18
**Appeals [2]** 3/6 59/23
**appear [1]** 70/4
**appearances [2]** 1/18 2/6
**appeared [1]** 64/11
**appearing [1]** 24/3
**appears [2]** 36/16 57/13
**appellate [1]** 57/3
**application [1]** 31/25
**applied [1]** 68/19
**applies [2]** 26/8 75/4
**apply [2]** 75/6 75/8
**appreciate [4]** 3/7 3/7 72/9 82/16
**approach [4]** 4/18 14/9 36/10 38/15
**appropriate [11]** 5/8 5/19 9/23 24/21 26/10 34/23 43/5 45/16 47/9 52/7 59/8
**appropriately [2]** 41/22 42/9
**approval [2]** 54/16 55/7
**approved [2]** 8/4 18/1
**April [6]** 58/5 58/11 58/12 58/14 58/15 58/16
**April 10th [1]** 58/16
**April 3rd [1]** 58/11
**April 6th [1]** 58/12

**arbitrable [2]** 4/4 64/21
**arbitration [14]** 3/17 4/1 6/9 6/15 13/22 13/24 21/24 22/7 22/24 23/5 24/5 24/10 55/4 70/1
**arbitrator's [1]** 4/2
**are [60]** 2/18 6/9 6/13 8/6 10/9 11/19 12/16 14/14 15/15 15/16 15/20 19/3 19/4 26/1 26/9 26/14 27/14 28/16 29/20 30/1 30/2 30/2 33/19 33/20 36/9 37/3 37/11 38/2 38/6 38/21 39/20 41/11 42/20 43/5 43/14 43/17 43/18 43/22 46/6 49/7 49/16 50/1 50/2 50/3 51/20 53/9 53/13 60/17 62/7 62/24 63/21 68/4 68/14 69/17 71/11 71/11 73/22 75/9 78/15 80/22
**aren't [3]** 27/5 32/23 39/25
**argue [4]** 44/10 45/14 64/24 83/3
**argued [4]** 13/18 39/5 44/13 65/18
**argues [1]** 40/14
**arguing [5]** 38/5 46/10 47/13 62/13 83/2
**argument [9]** 4/13 18/1 39/5 40/7 44/1 51/24 60/23 74/17 76/5
**arguments [12]** 39/19 40/1 40/16 49/21 49/23 50/1 51/16 55/25 60/24 61/1 63/17 79/16
**arise [1]** 75/9
**arises [1]** 74/2
**arising [1]** 64/9
**arose [1]** 28/1
**around [3]** 21/10 54/18 55/20
**arrangement [2]** 4/15 7/1
**art [2]** 33/4 50/16
**articulate [1]** 69/13
**articulated [2]** 5/18 80/2
**as [88]**
**Ashley [1]** 40/9
**aside [1]** 31/15
**ask [14]** 32/11 41/7 44/8 44/9 44/11 48/4 48/9 50/5 50/6 51/18 74/8 74/8 76/22 80/14
**asked [7]** 27/9 45/16 50/11 57/24 58/2 64/8 81/6
**asking [11]** 11/2 11/24 13/3 38/17 42/21 47/24 48/19 49/15 66/18 78/11 81/6
**assert [11]** 4/9 23/6 63/18 64/4 64/7 64/17 65/1 65/12 65/15 66/11 68/3

**asserted [2]** 13/14 23/8
**at [88]**
**attached [2]** 11/7 57/10
**attempt [8]** 10/13 15/24 16/10 17/6 17/12 62/14 63/6 76/16
**attempted [2]** 11/22 11/23
**attempting [1]** 17/16
**attended [2]** 9/21 58/6
**attention [1]** 46/3
**ATTEST [1]** 83/10
**Attorney [3]** 7/16 8/4 54/15
**audio [1]** 83/11
**audio/video [1]** 83/11
**authorities [4]** 2/22 20/22 49/18 61/4
**authority [2]** 28/7 73/11
**avenue [1]** 57/6
**avoid [2]** 17/1 36/2
**avoidance [2]** 37/24 37/25
**award [4]** 13/22 22/7 22/24 23/5
**aware [3]** 17/20 17/23 18/8
**away [3]** 21/16 33/8 34/4

**B**

**back [29]** 2/24 11/12 12/14 13/23 17/7 17/25 18/10 18/17 22/16 23/3 26/7 26/13 26/14 32/18 39/10 41/9 42/2 42/3 47/13 47/18 47/22 59/24 65/4 65/5 70/15 72/17 74/12 76/22 77/18
**background [1]** 19/17
**bad [3]** 30/19 43/5 47/7
**bait [1]** 76/8
**banc [1]** 7/19
**bar [1]** 65/11
**barred [1]** 75/14
**barrel [4]** 37/14 37/14 37/18 53/8
**barrels [1]** 37/16
**based [15]** 5/19 6/21 7/2 25/9 25/18 27/24 28/13 30/2 31/16 59/11 67/20 73/21 73/22 74/1 74/11
**baseless [1]** 62/15
**basically [1]** 47/10
**basis [4]** 10/15 10/20 12/12 69/14
**be [100]**
**bear [1]** 67/10
**bears [2]** 42/18 72/25
**because [82]** 3/10 3/22 4/13 7/15 9/2 9/10 13/2 13/13 15/12 15/17 16/1 16/24 17/8 18/11 19/5 21/19 21/20 22/13 22/17 23/23 24/24 25/5 25/12 26/11 27/2 27/16

27/19 28/3 30/1 31/24 32/1 33/1 33/4 33/9 33/16 34/3 34/6 35/2 35/9 35/10 36/6 37/8 38/3 38/20 39/3 39/14 42/6 44/4 44/5 46/3 47/8 48/24 49/11 50/14 52/12 54/15 55/22 57/7 60/13 60/17 60/18 61/14 61/24 65/6 66/1 67/25 68/13 69/12 69/20 69/24 70/6 72/12 72/25 73/5 74/13 77/9 78/20 79/10 80/3 81/17 81/18 82/3
**becomes [1]** 18/15
**been [53]** 3/22 6/9 8/4 12/24 16/5 16/6 16/20 17/9 17/10 18/24 19/13 19/16 19/17 21/8 22/11 23/8 23/18 27/9 28/8 28/10 28/10 28/11 30/15 30/18 34/22 38/24 39/3 39/4 40/12 43/9 43/9 43/10 45/2 47/25 50/15 52/14 56/12 57/19 58/19 59/12 59/21 61/24 62/1 68/12 70/6 73/5 76/14 76/19 79/11 79/24 80/20 81/13 82/2
**before [41]** 1/12 4/6 5/4 5/16 11/14 14/23 15/3 16/17 16/18 16/21 17/5 17/5 17/17 18/6 18/13 19/2 19/11 23/11 24/1 24/16 26/22 30/1 30/2 30/5 30/22 32/13 33/23 40/21 41/1 41/5 41/12 44/11 44/13 47/15 54/6 54/10 64/24 67/7 68/21 79/12 82/6
**begin [1]** 4/23
**beginning [1]** 43/21
**behalf [3]** 2/10 2/14 15/3
**behavior [6]** 25/19 25/20 26/17 28/2 28/5 29/6
**behind [1]** 52/8
**being [4]** 39/8 46/25 47/11 72/6
**belied [1]** 40/8
**believe [11]** 6/25 7/22 11/15 13/7 45/4 58/4 58/6 63/1 65/9 65/12 67/23
**believes [2]** 17/14 66/5
**bell [1]** 32/2
**belonged [1]** 28/3
**bemoaned [1]** 44/2
**benefit [1]** 15/25
**Benjamin [1]** 2/19
**besides [2]** 38/19 38/25
**best [5]** 29/20 35/19 44/14 64/12 83/12
**better [2]** 15/23 29/19
**between [6]** 17/14 26/1

**B**

**between... [4]** 26/6 35/13 36/14 75/7
**big [1]** 42/20
**bit [3]** 45/1 60/1 81/25
**black [1]** 16/15
**blunt [1]** 15/21
**Bluth [1]** 9/23
**BMW [1]** 5/6
**bodies [1]** 37/16
**bond [1]** 55/10
**both [8]** 2/18 18/14 28/15 34/23 40/15 41/1 41/23 42/3
**bottom [4]** 19/7 23/23 53/19 53/21
**bought [1]** 56/15
**Boulware [1]** 59/1
**bound [1]** 25/20
**box [1]** 6/16
**Boyd [1]** 46/16
**brand [1]** 51/15
**brand-new [1]** 51/15
**breach [8]** 6/13 6/19 25/23 25/25 26/6 33/11 54/11 71/14
**breached [1]** 71/8
**breaches [2]** 33/7 71/11
**breath [1]** 77/18
**brief [6]** 39/23 40/12 51/12 51/17 74/15 75/15
**briefed [7]** 12/5 47/5 52/14 56/12 56/12 58/2 58/2
**briefing [5]** 4/12 12/15 38/21 40/23 73/23
**briefly [4]** 44/1 62/9 67/24 72/1
**briefs [1]** 49/18
**Bright [2]** 20/23 20/24
**bring [6]** 18/9 21/10 38/3 75/16 75/21 76/24
**bringing [1]** 17/16
**broader [6]** 12/11 35/18 35/24 35/25 36/14 37/2
**broadly [1]** 36/6
**brought [4]** 14/11 18/24 32/13 62/20
**build [1]** 13/8
**bullet [1]** 67/14
**burden [12]** 10/7 10/7 10/8 10/11 10/14 10/23 42/12 42/16 42/19 42/22 63/6 79/2
**business [1]** 13/5
**businesses [1]** 72/21
**busy [1]** 79/11
**but [108]**

**C**

**call [4]** 16/25 18/19 31/14 71/5
**called [3]** 50/16 62/14 63/3
**came [5]** 23/3 42/21

53/10 58/3 64/24
**can [38]** 6/20 6/21 9/7 16/21 21/18 22/10 23/2 23/17 23/21 31/7 31/7 31/7 31/8 33/18 33/23 34/1 42/4 42/24 43/11 44/15 44/18 47/16 48/5 48/11 52/9 54/22 59/12 59/13 63/9 63/10 66/7 71/22 71/23 74/9 77/7 77/8 77/21 80/9
**can't [17]** 2/16 15/19 15/22 35/6 35/8 39/9 41/23 41/23 42/25 43/3 43/6 43/12 51/9 52/20 69/22 75/11 83/6
**canceled [1]** 48/23
**candid [1]** 63/8
**cannot [10]** 8/5 8/17 19/8 19/10 31/24 57/17 74/23 79/20 79/21 80/1
**capable [1]** 63/21
**CAPITAL [2]** 1/7 1/22
**carried [1]** 10/23
**cart [1]** 60/25
**case [129]**
**cases [11]** 12/15 15/20 16/10 22/15 34/7 34/23 36/3 41/1 59/24 69/16 75/5
**cause [5]** 8/13 13/14 20/12 74/19 74/22
**causes [5]** 8/5 8/11 8/25 9/8 9/19
**cautious [6]** 36/10 38/9 38/11 38/15 47/14 47/14
**cert [2]** 6/3 7/20
**certainly [2]** 76/6 78/13
**certainties [1]** 34/1
**certify [1]** 83/10
**cetera [1]** 7/2
**chalk [1]** 60/4
**challenged [1]** 4/14
**chance [5]** 9/20 11/1 32/8 61/10 61/11
**change [20]** 16/19 16/20 20/9 20/17 20/19 21/5 30/9 30/20 46/8 46/11 46/16 47/8 47/10 73/5 73/9 73/11 73/17 75/17 76/24 77/5
**changed [8]** 17/21 20/13 30/11 30/17 39/4 39/17 39/17 68/18
**changes [1]** 46/18
**check [3]** 1/15 58/5 63/7
**checks [1]** 77/19
**chess [1]** 34/19
**chief [1]** 2/19
**choice [2]** 28/7 64/22
**chose [1]** 64/23
**chosen [1]** 65/2
**chuckled [1]** 60/1
**Chur [2]** 46/5 73/14
**Circuit [28]** 3/6 3/11 6/1 7/12 7/18 17/23 18/4 20/13 20/21 20/23

22/3 25/10 27/6 30/13 30/17 31/17 34/15 39/15 39/22 46/18 57/8 57/20 59/21 63/9 63/17 67/16 68/18 68/19
**Circuit's [10]** 7/23 8/6 8/18 9/6 17/20 20/16 26/5 67/21 71/12 73/9
**circumstance [1]** 28/22
**circumstances [7]** 20/14 32/4 39/16 46/15 60/4 73/8 77/2
**citation [1]** 24/18
**citations [1]** 8/11
**cited [8]** 7/13 12/15 12/20 12/23 13/4 13/5 70/10 73/14
**citing [1]** 67/18
**Claggett [1]** 2/14
**claim [23]** 6/10 6/18 6/20 9/19 26/6 26/17 40/17 41/5 41/10 43/19 50/19 51/10 52/19 52/23 55/18 66/1 71/15 74/6 74/13 75/4 75/14 78/12 80/1
**claims [105]**
**clarification [2]** 11/18 46/9
**clarify [1]** 23/2
**clarity [2]** 37/5 47/19
**CLARK [2]** 1/2 2/1
**class [1]** 70/9
**class-action [1]** 70/9
**CLE [1]** 9/22
**clean [1]** 43/8
**clear [17]** 4/25 6/1 8/8 17/19 35/10 38/23 43/8 46/6 49/3 54/2 55/17 57/9 57/10 59/15 63/13 72/19 77/15
**clearly [3]** 40/16 60/20 67/15
**client's [2]** 62/12 67/19
**clients [4]** 57/3 66/19 71/17 78/14
**close [3]** 6/5 46/22 62/22
**closed [4]** 11/11 17/8 66/24 67/1
**closing [1]** 69/5
**cocounsel [2]** 2/15 2/17
**colleague [1]** 2/11
**collectively [1]** 24/4
**Colloquy [1]** 2/20
**come [15]** 17/18 32/7 33/3 39/13 40/21 41/9 43/6 44/10 47/19 48/13 59/24 64/16 75/15 77/7 77/8
**comes [7]** 11/25 18/8 24/1 68/25 69/3 79/15 81/18
**comfortable [1]** 82/11
**coming [3]** 38/22 47/17 69/21
**comity [1]** 75/4

**comment [8]** 55/1 65/9 65/12 67/22 69/1 69/5 77/25 80/19
**commented [1]** 59/10
**comments [12]** 5/10 14/4 38/5 38/19 38/25 39/1 49/11 54/19 55/18 58/24 62/10 68/2
**commissioner [4]** 46/4 46/10 73/14 76/25
**commissioner's [1]** 46/15
**Company [1]** 41/16
**compared [1]** 13/17
**compelled [2]** 3/25 6/9
**competitive [1]** 28/4
**complain [2]** 49/22 71/1
**complaining [2]** 45/1 49/13
**complaint [33]** 2/23 3/19 8/12 11/3 11/7 20/20 21/9 21/10 21/13 21/15 23/10 23/10 26/22 27/4 33/18 43/20 44/3 44/11 46/8 50/5 50/12 51/8 52/17 60/20 60/21 63/22 64/20 64/24 66/11 69/7 73/12 74/12 75/25
**complaints [2]** 46/20 53/14
**complete [1]** 15/10
**completely [5]** 54/24 64/19 66/19 78/6 79/17
**complex [4]** 13/20 35/19 51/24 82/4
**complicated [3]** 34/18 34/20 35/5
**comply [1]** 8/16
**compromised [1]** 76/9
**conceived [1]** 62/12
**concept [1]** 29/11
**concern [2]** 24/25 36/14
**concerned [6]** 6/1 11/19 25/1 25/6 35/20 60/10
**concerning [1]** 18/6
**conclude [2]** 7/15 47/12
**concluded [1]** 83/8
**conclusively [1]** 57/19
**concurrent [2]** 75/5 75/7
**conditional [2]** 81/7 81/13
**conduct [4]** 31/8 31/13 45/25 47/8
**confer [1]** 82/2
**confidence [2]** 13/8 61/16
**confident [1]** 57/3
**confirmation [4]** 13/21 21/24 22/7 22/23
**confirmed [1]** 4/2
**confirming [1]** 23/4
**conform [2]** 16/19 47/10

