J. RANDALL JONES, ESQ., SBN 1927
r.jones@kempjones.com
MONA KAVEH, ESQ., SBN 11825
m.kaveh@kempjones.com
KEMP JONES LLP
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169
Telephone:        +1 702 385 6000

DAVID R. SINGER, ESQ. (*pro hac vice*)
dsinger@jenner.com
AMY M. GALLEGOS, ESQ. (*pro hac vice*)
agallegos@jenner.com
JENNER & BLOCK LLP
515 South Flower Street, Suite 3300
Los Angeles, California 90071
Telephone:        +1 213 239 5100
Facsimile:        +1 213 239 5199

MICHAEL J. GAYAN, ESQ., SBN 11135
mike@claggettlaw.com
CLAGGETT & SYKES LAW FIRM
4101 Meadows Lane, Suite 100
Las Vegas, Nevada 89107
Telephone:        +1 702 333 7777
Facsimile:        +1 702 655 3763

RICHARD L. STONE, ESQ. (*pro hac vice*)
rstone@fastmail.com
850 Devon Avenue
Los Angeles, California 90024
Telephone:        +1 310 993 2068

*Attorneys for Defendants/Counterclaimant*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| LAS VEGAS SUN, INC.,<br><br>                              Plaintiff,<br><br>        v.<br><br>SHELDON ADELSON, et al.,<br><br>                              Defendants.<br><br>AND RELATED COUNTERCLAIM | Case No. 2:19-cv-01667-ART-MDC<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS SUN'S SECOND AMENDED AND SUPPLEMENTAL COMPLAINT [ECF NO. 1162]**<br><br>**[ORAL ARGUMENT REQUESTED]** |

## I.      Introduction

The Sun contends that the Review-Journal violated antitrust law by allegedly failing to share profits with the Sun and promote the Sun according to the terms of the 2005 JOA—even though the 2005 JOA is unlawful and unenforceable, and even though antitrust law prohibits competitors like the Review-Journal and Sun from colluding. The Sun reaches this absurd result by claiming the Newspaper Preservation Act ("NPA") required the Review-Journal, as the "dominant" newspaper, to promote the "weaker" Sun newspaper, and to ensure the Sun had enough financial resources to stay in business. Thus, the Sun asserts, the two newspapers' relationship under the NPA means that the usual rule that competitors may not collude does not apply and, therefore, the Review-Journal's failure to comply with the 2005 JOA could qualify as anticompetitive conduct under the Sherman Act—notwithstanding the 2005 JOA's illegality.

The Sun's argument is nonsense. The NPA, on its face, does not impose any affirmative obligations on the "dominant" paper nor does it confer any rights on the "weaker" paper with respect to profits, revenues, accounting, promotions, consumer awareness, or anything else. The NPA just creates an exception to antitrust liability for newspaper JOAs approved by the United States Attorney General—which the 2005 JOA was not. What the NPA *does* say, on its face and as confirmed by the Ninth Circuit, is that unapproved JOAs like the 2005 JOA are *illegal* and *cannot be lawfully performed or enforced*. 15 U.S.C. § 1803(b); *Las Vegas Sun, Inc. v. Adelson*, 147 F.4th 1103, 1121 (9th Cir. 2025). The whole notion that the NPA makes the 2005 JOA unlawful but also requires the Review-Journal to comply with its terms is untenable.

To the extent the Sun contends that the obligations it is seeking to enforce arise from the 1989 JOA, that argument also fails. The Sun's Second Amended Complaint ("SAC") alleges that it was anticompetitive for the Review-Journal to allegedly fail to (i) comply with the accounting methodology set out in the 2005 JOA; (ii) maximize profits; (iii) jointly promote the Sun in equal prominence; (iv) follow the requirements in the 2005 JOA for displaying the "Sun Box" on the *Review-Journal*'s front page; and (v) include the *Sun* in the *Review-Journal*'s e-Edition. But it is plain on the face of the SAC—which includes the 1989 JOA as an exhibit—that *none* of the duties the Sun claims the Review-Journal failed to perform is in the 1989 JOA. In short, neither the NPA

1

nor the 1989 JOA are the source of the obligations the Sun is trying to enforce. To the extent those obligations ever existed at all, they existed in the 2005 JOA and nowhere else. The Sun is just trying to enforce the illegal 2005 JOA in violation of the Ninth Circuit's mandate.