**congratulating [2]** 37/14 37/18
**consent [1]** 7/16
**consider [4]** 49/15 50/4 50/7 65/14
**considerable [1]** 46/7
**consideration [2]** 5/20 21/6
**considerations [1]** 35/25
**considered [1]** 42/14
**consistency [2]** 14/23 81/18
**consistent [2]** 35/22 53/4
**constructive [1]** 32/8
**context [2]** 54/25 55/17
**contingency [1]** 12/21
**continue [1]** 13/3
**continued [1]** 79/11
**contract [27]** 6/14 6/21 7/2 9/2 18/22 25/23 25/25 26/2 26/6 26/7 27/24 28/13 29/3 29/6 31/16 32/1 32/6 32/7 33/11 39/7 41/18 54/11 71/14 72/16 73/21 74/1 74/11
**contract's [1]** 31/20
**contract-based [6]** 7/2 27/24 28/13 73/21 74/1 74/11
**contract-related [2]** 29/3 31/16
**contracts [1]** 60/2
**contractual [4]** 18/14 35/13 77/7 77/8
**contractually [2]** 25/21 72/11
**controlling [6]** 20/18 46/25 50/11 60/19 68/21 73/10
**controversy [1]** 13/25
**copies [1]** 14/10
**copy [7]** 4/18 11/6 23/19 45/2 50/5 53/15 70/16
**correct [4]** 6/4 32/9 45/15 72/1
**correctly [2]** 44/1 83/10
**could [22]** 5/6 7/2 7/7 19/2 24/19 28/22 29/2 39/13 41/8 45/11 52/14 52/25 59/15 63/18 64/2 65/13 68/3 69/20 79/6 79/12 80/11 81/13
**couldn't [2]** 65/21 65/24
**counsel [45]** 4/18 15/1 15/22 16/18 17/3 19/3 21/3 24/3 38/7 38/22 42/9 44/1 45/15 48/13 49/12 49/22 51/6 51/16 51/25 51/25 52/15 53/7 54/17 54/20 56/10 56/12 56/19 58/1 62/7 63/1 63/3 63/16 63/20 64/18 67/11 68/2 68/17

**APP372**

## C

counsel... [8] 70/4 72/8 72/10 72/23 73/6 73/20 75/20 78/3
counsel's [4] 51/12 52/23 53/2 55/25
counsels [1] 81/4
counter [1] 11/4
counterclaim [3] 4/9 6/24 65/1
counterclaimant [1] 2/15
counterclaims [10] 5/7 7/7 23/7 23/8 23/11 24/20 55/14 55/19 55/22 65/15
counterintuitive [1] 44/19
countermotion [5] 24/11 24/12 66/12 72/7 78/23
countermove [1] 63/25
countermoved [1] 79/6
counterproductive [1] 44/19
COUNTY [2] 1/2 2/1
couple [4] 15/6 61/12 63/14 68/16
course [9] 14/25 23/18 24/18 25/20 27/11 42/10 44/14 70/15 80/18
court [203]
court's [19] 3/8 5/2 13/6 13/10 13/13 16/12 33/14 40/10 52/13 55/2 55/8 57/11 57/22 57/25 58/3 67/13 67/19 80/8 80/19
courthouse [1] 16/21
courtroom [1] 51/21
courts [19] 3/15 5/20 5/23 13/4 16/4 27/7 27/13 27/13 28/15 31/21 36/9 45/18 46/6 50/16 50/20 50/24 59/14 74/5 80/5
covenant [1] 6/19
cover [1] 67/11
covered [1] 8/19
create [1] 29/23
credit [2] 55/8 55/9
criticized [2] 44/16 44/18
crux [1] 3/8
curb [2] 45/20 65/11
current [4] 21/11 27/6 56/15 75/17
currently [3] 5/4 5/15 24/16
cut [1] 34/9
CV [1] 5/6

## D

Dana [1] 83/15
date [2] 76/24 79/8
dated [1] 53/20
David [1] 2/17

day [10] 29/16 31/18 33/9 34/18 48/19 48/19 58/10 69/20 70/11 82/16
days [5] 23/5 62/21 77/21 77/21 79/10
dead [7] 32/20 37/14 53/6 53/8 63/3 64/15 71/21
deadline [6] 11/10 11/13 21/1 21/4 30/11 66/24
deal [2] 70/24 71/17
dealing [5] 6/19 35/19 43/22 45/23 61/7
deals [1] 60/21
debate [21] 7/22 19/24 33/24 36/14 38/14 38/16 38/23 39/11 39/18 42/11 42/20 43/8 43/16 47/25 48/13 73/20 74/6 74/14 75/15 77/4 77/12
debates [1] 9/12
debating [2] 76/19 82/15
dec [1] 8/14
December [4] 24/2 24/2 56/16 58/25
December 4 [1] 58/25
decide [6] 22/20 54/4 54/13 59/10 68/8 77/21
decided [10] 4/13 7/4 54/12 56/1 56/3 57/15 57/19 60/3 61/25 65/18
decides [1] 45/24
deciding [1] 64/6
decision [34] 3/6 4/2 5/25 6/5 7/23 8/7 8/18 9/7 11/20 13/24 19/18 20/23 21/25 22/6 23/4 25/9 27/6 55/12 57/4 57/7 57/20 63/17 67/21 69/13 69/15 69/21 69/25 70/3 70/17 71/12 73/14 75/1 82/10 82/22
decisions [4] 25/2 33/10 66/15 68/21
declaratory [2] 6/11 33/19
decline [2] 20/25 81/1
deem [1] 71/22
deemed [1] 59/12
defendant [4] 1/9 32/1 52/21 56/17
defendant's [1] 79/1
defendants [11] 2/14 3/2 8/16 10/8 11/13 15/3 55/15 57/14 58/13 74/23 78/5
defendants' [2] 1/16 24/11
defense [1] 2/8
defense's [1] 24/12
defenses [4] 5/7 7/2 7/7 24/19
defer [1] 22/9
deference [1] 35/23
defining [1] 35/12

Definitely [1] 82/18
definitive [1] 45/11
delay [1] 30/18
delicto [1] 31/22
demonstrating [1] 42/19
denial [2] 19/25 20/1
denied [6] 6/2 7/19 7/21 21/11 21/12 48/11
denies [2] 19/19 77/10
deny [2] 48/4 65/14
denying [2] 10/5 46/14
department [1] 51/10
DEPT [1] 1/6
described [1] 45/20
designed [2] 17/1 68/5
desire [1] 15/11
despite [2] 11/1 74/11
detail [2] 71/7 71/10
determination [4] 3/15 12/24 63/12 69/19
develop [8] 14/25 15/11 30/7 41/9 47/23 48/20 76/23 77/12
developed [7] 15/21 28/24 29/24 35/3 76/6 76/6 76/7
developing [2] 16/10 20/1
development [3] 16/11 26/24 38/1
deviate [1] 59/22
did [40] 3/5 3/10 3/18 5/22 7/15 10/12 14/1 16/3 20/11 21/7 24/8 37/9 39/21 49/11 49/25 50/1 51/19 53/3 53/14 56/14 56/18 56/22 56/23 57/4 58/22 60/25 61/2 61/3 63/10 65/8 65/16 66/22 69/22 69/23 72/18 72/23 78/22 79/13 82/7 83/3
didn't [23] 5/23 22/24 22/24 25/2 29/23 35/14 36/7 39/3 39/14 42/12 48/24 49/21 65/5 65/21 65/25 66/1 66/9 66/10 72/17 73/1 75/21 75/24 81/19
difference [1] 26/20
different [8] 8/11 23/1 31/8 36/18 42/7 61/13 71/13 74/5
dig [1] 54/18
digits [1] 39/17
dilatory [1] 47/7
direct [4] 5/12 41/15 46/3 71/2
directed [1] 80/5
directing [3] 8/15 57/21 57/22
directs [1] 13/4
disagree [2] 63/24 64/19
disappointing [1] 78/3
discovery [1] 62/22
discretion [4] 12/2 12/9 12/17 46/14

discussed [1] 24/14
discussion [3] 22/15 61/15 65/19
dismiss [6] 36/8 50/8 65/13 65/18 74/10 80/24
Dismissal [1] 74/21
disposed [1] 71/21
dispositive [1] 39/22
dispute [6] 9/17 9/18 10/1 16/16 17/14 19/5
disputes [3] 36/16 36/19 37/3
disrespectfully [1] 17/3
dissolving [1] 57/12
distinction [1] 56/6
distract [1] 68/5
district [13] 1/2 1/12 46/6 46/12 46/14 57/11 57/16 57/21 58/8 59/15 67/16 73/16 80/5
diverges [1] 20/22
do [74] 3/24 5/24 11/24 12/7 13/21 14/2 15/12 15/15 16/7 16/9 18/5 21/23 22/12 23/25 24/24 24/24 25/24 26/23 26/25 31/5 31/7 31/8 31/23 34/25 35/18 35/20 36/9 36/21 37/15 38/9 39/15 42/7 42/10 42/23 44/8 44/17 45/4 48/9 49/21 50/14 50/16 51/25 52/12 59/3 60/3 60/4 60/5 60/5 60/13 60/15 60/15 61/10 61/14 61/20 61/22 63/9 66/15 68/16 69/12 69/18 70/1 70/6 70/6 70/13 70/14 71/23 74/8 76/1 77/17 77/17 78/8 81/17 82/7 83/10
docket [3] 4/10 11/8 13/13
doctrine [1] 29/11
doctrines [1] 75/3
document [4] 4/24 11/8 67/1 71/16
Document 183 [2] 11/8 67/1
Document 210 [1] 4/24
does [12] 9/17 9/19 17/18 19/21 31/12 31/18 32/2 63/17 75/6 75/8 75/8 81/16
doesn't [4] 34/12 34/13 46/17 49/23
doing [13] 14/1 16/5 17/10 21/14 32/3 37/12 43/22 44/18 47/16 52/10 53/9 59/6 66/17
don't [49] 3/12 5/24 7/22 12/6 12/25 14/12 17/2 21/19 22/2 22/21 27/15 29/7 34/9 38/21 41/11 42/20 44/12 45/16 45/25 50/10 50/10 50/14 50/22

51/13 51/23 52/3 57/6 58/25 59/25 61/20 62/23 63/9 63/19 65/9 65/17 65/19 66/3 66/13 66/14 69/9 70/1 70/2 71/1 72/25 75/16 75/22 75/23 78/13 83/1
done [9] 12/11 29/18 37/7 42/8 56/4 67/4 68/15 70/9 82/5
door [3] 17/7 17/8 17/8
down [10] 12/1 20/6 24/13 38/15 51/5 54/8 57/6 58/3 61/4 69/21
DR [1] 71/4
due [8] 19/19 19/25 25/3 49/13 77/10 78/12 78/13 79/18
duplicative [3] 37/24 47/17 75/5
during [3] 58/7 63/2 71/16
duties [1] 8/15

## E

E-edition [1] 6/17
each [1] 71/7
earlier [4] 7/21 53/22 55/1 61/23
early [1] 20/5
easy [2] 37/15 64/7
ECF [1] 72/13
economic [1] 64/12
economies [1] 36/1
economy [3] 36/11 37/24 64/13
EDCR [3] 13/4 70/4 80/7
edition [1] 6/17
effect [1] 19/21
effective [1] 47/11
efficient [2] 13/9 80/5
efficiently [1] 13/5
efforts [1] 37/24
eight [1] 40/9
eighth [2] 6/13 8/25
either [12] 15/20 19/12 29/6 34/19 34/25 48/5 48/11 56/23 74/3 76/5 77/2 79/6
election [1] 67/8
element [1] 9/3
elements [1] 9/7
eliminate [1] 31/18
ellipsis [1] 67/14
else [4] 10/19 11/25 63/20 68/24
emergency [3] 24/4 55/15 57/15
employed [1] 29/7
en [1] 7/19
enamored [1] 31/21
encourage [3] 66/25 69/6 69/8
end [13] 13/2 16/22 16/24 26/22 28/25 29/2 33/9 43/17 67/14 70/11 79/5 80/9 80/24
ending [1] 9/16

**APP373**

**E**

**enforce [8]** 8/3 18/16 41/21 56/25 57/17 59/13 59/16 68/11
**enforceability [8]** 4/15 17/25 27/17 28/17 28/18 32/12 37/3 61/25
**enforceable [12]** 5/21 6/10 7/9 18/2 31/17 32/16 39/9 40/13 54/5 54/13 54/15 68/9
**enforcement [1]** 36/20
**enjoy [3]** 51/24 51/24 52/1
**enjoying [1]** 52/1
**enrichment [2]** 32/5 63/19
**enrichments [1]** 31/19
**enter [2]** 8/3 10/16
**entered [18]** 4/6 4/24 7/6 9/13 11/9 11/15 11/17 22/1 22/9 22/22 23/20 32/15 40/3 54/3 55/3 58/15 58/17 71/5
**entering [1]** 57/13
**entire [3]** 23/13 55/15 79/25
**entirely [3]** 55/10 56/13 68/14
**entities [1]** 56/18
**entitled [3]** 10/2 13/11 83/11
**entity [1]** 56/16
**envision [1]** 43/12
**equitable [3]** 41/13 49/24 59/17
**equity [1]** 30/6
**error [1]** 30/9
**especially [3]** 45/25 69/16 72/20
**ESQ [5]** 1/19 1/19 1/20 1/22 1/23
**essence [2]** 26/21 60/9
**essentially [8]** 3/25 10/18 12/22 13/7 52/8 57/17 59/5 82/14
**et [2]** 5/5 7/2
**et cetera [1]** 7/2
**even [23]** 11/12 11/15 13/25 17/10 17/12 19/24 25/25 26/5 30/10 31/20 36/23 38/12 38/14 39/2 48/5 58/19 59/25 67/5 67/7 71/15 72/12 75/2 77/2
**evenhanded [1]** 12/16
**evens [1]** 31/6
**event [2]** 58/23 66/20
**ever [7]** 18/20 33/22 38/24 51/9 57/2 65/18 76/18
**every [9]** 12/24 13/7 13/14 14/23 54/7 55/18 77/21 77/21 82/16
**everybody [2]** 52/11 52/12
**everyone [4]** 2/4 44/19 50/14 68/18

**everything [14]** 23/22 27/15 27/22 38/10 38/16 47/3 47/15 54/23 54/24 55/18 55/20 70/15 76/3 81/6
**evidence [1]** 39/21
**evidentiary [1]** 58/18
**exact [16]** 16/23 20/3 20/3 20/4 21/8 26/8 30/14 37/8 39/1 39/17 39/19 39/19 39/19 73/13 74/5 76/12
**exactly [18]** 21/14 26/3 26/18 38/1 39/11 39/20 40/3 43/22 44/4 45/11 46/2 46/2 67/16 67/17 69/13 69/19 69/22 73/6
**example [3]** 69/11 69/12 82/1
**exception [1]** 24/21
**execution [2]** 55/4 55/7
**exist [2]** 56/15 56/18
**existence [2]** 6/9 72/12
**existing [1]** 9/2
**exonerate [1]** 31/13
**exoneration [1]** 15/18
**expect [2]** 44/10 77/1
**expense [2]** 44/24 47/19
**expiration [2]** 21/4 30/10
**explain [1]** 19/14
**explained [1]** 52/24
**explains [1]** 71/10
**explanation [2]** 64/2 79/20
**express [3]** 18/7 18/14 32/17
**expressly [6]** 7/6 8/6 17/24 18/17 30/8 42/2
**extension [3]** 61/2 79/24 80/1
**extensive [1]** 4/12
**extensively [1]** 12/5
**extent [1]** 20/23
**eyes [1]** 17/19

**F**

**face [2]** 19/1 38/13
**facing [2]** 66/4 78/18
**fact [9]** 10/2 10/10 11/8 18/23 36/13 41/25 44/2 66/22 72/23
**facts [3]** 39/19 52/20 75/10
**factual [1]** 13/24
**fail [1]** 40/16
**failures [1]** 66/15
**fair [9]** 6/19 12/16 12/18 48/8 49/17 52/4 69/24 77/4 78/14
**fairly [3]** 6/1 57/8 70/2
**faith [4]** 6/19 30/19 43/6 47/7
**fall [3]** 33/25 34/4 38/13
**false [2]** 56/2 56/11
**familiar [1]** 10/7
**far [10]** 6/1 11/18 13/21