The Sun's sham litigation theory is similarly not viable and, at root, is just an improper attempt to hold the Review-Journal liable for successfully challenging the validity of the 2005 JOA. The Sun's opposition just repeats the SAC's allegations while doing nothing to address the fact that those allegations are insufficient to plead that the Review-Journal's litigation positions fall within the sham litigation exception to *Noerr-Pennington*. Among other reasons, the Sun failed to allege that the Review-Journal abused the governmental process, and it conceded facts showing that the 1989 JOA was novated and abandoned, which is the very position it claims is a sham. Finally, the Sun's declaratory relief claim fails because the Sun has not pled a valid legal basis for any of the declaratory relief it seeks, and because the major part of the relief it seeks is enforcement of the unlawful 2005 JOA, i.e., a declaration that the Review-Journal must continue to print the *Sun* as an insert in the *Review-Journal*.

Since the Ninth Circuit reversed this Court's preliminary injunction ruling and held that the 2005 JOA was unlawful, the Sun has been flailing about for a theory to justify keeping this lawsuit alive. By now it should be obvious no such theory exists. The Court should dismiss the SAC and end this case. If the Court does not dismiss the SAC in its entirety, it should strike all allegations that seek to enforce the unlawful 2005 JOA and/or allegations that are spurious or immaterial. Any theories that remain can then be efficiently teed up for summary judgment.

II.     **The Sun's Theories Based on Alleged Breaches of the 2005 JOA Are Not Cognizable and Are Improper Attempts to Enforce the Unlawful 2005 JOA.**

      **A. The Sun's Arguments for Why It Supposedly Stated a Claim Based on Alleged Breaches of the 2005 JOA Have No Merit.**

To state a claim under Section 2 of the Sherman Act, the plaintiff must allege, among other things, that the defendant possessing monopoly power undertook "anticompetitive conduct." *Verizon Commc'ns v. L. Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004).

In the SAC, the Sun points to contractual obligations that exist *only* in the 2005 JOA and argues that it was anticompetitive for the Review-Journal to fail to comply with those obligations

after it "agreed to" perform them "[u]nder the belief that the 2005 JOA was valid and enforceable." SAC ¶ 157. Specifically, the Sun pleads that it was anticompetitive for the Review-Journal to "charg[e] editorial costs against the joint operation" when the 2005 JOA required the Review-Journal to "bear [its] own [] editorial costs" (SAC ¶¶ 159, 163; 2005 JOA § 4.2), and to charge promotional expenses that the 2005 JOA "disallowed" (SAC ¶¶ 161, 163; *see* 2005 JOA § 5.1.4). The Sun further alleges that it was anticompetitive for the Review-Journal to fail to maximize profits, reducing or eliminating what the Sun's profit share under the 2005 JOA allegedly would have been. SAC ¶¶ 127–152. It also alleges it was anticompetitive for the Review-Journal to fail to jointly promote the Sun in "equal prominence" as required by the 2005 JOA (SAC ¶¶ 166, 167; 2005 JOA § 5.1.4), and it complains that the redesigned "Sun Box" on the *Review-Journal*'s front page deviated from the requirements in the 2005 JOA (SAC ¶¶ 175–177; 2005 JOA App'x B). The Sun also complains that the *Sun* was not included in the *Review-Journal*'s e-Edition as required by the 2005 JOA. SAC ¶¶ 184–185; 2005 JOA § 10.6.