14/13 25/1 46/23 60/10 64/9 64/10 82/2
**fast [1]** 48/16
**fatal [1]** 10/14
**fate [1]** 10/14
**fault [1]** 64/19
**favor [1]** 46/7
**February [1]** 3/11
**federal [134]**
**feel [2]** 50/15 82/10
**feels [2]** 15/23 17/6
**fees [2]** 44/22 44/22
**field [1]** 31/7
**fifth [2]** 6/12 8/25
**fight [1]** 37/17
**fighting [2]** 26/15 47/17
**figure [3]** 24/8 27/19 37/6
**file [39]** 2/23 3/10 6/24 8/12 19/14 19/18 26/10 26/21 31/3 43/11 44/6 44/9 48/1 49/17 49/18 52/25 55/12 58/9 58/12 60/12 62/20 64/3 64/23 65/13 65/21 65/22 65/24 71/18 71/23 72/24 73/3 74/9 74/23 75/13 75/25 76/4 77/2 79/20 80/9
**filed [24]** 2/24 4/11 7/20 10/22 11/16 17/10 19/25 23/9 23/10 31/6 44/2 50/6 50/8 55/15 57/15 58/19 61/8 64/20 74/4 79/7 79/8 79/9 79/12 79/21
**filing [7]** 3/9 35/3 48/6 52/21 73/1 74/2 74/12
**fill [1]** 39/18
**final [4]** 6/5 7/23 69/1 72/9
**finally [1]** 6/18
**find [6]** 15/16 15/17 15/18 39/7 53/18 54/22
**finding [1]** 24/15
**findings [2]** 23/19 24/1
**finds [2]** 5/3 24/16
**finish [1]** 55/20
**firm [1]** 70/8
**first [23]** 2/7 2/23 3/9 3/18 6/10 8/12 8/13 19/22 26/19 31/5 44/12 47/14 48/3 51/16 53/11 54/5 61/13 65/15 67/6 67/14 69/7 77/13 78/8
**fish [6]** 37/13 37/14 53/8 63/4 64/15 71/21
**fit [1]** 71/23
**five [1]** 41/1
**fixed [1]** 14/17
**flat [1]** 38/13
**flip [1]** 38/4
**flip-flopped [1]** 38/4
**flipping [1]** 60/24
**floor [1]** 9/22
**flopped [1]** 38/4
**follow [3]** 57/21 57/23 76/2

**follow-up [1]** 57/21
**followed [1]** 60/1
**following [2]** 44/16 47/20
**foot [1]** 44/25
**footnote [1]** 8/10
**force [1]** 71/16
**foreclosed [4]** 8/6 9/6 13/14 62/24
**foregoing [1]** 7/15
**foremost [1]** 31/5
**foreshadowed [2]** 18/13 18/21
**foreshadowing [1]** 36/17
**forever [1]** 55/20
**forget [1]** 33/1
**forgets [1]** 73/6
**forgot [1]** 5/11
**forgotten [2]** 69/1 72/13
**form [1]** 59/16
**formally [1]** 81/19
**format [2]** 6/15 13/7
**forth [3]** 2/6 8/15 13/24
**forum [5]** 29/2 34/4 52/23 64/7 79/23
**forward [6]** 5/19 8/5 10/15 36/3 77/7 77/8
**found [6]** 19/10 30/18 30/19 34/20 72/15 73/7
**foundation [3]** 15/9 15/11 25/19
**founded [1]** 16/14
**four [1]** 39/17
**frankly [3]** 10/14 49/11 49/14
**frequently [1]** 54/9
**Friday [1]** 58/10
**front [10]** 6/15 32/23 34/15 37/11 53/15 59/1 65/6 66/16 66/16 78/25
**front-page-format [1]** 6/15
**fulfilled [2]** 62/1 68/12
**full [3]** 37/25 49/17 80/14
**fully [22]** 12/4 14/25 15/11 15/20 17/20 17/23 18/8 20/1 28/24 30/6 41/9 47/23 48/20 63/21 66/17 76/6 76/6 76/23 77/1 77/12 77/12 77/13
**fundamental [1]** 55/25
**funny [2]** 22/14 65/3
**further [7]** 5/7 11/12 24/20 24/23 53/24 61/19 62/2
**futile [1]** 43/7
**futility [3]** 43/2 43/3 67/23

**G**

**Gall [1]** 9/23
**gallery [1]** 52/8
**games [1]** 34/19
**GARIBAY [1]** 1/25
**gate [1]** 77/3

**gave [1]** 79/25
**GAYAN [8]** 1/23 2/14 3/2 16/3 23/23 41/22 49/2 59/19
**general [4]** 7/16 8/4 54/15 74/18
**generally [1]** 74/21
**gentlemen [3]** 51/20 51/20 83/7
**genuine [2]** 10/1 10/9
**get [24]** 2/21 2/25 15/13 15/16 16/15 19/24 22/25 23/23 27/16 29/25 31/4 34/19 35/6 45/8 48/12 56/7 59/24 69/21 70/16 75/16 77/13 79/8 82/16 82/23
**gets [2]** 16/18 62/19
**getting [1]** 41/11
**give [4]** 46/6 61/2 70/16 82/21
**given [12]** 4/18 12/9 12/10 12/10 19/16 26/9 30/6 44/3 61/10 74/15 77/4 81/10
**gives [2]** 19/21 24/18
**glad [1]** 48/23
**go [19]** 2/6 2/21 2/25 8/5 11/12 14/15 19/18 24/13 25/12 34/18 36/3 39/10 57/6 60/3 64/12 65/7 70/14 71/6 82/6
**goals [1]** 15/20
**goes [2]** 29/8 71/9
**going [69]** 11/21 15/19 15/21 16/6 17/18 18/10 18/19 19/17 22/12 22/18 22/19 23/22 24/7 25/15 25/24 26/3 27/1 27/2 27/3 27/20 29/1 29/17 33/5 33/22 36/9 36/17 37/17 39/11 39/15 40/4 41/5 41/7 41/8 41/25 42/11 42/20 43/14 43/18 45/12 47/1 47/13 47/18 48/9 48/15 48/23 49/1 50/6 50/13 51/7 53/17 58/8 59/3 61/17 63/8 65/4 65/14 67/9 69/9 69/17 69/17 70/14 70/14 70/15 74/9 76/17 77/20 82/14 82/20 83/2
**good [13]** 2/4 2/9 2/13 3/23 6/19 14/7 14/8 34/21 52/22 59/23 69/11 81/2 81/3
**got [9]** 14/10 15/2 20/6 53/15 58/14 59/2 65/17 67/17 79/12
**govern [2]** 19/4 19/5
**grant [8]** 8/17 9/25 12/18 24/8 41/4 54/21 79/4 80/14
**granted [12]** 6/24 11/17 20/8 21/8 24/8 24/9 30/20 46/12 55/14 56/4 78/20 79/24

**APP374**

**G**

**granting [5]** 10/4 25/13 46/7 57/25 80/2
**grants [2]** 40/19 52/24
**great [4]** 37/4 51/8 52/18 65/23
**grounds [1]** 7/1
**GROUP [2]** 1/7 1/22
**guarantee [2]** 28/25 29/21
**guess [6]** 6/5 14/11 14/17 60/10 61/7 61/12
**guessing [1]** 81/24
**guidance [1]** 16/10
**guilty [1]** 32/2
**gun [1]** 37/18
**guy [1]** 45/19

**H**

**had [37]** 2/22 3/13 4/1 4/14 6/8 11/16 13/21 14/23 15/25 22/15 25/7 30/5 35/18 36/14 37/10 37/10 39/4 43/9 43/10 44/23 48/24 48/25 49/17 54/1 54/15 58/12 58/13 58/13 59/25 60/1 61/11 64/3 70/1 70/5 70/8 72/11 78/7
**hadn't [2]** 39/2 58/19
**half [8]** 3/23 9/12 12/25 16/2 20/25 68/7 82/3 82/21
**hand [2]** 19/8 29/9
**handed [1]** 23/18
**handle [1]** 33/8
**handled [1]** 58/7
**handling [1]** 27/21
**handout [5]** 4/17 4/21 5/9 5/12 7/12
**hands [2]** 19/23 25/1
**happen [9]** 10/19 16/21 18/11 19/2 28/21 34/12 40/4 47/18 74/7
**happened [8]** 5/1 15/17 18/25 19/6 53/11 56/3 58/22 73/25
**happens [8]** 18/15 18/20 38/4 38/11 59/10 77/19 78/1 81/20
**happy [3]** 13/16 71/24 80/13
**hard [2]** 14/10 48/16
**hardly [2]** 44/16 44/18
**harm [2]** 80/2 80/3
**has [68]** 3/22 5/13 7/11 7/14 8/3 10/8 10/23 11/22 11/22 12/2 12/17 12/24 13/2 13/14 13/17 18/24 21/8 26/4 28/4 28/8 29/6 29/18 29/24 30/8 30/15 30/18 31/21 32/15 33/15 33/16 40/12 42/9 42/15 43/4 43/20 52/8 52/16 53/11 56/1 56/2 56/3 56/4 57/19 59/12 61/24 61/25 62/1 62/9 63/2

**65/2** 67/2 67/5 68/12 68/13 69/10 70/6 71/14 73/5 76/13 78/10 79/3 79/11 79/21 80/4 80/10 80/20 80/21 81/2
**hasn't [3]** 18/24 44/2 44/3
**have [137]**
**haven't [11]** 16/5 17/10 28/8 33/2 39/17 39/23 39/25 42/25 44/4 45/15 81/17
**having [8]** 11/1 22/14 29/2 29/3 44/21 63/25 72/8 73/20
**he [18]** 38/8 38/9 38/10 38/17 38/18 42/12 47/15 51/18 52/8 52/9 62/8 63/4 69/2 72/12 75/22 80/21 81/2 81/5
**He's [1]** 55/21
**head [3]** 33/24 36/22 38/10
**hear [7]** 14/4 29/3 49/3 53/4 66/22 74/3 79/20
**heard [12]** 10/17 16/23 50/5 56/9 58/1 63/16 64/18 65/6 65/23 65/24 66/7 68/17
**hearing [8]** 1/14 36/5 48/24 54/19 58/7 58/18 79/1 79/11
**heart [3]** 20/2 20/2 26/16
**Heck [1]** 70/8
**held [2]** 29/5 42/1
**help [1]** 83/6
**helpful [1]** 70/11
**her [4]** 37/11 59/16 69/6 69/6
**here [81]** 2/16 2/17 3/22 5/9 10/6 10/7 10/15 12/18 14/2 15/6 15/10 15/15 15/16 16/7 16/8 17/11 17/18 17/19 18/12 21/14 23/8 23/25 24/14 24/24 25/6 25/16 26/13 27/16 27/23 28/9 28/11 28/13 28/21 29/7 32/3 32/21 34/20 35/6 35/10 37/8 37/14 37/17 38/2 38/12 38/14 38/15 39/12 39/13 40/10 41/1 41/9 41/19 43/15 43/23 45/24 46/18 47/17 50/25 53/9 54/8 54/14 60/25 61/13 63/17 63/23 64/24 67/2 69/3 69/5 73/21 74/1 74/17 76/7 76/19 77/17 78/10 78/21 79/9 79/13 79/15 82/20
**here's [2]** 18/23 25/15
**hereby [1]** 83/10
**Herndon [1]** 9/22
**herrings [1]** 68/5
**hesitant [1]** 45/14
**hey [1]** 65/6
**high [3]** 45/19 61/16

**65/10**
**highest [1]** 41/20
**highlight [1]** 4/22
**him [1]** 51/19
**hindsight [1]** 81/22
**his [7]** 16/3 31/13 38/23 38/23 49/23 63/2 69/3
**history [1]** 62/9
**hit [4]** 19/24 36/22 37/18 38/10
**home [1]** 82/6
**Honor [142]**
**Honor's [11]** 3/21 5/10 38/25 44/6 46/3 51/4 53/15 59/9 61/18 66/23 77/22
**HONORABLE [1]** 1/12
**honored [2]** 44/23 79/24
**honoring [1]** 44/5
**hook [2]** 66/15 66/19
**hope [2]** 54/20 57/5
**hour [2]** 82/3 82/21
**hours [1]** 82/15
**how [15]** 17/5 22/14 33/25 35/2 36/6 43/8 53/14 60/13 61/9 64/16 69/19 71/10 71/12 73/25 77/10
**How's [1]** 52/1
**however [2]** 42/12 69/16
**hungering [1]** 49/1
**hurdle [1]** 45/19
**hurdles [1]** 45/20
**hurry [1]** 58/20
**hurts [1]** 45/1
**Hutchins [1]** 74/18
**hyperbole [1]** 62/9
**hypothetically [1]** 25/9

**I**

**I'd [8]** 4/18 13/16 14/10 14/22 38/19 43/24 45/5 82/3
**I'll [21]** 14/3 14/19 15/1 22/9 29/1 35/5 42/17 49/10 49/24 49/25 60/11 69/1 69/5 69/13 69/13 70/16 71/2 72/3 74/4 75/23 81/1
**I'm [56]** 6/6 12/9 12/9 12/10 15/21 22/5 22/12 22/13 22/25 23/22 23/25 24/7 24/7 24/24 27/1 27/2 27/3 27/19 32/22 32/25 33/5 33/22 34/23 36/12 41/7 41/8 45/14 48/23 48/23 49/8 52/1 52/11 53/17 53/23 57/2 59/3 59/23 60/6 60/7 60/18 63/8 67/9 67/18 68/23 68/23 69/9 69/22 70/13 70/14 70/14 71/24 74/17 80/13 81/6 82/20 83/2
**I've [19]** 2/21 4/18 14/9 14/23 23/17 23/18

**30/23** 39/16 40/2 41/14 44/13 45/17 47/15 60/19 65/9 69/1 82/1 82/5 82/6
**idea [1]** 64/16
**ideal [1]** 58/21
**identical [5]** 25/16 74/3 75/2 75/9 75/11
**if [82]** 4/17 5/24 6/20 9/25 10/12 11/12 12/9 14/9 14/11 14/12 14/20 16/3 18/14 18/20 19/22 22/24 23/16 25/7 26/9 27/13 28/25 29/4 30/22 31/24 32/9 32/24 33/5 34/2 34/7 34/23 36/4 37/7 39/2 39/11 39/14 41/4 41/9 43/10 45/19 45/24 45/25 47/17 48/7 48/9 48/19 49/20 50/6 51/9 52/15 52/23 54/2 54/22 55/8 55/11 57/1 58/2 58/8 61/24 63/9 63/22 64/3 64/5 67/9 69/16 70/2 71/14 71/18 71/23 74/4 74/7 74/8 75/13 76/6 76/12 76/13 76/21 79/5 79/21 80/9 80/22 81/9 82/7
**ill [1]** 62/12
**ill-conceived [1]** 62/12
**illegal [4]** 32/1 39/8 41/21 56/24
**Imagine [1]** 74/3
**immediately [1]** 20/6
**impact [7]** 5/6 16/7 24/19 25/2 25/7 25/10 33/11
**impacted [3]** 7/3 7/7 33/15
**impetus [1]** 3/9
**implied [2]** 6/19 32/6
**important [9]** 7/25 18/23 25/12 25/14 31/11 38/6 46/4 75/12 82/23
**importantly [2]** 40/22 71/9
**improper [4]** 28/12 28/14 66/19 79/17
**in [320]**
**inability [1]** 18/16
**INC [4]** 1/4 1/25 5/5 56/14
**inclination [1]** 76/21
**included [3]** 27/8 52/17 64/21
**includes [1]** 59/14
**including [7]** 20/18 32/8 44/20 53/3 54/3 57/14 73/10
**inconsistent [4]** 36/2 37/25 39/24 78/6
**inconvenience [1]** 82/19
**incorrect [1]** 61/21
**incur [1]** 44/21
**incurred [1]** 44/22
**incurring [1]** 44/24