In other words, the Sun contends it was anticompetitive for the Review-Journal to *fail to collude with the Sun*. But antitrust law does not require competitors to collude. Antitrust law *prohibits competitors from colluding*. Thus, unless some special rule or exception applies, a Sherman Act complaint alleging that the defendant failed to assist a rival must be dismissed for failing to plausibly allege anticompetitive conduct. *See Trinko*, 540 U.S. at 410 (affirming district court's dismissal of Section 2 claim because the alleged anticompetitive conduct, failure to aid a competitor, was not anticompetitive as a matter of law). Here, the Sun contends that even though the 2005 JOA was illegal, the Review-Journal was obligated to comply with its terms because doing so was required by the NPA and/or the 1989 JOA. The Sun also suggests it has stated a claim based on *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985). These arguments have no merit.

**First**, the NPA does not require the Review-Journal to take any actions relating to profit maximization, accounting, joint promotions, front page formatting, or anything else. Pointing to the NPA's "declaration of policy," which recites a "public interest" in "maintaining a newspaper press editorially and reportorially independent and competitive" (ECF No. 1203 ("Opp.") at 11

3

(citing 15 U.S.C. § 1801)), the Sun contends the NPA obligates the Review-Journal to account for the JOA expenses and revenues in a manner that ensures the Sun has "revenues sufficient" to "preserv[e] the Sun in operation" (*Id.*). *See also id*. at 8–9. It further suggests that as the "dominant JOA partner," the Review-Journal was required to maximize profits on the Sun's behalf to preserve the Sun. *Id*. at 13–15. And it suggests the NPA required the Review-Journal to promote the *Sun* and solicit new readers. *Id*. at 15–17. The Sun casts the requirements of the 2005 JOA as merely the "mechanics" of carrying out these NPA-imposed obligations. *See, e.g.*, *id*. at 12 n.10, 16.

This argument is facially absurd and squarely precluded by the NPA's plain text and the Ninth Circuit's mandate. Under the NPA, the 2005 JOA is unlawful to perform or enforce. *Adelson*, 147 F.4th at 1114; 15 U.S.C. § 1803(b). It cannot be the case that the Review-Journal was nonetheless obligated to perform under the 2005 JOA to further the NPA's policy goals. That would plainly be just an end-run around the Ninth Circuit's mandate.

Moreover, the NPA, on its face, imposes no statutory duties on the Review-Journal as the so-called "dominant" JOA partner and confers no affirmative statutory rights on the Sun as the so-called "weaker" JOA partner.[1] *See* 15 U.S.C. §§ 1801–1804; *Reilly v. Hearst Corp.*, 107 F. Supp. 2d 1192, 1195 (N.D. Cal. 2000) ("the NPA does not confer affirmative rights"). The NPA simply creates a limited exception to antitrust law for newspaper JOAs that are approved by the United States Attorney General. 15 U.S.C. § 1803(b); *Bay Guardian Co. v. Chronicle Pub. Co.*, 340 F. Supp. 76, 81 (N.D. Cal. 1972) (the NPA supplies "a defense to be pled and proved"). Before the NPA was enacted, newspaper JOAs were unlawful under the Sherman Act because they eliminated competition between newspapers. *See Citizen Pub. Co. v. United States*, 394 U.S. 131, 135 (1969). Under the NPA, Attorney General-approved JOAs are lawful, and unapproved JOAs—like the 2005 JOA—are *unlawful to perform or enforce.* 15 U.S.C. §§ 1803(a)–(b). The NPA's statement of policy cannot convert an unlawful JOA to a lawful one. As a matter of black-letter statutory construction, it is "most impermissibl[e]" to invoke a statute's "broad purposes" to

---

[1] For good measure, the Sun's allegations paint a woefully inaccurate picture of the parties' relationship. Under the (unlawful) 2005 JOA, the Review-Journal was required to absorb *all JOA losses*. The Sun got far more than it gave up out of the JOA relationship.

4

override the result its text dictates. *Rodriguez v. United States*, 480 U.S. 522, 525–26 (1987) (per curiam). Congress fixed the NPA's terms, and the Court cannot enlarge them.