**indefinitely [1]** 13/1
**independent [1]** 28/16
**indiscernible [6]** 34/11 34/16 49/1 49/5 51/21 81/10
**indivisible [1]** 74/22
**indulgence [1]** 80/19
**inequitable [4]** 30/24 48/2 75/18 77/9
**inexpensive [2]** 12/24 13/1
**infantile [1]** 62/14
**infirm [1]** 67/20
**information [2]** 49/15 58/3
**inherent [1]** 42/10
**inherently [3]** 30/24 48/2 75/18
**injunction [5]** 29/14 33/19 40/24 57/12 58/19
**inspire [1]** 44/23
**inspired [1]** 26/18
**instance [5]** 28/17 31/20 54/5 65/15 67/7
**instead [3]** 36/8 55/9 79/15
**instinctively [1]** 5/23
**insufficient [1]** 63/25
**Insurance [4]** 41/16 46/4 73/14 76/25
**intended [1]** 16/14
**intends [1]** 18/9
**interest [1]** 72/15
**interested [1]** 80/23
**interesting [9]** 21/2 24/13 45/17 50/25 51/1 51/2 58/23 66/10 67/12
**interlocutory [1]** 20/13
**interpretation [1]** 36/20
**interpreting [1]** 8/14
**interrupt [1]** 51/19
**interrupting [1]** 51/18
**intervening [1]** 46/8
**into [8]** 8/3 11/17 21/6 37/18 39/13 71/5 72/15 72/18
**invalid [1]** 31/20
**invalidation [1]** 21/10
**invested [1]** 76/14
**invite [1]** 77/1
**invoked [2]** 80/20 80/21
**involved [1]** 82/23
**involving [3]** 72/21 75/5 75/6
**irrelevant [1]** 68/4
**is [308]**
**isn't [8]** 18/1 21/2 27/21 35/22 36/16 37/20 53/8 65/10
**issue [37]** 5/15 5/24 12/11 12/11 14/2 18/20 19/11 26/18 27/17 29/12 30/14 30/22 32/15 33/8 35/21 37/11 37/20 37/20 37/21 39/2 40/20 40/21 40/25 41/1

**APP375**

**I**

**issue... [13]** 41/2 41/14 42/20 53/8 56/3 60/14 61/15 68/21 70/10 70/18 72/14 73/18 82/23
**issued [8]** 3/6 3/11 7/18 7/22 12/16 23/4 35/24 70/2
**issues [31]** 5/3 7/2 10/9 11/24 13/19 13/24 16/7 18/6 22/20 24/16 25/17 28/16 28/17 32/22 34/18 35/15 35/19 35/23 35/25 36/7 36/18 37/6 38/22 44/15 51/24 60/7 64/9 65/5 73/21 73/22 81/17
**it [249]**
**it's [71]** 3/23 7/12 8/8 11/8 12/3 12/4 12/11 13/7 15/21 15/24 16/11 16/12 16/13 16/14 16/15 17/3 17/12 18/22 19/6 22/14 23/1 25/25 27/9 28/12 29/7 29/23 30/23 31/11 34/18 35/9 37/21 37/21 41/21 41/24 43/19 43/21 45/16 46/4 46/5 47/9 48/2 48/17 50/15 50/18 51/1 51/2 52/4 52/5 53/7 53/19 53/23 57/7 60/10 60/20 61/6 61/19 62/15 63/4 64/18 65/3 65/11 67/1 70/9 75/20 75/22 77/22 78/3 78/17 81/9 82/7 82/23
**its [37]** 4/8 9/8 9/18 9/19 10/18 11/1 11/16 16/19 18/9 18/24 20/9 21/9 23/4 23/6 25/20 25/24 26/22 27/4 29/3 30/21 35/10 44/11 46/14 58/9 61/1 62/17 63/2 64/20 64/25 65/21 65/22 78/7 78/11 78/20 79/7 79/23 80/8
**itself [2]** 18/22 32/17

**J**

**JAMES [2]** 1/19 2/9
**January [4]** 4/24 23/20 53/20 62/11
**JD [1]** 1/25
**JOA [85]**
**job [2]** 15/10 15/13
**jogs [1]** 55/8
**joint [10]** 4/15 7/1 27/18 30/3 33/6 46/24 56/20 59/20 60/21 64/9
**JONES [13]** 1/22 2/15 38/8 47/13 51/10 54/23 55/19 58/6 68/25 77/17 78/4 80/18 82/4
**Jones's [5]** 35/5 38/16 47/21 55/17 76/2
**JOURNAL [23]** 1/23

4/8 4/14 10/8 13/11 24/4 52/15 52/16 53/14 54/1 55/6 56/10 56/14 57/14 58/13 58/21 65/11 67/23 68/4 68/13 68/20 71/8 71/17
**Journal's [4]** 2/19 6/23 55/22 64/25
**judge [16]** 1/12 31/2 31/5 47/5 56/3 58/8 59/1 59/2 59/2 59/6 59/7 59/8 60/10 60/19 67/4 81/19
**Judge Williams [1]** 59/2
**Judges [1]** 9/23
**judgment [69]** 1/16 9/10 9/15 9/25 10/2 10/16 10/21 10/24 12/19 14/24 15/24 16/8 16/17 17/7 17/9 17/17 19/2 19/8 19/15 19/24 20/5 20/5 21/12 21/15 26/21 27/2 29/10 29/14 31/1 32/15 33/14 37/12 40/2 40/5 40/20 40/23 41/3 42/4 43/9 43/11 43/17 43/19 47/23 47/25 48/1 48/2 48/5 48/8 48/14 54/21 55/4 60/13 62/21 62/24 66/4 66/5 66/13 67/13 67/19 67/20 68/13 72/14 74/10 76/17 77/22 78/18 78/19 79/2 79/5
**judicial [11]** 12/8 13/9 14/20 16/13 35/11 35/15 36/11 37/24 58/10 64/13 73/13
**July [1]** 78/1
**jumping [2]** 16/17 48/8
**June [1]** 20/24
**juries [1]** 17/5
**jurisdiction [14]** 22/17 27/12 27/12 27/14 28/4 33/4 33/24 33/25 50/17 59/9 65/7 68/22 75/5 75/7
**just [69]** 2/3 3/19 8/8 10/19 11/24 12/23 13/1 15/1 15/1 15/2 15/3 15/15 16/23 17/3 17/6 18/3 21/3 23/2 23/18 23/25 26/12 30/16 31/16 35/16 35/17 35/22 36/6 37/2 37/19 39/14 39/17 39/19 41/22 43/10 43/12 43/25 47/4 47/17 47/20 48/22 49/12 50/12 51/7 55/19 58/2 59/8 60/4 60/6 60/24 62/6 62/8 62/20 63/7 64/11 67/9 68/23 69/18 70/3 72/3 72/18 73/15 74/4 75/11 75/15 80/3 80/17 80/19 80/22 82/13
**justice [8]** 9/22 13/9 15/17 15/18 15/20

19/10 62/15 80/6
**justifies [2]** 20/19 73/11

**K**

**Katrina [1]** 2/18
**keep [11]** 10/18 10/25 11/25 13/1 13/12 64/15 65/25 66/18 66/19 76/13 80/4
**keeping [1]** 12/21
**key [3]** 4/22 7/12 7/14
**kick [1]** 48/7
**kind [21]** 4/22 11/21 11/25 12/21 20/19 24/7 24/9 24/24 29/25 34/16 50/17 52/1 55/24 58/23 65/3 65/4 67/24 73/11 78/5 79/6 79/12
**knew [4]** 18/18 39/14 48/15 66/8
**know [60]** 5/23 5/24 7/13 10/6 12/1 12/25 14/12 16/4 17/4 18/10 19/5 20/3 22/2 22/21 23/23 25/7 34/6 34/8 34/10 34/16 35/2 35/11 36/9 37/15 39/14 43/16 43/18 44/25 45/14 48/25 49/2 49/9 50/15 53/10 54/14 59/19 60/13 60/17 62/8 63/9 63/19 63/22 65/20 66/7 66/13 68/9 69/7 69/13 69/17 69/17 77/20 77/21 81/15 81/17 81/20 82/9 82/12 82/12 82/21 83/6
**known [2]** 6/16 39/13
**knows [6]** 19/2 21/15 21/16 29/4 56/13 77/25
**KRISTEN [2]** 1/20 2/11

**L**

**lack [1]** 49/13
**lacks [1]** 40/18
**laid [1]** 3/24
**landscape [1]** 20/14
**language [2]** 9/21 32/17
**LAS [8]** 1/4 1/23 2/1 2/10 5/5 24/4 24/11 24/17
**Las Vegas [5]** 2/10 5/5 24/4 24/11 24/17
**last [4]** 9/22 10/3 73/16 82/13
**late [3]** 3/11 12/5 43/5
**later [3]** 55/6 79/10 82/22
**Latin [1]** 31/22
**latitude [1]** 12/10
**launched [2]** 34/23 34/24
**law [49]** 4/16 5/14 5/21 9/6 10/3 13/15 16/20 16/20 17/21 20/10 20/17 20/19 20/24 21/5 22/15 27/3 30/7 30/9

30/11 30/16 30/20 32/4 34/1 39/3 39/9 39/10 41/19 42/3 42/3 42/14 46/9 46/11 46/16 46/18 47/9 47/10 54/6 62/25 63/11 68/10 68/18 73/5 73/9 73/17 75/8 75/17 75/18 76/24 77/5
**lawful [4]** 5/20 6/10 7/9 68/8
**laws [1]** 35/4
**lawyers [4]** 17/4 34/18 52/12 83/3
**lays [1]** 8/10
**leapfrog [1]** 76/17
**leapfrogged [1]** 77/9
**learn [3]** 47/18 52/12 76/3
**learned [2]** 14/21 51/25
**least [7]** 5/18 7/5 25/11 38/22 43/24 58/20 61/14
**leave [50]** 4/8 6/24 11/3 19/14 20/8 21/8 23/6 23/12 26/9 26/11 26/21 29/4 41/4 41/6 43/11 44/2 44/6 44/11 44/14 45/15 45/21 46/7 46/15 48/1 48/4 48/10 49/24 56/4 57/25 58/9 61/20 63/25 64/4 64/25 65/12 65/14 65/25 66/5 66/12 66/21 67/1 67/25 72/24 73/2 73/3 73/4 74/8 74/8 75/22 78/22
**left [13]** 9/15 10/10 16/23 16/24 32/20 32/21 37/7 52/23 53/5 63/4 68/15 79/19 80/10
**legal [2]** 2/19 20/13
**legally [2]** 34/6 34/10
**legitimate [1]** 18/2
**LEIF [1]** 1/19
**length [2]** 15/25 79/25
**lengthy [4]** 7/13 8/10 60/20 70/2
**let [9]** 23/22 53/18 54/12 61/12 66/14 68/8 76/4 77/20 79/8
**let's [17]** 2/6 2/21 2/25 16/22 16/23 16/25 18/3 20/7 31/15 38/7 40/9 48/13 54/22 63/7 77/18 77/18 77/18
**letter [3]** 16/15 55/8 55/9
**letting [2]** 36/3 37/5
**level [2]** 33/10 61/16
**liability [1]** 31/13
**lie [1]** 37/17
**lies [2]** 15/17 42/13
**lift [18]** 1/16 9/10 12/18 19/12 19/13 43/10 48/1 48/7 48/9 54/1 54/21 60/12 61/20 61/21 72/24 75/21 77/23 79/1
**lifted [13]** 26/10 26/11 30/5 30/23 42/22 44/12 45/17 73/1 75/24 76/20

78/10 81/7 81/9
**lifting [4]** 32/10 39/23 39/24 76/18
**lifts [3]** 39/24 73/2 78/8
**light [14]** 5/3 11/19 20/9 21/2 24/16 26/4 27/5 30/20 37/9 46/8 75/17 76/24 77/5 77/15
**like [25]** 4/18 10/22 14/10 15/6 15/7 17/6 33/7 34/5 34/15 36/21 36/21 38/20 43/19 45/5 45/9 50/15 50/20 53/7 57/18 63/21 73/19 74/15 74/16 81/17 82/2
**likelihood [1]** 29/16
**likewise [1]** 47/22
**limine [4]** 70/20 82/3 82/4 82/10
**limitations [3]** 12/8 76/8 76/9
**limited [2]** 3/16 75/3
**limits [1]** 22/17
**line [4]** 16/11 16/12 19/7 53/23
**lines [3]** 5/2 5/10 53/22
**lines 2 to [1]** 5/10
**lines 23 [1]** 5/2
**Lipman [1]** 2/19
**listen [3]** 38/8 51/25 52/11
**listening [3]** 49/8 52/11 60/7
**literal [2]** 74/4 74/4
**litigants [2]** 13/10 18/18
**litigate [2]** 32/21 33/5
**litigated [3]** 29/9 51/9 51/10
**litigating [4]** 4/7 18/13 27/14 54/11
**litigation [12]** 3/14 16/1 16/6 17/1 25/3 27/20 28/10 38/4 62/2 62/3 70/9 75/3
**little [5]** 45/1 45/14 60/1 81/2 81/4
**LLC [1]** 1/8
**locked [3]** 17/8 17/8 21/16
**logic [1]** 34/10
**logical [1]** 34/6
**long [7]** 11/14 27/10 35/6 49/2 57/8 62/9 77/18
**longer [10]** 9/5 9/11 18/2 19/3 21/16 27/11 40/13 43/18 47/11 78/20
**look [28]** 2/23 3/18 12/8 14/14 14/16 15/7 18/3 20/7 31/2 31/5 31/23 35/17 36/4 36/15 38/7 38/20 40/9 50/7 55/11 59/19 60/10 60/18 60/19 61/9 66/25 69/6 69/9 70/15
**looked [3]** 12/15 13/23 13/25

**APP376**

looking [9]  6/6 22/13 23/25 24/24 25/5 41/6 53/23 58/1 68/23
loop [1]  6/5
Loper [2]  20/23 20/24
lose [2]  19/9 38/13
losing [1]  41/2
lost [5]  29/10 29/12 29/13 35/8 72/14
lot [18]  4/9 12/2 12/17 13/22 16/6 16/6 22/14 32/21 47/16 49/6 49/6 49/10 54/7 64/14 68/2 70/25 72/23 82/9
lots [3]  34/17 35/17 35/17
loud [1]  49/3
love [1]  17/4
low [1]  45/19

**M**

made [18]  6/5 6/22 19/17 24/15 33/10 38/25 46/6 54/12 57/9 58/25 59/15 59/21 63/11 63/12 68/3 70/3 75/13 82/6
madness [1]  80/24
major [1]  24/25
majority [1]  60/2
make [19]  3/15 3/19 23/25 25/2 30/14 31/11 47/4 55/1 59/22 67/10 68/16 69/1 69/5 69/12 69/18 69/19 69/20 82/10 82/22
makes [6]  4/25 15/9 64/14 72/23 74/25 79/16
making [1]  40/15
manage [1]  41/13
management [1]  21/3
mandamus [4]  57/15 57/21 58/3 59/14
mandate [4]  3/10 7/22 44/16 57/23
mandatory [4]  9/25 10/22 10/24 78/24
maneuver [1]  20/4
manipulate [1]  62/14
many [5]  11/23 35/4 56/10 60/24 80/21
March [8]  55/5 57/11 57/16 57/22 58/4 67/13 79/9 79/9
March 2024 [1]  67/13
MARIA [1]  1/25
marks [1]  5/11
MARTINI [2]  1/20 2/11
material [2]  10/2 10/10
materially [1]  71/13
matter [13]  3/17 5/4 5/14 9/6 10/3 13/15 24/1 24/17 36/13 41/25 59/16 62/25 63/11
matters [1]  65/19
may [16]  1/13 2/1 2/5