**Second**, to the extent the Sun purports to be relying on the 1989 JOA, there are no terms in the 1989 JOA obligating the Review-Journal to maximize revenues, use an EBITDA-based accounting methodology to calculate the Sun's profit share, deduct editorial expenses, jointly promote the Sun in equal prominence, publish a joint newspaper with a "Sun Box" on the front page, or include the *Sun* in the *Review-Journal*'s e-Edition. In fact, with respect to the Sun's accounting theory, the 1989 JOA actually *required* that editorial and promotional expenses be charged to the joint operation—the very conduct the Sun now calls anticompetitive. *Compare* 1989 JOA App'x B § B.1.1, *with* SAC ¶¶ 159, 161. The 1989 JOA is attached as an exhibit to the SAC, so there is no question that the Court can consider it when ruling on this motion. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

The Sun's attempts to tie the alleged anticompetitive conduct to the 1989 JOA are meritless. The Sun points to the language in the 1989 JOA requiring the Review-Journal to "use its best efforts . . . to promote and circulate [the Newspapers]" (Opp. at 14; 1989 JOA § 5.1.3) but that is not an obligation to maximize profits.[2] The Sun also claims the 1989 JOA's preamble was a promise to ensure the Sun's profitability (Opp. at 13–14), but that language is on its face general prefatory language and not a promise, and it gives the Court no license to impose obligations not contained in any operative term of the agreement. *See Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wash. 2d 493, 511 (2005) (even given the "parties' own expressed intention that the purpose of the JOA was to preserve two independent reportorial and editorial voices," the court could not read the JOA to reach a result that "contradict[s] [its] express terms"); *Courtesy Oldsmobile, Inc. v. Gen. Motors Corp.*, 2007 WL 9725221, at *9 (D. Nev. Nov. 19, 2007) ("General prefatory language in the agreement cannot overcome a specific provision.").

Finally, with respect to its joint-promotions theory, the Sun cites *United States v. Daily Gazette Co.*, 567 F. Supp. 2d 859 (S.D. W. Va. 2008), for the proposition that ending promotion of a JOA partner is anticompetitive. Opp. at 15. But *Daily Gazette* concerned the outright

---

[2] Efforts to increase circulation—e.g., reducing prices—are often at odds with maximizing profits.

acquisition and elimination of a competing paper, not any failure to promote one—and it nowhere holds that the NPA compels a paper to promote its JOA partner.

**Third**, the Sun has not pled, and cannot plead, the facts required to establish that the Review-Journal had a duty to comply with the 2005 JOA under *Aspen Skiing*. That case—which imposes a duty to deal with rivals under the narrowest circumstances—is inapplicable. The most important distinction is that the plaintiff in *Aspen Skiing* was not suing to enforce an agreement that had been held unlawful and unenforceable, which is what the Sun is doing here. Moreover, the *Aspen Skiing* exception to the general rule that companies have no duty to cooperate with competitors applies only where there has been (1) "the unilateral termination of a voluntary and profitable course of dealing;" (2) "refusal to sell to the plaintiff at the prevailing retail price;" and (3) "refus[al] to provide to their competitors products that were already sold in a retail market to other customers." *MetroNet Servs. Corp. v. Qwest Corp.*, 383 F.3d 1124, 1133 (9th Cir. 2004) (citing *Trinko*, 540 U.S. at 409–10). The Sun pleads none of these elements in its SAC, nor can it.

**B. The Sun's Theories Based on Alleged Breaches of the 2005 JOA Are Improper Attempts to Enforce the Unlawful 2005 JOA.**

The Sun denies that the SAC seeks enforcement of the 2005 JOA, but it provides no basis for its denial. Nor can it. As explained above, the SAC seeks to hold the Review-Journal liable for failing to comply with obligations in the 2005 JOA. Filing a lawsuit to hold a counterparty liable for not complying with obligations in a contract is *the literal definition* of enforcing the contract. As just one example, Black's Law Dictionary defines "enforce" as to "give force or effect to," "to compel obedience to," or most specifically, "to compel a person to pay damages for not complying with (a contract)." *Enforce*, Black's Law Dictionary (12th ed. 2024). And it does not matter that the Sun pled antitrust claims instead of breach of contract claims—courts look to substance, not labels, to decide whether an action is one to enforce a contract. *See, e.g.*, *Le v. Zuffa, LLC*, 108 F. Supp. 3d 768, 776–77 (N.D. Cal. 2015). The Sun strains to distinguish *Le* on its facts but misses the forest for the trees—the Review-Journal cites *Le* for the unremarkable proposition that courts look at the substance of the claim, not the label, to determine whether the plaintiff is seeking to

enforce a contract. *See id.*; Opp. at 4–5. The Sun cites no cases supporting its position that what actually matters is the label, not the substance. The Sun's position obviously is not the rule.