4/17 4/20 14/9 22/11 23/16 29/20 41/7 50/9 62/20 67/4 74/19 75/3 79/10
May 18th [1]  50/9
maybe [6]  38/12 38/12 38/14 55/8 58/20 60/11
McClelland [1]  41/16
me [25]  2/15 17/6 21/18 23/9 27/5 27/13 30/1 30/2 33/5 34/5 34/22 36/16 51/18 52/8 53/18 60/25 61/12 62/20 64/11 65/6 67/10 69/1 69/10 70/16 79/8
mean [15]  5/23 8/21 12/6 13/23 16/6 17/2 21/20 27/15 29/25 51/23 57/5 59/24 63/10 66/6 82/1
meaning [1]  74/22
means [2]  15/18 75/22
meant [1]  78/17
mechanism [1]  19/12
MEDIA [3]  1/7 1/22 56/16
meet [4]  10/13 11/23 63/6 82/2
memory [1]  55/8
mention [1]  6/23
mentioned [5]  8/9 11/22 35/25 36/1 41/14
merely [2]  32/9 35/21
merit [2]  78/20 80/5
meritorious [1]  63/5
merits [4]  5/13 9/18 16/15 77/13
meruit [1]  63/19
message [1]  13/7
met [2]  10/8 79/2
metaphors [1]  17/5
MICHAEL [3]  1/23 2/13 3/2
might [9]  8/1 10/19 25/10 27/11 49/20 50/18 60/14 64/16 69/2
migrated [1]  28/2
mind [8]  3/12 12/6 35/16 50/10 50/10 50/14 51/23 69/10
mine [1]  83/5
minor [1]  43/25
minority [1]  60/3
minute [5]  5/11 25/22 43/13 69/14 70/2
misleading [2]  35/9 54/24
misrepresenting [1]  78/4
missing [2]  50/21 50/23
misunderstood [1]  81/5
mix [1]  26/16
moment [1]  30/5
Monday [3]  58/10 58/12 70/19
money [3]  37/5 43/14 47/16

monitor [1]  2/17
months [1]  55/6
moot [6]  21/11 21/12 27/2 43/21 48/5 48/12
mooted [2]  8/18 71/11
moral [1]  31/25
more [12]  16/3 32/25 37/9 38/9 38/10 47/14 49/10 54/6 54/10 65/11 69/8 79/10
most [3]  13/6 58/21 75/12
mostly [1]  21/9
motion [91]
motions [11]  13/18 19/7 24/6 24/10 24/22 45/21 55/12 66/16 70/19 82/3 82/10
mountain [1]  41/20
movant [2]  10/1 10/2
move [7]  2/7 5/19 10/15 11/10 31/7 54/1 66/24
moved [10]  4/8 9/9 11/3 23/6 23/6 23/11 23/13 55/6 55/13 68/13
moving [6]  36/18 36/18 42/16 43/19 61/21 72/6
Mr. [32]  2/11 14/6 14/18 15/3 16/3 22/9 23/23 34/8 35/5 38/8 38/16 41/22 47/13 47/21 49/2 51/10 52/10 54/23 55/2 55/17 55/19 58/6 58/6 58/7 59/19 68/25 76/2 77/17 78/4 80/18 80/21 82/4
Mr. Gayan [5]  16/3 23/23 41/22 49/2 59/19
Mr. Jones [11]  38/8 47/13 51/10 54/23 55/19 58/6 68/25 77/17 78/4 80/18 82/4
Mr. Jones's [5]  35/5 38/16 47/21 55/17 76/2
Mr. Pisanelli [7]  14/6 14/18 15/3 34/8 52/10 58/6 80/21
Mr. Reid [4]  2/11 22/9 55/2 58/7
much [7]  12/10 25/6 31/8 36/14 63/9 76/13 82/3
multiple [3]  34/11 49/5 63/1
must [3]  28/5 28/6 41/19
my [34]  2/10 2/15 2/16 2/18 3/16 6/3 22/6 22/8 22/17 23/19 24/25 33/3 33/24 49/11 50/18 57/3 60/17 61/23 62/12 64/8 65/7 66/19 67/19 69/14 69/24 71/16 78/14 80/20 80/21 80/23 81/4 81/5 82/10 83/12
myriad [1]  11/2
myself [1]  82/20

**N**

nail [2]  36/22 38/10
name [1]  80/20
narrow [1]  35/14
naturally [1]  21/5
nature [1]  68/6
nearly [1]  3/23
necessarily [1]  61/6
need [5]  39/3 39/11 59/7 68/16 83/1
needed [1]  58/9
needing [1]  67/23
needs [1]  66/14
negotiate [1]  56/22
NEVADA [21]  1/2 2/1 4/3 13/6 13/10 22/6 30/7 30/8 31/20 32/4 41/15 41/17 41/17 42/14 59/23 73/15 74/17 74/18 76/25 80/4 80/8
never [15]  9/7 12/13 19/21 28/10 28/10 28/11 29/8 47/23 54/14 54/15 54/15 59/21 77/7 77/8 82/2
new [30]  4/21 29/2 38/21 40/15 40/17 41/18 49/15 49/22 49/23 50/1 51/15 52/23 53/2 53/12 55/25 56/16 57/13 60/24 63/16 64/3 65/24 67/15 71/6 71/23 76/4 78/5 78/6 79/16 79/20 80/9
Newland [1]  75/1
NEWS [3]  1/7 1/22 56/16
newspaper [6]  4/16 5/15 7/4 7/9 7/25 71/17
next [4]  5/9 36/24 58/10 60/25
night [1]  64/24
ninth [39]  3/6 3/11 6/1 6/18 7/12 7/18 7/23 8/6 8/18 8/25 9/6 17/20 17/23 18/4 20/12 20/15 20/21 20/23 22/3 25/10 26/4 27/6 30/17 31/17 34/15 39/15 39/22 46/18 57/8 57/20 59/21 63/9 63/17 67/16 67/21 68/18 68/19 71/12 73/9
no [82]  1/5 1/6 9/5 9/10 9/18 10/1 10/9 10/13 10/15 11/1 11/6 13/12 17/13 17/15 17/19 17/24 18/2 18/7 19/3 21/16 22/2 22/5 28/25 29/2 29/3 29/21 30/15 30/18 30/18 30/19 31/25 34/1 34/3 34/4 37/5 39/7 40/5 40/12 42/4 42/7 42/22 42/25 43/6 43/14 43/18 45/13 46/20 46/20 47/7 47/7 47/8 47/11 50/1 50/23 52/25 59/12 59/13

59/16 62/2 62/5 63/6 63/7 63/24 64/2 64/14 65/23 65/24 67/1 67/25 68/20 68/21 70/20 70/22 72/6 72/8 73/5 74/2 76/11 78/7 78/16 78/20 82/13
nobody [2]  39/14 42/11
non [1]  77/6
nonarbitrable [1]  64/21
nondebatable [1]  77/16
none [1]  49/12
normal [1]  62/3
not [185]
note [1]  7/25
noted [2]  20/24 52/6
nother [1]  48/15
nothing [14]  4/21 9/15 16/5 16/23 16/24 32/6 32/20 44/17 53/5 63/4 68/15 73/18 79/19 80/10
notice [1]  78/14
noticed [1]  78/25
notion [1]  52/25
novation [10]  29/12 32/15 39/9 40/5 40/15 40/17 41/14 41/18 41/24 42/5
November [3]  2/24 11/9 66/23
now [35]  7/24 12/23 14/12 18/23 25/9 26/3 26/6 26/9 26/15 27/20 28/18 30/1 30/2 32/16 33/18 33/22 39/18 40/21 41/2 41/9 49/22 53/17 53/23 54/14 59/6 59/7 59/12 64/18 68/9 69/22 70/9 71/11 76/22 77/15 77/23
NPA [7]  8/1 8/2 54/16 62/1 62/13 68/9 68/19
nuanced [1]  13/20
nucleus [1]  75/9
Number [1]  14/20
Number 1 [1]  14/20
numerous [2]  57/24 68/17
Nutton [4]  11/20 11/22 67/3 67/6

**O**

object [8]  15/4 49/20 50/1 58/22 72/3 78/5 78/12 81/12
objection [5]  52/6 62/23 63/24 72/8 76/11
obligation [4]  6/17 20/15 73/8 78/8
obligations [1]  6/12
observing [1]  2/18
obtain [1]  9/3
obvious [1]  34/22
obviously [4]  34/21 63/23 76/5 76/8

**O**

**occur [1]** 41/18
**occurred [1]** 4/1
**odds [1]** 35/11
**off [7]** 25/1 33/23 34/9 60/8 63/20 65/10 66/14
**offer [1]** 39/21
**offers [1]** 35/14
**office [1]** 2/18
**officer [1]** 2/19
**oh [6]** 13/19 14/15 23/20 47/2 49/8 82/7
**okay [14]** 2/3 19/18 22/24 24/8 29/1 33/18 38/4 41/8 47/6 56/18 70/25 74/20 74/25 82/21
**old [1]** 20/5
**older [1]** 21/13
**on [151]**
**once [7]** 26/9 36/3 37/7 57/4 73/5 77/4 82/10
**one [44]** 4/17 5/11 8/14 9/8 13/19 14/22 17/13 17/15 18/2 19/8 22/16 23/21 24/14 32/2 34/22 34/23 35/4 35/6 37/9 39/7 40/17 45/18 50/25 53/3 53/21 54/22 55/11 58/24 59/12 59/13 59/25 60/6 60/23 61/8 62/5 69/1 69/4 69/8 70/16 74/23 75/12 75/13 80/19 83/2
**ones [5]** 43/18 44/5 44/23 75/11 81/2
**online [1]** 2/11
**only [21]** 6/20 19/11 26/20 28/5 30/22 44/8 44/22 55/14 57/19 58/13 58/13 70/18 73/2 74/17 75/3 75/4 75/23 75/25 76/18 77/25 78/25
**onto [1]** 20/17
**oOo [1]** 83/9
**open [4]** 64/15 65/25 74/7 74/9
**opening [1]** 49/11
**operating [12]** 4/15 7/1 19/3 27/18 30/3 33/6 46/24 56/21 59/20 60/22 64/10 69/25
**operative [4]** 21/16 43/18 48/17 75/10
**opinion [10]** 7/13 7/19 17/21 20/13 20/16 20/21 26/5 30/17 39/22 73/9
**opportunity [9]** 2/22 14/25 15/12 16/19 30/6 49/17 72/9 74/16 82/14
**oppose [2]** 58/14 66/4
**opposing [2]** 4/18 62/10
**opposition [19]** 9/18 10/13 11/7 15/5 40/23 47/1 47/2 49/13 50/2

50/4 53/4 54/17 60/25 61/1 61/2 61/7 62/12 63/3 78/7
**option [1]** 28/9
**or [72]** 5/18 5/25 8/3 9/14 9/20 10/4 10/15 11/22 13/1 15/5 15/5 19/13 21/24 22/1 22/2 22/7 23/5 23/9 29/6 30/13 32/2 32/6 33/4 33/7 33/20 34/23 34/25 35/15 39/8 39/14 39/24 39/24 44/10 45/19 46/8 46/25 48/5 48/11 52/7 52/7 54/20 54/21 57/2 57/17 59/16 59/17 59/22 59/23 61/3 63/19 64/3 64/6 65/18 65/21 65/21 66/16 68/11 70/10 70/10 71/15 72/24 74/4 75/2 76/10 76/20 77/2 77/6 77/7 77/23 79/6 79/13 80/11
**oral [4]** 4/12 44/1 78/5 79/16
**orally [1]** 78/11
**order [46]** 4/23 5/2 5/12 5/18 7/6 10/18 11/9 21/3 23/19 24/6 24/9 24/10 24/23 25/11 25/13 40/10 44/16 53/15 53/20 53/24 54/2 54/8 55/3 55/3 55/10 55/11 57/11 57/13 57/21 57/25 58/3 58/15 59/14 61/18 61/19 61/24 62/11 66/2 66/23 67/14 67/19 67/20 69/14 69/21 70/2 79/13
**ordered [1]** 58/8
**orders [2]** 69/20 70/3
**original [4]** 17/25 25/18 28/15 74/12
**originally [1]** 28/18
**other [22]** 19/8 20/22 29/9 37/16 37/16 37/24 45/18 55/24 56/17 59/6 59/18 62/7 62/9 63/14 63/16 63/19 67/9 68/16 69/4 71/15 75/8 79/6
**others [1]** 13/18
**otherwise [5]** 10/12 15/5 59/17 76/10 79/13
**our [47]** 2/6 2/17 3/24 5/23 6/6 7/5 7/13 8/8 8/19 10/23 11/19 12/20 14/12 15/10 15/12 19/9 19/22 20/2 23/10 23/12 26/12 30/5 30/7 31/21 37/20 38/13 39/12 41/9 41/9 43/7 46/13 48/19 48/20 50/2 50/8 57/11 59/21 66/12 75/25 76/17 76/23 77/6 77/13 77/14 79/2 79/18 81/7
**ourselves [2]** 39/7 44/10
**out [19]** 3/24 8/10 24/8 27/19 33/16 33/25

34/13 37/6 37/6 44/15 49/21 49/25 52/8 54/19 54/25 64/9 70/17 77/2 80/5
**outcome [1]** 7/8
**outcomes [1]** 13/8
**outrageous [1]** 51/22
**over [19]** 17/15 26/15 27/14 28/2 28/4 31/13 38/16 47/17 53/6 55/20 63/4 64/24 76/12 76/17 77/6 77/9 77/19 77/20 80/7
**overlap [2]** 28/19 77/16
**overlapped [1]** 25/17
**overlapping [5]** 28/16 28/17 35/25 64/5 75/2
**overlooked [1]** 12/7
**overturned [1]** 73/16
**overwhelming [1]** 50/19
**own [6]** 38/3 38/19 38/25 44/25 49/23 79/7
**owned [1]** 71/17
**owner [1]** 56/15

**P**

**P.2d [1]** 73/15
**p.m [3]** 2/1 2/5 83/8
**Pacific [1]** 46/5
**page [10]** 4/17 5/2 5/10 6/6 6/15 8/9 24/15 53/19 53/21 54/4
**page 14 [2]** 6/6 8/9
**page 2 [3]** 5/2 24/15 53/19
**page 3 [2]** 5/10 54/4
**pages [1]** 8/10
**pages 8 and [1]** 8/10
**painstaking [2]** 71/7 71/10
**paper [2]** 56/15 56/15
**papers [8]** 3/25 7/13 8/8 43/25 49/16 53/13 63/25 78/11
**paragraph [2]** 8/11 71/3
**paragraph 30 [1]** 71/3
**parallel [5]** 16/1 25/15 26/18 27/20 64/17
**pardon [1]** 23/9
**pari [1]** 31/22
**part [8]** 27/8 48/17 48/18 57/2 57/18 67/18 74/23 74/24
**particular [3]** 35/13 42/1 54/22
**particularity [1]** 80/11
**parties [33]** 1/10 4/7 14/24 15/11 16/4 17/14 18/14 18/17 18/18 19/5 24/3 25/20 26/1 26/6 32/18 34/11 35/13 35/20 36/15 39/6 39/10 47/20 47/20 49/5 54/10 56/1 56/20 61/22 64/6 64/11 71/22 76/14 82/23
**parties' [3]** 6/11 8/14

**partners [2]** 18/19 79/4
**party [10]** 42/16 42/17 42/18 52/21 56/14 62/20 66/5 66/7 72/16 72/18
**party's [1]** 28/7
**passage [3]** 5/9 7/12 7/14
**passed [2]** 21/1 67/2
**past [1]** 31/13
**peanut [1]** 52/7
**pendent [4]** 27/11 33/4 33/24 50/16
**pending [11]** 5/4 5/6 16/9 21/12 24/16 24/19 25/8 25/10 28/6 33/21 60/21
**people [1]** 13/18
**perform [4]** 8/3 13/21 59/13 68/11
**Perhaps [1]** 29/5
**period [1]** 16/5
**periodic [1]** 77/19
**permission [6]** 26/11 32/11 44/9 46/13 75/14 75/24
**permit [2]** 27/1 46/11
**permits [1]** 32/4
**permitted [1]** 46/21
**personal [1]** 15/22
**perspective [6]** 7/5 25/4 57/6 64/12 70/7 82/1
**persuade [2]** 54/20 62/17
**pertaining [1]** 22/6
**pertains [5]** 22/23 27/17 46/24 61/8 63/12
**perverse [4]** 15/23 15/24 26/24 62/3
**petition [1]** 7/20
**philosophy [3]** 14/21 35/11 73/13
**phonetic [3]** 6/16 46/16 75/1
**phrase [1]** 31/22
**pick [1]** 54/19
**picks [1]** 60/14
**piece [1]** 81/2
**PISANELLI [9]** 1/19 2/10 14/6 14/18 15/3 34/8 52/10 58/6 80/21
**place [30]** 3/9 10/19 11/1 11/25 12/21 15/2 16/20 16/22 17/9 19/22 19/23 21/5 24/22 26/19 29/3 29/4 29/8 35/7 37/1 41/6 44/7 44/12 44/15 48/3 48/3 48/4 53/24 61/19 66/18 68/7
**plain [1]** 41/19
**plaintiff [6]** 1/5 1/19 2/7 2/10 43/20 74/23
**plaintiff's [1]** 74/22
**plausible [6]** 66/3 75/20 75/20 78/17 78/18 78/21
**play [8]** 37/6 37/21