The Ninth Circuit has twice held the 2005 JOA is "unlawful and unenforceable" and twice reversed this Court for enforcing it. *Adelson*, 147 F.4th at 1121; ECF No. 1106 at 4, 6; *see also* 15 U.S.C. § 1803 (it is "unlawful" to "enforce" a JOA [like the 2005 JOA] that was not approved by the Attorney General in writing). Because this Court is prohibited by federal statute and the Ninth Circuit's mandate from enforcing the 2005 JOA regardless of how the Sun's claims are labeled, the claims seeking enforcement of the 2005 JOA must be dismissed. These claims cannot feasibly be presented to a jury as there is no coherent way to instruct a jury that the 2005 JOA is unlawful and unenforceable and, in the same breath, ask it to hold the Review-Journal liable for failing to comply with its terms. Allowing the case to go forward would mean devoting substantial judicial and party time and resources to a trial where a verdict in favor of the Sun would have to be reversed. The Sun's antitrust claims should be dismissed in their entirety, but if they are not, the allegations based on alleged "accounting abuses," failure to maximize profits, "promotional abuses," and breaches of the Review-Journal's alleged obligations relating to front page formatting and the e-Edition should be stricken because they violate the Ninth Circuit's mandate.

### III.     The SAC Does Not State a Cognizable Claim Based on "Sham Litigation."

A litigant like the Review-Journal has a First Amendment right to petition the courts and make legal arguments. Mot. at 14–16 (citing *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929–34 (9th Cir. 2006)). The *Noerr-Pennington* doctrine protects this right by immunizing litigants like the Review-Journal from antitrust liability for their petitions and the arguments they contain. *Id.*; *Sosa*, 437 F.3d at 933. To invoke the "sham" litigation exception to *Noerr-Pennington*, the plaintiff must show (1) the litigation was "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits," and (2) it was intended to "interfere directly" with a competitor's business by "us[ing] the governmental *process*—as opposed to the *outcome* of that process—as an anticompetitive weapon." *Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60–61 (1993) ("*PRE*") (emphases in original) (quoting *City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 380 (1991)).

7

Here, the Sun pleads that the Review-Journal's goal in challenging the validity of the 2005 JOA and opposing the Sun's preliminary injunction motion was to terminate the joint operation and cease printing and distributing the Sun. SAC ¶ 224. By affirmatively pleading that the Review-Journal wants the *outcome* of the process, as opposed to pleading that the Review-Journal is using the process itself as a competitive weapon, the Sun has pled itself out of the sham exception. *See, e.g.*, *Oregon Nat. Res. Council v. Mohla*, 944 F.2d 531, 535 (9th Cir. 1991) (plaintiff failed to state a claim for sham litigation where it conceded that the defendant "wanted the injunctive relief it requested in the underlying suit").

The Sun offers just one conclusory allegation that the Review-Journal used "governmental *process*—as opposed to the *outcome* of that process—as an anticompetitive weapon." *PRE*, 508 U.S. at 60–61. The Sun alleges that the Review-Journal "weaponize[d] the litigation process itself to create delay [sic] the Sun's preliminary and final relief." SAC ¶ 224. As the Sun concedes, this allegation refers to the Review-Journal's TRO opposition briefs (ECF Nos. 1070, 1172, 1191) and appearances at TRO-related hearings (ECF Nos. 1112, 1181–82). Opp. at 20–21. But, as already explained, opposing the Sun's motion for a preliminary injunction is not an abuse of process—it is the process. ECF No. 1193 ("Mot.") at 15. The Sun cites no authority for the proposition that opposing a preliminary injunction on the schedule set by the Court even counts as "delay"—let alone as sham litigation—and its brief, conclusory allegation that the Review-Journal's intent was to delay does not suffice. *See, e.g.*, *Mohla*, 944 F.2d at 535 (plaintiff's conclusory allegation that the lawsuit was filed "with no expectation of obtaining the requested relief, but for the sole purpose of delaying and impeding Avison's logging operation through the pendency of the suit itself" was insufficient to state a claim).[3]