37/22 39/14 40/6 40/25 44/15 66/8
**playing [1]** 31/7
**plead [4]** 20/15 21/9 66/9 73/8
**pleading [8]** 28/7 30/10 39/12 45/3 58/9 73/17 75/13 77/14
**pleadings [9]** 11/11 11/14 11/19 18/9 21/1 46/12 48/13 66/24 77/3
**pleas [1]** 53/12
**please [1]** 67/10
**pled [5]** 39/3 39/3 53/5 59/11 80/12
**plus [2]** 16/20 50/15
**point [26]** 4/14 10/24 13/13 13/19 28/19 28/22 30/14 30/16 31/11 33/3 35/8 40/3 43/25 46/17 49/21 49/25 61/23 62/4 66/20 69/4 69/13 70/4 71/16 75/12 81/7 82/14
**points [9]** 2/22 4/22 37/2 47/12 49/18 54/18 61/4 67/11 72/2
**policies [2]** 16/12 35/15
**policy [2]** 16/13 35/15
**ponder [1]** 81/16
**portion [1]** 3/25
**position [10]** 12/21 17/24 20/2 37/8 60/18 62/12 62/17 76/9 78/7 81/6
**positions [1]** 78/14
**possible [4]** 9/5 29/7 43/1 75/23
**possibly [2]** 58/6 80/12
**post [1]** 40/22
**postarbitration [1]** 24/22
**postpone [1]** 24/5
**potentially [7]** 7/3 25/2 28/6 33/11 60/14 61/17 65/6
**power [2]** 12/8 42/10
**PowerPoint [2]** 14/10 14/13
**practice [7]** 4/2 4/10 17/21 29/19 29/20 33/2 46/19
**preclude [1]** 63/18
**predicted [1]** 34/19
**prefer [2]** 54/18 80/3
**prejudice [6]** 30/19 43/6 44/21 47/8 47/19 48/12
**prejudiced [1]** 76/13
**preliminary [4]** 29/14 40/24 58/18 64/8
**premise [1]** 55/25
**premised [2]** 6/9 68/14
**preparation [1]** 3/8
**preparing [1]** 63/22
**prescient [1]** 38/6
**presentation [4]** 38/23 53/3 63/2 66/8

**P**

**presented [3]** 21/7 21/8 28/8
**preservation [6]** 4/16 5/15 7/4 7/10 8/1 76/7
**presiding [1]** 53/6
**pretty [7]** 13/17 34/20 57/7 57/9 57/10 63/12 72/6
**prevail [1]** 9/3
**previously [2]** 20/18 73/10
**prior [4]** 7/16 48/23 57/12 69/24
**probably [4]** 16/2 22/22 45/20 70/11
**problem [1]** 52/19
**problematic [1]** 60/11
**problems [1]** 11/2
**procedural [8]** 11/2 11/23 17/13 53/13 58/21 61/1 61/12 64/19
**procedurally [7]** 28/12 32/9 56/7 60/11 61/21 74/6 79/17
**procedure [2]** 62/4 62/18
**proceed [2]** 71/22 75/3
**proceeding [1]** 3/17
**proceedings [4]** 1/9 23/13 83/8 83/11
**process [8]** 19/19 19/25 25/3 49/13 77/10 78/13 78/13 79/18
**promise [2]** 13/10 80/8
**promotion [1]** 37/25
**promotional [1]** 6/16
**proper [4]** 19/11 19/12 74/21 78/25
**properly [1]** 80/11
**proposed [5]** 11/6 13/2 20/12 44/3 66/11
**proposition [1]** 74/19
**prosecuted [1]** 19/9
**prosecuting [2]** 19/19 21/14
**prosecution [1]** 32/5
**protected [2]** 31/24 79/24
**prove [3]** 9/7 42/22 42/24
**proved [1]** 39/25
**proven [1]** 39/23
**provide [3]** 50/8 78/13 78/14
**provided [2]** 11/10 15/4
**provides [1]** 8/2
**provision [6]** 6/15 6/15 6/16 6/17 10/3 18/14
**provisions [6]** 6/14 6/17 57/1 71/7 71/10 71/12
**public [2]** 31/24 35/15
**published [2]** 7/13 57/20
**pulled [1]** 36/5
**pure [1]** 31/16

**purported [1]** 49/15
**purpose [5]** 9/9 9/11 62/1 62/2 68/12
**purposes [4]** 24/14 53/10 65/19 66/19
**pursuant [1]** 70/4
**push [1]** 65/5
**pushback [1]** 3/13
**pushed [2]** 22/16 33/8
**put [13]** 26/19 30/12 31/15 39/18 39/18 40/25 41/1 61/4 68/7 69/19 76/8 80/24 81/13
**puts [1]** 29/22
**putting [1]** 41/2

**Q**

**quagmire [3]** 29/23 35/5 64/19
**quantum [1]** 63/19
**quasi [2]** 32/6 77/7
**question [12]** 27/9 34/21 51/5 51/9 52/13 52/18 52/22 55/2 64/9 65/20 65/23 66/10
**questions [4]** 13/16 18/7 71/24 80/13
**quick [2]** 68/17 70/17
**quickly [1]** 23/2
**quite [7]** 4/25 49/7 54/2 54/8 55/17 70/11 81/25
**quotation [1]** 5/11
**quote [22]** 5/3 5/12 5/12 7/14 8/14 9/1 14/24 15/7 21/2 21/9 21/11 24/15 33/10 36/13 36/23 40/17 42/17 45/17 46/6 53/7 53/8 74/25
**quoted [2]** 45/18 54/23
**quotes [6]** 7/12 30/12 36/5 36/24 57/24 67/13
**quoting [1]** 21/3

**R**

**raise [1]** 61/1
**raised [8]** 28/19 29/13 29/14 40/22 51/16 52/14 67/6 67/11
**raising [1]** 40/21
**ran [2]** 19/1 26/20
**RANDALL [2]** 1/22 2/15
**rare [1]** 34/18
**rather [2]** 43/25 82/3
**rattled [1]** 63/20
**RE [1]** 1/14
**read [11]** 5/25 11/5 19/3 53/17 53/22 54/2 55/11 57/7 57/8 61/24 74/14
**real [4]** 9/13 37/17 62/8 74/6
**reality [1]** 9/14
**really [19]** 3/8 10/15 13/2 15/17 17/2 19/22 22/16 23/2 27/17 32/25 34/17 42/20 45/23 51/4 65/5 66/17 69/11 72/20

77/15
**reason [26]** 5/22 10/18 13/12 13/13 16/4 27/9 30/12 30/16 35/9 35/14 36/5 36/7 42/1 42/7 42/23 44/4 46/11 49/19 50/11 54/3 64/15 65/23 65/24 69/12 73/23 78/16
**reasons [6]** 7/15 10/4 35/4 44/13 56/11 59/17
**rebuttal [2]** 14/4 49/11
**rebutting [1]** 49/23
**recall [3]** 3/24 51/9 65/17
**receive [1]** 7/15
**recent [2]** 13/6 17/20
**reckoning [2]** 29/17 31/18
**recognized [4]** 7/11 8/20 25/22 28/14
**recollection [3]** 3/21 22/8 50/18
**reconsider [2]** 10/18 42/18
**reconsideration [3]** 42/15 42/15 42/18
**record [22]** 2/3 3/1 3/5 3/12 3/18 4/25 10/4 13/25 15/2 24/3 35/22 40/18 48/22 52/6 61/15 69/14 70/5 70/7 72/4 72/18 80/22 82/22
**RECORDED [1]** 1/25
**RECORDER [1]** 1/25
**red [1]** 68/5
**referral [2]** 35/21 37/2
**reflected [1]** 4/10
**regard [1]** 59/24
**regarding [7]** 3/13 13/21 21/24 33/10 61/15 69/25 70/9
**regulation [1]** 46/19
**regulations [1]** 17/21
**rehearing [1]** 7/20
**REID [5]** 1/19 2/11 22/9 55/2 58/7
**reiterate [1]** 18/5
**relate [3]** 5/10 55/22 74/12
**related [13]** 1/10 3/17 6/11 24/6 24/10 25/23 26/17 28/5 29/3 31/16 55/4 64/5 65/22
**relates [6]** 22/6 26/2 30/19 36/19 36/25 55/12
**relation [1]** 33/20
**relationship [3]** 26/1 35/12 35/13
**relatively [2]** 3/3 70/17
**relied [1]** 20/23
**relief [14]** 6/11 6/13 8/14 8/18 9/3 33/19 45/12 46/25 50/12 78/6 78/11 79/6 79/17 81/13
**relies [2]** 57/2 62/16
**remain [2]** 24/22 53/24
**remaining [6]** 3/20 4/7

6/8 8/5 9/8 68/14
**remains [2]** 35/7 39/25
**remark [1]** 81/5
**remedies [1]** 32/7
**remember [18]** 3/13 3/13 13/20 21/19 21/23 21/25 22/14 22/14 24/25 27/10 28/24 50/16 65/3 65/4 69/22 69/24 70/8 73/25
**remiss [1]** 43/24
**remittitur [1]** 23/4
**remove [2]** 42/13 42/13
**renegotiate [1]** 71/4
**repeat [1]** 75/23
**repeatedly [3]** 52/15 71/5 80/20
**repeating [1]** 72/25
**reply [7]** 4/23 8/9 12/20 15/5 49/22 50/2 58/15
**report [3]** 13/6 13/6 19/13
**REPORTING [1]** 1/25
**reports [1]** 80/8
**request [7]** 7/19 10/25 52/9 56/9 67/25 77/14 81/13
**requested [2]** 70/16 80/1
**required [2]** 7/16 9/3
**requires [3]** 27/3 30/6 79/4
**rereview [1]** 3/5
**reserve [1]** 14/3
**resolution [1]** 13/12
**resolved [1]** 10/21
**resolving [1]** 42/6
**respect [2]** 7/4 81/16
**respectfully [5]** 8/17 12/1 16/14 59/14 81/1
**respecting [1]** 66/2
**respective [1]** 64/11
**respond [1]** 79/25
**responded [1]** 67/24
**response [7]** 23/7 23/12 50/2 51/15 66/3 66/12 66/22
**responses [1]** 68/17
**responsibilities [1]** 64/10
**restatement [1]** 60/2
**restitution [1]** 32/6
**restraining [1]** 57/13
**result [2]** 33/25 36/3
**resulted [1]** 62/11
**results [2]** 34/6 37/25
**reversed [3]** 46/13 67/16 67/17
**reversing [1]** 57/16
**reversion [5]** 17/25 18/6 18/10 26/13 56/9
**revert [10]** 18/17 32/18 39/6 42/2 42/3 56/11 56/24 64/6 72/11 72/17
**reverted [2]** 26/7 56/2
**review [30]** 1/23 2/19 2/22 4/8 4/14 6/23 10/8 13/11 24/4 52/15 52/16 53/14 54/1 55/6 55/22

56/10 56/14 57/3 57/14 58/13 58/21 64/25 65/11 67/23 68/4 68/13 68/20 71/2 71/8 71/17
**REVIEW-JOURNAL [22]** 1/23 4/8 4/14 10/8 13/11 24/4 52/15 52/16 53/14 54/1 55/6 56/10 56/14 57/14 58/21 65/11 67/23 68/4 68/13 68/20 71/8 71/17
**Review-Journal's [3]** 2/19 6/23 64/25
**reviewed [3]** 7/14 60/19 63/11
**reviewing [1]** 25/13
**Reynolds [1]** 9/23
**rhetoric [1]** 62/16
**right [65]** 2/12 2/25 8/21 12/13 12/14 14/1 14/2 14/5 14/12 14/13 14/22 15/2 15/10 15/14 15/16 17/19 21/23 22/18 23/15 25/6 26/3 26/4 26/14 30/1 30/2 30/4 30/4 30/20 31/10 31/22 34/19 36/1 36/7 36/22 37/13 38/6 38/18 39/1 44/4 45/22 47/16 47/24 48/20 49/7 50/17 51/6 52/7 52/12 53/17 54/1 59/3 59/4 59/20 60/4 63/14 69/4 69/15 70/5 70/11 72/21 75/16 76/23 78/2 81/20 82/5
**rights [8]** 6/11 8/14 25/3 42/6 64/10 76/17 79/18 79/23
**ring [1]** 32/2
**ripe [1]** 9/15
**risk [1]** 29/22
**risks [1]** 39/24
**RJ [29]** 17/6 17/18 17/20 18/8 18/25 20/4 21/14 23/6 23/13 24/4 28/2 29/5 29/17 30/19 31/13 31/19 32/17 35/14 37/13 40/14 42/1 42/13 42/21 44/10 44/20 44/21 46/19 47/8 77/1
**RJ's [9]** 21/12 25/19 35/21 37/10 38/3 39/5 40/7 40/12 55/14
**road [2]** 12/1 57/7
**robust [1]** 77/4
**role [1]** 3/16
**rolling [3]** 36/16 36/19 37/3
**routinely [1]** 62/16
**RSB [1]** 5/6
**rule [27]** 9/9 9/21 9/23 9/24 10/9 10/14 12/23 16/12 16/15 31/23 31/25 41/7 41/8 41/19 46/1 62/19 63/6 65/10 67/3 67/5 67/5 77/2 77/3 78/24 79/2 79/4 80/7

**APP379**

**R**

**Rule 1 [2]** 12/23 80/7
**Rule 12 [1]** 77/2
**Rule 15 [2]** 65/10 67/5
**Rule 16 [3]** 46/1 67/3
67/5
**Rule 56 [12]** 9/9 9/21
9/23 9/24 10/9 10/14
16/12 16/15 62/19 63/6
77/3 79/2
**ruled [3]** 30/8 40/14
63/10
**rules [3]** 12/8 41/13
49/19
**ruling [5]** 24/21 33/14
59/21 59/22 82/6
**rulings [1]** 39/24
**run [1]** 22/19
**running [2]** 19/18 59/1
**rush [4]** 15/24 47/23
48/24 82/20
**rushing [3]** 14/24 16/8
48/2

**S**

**said [70]** 3/14 9/12
10/22 14/1 15/13 16/2
18/4 18/5 18/14 18/21
20/11 20/14 20/22 21/3
24/9 26/4 26/23 27/1
27/2 30/15 30/23 33/18
35/16 36/7 36/10 36/11
36/15 36/19 36/23
36/25 37/3 37/11 38/9
39/16 40/2 40/5 40/11
40/16 41/16 41/18
41/22 42/2 43/4 43/11
43/14 45/18 47/5 47/7
47/9 47/15 49/12 51/7
52/15 53/7 58/25 59/2
59/6 59/8 62/12 63/4
63/11 65/10 72/11 73/7
75/20 76/23 78/4 78/17
82/7 82/20
**sailed [1]** 59/20
**same [17]** 9/1 13/7
26/8 26/18 28/19 34/24
42/19 46/21 52/20
52/20 52/21 58/17
60/12 74/5 75/9 76/12
82/14
**sandbagging [1]** 49/14
**sandbags [1]** 79/15
**satisfied [1]** 61/24
**save [3]** 47/16 52/9
53/12
**saw [7]** 12/20 18/12
36/17 36/23 37/1 40/3
64/13
**say [39]** 2/4 8/1 14/19
14/22 16/22 20/17
26/21 28/3 29/1 29/19
30/22 39/8 39/20 40/19
41/8 41/23 43/3 43/13
46/19 48/22 58/20 59/1
60/11 61/3 64/18 68/17
71/7 74/4 74/11 75/16
76/21 76/22 76/22 77/6