Moreover, the theories the Sun attacks as a "sham"—novation and abandonment of the 1989 JOA—are established as a matter of law on the face of the Sun's complaint.[4] The SAC alleges

---

[3] The Sun questions—at length—whether it faces a "heightened pleading standard," like that applied to fraud claims. Opp. at 18–19. This is a semantic argument that does not change the Sun's burden to anticipate a *Noerr-Pennington* defense and plead "specific" facts showing the defense does not apply. *Mohla*, 944 F.2d at 533. The Sun does not meet its burden. Mot. at 14–15.

[4] The Sun attempts to revive its (waived) argument that the Review-Journal's state court

8

the "parties operated under [the 1989 JOA] for 16 years" (SAC ¶ 52), until execution of the 2005 JOA, after which, "all believed [the 2005 JOA] was the valid and enforceable, governing agreement" (SAC ¶ 113). This substitution of obligations is textbook novation. *See Nevada Bank of Com. v. Esquire Real Est., Inc.*, 86 Nev. 238, 240–41 (1970); *Harper v. Charter Commc'ns, LLC*, 2019 WL 3683706, at *7–8 (E.D. Cal. Aug. 6, 2019) (a contract "merely void on statutory grounds" may effect a novation). And the admitted two decades of nonperformance under the 1989 JOA is textbook abandonment. *See J.A. Jones Const. Co. v. Lehrer McGovern Bovis, Inc.*, 120 Nev. 277, 292 (2004).

Finally, under *Noerr-Pennington*, the sham exception only reaches lawsuits or defenses that are objectively baseless *as a whole*. Mot. at 14–15; *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1185 (9th Cir. 2005) (asking whether "the defense *as a whole* would be actionable") (emphasis added); *Limon v. Carpenters Loc. Union 721*, 2021 WL 4925444, at *5 (C.D. Cal. Jan. 11, 2021) (an "allegation that a single claim is objectively baseless" is insufficient to plead sham litigation). Here, the Review-Journal's legal position that the 2005 JOA was invalid cannot be a sham, because the Review-Journal prevailed on that argument. The Sun cites no authority for the position that subsequent legal arguments in the preliminary injunction context about whether the 1989 JOA sprung back to life can be "sham" under this rule.

The Sun's sham litigation theory not only does not state a claim—it is, at root, an effort to hold the Review-Journal liable for successfully challenging the validity of the 2005 JOA. As such, it violates the spirit of the Ninth Circuit's mandate. The Sun's antitrust claims should be dismissed in their entirety, but if they are not, the sham litigation allegations should be stricken.

---

counterclaims are a "sham." Opp. at 19–20. The Court may judicially notice that these claims were never litigated: they were brought, immediately stayed, and voluntarily dismissed after the Review-Journal won a ruling that the 2005 JOA was unenforceable. *See Las Vegas Sun, Inc. v. News+Media Capital Group, LLC*, No. A-18-772591-B (Nev. Dist. Ct.). And substantively identical claims in the federal action—which the Sun does not allege are a sham—survived summary judgment, ECF No. 970 at 47, confirming they were not "objectively baseless." *See id.* at 45 (finding the Sun's claims are not a sham because they "survived summary judgment").