80/22 80/25 81/19
82/14 82/21
**saying [20]** 3/12 3/22
12/6 30/25 31/2 31/4
31/5 31/17 34/25 40/7
55/20 55/21 57/17 60/9
60/9 60/19 61/9 62/5
70/13 73/22
**says [18]** 5/3 9/25 24/1
24/9 28/12 32/10 33/17
39/9 42/3 42/3 53/24
61/18 62/20 66/24 71/3
75/24 76/1 77/22
**scenario [3]** 36/2 43/12
43/22
**schedule [1]** 58/17
**scheduled [1]** 58/18
**scheduling [2]** 11/9
66/23
**scope [2]** 9/13 61/23
**screaming [1]** 74/3
**screen [1]** 16/13
**searching [1]** 43/17
**second [6]** 6/12 8/25
11/9 74/21 74/24 81/24
**Section [1]** 56/24
**Section 1.1 [1]** 56/24
**security [1]** 55/7
**see [25]** 2/16 5/1 10/19
12/9 18/3 22/12 24/7
25/24 29/7 31/24 38/11
38/21 40/12 45/5 45/9
48/13 50/12 50/13
54/22 60/25 61/9 73/13
77/19 81/25 82/21
**seeing [1]** 50/10
**seek [8]** 19/1 57/3
60/11 64/3 65/25 66/5
66/20 78/22
**seeking [5]** 17/9 42/17
42/18 65/11 67/1
**seeks [2]** 8/13 16/9
**seem [1]** 49/23
**seemed [1]** 81/4
**seems [4]** 27/13 33/4
34/5 72/12
**seen [4]** 18/11 18/11
28/8 81/18
**seizes [1]** 73/20
**sense [6]** 6/6 6/22
15/10 54/12 64/14
74/25
**sensible [1]** 76/15
**sentence [2]** 10/3
53/23
**separate [8]** 52/21 55/3
55/10 55/12 67/3 74/20
79/7 81/14
**September [4]** 6/25
11/12 11/14 23/9
**sequencing [1]** 58/21
**series [1]** 36/15
**serious [3]** 31/25 40/1
76/5
**seriously [1]** 80/1
**served [1]** 69/10
**serves [2]** 41/24 62/2
**session [1]** 2/5
**set [6]** 2/6 8/15 13/24

52/20 58/5 65/9
seven [1] 49/21
**seventh [2]** 6/13 8/25
**shall [3]** 9/25 24/22
53/24
**shape [1]** 59/16
**sharp [2]** 17/1 62/2
**she [4]** 37/11 56/4
67/17 73/7
**shift [1]** 26/5
**shifted [1]** 10/11
**shifting [1]** 10/7
**ship [1]** 59/20
**shoes [3]** 16/3 72/16
72/18
**shooting [3]** 37/13
37/17 53/7
**shortcut [1]** 8/24
**shortening [4]** 24/6
24/10 54/8 79/13
**Shortly [1]** 23/5
**shot [1]** 20/6
**should [36]** 6/23 9/14
9/20 10/4 10/17 10/21
19/12 19/25 20/3 20/24
28/21 30/23 31/6 37/22
44/12 46/12 46/20
47/24 47/25 50/4 52/19
65/25 71/21 72/25
73/23 74/7 74/12 75/23
76/2 76/19 76/19 77/10
77/17 78/20 80/9 81/9
**shouldn't [4]** 65/22
73/4 73/23 81/7
**shouted [1]** 41/20
**show [6]** 10/9 10/11
32/14 32/16 67/23 68/4
**showing [1]** 67/3
**shows [4]** 10/1 35/17
36/6 36/13
**side [2]** 34/19 65/10
**sidebar [2]** 82/5 82/5
**sign [2]** 56/23 69/20
**signal [1]** 69/3
**significant [2]** 25/10
46/8
**similar [1]** 61/7
**simple [3]** 3/3 41/19
68/6
**simply [15]** 4/22 8/5
18/3 29/4 31/16 32/19
37/2 43/11 43/12 61/5
62/23 64/3 67/24 68/15
68/19
**simultaneously [1]**
75/3
**since [5]** 27/10 50/15
62/8 80/20 83/2
**Singer [1]** 2/17
**single [4]** 35/21 74/19
79/20 80/3
**sir [8]** 2/12 4/20 14/5
14/6 45/6 48/21 77/24
80/15
**sit [2]** 47/18 77/18
**sitting [4]** 16/5 19/22
37/17 37/19
**six [9]** 3/23 8/20 9/12
12/25 16/2 21/21 21/25

65/4 68/7
**slide [14]** 14/20 18/3
20/7 36/4 38/7 38/20
40/9 47/13 47/22 54/24
58/24 67/12 67/12 73/7
**slides [8]** 15/2 15/4
53/3 54/17 58/1 58/24
64/14 65/9
**slightly [1]** 23/1
**slip [1]** 17/6
**slipping [1]** 17/8
**smart [2]** 34/17 38/17
**Smith [1]** 74/18
**snatched [1]** 50/20
**snuff [1]** 14/12
**so [104]**
**soldier [1]** 59/23
**solely [1]** 59/11
**some [26]** 4/1 5/6 7/6
11/18 12/10 13/18
13/23 14/3 14/10 14/10
18/16 23/25 24/19
25/20 50/18 54/18
59/18 61/15 63/16
64/16 66/20 72/2 72/10
78/5 79/5 81/2
**somebody [1]** 43/20
**somehow [2]** 38/21
76/12
**someone [3]** 43/19
59/1 66/4
**something [13]** 3/22
11/25 37/19 37/23
44/18 50/20 50/21 69/1
74/15 74/16 76/3 81/18
82/15
**sometimes [14]** 12/7
12/9 12/10 12/10 15/18
15/19 34/10 59/24
59/25 70/5 81/2 81/16
82/5 82/12
**somewhat [3]** 13/20
25/5 60/20
**somewhere [1]** 58/1
**sorry [6]** 15/1 33/5
34/24 68/23 69/22
74/17
**sorts [3]** 49/14 53/2
79/15
**sought [3]** 6/25 61/20
80/11
**sound [1]** 46/17
**sounds [4]** 16/1 16/3
63/21 64/4
**speaks [1]** 38/8
**specific [3]** 6/14 22/20
23/19
**specifically [11]** 4/16
7/8 8/2 8/13 13/8 36/12
40/4 41/17 50/13 60/21
61/7
**speech [2]** 34/11 49/5
**speedy [2]** 12/23 13/1
**spend [4]** 49/10 82/3
82/9 82/15
**spending [2]** 37/5 54/7
**spent [2]** 54/6 54/10
**split [1]** 74/19
**splitting [6]** 51/10

52/19 74/6 74/13 75/4
75/14
**spot [1]** 39/1
**sprint [1]** 16/21
**stage [1]** 29/15
**stand [1]** 38/15
**standard [2]** 11/23
45/15
**standing [5]** 33/22
37/13 39/1 41/1 79/9
**standpoint [1]** 67/20
**Stark [1]** 2/18
**start [3]** 2/7 14/20
76/12
**started [7]** 2/21 2/25
15/3 26/14 27/23 39/20
71/4
**starting [2]** 70/18 71/3
**startling [2]** 16/1 16/4
**state [13]** 10/4 22/2
27/20 31/16 38/22
50/19 59/23 63/18
64/20 74/1 75/2 75/7
75/10
**stated [2]** 17/24 35/23
**statement [1]** 73/19
**states [1]** 44/1
**status [5]** 1/15 1/15
19/13 58/5 77/19
**statute [2]** 76/8 76/9
**stay [129]**
**stayed [7]** 3/23 4/25
12/25 13/1 23/14 36/8
65/17
**staying [2]** 28/20 55/3
**stays [2]** 12/2 12/16
**step [1]** 47/17
**stepped [1]** 72/18
**stepping [2]** 44/25
72/15
**stickler [1]** 82/2
**stifle [1]** 16/10
**stifling [1]** 26/25
**still [7]** 27/16 32/22
38/2 51/17 63/23 78/3
81/12
**stipulated [1]** 11/13
**stipulation [1]** 11/16
**stonewall [1]** 17/13
**stop [3]** 17/16 51/18
52/10
**story [1]** 48/15
**straight [2]** 16/17
76/17
**straightforward [4]** 3/3
13/17 62/19 68/6
**strategy [1]** 37/10
**stray [1]** 54/19
**stricken [1]** 48/11
**strike [3]** 48/6 48/16
48/16
**strongly [1]** 63/24
**studies [1]** 10/12
**stuff [1]** 74/2
**styled [2]** 5/4 24/17
**subject [1]** 21/17
**submit [1]** 20/12
**substantially [1]** 76/7
**success [2]** 9/20 11/1

**APP380**

## S

successor [1] 72/15
such [1] 18/7
sudden [1] 19/24
sufficient [2] 46/11 61/3
suggest [2] 16/18 76/11
suggestion [8] 29/10 35/21 37/23 38/20 39/21 40/11 73/4 76/4
suit [1] 74/23
sum [1] 76/16
summary [57] 1/16 9/10 9/15 9/25 10/16 10/21 10/23 12/19 17/7 17/17 19/1 19/8 19/14 19/24 20/4 20/5 21/12 21/15 26/21 27/1 29/10 29/13 31/1 32/15 33/14 37/12 40/2 40/5 40/20 40/23 41/3 42/4 43/9 43/11 43/19 47/25 48/1 48/5 48/14 54/21 60/12 62/21 62/24 66/4 66/4 66/13 67/13 67/19 67/20 68/13 72/14 74/10 76/17 78/18 78/19 79/2 79/4
SUN [81] 1/4 2/10 3/4 4/11 5/5 6/16 7/20 9/7 9/12 9/17 10/11 10/17 10/23 11/13 11/15 11/22 11/24 13/2 13/14 14/4 16/18 18/8 18/24 19/20 20/8 20/11 20/14 24/17 26/22 27/3 29/2 29/22 30/16 30/20 30/20 40/20 44/2 44/10 47/20 49/17 50/6 52/15 52/25 53/10 53/13 55/13 56/4 56/25 57/2 58/8 58/12 58/14 59/5 61/1 62/9 62/16 63/2 64/2 64/7 64/16 64/20 65/2 65/13 65/15 65/21 66/20 67/5 71/4 71/9 71/14 71/23 73/8 78/11 78/18 79/3 79/5 79/11 79/20 79/23 80/9 80/10
Sun's [26] 4/7 6/8 7/19 8/5 9/18 10/12 10/13 10/14 10/25 12/20 15/5 24/11 49/12 50/2 51/6 51/8 53/4 55/12 55/21 58/24 60/24 62/23 64/18 67/8 69/7 78/6
supersedeas [1] 55/10
supplied [1] 45/2
support [3] 40/18 52/25 62/13
supported [3] 66/17 70/7 75/18
supposed [3] 12/16 19/23 56/23
supposedly [2] 52/16 56/10
Supreme [24] 4/3 6/2

7/21 11/19 13/6 14/1 22/6 23/3 30/8 31/21 41/15 41/17 42/4 46/5 46/13 59/22 60/3 60/14 61/16 73/15 76/25 80/4 80/8 81/16
sure [11] 3/19 14/14 22/21 45/13 47/4 61/18 67/10 67/18 69/18 72/22 72/22
surely [2] 33/13 33/13
surprise [1] 68/20
surprised [2] 34/16 68/18
surprising [2] 5/25 73/18
surrebuttal [2] 52/9 79/16
survive [4] 6/20 9/20 63/23 80/12
Sykes [1] 2/14
system [1] 13/9

## T

table [1] 60/8
tables [1] 17/14
tactic [4] 17/1 20/3 20/4 62/3
tactical [1] 66/15
take [14] 3/18 18/3 20/7 28/6 29/1 29/21 31/15 38/17 38/20 60/7 66/25 69/6 69/9 77/18
taken [1] 21/6
takes [2] 28/23 49/2
taking [3] 17/24 27/10 36/10
talk [1] 23/17
talked [2] 9/24 59/9
talking [11] 21/20 21/25 22/5 34/11 36/12 37/12 45/19 45/20 46/17 49/5 74/20
talks [1] 44/21
targets [1] 36/18
technically [2] 30/1 33/14
tell [11] 21/18 27/5 30/5 33/23 34/1 42/12 43/6 47/23 69/2 72/13 73/6
telling [7] 32/19 33/23 50/14 51/23 66/6 69/10 72/10
tells [2] 16/15 69/1
temporary [1] 57/13
term [2] 33/1 33/3
terminate [1] 6/25
terminated [2] 29/11 40/7
terms [6] 10/25 50/16 62/8 62/18 64/13 71/2
than [10] 15/23 16/3 23/1 27/11 37/9 37/24 42/8 49/11 62/7 79/10
thank [14] 2/12 3/1 4/20 14/3 14/5 23/18 48/21 52/3 56/8 77/24 80/15 80/16 82/25 83/7

Thanks [2] 82/13 83/4
that [461]
that's [101]
their [28] 5/25 10/8 11/3 11/7 14/25 15/12 24/3 38/5 39/23 40/17 40/23 42/22 43/25 44/25 48/25 51/17 53/13 54/17 60/25 61/2 61/4 61/11 62/11 63/13 64/22 66/15 66/15 78/14
them [19] 12/22 18/19 22/19 26/23 29/21 31/15 50/4 58/1 61/2 65/9 66/14 72/15 76/4 76/13 76/24 79/24 79/25 80/3 80/23
themselves [2] 37/15 37/18
then [37] 2/7 4/6 5/9 6/18 7/21 8/24 23/12 23/13 24/13 26/10 26/11 28/2 29/7 31/3 31/6 31/7 32/4 36/24 38/18 44/9 55/13 55/14 57/12 64/23 65/14 65/17 66/10 68/21 69/4 70/3 74/1 74/9 76/22 76/22 77/4 77/20 79/16
there [66] 4/9 9/10 9/17 10/1 10/9 10/13 12/15 12/17 13/12 13/25 14/15 14/20 18/1 19/21 22/11 25/17 27/15 27/16 28/19 28/22 29/5 29/16 29/17 30/13 30/15 30/18 31/25 33/6 33/19 37/19 38/16 40/5 42/4 42/25 46/5 46/10 46/20 47/1 47/1 47/2 49/6 50/1 52/25 53/2 53/5 55/9 56/9 58/5 63/6 63/6 63/24 67/1 67/2 67/22 67/25 68/7 68/14 68/20 71/3 73/5 73/10 77/19 77/20 78/16 79/19 80/10
there'll [1] 15/18
there's [53] 4/21 6/21 7/22 8/10 9/14 11/1 11/6 11/23 12/15 15/6 15/19 16/6 16/22 16/24 17/9 17/13 17/19 18/16 20/18 26/5 27/7 28/10 28/10 28/11 28/19 28/25 32/6 32/20 32/21 34/1 34/24 36/15 37/16 37/23 38/20 38/24 42/7 42/22 43/6 44/17 48/14 49/6 50/19 59/21 61/21 63/4 63/9 64/2 64/14 68/24 69/11 74/2 74/13
therefore [1] 40/19
thereto [1] 26/17
these [41] 15/2 17/13 17/14 19/5 19/7 19/19 22/14 27/5 27/8 28/9 28/12 28/23 29/20