**IV.     The Sun's Declaratory Relief Claim Must Be Dismissed.**

The Sun fails to explain how its declaratory judgment claim can survive when it is untethered from an underlying claim like breach of contract. Such a claim cannot survive. Mot. at 16 (citing *City of Reno v. Netflix, Inc.*, 52 F.4th 874, 878 (9th Cir. 2022) (per curiam)). The Sun misrepresents *Siino v. Foresters Life Insurance & Annuity Co.*, 133 F.4th 936 (9th Cir. 2025), claiming that it permits declaratory relief "irrespective of a breach of contract claim." Opp. at 22. In fact, *Siino* held that plaintiffs are required to prove all elements of a breach of contract claim when seeking a declaration to use as "an offensive 'sword'" to enforce a contract. *Id.* at 945–47, 949. This requirement is only relaxed if the plaintiff is seeking a declaration to use as a "shield" to protect against anticipated claims enforcing the contract. *Id.* at 947; *see also Netflix*, 52 F.4th at 879 (affirming dismissal of declaratory relief claim that was "offensive, not defensive").

Unlike in *Siino*, the Sun has no contract claim at all. Furthermore, the Sun is seeking a declaration that the 1989 JOA is enforceable and that would force the Review-Journal to take actions including seeking approval of the 2005 JOA and turning over the Review-Journal's subscriber list. *See* SAC ¶¶ 298–305. This is precisely the kind of offensive relief that requires plaintiffs to establish all elements of a contract claim. *See Siino*, 133 F.4th at 946–47, 949.

Moreover, the Sun's allegations do not establish any basis for the relief it seeks. Mot. at 16–19. For example, the Sun seeks a declaration that the 1989 JOA is enforceable, SAC ¶ 297, but the Sun has not pled a breach of contract claim (or even the existence of a binding contract between the parties), which is required to obtain a declaration granting offensive relief. *Siino*, 133 F.4th at 946–47. The Sun also seeks declarations requiring the Review-Journal to share its subscriber list and seek approval for the 2005 JOA (SAC ¶¶ 303, 305), but it does not plead any contract or other legal basis entitling it to such relief. And the Sun requests a declaration that the Review-Journal must perform under the force majeure provision of the 1989 JOA, SAC ¶ 300, but it does not plead that the Review-Journal invoked that provision nor does the Sun plead any facts constituting a force majeure under the 1989 JOA. Such requests for declaratory relief untethered to any underlying claim must be dismissed. *See Netflix*, 52 F.4th at 878–79.

To deny that its declaratory judgment claim seeks to enforce the 2005 JOA, the Sun points to a single request that the Review-Journal "perform pursuant to the terms of the 1989 JOA." Opp. at 23 (citing SAC ¶ 297). But the Sun expressly based its request to enforce the 1989 JOA on the terms of the 2005 JOA, as the Review-Journal pointed out in its motion. Mot. at 17 n.6 (citing SAC ¶ 296). Moreover, the Sun later specifies that it is really asking the Court to enforce the 2005 JOA: it seeks a declaration forcing the Review-Journal to seek approval of the 2005 JOA and to print and deliver the Sun as an insert in the Review-Journal as the 2005 JOA required. SAC ¶¶ 300–305. Finally, the Sun's rehashing of its force majeure arguments ignores its own allegations establishing that the reason no one is performing under the 1989 JOA is not force majeure, but rather that the parties abandoned the 1989 JOA decades ago. Mot. at 17 (citing SAC ¶¶ 52, 73–75, 78–82, 113).

**V.      The Court Granting Leave to Amend Does Not Mean the SAC States a Viable Claim.**

The Sun argues that the Court should summarily deny this motion because it already held that the Sun stated a valid claim when it granted the Sun's motion for leave to amend and rejected the Review-Journal's argument that leave to amend would be futile. Opp. at 2. This argument is easily disposed of. First, the Sun cites no authority for the proposition that unsuccessfully opposing leave to amend bars a party from subsequently moving to dismiss the amended pleading, and the Review-Journal is unaware of any such authority. Second, as the Sun itself acknowledged, the standard for determining whether to permit amendment is more liberal than the standard on a motion to dismiss. *See* ECF No. 1115 at 16. Third, this motion does not present the same issues as the motion for leave to amend. As the Court noted, "the RJ [did] not accuse the Sun of failure to state a claim" when it opposed leave to amend. ECF No. 1161 at 7–8. The Court also expressly noted that even though it was granting the Sun leave to amend, the Sun's claims "may ultimately be denied" and the Sun "may be barred from seeking some forms of relief sought." *Id*. at 8.