32/22 35/15 35/19 36/5 36/7 36/14 36/18 36/18 37/2 37/3 37/12 38/21 38/22 42/10 47/12 50/3 51/7 53/12 56/18 60/17 61/1 63/16 68/2 73/25 74/11 76/11 78/16 82/15
they [129]
they're [22] 11/2 13/3 16/17 17/23 26/24 37/17 41/2 43/5 44/25 48/2 49/13 51/7 57/7 60/9 60/9 61/9 66/6 66/17 67/18 70/15 75/14 76/12
they've [8] 18/11 18/11 29/10 29/12 29/13 61/11 63/11 78/21
thing [10] 21/8 35/19 44/8 48/8 50/25 53/3 55/24 59/6 67/9 76/18
things [19] 8/24 15/6 22/16 22/16 33/12 34/18 35/2 41/22 49/7 49/16 50/3 53/2 53/13 63/15 66/16 68/3 70/6 73/25 82/15
think [65] 5/9 8/20 11/18 12/7 13/17 14/18 15/6 15/8 15/10 15/22 16/23 17/12 22/13 25/12 31/11 33/1 33/10 33/15 34/21 35/8 35/9 36/4 38/7 38/8 38/9 38/18 38/19 42/20 43/8 43/25 44/12 44/14 44/19 45/16 46/4 49/10 50/22 51/5 51/13 52/3 54/7 61/6 61/14 61/16 61/20 63/23 65/19 65/20 66/3 66/14 68/25 69/11 69/16 70/1 70/1 70/2 72/25 72/25 75/14 75/23 76/2 78/22 81/5 82/6 83/1
thinking [4] 5/17 32/25 60/6 60/7
thinks [2] 71/14 79/21
third [1] 36/13
this [241]
thoroughly [3] 47/5 82/7 82/22
those [26] 7/2 7/7 9/4 15/20 16/23 21/5 22/15 22/20 23/11 28/6 29/1 32/4 32/11 33/12 33/20 37/5 38/25 39/25 41/22 42/6 60/4 62/7 68/4 71/12 77/1 82/9
though [4] 25/25 26/5 46/3 71/15
thought [5] 27/10 51/4 52/9 64/3 79/5
thoughts [1] 60/17
through [10] 17/7 17/7 24/3 35/6 44/23 60/24 63/7 68/23 71/6 71/10
THURSDAY [2] 1/13

2/4
tie [1] 26/6
tied [4] 6/14 21/13 43/9 43/10
ties [1] 52/22
time [44] 5/17 8/1 8/1 13/23 14/4 15/13 15/13 16/5 22/17 24/6 24/10 26/19 27/10 34/24 47/14 49/2 49/10 51/16 52/8 53/11 54/6 54/7 54/8 54/10 58/17 60/12 61/3 61/22 62/21 63/25 65/13 69/8 71/16 71/25 72/10 72/12 74/14 77/18 77/22 77/23 79/13 81/14 82/9 82/16
timely [4] 13/8 13/9 13/11 80/6
times [5] 16/3 56/10 63/1 68/17 80/21
timing [4] 21/18 25/5 48/20 55/2
TIMOTHY [1] 1/12
today [16] 9/14 10/15 27/16 30/22 38/2 38/23 38/23 44/14 45/8 51/16 52/14 54/14 63/17 76/19 79/1 79/13
today's [2] 53/10 65/19
together [3] 19/9 19/19 25/21
told [6] 31/21 37/1 42/9 47/13 76/25 77/17
tomorrow [1] 70/19
too [4] 28/24 52/12 72/14 81/16
took [6] 2/23 13/22 50/15 50/24 57/15 72/10
top [3] 33/23 41/20 54/4
Tori [1] 23/18
tort [1] 6/20
tortious [1] 6/18
touch [3] 3/14 22/18 37/4
towards [1] 4/7
track [1] 45/19
TRAN [1] 1/1
transcribed [2] 1/25 83/11
Transcriber [1] 83/15
transcript [3] 1/8 1/14 54/19
Travelers [1] 75/1
trial [5] 30/9 31/21 33/18 70/18 82/1
tried [3] 20/4 43/13 48/16
triggered [2] 35/3 67/5
TRO [1] 57/22
Trom [2] 59/6 59/8
true [4] 14/18 15/8 49/4 68/19
truly [2] 26/18 83/10
trust [1] 32/8
truth [1] 15/16
try [1] 62/17

**APP381**

**T**

**trying [5]** 22/25 24/7 26/25 27/19 60/18
**turn [1]** 41/9
**turpitude [1]** 32/1
**twice [1]** 79/11
**two [18]** 8/15 19/7 19/19 20/25 22/13 33/19 34/24 35/1 35/2 36/3 36/14 36/24 47/12 47/17 55/6 69/21 74/5 82/15
**Two months [1]** 55/6
**type [2]** 62/16 71/15
**types [2]** 22/15 62/10

**U**

**U.S [2]** 6/2 7/21
**ultimately [3]** 4/2 4/11 33/9
**unambiguously [1]** 41/18
**unanimous [2]** 7/18 57/20
**unauthorized [1]** 48/6
**under [29]** 4/15 5/14 5/21 6/12 7/4 7/9 10/9 17/8 20/14 20/15 32/4 33/3 42/14 46/15 52/16 54/6 54/11 54/16 59/13 60/4 62/1 68/9 68/10 71/15 73/7 73/8 77/1 79/2 80/7
**underlying [2]** 15/11 16/12
**understand [28]** 2/16 2/17 12/7 22/17 22/18 27/6 27/16 27/18 27/25 30/25 31/4 31/9 33/2 33/7 34/3 45/13 49/8 52/5 56/6 60/18 62/23 63/10 68/1 72/5 75/22 81/8 81/11 81/15
**understanding [2]** 6/3 28/21
**understood [4]** 3/16 3/16 3/19 65/6
**undue [1]** 30/18
**unenforceability [1]** 31/12
**unenforceable [14]** 5/14 7/17 7/24 8/3 18/15 32/20 39/6 39/8 41/21 41/24 56/25 59/12 68/10 71/21
**unfair [1]** 30/24
**unfettered [2]** 12/3 12/4
**unfortunately [1]** 70/19
**unique [2]** 25/5 72/20
**United [1]** 41/16
**unjust [3]** 31/19 32/5 63/18
**unlawful [7]** 5/14 7/17 7/24 8/2 59/12 68/10 71/20
**unless [3]** 15/20 42/24

68/25
**unlimited [1]** 12/13
**unnecessarily [1]** 29/22
**unrelated [1]** 32/12
**until [15]** 3/10 20/12 20/24 24/22 45/16 53/24 56/15 56/18 58/12 58/13 61/19 62/21 75/24 76/3 78/8
**unwind [1]** 49/6
**up [27]** 3/15 4/3 6/2 11/25 14/12 16/13 18/9 18/24 22/19 27/15 29/2 30/13 30/16 36/5 37/13 38/3 48/7 50/20 53/10 57/21 60/4 60/14 64/16 68/25 73/20 76/24 81/18
**update [4]** 20/9 26/12 30/21 46/20
**updated [4]** 47/10 48/12 77/5 77/7
**upon [4]** 25/9 25/19 30/2 37/4
**upstairs [1]** 9/22
**us [26]** 3/9 15/13 15/15 15/16 16/10 16/15 17/16 18/6 30/6 31/23 37/1 38/15 40/25 41/4 41/7 41/8 42/20 47/23 49/14 72/6 76/8 76/25 77/10 77/17 79/15 82/16
**use [3]** 14/10 17/4 35/5
**used [1]** 62/8
**uses [1]** 9/24
**utter [1]** 72/17

**V**

**vacating [1]** 57/21
**vacation [4]** 13/22 21/24 22/7 22/23
**valid [4]** 6/21 9/1 10/20 41/19
**various [1]** 7/1
**VEGAS [8]** 1/4 1/23 2/1 2/10 5/5 24/4 24/11 24/17
**verbosity [1]** 83/3
**version [2]** 36/25 36/25
**versus [10]** 5/5 24/17 25/16 27/12 27/21 41/16 46/4 73/14 75/1 82/4
**very [21]** 8/8 10/6 13/20 25/6 34/21 35/10 35/14 38/17 38/23 40/22 46/6 49/23 50/25 51/1 51/2 64/5 68/5 72/1 79/11 81/21 82/10
**vetted [3]** 47/5 82/8 82/22
**via [2]** 1/20 10/21
**viable [1]** 63/23
**video [1]** 83/11
**view [4]** 35/18 60/2 60/3 66/18
**views [1]** 18/7

**violate [1]** 73/1
**violates [1]** 79/18
**vis [2]** 69/14 69/14
**vis-à-vis [1]** 69/14
**vision [1]** 81/22
**voluntarily [2]** 43/20 80/23

**W**

**wait [15]** 5/1 25/22 25/23 38/9 38/11 38/16 43/13 47/15 54/23 54/24 55/18 55/18 55/20 55/21 55/21
**waited [2]** 3/10 70/3
**want [19]** 2/3 14/2 19/14 25/2 34/9 36/8 48/13 48/24 59/1 60/7 61/17 67/10 69/18 69/19 73/1 74/10 78/12 78/13 82/22
**wanted [11]** 15/2 24/25 25/7 35/11 36/2 47/4 49/18 50/12 55/1 79/5 79/12
**wants [6]** 31/23 48/7 66/20 71/23 74/7 80/9
**warranted [1]** 42/19
**was [120]**
**wasn't [4]** 22/18 26/24 37/2 83/2
**waste [1]** 43/14
**watching [1]** 2/11
**water [1]** 37/16
**way [19]** 12/16 18/12 19/9 29/23 38/9 40/9 41/13 45/20 46/21 47/14 47/15 47/22 48/8 59/13 59/16 60/11 63/10 64/12 70/6
**ways [3]** 22/13 41/23 61/13
**we [172]**
**we'd [1]** 80/14
**we'll [12]** 2/7 18/19 31/14 32/16 37/4 37/6 38/13 45/8 75/15 75/15 76/1 77/3
**we're [26]** 2/3 14/12 17/10 19/22 19/23 21/20 21/25 32/2 33/5 37/8 41/5 43/22 44/6 44/8 45/19 45/20 45/23 46/17 47/24 48/18 49/23 62/8 65/4 70/18 74/20 79/9
**we've [13]** 3/24 8/19 9/9 10/17 10/23 12/23 39/13 42/8 51/9 59/9 61/20 65/23 65/24
**Wednesday [1]** 58/14
**week [1]** 9/22
**weeks [1]** 69/21
**weight [1]** 46/7
**welcome [1]** 2/4
**well [43]** 2/18 3/21 6/20 8/17 9/2 9/5 10/20 16/14 16/14 21/4 25/22 27/23 33/16 34/3 34/5

34/15 37/15 41/23 30/24 52/13 54/1 59/1 60/16 60/23 61/11 61/18 62/7 63/3 63/8 63/14 63/21 64/8 65/3 66/9 69/10 70/25 71/9 73/5 78/3 81/19 81/19 81/21 82/17
**well-founded [1]** 16/14
**went [9]** 4/3 6/2 12/14 13/23 20/17 23/23 25/16 30/14 40/19
**were [43]** 3/24 3/25 4/7 5/25 13/20 13/24 15/4 17/24 18/13 22/18 23/8 23/11 25/1 25/16 25/17 25/18 25/20 28/25 30/22 32/24 33/6 36/6 38/5 38/5 41/4 44/4 44/5 49/22 50/12 53/2 54/7 54/8 56/22 57/10 59/17 62/10 63/16 65/14 66/1 68/3 68/20 71/12 76/21
**weren't [8]** 27/7 51/5 51/6 51/7 52/17 56/20 61/10 72/12
**what [100]**
**what's [12]** 7/25 12/18 17/17 19/17 26/3 35/16 37/7 45/12 47/18 50/13 77/20 78/21
**whatever [9]** 7/3 13/2 46/25 49/18 59/7 70/4 70/10 74/9 77/22
**whatsoever [5]** 10/13 37/5 44/24 65/7 80/3
**when [36]** 11/16 15/7 15/18 18/13 21/7 25/16 30/11 34/14 35/18 37/1 37/15 38/5 38/8 39/11 39/14 41/8 44/7 44/11 47/13 48/3 48/19 52/20 55/1 62/10 63/9 65/10 66/3 66/5 69/12 69/19 71/18 72/11 74/21 75/25 78/17 82/20
**where [29]** 3/24 11/21 15/17 18/14 19/9 19/10 20/18 22/12 26/14 28/3 28/22 29/5 31/20 31/25 32/17 37/16 39/20 41/17 43/12 45/18 48/23 50/18 54/23 60/1 65/8 73/7 73/10 73/15 76/13
**whereas [1]** 82/7
**whether [18]** 5/13 5/20 7/8 7/23 19/11 19/25 30/23 33/6 54/5 54/13 64/6 65/18 68/8 68/24 76/9 76/19 77/6 77/22
**which [21]** 4/10 5/6 6/21 6/24 7/21 13/22 18/1 20/24 24/19 26/25 28/7 52/13 53/4 55/14 57/4 57/15 58/5 59/11 68/6 71/20 78/6
**while [5]** 16/8 16/22

26/15 44/15 72/16
**who [6]** 9/12 29/4 38/8 72/18 77/25 83/3
**whole [1]** 48/15
**why [57]** 3/10 4/25 5/22 6/5 6/22 7/5 9/9 9/13 16/4 19/14 24/7 24/8 24/9 25/15 26/23 27/5 27/7 27/9 27/14 27/15 27/19 27/21 30/6 32/22 33/8 34/25 35/2 38/2 39/18 42/1 43/14 43/17 44/10 48/16 50/11 51/5 51/6 51/7 52/17 64/2 64/8 65/21 65/23 65/24 65/25 66/9 66/10 67/6 67/18 69/12 69/22 70/6 73/23 79/20 81/19 82/1 82/7
**will [29]** 15/4 19/4 26/12 26/12 26/15 29/16 29/21 33/13 33/13 39/7 39/8 42/1 42/2 42/3 46/22 47/12 47/19 48/22 52/10 52/23 54/20 56/11 56/25 57/3 64/6 70/13 71/17 72/17 79/23
**WILLIAMS [4]** 1/12 59/2 59/7 83/15
**willing [1]** 14/22
**within [1]** 23/5
**without [10]** 26/20 39/7 39/9 47/19 47/19 48/12 52/23 73/23 76/18 79/23
**woefully [1]** 62/12
**won't [2]** 38/12 38/14
**wondering [1]** 32/22
**word [3]** 15/23 35/5 72/9
**words [5]** 16/23 38/3 38/16 72/17 75/8
**work [3]** 13/20 34/13 77/11
**working [1]** 4/7
**world [1]** 29/5
**worried [1]** 36/11
**worse [1]** 17/12
**worst [1]** 36/1
**would [71]** 3/14 5/18 5/24 11/14 12/25 14/19 16/2 16/18 18/17 19/16 22/22 23/8 25/2 27/20 31/3 32/10 32/13 32/14 32/18 33/1 33/3 33/3 33/9 33/11 33/15 33/25 33/25 34/5 34/22 41/15 43/7 43/8 44/10 45/7 45/9 46/3 46/19 48/4 48/9 50/6 51/18 57/5 59/21 62/4 62/13 63/23 64/12 65/5 65/13 66/25 67/2 67/10 68/4 69/6 69/7 70/2 70/5 73/3 73/18 74/3 74/4 74/7 74/14 74/14 76/11 76/22 78/12 80/22 80/22 80/23 83/5

**APP382**

**W**

**wouldn't [3]** 33/8 43/12 44/24
**wow [1]** 23/20
**writ [3]** 6/2 7/20 57/15
**writing [4]** 8/4 61/5 78/19 81/14
**written [8]** 7/16 53/4 54/15 63/3 68/20 69/21 78/7 78/11
**wrong [4]** 32/20 61/5 72/11 74/17
**wronged [1]** 74/24
**wrote [1]** 51/5

**Y**

**yeah [18]** 8/22 8/23 11/6 15/9 21/22 22/8 25/13 27/25 33/5 33/17 34/13 43/3 47/2 49/4 51/14 51/22 72/16 81/25
**year [6]** 3/11 7/21 13/8 57/12 57/22 73/16
**years [24]** 3/23 8/20 9/12 12/25 16/2 16/20 17/21 17/22 20/10 20/25 21/21 21/25 27/11 31/14 33/2 39/4 41/2 46/18 50/15 65/4 68/7 68/18 75/17 78/4
**yelling [1]** 52/8
**yes [5]** 32/10 45/6 51/3 70/23 76/1
**yet [7]** 17/10 39/3 39/3 45/16 58/19 78/10 79/19
**you [211]**
**you're [10]** 30/25 31/2 31/4 31/5 36/9 45/19 48/9 50/23 74/8 82/20
**you've [3]** 15/13 59/2 59/10
**your [177]**

**Z**

**Zoom [1]** 1/20