**VI.     The Court Should Grant The Motion To Dismiss, But If It Does Not, The Court Should Strike All Theories that Rely on the 2005 JOA or Are Otherwise Invalid.**

The Sun's opposition to striking allegations regarding the 2005 JOA demonstrates that the Sun's complaint depends on and seeks to enforce that illegal agreement. *See* Opp. at 23–24. The

11

Sun's (incorrect) position that "the 1989 JOA is now the governing agreement" is irreconcilable with its attempt to preserve allegations concerning the 2005 JOA. Opp. at 24. To be clear, the Review-Journal's alternative motion to strike does not seek "dismissal of the Sun's . . . claims" as the Sun asserts. Opp. at 23. The Review-Journal simply asks the Court to strike allegations that rely on the 2005 JOA if the Court does not grant its motion to dismiss.

In the event this case goes forward at all (and it should not), striking these allegations is proper because, as the Sun acknowledges, "[t]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." Opp. at 23–24 (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993)); *see also* Mot. at 19. The Sun's attempt to distinguish *Fantasy* fails. Opp. at 23–24. The Sun cannot deny that its claims under the 2005 JOA, like the stricken claims in *Fantasy*, have "already been extensively litigated and would [be] burdensome for [the defendant] to answer." *Fantasy*, 984 F.2d at 1528. The only aspect of *Fantasy* that the Sun attempts to distinguish is that the stricken allegations there involved non-parties. Opp. at 23–24. But *Fantasy* never held that stricken allegations must involve non-parties. Rather, *Fantasy* held that courts "could properly grant [a] motion to strike for the purpose of streamlining the ultimate resolution of the action and focusing the jury's attention on the real issues in the case." *Fantasy*, 984 F.2d at 1528. That is precisely what the Court would achieve by striking theories that rely on the unenforceable 2005 JOA. These theories have already been extensively litigated over many years, would be burdensome for the Review-Journal to answer and address at trial, and concern an agreement that the Ninth Circuit has ruled is unenforceable.[5]

**VII.    Conclusion**

The Sun has already abandoned the SAC by seeking leave to file a third amended complaint. Enough is enough. The Court should grant this motion and dismiss the SAC without leave to amend. In the alternative, the Court should strike every theory and allegation that seeks to enforce the 2005 JOA or otherwise raises spurious issues.

---

[5] The Sun's cited case, *Whittlestone, Inc. v. Handi-Craft Co.*, is also distinguishable because it concerned an improper request to strike an entire claim. 618 F.3d 970, 974 (9th Cir. 2010).

Dated:    July 15, 2026                        CLAGGETT & SYKES LAW FIRM


By:    /s/ Michael Gayan
       MICHAEL J. GAYAN, ESQ., SBN 11135
       4101 Meadows Lane, Suite 100
       Las Vegas, Nevada 89107

       J. RANDALL JONES, ESQ., SBN 1927
       MONA KAVEH, ESQ., SBN 11825
       KEMP JONES LLP
       3800 Howard Hughes Parkway, 17th Floor
       Las Vegas, Nevada 89169

       DAVID R. SINGER, ESQ. (*pro hac vice*)
       AMY M. GALLEGOS, ESQ. (*pro hac vice*)
       JENNER & BLOCK LLP
       515 South Flower Street, Suite 3300
       Los Angeles, California 90071

       RICHARD L. STONE, ESQ. (*pro hac vice*)
       850 Devon Avenue
       Los Angeles, California 90024

       *Attorneys for Defendants/Counterclaimant*

**PROOF OF SERVICE**

I hereby certify that on the 15th day of July, 2026, I served a true and correct copy of the foregoing **REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS SUN'S SECOND AMENDED AND SUPPLEMENTAL COMPLAINT [ECF NO. 1162]** via the United States District Court's CM/ECF electronic filing system to all parties on the e-service list.

*/s/ Melisa Pytlik*
Melisa Pytlik
Employee of Claggett & Sykes Law Firm

14